**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| TELCORDIA TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-876 GMS |
| | ) | |
| CISCO SYSTEMS, INC. | ) | |
| | ) | |
| Defendant. | ) | |

**TELCORDIA'S ANSWERING CLAIM CONSTRUCTION BRIEF
ADDRESSING TELCORDIA'S '763 PATENT**

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
Lauren E. Maguire (I.D. #4261)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, Delaware 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com
lmaguire@ashby-geddes.com

*Of Counsel:*

Donald R. Dunner
Don O. Burley
Steven M. Anzalone
Richard H. Smith
Houtan K. Esfahani
James T. Wilson
John M. Williamson
Pedro F. Suarez
FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, L.L.P.
901 New York Avenue, NW
Washington, DC 20001-4413
(202) 408-4000

Dated: March 24, 2006

*Attorneys for Plaintiff
Telcordia Technologies, Inc.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................................................ii

I.    Introduction ..........................................................................................................1

II.   The '763 Patent .....................................................................................................1

      A.    Preliminary Statement ..............................................................................1

      B.    Argument Regarding Claim Constructions ...............................................3

            1.    a communications network having a plurality of nodes
                  interconnected in a ring configuration [claims 1 and 7]...................3

            2.    multiplexed subrate communication[s] [claims 1 and 7] /
                  evaluating the integrity of the multiplexed subrate
                  communications [claims 1 and 7].......................................................6

            3.    associated with the first ring and the second ring [claim 1] /
                  associated with both the first ring and the second ring [claim 7].......9

            4.    inserting an error signal on designated ones of said [the] subrate
                  communications [claims 1 and 7] / the detection of said error
                  signal on said at least one of the subrate communications [claim
                  8] / the detection of said error signal on one of the subrate
                  communications [claim 2] .................................................................11

            5.    monitoring means [claim 7] ..............................................................12

            6.    Improper Summary Judgment Positions .............................................13

III.  The '306 Patent ...................................................................................................13

IV.   The '633 Patent ...................................................................................................14

V.    Conclusion...........................................................................................................14

# TABLE OF AUTHORITIES

**Cases**

*Dayco Prods., Inc. v. Total Containment, Inc.,*
   258 F.3d 1317 (Fed. Cir. 2001).................................................................................5

*Ekchian v. Home Depot, Inc.,*
   104 F.3d 1299 (Fed. Cir. 1997).................................................................................8

*Generation II Orthotics, Inc. v. Med. Tech., Inc.,*
   263 F.3d 1356 (Fed. Cir. 2001)...............................................................................13

*NeoMagic Corp. v. Trident Microsystems, Inc.,*
   287 F.3d 1062 (Fed. Cir. 2002).................................................................................5

*SanDisk Corp. v. Memorex Prods., Inc.,*
   415 F.3d 1278 (Fed. Cir. 2005).................................................................................4

*Smith & Nephew, Inc. v. Ethicon, Inc.,*
   276 F.3d 1304 (Fed. Cir. 2001)...............................................................................11

*Tehrani v. Hamilton Med., Inc.,*
   331 F.3d 1355 (Fed. Cir. 2003).................................................................................4

*Turbocare Div. of Demag Delaval Turbomachinery Corp. v. Gen. Elec. Co.,*
   264 F.3d 1111 (Fed. Cir. 2001)...............................................................................12

*Wenger Mfg., Inc. v. Coating Mach. Sys., Inc.,*
   239 F.3d 1225 (Fed. Cir. 2001)...............................................................................13

*York Products, Inc. v. Central Tractor Farm & Family Center,*
   99 F.3d 1568 (Fed. Cir. 1996).................................................................................5

**Statutes**

35 U.S.C. § 101 ........................................................................................................1

35 U.S.C. § 112(2) ....................................................................................................1

35 U.S.C. § 112(6) ..............................................................................................12, 13

I.      **Introduction**

In its opening claim construction brief, Cisco dealt solely with Telcordia's '763 patent, relying on the discussion of the '306 patent found in Lucent's brief and the discussion of the '633 patent found in Alcatel's brief. To make things easier for the Court, Telcordia will follow suit. That is, Telcordia will specifically address only the '763 patent in this answering brief and address the '306 and '633 patents in its answering briefs in the Lucent and Alcatel cases, respectively.

