# YOUNG CONAWAY STARGATT & TAYLOR, LLP

JOHN W. SHAW
DIRECT DIAL: (302) 571-6689
DIRECT FAX: (302) 576-3334
jshaw@ycst.com

THE BRANDYWINE BUILDING
1000 WEST STREET, 17TH FLOOR
WILMINGTON, DELAWARE 19801

P.O. BOX 391
WILMINGTON, DELAWARE 19899-0391

(302) 571-6600
(302) 571-1253 FAX
(800) 253-2234 (DE ONLY)
www.youngconaway.com

August 11, 2006

**BY CM/ECF AND HAND DELIVERY**
The Honorable Gregory M. Sleet                    REDACTED VERSION
United States District Court
844 North King Street
Wilmington, DE 19801

Re:    Telcordia Technologies, Inc. v. Cisco Systems, Inc., C.A. No. 04-876-GMS
       Telcordia Technologies, Inc. v. Lucent Technologies, Inc., C.A. No. 04-875-GMS

Dear Judge Sleet:

Pursuant to Revised Scheduling Order ¶6, Defendants seek permission to file motions for summary judgment on the following issues. For efficiency, Defendants submit a single letter brief presenting joint grounds for summary judgment as set forth in Sections I to VI below. Section VII presents a summary judgment request that is unique to Defendant Lucent.

## I.    DEFENDANTS DO NOT INFRINGE THE '306 PATENT

Telcordia concedes that it cannot prove infringement of the '306 patent. Telcordia has identified claim elements that it agrees Defendants' accused products do not meet. There are additional elements that cannot be met by their products. Defendants believe it is important to create a complete record addressing each claim element supporting a judgment of non-infringement for the Court of Appeals. Such a record will, if necessary, provide alternative grounds to support the judgment that Telcordia concedes is appropriate.

Defendants have submitted an expert report specifically identifying a number of elements of the asserted claims not met by their products. Summary judgment that each of the claim elements is not met is appropriate given Telcordia's failure to proffer any expert report showing that any element of the '306 patent is met by Defendants' products. *Centricut, LLC v. Esab Group, Inc.*, 390 F.3d 1361, 1370 (Fed. Cir. 2004).

Defendants request permission to file for summary judgment of non-infringement of the '306 patent.

## II.    THE '306 PATENT FAILS TO SATISFY THE BEST MODE REQUIREMENT

The best mode violation here is clear.

**REDACTED**


**REDACTED**

YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Honorable Gregory M. Sleet
August 11, 2006
Page 2


**REDACTED**


**REDACTED**


Defendants respectfully request permission to move for summary judgment that the '306 patent is invalid because it violates the best mode requirement. This ground is independent of the claim construction issues that Telcordia challenges.

### III.    DEFENDANTS DO NOT INFRINGE THE '763 PATENT

The '763 patent requires the insertion of error signals in a ring network. During Markman, Telcordia argued that the required insertion of error signals could be performed before or after demultiplexing and still infringe the patent. The Court disagreed, and held that the insertion of error signals must occur *"following* demultiplexing." Summary judgment is appropriate because the accused products insert error signals before the signal even reaches the demultiplexer, and well before demultiplexing is complete.

Telcordia contends that the claimed "demultiplexer" is the cross-connect in the accused products. Ex. 2 at 142:14-19 (agreeing that "the multiplexer and demultiplexer of claim one is the cross-connect circuitry"). It is undisputed that Defendants' products insert error signals before, *not following*, the cross connect. Realizing the clear import of the Court's claim construction, Telcordia now argues that insertion of error signals occurs after demultiplexing by a component other than the one it identified as the claimed demultiplexer. Telcordia's inconsistent argument notwithstanding, it is undisputed that demultiplexing in the accused products is not completed until after the cross-connect and that the error signal is inserted before then. Ex. 2 at 121:16-18 ("The final stage of the demultiplexing and its completion, as you said, is done at the cross-connect."). Accordingly, because the claims require insertion of error signals

YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Honorable Gregory M. Sleet
August 11, 2006
Page 3

to occur after demultiplexing, and Defendants' products do not meet that element, summary judgment should be granted.

## IV.    THE '763 PATENT IS INVALID FOR INDEFINITENESS

In its Claim Construction Order, the Court determined that the term "monitoring means" is a means-plus-function term in each of the asserted claims of the '763 patent. In their claim construction briefs, the Defendants argued that this term is indefinite pursuant to 35 U.S.C. § 112, ¶ 2. The Court advised Defendants that it would not consider indefiniteness arguments until the summary judgment phase of the litigation. D.I. 142. Defendants respectfully request that the Court allow them to move for summary judgment on this ground now.

Because the specification does not identify any structure corresponding to the claimed monitoring function, Defendants were unable to propose a construction for this term during claim construction. As a result, the Court adopted Telcordia's construction, finding the structure corresponding to this term to be "the circuitry at a controller that determines if a defect exists with the multiplexed subrate communications." D.I. 189.

There is no dispute that the specification does not disclose "circuitry at a controller." **REDACTED** was able to identify any. In fact, the term "circuitry" never appears in the specification, and the disclosed "controller" is never associated with the claimed monitoring function. Telcordia's expert argues that one of skill in the art would know how to design circuits for performing the claimed function. This is insufficient as a matter of law, because "testimony of one of ordinary skill in the art cannot supplant the total absence of structure from the specification." *Default Proof, Inc. v. Home Depot, Inc.*, 412 F.3d 1291, 1302 (Fed. Cir. 2005). Summary judgment is appropriate because the only dispute is a matter of law.

