IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TELCORDIA TECHNOLOGIES, INC., ) <br> ) <br> Plaintiff/Counterclaim Defendant, ) <br> ) <br> v. ) <br> ) <br> LUCENT TECHNOLOGIES, INC., ) <br> ) <br> Defendant/Counterclaim Plaintiff. ) <br> ) | Civil Action No. 04-875-GMS |
| TELCORDIA TECHNOLOGIES, INC., ) <br> ) <br> Plaintiff/Counterclaim Defendant, ) <br> ) <br> v. ) <br> ) <br> CISCO SYSTEMS, INC., ) <br> ) <br> Defendant/Counterclaim Plaintiff. ) <br> ) | Civil Action No. 04-876-GMS |

**REPLY BRIEF OF PLAINTIFF TELCORDIA TECHNOLOGIES, INC.
IN SUPPORT OF MOTION TO PRECLUDE DEFENDANTS FROM PRESENTING
EXPERT OPINIONS ON INVALIDITY AND UNENFORCEABILITY BY AN
ADDITIONAL EXPERT WHO NEVER PREPARED OR SUBMITTED AN OPENING
EXPERT REPORT ON INVALIDITY AND UNENFORCEABILITY**

*Of Counsel:*

Donald R. Dunner
Don O. Burley
Richard H. Smith
Houtan K. Esfahani
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
901 New York Avenue, NW
Washington, DC 20001-4413
(202) 408-4000

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE 19899
302-654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Plaintiff
Telcordia Technologies, Inc.*

York M. Faulkner
FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER
Two Freedom Square
11955 Freedom Square
Reston, VA  20190-5675
(650) 849-6600

Dated:  September 1, 2006

# TABLE OF CONTENTS

I. Introduction ........................................................................................................................ 1

II. Argument ........................................................................................................................... 4

    A. Telcordia's Motion to Preclude Expert Testimony Is Not a Discovery Matter Falling Within Paragraph 3 of the Revised Scheduling Order ................................ 4

    B. Cisco and Lucent Chose Dr. Jones as Their '633 Patent Validity Expert .............. 5

    C. Defendants' Pretext for Adding a New Expert—"Efficiency"—Is Misplaced ...... 7

    D. Reply Expert Reports Cannot Serve as an Additional Opportunity to Disclose New Experts Pursuant to Fed. R. Civ. P. 26(a)(2) ................................................. 10

    E. Dr. Acampora Never "Adopted" Dr. Jones' Report ............................................. 11

    F. Telcordia Is Prejudiced by the Late Disclosure of a New Expert ......................... 12

    G. Telcordia's Request for a Second Day of Deposition Is Now Moot ................... 13

III. Conclusion ...................................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**

*Lippe v. Bairnco Corp.*,
    249 F.Supp.2d 357 (S.D.N.Y. 2003) .................................................................................. 8

**Rules**

D. Del. L.R. 7.1.3(c)(1)(B) ............................................................................................................ 2

Fed. R. Civ. P. 16(b) ............................................................................................................... 3, 4

Fed. R. Civ. P. 26(a)(2) ...................................................................................................... passim

I.  **Introduction**

In their response to Telcordia's motion, the defendants distort the clear and straightforward expert disclosure requirements of Fed. R. Civ. P. 26(a)(2) and Paragraph 3 of the Revised Scheduling Order. These rules require that a party disclose, *inter alia*, the opinions and identities of its experts in its opening expert reports. The rules do not allow for the disclosure of this information for the first time in reply expert reports.

The Cisco and Lucent defendants seek to circumvent the straightforward expert disclosure rules, as applied to their expert reports concerning '633 patent validity, by disingenuously arguing that they never served an opening expert report on '633 patent validity, but merely "adopted" the expert report on '633 patent validity that had been served by a different defendant (Alcatel) in a related but different case. The Cisco and Lucent defendants extend this unique theory even further by contending that they are free to identify a wholly new expert and present his previously undisclosed opinions on '633 patent validity for the first time in a reply report, as long as this new expert purports to "adopt" the original "adopted" opening report on '633 patent validity while presenting his own opinions on '633 patent validity in the reply report.

