# Morris, Nichols, Arsht & Tunnell LLP

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347

302 658 9200
302 658 3989 Fax

Jack B. Blumenfeld
302 351 9291
302 425 3012 Fax
jblumenfeld@mnat.com

September 11, 2006

The Honorable Gregory M. Sleet
United States District Court
844 N. King Street
Wilmington, Delaware 19801

**VIA ELECTRONIC FILING**

Re:  *Telcordia Tech., Inc. v. Lucent Tech., Inc.*, Civil Action No. 04-875 GMS
     *Telcordia Tech., Inc. v. Cisco, Inc.*, Civil Action No. 04-876-GMS

Dear Judge Sleet:

Defendants submit this reply in support of their request to file summary judgment motions.

**Summary Judgment Of Noninfringement Of The '306 Patent Should *Not* Be Unduly Limited:** Telcordia's response confirms that its strategic goal is to position its appeal on this patent so as to isolate and attack the aspects of this Court's claim construction ruling that it considers most vulnerable. Specifically, Telcordia seeks to cherry-pick the few terms that it wants to form the basis of a judgment and to use that artificially abridged judgment and record as a vehicle to request that the Federal Circuit also review the Court's other constructions, even though those terms would not be the basis for judgment and no corresponding factual record would be created. As explained in Defendants' prior letters, this is inefficient, inconsistent with the rules of civil procedure, and contrary to the goals of creating a proper record for appeal and avoiding piecemeal litigation. In pursuit of this cynical appeal strategy, Telcordia attempts to manufacture "hotly disputed issues of fact" regarding the other claim terms by submitting hundreds of pages of exhibits that it never cited in its infringement interrogatory responses. Telcordia cannot limit the summary judgment process by attaching a horde of previously unidentified documents, and claim that they raise "disputed issues of material fact as to each claim element other than those covered by Telcordia's concessions." Defendants will show in their summary judgment motion, if permitted, that there are no material issues of fact with respect to any of the grounds on which they seek summary judgment, and that Telcordia cannot meet its burden of proving that Defendants' products meet any of the limitations asserted on that motion.[1]

---

[1] Telcordia again mischaracterizes its decision not to serve an infringement expert report based on its assumption that the Court would enter judgment under Rule 54(b) as the Court refusing to "permit" it to serve such a report. Regardless, it is undisputed that under Federal Circuit law Telcordia "***cannot satisfy its burden of proof***" that the complex technology embodied in the accused products meets the claimed elements. *Centricut, LLC v. Esab Group*, 390 F.3d 1361, 1370 (Fed. Cir. 2004). Ignoring *Centricut*, Telcordia incorrectly argues that Third Circuit law governs whether a ***patentee*** can meet its burden of proving ***patent*** infringement when it fails to submit an expert opinion and, as here, the defendant submits an expert opinion showing noninfringement. Such a dispute regarding the applicable law is a ***legal*** question and certainly no barrier to summary judgment.

**Best Mode Violation For The '306 Patent:** Telcordia does not deny that the named inventor flatly admitted that he failed to disclose his best mode "look ahead" technique. Telcordia instead argues that this does not constitute an invalidating best mode violation because the "look ahead" technique is "completely irrelevant to the claims." The inventor however admitted, without qualification, that his failure to disclose the "look ahead" constituted a failure to disclose "the best way to implement *the claimed inventions* of the '306 Patent." D.I. 214 in 04-876-GMS, Ex. 1 (Chao Tr.) at 330:5-14. Indeed, he admitted that the best mode "look ahead" feature was developed to determine whether the incoming frames were "empty and available" – a core part of the claimed inventions, as reflected in the words of the asserted claims. *Id.* at 339:5-12 ("[T]he patent makes a mistake by teaching someone to take the parallel data out after the delay unit when they're trying to look ahead to whether a frame is *empty and available*."). Finally, Telcordia's argument that there are alternatives to the "look ahead" feature for practicing the claimed invention actually supports Defendants' argument because the '306 Patent admittedly fails to disclose the inventor's *best* "alternative." Telcordia cannot avoid the legal consequence of failing to disclose the best mode by arguing that there are other, admittedly inferior, modes of practicing the claimed invention.

**'763 Patent Noninfringement:** Telcordia does not contest the key facts that warrant summary judgment of noninfringement of the '763 Patent and it acknowledges that the Court's claim construction, adverse to Telcordia's proposed construction, requires error signals to be inserted "*following* demultiplexing". As in many cases where a plaintiff loses a key disputed claim construction, summary judgment is appropriate here. *ATD Corp. v. Lydall, Inc.*, 159 F.3d 534, 540 (Fed. Cir. 1998). In the face of an undisputed record and an unfavorable claim construction, Telcordia cobbles together an alternative infringement theory that hinges on its new contention that there is *another* demultiplexer, called the pointer processor, located before error signals are inserted. Telcordia's expert conceded, however, that the *claimed demultiplexer is the cross-connect*, not the pointer processor. D.I. 214 in 04-876-GMS, Ex. 2 (Prucnal Tr.) at 142:14-19 ("[T]he multiplexer and demultiplexer of claim one is the cross-connect circuitry."). Telcordia's strained contention that the claimed demultiplexing is somehow performed by something other than what its expert contends is the claimed demultiplexer (the cross-connect) makes no sense. Regardless, Telcordia's expert admitted that, even if the pointer processor were to be treated as a demultiplexer, *the demultiplexing would not be complete* until *the cross-connect performed its demultiplexing function. Id.* at 121:16-18 ("[T]he final stage of the demultiplexing and its *completion*, as you said, is done at the cross-connect."). Thus, even under Telcordia's fall back theory, the error signals are not inserted *after* demultiplexing because demultiplexing admittedly occurs and is completed at the cross-connect. Summary judgment of noninfringement follows as a matter of logic.

