**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| TELCORDIA TECHNOLOGIES, INC., | ) | <u>**REDACTED PUBLIC**</u> |
| | ) | <u>**VERSION**</u> |
| Plaintiff/Counterclaim Defendant, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-875-GMS |
| | ) | |
| LUCENT TECHNOLOGIES, INC., | ) | |
| | ) | |
| Defendant/Counterclaim Plaintiff. | ) | |
| ——————————————————— | ) | |
| | ) | |
| TELCORDIA TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff/Counterclaim Defendant, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-876-GMS |
| | ) | |
| CISCO SYSTEMS, INC., | ) | |
| | ) | |
| Defendant/Counterclaim Plaintiff. | ) | |
| ——————————————————— | ) | |

**TELCORDIA'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT OF
<u>NON-INFRINGEMENT OF U.S. PATENT NO. 4,835,763</u>**

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, Delaware 19899-1150
(302) 654-1888

*Of Counsel:*

Donald R. Dunner
Steven M. Anzalone
Richard H. Smith
James T. Wilson
John M. Williamson
Finnegan, Henderson, Farabow,
  Garrett & Dunner, L.L.P.
901 New York Avenue, NW
Washington, DC  20001-4413

*Attorneys for Plaintiff
Telcordia Technologies, Inc.*

York M. Faulkner
Finnegan, Henderson, Farabow,
 Garrett & Dunner, L.L.P.
Two Freedom Square
11955 Freedom Square
Reston, VA  20190-5675

Dated:  October 25, 2006

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................................... ii

I.    Introduction ........................................................................................................................1

II.   Argument ............................................................................................................................2

    A.    Legal Standard For Summary Judgment.................................................................2

    B.    The Court's Construction.........................................................................................3

    C.    The Accused Products..............................................................................................5

        1.    ..............................................................................................6

        2.                REDACTED            :......................6

        3.    

                ..............................................7

        4.    .......................8

    D.                   Meets The Disputed Limitation.................................................................................................8

        1.    The Parties Vigorously Dispute Whether Is A "Demultiplexer" As A Matter Of Fact .....................................................8

        2.    There Is No "Legal Issue" Over Whether Something Other Than The Claimed Demultiplexer Can Perform The Claimed Demultiplexing ...........................................................................10

        3.    Telcordia Never Conceded That The Was The Sole Demultiplexer in the Accused Products.......................................11

    E.    The      REDACTED

      Although It Is Not The Last Instance of Demultiplexing To Occur In The Device ...................................................................................................16

    F.    The Accused Products        REDACTED ..........................................................20

III.  Conclusion ........................................................................................................................22

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ...................................................................... 3

*Mason v. New Yorker Magazine, Inc.*, 501 U.S. 496 (1991) ........................................................... 3

*Stiftung v. Renishaw PLC*, 945 F.2d 1173 (Fed. Cir. 1991) .................................................... 19, 21

**Rules**

Fed. R. Civ. P. 56(c) ........................................................................................................................ 2

## I.    Introduction

The defendants move for summary judgment of non-infringement on the narrow grounds that their products do not meet the claim limitation of "inserting an error signal on designated ones of said [the] subrate communications." D.I.s 255, 242.[1]  The Court's construction of this limitation requires "inserting an error signal on the channels following demultiplexing." D.I.s 189, 179 at ¶ 5.  Quite simply, the defendants' products meet this limitation because they perform the following operations in the following order:

REDACTED

:

*See* Section II(C) ("The Accused Products"), *infra.*  As such, defendants' products

REDACTED     :

as required by the Court's claim construction.  Despite these facts, the defendants claim that their products do not meet the limitation because

REDACTED

But

these operations are performed in addition to clearly infringing operations.  The defendants' infringement is not somehow negated by the fact that the defendants' products also

---

[1] Hereinafter, citations to documents with docket item numbers in both cases will be in the form of the D.I. number for C.A. No. 04-875-GMS (the Lucent case) followed by the D.I. number for C.A. No. 04-876-GMS (the Cisco case).

REDACTED

Moreover, the defendants' motion for summary judgment of non-infringement of the '763 patent is premised entirely upon misrepresentations of Telcordia's positions and testimony. Specifically, defendants boldly and incorrectly claim that Telcordia conceded its case during expert discovery. Most notably, defendants claim that Telcordia somehow conceded that the

REDACTED

This is not true. The defendants also contend that Telcordia's expert's mere recognition of the                                equates with Telcordia's "concession of noninfringement by its own expert." D.I.s 255, 242 at 14. This is not true either.

