# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TELCORDIA TECHNOLOGIES, INC., | ) | **REDACTED PUBLIC** |
| | ) | **VERSION** |
| Plaintiff/Counterclaim Defendant, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-875-GMS |
| | ) | |
| LUCENT TECHNOLOGIES, INC., | ) | |
| | ) | |
| Defendant/Counterclaim Plaintiff. | ) | |
| | ) | |
| | ) | |
| TELCORDIA TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff/Counterclaim Defendant, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-876-GMS |
| | ) | |
| CISCO SYSTEMS, INC., | ) | |
| | ) | |
| Defendant/Counterclaim Plaintiff. | ) | |
| | ) | |

## TELCORDIA'S ANSWERING BRIEF IN PARTIAL OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 4,893,306

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, Delaware 19899-1150
(302) 654-1888

*Of Counsel:*

Donald R. Dunner
Steven M. Anzalone
Richard H. Smith
James T. Wilson
John M. Williamson
Finnegan, Henderson, Farabow,
  Garrett & Dunner, L.L.P.
901 New York Avenue, NW
Washington, DC 20001-4413

*Attorneys for Plaintiff*
*Telcordia Technologies, Inc.*

York M. Faulkner
Finnegan, Henderson, Farabow,
  Garrett & Dunner, L.L.P.
Two Freedom Square
11955 Freedom Square
Reston, VA  20190-5675

Dated:  October 25, 2006

**TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................ iii

I.      Introduction.........................................................................................................1

II.     Telcordia's Response To Defendants' "Background Of The Technology" Section ..........3

        A.    ATM Over SONET Is Not The "Packet Overlay" Technology
              Distinguished In The '306 Patent .....................................................3

        B.    The Invention Of The '306 Patent Is Commercially Relevant And Widely
              Practiced...........................................................................................5

        C.    The OSI "Layers" Model Is Unrelated To The '306 Patented Invention
              And Does Not Limit The Claims .......................................................6

        D.    The Accused Products.......................................................................8

III.    Argument .............................................................................................................8

        A.    Legal Standard For Summary Judgment...........................................8

        B.    The Absence of Telcordia's Expert Report on '306 Patent Infringement
              Should Not Serve as a Basis for Entering Judgment Against Telcordia.................9

        C.    Telcordia Concedes That The Plurality Of Sources      **REDACTED**
              .........................................................................................17

        D.    Telcordia Concedes That The Defendants' Products Do Not Have
              .........................................................18

        E.    In The Accused Products      **REDACTED**
              .........................................................................................19

              1.    There Is No "One and Only One Packet per Frame" Limitation
                    Under The Court's Claim Construction...............................20

              2.    The Accused Products Have      **REDACTED**      ..............24

              3.    **REDACTED**      In The Accused Products ......................24

              4.    "Frames That Are Empty" Has Not Been Construed And Does Not
                    Have The Same Meaning As "Empty Payload Fields" ...........26

        F.    **REDACTED**      In The Accused Products      A
              .........................................................................................27

i

G.  The Accused Products Meet The "Available Empty Payload Field" Limitation......................................................................................30

H.  The Accused Products Perform The Functions Of The Generating Means And The Inserting Means........................................................33

IV.  Conclusion ..................................................................................................35

ii

## TABLE OF AUTHORITIES

### FEDERAL CASES

*A.B. Dick Co. v. Burroughs Corp.,*
713 F.2d 700 (Fed. Cir. 1983) ................................................................................. 19

*ABB Air Preheater, Inc. v. Regenerative Envtl. Equip., Co.,*
167 F.R.D. 668 (D.N.J. 1996) .................................................................................. 13

*Ali v. Sims,*
788 F.2d 954 (3d Cir. 2003) .................................................................................... 14

*Anchor Wall Sys., Inc. v. Rockwood Retaining Walls, Inc.,*
340 F.3d 1298 (Fed. Cir. 2003) ............................................................................... 13

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986) .................................................................................................. 9

*Bell Communications Research Inc. v. FORE Systems, Inc.,*
113 F. Supp.2d 635 (D. Del. 2000) .......................................................................... 19

*Bell Communications Research, Inc. v. FORE Systems, Inc.,*
Nos. 02-1083, 02-1084, 2003 WL 1720080 (Fed. Cir. March 27, 2003) ............... 11, 34

*Centricut, LLC v. Esab Group,*
390 F.3d 1361 (Fed. Cir. 2004) ............................................................................... 13

*Dudley v. South Jersey Metal, Inc.,*
555 F.2d 96 (3d Cir. 1977) ...................................................................................... 14

*In re Paoli R.R. Yard PCB Litig.,*
35 F.3d 717 (3d Cir. 1994) .......................................................................... 13, 14, 15

*Meyers v. Pennypack Woods Home Ownership Ass'n,*
559 F.2d 894 (3d. Cir. 1977) ............................................................................ 13, 14

*Poulis v. State Farm Fire and Cas. Co.,*
747 F.2d 863 (3d Cir. 1984) .................................................................................... 14

*Schering Corp. v. Amgen, Inc.,*
35 F. Supp.2d 375 (D. Del. 1999) ........................................................................... 11

*White v. SMI of Pattison Avenue LP,*
No. C.A. 92-1724, 1998 WL 633697 (E.D. Pa. Aug. 11, 1998) .............................. 16

*York Prods., Inc. v. Central Tractor Farm & Family Center,*
99 F.3d 1568 (Fed. Cir. 1996) ................................................................................. 11

**FEDERAL RULES**

Fed. R. Civ. P. 56(c) ................................................................................................ 8

## I.    Introduction

Following the Court's construction of the claims of U.S. Patent No. 4,893,306 ("the '306 patent"), Telcordia conceded that under the Court's construction,[1] it would be unable to establish that the defendants' products meet the "plurality of sources" limitation of claims 1 and 3 or the "empty payload field" limitations of claims 1, 3, and 4.  *See* August 11, 2006, letter to Judge Sleet, D.I.s 228, 215.[2]  At the defendants' request, the Court subsequently instructed the parties to move forward with summary judgment, even though Telcordia had already conceded non-infringement, in order to create a factual record.  For this reason, Telcordia does not oppose the entry of summary judgment of non-infringement against it on the grounds that the defendants' products do not meet the "plurality of sources" limitation of claims 1 and 3 or the "empty payload field" limitation of claims 1, 3, and 4.

In their motion for summary judgment of non-infringement of the '306 patent, however, the defendants seek summary judgment on the additional grounds that their products do not meet four other claim limitations as construed by the Court.  Specifically, in their summary judgment motion, the defendants contend that there is no genuine material factual dispute that their products do not meet the following claim limitations:

- the "such that" limitations of claims 1 and 3 and the "inserting means" limitation of claim 4 (construed by the Court to require that "packets are only put into frames which are empty") D.I.s 189, 179 at ¶ 33;

- the "inserting" and "filling" limitations of claims 1, 3, and 4 (construed by the Court to require "replacing the empty payload field with data from a single

---

[1] To preserve its rights on appeal, Telcordia notes that it disagrees with the Court's claim construction Order and reserves its right to appeal that Order.

[2] Hereinafter, citations to documents with docket item numbers in both cases will be in the form of the D.I. number for C.A. No. 04-875-GMS (the Lucent case) followed by the D.I. number for C.A. No. 04-876-GMS (the Cisco case).

source") D.I.s 189, 179 at ¶ 28;

- the "available empty payload field" limitations of claims 1, 3, and 4 (construed by the Court to require that "an empty payload field can be filled with a data packet from the source, among a plurality of sources, of the highest priority with a data packet ready to transmit") D.I.s 189, 179 at ¶ 35;

- the functional limitations of "generating means" and "inserting means" of claim 4 (construed by the Court to require "generating a train of frames wherein each frame includes a transmission overhead field containing timing information and an empty payload field," and "receiving said train of frames and inserting each of said packets comprised of data from one of a plurality of sources into any empty payload field of any of said frames available to said inserting means to form said bit stream so that data from each of said sources can be transmitted at its own desired bit rate via said bit stream and so that data from said plurality of sources can be transmitted simultaneously via said bit stream.") D.I.s 189, 179 at ¶ 36, 38.