II.     **The '763 Patent**

A.      **Preliminary Statement**

In Telcordia's opening brief, a six-page section is all that was required to fully address the only issues before this Court for the '763 patent—the proper claim construction of a few phrases in dispute. In contrast, Cisco had to devote the entirety of its 31-page opening brief to the '763 patent because much of its argument is directed at factual and legal issues not before this Court. For example, Cisco launches into a completely irrelevant discussion of accused Cisco products in order to characterize a logical ring existing between two nodes with a different label, i.e., a "mesh" network. Cisco Systems, Inc.'s Opening Claim Construction Brief on United States Patent No. 4,835,763 ("Cisco Op. Br.") at 10-13. Further, in the guise of the claim construction process, Cisco makes an argument that is really a premature motion for summary judgment of patent invalidity, asking the Court to find Telcordia's patent claims indefinite under 35 U.S.C. § 112(2). *Id.* at 25-30. And in much the same way, Cisco attempts to shoehorn a narrow term, "shared," into the patent claims by arguing (without evidentiary support) that the claims as written are "functionally an impossibility," (and therefore, by Cisco's reasoning, presumably invalid as lacking utility under 35 U.S.C. § 101). *Id.* at 19-21.

In the portions of its brief where Cisco actually does discuss claim construction issues, it repeatedly makes a fundamental legal mistake. Instead of construing the terms that actually appear in the claims, Cisco repeatedly offers constructions that transparently add new limitations and unduly narrow the language used by the patentee. And in attempting to support its proposed constructions, Cisco necessarily ignores or glosses over intrinsic evidence from the '763 specification and drawings that flatly contradicts its position, including information set forth in a December 11, 1987, draft of an American

National Standard that is expressly incorporated into the '763 specification.  Col.2:20-29; Draft of American National Standard for Telecommunications Digital Hierarchy Optical Interface Rates and Formats Specifications ("Draft Am. Nat'l Standard") (attached as Ex. A).

For example, in asserting that the claim term "ring," which is equated in the specification to a "loop," has to be a "closed" loop, Cisco refers to such irrelevant information as the possible configurations of Cisco's accused products in a "mesh network" and to a prior art McNeilly patent in which, unlike the '763 patent, the term "closed" is expressly included as a limitation in the claims.  Cisco Op. Br. at 1-2, 10-13.  Similarly, while the '763 claims simply state that a "plurality" of nodes in a network are interconnected in a ring configuration, Cisco rewrites the claim as requiring that "all" of the nodes in the network must be connected, and also that they must be connected "one after another."  *Id.* at 1-2, 10-13.  Moreover, even though the '763 patent broadly indicates that a particular element is "associated" with the first and second rings, Cisco seeks to replace that term with a non-synonymous, narrower term—"shared"—that appears nowhere in either the claims or the specification.  *Id.* at 18-21.  And in a particularly egregious example of adding limitations to the claims instead of construing the existing language, Cisco contends that the claim language "inserting an error signal" calls for "inserting an error signal on the channels *following the demultiplexing*."  *Id.* at 22-24.  Similarly, Cisco declares that means-plus-function language that is expressly present in apparatus claim 1 but not found in method claim 7—"means for evaluating the integrity of the multiplexed subrate communications on the first and second ring"—is somehow required in both claims.  *Id.* at 26.

Finally, Cisco inexplicably characterizes a minor difference in perspective as a "core" issue when interpreting the claim phrase "multiplexed subrate communications."  *Id.* at 2.  But Cisco's extensive argument on this issue (*id.* at 14-18) is much ado about nothing.  As is evident from the claim language and the patent specification, which includes relevant portions of the incorporated-by-reference draft of an American National Standard, the '763 patent claims are directed to a combination of "constituent" subrates or channels that are packaged together (by multiplexing) in frames to also form a "high level signal."  *See, e.g.*, Draft Am. Nat'l Standard (Ex. A) at 16-18, 31-35.  Consequently, the "constituent channels" referred to in Telcordia's construction are necessarily present in and form the "high level

2

signals" referred to in Cisco's proposed construction. Similarly, Cisco's "high level signals" consist of Telcordia's "constituent channels." While Telcordia's proposed construction is preferable because it is more straightforward to define the phrase using "channels" instead of a more abstract concept, "high level signals," the two competing constructions are directed to exactly the same combinations of signals.