## V.    DEFENDANTS DO NOT INFRINGE THE '633 PATENT

The '633 patent claims a method for clock recovery called Synchronous Residual Time Stamping (SRTS). SRTS is a combination of two existing prior art methods which aimed to combine the advantages of both approaches. To do so, SRTS includes two main features: (1) the transmission of a time stamp outside the so-called "convergence sublayer overhead" and (2) shortening the time stamp. The claims expressly call for these features and


## REDACTED


Despite these key aspects of the invention, Telcordia argued during Markman that the claims should be construed broadly to cover products that transmit a residual time stamp ("RTS") anywhere, including in the convergence sublayer layer overhead. Telcordia pursued this position because it knew that defendants' products transmitted the RTS in the convergence sublayer. The Court rejected Telcordia's position and ruled that the asserted claims of the '633 patent all require the RTS to be transmitted in a portion of the overhead *other than* the convergence sublayer overhead. Summary judgment follows naturally from this Court's ruling.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

The Honorable Gregory M. Sleet
August 11, 2006
Page 4

It is undisputed that, in all Defendants' products, the RTS is transmitted in the *"convergence sublayer* indication bit." As the nomenclature confirms, the convergence sublayer indication bit is part of the convergence sublayer overhead. Indeed, **REDACTED**

Based on the Court's claim construction and these undisputed facts, summary judgment of non-infringement of is proper.

## VI.     THE '633 PATENT IS INVALID BECAUSE OF INVENTORSHIP BY ANOTHER

Defendants also request permission to file a summary judgment motion to establish invalidity of the asserted claims of the '633 patent because, pursuant to 35 U.S.C. § 102, at least one key feature of the claimed inventions was conceived by individuals at France Telecom. *See, e.g., Pannu v. Iolab Corp.*, 155 F.3d 1344 (Fed. Cir. 1998). On August 26, 1991, Pierre Adam, a France Telecom employee, sent a letter to individuals at Bell Communication Research proposing a compromise between TS and SFET methods wherein a shortened timestamp would be used to carry timing information *outside the convergence sublayer* -- the very element at the heart of the claim construction dispute between the parties and that the Court held was required by the claimed inventions.

**REDACTED**                                        **REDACTED**

Because the individuals at France Telecom are, at a minimum, joint inventors of the asserted claims, summary judgment of invalidity under Section 102 is proper.

## VII.     LUCENT'S DAMAGES ARE LIMITED TO POST-SUIT SALES

The "damages [a] patentee can recover in an infringement suit is statutorily limited to those acts of infringement that occurred after the patentee gave the alleged infringer 'notice of infringement.'" *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1345 (Fed. Cir. 2001). Notice can be actual or constructive. "Actual notice *requires the affirmative communication of a specific charge of infringement by a specific accused product or device.*" *Amsted Indus. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 187 (Fed. Cir. 1994). Telcordia admits that it did not notify Lucent of the existence of the '763 patent until May 2, 2005. Ex. 4 at 39.

Telcordia's interrogatory response alleges that a 1995 letter and a 1997 letter gave Lucent notice of the '633 patent. Ex. 5 at 5-6. Those letters cannot, as a matter of law, constitute actual notice of infringement. The 1995 letter was sent to the entire ATM Forum and addressed "To Whom it May Concern" stating that the '633 predecessor patent "may apply to the ATM Adaptation Layer Type I (AAL1) ANSI standard." Ex. 6. Similarly, **REDACTED**

**REDACTED**                                        The Federal Circuit has "conclude[d] as a matter of law that [a] letter, which notified the whole industry, including

YOUNG CONAWAY STARGATT & TAYLOR, LLP

The Honorable Gregory M. Sleet
August 11, 2006
Page 5

[defendant], only of [plaintiff's] ownership of the patent and generally advised companies not to infringe, was not notice with the meaning of section 287." *Amsted,* 24 F.3d at 187.

Regarding constructive notice, section 287 provides that "[p]atentees, and persons making, offering for sale, or selling . . . any patented article *for or under them* . . . may give notice" by marking the patented article. A "licensee who makes or sells a patented article does so 'for or under' the patentee, thereby limiting the patentee's damage recovery when the patented article is not marked." *Amsted,* 24 F.3d at 185. The marking requirement also applies to companies that make products for a licensee. *Maxwell v. J. Baker,* 86 F.3d 1098, 1111 (Fed. Cir. 1996).

Telcordia admits that the AT&T and the Regional Bell Operating Companies ("RBOCs," such as Bell South, formed from the 1984 breakup of AT&T) have licenses under the asserted patents that allow them to use and have made the patented products. D.I. 50 at 10 (admitting paragraphs 111 and 112 of D.I. 38). Telcordia also admits that the RBOC/AT&T licenses REDACTED . and that Lucent makes the accused products for the RBOCs/AT&T under those licenses, D.I. 50 at 10. It is undisputed that Lucent never marked any products made for the RBOCs/AT&T under those licenses, and that Telcordia never attempted to ensure that products made under the RBOC/AT&T licenses were marked. Ex. 8 at 592:16-594:6; 600:4-602:5; 602:21-605:17; 609:5-611:16. Under such circumstances, this Court has granted summary judgment of no constructive notice. *Tulip Comp. Int'l v. Dell Corp.,* 2003 WL 1606081 at *3, 12 (D. Del.).