Defendants' strange contortion of the expert disclosure rules is nothing more than an excuse for having ignored the rules and having done what they perceived to be in their strategic interest—without regard to the fact that it yielded an unfairly prejudicial end result. Cisco and Lucent transparently decided for tactical reasons to jettison the expert who they both retained to author their Rule 26(a)(2) opening expert report on '633 patent validity—a report that was served and filed on behalf of Cisco and Lucent, not "adopted." After the opinions of their chosen expert on '633 patent validity were discredited in the responsive expert report submitted by Telcordia's expert on '633 patent validity, Cisco and Lucent simply made the decision that they needed to

1

use a new expert with different credentials and views, even though their substitute expert had not served an opening report on '633 patent validity and his identity and opinions were not timely or properly disclosed under the Federal Rules or the Court's Revised Scheduling Order.

The defendants cite no authority in support of their unconventional interpretation of the expert disclosure rules. Rather, the defendants' position conflicts with the staged expert disclosure framework set forth in the Federal Rules and the Revised Scheduling Order, which requires a Fed. R. Civ. P. 26(a)(2)(A)-(B) disclosure by the party bearing the burden of proof *before* the responding party must determine which of its experts will respond to the opening disclosure, and *before* the responding expert must provide a substantive responding report.

The defendants do not even mention the touchstone expert disclosure Rule—Fed. R. Civ. P. 26(a)(2)—in their response to Telcordia's motion. Indeed, other than an obscure reference to the sweeping efficiency goals stated in Rule 1 of the Federal Rules of Civil Procedure, the defendants cite no authority in support of their positions at all (the table of citations required by D. Del. L.R. 7.1.3(c)(1)(B) is conspicuously absent from the defendants' brief).

Moreover, Cisco and Lucent make no effort to address the unfair prejudice to Telcordia caused by defendants' violation of the expert disclosure rules and the Court's Revised Scheduling Order. Defendants' introduction of a new expert with previously undisclosed opinions on '633 patent validity was not only sprung on Telcordia *after* the Court's deadline for opening expert disclosures under Fed. R. Civ. P. 26(a)(2), but also *after* Telcordia had already served its answering expert report. Specifically, Telcordia's expert, Dr. Clark, served an answering expert report on '633 patent validity that discredited the positions taken by defendants' first expert, Dr. Jones, in their opening report. Only after the defendants were in possession of Dr. Clark's answering report did they unilaterally purport to interject a different

2

expert on '633 patent validity, Dr. Acampora, into the case as a second expert on exactly the same issue already covered by Dr. Jones in his opening report. Telcordia had no way to anticipate that defendants would substitute a new expert with different credentials and views—no mention of which appears in defendants' opening report on '633 patent validity. Under the Rules and in accordance with the Court's Revised Scheduling Order, Telcordia has no way to respond to Dr. Acampora's opinions on '633 patent validity. Defendants' brief does not even acknowledge this prejudice to Telcordia caused by defendants' use of a substitute expert on '633 patent validity whose identity and opinions were not timely or properly disclosed under the Federal Rules or the Court's Revised Scheduling Order.

Nor do Cisco and Lucent address their failure to seek leave of Court to substitute a new expert with different credentials and views on '633 patent validity after the deadline for expert disclosures. Once defendants announced, after Telcordia's answering expert report on '633 patent validity was submitted, that they would no longer use their designated expert on '633 patent validity but instead intended to substitute a "preferred expert," Telcordia immediately (within two hours) objected to defendants' proposal. (D.I.s 230 and 217 at Ex. A).[1] At that point, the defendants still could and should have sought leave to modify the Court's Revised Scheduling Order—*before* the reply expert reports were due. Instead, the defendants took matters into their own hands—apparently because they recognized they would be unable to make any "showing of good cause" needed in order to modify a scheduling order under Fed. R. Civ. P. 16(b). Cisco and Lucent simply ignored Telcordia's objections, served a "reply" expert report containing the opinions on '633 patent validity of their substitute "preferred" expert, and made a

3

deliberate choice to distance themselves from their previously designated '633 patent validity expert, Dr. Jones, by not instructing him to prepare any reply expert report.

In their response to Telcordia's motion, rather than address the merits under the applicable Federal Rules—Fed. R. Civ. P. 16(b) & 26(a)—and rather than address the prejudice suffered by Telcordia as a result of the last minute addition of a different expert on '633 patent validity with previously undisclosed opinions, defendants—without basis—attack the procedural propriety of Telcordia's motion and engage in hyperbole about Telcordia's decision to pursue its rights before the International Trade Commission ("ITC") that has no relevance to this motion. These procedural attacks, however, not only are unfounded and irrelevant, respectively, but they also are hypocritical given that Cisco and Lucent invited Telcordia to file the current motion after Telcordia made its objections known and after defendants decided they would not notify the Court or seek leave to modify the Court's Revised Scheduling Order.