**Indefiniteness Of The '763 Patent:** Defendants' claim construction brief showed that the asserted claims of the '763 Patent are indefinite. Telcordia *argued then* that this issue should be resolved at summary judgment. D.I. 94 in 04-876-GMS, at 27 n.7. The Court agreed. Telcordia *now argues* that the Court should not consider whether the asserted claims of the '763 Patent are indefinite, an undisputed question of law. There is no dispute that the '763 Patent: (1) does not disclose any "circuitry at the controller"; and (2) does not associate the claimed function with any such structure. Telcordia cannot cure this failure by using an expert to testify that one of ordinary skill in the art would have been aware of undisclosed structure for performing the claimed function. *See Default Proof, Inc. v. Home Depot*, 412 F.3d 1291, 1302 (Fed. Cir. 2005). Accordingly, summary judgment of invalidity is appropriate.

**Noninfringement Of The '633 Patent:** The Court rejected Telcordia's position that a time-stamp carried *inside* the convergence sublayer overhead could fall within the scope of this patent, requiring instead that the time stamp be communicated *outside* the convergence sublayer overhead. There is no serious dispute that Defendants' products perform the accused SRTS function within the convergence sublayer and therefore do not infringe the '633 patent. For example, Telcordia contends that Defendants' products meet the applicable standard and Telcordia's expert testified "that [in standards

The Honorable Gregory M. Sleet
September 11, 2006
Page 3

compliant products] *the convergent sublayer provides the SRTS method.*" Summary judgment therefore is proper.

**'633 Patent Improper Inventorship:** The undisputed record demonstrates that France Telecom invented the claimed inventions by August 1991. For the last ten months, Telcordia contended, in sworn, Court-Ordered interrogatory responses, that it conceived the claimed inventions months after that date. Understanding that it cannot win with the conception date it advanced throughout discovery, after the end of all discovery, and just before the submission of this letter (Friday evening, September 8), Telcordia desperately attempted to change its interrogatory response to advance an earlier conception than France Telecom. Telcordia did so in contravention of its sworn interrogatory response and in defiance of the Court's Order to specify a fixed conception date almost a year ago.[2] Compare Ex. 10 with Ex. 11. This highly prejudicial tactic should not be permitted. Telcordia should be precluded from advancing its newly-conceived conception date. Its decision to try to do so, however, highlights the importance of the Court permitting Defendants to bring their motion for summary judgment based on France Telecom's prior inventorship. In any event, nothing in Telcordia's response letter addresses the fact that Telcordia's expert studied the inventorship issue and agreed that France Telecom's idea to move the time stamp out of the convergence sublayer was as important as shortening the time stamp. D.I. 214 in 04-876-GMS, Ex. 3 (Clark Tr.) at 98:10-18 ("Q. Now, you set forth two key aspects of the invention. One is that you use a residual time stamp that's not as large as a full time stamp and that you communicate that not in the convergent sublayer. Is one of those more important than the other? A. I wouldn't know how to judge their relative importance. *They're both important.*"). France Telecom indisputably contributed a key aspect of the claimed invention – a fact that Telcordia did not tell the Patent Office, but now admits.

**Telcordia Cannot Recover Damages Prior to Filing Suit Against Lucent:** The only issue regarding constructive notice is whether there is a *legal* exception to the marking requirement for products made under a "have made" license. Section 287(a) does not recognize such an exception, and courts have rejected an exception for licensees' manufacturers because "production of the article for the use of the licensee is production under the license." *Southwire Co. v. USITC*, 629 F.2d 1332, 1338 (CCPA 1980); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1111 (Fed. Cir. 1996). Telcordia does not dispute that Lucent first received actual notice of the '763 Patent after the patent was asserted on June 14, 2005. Regarding alleged actual notice of the '633 Patent, the only issue is a *legal* question of whether a generic letter that does not identify a specific product constitutes actual notice. The cases say that it does not. Telcordia also suggests that a meeting between the parties provided Lucent with actual notice, although Telcordia admits it cannot confirm whether the asserted patents were even discussed or whether any specific Lucent product was identified. Ex. 12 at 546:21-548:16; 774:13-775:11. This meeting cannot serve as actual notice which requires "a specific charge of infringement *by a specific accused product.*" *Amsted Indus. v. Buckeye Steel*, 24 F.3d 178, 187 (Fed. Cir. 1994).

Respectfully,

*/s/ Jack Blumenfeld*
Jack B. Blumenfeld (#1014)

JBB/dam
cc:   Peter T. Dalleo, Clerk (By Hand)
      All Counsel of Record (By Email)

---

[2] Telcordia deleted the following commitment from its new response: "Consistent with the Court's instructions during the October 11, 2005, hearing [D.I. 54 in 04-875-GMS], . . . ***Telcordia will not assert***, in this case, ***dates of conception or reduction to practice earlier*** than those dates stated in Telcordia's November 11, 2005 Second Supplemental Response to Cisco Interrogatory No. 8." (Ex. 10 at 5.)