Defendants' pronouncements that Telcordia conceded its case are completely without basis. A careful review of the record (not the artificially isolated deposition testimony relied upon by the defendants) demonstrates not only that there were no such concessions, but also that clear and critical outstanding genuine issues of material fact preclude the entry of summary judgment.

## II.     Argument

### A.     Legal Standard For Summary Judgment

Summary judgment may not be granted unless "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter

of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). At the summary

judgment stage, the Court does not weigh the evidence but rather determines whether there is a

genuine issue for trial. *Id.* at 249. In performing this function the Court, "must draw all

justifiable inferences in favor of the non-moving party . . ." *Masson v. New Yorker Magazine,*

*Inc.*, 501 U.S. 496, 520 (1991).

**B.    The Court's Construction**

 Pursuant to the Court's order at the September 18, 2006 hearing, this summary judgment

proceeding concerns the defendants' contention that their products do not meet the "inserting an

error signal on designated ones of said [the] subrate communications." September 18, 2006,

Hearing Tr. at 33-39. The Court construed this limitation to require "inserting an error signal on

the channels following demultiplexing." D.I.s 189, 179 at ¶ 5 (claim construction order). The

defendants contend that the Court's construction of this limitation necessarily entails a finding of

non-infringement because   **REDACTED**

 Telcordia notes, simply to preserve its rights, that for all of the reasons asserted during

claim construction, it does not agree with the Court's construction of "inserting an error signal on

designated ones of said [the] subrate communications." The Court's construction, however,

certainly does not support a finding of non-infringement on summary judgment. Indeed, the

defendants' summary judgment motion does not hinge only upon the Court's claim construction,

but rather hinges upon on a number of elaborate mischaracterizations of factual "admissions"

and "concessions" by Telcordia. The fact is that Telcordia did not concede its case, and material

factual disputes remain.[2] Moreover, in their summary judgment motion, the defendants do not even apply the Court's claim construction, but rather apply a new construction which includes gratuitous elaborations and additional limitations that were never raised during claim construction and that are not part of the Court's construction.

For instance, the defendants take the opportunity in their summary judgment brief to gratuitously state that their proposed claim construction—which the Court adopted—was based on "the entirety of the '763 patent, which uniformly describes the claimed invention as inserting an error signal on the channels only after the channels have been demultiplexed." D.I.s 255, 242 at 3. While Telcordia focuses on the Court's construction and can establish infringement of the defendants' products under the Court's construction, Telcordia is forced to respond to the defendants' incorrect gratuitous elaborations regarding the reasons and bases for claim construction. The patent contains no description, let alone defendants' suggested "uniform description," that error signals are inserted only after channels have been demultiplexed. Indeed,

—————————————————————  REDACTED

> A [by Dr. Grover]: So you're asking if anywhere in the 763's specification it says that error insertion could only be done after demultiplexing?
>
> Q: Yes.
>
> A: [by Dr. Grover] 763 doesn't say that in the specification.

---

[2] Indeed, in the cases where the Court's claim constructions genuinely did necessarily support a finding of non-infringement, Telcordia promptly (within days of receiving the Court's claim construction Order) conceded its claims. *See* Ex. 1 to D.I. 200 in C.A. No. 04-875-GMS (conceding non-infringement of the '306 patent). That is not the situation here.

4

Ex. 7 (Grover Testimony) at 340-41.

Similarly, and perhaps more germane to the present substantive summary judgment dispute before the Court, in advancing their summary judgment position the defendants appear to be adding limitations that are not found in the Court's construction. Specifically, the defendants appear to be contending that the already restrictive "following demultiplexing" limitation should be stretched further to mean "following *the ultimate* demultiplexing" or "following demultiplexing *but prior to insertion of any other error signals.*" But the defendants never took these highly restrictive positions during claim construction, and the Court did not so restrict the claim. Moreover, had Telcordia been given the opportunity to oppose the defendants' new construction at the appropriate time (i.e., during claim construction, before expert reports, before expert depositions, and before summary judgment proceedings) Telcordia would have shown that the position is incorrect, and that it is not supported by or consistent with the specification or the claims.