In this brief, Telcordia addresses each of these four proposed additional grounds for summary judgment, and demonstrates that disputed genuine material issues of fact remain as to all four of the defendants' proposed additional grounds.[3] For this reason, summary judgment of non-infringement against Telcordia should issue only for the reasons that the defendants' products do not meet the "plurality of sources" or "empty payload field" limitations, and not for any of the additional reasons proposed by the defendants.

Moreover, the defendants' opening brief contains a voluminous and self-serving "Background of the Technology" section that grossly mischaracterizes the invention of Telcordia's '306 patent. This discussion is both inappropriate and inaccurate. The discussion should have been included—if at all—during the claim construction phase of this case. Indeed, when the defendants counsel advanced some of the same general mischaracterizations of the

---

[3] Telcordia also addressed the defendants' arguments and presented factual issues in a summary fashion in its August 25, 2006, letter to the Court with associated exhibits. D.I.s 232, 219 and exhibits 1-83. Telcordia incorporates those arguments and exhibits.

2

technology and Telcordia's '306 patent during claim construction oral argument, Telcordia responded by noting that the defendants' positions were merely unsupportable attorney argument. May 3, 2006, Hearing Tr. at 133.

Defendants' new and entirely unsupported characterizations of the nature and scope of Telcordia's claims should not be part of the summary judgment process and in no way serve the defendants' stated objective of "[c]reate[ing] a factual record for the Federal Circuit." July 18, 2006, Hearing Tr. at 18. Rather, the defendants' gratuitous re-visitation of claim construction unnecessarily generates new issues as to the scope and meaning of Telcordia's claims. Nevertheless, because the defendants have taken the opportunity to mischaracterize Telcordia's invention, and attempt to belatedly add support for some of the mischaracterizations defendants offered during claim construction oral argument, Telcordia is forced to respond.

## II.    Telcordia's Response To Defendants' "Background Of The Technology" Section

### A.    ATM Over SONET Is Not The "Packet Overlay" Technology Distinguished In The '306 Patent

In their "Background of the Technology" section, the defendants argue that their ATM over SONET products are "packet overlay" products, and as such are expressly distinguished in the specification of the '306 patent. But the "packet overlay" network distinguished in the '306 patent has nothing to do with ATM over SONET. Declaration of Hung-Hsiang Jonathan Chao ¶ 8-16;[4] Declaration of Walter David Sincoskie ¶ 10-21;[5] Ex. 36 (Wu Testimony) at 237;[6] Offer of

---

[4] Declaration of Hung-Hsiang Jonathan Chao is attached at Appendix A and is hereinafter cited as "Chao ¶ XX."

[5] The Declaration of Walter David Sincoskie is attached at Appendix B and is hereinafter cited as "Sincoskie ¶ XX."

[6] Exhibits to this brief are attached at Appendix C and are hereinafter cited as "Ex. XX"

Proof of Dr. Paul Prucnal ¶ 12-18.[7] Rather, the '306 patent describes and criticizes a strategy for migrating from circuit networks to packet networks that would entail physically "overlaying" an entire new telecommunications network—a packet network—on top of the already existing circuit network. Chao ¶ 9, 12; Sincoskie ¶ 11; Prucnal ¶ 12-13. The two physical networks would have been mutually exclusive and incompatible. Chao ¶ 9; '306 Col. 3, ll. 5-7. The '306 patent unquestionably distinguishes from this inefficient "packet overlay" migration strategy. '306 Col. 3, ll. 2-17.

But the '306 invention most certainly does not distinguish ATM over SONET—what the defendants are now calling "packet overlay." Chao ¶ 8, 10, 14-16, 32-35; Sincoskie ¶ 10; Prucnal ¶ 14-18. Rather, the inserting of packets (ATM cells) into payload fields in frames (SONET frames) is expressly claimed, not distinguished, by the '306 patent. The defendants attempt to support their theory that the '306 patent distinguishes ATM over SONET by confusingly and inaccurately mislabeling ATM over SONET as a "packet overlay" technology. For example, the defendants explain that                                    REDACTED

ATM cells are created, multiplexed, and then "placed" into the transport bit stream (i.e., SONET frames). D.I.s 252, 239 at 8-11. Defendants characterize this "placing" of ATM cells into SONET frames as "overlaying" packets. *Id.* It is certainly true that

REDACTED                                    . and it is also true that this "placement" of cells into frames can be colloquially called "overlaying" packets on frames. But this mapping of packets into frames as part of a specific transmission protocol has nothing to do with the "packet overlay" migration strategy (i.e., the creation of an entirely new, physical, and

---

[7] The Offer of Proof of Dr. Paul Prucnal is attached at Appendix D and is hereinafter cited as "Prucnal ¶ XX." The purpose of the Prucnal Offer of Proof is discussed in Section III(B), *infra*.

4

mutually exclusive packet network that would be "overlaid" on the existing circuit network). The two concepts are worlds apart. Indeed, packet over SONET technologies are the antithesis of the "packet overlay" migration strategy distinguished by the '306 patent—"packet overlay" distinguished by the '306 patent would require "*multiple separate networks*" whereas packet over SONET integrates circuit and packet traffic on a *single network*. Chao ¶ 8-16, 32-35; Sincoskie ¶ 10-21; Prucnal ¶ 12-18.

### B. The Invention Of The '306 Patent Is Commercially Relevant And Widely Practiced

The defendants sensationalize their incorrect and inapplicable "packet overlay" theory by suggesting that the industry chose ATM over SONET in lieu of Telcordia's patented '306 invention. D.I.s 252, 239 at 3 ("Instead of implementing DTDM, the industry went in the different direction of packet overlay systems such as ATM over SONET. . ."). Indeed, the defendants go so far as to claim that the '306 patent invention is merely a "patented idea that never became a real world product." *Id*. Although the defendants purport to speak for the industry in disparaging the commercial viability of Telcordia's '306 invention, the facts show that major players in the industry apparently disagree. For instance,          REDACTED          a major ATM over SONET equipment maker, paid Telcordia $21 million to settle Telcordia's '306 patent infringement claim and obtain a license to the '306 patent for its ATM over SONET products. Sincoskie ¶ 22; Ex. 31. Similarly,                REDACTED has taken a license to the '306 patent so that it can legally make and sell its ATM over SONET equipment. Ex. 33 (de Pinho Testimony) at 585; Ex. 32.

Indeed, the only "support" the defendants offer for the industry's supposed "choice" not to use Telcordia's patented invention is a specific section of Bellcore's "Preliminary Special Report on Broadband ISDN Access." Exhibit 15 to D.I.s 252, 239. But that report does not

5

support the defendants' theory, and the defendants tellingly fail to include the entire report in the exhibits attached to their motion, leaving out pages that expressly illustrate how the technical features of ATM over SONET are entirely consistent with Telcordia's patented '306 invention.[8] For instance, the defendants leave out the diagram at figure 15 illustrating ATM cells occupying payload fields in a SONET frame:



Figure 15. A 150 Mbit/s UNI

As noted in Section III(F), *infra*, the ATM over SONET technology illustrated in the above diagram is entirely consistent with the '306 patented invention because it shows packets (ATM cells) in the payload fields of a frame (a SONET frame).[9]  Chao ¶ 32-35.

### C. The OSI "Layers" Model Is Unrelated To The '306 Patented Invention And Does Not Limit The Claims

Defendants also claim that the '306 patent cannot cover ATM over SONET technologies because such technologies create packets at one "layer" of the network and insert those packets

---

[8] The entire report is attached as Exhibit 34 to this brief.