**B.      Argument Regarding Claim Constructions**

**1.      a communications network having a plurality of nodes interconnected in a ring configuration [claims 1 and 7]**

| '763 claim term | Telcordia's construction | Defendants' construction |
|---|---|---|
| a communications network having a plurality of nodes interconnected in a ring configuration [claims 1 and 7] | a communications network in which a plurality of nodes are connected to form a loop | a communications network in which all of the nodes are connected one after another to form a closed loop |

In its proposed construction of the preamble in the asserted independent claims, Cisco adds limitations that are found nowhere in the claim language or patent specification in order to narrow the broad language used by the patentee. Cisco's construction, which requires a "closed" loop and a network in which "all of the nodes" are connected "one after another," is a blatant attempt to rewrite the claim that is plainly contradicted by the intrinsic evidence from the '763 patent specification and drawings.

Telcordia submits that the phrase "a communications network having a plurality of nodes interconnected in a ring configuration" is sufficiently clear that supplemental guidance by the Court is probably not required. To the extent any elaboration is required, however, Telcordia has proposed a construction that is taken directly from the patent specification. In the '763 specification, the patentee equated the term used in the claims, "ring," with a "loop."

Cisco incorrectly contends that "Telcordia's construction of a 'ring' as a mere 'loop,' with no other limitation is inconsistent with the specification's definition of 'ring' and the specification's disclosure of nodes in a ring network." Cisco Op. Br. at 13. But Cisco's contention is refuted by the fact that the terms "loop" and "ring" are used interchangeably in the '763 patent. *Compare* Col.2:32-34 (referring to "ring 101" and "ring 100") *with* Col.2:60-62 (referring to "associated loops" including "loop 101" and "loop 100"). Consequently, Telcordia's construction is the only one that is consistent with the intrinsic evidence and the case law. *See Tehrani v. Hamilton Med., Inc.*, 331 F.3d 1355, 1361 (Fed. Cir.

2003) (construing term "indicative of" to be the same as "representing" since patentee used the terms interchangeably in the specification).

Moreover, Cisco's interpretation is contrary to the patent claims, drawings, and specification. According to Cisco, only a "closed" loop, whatever that means, in which all nodes in the network are connected "one after another," will suffice. But the limitation "closed" is not present in the claims or required by the specification. And artificially restricting the scope of the claim to "a communications network in which all of the nodes are connected one after another to form a closed loop" would exclude disclosed embodiments from the claim. *See SanDisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278, 1285 (Fed. Cir. 2005) ("The court must always read the claims in view of the full specification. A claim construction that excludes a preferred embodiment, moreover, 'is rarely, if ever, correct.'"). In particular, the embodiments shown in Figures 3 and 4 of the '763 patent are not simple closed loops. For example, a gateway node having controllers 405 and 406 is disclosed in Figure 3. The gateway node is not only connected to the series of nodes in Ring B, but also is connected to a completely different series of nodes in Ring A. *See* Col.3:61-Col.4:6.

For purposes of determining the scope of the '763 patent claims, therefore, a logical "ring" exists between two nodes in a network as long as there are at least two different routes by which information can be exchanged between them. The ring configuration exists even if there are additional paths between a source and a destination on the network, and regardless of the particular shape that any path may take. In contrast, Cisco's stilted construction of a ring, one which requires every node in the network to be connected "one after another" in a "closed" loop, i.e., in a single ring, would exclude various disclosed embodiments from the claim. As indicated above, Figures 3 and 4 of the '763 patent show that nodes do not have to be configured in a single circle but can also be arranged in dual-ring and interrelated ring configurations, respectively.