Respectfully submitted,

/s/ *John W. Shaw*
John W. Shaw (No. 3362)

JWS:pt
Attachments
cc:    Clerk of the Court (by hand delivery)
       Donald R. Dunner, Esquire (by e-mail)
       Steven J. Balick, Esquire (by hand delivery and e-mail)
       Edward R. Reines, Esquire (by e-mail)
       Jack B. Blumenfeld, Esquire (by hand delivery and e-mail)
       Steven C. Cherny, Esquire (by e-mail)

# EXHIBIT 1

**REDACTED**

# EXHIBIT 2

REDACTED

# EXHIBIT 3

REDACTED

# EXHIBIT 4

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

TELCORDIA TECHNOLOGIES, INC.,      )
                                    )
          Plaintiff,                )
                                    )
     v.                             )
                                    )    Civil Action No. 04-875 GMS
LUCENT TECHNOLOGIES INC.,           )
                                    )
          Defendant.                )

### TELCORDIA TECHNOLOGIES, INC.'S FIFTH SUPPLEMENTAL RESPONSE TO LUCENT TECHNOLOGIES INC.'S FIRST SET OF INTERROGATORIES (1-7)

### GENERAL OBJECTIONS

1.     Telcordia Technologies, Inc. ("Telcordia") objects to each interrogatory to the extent it seeks to require Telcordia to answer on behalf of any other person or entity. Telcordia responds to these interrogatories on its own behalf only.

2.     Telcordia objects to each definition, instruction, and interrogatory to the extent it would require Telcordia to respond beyond that required by the Federal Rules of Civil Procedure or this Court's Local Rules.

3.     Telcordia objects to Lucent's interrogatories to the extent they seek third-party information in Telcordia's possession, custody, or control that is subject to agreement, court order, or other duty preventing disclosure to Lucent. Telcordia objects to responding to propounded interrogatories that require the disclosure of trade secrets or other proprietary and confidential information of third parties unless Telcordia receives permission to disclose such information from such third parties or is otherwise compelled to produce the information by court order.

*Contains Telcordia, Lucent, and PMC-Sierra Confidential Information Subject to Protective Order*

protected by privilege exceptions and can be produced without violation of a court order or an agreement, and from which information responsive to this interrogatory may be derived or ascertained, to the extent such documents exist, at a mutually convenient time.

## INTERROGATORY NO. 4:

Identify the dollar amount by which you contend you have been damaged "[a]s a consequence of LUCENT's infringement of the '306 patent," *Telcordia Complaint* at ¶ *14*, and describe with full particularity all factual and legal bases relating to such dollar amount, including whether such dollar amount is based on lost profits or reasonable royalty, an identification of all products that you contend you have lost sales as result of Lucent's purported infringement, analysis of all *Georgia Pacific* factors upon which such dollar amount is based, identification of all licensees of the '306 Patent, identification of the date on which you contend the damages period began, whether you contend that Lucent had actual notice or constructive notice of the '306 Patent, and a description of all factual circumstances relating to such notice.

## SECOND SUPPLEMENTAL RESPONSE:

Telcordia incorporates by reference each of the applicable general objections as though fully set forth herein. Telcordia objects to this interrogatory to the extent it seeks information that is protected by the attorney-client privilege or by the attorney work product immunity. Telcordia further objects to this interrogatory as premature given that discovery is still in its early stages in this case and Lucent has yet to produce documentation and information including that relating to infringement, sales, and profits. Telcordia further objects to this interrogatory to the extent it seeks third-party information in Telcordia's possession, custody, or control that is subject to agreement, court order, or any other duty preventing disclosure to Lucent. Telcordia objects to this interrogatory as unduly burdensome to the extent it requires Telcordia to respond in a manner beyond that required by the Federal Rules of Civil Procedure or this Court's Local Rules. Telcordia also objects to this interrogatory to the extent it seeks information duplicative of information sought in other interrogatories, including Interrogatory No. 2. Because it consists of multiple parts and sub-parts that properly should be written as at least three separate

*Contains Telcordia, Lucent, and PMC-Sierra Confidential Information*
*Subject to Protective Order*

interrogatories (*i.e.,* one regarding damages, one regarding licenses, and one regarding Lucent's notice), Interrogatory 4 is improperly listed as a single interrogatory. Telcordia's response to Interrogatory 4 will be deemed to be responses to three separate interrogatories.

Pursuant to an agreement between the parties, the discovery requests of both Lucent and Telcordia that are directed to the '306 patent, or to the "Patents-In-Suit," shall be interpreted to cover not only the '306 patent, but also the '633 and '763 patents. Telcordia's supplementation of this interrogatory with information regarding the '633 and '763 patents incorporates and is subject to all of the General and Specific Objections already asserted as to this interrogatory.

Subject to and without waiving any of these general and specific objections and reserving its right to supplement its response as discovery proceeds, Telcordia responds to Interrogatory 4 as follows:


REDACTED




REDACTED

*Contains Telcordia, Lucent, and PMC-Sierra Confidential Information*
*Subject to Protective Order*

infringing products and/or technologies sold and/or licensed by Lucent, and added to any lump sum royalties determined.

Telcordia will also seek pre-judgment and post-judgment interest on the damages described above, as well as treble damages due to Lucent's willful infringement.


REDACTED


REDACTED


REDACTED

*Contains Telcordia, Lucent, and PMC-Sierra Confidential Information*
*Subject to Protective Order*

# REDACTED

Telcordia incorporates herein its objections and responses to Interrogatory No. 2

regarding Lucent's notice. Based on information currently available to Telcordia, Lucent was on

notice of its infringement of the '763 patent at least as early as the week of May 2, 2005.