## II.  Argument

### A.  Telcordia's Motion to Preclude Expert Testimony Is Not a Discovery Matter Falling Within Paragraph 3 of the Revised Scheduling Order

By its motion, Telcordia contends that the defendants are in clear violation of the expert disclosure rules set forth in the Court's Revised Scheduling Order and in the Federal Rules. Telcordia therefore is asking the Court to strike the defendants' reply expert report, and to preclude the defendants' new substitute expert from offering testimony at trial. This is not the kind of discovery or scheduling matter to which the Court's telephone procedure applies, and Paragraph 8 of the Court's Revised Scheduling Order expressly states that all other applications

---

[1] Citations to documents with docket item numbers in both cases are in the form of the D.I. number for C.A. No. 04-875-GMS (the Lucent case) followed by the D.I. number for C.A. No. 04-876-GMS (the Cisco case).

4

to the Court "shall be by written motion filed with the Clerk." Defendants' devotion of time to an attack on the procedural vehicle by which Telcordia has sought relief is nothing more than a baseless diversion.[2]

Moreover, defendants' attempt to strike Telcordia's motion on procedural grounds is particularly disingenuous given that they knew beforehand that Telcordia intended to file a motion and did not object or question the procedural proprietary of that approach in any way. Specifically, when Telcordia explained its intention to file a motion to strike, the defendants simply stated: "we understand that Telcordia now intends to move to strike Dr. Acampora's report and we will respond specifically after we see your motion." (D.I.s 230 and 217 at Ex. B). The defendants' disproportionate focus on the procedural nature of Telcordia's motion obviously is designed to distract from the fact that the defendants have no effective response on the merits.

### B.   Cisco and Lucent Chose Dr. Jones as Their '633 Patent Validity Expert

As part of their attempt to distance themselves from Dr. Jones (and replace him with a new expert with different credentials and opinions), Cisco and Lucent claim that Dr. Jones was not really their expert, but rather was Alcatel's expert. They argue that Cisco and Lucent merely "adopted" Alcatel's expert report on '633 patent validity, and that because the Alcatel case is now stayed, they should be able to use their "preferred" expert on '633 patent validity, Dr. Acampora. Not surprisingly, defendants offer no factual support for their argument and no legal support for their position in the Federal Rules, the Court's Revised Scheduling Order, or elsewhere.

---

[2] Indeed, had defendants been sincerely concerned about complying with the Court's Revised Scheduling Order, they would have followed the procedures set forth in Fed. R. Civ. P. 16(b) and sought leave of Court to modify the schedule for filing of expert reports *before* unilaterally filing the reply expert report that precipitated this motion to strike.

5

Pursuant to the Court's Revised Scheduling Order, when a party intends to use an expert at trial to present evidence, the party bearing the burden of proof must serve an opening expert report. (D.I.s 83 and 72 at para. 3). Under the Federal Rules, that report must be "prepared and signed" by the expert who may be used at trial. Fed. R. Civ. P. 26(a)(2)(A)-(B). As such, on June 28, 2006, Telcordia was served with an expert report prepared and signed by Dr. Jones—captioned in the Cisco case and the Lucent case—addressing the subject of '633 patent validity. (Ex. A). Dr. Jones' report was the only opening expert report on '633 patent validity served by Cisco and Lucent.

During his deposition, Dr. Jones confirmed that he was, in fact, the expert for Cisco and Lucent on '633 patent validity. He testified that he was retained by Cisco and Lucent (in addition to Alcatel), that the opening report submitted by Cisco and Lucent was his report, and that he prepared this report on behalf of Cisco and Lucent (in addition to Alcatel):

> Q. Is Exhibit Jones 001 your expert report, Dr. Jones, other than the large number of exhibits?
>
> A. It would appear to be, yes.
>
> Q. Who prepared Exhibit Jones 001?
>
> A. Exhibit Jones 001 reflects my thoughts on the validity of the patent.
>
> Q. Did you prepare it on behalf of Lucent and Cisco as well as Alcatel?
>
> A. Yes.
>
> Q. Who retained you in connection with this case?
>
> A. I was retained initially by Alcatel and subsequently by Lucent and Cisco.

Jones Deposition Tr. at 20-21 (objections omitted) (Ex. B).

Clearly, Dr. Jones was the chosen expert of Cisco and Lucent on '633 patent validity. Cisco and Lucent should not be permitted to distance themselves from Dr. Jones by now

6

claiming that they merely "adopted" someone else's expert—a procedure that was not followed as a matter of fact and is not recognized as a matter of law.