### C.     The Accused Products

The accused products include Cisco and Lucent optical networking products that allow transport of data over long distances. The relevant functionality of the products for purposes of infringement of the '763 patent is set forth in detail in Telcordia's opening and reply expert reports, which are attached as Exhibits 1-4 for completeness. As noted above, for purposes of this summary judgment proceeding, the defendants have asserted a narrow non-infringement theory,

REDACTED

5

respect, as noted above, the defendants' products perform the following operations in the

following order:


REDACTED


1.    **Defendants' Products**

REDACTED

All parties agree as to this

fact, as reflected in the defendants' opening summary judgment motion. "Both experts agree that

when


REDACTED

2.    **Defendants' Products**

Telcordia contends that the

As

discussed in detail in Section II(D) below, the parties vigorously dispute the critical factual issue

of whether                                        Telcordia's expert, and Lucent's

30(b)(6) witness, both testified that the                       while defendants' expert,

Dr. Grover, testified that         REDACTED         Ex. 5 (Prucnal Testimony)

at 133, 134, 167, 173, 178, 179, 200, 204, 205, 206, 420, 425-26, 481; Ex. 6 (Towne Testimony)

at 165-66; Ex. 7 (Grover Testimony) at 80, 98, 99.  Regardless of who ultimately prevails on this

factual dispute (which, again, is fully developed in detail below), all parties agree that

Ex. 7 (Grover

Testimony) at 375-76.[3]

### 3.    Defendants' Products          REDACTED

Defendants' documents establish that

Defendants' witnesses

confirmed where and when :          For instance,

### REDACTED

is expressly set forth in

Telcordia's expert reports:

### REDACTED

Ex. 1 (Prucnal Report) at 21; *see also* Ex. 2 (Prucnal Report) at 19.  Dr. Prucnal also explained

these facts during his deposition:

### REDACTED

REDACTED

Ex. 5 (Prucnal Testimony) at 167-68, *see also* Ex. 5 at 479.  As discussed in greater detail in

Section II(F) below, the defendants largely ignore their products'

Instead, they apparently claim that :

. As explained below, the

suggestion that .                                        are the same is meritless ·

REDACTED

But to the extent that the defendants' argument can be taken

seriously, it does nothing more than generate another unresolved genuine material factual

dispute.

    **4.**    **Defendants' Products**

Telcordia does not dispute that the defendants' products

REDACTED

is irrelevant to the infringement analysis because

REDACTED

    **D.**                         **Defendants' Products Meets The Disputed**
          **Limitation**

          **1.**    **The Parties Vigorously Dispute Whether** ·
                    **As A Matter Of Fact**

The defendants wrongly claim that "there is no legitimate dispute for purposes of this

motion that                                        D.I.s 255, 242 at 9.  In making

8

this proclamation, the defendants simply unilaterally resolve a heated factual dispute—

—in their own favor.  The factual record, however,

reveals a genuine disputed factual issue that ultimately should be resolved in Telcordia's favor.

The defendants steadfastly contend that the pointer processor does not demultiplex, as

reflected in the testimony of their technical expert, Dr. Grover:

REDACTED

Ex. 7 (Grover Testimony) at 80, 98, 99 (emphasis added).  Telcordia, on the other hand, contends

that                                                        as required by the Court's claim construction.

For instance, Telcordia relies on the testimony of

Q:

A:

Q:

*A.*                          REDACTED

*Q:*

Ex. 6 (Towne Testimony) at 165-66 (emphasis added).  Additionally, Telcordia relies upon its

expert, Dr. Prucnal, who has provided a detailed report and testimony indicating exactly how and

9

why                                        . Ex. 3 and 4 (Prucnal Reports) at 4; Ex. 5 (Prucnal

Testimony) at 133, 134, 167, 173, 178, 179, 200, 204, 205, 206, 420, 425-26, 481. As such, the

record reveals an unquestionable classic factual dispute as to whether ·     REDACTED

### 2.     There Is No "Legal Issue" Over Whether Something Other Than The Claimed Demultiplexer Can Perform The Claimed Demultiplexing

In their opening summary judgment brief, the defendants attempt to downplay and

obscure the classic factual dispute between the parties by manufacturing a non-existent "legal

question." Specifically, the defendants mischaracterize Telcordia's infringement contentions:

> Telcordia essentially argues that the asserted claims encompass an
> additional unclaimed element - a second demultiplexer - and the
> claimed demultiplexing is performed by this unclaimed element
> rather than the claimed demultiplexer.

D.I.s 255, 242 at 9. In essence, the defendants contend that Telcordia contends both (1) ·

REDACTED                          and (2) that the

. Having mischaracterized Telcordia's contentions, the defendants then

present a "legal question" as to whether one component can be the "claimed demultiplexer"

while another component performs the "claimed demultiplexing."