[9] Defendants also contend that

REDACTED

into frames at a different "layer" of the network. Apparently, the defendants are (for the first time) transposing the OSI "network layers" model (or some related "layers" model) over the '306 patented invention in an effort to limit the scope of the claims. But the OSI "network layers" model cannot be neatly or accurately applied to the '306 invention. Chao ¶ 17-19; Sincoskie ¶ 23-31; Ex. 36 (Wu Testimony) at 240-42; Ex. 37 (Lee Testimony) at 102-04; Prucnal ¶ 19. Rather, the '306 invention implicates different functionalities from different "layers." Nevertheless, the defendants advance an unsupported argument that the '306 invention must apparently be practiced on only one "layer."

For example, the defendants describe the packetizing and multiplexing of ATM cells at one "layer" of a network, and the "placing" of those ATM cells into the bit stream (SONET frames) at a different "layer" of the network. *See, e.g.*, D.I.s 252, 239 at 10. Under the defendants' new claim construction theory, a data source does not "access the bit stream" as required by the '306 claims because the source does not reside (and does not packetize and multiplex data) on the same "network layer" where the "placing" of packets into the bit stream (SONET frames) occurs. In other words, the defendants now apparently contend that infringement of the '306 patent requires that all elements of the claims are met within one "network layer."

But this unilateral and arbitrary mischaracterization of Telcordia's invention, aside from representing an entirely new theory of claim construction, has simply no basis in fact. There is no mention of or reference to the OSI "layers" model in the '306 patent, and there is nothing in the patent or elsewhere to suggest that the claims are somehow limited by a "layers" model. Chao ¶ 17-19; Sincoskie ¶ 23-31; Prucnal ¶ 19. Specifically, there is no reason that the packetizing of data at one "layer," but the generation of synchronous frames at a different "layer"

7

would support a finding of non-infringement. Sincoskie ¶ 23-31. Indeed, whether specific functionalities are located in different "layers" has nothing to do with whether those functionalities are contained within the same product and practice the '306 invention. In other words, one product can certainly perform functions in many different "layers." Sincoskie ¶ 31. In summary, the network "layers" model does not limit the claims of the '306 patent, the defendants do not even explain what these "layers" are, and most importantly, the Court did not construe the claims such that the invention must be practiced on one network "layer" as the defendants suggest.

### D.    The Accused Products

The defendants state that "it is not clear from Telcordia's interrogatory responses" which products Telcordia is accusing of infringement. D.I.s 252, 239 at 12. As such, the defendants unilaterally redefine Telcordia's contentions by citing and attaching only part of Telcordia's interrogatory answers containing its infringement contentions, and proclaiming that "[t]he framing chips that form the basis for Telcordia's allegations are: [list of chips]." *Id.* Telcordia's interrogatory responses, including the portions that the defendants have chosen to leave out, contain the identification of all modules and chips that form the basis for Telcordia's infringement contentions. Those complete interrogatory responses are attached as Exhibits 28 and 29.

## III.    Argument

### A.    Legal Standard For Summary Judgment

Summary judgment may not be granted unless "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must determine "whether the evidence presents a sufficient disagreement to

require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

In this case, Telcordia concedes that it cannot establish infringement under the Court's construction of two claim limitations. Specifically, the defendants' products do not meet the "empty payload field" limitation in claims 1, 3, and 4, and do not meet the "plurality of sources . . ." limitation in claims 1 and 3. D.I.s 228, 215. As such, Telcordia submits that summary judgment of non-infringement is appropriate in this case. The defendants, however, seek summary judgment on grounds beyond those conceded by Telcordia. For each of the additional grounds upon which defendants seek summary judgment, disputed material issues of fact remain and the defendants are not entitled to judgment as a matter of law.

### B.     The Absence Of Telcordia's Expert Report On '306 Patent Infringement Should Not Serve As A Basis For Entering Judgment Against Telcordia

In their letter requests seeking leave to file a summary judgment motion on '306 patent non-infringement, the defendants argued that "[s]ummary judgment that each of the claim elements is not met is appropriate given Telcordia's failure to proffer any expert report showing that any element of the '306 patent is met by Defendants' products." D.I.s 227, 214. Defendants allude to this argument again in their opening summary judgment brief, stating that "Telcordia chose not to serve any expert report regarding whether the Defendants' accused products meet *any* limitations of the asserted claims of the '306 patent." D.I.s 228, 215 at 1. Telcordia disagrees that the judgment against Telcordia should rest on the grounds that Telcordia has no

9

expert report.[10] In fact, judgment on those grounds, aside from being unnecessary (Telcordia already concedes defendants' entitlement, on other grounds, to the entry of judgment of non-infringement of the '306 patent), would amount to reversible error under established Third Circuit precedent. *See* D.I.s 232, 219 at 2 (citing Third Circuit law).

At the outset, Telcordia's decision not to file an opening expert report on the '306 patent should be considered in the context of the particular procedural developments and schedule of this case. Following the issuance of the Court's claim construction Order, but before the deadline for opening expert reports, Telcordia determined that it could not establish infringement of the '306 patent under the Court's construction of the claims. Indeed, just six days after the Court's claim construction Order issued, Telcordia informed the defendants that it could not establish infringement of the '306 patent and that it would seek the entry of judgment against itself on its '306 patent infringement claims. Ex. 1 to D.I. 200 in C.A. No. 04-875-GMS.[11]

Given that it could not establish infringement of the '306 patent, Telcordia had a good faith belief that it need not serve an opening expert report on '306 patent infringement, that it should not force the defendants to prepare an answering expert report on '306 patent infringement, that it should not burden the defendants with expert discovery and depositions on the issue of '306 patent infringement, and that it should not burden the Court with the continued

---

[10] As Telcordia stated in its August 25, 2006, letter to the Court, Telcordia remains mindful of the Court's unwillingness to consider further submissions on the issue of whether Telcordia should be permitted to serve '306 patent infringement expert reports. D.I.s 232, 219 at n.2. Telcordia must set forth its positions in this answering brief, however, in order to preserve its rights on appeal and avoid waiver, as well as to illustrate why the Court's procedural discovery ruling on expert reports should not, as the defendants have suggested, serve as grounds for a dispositive adverse decision against Telcordia on the merits.

[11] At its first opportunity, within two weeks thereafter, Telcordia informed the Court that it could not prove infringement of the '306 patent under the Court's claim construction, and that it intended to ask the Court to enter judgment against it on that claim. D.I.s 200, 189.

pursuit of its '306 patent infringement allegations. In other words, because it had concluded that it could not prove, and had no good faith basis to continue to prosecute its claim for '306 patent infringement, Telcordia decided not to serve an "opening expert report of the party bearing the burden of proof" as set forth in the Court's Revised Scheduling Order. D.I.s 83, 72 at ¶ 3. In so doing, Telcordia intended simply to spare the parties the needless burden of expert discovery on the '306 patent infringement claims and to dispense with the claims in the most efficient manner possible.

Telcordia's intended course of action—seeking the entry of judgment via stipulation (as well as the right to take an immediate appeal via a Rule 54(b) motion)—is a common and acceptable practice in patent cases where the claim construction dictates the outcome of an infringement claim. *See, e.g., Bell Communications Research, Inc. v. FORE Systems, Inc.*, Nos. 02-1083, 02-1084, 2003 WL 1720080 (Fed. Cir. March 27, 2003); *York Prods., Inc. v. Central Tractor Farm & Family Center*, 99 F.3d 1568 (Fed. Cir. 1996); *Schering Corp. v. Amgen, Inc.*, 35 F. Supp.2d 375 (D. Del. 1999). The defendants, however, resisted Telcordia's effort to dispose of the '306 patent infringement claim in an expedited manner, and instead insisted that summary judgment under Rule 56 is "the only rule that permits you to move from claim construction to non-infringement." July 18, 2006, Hearing Tr. at 19. The crux of defendants' argument was that the Court should "[c]reate a factual record for the Federal Circuit as to why it is that they [Telcordia] can't win." July 18, 2006, Hearing Tr. at 18. During a status conference, after recognizing that "reasonable people can differ" on the issue, the Court determined not to allow Telcordia to seek an immediate judgment on its '306 patent infringement claim and instead to advance the '306 patent infringement case to a full summary judgment proceeding. July 18, 2006, Hearing Tr. at 29.