Consistent with its result-oriented approach to narrow and rewrite the claims rather than construe them, Cisco contends that claim language indicating that the network has "a plurality of nodes interconnected in a ring configuration" calls for a network in which "all of the nodes are connected one after another." Cisco Op. Br. at 1-2, 10-13. Cisco's construction is plainly incorrect, however, since it

essentially boils down to an argument that the term "plurality" means the same thing as "all," which it clearly does not. *See Dayco Prods., Inc. v. Total Containment, Inc.*, 258 F.3d 1317, 1328 (Fed. Cir. 2001) (construing plurality to mean two or more); *York Prods., Inc. v. Central Tractor Farm & Family Center*, 99 F.3d 1568, 1575 (Fed. Cir. 1996) (construing "plurality" to mean "at least two").

In fact, it is clear that Cisco's real concern is not with the clarity of this claim language, but its breadth. As Cisco has admitted, "the term 'loop' could be construed to cover a wide-array of theoretical and arbitrary 'loops' of nodes within potentially any type of network." Cisco Op. Br. at 10. Thus, to justify ignoring the plain meaning of "a plurality" and inserting the term "closed" into the claim language, Cisco relies on extrinsic evidence concerning a hypothetical arrangement of its own accused products. *Id.* at 11 (describing what Cisco characterizes as a "mesh network"). But the features of Cisco's accused products should never even enter into a claim construction analysis, especially since Cisco is not pointing to any *intrinsic* ambiguity in the claim language, but is merely rewriting the limitations for the purpose of avoiding infringement. *See NeoMagic Corp. v. Trident Microsystems, Inc.*, 287 F.3d 1062, 1074 (Fed. Cir. 2002) ("It is well settled that claims may not be construed by reference to the accused device.").

Indeed, the question of whether "a mesh network . . . is very different from a ring network" (Cisco Op. Br. at 11) is not before the Court because it is a question for the fact-finder to consider when deciding the issue of literal infringement. Moreover, even if it were proper to consider extrinsic evidence describing the accused products, it is not proper to do so when Cisco's description of mesh networks to the Court is directly contrary to the way it describes these same mesh networks in literature provided to its customers. Specifically, Cisco's own publicly available literature (not disclosed in Cisco's brief) refers to meshed networks as sites connected together with "at least one loop" that "are often large rings with a number of spurs or a series of rings that have become meshed over time." According to Cisco, "a PPMN [path-protected mesh network] logical ring is no different from the standard Telcordia-specified UPSR [unidirectional path-switched ring]." Understanding Path Protected Mesh Networks (PPMN), available at http://www.cisco.com/en/US/netsol/ns341/ns396/ns114/ns116/networking_solutions_white_paper 09186a00801e1211.shtml (attached as Ex. B).

Finally, the "[f]urther support" offered by Cisco for its claim construction (Cisco Op. Br. at 12 n.9) hurts rather than helps its position. Unlike the '763 patent, the prior art McNeilly patent cited by Cisco expressly includes the term "closed" in the patent claims before the term "loop," thereby narrowing the subject matter. *See* McNeilly (attached as Ex. C), Col.8:33-37. Moreover, Cisco's reference to a single prior art patent's description of a "closed loop" ignores the fact that other prior art patents disclose ring networks that are not "closed." Indeed, other prior art cited in the '763 patent discloses rings that are described as merely being a "loop," which is consistent with the '763 patent's use of the term and Telcordia's proposed construction. *See* U.S. Patent No. 4,527,270 to Sweeton (attached as Ex. D), Col.1:32-33 ("[w]ith a ring configuration each node is linked to two other nodes in a loop arrangement"). And since the prior art McNeilly patent was not even relied on by the Patent Office, it has limited relevance to claim construction.

        2.        **multiplexed subrate communication[s] [claims 1 and 7] / evaluating the integrity of the multiplexed subrate communications [claims 1 and 7]**

| '763 claim term | Telcordia's construction | Defendants' construction |
|---|---|---|
| multiplexed subrate communications [claims 1 and 7] | constituent channels of a main signal | a high-level signal that can be separated into its constituent channels |
| evaluating the integrity of the multiplexed subrate communications [claims 1 and 7] | determining if a defect exists with the multiplexed subrate communications | detecting whether each high-level signal is defective (*e.g.*, whether there is a cut link or a failed node) |

The supposed "core" dispute (Cisco Op. Br. at 2) between the parties concerning the phrase "multiplexed subrate communications" is, at most, a difference in the perspective used by each party in describing exactly the same package of information. A comparison of Telcordia's and Cisco's proposed constructions confirms that both interpretations are directed at the same combination of constituent channels. Telcordia's proposed construction will better assist the finder of fact because it is easier to understand the technology when focus is first placed on the component "channels" instead of first focusing on more abstract "high level signals."