In addition, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, Telcordia will

produce copies of documents in Telcordia's possession, custody, or control that are not otherwise

protected by privilege exceptions and can be produced without violation of a court order or

agreement, and from which information responsive to this interrogatory may be derived or

ascertained, to the extent such documents exist, at a mutually convenient time.

## INTERROGATORY NO. 5:

Describe with particularity all factual and legal bases relating to your contention that the
claims of the '306 Patent are not unenforceable due to inequitable conduct, see *Telcordia's Reply
to Lucent Technologies Inc.'s Counterclaims at ¶¶ 14-55*, including all factual and legal basis
supporting your contentions that individuals owing a duty of candor to the PTO were not aware
of the references identified in paragraphs 22, 25, 28, 31, 34, 37, 40, 43, 46, 49, 52, 55, and 58 of
Lucent Technologies Inc.'s Answer, all factual and legal bases supporting your contentions that a
reasonable examiner would not have considered such references to be important in deciding
whether to allow the claims of the '306 Patent, and all factual and legal bases supporting your
contentions that individuals owing a duty of candor to the PTO did not withhold such references
with an intent to deceive the PTO.

## SECOND SUPPLEMENTAL RESPONSE:

Telcordia incorporates by reference each of the applicable general objections as though

fully set forth herein. Telcordia objects to this interrogatory to the extent it seeks information

that is protected by the attorney-client privilege or by the attorney work product immunity.

Telcordia further objects to this interrogatory to the extent that it improperly shifts Lucent's

burden of proving unenforceablity onto Telcordia. Telcordia objects to this interrogatory as

*Contains Telcordia, Lucent, and PMC-Sierra Confidential Information*
*Subject to Protective Order*

# EXHIBIT 5

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

TELCORDIA TECHNOLOGIES, INC.,           )
                                        )
                 Plaintiff,             )
                                        )
        v.                              )
                                        )     Civil Action No. 04-875 GMS
LUCENT TECHNOLOGIES INC.,               )
                                        )
                 Defendant.             )

## TELCORDIA TECHNOLOGIES, INC.'S SUPPLEMENTAL RESPONSE TO LUCENT TECHNOLOGIES INC.'S INTERROGATORY NO. 2

Plaintiff Telcordia Technologies, Inc. ("Telcordia") objects and responds to Defendant Lucent Technologies Inc.'s Interrogatory No. 2 as follows:

### GENERAL OBJECTIONS

1.      Telcordia objects to each interrogatory to the extent it seeks to require Telcordia to answer on behalf of any other person or entity. Telcordia responds to these interrogatories on its own behalf only.

2.      Telcordia objects to each definition, instruction, and interrogatory to the extent it would require Telcordia to respond beyond that required by the Federal Rules of Civil Procedure or this Court's Local Rules.

3.      Telcordia objects to Lucent's interrogatories to the extent they seek third-party information in Telcordia's possession, custody, or control that is subject to agreement, court order, or other duty preventing disclosure to Lucent. Telcordia objects to responding to propounded interrogatories that require the disclosure of trade secrets or other proprietary and confidential information of third parties unless Telcordia receives permission to disclose such

*Contains Telcordia Confidential Information - Subject to Protective Order*

information from such third parties or is otherwise compelled to produce the information by court order.

4.    Telcordia objects to each interrogatory as overbroad and unduly burdensome to the extent it seeks information that is neither relevant to any claim or defense of any party to this action nor reasonably calculated to lead to the discovery of admissible evidence.

5.    Telcordia objects to each interrogatory to the extent it seeks information that is protected by the attorney-client privilege or information prepared in anticipation of litigation or trial, or is otherwise subject to privilege or immunity ("privileged information"). Telcordia will not produce such information in response to interrogatories, and any inadvertent production of such information shall not be deemed a waiver of the applicable privilege. Any inadvertently produced privileged information shall be destroyed or immediately returned to Telcordia.

6.    Telcordia objects to each interrogatory to the extent it contains no limitation on the time period for which responsive information is sought, or contains a time period that is inordinately long and therefore is overly burdensome, oppressive, and irrelevant and not likely to lead to the discovery of admissible evidence.

7.    Telcordia objects to each interrogatory to the extent it is redundant or duplicative of other interrogatories. Each response to an interrogatory shall be deemed to respond to every other applicable interrogatory.

8.    Telcordia objects to each interrogatory to the extent it seeks information from persons or entities outside of Telcordia's control.

9.    Telcordia objects to each interrogatory as unduly burdensome to the extent it seeks to require Telcordia to prepare documents that do not otherwise exist, to provide information beyond what is presently obtainable by Telcordia from a reasonable search of its own files and from a reasonable inquiry of its present employees, or to produce documents that are not in Telcordia's possession, custody, or control.

2

*Contains Telcordia Confidential Information - Subject to Protective Order*

10.     Telcordia objects to each interrogatory to the extent it seeks information that is already in the possession of or is readily accessible to Lucent Technologies, Inc., its officers, directors, partners, employees, parents, divisions, subsidiaries, affiliates, predecessors, successors-in-interest, consultants, agents, attorneys and representatives (together "Lucent"), or that purports to impose upon Telcordia an obligation to search publicly available materials when such materials are not otherwise contained in files in the possession, custody, or control of Telcordia.  Such an obligation is unreasonable and unduly burdensome.

11.     Telcordia objects to each interrogatory to the extent it fails to adequately and specifically describe the subject matter sought, is vague, overbroad, or unduly burdensome.

12.     Telcordia objects to each interrogatory as unduly burdensome to the extent it seeks information regarding voluminous files of immaterial or irrelevant documents and information.