### C. Defendants' Pretext for Adding a New Expert—"Efficiency"—Is Misplaced

Nor should defendants be permitted to identify a new expert and present his previously undisclosed opinions on '633 patent validity for the first time in a reply report based on the supposed "efficiency." On its face, defendants' argument is unsupportable because it is disorderly and inefficient for a party to use a new expert with different credentials and views on a particular issue after opening and answering expert reports on that same issue have already been served.

Defendants' makeweight argument is that Telcordia's filing of an ITC complaint (before any expert reports were due), followed by Alcatel's decision to obtain a mandatory stay of its case, should result in a reduction in the number of expert witnesses in the remaining cases. But this contention is specious because, while one of the three defendants is no longer actively involved in the district court cases, none of the substantive issues involved in the Cisco and Lucent cases has in any way been affected by the stay of the Alcatel case. Cisco and Lucent need exactly the same number of expert reports on exactly the same issues as they needed before the Alcatel case was stayed.[3]

---

[3] As to trial testimony directed toward '633 patent validity, defendants' actions would result in a unilateral substitution of experts—not a reduction of experts. Moreover, as an apparent back-up argument, the defendants claim that if they are precluded from swapping experts, they "remain prepared to use Dr. Jones for their case-in-chief regarding invalidity of the '633 patent and Dr. Acampora for their rebuttal case"—resulting in an increase in the number of experts testifying on '633 patent validity. Telcordia notes that the defendants' back up argument is at odds with the Court's standard Final Pretrial Order, which mandates that "[o]nly one expert witness on each subject for each party will be permitted to testify absent good cause shown." Standard Final Pretrial Order at n. 5.

As a result, neither the stay of the Alcatel action nor "efficiency" can explain the introduction of a new expert by Cisco and Lucent with previously undisclosed opinions on '633 patent validity *after* Telcordia already served its answering expert report. The decision by Cisco and Lucent to substitute experts at that time was not, as defendants claim, an issue that "arose only because of [Telcordia's] filing of the ITC action," which occurred on May 15, 2006. Plainly, Cisco and Lucent decided to drop Dr. Jones, who they both had retained to author their Rule 26(a)(2) opening expert report on '633 patent validity, because Telcordia's expert served an answering expert report on July 21, 2006, that discredited Dr. Jones' positions. Similarly, it is beyond credulity for Cisco and Lucent to contend that it is somehow more "efficient" to have Dr. Jones prepare and file an opening expert report on '633 patent validity and later substitute a different expert to prepare and file a reply expert report in support of their position on '633 patent validity.

Of course, defendants' Rule 26(a)(2)(A)-(B) disclosures reflected a strategy choice that Cisco and Lucent now want to undo for reasons unstated in their response to this motion. If, as defendants now claim, Dr. Acampora was the "preferred" expert of Cisco and Lucent on '633 patent validity from the outset, they would have served an opening expert report on that issue that was authored by Dr. Acampora. Instead, Cisco and Lucent chose to retain the same expert as Alcatel and file the same expert report as Alcatel. Indeed, that choice is consistent with defendants' choices concerning their technical expert reports on the '306 and '763 patents, where Cisco and Lucent also served the same report by the same expert in each of the separate cases. By doing so, Cisco and Lucent guarded against inconsistent positions that may have emerged if defendants had different experts opine on the same issue. In other words, defendants made a strategic decision to present united positions.

8

Cisco and Lucent should not be permitted to violate the Court's Revised Scheduling Order because they now want to change their prior strategy. Telcordia complied with the Court's Order by timely responding to Dr. Jones' opening expert report on '633 patent validity with an answering expert report on July 21, 2006, that successfully discredited defendants' positions. While Cisco and Lucent thereafter decided they would like to replace their '633 patent validity expert in light of these developments, the Federal Rules to not permit a "do-over." *Lippe v. Bairnco Corp.*, 249 F.Supp.2d 357, 385-86 (S.D.N.Y. 2003).[4]

Finally, defendants falsely suggest that Telcordia has also changed its lineup of expert witnesses. In particular, to excuse their bait-and-switch of experts and expert reports on '633 patent validity, defendants incorrectly assert, "[i]ndeed, Telcordia will also now be offering only two expert witnesses as opposed to the three experts it originally designated." (D.I.s 237 and 224 at 3-4). In fact, each one of Telcordia's three expert witnesses submitted Rule 26(a)(2)(A)-(B) expert disclosures that were timely and properly disclosed under the Federal Rules and the Court's Revised Scheduling Order. Neither the stay of the Alcatel case nor the filing by Telcordia of an ITC complaint had any effect on Telcordia's decision to present the opinions of those three experts in the district court cases. Indeed, in the one instance where Telcordia wanted to file an additional Fed. R. Civ. P. 26(a)(2)(B) expert report, Telcordia did not simply take matters into its own hands (as defendants have done here), but first sought—and was denied—leave of Court. (D.I.s 203 and 190).