But again, this "legal question" is only the result of defendants' unilateral, unfair, and

illogical misrepresentation of Telcordia's contentions. Rather, quite simply, Telcordia contends

that


REDACTED


Telcordia is not mixing and matching ·

⸳as the defendants

suggest.  Therefore, the defendants' concocted "legal issue" is not an issue at all.

      **3.**      **Telcordia Never Conceded That** ⸳

     Central to the defendants' non-infringement theory is Telcordia's purported "concession"

that the ⸳ REDACTED

          Telcordia never made any such concession, and Telcordia's expert reports and

expert testimony clearly and repeatedly convey Telcordia's position that

                    and that the defendants' products could certainly

meet the limitations of the claim where ⸳ REDACTED

     Defendants justification for unilaterally confining Telcordia's infringement contentions

rests exclusively on an isolated passage of Dr. Prucnal's deposition testimony presented

completely out of context:

REDACTED

Ex. 5 (Prucnal Testimony) at 422.  In a self-congratulatory fashion, defendants cite this passage

twice in their summary judgment motion for the proposition that they have elicited a case

dispositive admission that

11

D.I.s 255, 242 at 5.  Defendants' argument is highly misleading and is unfair for multiple reasons.

First, the "admission" was only elicited after the examiner instructed the witness to refer only to one specific claim chart in his opening report when answering the line of questions. Specifically, immediately preceding the supposed "admission," the examiner expressly instructed the witness as follows:

REDACTED

Ex. 5 (Prucnal Transcript) at 422.  In other words, Dr. Prucnal, because he was instructed not to, did not consult the body of his opening expert report and did not consult his reply expert report in responding to the line of questions.  Elsewhere in his expert reports, however, there are countless examples of Dr. Prucnal's position

For example, Dr. Prucnal's opening expert
report states that        REDACTED

Exs. 1 and 2 (Prucnal Opening Reports) at 21.

Likewise, Dr. Prucnal's reply expert reports contain an entire section addressing the

issue and setting forth Telcordia's position that

REDACTED        Exs. 3 and 4 (Prucnal Reply Reports) at 4.  These reply

expert reports were drafted by Dr. Prucnal, in accordance with the Revised Scheduling Order, to directly address perceived shortcomings in his opening reports that were asserted by the defendants' expert, Dr. Grover.  In other words, the reply reports clarified Telcordia's positions in light of Dr. Grover's comments.  In doing so, Dr. Prucnal clearly explained Telcordia's

contentions and candidly recognized the disputed factual issue of whether the

- 
- REDACTED

- 

Exs. 3 and 4 (Prucnal Reply Reports) at 4.  As such, the portions of the expert report that Dr.

Prucnal did not consult—because he was asked not to—during the line of questioning that led to

the purported "admission," contain a clear recitation of Dr. Prucnal's position.

Second, the defendants fail to note that their one artificially isolated "admission" stands

in stark contrast to the no fewer than *thirteen different instances* during his deposition where

Dr. Prucnal expressly explained that       REDACTED        . Ex. 5 (Prucnal

Testimony) at 133, 134, 167, 173, 178, 179, 200, 204, 205, 206, 420, 425-26, 481.  During these

instances, Dr. Prucnal was not confined to one chart in one section of his opening expert report,

but was free to convey and elaborate upon the positions set out in all of his reports.  For example,

Dr. Prucnal testified that:

- 

- 

- REDACTED

-

Third, at every possible opportunity during his deposition, Dr. Prucnal conveyed that his

in his opening expert report was merely

exemplary, and that other components                    REDACTED                    (again, including the no

fewer than thirteen times                                                                                          For

example, Dr. Prucnal testified:



REDACTED



Ex. 5 (Prucnal Testimony) at 428.

Fourth, the defendants fail to acknowledge that Telcordia's claim chart in its opening

expert report in the Lucent case identifies



REDACTED



Ex. 2 (Prucnal Opening Report) at 17 (emphasis added).


Ex. 6 (Towne Testimony) at 166.  Similarly, the cited Lucent documents                    REDACTED

Ex. 14.


14

that are referenced in the claim charts in Dr. Prucnal's opening expert report

Dr. Prucnal did not include this level of detail in his opening Cisco claim chart, and when asked during his deposition he candidly explained that perhaps he should have included a greater level of detail:

REDACTED

Ex. 5 (Prucnal Testimony) at 425-431. But this questioning, again, was limited to only one part of Dr. Prucnal's opening report. Dr. Prucnal unquestionably provided a "greater level of detail" in other portions of his opening report

REDACTED                                          in an entire section of his

reply report                                    and in his deposition on thirteen different

occasions. Ex. 1 (Prucnal Opening Report) at 21; Ex. 3 (Prucnal Reply Report) at 4; Ex. 5 (Prucnal Testimony) at 133, 134, 167, 173, 178, 179, 200, 204, 205, 206, 420, 425-26, 481.