11

It was at that point that Telcordia realized it would need to initiate the expert report process so that the parties could fully present their respective factual records. Because the June 28, 2006, deadline to file opening expert reports had already passed, Telcordia—the day after the Court's status conference (July 19, 2006)—sought leave of Court to file an out-of-time opening expert report. D.I.s 203, 190. In an effort to accommodate the defendants and to preserve all of the other dates in the Court's Revised Scheduling Order, Telcordia proposed (1) that it file its expert report within two days, (2) that it forgo its reply expert report entirely, and (3) that the Court extend the deadline for the defendants to serve their answering report to the date on which Telcordia's reply report would have been due. *Id.* Telcordia also requested a brief teleconference with the Court to discuss its proposal. *Id.* Two days later, the Court denied Telcordia's request without a teleconference or hearing. D.I.s 206, 296.

The defendants then, on July 21, 2006, served an "answering" expert report on '306 patent infringement even though there was no opening expert report to answer. Telcordia promptly sought leave to reply to this errant "answering" expert report. D.I.s 216, 207. Telcordia's reply report, had it been allowed, would have been prepared and served by the same deadline by which all of the other reply expert reports were to be served in the case, and therefore would not have caused any delay or impacted the case schedule in any respect. However, the Court denied Telcordia's request to serve an expert report in reply to the defendants' "answering" expert report. D.I.s 221, 209.

Under the Court's rulings, the defendants are being permitted to use expert testimony to create a factual record in support of their arguments, but Telcordia is being denied the right to support its arguments in the same manner. Despite this disadvantage, Telcordia is still able to demonstrate material issues of disputed fact. But the defendants now seek to expand the Court's

12

rulings that (1) precluded Telcordia from serving an out-of-time opening expert report and (2) precluded Telcordia from serving a timely reply expert report, into a substantive and dispositive decision against Telcordia on the merits. Specifically, citing the Federal Circuit's decision in *Centricut, LLC v. Esab Group*, 390 F.3d 1361, 1370 (Fed. Cir. 2004), the defendants argue that "summary judgment that each of the claim elements is not met is appropriate given Telcordia's failure to proffer any expert report showing that any element of the '306 patent is met by Defendants' products." D.I.s 228, 215.

The defendants' argument presumes that the precluded expert report and testimony are so critical that without them, Telcordia simply cannot win. If this Court were to agree with defendants and hold that Telcordia's non-expert evidence is insufficient to defeat summary judgment, then the grant of summary judgment against Telcordia would be forbidden by governing[12] Third Circuit law. For under Third Circuit law, "the exclusion of critical evidence is an 'extreme' sanction, not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent of the evidence." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 791-92 (3d Cir. 1994) *citing Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 905 (3d. Cir. 1977). Indeed, "[t]he Third Circuit has, on several occasions, manifested a distinct aversion to the exclusion of important testimony absent evidence of extreme neglect or bad faith on the part of the proponent of the testimony." *ABB Air Preheater, Inc. v. Regenerative Envtl. Equip., Co.*, 167 F.R.D. 668, 671-72 (D.N.J. 1996), *citing In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 791 (3d Cir. 1994); *Meyers v. Pennypack Woods*

---

[12] The Court's discovery rulings that precluded Telcordia from (1) serving an out-of-time opening expert report and (2) serving a timely reply expert report, are procedural in nature and are governed by the law of the regional circuit, not that of the Federal Circuit. *See, e.g., Anchor Wall Sys., Inc. v. Rockwood Retaining Walls, Inc.*, 340 F.3d 1298, 1306 (Fed. Cir. 2003).

13

*Home Ownership Ass'n*, 559 F.2d 894, 905 (3d Cir. 1997); *Dudley v. South Jersey Metal, Inc.*,

555 F.2d 96, 99 (3d Cir. 1977). Before a court may impose the "extreme sanction" of precluding

critical evidence, the Third Circuit mandates consideration of an established set of factors,

including prejudice, ability to cure the prejudice, bad faith, and willfulness. *In re Paoli R.R.*

*Yard PCB Litig.*, 35 F.3d at 791, *citing Pennypack*, 559 F.2d at 905. If Telcordia's expert report

was so critical that its absence warrants substantive findings against Telcordia on the merits, then

the Court abused its discretion in precluding the expert report in the first instance without

performing the required analysis under Third Circuit law.[13]

Telcordia's decision not to serve an opening expert report was made entirely in good

faith, and Telcordia respectfully submits that its conduct does not come anywhere close to

satisfying the Third Circuit's standard for when the "extreme sanction" of preclusion of critical

evidence is permitted:

- Telcordia did not act in bad faith, willfully, or in "flagrant disregard" of a Court Order. To the contrary, Telcordia chose not to file an opening expert report out of concern for judicial efficiency and in order to spare the parties the burden and expense of conducting expert discovery on a conceded claim. Telcordia's decision was premised on established case law regarding the entry of judgment following a claim construction that moots the infringement case. Telcordia simply did not realize that the Court would still consider Telcordia to be "a party bearing the burden of proof" at trial under the Revised Scheduling Order's expert

---

[13] Similarly, in the Third Circuit a sanction that results in a summary judgment against the sanctioned party is likened to the entry of a default judgment. *Ali v. Sims*, 788 F.2d 954, 957 (3d Cir. 2003). Therefore, a court in the Third Circuit abuses its discretion when issuing a sanction that results in a finding of summary judgment against a party without first properly evaluating all of the factors that must be considered before granting default judgment in the Third Circuit. *Id.* Those established factors are "(1) the extent of the *party's* personal *responsibility*; (2) the *prejudice* to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a *history* of dilatoriness; (4) whether the conduct of the party or the attorney was *willful* or in *bad faith*; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of *alternative sanctions*; and (6) the *meritoriousness* of the claim or defense. *Poulis v. State Farm Fire and Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984) (emphasis in original). These factors were not considered in this case.

report provision even though Telcordia already conceded its claim. As soon as Telcordia learned that the Court expected the case to continue to go forward, Telcordia immediately sought leave to initiate the expert report process.

- The defendants would have suffered no prejudice at all based upon the late service of a '306 patent infringement report. Telcordia conceded its claim. A late-served expert report would not have changed this concession in any way. The defendants would have been entitled to final judgment against Telcordia on Telcordia's '306 patent infringement claim with or without Telcordia's out-of-time expert report.

- The defendants' suggestion that Telcordia would gain an "unfair tactical advantage" because Telcordia would be able to prepare a late '306 infringement report while in possession of the defendants' timely '306 validity report rings hollow. D.I.s 204, 194. Infringement and validity are mutually exclusive issues, and the defendants' positions on '306 validity under the Court's established claim constructions would have no bearing on or relation to Telcordia's '306 infringement positions under the Court's established claim constructions.

- The defendants' claim that Telcordia's proposal would "severely compress defendants' time to submit reports, take depositions, and prepare summary judgment papers" also rings hollow. Because Telcordia's proposal for out-of-time reports contemplated that the defendants would be permitted to file an answering report (a report which they filed in any event even in the absence of an opening report), Telcordia would face the mirror image of the defendants' schedule for taking depositions and preparing summary judgment papers. Moreover, the defendants fail to acknowledge that these events occurred *nine months* before trial was scheduled to begin. The Third Circuit reversed a district court's exclusion of expert testimony where the substance of that testimony was disclosed for the first time a mere three weeks before trial, recognizing that the opportunity existed to depose the witness before trial. *Pennypack*, 559 F.2d at 905. The defendants would have had abundant time to depose Telcordia's proposed expert in this case.