Cisco defines the phrase as a "high-level signal" with "constituent channels." Telcordia defines the phrase as the "constituent channels" of a "main signal." Thus, both Telcordia and Cisco are talking about the same thing—a main or high-level signal that includes constituent channels. And there does not appear to be any meaningful distinction between the "main" signal referred to by Telcordia and the "high-level" signal referred to by Cisco.

Under either construction of this phrase, the patent claims are directed to a combination of "constituent" subrates or channels that are packaged together by multiplexing to form a main or higher level "signal." This combination is not only described in the '763 patent specification, but also in the draft Standard incorporated into the '763 patent, which describes in detail the format for a frame used to transport various channels. *See, e.g.*, Draft Am. Nat'l Standard (Ex. A) at 17-18 (describing, for example, the "frame structure" of an STS-N or STS-Nc signal, which consists of a number of STS-1 signals that are multiplexed together).

But while the difference between the parties regarding the phrase "multiplexed subrate communications" is not significant, Cisco's construction of the longer phrase "evaluating the integrity of the multiplexed subrate communications" is erroneous. Cisco seeks to improperly limit this claimed function or step to one particular way of evaluating the integrity of a package of constituent channels. In particular, Cisco incorrectly asserts that "the patent discloses only the evaluation of high level signals." Cisco Op. Br. at 14.

Cisco's interpretation of the evaluation step is incorrect because nothing in the language used in claims 1 and 7 limits how the evaluation is performed. In this regard, it does not matter whether the evaluation is of a "high-level signal" with "constituent channels," as proposed by Cisco, or of "constituent channels" of a "main signal," as proposed by Telcordia. In either case, the evaluation is being performed on exactly the same package—a combination of constituent channels that form a main signal.

Cisco's construction is based on its erroneous contention that subrate communications (channels) must not be checked for errors during the evaluation step. The only excuse offered by Cisco for this narrow interpretation is the fact that the patent specification indicates that a higher level signal may appear "normal" to a subsequent node in the ring even when there are error signals in some of the

constituent channels. Cisco Op. Br. 17-18. But Cisco's rationale is based on the false premise that an error signal on a channel can never indicate a lack of integrity of the main signal.

While some defects in a channel or subrate signal may not affect the main signal, there are also circumstances in which the subrate signals could indicate a possible defect in the main signal as well. In fact, the draft Standard incorporated into the '763 patent specification describes various "overhead" fields that can apply to a line or a path and which can be used to indicate a hierarchy of error conditions. Draft Am. Nat'l Standard (Ex. A) at 19-23 (describing various signals used for indicating alarms and detecting errors). Merely by way of example, the overhead fields can be used to check for signal fail and signal degrade conditions, but those conditions are only indicated when there are errors above a certain threshold. *Id.* at 37. Consequently, Cisco's construction of the evaluation step unduly limits the claim to exclude various manners of "evaluating the integrity of the multiplexed subrate communications" that are disclosed in the specification.

Putting aside Cisco's failure to address the draft Standard, a more fundamental flaw in Cisco's reasoning is that it reflects an attempt to limit the claims of the '763 patent only to whatever specific examples are provided in the specification, instead of recognizing that the specification's examples are not claim limitations. *See Ekchian v. Home Depot, Inc.*, 104 F.3d 1299, 1303 (Fed. Cir. 1997) ("While examples disclosed in the preferred embodiment may aid in the proper interpretation of a claim term, the scope of a claim is not necessarily limited by such examples."). Here, the specification "illustratively" indicates that the integrity of multiplexed subrate communications can be evaluated in certain ways: "[i]llustratively, this *could* be accomplished by detecting the absence of a carrier signal in an analog signal environment, or the lack of any incoming signal in a digital environment." Col.3:6-9 (emphasis added). That language certainly does not mean that an evaluation can *only* be performed in this manner. Indeed, the '763 patent recognizes that "[t]hose ordinarily skilled in the art could make obvious modifications to my invention without departing from its scope." Col.4:49-51.