13.     Telcordia objects to each interrogatory to the extent it prematurely seeks information to be provided at a later date as set or as will be set by Court order.

14.     Telcordia objects to each interrogatory to the extent it prematurely seeks information to be provided by expert witnesses.

15.     Any response herein is not an admission of relevance, materiality, or admissibility of the information provided.

16.     In providing responses to an interrogatory, Telcordia does not waive or intend to waive but rather intends to preserve and is preserving:

    a.  all objections as to competency, relevancy, materiality, and admissibility of the interrogatory, the responses, and their subject matter;

    b.  all objections as to the vagueness, ambiguity, or the infirmity in the form of the interrogatory and any objections based on the undue burden imposed by the interrogatory;

3

*Contains Telcordia Confidential Information - Subject to Protective Order*

    c.  all rights to object on any ground to the use of any of the responses, or their

        subject matter, in this or any subsequent proceedings;

    d.  all rights to object on any ground to any further interrogatories involving or

        related to the subject matter of the interrogatory;

    e.  the right to supplement responses to the interrogatory as discovery proceeds or

        at any time prior to trial; and

    f.  any and all privileges and/or rights under the applicable Federal Rules of Civil

        Procedure, local rules, statutes, or the common law.

17.    Telcordia's responses reflect Telcordia's present knowledge, information, and belief and may be subject to change or modification based on Telcordia's further discovery, or on facts or circumstances that may come to Telcordia's knowledge. Telcordia assumes no obligation to supplement its responses, however, beyond those imposed by the Federal Rules of Civil Procedure and/or this Court's Local Rules.

18.    These responses are made solely for the purposes of this action.

19.    These General Objections apply to all of Telcordia's responses. To the extent that specific objections are cited in a response, those specific citations are provided because they are believed to be particularly applicable to the specific interrogatories and are not to be construed as a waiver of any other General Objection applicable to the information falling within the scope of the interrogatory.

## RESPONSES TO INTERROGATORIES

### INTERROGATORY NO. 2:

Describe with full particularity all factual and legal bases referring or relating to your contention that Lucent's "infringement of the '306 patent was deliberate and willful."

*Telcordia Complaint ¶ E.*

4

*Contains Telcordia Confidential Information - Subject to Protective Order*

**SUPPLEMENTAL RESPONSE:**

Telcordia incorporates by reference each of the applicable general objections as though fully set forth herein. Telcordia objects to this interrogatory to the extent it seeks information that is protected by the attorney-client privilege or the attorney work product immunity. Telcordia objects to this interrogatory as premature to the extent it requests information that will be disclosed at a time ordered by a court scheduling order or pursuant to a mutually agreeable schedule negotiated by the parties to this action. Telcordia objects to this interrogatory as premature to the extent discovery of Lucent's documents, materials, and information are needed to respond. Telcordia also objects to this interrogatory as unduly burdensome to the extent that it seeks information already in Lucent's possession, custody, or control. Telcordia objects to this interrogatory as unduly burdensome to the extent it requires Telcordia to respond in a manner beyond that required by the Federal Rules of Civil Procedure.

Pursuant to an agreement between the parties, the discovery requests of both Lucent and Telcordia that are directed to the '306 patent, or to the "Patents-In-Suit," shall be interpreted to cover not only the '306 patent, but also the '633 and '763 patents. Telcordia's supplementation of this interrogatory with information regarding the '633 and '763 patents incorporates and is subject to all of the General and Specific Objections already asserted as to this interrogatory.

Subject to and without waiving any of these general and specific objections and reserving its right to supplement its response as discovery proceeds, Telcordia responds to this interrogatory as follows:

## REDACTED

5

REDACTED


REDACTED


At present, Telcordia has not alleged that Lucent's infringement of the '763 patent has been willful. Telcordia reserves the right to amend its allegations and supplement this answer based upon further discovery.

*Contains Telcordia Confidential Information – Subject to Protective Order*

ASHBY & GEDDES

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, Delaware 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Plaintiff*
*Telcordia Technologies, Inc*

*Of Counsel:*

Donald R. Dunner
Richard H. Smith
Don O. Burley
Houtan K. Esfahani
FINNEGAN, HENDERSON, FARABOW,
   GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C. 20001
(202) 408-4000

York M. Faulkner
FINNEGAN, HENDERSON, FARABOW,
   GARRETT & DUNNER, L.L.P.
11955 Freedom Drive
Reston, Virginia 20190-5675
(571) 203-2700

Dated: May 22, 2006

169724.1

7

*Contains Telcordia Confidential Information - Subject to Protective Order*

## CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of May, 2006, the attached **TELCORDIA**

**TECHNOLOGIES, INC.'S SUPPLEMENTAL RESPONSE TO LUCENT**

**TECHNOLOGIES INC.'S INTERROGATORY NO. 2** was served upon the below-named

counsel of record at the address and in the manner indicated:

John W. Shaw, Esquire                                                    HAND DELIVERY
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street
Wilmington, DE  19801

Steven C. Cherny, Esquire                                          VIA FEDERAL EXPRESS
Latham & Watkins LLP
885 Third Avenue, Suite 1000
New York, NY  10022

David A. Nelson, Esquire                                            VIA FEDERAL EXPRESS
Latham & Watkins LLP
Sears Tower, Suite 5800
Chicago, IL  60606

David M. Farnum, Esquire                                           VIA FEDERAL EXPRESS
Latham & Watkins LLP
555 Eleventh Street, N.W., Suite 1000
Washington, DC  20004-1304

Sean S. Pak, Esquire                                                   VIA FEDERAL EXPRESS
Latham & Watkins
633 West Fifth Street, Suite 4000
Los Angeles, CA  90071-2007

Tiffany Geyer Lydon

150909.1

# EXHIBIT 6

**Patent Declarations**

February 3, 1995

The ATM Forum
303 Vintage Park
Foster City, CA 94404

To Whom it May Concern

Bellcore has been granted US. Patent No. 5,260,978 for Synchronous Residual Time Stamp for Timing Recovery in a Broadband Network. This Invention may apply to the ATM Adaptation Layer Type I (AAL1) ANSI standard which is used in the ATM Forum Circuit Emulation Service specification. In accordance with ATM Forum and ANSI procedures Bellcore is currently preparing the appropriate ANSI patent holder statement.