---

[4] As Telcordia pointed out in its opening brief, there is no provision in the Federal Rules that would permit substitution of an expert by simply purporting to have a new expert "adopt" a report that was "prepared and signed" by a different expert, and courts have expressly disapproved of substitution of experts without good cause where the other party would be prejudiced. Defendants fail to address any of the legal authority identified by Telcordia and fail

9

### D. Reply Expert Reports Cannot Serve as an Additional Opportunity to Disclose New Experts Pursuant to Fed. R. Civ. P. 26(a)(2)

In their response brief, defendants claim that "nothing in the Federal Rules or the Court's Scheduling Order prohibits a party from providing an opening report from one expert in support of its case in chief, and a reply report from another expert. . . ." (D.I.s 237 and 224 at 4). Thus, under defendants' theory, the reply reports contemplated by the Court's Revised Scheduling Order provide each party with the opportunity to disclose the identity, qualifications, and opinions of a new expert to testify on the same subjects that are supposed to be set forth in that party's original Fed. R. Civ. P. 26(a)(2) opening reports.

Contrary to this unsupported assertion, defendants' position is in direct conflict with the expert disclosure framework set forth in the Federal Rules and the Court's Revised Scheduling Order. Under the Federal Rules, opening expert disclosures must include, *inter alia*, the identity of the expert, the opinions of the expert and the bases and reasons for those opinions, the qualifications of the expert, and the publications authored by the expert. Fed. R. Civ. P. 26(a)(2)(A)-(B). With the benefit of this knowledge, the responding party then determines which of its experts will respond and prepares a responding expert report "at the times and in the sequence" set forth in the Revised Scheduling Order, and as contemplated by Fed. R. Civ. P. 26(a)(2)(C). As such, the content of expert disclosures required by Fed. R. Civ. P. 26(a)(2)(A)-(B), and the staged opening and responding expert disclosures set out in Fed. R. Civ. P. 26(a)(2)(C) and the Revised Scheduling Order, ensure that the responding party has a fair opportunity to select an appropriate expert and provide a meaningful response, since the

---

to offer any legal support for the end-around procedure that they have adopted (replacing an expert in violation of a scheduling order without seeking leave of Court).

responding party has been informed who it must respond to, what that person's qualifications are, and what that person's opinions and bases for those opinions are.

Defendants' attempt to use a "reply" report as a vehicle to disclose a new expert under Fed. R. Civ. P. 26(a)(2)(A)-(B) with different credentials and views, even though their substitute expert had not served an opening report on '633 patent validity, would turn the entire framework of the Federal Rules and the Revised Scheduling Order on its head. The responding party would never have an opportunity to select an appropriate expert and prepare an informed and appropriate response to the new expert or to his opinions.

Contrary to defendants' suggestions, the expert (Dr. Jones) who prepared their opening expert report on '633 patent validity is the only expert that they properly disclosed under Fed. R. Civ. P. 26(a)(2)(A)-(B). Without leave of Court, the only person who submitted an expert report for defendants on '633 patent validity is the only person who can appropriately file a reply report on their behalf on that same issue. The defendants, however, deliberately elected, without leave of Court, to substitute experts late in the process—after defendants considered Telcordia's answering report on '633 patent validity.

During his deposition, Dr. Jones admitted that he has reviewed Telcordia's answering expert report on '633 patent validity. Dr. Jones further testified that he was not asked to prepare a reply report on behalf of Lucent or Cisco. (Ex. C). Therefore, it is clear that defendants are attempting to substitute a new expert for Dr. Jones on '633 patent validity and have deliberately forfeited their opportunity to file a reply report on '633 patent validity.

### E.   Dr. Acampora Never "Adopted" Dr. Jones' Report

Defendants recognize that Dr. Acampora did not "prepare and sign" an opening expert report on '633 patent validity, as required by Fed. R. Civ. P. 26(a)(2)(B). But defendants try to

circumvent the clear requirements of this Rule by suggesting that Dr. Acampora "adopted" the expert report that was "prepared and signed" by Dr. Jones.