In summary, against the record as a whole, the artificial and isolated "admission" elicited by the defendants during Dr. Prucnal's deposition simply does not support the many bold mischaracterizations in defendants' summary judgment motion, including that (1) "Telcordia's expert, Dr. Paul Prucnal, and Defendants' expert, Dr. Wayne Grover, agree about the aspects of the accused products relevant to this motion" (2) "[b]oth experts agree that the

(3) "Telcordia's expert admitted, as stated in his

15

expert report, that the                                          (4) the

**REDACTED**

and (5) "there is no

legitimate dispute for purposes of this motion that

D.I.s 255, 242.

These mischaracterizations represent overextension in the extreme.  The parties

obviously disagree as to whether the                    , as a matter of fact,

and the parties have each engaged in significant expert and fact discovery efforts

to support their respective positions.  Summary judgment should not be entered in favor of the

defendants where there remains a heavily disputed genuine factual issue as to whether

This is particularly so where the defendants' own fact witnesses and

documents are consistent with Telcordia's expert and Telcordia's position, and are inconsistent

with the defendants' expert and the defendants' position.

E.

**REDACTED**

Defendants contend that the Court's "following demultiplexing" construction "

." D.I.s 255, 243

at 11.  The defendants then argue that because the                    is only

"partial" or "incomplete,"                    is not "demultiplexing" as required by the

Court's construction.  Telcordia submits that the factual record demonstrates that the

**REDACTED**

, and is

not "partially" demultiplexing as the defendants contend.

Again, the defendants cite cropped testimony and employ semantics to suggest that

Telcordia's expert conceded that the

16

REDACTED                              D.I.s 255, 242

at 12.  Again, that is not so.  Rather, the evidence shows that the

         —or at the very least creates a genuine issue of material fact

on this point.

  For example, Lucent's 30(b)(6) witness not only conceded that the

but also explained why

REDACTED

Ex. 6 (Towne Testimony) at 165-66.  In other words, in order to perform its designed function,

  Although Cisco and Lucent's expert contested that

he similarly conceded

REDACTED

  . . .

17

. . .

REDACTED

Ex. 7 (Grover Testimony) at 71-72.

REDACTED

Q:

REDACTED

A:

18

Ex. 5 (Prucnal Testimony) at 432-33.

Thus, putting Dr. Prucnal's testimony about                                        in

proper context, he was merely noting that


REDACTED


Ex. 5 (Prucnal Testimony) at 432-33.  Dr. Prucnal was not, as the defendants contend,

"admitting" that the

In sum, although Telcordia submits that the evidence clearly demonstrates that the

, there is, at a minimum, a factual

dispute on this point.  Moreover, against this factual dispute, the defendants' arguments

regarding "                                                  in the product as a whole are

simply another effort to either force additional limitations into the claims or to distract the Court

by focusing on the irrelevant                                     .  D.I.s 255, 242 at

10.  Again,                                  REDACTED

cannot serve as a basis for non-

infringement because "[i]t is fundamental that one cannot avoid infringement merely by adding

elements if each element recited in the claims is found in the accused device." *Stiftung v.*

*Renishaw PLC*, 945 F.2d 1173, 1178 (Fed. Cir. 1991).

F.      **The Accused Products**

The defendants argue that they are entitled to summary judgment because their products

regardless of whether the

REDACTED

. Defendants argument fails because the Court only required

the

Again, for purposes of considering this summary judgment motion under the Court's

construction , the relevant operations of the defendants products are:

REDACTED

*See* Section II(C) *supra*.  In making the argument that they are entitled to summary judgment

because the                                                                              the defendants simply ignore the

Moreover, the defendants' argument is highly misleading because it repeatedly

emphasizes Telcordia's irrelevant acknowledgement

•            REDACTED

•

20

REDACTED

D.I.s 255, 242 at 13-14.  While all of these statements are true, they are irrelevant to the

infringement analysis because infringement, under the Court's construction, is premised upon the

REDACTED

The defendants unfairly ignore this critical point,

and draw the disingenuous and overextended conclusion that Telcordia's expert's mere

recognition of the                                                    equates with a "concession of

noninfringement by its own expert."  D.I.s 255, 242 at 14.  There has been no such "concession

of noninfringement," and rather Telcordia and its expert can present a fully developed factual

record to support its position that the

REDACTED

Exs. 1 and 2 (Prucnal Opening Reports) at 21; Exs. 3 and 4 (Prucnal Reply Reports) at 4; Ex. 8;

Ex. 13 at 26-27.