- Where an opportunity to depose remained, and where the late-disclosed testimony occurred "only a month after the district court's deadline, four months before the scheduled trial date, and 60 days before the [discovery] deadline," the Third Circuit found an abuse of discretion in excluding the expert testimony. *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d at 792. Under Telcordia's proposal, the late-disclosed expert report would have been served three and one-half weeks late, nine months before trial, and well within the expert discovery deadlines.

- Alternative, less extreme sanctions were clearly available.

15

The Court's preclusion of Telcordia's expert report is less prejudicial for purposes of this summary judgment proceeding,[14] however, in the event that the Court finds summary judgment of non-infringement against Telcordia *solely* on the basis that the defendants' products do not meet the "empty payload field" and "plurality of sources . . ." limitations (the conceded limitations). This is the correct decision in any event because for each of the other claim elements upon which the defendants have moved for summary judgment (i.e., the non-conceded limitations), Telcordia raises material factual disputes even in the absence of expert testimony on Telcordia's behalf. As demonstrated in this brief, documents, fact witness testimony, and the defendants' expert testimony all establish that material factual issues remain. Of course, had Telcordia been permitted to offer expert testimony on '306 patent infringement, its expert would have reinforced Telcordia's positions.

Telcordia respectfully submits that the Court need not and should not base its judgment against Telcordia on claim limitations that are laden with material factual disputes, that problematically implicate the imbalance in expert testimony between the parties, and that needlessly create appellate issues. Rather, Telcordia reiterates its concession that the defendants' products do not meet the "empty payload field" and "plurality of sources . . ." limitations under the Court's claim construction. D.I.s 228, 215. That concession alone fully supports the entry of judgment of non-infringement against Telcordia. Nevertheless, to preserve its rights in the event that the Court decides to evaluate the factual disputes beyond Telcordia's concessions, Telcordia submits an offer of proof from its expert, Dr. Prucnal, attached at Appendix D. *See, e.g., White v. SMI of Pattison Avenue LP*, No. C.A. 92-1724, 1998 WL 633697 (E.D. Pa. Aug. 11, 1998)

---

[14] Of course the preclusion of Telcordia's expert report would be highly prejudicial if Telcordia ultimately proceeds to a trial without such report following Federal Circuit review.

("In the first instance, the record reveals that plaintiff's counsel never took exception to the Court's ruling [precluding expert testimony] nor submitted an offer of proof. Therefore, plaintiff has failed to properly preserve this issue.")

### C.    Telcordia Concedes That The Plurality Of Sources    REDACTED

As noted above, Telcordia concedes that it cannot establish infringement of the "plurality of sources" limitations in claims 1 and 3 under the Court's construction. Specifically, as Telcordia stated in its August 11, 2006, letter to the Court:

> Telcordia also determined that the defendants do not infringe claims 1 and 3 of the '306 patent under the Court's claim construction because the defendants' products do not include "two or more sources that each insert data into the generated bit stream *via its own tributary*" as required by the Court's construction of the terms "plurality of sources which have access to the bit stream" and "plurality of sources having different but rates and which have access to said bit stream." (D.I.s 189 and 179)(emphasis added).

### REDACTED

D.I.s 227, 214. Telcordia disagrees with the defendants' apparent characterization of Telcordia's concession. For instance, the defendants state that Telcordia does not contend that a "pre-multiplexed" stream of data is a "bit stream," but that does not form any part of Telcordia's concession. D.I.s 252, 239 at 22-23. The sum and substance of Telcordia's concession as to the "plurality of sources" limitations is set forth above. With that concession, Telcordia submits that summary judgment of non-infringement of claims 1 and 3 is appropriate on the grounds that the defendants' products do not meet the "plurality of sources" limitations.

**D.     Telcordia Concedes That The Defendants' Products Do Not Have "Empty Payload Fields" As Construed By The Court**

Also as noted above, Telcordia concedes that it cannot establish infringement of the "empty payload fields" limitation in claims 1, 3, and 4 under the Court's construction.

Specifically, as Telcordia stated in its August 11, 2006, letter to the Court:

> Telcordia's concession of non-infringement of the '306 patent is predicated on the Court's June 22, 2006, Order construing the claims. Specifically, in its claim construction Order, the Court determined that the term "empty payload field" means "a payload field that is empty of source data but including bit signals of some kind, i.e. garbage bits." (D.I.s 189 and 179). During the *Markman* proceedings, Telcordia argued that "bit signals of some kind" could be any non-source bit signals, whereas the defendants argued that "bit signals of some kind" were limited to only "garbage bits," where "garbage bits" were non-source bit signals that served no purpose other than place-holding. By expressly incorporating the phrase "i.e. garbage bits" into the construction, the Court adopted the defendants' position and rejected Telcordia's position.
>
> Following entry of the claim construction Order, Telcordia determined that the defendants do not infringe claims 1, 3, and 4 of the '306 patent under the Court's construction because the "empty payload fields" of the defendants' products do not consist exclusively of non-source bits that serve no purpose other than place-holding, but rather consist at least partly of non-source bits that can serve other purposes (such as timing, for example).

D.I.s 227, 214. The defendants' expert notes that the "payload fields" of the defendants' products

REDACTED

Ex. 6 to

D.I.s 252, 239 at 16; *see also* Ex. 4 (Acampora Testimony) at 263-65, 339-48. Had the Court construed "empty payload fields" in accordance with Telcordia's proposed construction (where "bit signals of some kind" would be "any non-source bit signals"), the defendants' products would have met the "empty payload fields" limitation. But with the Court's construction, and with Telcordia's above concession, Telcordia submits that summary judgment of non-

18

infringement of claims 1, 3, and 4 is appropriate on the grounds that the defendants' products do not meet the "empty payload fields" limitation.

### E.    In The Accused Products Packets Are Only Put In Frames Which Are Empty

In their opening summary judgment brief the defendants continue to perpetuate the myth that their proposed construction of the "such that" clauses—"packets are only put in frames which are empty"—means the same thing as Judge Farnan's construction—"packets are only put in frames which are empty, i.e., which have zero data in their payloads." *Bell Communications Research Inc. v. FORE Systems, Inc.*, 113 F. Supp.2d 635, 646 (D. Del. 2000). This is not correct. First, Judge Farnan's construction is literally different from the defendants' truncated version of that construction. Second, the defendants still refuse to acknowledge and account for the reality that Judge Farnan's construction was overturned by the Federal Circuit in one key respect and modified on remand in another key respect. Third, the defendants wrongly contend that Judge Farnan's construction requires that there can only be one packet per frame. Judge Farnan *never decided* that issue (although it was presented to him), and only the defendants' construction, not Judge Farnan's construction, purportedly contains a shoehorned "one and only one packet per frame" limitation.[15]

For purposes of summary judgment, the issue distills to whether this Court's construction of the "such that" clauses limits the claims to one and only one packet per frame (as the

---

[15] The defendants also again raise the red herring of collateral estoppel, criticizing Telcordia for not appealing Judge Farnan's original claim construction in the *Bellcore* case. Because Judge Farnan never decided that the claims were limited to "one and only one packet per frame," there was nothing for Telcordia to appeal. Moreover, Telcordia did appeal and seek modification of two key aspects of Judge Farnan's construction, both of which were overturned. Finally, Telcordia cannot be collaterally estopped by virtue of Judge Farnan's decision because the case before Judge Farnan settled—it did not reach a final, non-appealable decision on the merits. *A.B. Dick Co. v. Burroughs Corp.*, 713 F.2d 700, 704 (Fed. Cir. 1983).

defendants contend), or whether this Court's construction reflects a true adoption of Judge Farnan's construction (not the construction propounded by the defendants, but the construction as revised on appeal and modified on remand), which would allow for multiple packets per frame.