8

3.    **associated with the first ring and the second ring [claim 1] /
associated with both the first ring and the second ring [claim 7]**

| '763 claim term | Telcordia's construction | Defendants' construction |
|---|---|---|
| associated with the first ring and the second ring [claim 1] | related to the first ring and the second ring | shared by both the first ring and the second ring |
| associated with both the first ring and the second ring [claim 7] | related to the first ring and the second ring | shared by both the first ring and the second ring |

Here, Cisco is arguing against a construction not advanced by Telcordia. Telcordia has not contended that "the claims would cover a monitoring means 'associated with *either* the first ring or the second ring.'" Cisco Op. Br. 21 (emphasis in original). The concept of "either," or anything similar, does not appear in Telcordia's construction. Thus, Cisco's arguments regarding "impossibility" (*id.*) or whether the means "could not perform" recited functions (*id.* at 19) are misdirected.

Rather, Telcordia's construction is derived from the intrinsic evidence, including the ordinary meaning of the word associated and the consistent use of that ordinary meaning in the specification. The ordinary meaning of "associated with" conveys a relationship between the subject and object of the phrase, as explained in Telcordia's opening brief at pages 36-37 (citing *Webster's Third New Int'l Dictionary* 132 (1961)), and the word "associated" is used numerous times in the specification and claims to convey a relationship. See, e.g., '763 patent, Col.2:46; Col.2:55; Col.4:11; Col.4:60-61; Col.4:67; Col.5:7-8; Col.5:39; Col.5:46. For example, the specification explains: "The channel carrying communications between nodes 1 and 2 would be extracted from ring 101 by controller 117 (by demultiplexing the signal on ring 101), and sent to selector 119 over line 102. Controller 118 would extract the *associated* channel off ring 100 and send it to selector 119 over line 103." Col.2:42-47 (emphasis added). Under Telcordia's construction of "associated," the controller 118 would extract a related channel from the ring 100, which is exactly consistent with the operation of the preferred embodiment. Under Cisco's construction, the controller would be asked to extract a shared channel, which is impossible as rings 100 and 101 are physically separate. Indeed, Cisco fails to mention any intrinsic support for use of the word "shared," but instead points to instances where the words "associated with" are used.

Moreover, Cisco's construction of "associated with" as being "shared" is deficient because Cisco never explains what it regards the term "shared" to mean. In fact, "shared" could possibly refer to a variety of activities. For example, two people could "share" a tennis racquet, meaning that each could use the racquet at different points in time, or two people could "share" a tennis court, meaning that they could be on the court at the same time. Cisco, in failing to explain how it is using the term "shared," has done nothing to link the words in the claim ("associated with") to what it regards those words to mean.

Also, Cisco's concept of "shared" is not found in the prosecution history. Thus, Cisco cannot show any link between "associated with" and "shared by" in the intrinsic evidence. Nevertheless, Cisco contends that Telcordia's construction will "reintroduce the very ambiguity that the patentee eliminated during prosecution." Cisco Op. Br. at 21. Examination of the prosecution history, however, shows that the question of "sharing" was never addressed.

Original claim 1 recited:

monitoring means, associated with the rings, for evaluating the integrity of the multiplexed subrate communications on each of the associated rings.

As-Filed Specification (attached as Ex. E), at 8.

Original claim 7 recited:

evaluating the integrity of the multiplexed subrate communications on each of said associated rings with monitoring means.

As-Filed Specification (Ex. E), at 11.