It is Bellcore's policy that Bellcore patents are available for licensing on a non-exclusive and nondiscriminatory basis and at reasonable royalties. However, no royalties need be paid to Bellcore on direct sales to a Bellcore Owner Company or it's affiliate which exercises its "have made rights" under its patent license with Bellcore. Further, the patent may be licensed independent af any technical information that might also be obtainable by license from Bellcore, if desired.

Charles Suchyta

Vice President & Assistant General Counsel

# EXHIBIT 7

057224.1004

Bruce P. Sidran
Director, Business Development & Licensing
331 Newman Springs Road
NVC 3Z-309
Red Bank, NJ 07701-5699
(908) 758-4646 voice
(908) 758-4371 facsimile
sidran@bellcore.com

January 8, 1997

Mr. Henry Schacht
Chief Executive
Lucent Technologies, Inc.
600-700 Mountain Avenue
Murray Hill, NJ 07974

Re: Licensing of Bellcore's ATM patent portfolio

Dear Mr. Schacht:

As a manufacturer of ATM equipment, you may be interested to know that, for a limited time, Bellcore is offering a license to its extensive ATM patent portfolio in accordance with the discounted terms outlined below. THIS DISCOUNTED OFFER WILL EXPIRE AT 5 P.M. EDT, MONDAY, MARCH 31, 1997. The discounted terms described in this letter will no longer be available after that time.

If you are interested in obtaining a license to one or more of the patents on the attached list, please contact Bruce Sidran, Director of Business Development & Licensing at (908) 758-4646. Because it is offering non-discriminatory terms to all parties, Bellcore will not be changing or negotiating any provisions of its standard ATM license.

Two different license packages are available. At your option, you may choose either a license covering all forms of ATM equipment, including ATM test equipment, or a license limited to ATM test equipment only.

Compensation for either type of license will consist of a single lump sum payment plus ongoing royalties based upon the actual invoice price of the ATM equipment, or ATM test equipment, or fair market value, as applicable. Both the single lump sum payment and the royalty rate will be discounted to the terms shown in this letter, but only during the term of this offer.

In addition to the single lump sum payment, back royalties, covering ATM equipment or ATM test equipment sold prior to the effective date of the license will be due at contract signing.

- For a license covering any form of ATM equipment, the discounted single lump sum payment will be $100,000. For a limited license covering ATM test equipment only, the discounted single lump sum payment will be $25,000.

- The discounted royalty rate on either ATM equipment or ATM test equipment sold will be 0.5% for the first patent or patent application licensed, and will be

Letter to Mr. Schacht
January 6, 1997
Page 2 of 2

      increased 0.05% for each additional patent licensed, not to exceed a total discounted royalty rate of 1.0%.

    We hope that you will find value in Bellcore's patented inventions, and we look forward to further discussions.

    Sincerely,

*Bruce P. Sdran*

# EXHIBIT 8

REDACTED

# EXHIBIT 9

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

TELCORDIA TECHNOLOGIES, INC.,    )
                            )
        Plaintiff,         )
                            )
    v.                )   Civil Action No. 04-875-GMS
                            )
LUCENT TECHNOLOGIES, INC.,    )
                            )
        Defendant.      )

### PLAINTIFF TELCORDIA TECHNOLOGIES, INC.'S
### RESPONSE TO DEFENDANT LUCENT TECHNOLOGIES, INC.'S
### THIRD SET OF REQUESTS FOR ADMISSION

Plaintiff Telcordia Technologies Inc. ("Telcordia"), by its attorneys, hereby objects and responds to Defendant Lucent Technologies, Inc.'s Third Set of Requests for Admission to Telcordia.

### GENERAL OBJECTIONS

1.     Telcordia objects to each request for admission to the extent it seeks to require Telcordia to answer on behalf of any person or entity. Telcordia responds to these requests for admission on its own behalf only.

2.     Telcordia objects to each definition, instruction, and request for admission to the extent it would require Telcordia to respond beyond that required by the Federal Rules of Civil Procedure.

3.     Telcordia objects to Lucent's request for admission to the extent they seek third-party information in Telcordia's possession, custody, or control that is subject to agreement, court order, or other duty preventing disclosure to Lucent. Telcordia objects to responding to requests for admission that require the disclosure of trade secrets or other proprietary and

*Contains Telcordia Confidential Information Subject to Protective Order*

information." Telcordia also objects to this request as seeking an expert opinion before the time set by this Court for expert discovery.

Subject to and without waiving the foregoing general and specific objections,

## REDACTED

### REQUEST FOR ADMISSION NO. 120:

Admit that the license of the asserted patents to American Telephone and Telegraph Co. does not require American Telephone and Telegraph Co. to mark any licensed product with any patent number of the asserted patents.