Defendants offer no support for the proposition that a previously undisclosed expert can simply "adopt" the opening expert report of a properly disclosed expert. Indeed, that proposition is entirely inconsistent with the disclosure requirements of Fed. R. Civ. P. 26(a)(2)(A). But even if defendants' legal theory were correct—which it is not—Dr. Acampora did not in fact "adopt" Dr. Jones' report. As noted in Telcordia's opening brief, Dr. Acampora admitted during his deposition that he might have stated the opinions in Dr. Jones' report differently or might have emphasized or deemphasized different things. (D.I.s 203 and 217 at 8-10).

### F.  Telcordia Is Prejudiced by the Late Disclosure of a New Expert

In their brief, defendants contend that "Telcordia's brief, however, fails to identify any actual prejudice it has suffered." (D.I.s 237 and 224 at 4). This statement is simply false. In its opening brief, Telcordia explicitly outlined the prejudice that it suffers due to the defendants' use of a substitute expert on '633 patent validity whose identity and opinions were not timely or properly disclosed:

> Defendants' unilateral bait and switch is prejudicial to Telcordia for at least the reasons that (1) Telcordia's answering report was directed to the opinions of Dr. Jones only, as Dr. Acampora never offered any opinions, and Telcordia therefore never had an opportunity to serve any expert reports in response to the validity and enforceability opinions of Dr. Acampora, (2) Dr. Acampora will be able to distance himself from the discredited expert opinions of Dr. Jones because he is not the author of the report or those opinions, and (3) Telcordia's experts cannot distance themselves from their own reports and opinions because, in accordance with the Federal Rules and the Court's Revised Scheduling Order, Telcordia's experts actually authored rather than "adopted" the expert reports submitted on Telcordia's behalf.

(D.I.s 203 and 217 at 5-6).

Moreover, these prejudicial points were emphasized, not cured, by the depositions of Drs. Jones and Acampora. Specifically, as discussed in depth in Telcordia's opening brief, Dr.

12

Acampora's deposition confirmed Telcordia's fear that Dr. Acampora intends to hedge by only qualifiedly adopting Dr. Jones' opinions. (D.I.s 203 and 217 at 8-10). Because Telcordia's opening brief clearly sets forth and explains the prejudice suffered by Telcordia as a result of the defendants' untimely expert disclosure, Telcordia will not repeat those points here. Telcordia merely notes that defendants completely ignore the resulting prejudice to Telcordia and instead contend without justification that Telcordia "fails to identify any actual prejudice it has suffered."

### G. Telcordia's Request for a Second Day of Deposition Is Now Moot

In its original motion, Telcordia included an ancillary request that the Court compel defendants to make Dr. Jones available for two days of deposition because Dr. Jones served an expert report in both the Cisco case and the Lucent case and because the parties had agreed that all other technical experts would be produced for at least two days of deposition. Since the filing of its motion, Telcordia has taken Dr. Jones' deposition and concluded that it does not need a second day with Dr. Jones.

## III. Conclusion

For the reasons stated in this reply brief and in Telcordia's opening brief, Telcordia respectfully requests that the Court grant Telcordia's motion.

|  |  |
|---|---|
|  | ASHBY & GEDDES |
|  | /s/ Steven J. Balick |
|  | Steven J. Balick (I.D. #2114)<br>John G. Day (I.D. #2403)<br>Tiffany Geyer Lydon (I.D. #3950)<br>Ashby & Geddes<br>222 Delaware Avenue, 17th Floor<br>P.O. Box 1150<br>Wilmington, Delaware 19899-1150<br>(302) 654-1888<br>sbalick@ashby-geddes.com<br>jday@ashby-geddes.com |
| *Of Counsel:* | tlydon@ashby-geddes.com |
| Donald R. Dunner<br>Don O. Burley<br>Richard H. Smith<br>Houtan K. Esfahani<br>Finnegan, Henderson, Farabow,<br>  Garrett & Dunner, L.L.P.<br>901 New York Avenue, NW<br>Washington, DC  20001-4413<br>(202) 408-4000 | *Attorneys for Plaintiff*<br>*Telcordia Technologies, Inc.* |

York M. Faulkner
Finnegan, Henderson, Farabow,
  Garrett & Dunner, L.L.P.
Two Freedom Square
11955 Freedom Square
Reston, VA  20190-5675
(650) 849-6600

Dated:  September 1, 2006
172726.