Defendants try to obscure the reality that their products

by apparently arguing that the

REDACTED

21

REDACTED

Exs 3 and 4 to D.I.s 255, 242 at 17-18, 35; Ex. 6 (Towne Testimony) at 119-120, 165-66, 171-72; Ex. 12 (Rushka Testimony) at 180-85, 206-09, 219; Ex. 13 at 13; Ex. 5 (Prucnal Testimony) at 207-08.

REDACTED

The claim limitation is still met. *Stiftung*, 945 F.2d at 1178.

### III.    Conclusion

For the reasons stated above, genuine issues of disputed material fact remain and the Court should not grant summary judgment on non-infringement of the '763 patent in favor of the defendants.

ASHBY & GEDDES

*/s/ Tiffany Geyer Lydon*

<table>
<tr><td><em>Of Counsel:</em></td><td>Steven J. Balick (I.D. #2114)<br>John G. Day (I.D. #2403)<br>Tiffany Geyer Lydon (I.D. #3950)<br>222 Delaware Avenue, 17th Floor<br>P.O. Box 1150<br>Wilmington, Delaware 19899-1150<br>(302) 654-1888</td></tr>
</table>

*Of Counsel:*

Donald R. Dunner
Steven M. Anzalone
Richard H. Smith
James T. Wilson
John M. Williamson
Finnegan, Henderson, Farabow,
  Garrett & Dunner, L.L.P.
901 New York Avenue, NW
Washington, DC  20001-4413
(202) 408-4000

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, Delaware 19899-1150
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Plaintiff*
*Telcordia Technologies, Inc.*

York M. Faulkner
Finnegan, Henderson, Farabow,
  Garrett & Dunner, L.L.P.
Two Freedom Square
11955 Freedom Square
Reston, VA  20190-5675
(650) 849-6600

Dated:  October 18, 2006
174307.1

23

# EXHIBIT 1

# REDACTED

# EXHIBIT 2

# REDACTED

# EXHIBIT 3

**REDACTED**

# EXHIBIT 4

# REDACTED

# EXHIBIT 5

# REDACTED

# EXHIBIT 6

# REDACTED

# EXHIBIT 7

# REDACTED

# EXHIBIT 8

# REDACTED

# EXHIBIT 9

**REDACTED**

# EXHIBIT 10

**REDACTED**

# EXHIBIT 11

**REDACTED**

# EXHIBIT 12

**REDACTED**

# EXHIBIT 13

**REDACTED**

# EXHIBIT 14

# REDACTED

## CERTIFICATE OF SERVICE

I hereby certify that on the 25th day of October, 2006, the attached **REDACTED**

**PUBLIC VERSION OF TELCORDIA'S ANSWERING BRIEF IN OPPOSITION TO**

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT**

**OF U.S. PATENT NO. 4,835,763** was served upon the below-named counsel of record at the

address and in the manner indicated:


John W. Shaw, Esquire                                     HAND DELIVERY
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street
Wilmington, DE 19801

Steven C. Cherny, Esquire                                VIA ELECTRONIC MAIL
Latham & Watkins LLP
885 Third Avenue, Suite 1000
New York, NY 10022

David A. Nelson, Esquire                                 VIA ELECTRONIC MAIL
Latham & Watkins LLP
Sears Tower, Suite 5800
Chicago, IL 60606

David M. Farnum, Esquire                                 VIA ELECTRONIC MAIL
Latham & Watkins LLP
555 Eleventh Street, N.W., Suite 1000
Washington, DC 20004-1304

Sean S. Pak, Esquire                                     VIA ELECTRONIC MAIL
Latham & Watkins
633 West Fifth Street, Suite 4000
Los Angeles, CA 90071-2007

Jack B. Blumenfeld, Esquire                              HAND DELIVERY
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
Wilmington, DE 19899-1347

Matthew D. Powers, Esquire
Weil, Gotshal & Manges LLP
201 Redwood Shores Parkway
Redwood Shores, CA  94065

<u>VIA ELECTRONIC MAIL</u>

*/s/ Tiffany Geyer Lydon*

_____

Tiffany Geyer Lydon

172095.1