### 1. There Is No "One And Only One Packet Per Frame" Limitation Under The Court's Claim Construction

Under Telcordia's infringement theory, the limitation that "packets are only put in frames which are empty" does not limit the invention to covering only systems that insert one packet per frame, staying true to this Court's construction, Judge Farnan's construction, the Federal Circuit's decision on appeal, and Judge Farnan's modification on remand. In other words, Telcordia's infringement theory is premised upon the theory that this Court adopted Judge Farnan's true construction of the "such that" clauses, without the defendants' embellishments.

Telcordia's theory is based upon the fact that no court, including this Court, Judge Farnan, and the Federal Circuit, ever restricted the claims in such a manner that there may be only one packet per frame. Telcordia explained during oral argument on claim construction that although the issue of "one and only one packet per frame" was presented to Judge Farnan, the Judge never decided that the claims include a one packet per frame limitation. May 3, 2006, Hearing Tr. at 32, 34. The defendants vigorously disputed Telcordia's representations, characterizing Telcordia's explanation of Judge Farnan's claim construction as "the most notable thing" that Telcordia said during its oral argument, and reciting cropped quotes from Bellcore's claim construction briefs in the *Bellcore* case in an effort to suggest that Judge Farnan did in fact decide the issue. May 3, 2006, Hearing Tr. at 114-16. The defendants' cropped quotes are inaccurate and misleading. An evaluation of the exact arguments that were presented to Judge

20

Farnan against the exact constructions that were issued by Judge Farnan reveals that Judge

Farnan never decided that there may be only one packet per frame.

The issue was presented to Judge Farnan in the context of the constructions of the

"filling" limitations. FORE proposed that "filling the empty payload fields in said frames"

requires "(1) that a complete empty payload field is first created, and (2) that, after creation, the

frame's empty payload is *100% filled with a packet*." Ex. 38 (FORE Opening *Markman* Brief) at

12 (emphasis added). In its responsive brief, Bellcore recognized that:

> Fore appears to be asking the court to read a "one packet per
> frame" and a "one packet per payload field" limitation into the
> claims. This aspect of the proposed claim construction is based on
> nothing more than the specific payload field and packet sizes
> described in the preferred embodiments in the '306 patent.
>
> ...
>
> Fore's attempt to have the Court rewrite the claims to require each
> frame to have "one and only one empty payload field" must be
> rejected.

Ex. 39 (Bellcore Reply *Markman* Brief) at 9-10. Judge Farnan construed the term as follows:

> Accordingly, the Court construes the term "empty payload field" to
> mean that a frame's payload has zero data in it. The Court further
> construes "filling the empty payload fields" to mean that *first the
> empty frames must be generated, and second the frames' empty
> payloads are filled with data.*

113 F. Supp. 2d 635 at 645 (emphasis added). Judge Farnan's claim construction Order

expressly incorporated the first prong of FORE's proposed construction (that a complete empty

payload field is first created and then filled), but Judge Farnan's construction *did not* incorporate

the second prong of FORE's proposed construction (that empty payload fields are 100% filled

with *a packet*). Indeed, Judge Farnan's entire analysis of the "filling" limitation focused only on

the creation of the empty payload field and did not touch upon whether the frame must be filled

with one and only one packet or, alternatively, may be filled with multiple packets. *Id.*

21

Similarly, Judge Farnan's ultimate construction of the "such that" clauses does not limit the claims to "one and only one packet per frame," but rather allows multiple packets per frame by virtue of its broad plural-plural-plural syntax:

> Accordingly, the Court concludes that the phrase "[such that] data in packetized format from any of said sources is written into any available empty payload field of any of said frames" means that *packets* are only put in *frames* which are empty, i.e. which have zero data in their *payloads*.

113 F. Supp.2d 635 at 646 (emphasis added). This is true even though Judge Farnan recognized FORE's contention that "once a packet is inserted into a frame, it is no longer empty so other sources will not seize the filled frame." *Id.* This recognition (which is not part of Judge Farnan's construction as noted above) must be understood in the context of the arguments before Judge Farnan. The issue before Judge Farnan on the construction of the "such that" clauses was not focused on whether each frame could contain one and only one packet (indeed, that proposal had already been rejected as part of the analysis of the "filling" limitation), but rather focused on whether a *subsequent* framer could "seize" a frame that already had packets in it and "overwrite" or "corrupt" those packets with new data. This issue is clear from FORE's claim construction brief and from the arguments advanced by FORE during oral argument. Ex. 38 (FORE Opening *Markman* Brief) at 15 ("If sources are allowed to 'seize' and 'fill' non-empty frames, the data currently in the non-empty frame will be overwritten or a least corrupted . . ."); Ex. 40 (FORE claim construction oral argument) at 93, 94. Judge Farnan agreed with FORE that a *subsequent* framer may not put packets into a frames that already have packets in them.

Telcordia's interpretation of this Court's and Judge Farnan's construction, therefore, dictates that when a frame is initially presented to a framer, and that frame already has a packet or packets assigned to it, then the framer may not put packets into the frame. In other words, a framer may only put packets into frames that are initially presented to (or generated by) that

22

framer in an empty state ("i.e., . . . have zero data in their payloads."). Alternatively, if a frame is in an empty state when it is initially presented to (or originated by) a framer, that frame remains "empty" (i.e., it can accept packet data) for the whole frame transmission period, regardless of how many packets the first framer reads out of its FIFO and inserts into the frame. '306 Col. 9, ll. 38-49; D.I. 120 in C.A. No. 04-875-GMS at 10, 16; Chao ¶ 20.

Telcordia's interpretation of this Court's and Judge Farnan's construction is entirely consistent with the specification, which indicates that framers will only read packets out of the FIFO when "the *incoming* DTDM frame on the serial data input (sdi) of the framer 53 is not already occupied by a valid packet, i.e. the *incoming* DTDM frame is empty." '306 Col. 9, ll. 38-41. Judge Farnan's construction is also consistent with the "multiple packet per frame" aspect of the invention expressly stated twice during prosecution:

- "In certain cases, it may be possible for a payload field of a frame to contain more than one packet." Feb. 17, 1989 Response to Office Action at 8.

- "In certain cases, it may be possible for a payload field of a frame to have the capacity for more than one packet." Aug. 21, 1989 Response to Office Action at 7.

Exhibits D and E to D.I.s 104, 94. Finally, Judge Farnan's construction is consistent with, indeed mimics, the "multiple packet per frame aspect" of the invention that is captured in the broad plural-plural syntax of all of the asserted claims:

- "filling the empty payload *fields* in said *frames*" (claim 1)(emphasis added);

- "inserting said *packets* . . . into empty payload *fields* of said *frames*" (claim 3)(emphasis added);

- "inserting each of said *packets* . . . into any empty payload field of any of said *frames*" (claim 4)(emphasis added).

For these reasons, and for all of the additional reasons advanced by Telcordia during claim construction, Telcordia would have been fully prepared to go to trial (had it not conceded non-

infringement on other limitations) on the understanding that this Court adopted Judge Farnan's true construction, which does not confine the claims to covering only systems that have one and only one packet per frame.[16]

**REDACTED**

**2.    The Accused Products**

Telcordia agrees with the defendants that "it is undisputed, indeed indisputable, that

**REDACTED**                                       D.I.s 252,

239 at 16. Indeed, had Telcordia not conceded its infringement claim on other limitations, Telcordia would have pursued summary judgment that the defendants' products meet the "such that" limitations. Section III(E)(3) *infra*; Prucnal ¶ 19-21.