The problem with this claim language was that the terms "the rings" and "associated rings" were not previously recited in the original claims, making the phrases "the" rings or "the" associated rings unclear. Accordingly, the examiner rejected claim 1 as being indefinite, stating "it is unclear what 'the rings' is referring to, as there is no clear antecedent for this terminology" and "it is unclear what structure 'the associated rings' is referring to." Oct. 6, 1988, Office Action (attached as F), at 2. Claim 7 was rejected "for similar reasons." *Id.*

In response, the claims were amended to make clear that "the rings" or "the associated rings" were the "first ring and the second ring." Jan. 10, 1989, Amendment (attached as Ex. G) at 1-6. Thus,

during the prosecution history, the patentee only addressed the question of what "the rings" or "the associated rings" were, not whether anything was "shared."

4. **inserting an error signal on designated ones of said [the] subrate communications [claims 1 and 7] / the detection of said error signal on said at least one of the subrate communications [claim 8] / the detection of said error signal on one of the subrate communications [claim 2]**

| '763 claim term | Telcordia's construction | Defendants' construction |
|---|---|---|
| inserting an error signal on designated ones of said [the] subrate communications [claims 1 and 7] | inserting an error signal on subrate signals for which a defect is detected | inserting an error signal on the channels following the demultiplexing |
| the detection of said error signal on said at least one of the subrate communications [claim 8] / the detection of said error signal on one of the subrate communications [claim 2] | detection of an error signal inserted into at least one of the subrate signals | detecting an error signal on one or more of the channels following the demultiplexing |

Cisco's proposed construction for this claim language transparently adds limitations that are neither present nor required. The pretext for this rewriting of the claim language is Cisco's argument that "[t]he claim language is ambiguous as to *when* the error signals are inserted." Cisco Op Br. at 22. But Cisco is wrong—both legally and factually.

As a legal matter, there is no requirement that a claim include language indicating precisely "when" each and every recited step occurs. *See Smith & Nephew, Inc. v. Ethicon, Inc.*, 276 F.3d 1304, 1311 (Fed. Cir. 2001) ("A claim is not defective when it states fewer than all of the steps that may be performed in practice of an invention."). Thus, a claim that does not expressly limit the time period when a certain function is performed is broad—not ambiguous.

And as a factual matter, independent claims 1 and 7 *do* indicate when error signals are inserted. In particular, the claims indicate error signals are inserted "in response to said monitoring means detecting a lack of integrity on said [the] multiplexed subrate communications." Col.5:2-4; Col.6:53-55.

Moreover, Cisco's narrow interpretation is contradicted by the language used in other claims. In fact, details about timing that Cisco seeks to read into claims 1 and 7 are expressly set forth in

claim 4. Claim 4 requires demultiplexing of signals into subchannels. Col.5:33-37. Following the demultiplexing, claim 4 requires the inserting of error signals on the subchannels and the detecting of error signals on the subchannels. Col.5:38-48. Accordingly, since a separate claim exists in the '763 patent listing certain features described in the specification, it would be improper to read those same features into other claims in the patent that do not require those features. *See Turbocare Div. of Demag Delaval Turbomachinery Corp. v. Gen. Elec. Co.*, 264 F.3d 1111, 1123 (Fed. Cir. 2001) ("There is no basis for reading a limitation from the preferred embodiment into the language of the claim. That is particularly true where another claim restricts the invention in exactly the manner suggested by the district court's narrow claim construction.").

5.     **monitoring means [claim 7]**

| '763 claim term | Telcordia's construction | Defendants' construction |
|---|---|---|
| monitoring means [claim 7] | This claim element should not be construed in accordance with 35 U.S.C. § 112(6).<br><br>Circuitry for determining if a defect exists with the multiplexed subrate communications. | This claim element is a means-plus-function limitation pursuant to 35 U.S.C. § 112(6).<br><br>The claimed function is "evaluating the integrity of the multiplexed subrate communications on the first ring and the second ring."<br>This claim limitation is indefinite for failure to satisfy the requirements of 35 U.S.C. § 112(2) because the specification does not describe any structure for performing the claimed function. |

Cisco's proposed interpretation of the "monitoring means" of claim 7 as a means-plus-function limitation pursuant to 35 U.S.C. § 112(6) is contradicted by the precise language used in claim 7 and therefore inconsistent with the statutory rule. Attempting to transform a method step, the "evaluating" element of claim 7, into means-plus-function format, Cisco contends that "[e]ach asserted claim requires a 'monitoring means . . . for evaluating the integrity of the multiplexed substrate communications.'" Cisco Op. Br. at 26. But this is false, as claim 7 does not contain language in that format. Rather, claim 7 is a method claim that recites "evaluating" "with monitoring means associated with both the first ring and the second ring."