### RESPONSE:

Telcordia objects to this request to the extent it seeks Telcordia's interpretation of a license, which speaks for itself and is the best evidence of what it does or does not require. Telcordia also objects to this request to the extent it improperly seeks a legal conclusion regarding whether there is or is not a requirement to mark. Telcordia objects to this request as ambiguous to the extent Lucent has not specifically identified the license of the asserted patents to American Telephone and Telegraph Co. by a production number. Telcordia objects to this request as not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing general and specific objections, Telcordia responds as follows: Denied, except that     REDACTED

## REDACTED

### REQUEST FOR ADMISSION NO. 121:

Admit that American Telephone and Telegraph Co. does not mark any licensed products with the patent number of any asserted patents.

### RESPONSE:

Telcordia objects to this request as vague, ambiguous, and legally improper in failing to define the phrase "licensed products." Telcordia objects to this request as vague, ambiguous,

131

*Contains Telcordia and Third Party Confidential Information Subject to Protective Order*

and legally improper in failing to define the "products," since Lucent has not described the

configuration, structure, features, provisioning, and conditions that apply to the "products" and

any hardware or software elements that may be included in the products, such as the presence or

absence of various components, code, power, or data. Telcordia objects to this request to the

extent that it seeks information that is not in Telcordia's possession, custody, or control.

Telcordia objects to this request as not reasonably calculated to lead to the discovery of

admissible evidence. Telcordia objects to this request as legally irrelevant in failing to specify an

appropriate timeframe. Telcordia objects to this request as overbroad and irrelevant in failing to

limit the request to the specific patents that were the subject of any license agreement, and in

failing to limit the request to the patents in suit.

**Subject to and without waiving the foregoing general and specific objections, Telcordia
responds as follows: Denied. REQUEST FOR ADMISSION NO. 122:**

> Admit that the license of the asserted patents to Ameritech Corp. did not require
> Ameritech Corp. to mark any licensed product with any patent number of the asserted
> patents.

**RESPONSE:**

Telcordia objects to this request to the extent it seeks Telcordia's interpretation of a

license, which speaks for itself and is the best evidence of what it does or does not require.

Telcordia also objects to this request to the extent it improperly seeks a legal conclusion

regarding whether there is or is not a requirement to mark. Telcordia objects to this request as

ambiguous to the extent Lucent has not specifically identified the license of the asserted patents

to American Telephone and Telegraph Co. by a production number. Telcordia objects to this

request as not reasonably calculated to lead to the discovery of admissible evidence.

*Contains Telcordia and Third Party Confidential Information Subject to Protective Order*

Subject to and without waiving the foregoing general and specific objections, Telcordia

responds as follows: Denied, except that        **REDACTED**

**REDACTED**

## REQUEST FOR ADMISSION NO. 123:

Admit that Ameritech Corp. did not mark any licensed products with the patent number
of any asserted patents.

**RESPONSE:**

Telcordia objects to this request as vague, ambiguous, and legally improper in failing to

define the phrase "licensed products." Telcordia objects to this request as vague, ambiguous,

and legally improper in failing to define the "products," since Lucent has not described the

configuration, structure, features, provisioning, and conditions that apply to the "products" and

any hardware or software elements that may be included in the products, such as the presence or

absence of various components, code, power, or data. Telcordia objects to this request to the

extent that it seeks information that is not in Telcordia's possession, custody, or control.

Telcordia objects to this request as not reasonably calculated to lead to the discovery of

admissible evidence. Telcordia objects to this request as legally irrelevant in failing to specify an

appropriate timeframe. Telcordia objects to this request as overbroad and irrelevant in failing to

limit the request to the specific patents that were the subject of any license agreement, and in

failing to limit the request to the patents in suit.

Subject to and without waiving the foregoing general and specific objections, Telcordia

responds as follows: Denied.

## REQUEST FOR ADMISSION NO. 124:

Admit that the license of the asserted patents to Bell Atlantic Science & Technology, Inc.
did not require Bell Atlantic Science & Technology, Inc. to mark any licensed product
with any patent number of the asserted patents.

133

*Contains Telcordia and Third Party Confidential Information Subject to Protective Order*

**RESPONSE:**

Telcordia objects to this request to the extent it seeks Telcordia's interpretation of a license, which speaks for itself and is the best evidence of what it does or does not require. Telcordia also objects to this request to the extent it improperly seeks a legal conclusion regarding whether there is or is not a requirement to mark. Telcordia objects to this request as ambiguous to the extent Lucent has not specifically identified the license of the asserted patents to American Telephone and Telegraph Co. by a production number. Telcordia objects to this request as not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing general and specific objections, Telcordia responds as follows: Denied, except that **REDACTED**

**REDACTED**

**REQUEST FOR ADMISSION NO. 125:**

Admit that Bell Atlantic Science & Technology, Inc. did not mark any licensed products with the patent number of any asserted patents.

**RESPONSE:**

Telcordia objects to this request as vague, ambiguous, and legally improper in failing to define the phrase "licensed products." Telcordia objects to this request as vague, ambiguous, and legally improper in failing to define the "products," since Lucent has not described the configuration, structure, features, provisioning, and conditions that apply to the "products" and any hardware or software elements that may be included in the products, such as the presence or absence of various components, code, power, or data. Telcordia objects to this request to the extent that it seeks information that is not in Telcordia's possession, custody, or control. Telcordia objects to this request as not reasonably calculated to lead to the discovery of admissible evidence. Telcordia objects to this request as legally irrelevant in failing to specify an

134

appropriate timeframe. Telcordia objects to this request as overbroad and irrelevant in failing to limit the request to the specific patents that were the subject of any license agreement, and in failing to limit the request to the patents in suit.