**3.        REDACTED          In The Accused Products**

Recognizing that their "one and only one packet per frame" argument greatly overextends the Court's actual claim construction, the defendants offer two back-up non-infringement arguments. First, the defendants argue that in the accused devices,    **REDACTED**

---

[16] During claim construction, Telcordia advanced a construction of the "such that" clauses that was accurately keyed to the disputes and claim limitations involved in this case, and that were not involved in the earlier *Bellcore* case. For instance, Telcordia's proposed construction focused more granularly, and correctly, on the fact that the claim language is directed toward "empty payload fields" and not "empty frames." D.I.s 104, 94 at 13-16. The relationship between "empty frames" and "empty payload fields" was noted in passing by FORE during the *Bellcore* case, but the distinction was not materially addressed by the Court. Ex. 40 (FORE claim construction oral argument) at 104 ("...and by empty frames, sometimes the patent actually uses that phraseology. What's truly meant is a frame with an empty payload field, but that's sort of a shorthand, I think, that's used interchangeably in the patent.") While Telcordia still contends that its construction is correct in focusing on "empty payload fields" (and in all other respects), Telcordia recognizes that this Court did not adopt certain aspects of Telcordia's proposed construction. At the same time, as Telcordia stated in its claim construction briefs and during oral argument, Telcordia never disputed the general concept that "packets are only put in frames which are empty." Indeed, Telcordia explained that it "largely agrees with Lucent on the point that packets are only put in frames that are 'empty.'" D.I. 120 in C.A. No. 04-875-GMS at 15. Telcordia, however, always disputed the defendants' effort to shoehorn a new limitation— one and only one packet per frame—into the claims under the auspices of adopting Judge Farnan's construction.

REDACTED                              D.Is 252, 239 at

16.

    The defendants' theory is inconsistent with their description of their own accused

products set forth in support of other arguments in their brief.  For example, in Section IV(E) of

their brief, citing to Dr. Acampora's report, the defendants explain that

       REDACTED

           D.I.s 252, 239 at 19.  Similarly, when describing their


          REDACTED


D.I.s 252, 239 at 10.  These statements are inconsistent with the defendants' theory

        REDACTED

    The defendants' theory is also contrary to the facts.  The technical documentation that

describes                              REDACTED

        Ex. 2; Ex. 41.  For instance, the defendants' expert, Dr. Acampora, was

directly questioned about              REDACTED

        Ex. 4 (Acampora Testimony) at 249.  Interpreting a

document describing                    REDACTED

        Ex. 2; Ex. 4 (Acampora Testimony) at 250.  Dr. Acampora

also agreed that ·       REDACTED

        Ex. 2; Ex. 4 (Acampora Testimony)

at 248.  Indeed, Dr. Acampora explained how

        REDACTED

Ex. 4 (Acampora Testimony) at 239.  Dr.

Acampora's testimony directly conflicts with the defendants' non-infringement theory, and

demonstrates                                                                                                                      This

**REDACTED**

testimony was also confirmed by Winston Mok,

Winston

**REDACTED**

Mok explained that :

Ex. 42; Ex. 1 (Mok Testimony) at 224-25.  As such, the facts

demonstrate that                                                  **REDACTED**

*See also*, Prucnal ¶ 19-21, 42-43.  Given the forgoing, at the very least there are

genuine disputed issues of material fact on this issue precluding summary judgment.

**4.    "Frames That Are Empty" Has Not Been Construed And Does Not Have The Same Meaning As "Empty Payload Fields"**

As a second back-up non-infringement argument, the defendants contend that the frames

are not "empty."  The defendants apply the Court's construction of "empty payload field"—a

term that is found in the claims and that was expressly construed during claim construction—to

the concept of an "empty frame"—a term that is not found anywhere in the claims, that was not

construed during claim construction, and that is expressly defined in the patent in a manner that

is contrary to the defendants' new position.  The defendants' transparent effort to overextend the

construction of "empty payload field" into other aspects of the claims is inappropriate and

incorrect.

After full briefing and oral argument on the issue, the Court determined that the claim

element "empty payload field" means "a payload field that is empty of source data, but including

bit signals of some kind, i.e. garbage bits." D.I.s 189, 179 at ¶ 27.  As noted above, Telcordia

conceded non-infringement of this claim term because the defendants' products :

26

REDACTED

Because the defendants are pleased with the Court's construction of "empty payload field," they now contend that it means the same thing as "empty frame." But the defendants never made this argument during claim construction and Telcordia was never given an opportunity to address the construction of "empty frame." Moreover, "empty frame" is not a claim term, rather it is a term that is found only in the specification and in the Court's construction of the "such that" clauses.

To the extent that the Court entertains the defendants' request that the Court construe its construction of the "such that" clauses, the patent specification expressly and clearly defines an "empty frame": "the *incoming* DTDM frame on the serial data input (sdi) of the framer 53 is not already occupied by a valid packet, i.e. the *incoming* DTDM frame is empty." '306 Col. 9, ll. 38-41 (emphasis added); Prucnal ¶ 29. In other words, the only criteria for a frame to be empty is that when it is *first presented to* a framer (or when it is first generated by a framer), it is not "already occupied by a valid packet." This is far different from the stringent criteria of the Court's construction of "empty payload field."[17] The defendants should not be able to unilaterally extend the Court's construction of "empty payload field" to cover a completely different concept, "empty frame."

F.    **The "Payload Fields" In The Accused Products**

REDACTED

The defendants contend that the payload fields in their products ·

and therefore do not meet the Court's construction of the "inserting" and

---

[17] Indeed, during claim construction Telcordia noted that a frame is never truly empty because a frame always has at least a "transmission overhead field" containing data. '306 Col. 17, ll. 48-49; Col. 18, ll. 5-6; D.I.s 104, 94 at 14.

27

"filling" limitations, which require "replacing the empty payload field with data from a single

source." The defendants explain that "[t]here is no real dispute that Defendants' products

REDACTED

> D.I.s 252, 239 at 18. Telcordia agrees that the defendants' products

REDACTED

Rather, the Court's construction requires that

*payload fields* be replaced with data from a single source. D.I.s 189, 179 at ¶ 27. Again,

because the defendants are happy with a construction that applies to payload fields (but does not

apply to frames), the defendants seek to obscure the distinction between payload fields and

frames.

But the patent is clear—frames and payload fields are different. Frames are not payload

fields; rather frames have payload fields. Indeed, this distinction is clear from the very "filling"

and "inserting" claim terms that were construed by the Court:

- "filling the empty *payload fields in said frames* with data in packetized format from a plurality of sources. . ."[18] (claim 1);

- "inserting said packets from said sources into the empty *payload fields of said frames* . . ." (claim 3);

- "inserting each of said packets . . . into any empty *payload field of any of said frames*. . ." (claim 4).[19]

---

[18] Defendants' suggestion that Telcordia's use of this claim language—which references a "plurality of sources"—in its claim charts in response to defendants' interrogatories somehow amounts to an admission that defendants' products allow multiple sources to insert data into one payload field is completely off base. D.I.s 252, 239 at 17-18. The claims expressly cover systems that have a plurality of sources, and Telcordia's infringement contentions incorporate this concept. But that does not mean that data from the plurality of sources is placed into one ATM payload field. Rather, each ATM payload field contains data from only one of the plurality of sources.

Dr. Acampora's depiction of a SONET frame illustrates the payload fields that make up the frame:



Ex. 6 to D.I.s 252, 239 at 11.  During his deposition, Dr. Acampora explained that

Ex. 2 (Acampora Testimony) at 231.

REDACTED

*Id.*

*See also* Prucnal ¶ 22-28.  In the

defendants' products,

**REDACTED**

All of the documentary

**REDACTED**

evidence shows that

---

(continued from previous page)
[19] Moreover, nothing in the claim language nor the Court's construction of that language ("replacing the empty payload field with data from a single source") mandates that there be only one payload field per frame—a subtle and incorrect presumption that forms the basis of the defendants' summary judgment position.  *See* D.I.s 104, 94.  The defendants are in essence again arguing that the invention covers only systems that have one and only one packet per frame.  For the reasons noted in Section III(E)(1), *supra*, the invention is not so limited.