Thus, this claim element is not written in means-plus-function format, as the function supposedly identified by Cisco is actually a step in a claimed method. Without an identified function, 35 U.S.C.

12

§ 112(6) cannot be invoked. *See Wenger Mfg., Inc. v. Coating Mach. Sys., Inc.,* 239 F.3d 1225, 1237 (Fed. Cir. 2001).

Moreover, Cisco is wrong to suggest that the construction of apparatus claim 1's monitoring means element should also determine the construction of method claim 7's evaluating step. As the Federal Circuit held in *Generation II Orthotics, Inc. v. Med. Tech., Inc.,* 263 F.3d 1356 (Fed. Cir. 2001):

> The mere fact that a method claim is drafted with language parallel to an apparatus claim with means-plus-function language does not mean that the method claim should be subject to an analysis under § 112(6). Rather, each limitation of each claim must be independently reviewed to determine if it is subject to the requirements of § 112, paragraph 6.

*Id.* at 1368.

### 6.    Improper Summary Judgment Positions

As explained in Telcordia's opening brief, Cisco improperly has thrust the Court into what is in effect a summary judgment (rather than claim construction) analysis:

- monitoring means, associated with the first ring and the second ring, for evaluating the integrity of the multiplexed subrate communications on the first ring and the second ring [claim 1]
- monitoring means [claim 7]
- insertion means [claim 1]
- selector means [claim 2]

For the reasons previously stated, however this is both premature and improper. *See* Telcordia Opening Claim Construction Brief (D.I. 94) at 27-28. Moreover, as set forth in the Final Joint Claim Chart (D.I. 87), ample intrinsic support exists for Telcordia's proposed constructions.

## III.    The '306 Patent

In addressing the claim construction issues relating to the '306 patent, Telcordia relies on the discussion of that patent in the opening claim construction brief filed in this case (D.I. 94) as well as the discussion of the patent in Telcordia's Answering Claim Construction Brief Addressing Telcordia's '306 Patent, filed in the *Lucent* case.

## IV.     The '633 Patent

In addressing the claim construction issues relating to the '633 patent, Telcordia relies on the discussion of that patent in the opening claim construction brief filed in this case (D.I. 94) as well as the discussion of the patent in Telcordia's Answering Claim Construction Brief Addressing Telcordia's '633 Patent and Alcatel's '052 Patent, filed in the *Alcatel* case.

## V.     Conclusion

For the reasons stated above, Telcordia respectfully requests that the Court adopt Telcordia's proposed claim constructions.

/s/ *Lauren E. Maguire*

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
Lauren E. Maguire (I.D. #4261)
ASHBY & GEDDES
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, Delaware  19899
(302) 654-1888
sbalice@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com
lmaguire@ashby-geddes.com

*Of Counsel:*

Donald R. Dunner
Don O. Burley
Steven M. Anzalone
Richard H. Smith
Houtan K. Esfahani
James T. Wilson
John M. Williamson
Pedro F. Suarez
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
901 New York Ave., NW
Washington, DC  20001
(202) 408-4000

*Attorneys for Plaintiff*
*Telcordia Technologies, Inc.*

Dated:  March 24, 2006

167965.1

14

## CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of March, 2006, the attached **TELCORDIA'S**

**ANSWERING CLAIM CONSTRUCTION BRIEF ADDRESSING TELCORDIA'S '763**

**PATENT** was served upon the below-named counsel of record at the address and in the manner

indicated:


Jack B. Blumenfeld, Esquire                                              BY HAND
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
Wilmington, DE  19899-1347


Matthew D. Powers, Esquire                                    VIA ELECTRONIC MAIL
Weil, Gotshal & Manges LLP
201 Redwood Shores Parkway
Redwood Shores, CA  94065




                                        /s/ Lauren E. Maguire
                                        _____
150910.1                                Lauren E. Maguire