Subject to and without waiving the foregoing general and specific objections, Telcordia responds as follows: Denied.

### REQUEST FOR ADMISSION NO. 126:

Admit that the license of the asserted patents to Bellsouth Telecommunications, Inc. does not require Bellsouth Telecommunications, Inc. to mark any licensed product with any patent number of the asserted patents.

### RESPONSE:

Telcordia objects to this request to the extent it seeks Telcordia's interpretation of a license, which speaks for itself and is the best evidence of what it does or does not require. Telcordia also objects to this request to the extent it improperly seeks a legal conclusion regarding whether there is or is not a requirement to mark. Telcordia objects to this request as ambiguous to the extent Lucent has not specifically identified the license of the asserted patents to American Telephone and Telegraph Co. by a production number. Telcordia objects to this request as not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing general and specific objections, Telcordia responds as follows: Denied, except that            **REDACTED**

        **REDACTED**

### REQUEST FOR ADMISSION NO. 127:

Admit that Bellsouth Telecommunications, Inc. does not mark any licensed products with the patent number of any asserted patents.

135

**RESPONSE:**

Telcordia objects to this request as vague, ambiguous, and legally improper in failing to define the phrase "licensed products." Telcordia objects to this request as vague, ambiguous, and legally improper in failing to define the "products," since Lucent has not described the configuration, structure, features, provisioning, and conditions that apply to the "products" and any hardware or software elements that may be included in the products, such as the presence or absence of various components, code, power, or data. Telcordia objects to this request to the extent that it seeks information that is not in Telcordia's possession, custody, or control. Telcordia objects to this request as not reasonably calculated to lead to the discovery of admissible evidence. Telcordia objects to this request as legally irrelevant in failing to specify an appropriate timeframe. Telcordia objects to this request as overbroad and irrelevant in failing to limit the request to the specific patents that were the subject of any license agreement, and in failing to limit the request to the patents in suit.

Subject to and without waiving the foregoing general and specific objections, Telcordia responds as follows: Denied.

**REQUEST FOR ADMISSION NO. 128:**

Admit that the license of the asserted patents to Pacific Bell does not require Pacific Bell to mark any licensed product with any patent number of the asserted patents.

**RESPONSE:**

Telcordia objects to this request to the extent it seeks Telcordia's interpretation of a license, which speaks for itself and is the best evidence of what it does or does not require. Telcordia also objects to this request to the extent it improperly seeks a legal conclusion regarding whether there is or is not a requirement to mark. Telcordia objects to this request as ambiguous to the extent Lucent has not specifically identified the license of the asserted patents

136

*Contains Telcordia and Third Party Confidential Information Subject to Protective Order*

to American Telephone and Telegraph Co. by a production number. Telcordia objects to this

request as not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing general and specific objections, Telcordia

responds as follows: Denied, except that                **REDACTED**

        **REDACTED**


## REQUEST FOR ADMISSION NO. 129:

Admit that Pacific Bell does not mark any licensed products with the patent number of
any asserted patents.

**RESPONSE:**

Telcordia objects to this request as vague, ambiguous, and legally improper in failing to

define the phrase "licensed products." Telcordia objects to this request as vague, ambiguous,

and legally improper in failing to define the "products," since Lucent has not described the

configuration, structure, features, provisioning, and conditions that apply to the "products" and

any hardware or software elements that may be included in the products, such as the presence or

absence of various components, code, power, or data. Telcordia objects to this request to the

extent that it seeks information that is not in Telcordia's possession, custody, or control.

Telcordia objects to this request as not reasonably calculated to lead to the discovery of

admissible evidence. Telcordia objects to this request as legally irrelevant in failing to specify an

appropriate timeframe. Telcordia objects to this request as overbroad and irrelevant in failing to

limit the request to the specific patents that were the subject of any license agreement, and in

failing to limit the request to the patents in suit.

Subject to and without waiving the foregoing general and specific objections, Telcordia

responds as follows: Denied.

*Contains Telcordia and Third Party Confidential Information Subject to Protective Order*

## REQUEST FOR ADMISSION NO. 130:

Admit that the license of the asserted patents to Southwestern Bell Telephone Company does not require Southwestern Bell Telephone Company to mark any licensed product with any patent number of the asserted patent.

**RESPONSE:**

Telcordia objects to this request to the extent it seeks Telcordia's interpretation of a license, which speaks for itself and is the best evidence of what it does or does not require. Telcordia also objects to this request to the extent it improperly seeks a legal conclusion regarding whether there is or is not a requirement to mark. Telcordia objects to this request as ambiguous to the extent Lucent has not specifically identified the license of the asserted patents to American Telephone and Telegraph Co. by a production number. Telcordia objects to this request as not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing general and specific objections, Telcordia responds as follows: Denied, except that                          **REDACTED**

**REDACTED**

## REQUEST FOR ADMISSION NO. 131:

Admit that Southwestern Bell Telephone Company does not mark any licensed products with the patent number of any asserted patents.

**RESPONSE:**

Telcordia objects to this request as vague, ambiguous, and legally improper in failing to define the phrase "licensed products." Telcordia objects to this request as vague, ambiguous, and legally improper in failing to define the "products," since Lucent has not described the configuration, structure, features, provisioning, and conditions that apply to the "products" and any hardware or software elements that may be included in the products, such as the presence or absence of various components, code, power, or data. Telcordia objects to this request to the

138

*Contains Telcordia and Third Party Confidential Information Subject to Protective Order*