29

REDACTED

*See also* Prucnal ¶ 26.                                    REDACTED

defendants are not entitled to summary judgment on the "inserting" and "filling" limitations.

Rather, the defendants' products meet the "inserting" and "filling" limitations because they

"replac[e] the empty payload field with data from a single source" as required by the Court's

construction.[20] At the very least, there are genuine disputed issues of material fact on this issue

precluding summary judgment.

### G.    The Accused Products Meet The "Available Empty Payload Field" Limitation

The defendants contend that their accused products do not meet the "available empty

payload" limitation because, they argue, the products do not fill the empty payload field with "a

data packet from the source, among the plurality of sources, of the *highest priority* with a data

packet ready to transmit." D.I.s 252, 239 at 19.  Defendants claim that their products do not

meet this limitation because

REDACTED

---

[20] Of course, Telcordia concedes that the "empty payload fields" of the defendants' products are not "payload fields that are empty of source data but include bit signals of some kind, i.e. garbage bits" because they do not consist exclusively of non-source bits that serve no purpose other than place-holding, but rather consist at least partly of non-source bits that can serve other purposes.  D.I.s 228, 215.

This non-infringement theory is contrary to the facts.  The defendants improperly focus on the fact that

D.I.s 252, 239 at 20.

REDACTED

To the contrary, the defendants' products



Ex. 23 to D.I.s 232, 219; Exs. 12 - 24; Prucnal ¶ 30, 38-41.  Dr. Acampora's description of the accused products is consistent with

REDACTED

Ex. 4 (Acampora Testimony) at 216; Exs. 12-24; Prucnal ¶ 30, 38-41.

31

The defendants admit that

D.I.s 252, 239 at 20.

REDACTED

As explained by defendants' expert Dr. Acampora:

REDACTED

As such, the defendants' products literally meet the "available empty payload field" limitation,[21] and the defendants are not entitled to summary judgment. Rather, as confirmed by defendants' expert testimony and defendants' product documentation, in the defendants' products

REDACTED

D.I. 189 ¶ 35. At the very least, there are genuine disputed issues of material fact on this issue precluding summary judgment.

---

[21] Again, Telcordia concedes that the "empty payload fields" of the defendants' products are not "payload fields that are empty of source data but include bit signals of some kind, i.e. garbage bits" because they do not consist exclusively of non-source bits that serve no purpose other than place-holding, but rather consist at least partly of non-source bits that can serve other purposes. D.I.s 227, 214. But this concession is unrelated to the priority scheme required by the Court's construction of "available empty payload field," which Telcordia contends is found in the defendants' products.

32

H.     **The Accused Products Perform The Functions Of The Generating Means And The Inserting Means**

The defendants contend that their accused products do not perform the claimed functions of the "inserting means" and the "generating means" of claim 4. D.I.s 252, 239 at 21. Specifically, defendants argue that their products do not first "generate a train of empty frames and then replace the empty payload field of those frames. . ." *Id.* At the outset, the defendants' suggestion that a train of empty frames must be generated before packets may be inserted into the frames is inconsistent with the Federal Circuit's clear direction that:

> neither precedent, grammar, logic, specification, nor prosecution history dictates that a complete frame be generated before the filling process may begin. Given that the specification discloses features of the overhead field that would permit filling to begin before generation is complete, it would be error to impose upon the claims a requirement that filling cannot begin until one or more empty frames are generated completely. We therefore agree with Bellcore that the claims encompass the insertion of data into a frame's empty payload field while the frame is still being generated.

*Bell Communications Research, Inc. v. FORE Systems, Inc.*, Nos. 02-1083, 02-1084, 2003 WL 1720080 at *5 (Fed. Cir. March 27, 2003). Moreover, the defendants' products do in fact

REDACTED

For example, Winston Mok

33

Testimony) at 225; *see also* Chao ¶ 34-35; Prucnal ¶ 42-45.[22]  This function of the defendants'

products—                **REDACTED**                —was also confirmed by

Cisco design engineer Michael Takefman.  Ex. 5 (Takefman Testimony) at 164; Ex. 43.

Moreover, Winston Mok explained ⦁

REDACTED

REDACTED

Because defendants' expert witness testimony, defendants' fact and 30(b)(6) witness

testimony, and defendants' product documentation all demonstrate that the defendants' products

perform the agreed upon functions of the "generating means" and the "inserting means," the

defendants are not entitled to summary judgment on the grounds that their products do not

REDACTED

Ex. 6 at 21."  D.I.s 252, 239 at 13-14.

34

perform those functions.  At the very least, there are genuine disputed issues of material fact on this issue precluding summary judgment.

**IV.    Conclusion**

For the reasons stated above, material factual issues remain and the Court should not grant summary judgment in favor of the defendants on grounds beyond those for which Telcordia concedes non-infringement.  The Court should grant summary judgment of non-infringement of the '306 patent only on the grounds that the defendants' products do not meet (1) the "empty payload field" limitations (claims 1, 3, and 4) and (2) the "plurality of sources" limitations (claims 1 and 3) under the Court's constructions of those limitations and as conceded by Telcordia.  D.I.s 227, 214.


                                                  ASHBY & GEDDES

*Of Counsel:*                                     */s/ Tiffany Geyer Lydon*

Donald R. Dunner                                  Steven J. Balick (I.D. #2114)
Steven M. Anzalone                                John G. Day (I.D. #2403)
Richard H. Smith                                  Tiffany Geyer Lydon (I.D. #3950)
James T. Wilson                                   222 Delaware Avenue, 17th Floor
John M. Williamson                                P.O. Box 1150
Finnegan, Henderson, Farabow,                     Wilmington, Delaware 19899-1150
  Garrett & Dunner, L.L.P.                        (302) 654-1888
901 New York Avenue, NW                           sbalick@ashby-geddes.com
Washington, DC  20001-4413                        jday@ashby-geddes.com
(202) 408-4000                                    tlydon@ashby-geddes.com

York M. Faulkner                                  *Attorneys for Plaintiff*
Finnegan, Henderson, Farabow,                     *Telcordia Technologies, Inc.*
  Garrett & Dunner, L.L.P.
Two Freedom Square
11955 Freedom Square
Reston, VA  20190-5675
(650) 849-6600

Dated:  October 18, 2006
174309.1

## CERTIFICATE OF SERVICE

I hereby certify that on the 25th day of October, 2006, the attached **REDACTED PUBLIC VERSION OF TELCORDIA'S ANSWERING BRIEF IN PARTIAL OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 4,893,306** was served upon the below-named counsel of record at the address and in the manner indicated:

John W. Shaw, Esquire                                    HAND DELIVERY
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street
Wilmington, DE  19801

Steven C. Cherny, Esquire                          VIA ELECTRONIC MAIL
Latham & Watkins LLP
885 Third Avenue, Suite 1000
New York, NY  10022

David A. Nelson, Esquire                           VIA ELECTRONIC MAIL
Latham & Watkins LLP
Sears Tower, Suite 5800
Chicago, IL  60606

David M. Farnum, Esquire                           VIA ELECTRONIC MAIL
Latham & Watkins LLP
555 Eleventh Street, N.W., Suite 1000
Washington, DC  20004-1304

Sean S. Pak, Esquire                               VIA ELECTRONIC MAIL
Latham & Watkins
633 West Fifth Street, Suite 4000
Los Angeles, CA  90071-2007

Jack B. Blumenfeld, Esquire                              HAND DELIVERY
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
Wilmington, DE  19899-1347

Matthew D. Powers, Esquire
Weil, Gotshal & Manges LLP
201 Redwood Shores Parkway
Redwood Shores, CA  94065

<u>VIA ELECTRONIC MAIL</u>

*/s/ Tiffany Geyer Lydon*

Tiffany Geyer Lydon

172095.1