REDACTED – PUBLIC VERSION

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TELCORDIA TECHNOLOGIES, INC., | ) | **CONFIDENTIAL:** |
| | ) | **FILED UNDER SEAL** |
| Plaintiff/Counterclaim Defendant, | ) | |
| | ) | |
| v. | ) | C.A. No. 04-875-GMS |
| | ) | |
| LUCENT TECHNOLOGIES INC., | ) | |
| | ) | |
| Defendant/Counterclaim Plaintiff. | ) | |
| | ) | |
| TELCORDIA TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff/Counterclaim Defendant, | ) | |
| | ) | |
| v. | ) | C.A. No. 04-876-GMS |
| | ) | |
| CISCO SYSTEMS, INC., | ) | |
| | ) | |
| Defendant/Counterclaim Plaintiff. | ) | |
| | ) | |

## DEFENDANTS' ANSWERING BRIEF IN OPPOSITION TO TELCORDIA'S MOTION FOR PARTIAL SUMMARY JUDGMENT THAT THE '306 PATENT IS NOT INVALID AS ANTICIPATED OR FOR LACK OF ENABLEMENT

John W. Shaw (No. 3362)
Monte T. Squire (No. 4764)
Andrew A. Lundgren (No. 4429)
YOUNG CONAWAY STARGATT &
TAYLOR, LLP
The Brandywine Building
1000 West Street
Wilmington, DE 19801
Telephone: (302) 571-6600
Facsimile: (302) 576-3334
jshaw@ycst.com
msquire@ycst.com
alundgren@ycst.com

*Attorneys for Defendant Lucent Technologies Inc.*

Jack B. Blumenfeld (No. 1014)
Leslie A. Polizoti (No. 4299)
MORRIS, NICHOLS, ARSHT & TUNNELL,
LLP
1201 North Market Street
Wilmington, DE 19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
jblumenfeld@mnat.com
lpolizoti@mnat.com

*Attorneys for Defendant Cisco Systems, Inc.*

OF COUNSEL:

Steven C. Cherny
LATHAM & WATKINS LLP
885 Third Avenue, Suite 1000
New York, NY 10022
Telephone: (212) 906-1200
Facsimile: (212) 571-4864

David A. Nelson
Israel Sasha Mayergoyz
David C. McKone
LATHAM & WATKINS LLP
Sears Tower, Suite 5800
Chicago, IL 60606
Telephone: (312) 876-7700
Facsimile: (312) 993-9767


Dated: October 20, 2006

OF COUNSEL:

Matthew D. Powers
Edward R. Reines
Jessica L. Davis
Sonal N. Mehta
Thomas B. King
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Telephone: (650) 802-3000
Facsimile: (650) 802-3100

Ryan Owens
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

## Table of Contents

I.    Nature and Stage of the Proceedings ................................................................1

II.   Summary of the Argument..............................................................................1

III.  Legal Standard ................................................................................................2

IV.   Argument ........................................................................................................4

      A.   Disputed Facts Exist Regarding Whether The Priority Scheme Disclosed
          In FasNet And Budrikis Meet The Court's Priority Scheme Requirement ............4
          1.   Telcordia Mischaracterizes FasNet And Budrikis As Requiring
               Each Station To Transmit Only One Packet Per Cycle, But
               Concedes The Use Of The Claimed Priority Scheme..................................5
      B.   The Boehm-Ching-Say Article Incorporates By Reference The Beckner
          Minzer Tutorial ................................................................................................9
      C.   Telcordia Improperly Asserts That Defendants Have Conceded Lack of
          Anticipation By Certain Prior Art References.......................................17
      D.   Defendants Do Not Contest Enablement Under The Court's Claim
          Construction.......................................................................................18

V.    Conclusion ....................................................................................................19

## Table of Authorities

**CASES**

*Advanced Display Sys., Inc. v. Kent State Univ.,*
   212 F.3d 1272 (Fed. Cir. 2000)                                9, 12

*Akami Techs., Inc. v. Cable & Wireless Internet Services, Inc.,*
   344 F.3d 1186 (Fed. Cir. 2003)                                3

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242 (1986)                                           3

*Arthrocare Corp. v. Smith & Nephew, Inc.,*
   406 F.3d 1365 (Fed. Cir. 2006)                                5

*Beckson Marine, Inc. v. NFM, Inc.,*
   292 F.3d 718 (Fed. Cir. 2002)                                 3

*Celotex Corp. v. Catrett,*
   477 U.S. 317 (1986)                                           3

*Glaxo Group, Ltd. v. Apotex, Inc.,*
   376 F.3d 1339 (Fed. Cir. 2004)                                5

*In re Baxter Travenol Labs.,*
   952 F.2d 388 (Fed. Cir. 1991)                                 4

*In re Fouche,*
   439 F.2d 1237 (CCPA 1971)                                     15

*In re Fried,*
   329 F.2d 323 (CCPA 1964)                                      15

*In re Graves,*
   69 F.3d 1147, (Fed. Cir. 1995)                                1, 3

*In re Hughes,*
   550 F.2d 1273 (CCPA 1977)                                     10, 15,
   16

*In re Lund,*
   336 F.2d 982 (CCPA 1967)                                      16

*In re Voss,*
   557 F.2d 812 (CCPA 1977)                                      passim

*Southern Clay Prods., Inc. v. United Catalyst, Inc.*,
  2002 WL 1733333 at *5 (Fed. Cir. 2002)                                    11, 15

## I.     NATURE AND STAGE OF THE PROCEEDINGS

Telcordia moves for summary judgment that the asserted claims of the '306 patent are not invalid as anticipated by each of several prior art references.  D.I. 258/245.[1]  In so moving, Telcordia asks this Court to hold that no reasonable jury could find the claims of the '306 patent anticipated by these prior art references.  Such a holding is improper.

## II.     SUMMARY OF THE ARGUMENT

There is extensive evidence establishing that the asserted claims of the '306 patent are in fact anticipated by the references in question.  At a minimum, however, there are genuine issues of material fact that could – and in Defendants view should – be resolved in favor of an anticipation finding when the jury has completed its role.  The fact-finding necessary to resolve those genuine issues of material fact will require an in-depth analysis of the prior art references themselves, as well as careful consideration of the credibility and testimony of the parties' experts.  It is a bedrock principle that the determination of the scope and content of the prior art references is a question for the fact-finder:  "[w]hat a prior art reference teaches is . . . a question of fact." *In re Graves*, 69 F.3d 1147, 1152 (Fed. Cir. 1995).

The factual disputes among the parties are highlighted by the disagreements between the experts.  Here, the experts disagree as to both the scope of the disclosures in the prior art references as well as whether Telcordia's theory of the disclosures would nonetheless meet the claim language.  Indeed, the grant of summary judgment of no anticipation would require the Court to resolve at the least the following critical issues that are squarely disputed by the parties' experts:

---

[1]     Citations to docket items are in the form of "D.I. [C.A. No. 04-875-GMS (Lucent case)]/[C.A. No. 04-876-GMS (Cisco Case)].

- whether the FasNet and Budrikis references necessarily limit each source to the transmission of one packet per cycle, even if that source has other packets to send. *Compare* Ex. 1 at 6 *with* Ex. 2 at 15-16 *and* Ex. 3 at 366:9-367:3;

- whether the FasNet and Budrikis references place a specified limit on the number of packets each station can transmit and whether any such limit would satisfy the disputed claim requirement. *Compare* Ex. 1 at 6 *with* Ex. 4 at 5-6; and

- whether a person of ordinary skill in the art would understand the Boehm-Ching-Say reference to incorporate by reference the Beckner-Minzer Tutorial on ATDM, thus rendering it anticipatory. *Compare* Ex. 2 at 38; Ex. 4 at 10 *with* Ex. 1 at 21.

Although it is Defendants' view that the record overwhelmingly supports a finding of anticipation with respect to the FasNet, Budrikis, and Boehm-Ching-Say references, the record contains, at the very least, significant disagreements between the experts as to the scope and nature of the disclosure of these references and their relevance to the asserted claims. These highly technical and factual determinations raise genuine issues of material fact and should not be resolved on summary judgment.[2, 3]

## III. LEGAL STANDARD

"[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

---

[2]   Telcordia also argues that Defendants' expert conceded that several other prior art references did not meet certain claim limitations. These "concessions," however, were qualified by Dr. Acampora's opinion that these references would not anticipate only to the extent that the accused products do not infringe. Ex. 4 at 9, 10, 11, and 13. As Dr. Acampora explained, these references are anticipatory under Telcordia's infringement theory. Thus, to the extent that the Court concludes that there is a material fact regarding whether the accused products meet these claim limitations, there is similarly a factual dispute regarding whether the prior art references meet the same limitations.

[3]   Telcordia also argues that Defendants have not shown that the asserted claims of the '306 patent are not enabled because Defendants' expert did not include such analysis in his report. Under the Court's claim construction, Defendants do not contest enablement of the asserted claims of the '306 patent. Should the claim construction change, Defendants reserve the right to later assert lack of enablement.

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250. To defeat summary judgment, a nonmovant need only "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' [and] designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Summary judgment is improper "[i]f reasonable minds could differ as to the import of the evidence . . . ." *Anderson,* 477 U.S. at 250. To properly grant summary judgment, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

"Anticipation is a question of fact." *Beckson Marine, Inc. v. NFM, Inc.*, 292 F.3d 718, 723 (Fed. Cir. 2002). "What a prior art reference teaches is also a question of fact." *In re Graves*, 69 F.3d 1147, 1152 (Fed. Cir. 1995). Summary judgment of non-anticipation is appropriate "only when the underlying factual inquiries present no lingering genuine issues." *Beckson*, 292 F.3d at 723. "The first step in any invalidity analysis is claim construction. . . . The second step, determining whether a prior art reference discloses each and every limitation of the claim expressly or inherently . . . is a factual question." *Akami Techs., Inc. v. Cable & Wireless Internet Services, Inc.,* 344 F.3d 1186, 1192 (Fed. Cir. 2003).

"A reference anticipates a claim if it discloses the claimed invention 'such that a skilled artisan could take its teachings in combination with his own knowledge of the particular art and be in possession of the invention.'" *Graves*, 69 F.3d at 1152. In determining anticipation,

additional references may be used to interpret the anticipating reference and to explain what the reference would have meant to a person of ordinary skill in the art. *See, e.g., In re Baxter Travenol Labs.*, 952 F.2d 388, 390 (Fed. Cir. 1991).

## IV.    ARGUMENT

### A.    Disputed Facts Exist Regarding Whether The Priority Scheme Disclosed In FasNet And Budrikis Meet The Court's Priority Scheme Requirement

Summary judgment is inappropriate because Telcordia and Defendants dispute key material facts regarding the disclosures of the FasNet and Budrikis articles. *Compare* Ex. 5; Ex. 6; and Ex. 7 with Ex. 8. This dispute is also reflected in the testimony and reports of the parties' respective experts, who disagree on 1) the content of the FasNet and Budrikis articles and 2) whether FasNet and Budrikis, even under Telcordia's reading of the references, disclose the priority scheme requirement imposed by the Court's claim construction.

Telcordia argues that the FasNet article (Ex. 9) and the Budrikis article (Ex. 10) each lack the claim limitation requiring that data "from any of said sources is written into any *available empty payload field* of any of said frames" from claims 1 and 3, and the parallel limitation of "an inserting means for inserting packets 'into any *empty payload field* of any of said frames available* to said inserting means'" from claim 4. D.I. 261/248 at 21.[4] This Court construed these limitations to require "an empty payload field that can be filled with a data packet from the source, among the plurality of sources, *of the highest priority* with a data packet ready to transmit." D.I. 189/179 at 7 (emphasis added).[5]  In other words, the claim limitations identified by Telcordia require some priority scheme among the various sources for filling empty frames.

---

[4]    Telcordia includes a catch-all footnote indicating that the FasNet article does not anticipate for additional, unspecified reasons, but does not contend that there is an absence of disputed material fact as to these "deficiencies," whatever they may be. D.I. 261/248 at 22, n.5.

[5]    Emphasis added throughout unless indicated otherwise.

Telcordia argues that FasNet and Budrikis do not anticipate precisely because they disclose the use of a priority scheme, which (in Telcordia's own words) forces a station "to cede priority" to other stations downstream from it. D.I. 261/248 at 23. This argument flies in the face of the Court's construction, the teachings of the references, and Telcordia's own admissions. Instead of proving that FasNet and Budrikis lack these claim limitations, Telcordia has confirmed exactly the opposite. At the very least, a material factual dispute exists as to whether the priority scheme (which Telcordia admits is disclosed in FasNet and Budrikis) satisfies the Court's requirement of a priority scheme.

1.    **Telcordia Mischaracterizes FasNet And Budrikis As Requiring Each Station To Transmit Only One Packet Per Cycle, But Concedes The Use Of The Claimed Priority Scheme**

Telcordia argues that by limiting each station to transmitting only one packet per cycle, the systems described in the FasNet and Budrikis references fail to meet the claim limitations at issue. D.I. 261/248 at 20. This is an incorrect characterization of these references. As discussed below, Telcordia ignores passages in these references, which describe that the number of packets per cycle is variable and could be any "integral number" for each station depending on system requirements. The mere fact that one example in these references discloses that stations are limited to one packet per cycle, does not suggest, let alone prove, that the references disclose *only* systems where stations are limited to transmitting one packet per cycle. Nor does it follow that the disclosure of one example negates the teachings of other examples found in the rest of the references in which stations are not limited to transmitting one packet per cycle. "Anticipation requires that all limitations of the claimed invention are described in a single reference, rather than a single example in the reference." *Glaxo Group, Ltd. v. Apotex, Inc.*, 376 F.3d 1339, 1348 (Fed. Cir. 2004); *see also Arthrocare Corp. v. Smith & Nephew, Inc.*, 406 F.3d 1365, 1372 (Fed. Cir. 2006) (holding that "it was error for the district court to limit the disclosure

of the prior art reference to a preferred embodiment"). At a minimum, there is a factual dispute between the experts concerning the scope of the disclosure on this issue, warranting a rejection of Telcordia's motion for summary judgment on these references.

Relying on a single passage in FasNet stating that "[w]hen [a station] senses the line idle, it seizes the line for one slot"[6] and "has to wait for a new cycle to be initiated before it attempts to access the line again," D.I. 261/248 at 20 (quoting Ex. 9 at 1418), Telcordia contends that "an upstream station with information available to be placed on the line will insert all its waiting packets, up to a prespecified number, into empty slots, and then must permit all subsequent empty slots to pass by unfilled to downstream stations even if it that [sic] upstream station has more high [sic] priority information ready to be placed on the line." D.I. 261/248 at 20. This tracks Dr. Prucnal's mischaracterization of the FasNet system as "operat[ing] in cycles and only permit[ing] sources to seize the line for only one slot (frame) per access cycle." Ex. 1 at 6.

Telcordia argues that Budrikis does not anticipate for the same reasons: "[b]ecause the Budrikis system works similarly to the FasNet system, *i.e.*, it causes data sources to stop putting waiting data into available empty payloads, it also fails to disclose the same claim elements from the asserted claims." D.I. 261/248 at 23.

Telcordia is wrong with respect to both references. FasNet and Budrikis do not require each station to send only one packet per cycle. Instead, both references describe an embodiment that specifies a maximum number of packets, which could be any arbitrary integer, that a station is allowed to transmit in any one cycle. In FasNet, "[i]f a station has priority, it is given permission to access the line for an ***integral number of slots***," which is represented by the variable $p_{max}$. Ex. 9 at 1419. FasNet further explains that, in this embodiment, "each station may

---

[6]     Neither Telcordia nor its expert disputes that the "slots" disclosed in FasNet and Budrikis correspond to the claimed "frames" of the '306 patent.

transmit up to $p_{max}$ packets per access" and "[t]hus, by controlling $p_{max}$, stations may influence" the cycle length, which could be useful for accommodating "heavily loaded stations." Ex. 9 at 1427. Thus, the maximum number of packets per cycle, $p_{max}$, can be set according to system requirements and is not limited to one packet per cycle. Dr. Acampora confirmed this during his deposition:

> Q.   The paragraph under that, five lines down, it says, "When it –" referring to each station, "When it senses the line idle, it seizes the line for one slot. It has to wait for a new cycle to be initiated before it attempts to access the line again."

> A.   It says that. But if we look on the very next page, the top line, it also says, "If a station has priority, it is given permission to access the line for an integral number of slots." It would make no sense to access for a non-integral number. So you give permission to access for an integral number of slots without specifying just how large that integer number might be. So it could be any number. Essentially, it could be so big as to mean if I have something to send, I will seize each and every slot.

Ex. 3 at 366:9-367:3.

The same is true for the Budrikis article. Telcordia argues that "[e]ach access unit is limited to a certain number, 'M', of contiguous packets before it has to stop sending data . . . " D.I. 261/248 at 23. However, Telcordia neglects to mention that Budrikis explicitly describes "M" as a variable that represents "priority standing" and varies based on system requirements, such as the desired level of sensitivity to pleadings for slots by other access units ("AUs"):

> M is a parameter *that may vary with AU*. It represents *priority standing*: The larger its value, the less sensitive the AU is to pleadings for slots by other AUs that are downstream from it.

Ex. 10 at 1509-10. Accordingly, the M variable in Budrikis, like the $p_{max}$ variable in FasNet, could be set high enough to make an access unit completely insensitive to the needs of other access units that are downstream from it.

Indeed, Telcordia concedes in its opening brief that the use of these variables in Budrikis and FasNet constitutes a priority scheme as required by the asserted claims, in which a station

transfers, or "cedes," priority to other stations once it reaches its maximum number of packets.[7] In other words, the priority standing of each station can vary from time to time, as explained in Dr. Acampora's invalidity expert report: "Throughout the cycle process, the priority of different sources will shift to allow for transmission from different sources based on both their location on the bus and the particular cycle." Ex. 4 at 5. Accordingly, the FasNet and Budrikis systems never allow lower-priority stations to transmit packets when higher-priority stations have packets to transmit. Instead, once the highest-priority station has transmitted its maximum number of packets, it cedes the highest priority to another station, as acknowledged by Telcordia. Nothing in the Court's construction requires the priority standing of the claimed sources to be fixed in perpetuity.

Thus, as confirmed by Telcordia's brief, the FasNet and Budrikis references disclose "an empty payload field that can be filled with a data packet from the source, among the plurality of sources, of the highest priority with a data packet ready to transmit" as required by claims 1, 3, and 4 of the '306 patent. Both references describe an embodiment in which an empty payload field is filled with a data packet from the source, among the plurality of sources, of the highest priority with a data packet ready to transmit—exactly what is required by this Court's construction. At a minimum then, there is a factual dispute concerning the disclosure of these references that cannot be resolved on summary judgment.[8]

---

[7]    "Like the FasNet system, the Budrikis system then has a method *of forcing an access unit to cede priority to other access units located further down the line* even if it has more data to send." D.I. 261/248 at 23 (emphasis added). Telcordia's own expert, Dr. Prucnal, concedes the same point in his report, stating that "*M represents priority standing*, and Budrikis defines those AUs allowed to transmit a larger number of packets as being of a *higher priority*." Ex. 1 at 9 (emphasis added).

[8]    In an effort to gloss over the important disputed issues relating to the FasNet reference, Telcordia cites to two short passages of testimony from one of its employees, Dr. Mark Garrett. ███████████████████████████████████████████

**B.      The Boehm-Ching-Say Article Incorporates By Reference The Beckner Minzer Tutorial**

Telcordia's sole basis for its motion for summary judgment of no anticipation by the Boehm-Ching-Say reference (Ex. 11) is its argument that the disclosure of packet-mode techniques in the Beckner Minzer Tutorial on ATDM (Ex. 12) ("the ATDM tutorial") cannot be used for purposes of establishing that the Boehm-Ching-Say article ("the BCS article") anticipates the asserted claims of the '306 patent.  Telcordia's argument fails.

Anticipation is not limited strictly to the express disclosure in a single prior art reference. The Federal Circuit has held that "[m]aterial not explicitly contained in the single, prior art document may still be considered for purposes of anticipation if that material is incorporated by reference into the document." *Advanced Display Sys., Inc. v. Kent State Univ.*, 212 F.3d 1272, 1282 (Fed. Cir. 2000).  Incorporation by reference "provides a method for integrating material from various documents into a host document—a patent or printed publication in an anticipation determination—by citing such material in a manner that makes clear that the material is effectively part of the of the host document as if it were explicitly contained therein." *Id.*

Incorporation by reference requires that a host document (1) identify the document to be incorporated, and (2) identify the subject matter to be incorporated from such document. *See id.*; *In re Voss*, 557 F.2d 812, 817 (CCPA 1977) (same).  Courts have found incorporation by

Indeed, to adopt Dr. Garrett's testimony as "undisputed" would be to find that a snippet of testimony from an interested fact witness magically erases all conflicting testimony by that same witness and by Defendants' expert witness.  If anything, Dr. Garrett's testimony reveals the *extent* of the dispute as to anticipation by FasNet.

reference when the host document provided a technical description of the *subject matter* to be incorporated rather than a page or column citation. *See, e.g., Voss*, 557 at 817 (holding that phrase "reference is made to [the '971 patent] . . . for a general discussion of glass ceramic materials" was effective incorporation); *In re Hughes*, 550 F.2d 1273, 1275-76 (CCPA 1977) (holding that phrase "[r]eference is made to application Ser. No. 131,108 for complete descriptions of methods of preparing aqueous polymeric dispersions" constituted effective incorporation).

Here, the BCS article specifically refers a person skilled in the art to the disclosure of packet-mode techniques set forth in the ATDM tutorial. In particular, page 4 of the BCS article provides:

> For broadband services previous contributions have indicated *that packet-mode techniques are a way to achieve flexibility at rates lower than the broadband channel rate (T1D1.1/85-113, T1D1.1/85-149).* The modular approach described here is necessary to construct channels at rates higher than the STS-1 rate for basic transport of broadband serves and to facilitate the introduction of other undefined services.

Ex. 11 at 4 (emphasis added). This passage satisfies both requirements of incorporation by reference. First, the BCS article's reference to T1D1.1/85-149 identifies the ATDM tutorial as the specific document from which the BCS article incorporates information. The term "T1D1.1/85-149" was a unique, registered designation used to identify the ATDM tutorial as an official submission to the T1D1 standards committee. Ex. 13 at 236:14-21. Second, the BCS article's use of the phrase "packet-mode techniques are a way to achieve flexibility at rates lower than broadband channel rate" provides a detailed identification of the subject matter disclosed in the ATDM tutorial that is incorporated into the article: namely, the ATDM tutorial's description of "Asynchronous Time Division Multiplexing (ATDM), a packet access capability for broadband interfaces to ISDNs." Ex. 12 at 2.

Presented with the similar circumstances, the Federal Circuit and its predecessor court have repeatedly held that a host document incorporated by reference material from other documents. *See, e.g., Southern Clay Prods., Inc. v. United Catalyst, Inc.*, 2002 WL 1733333 at *5 (Fed. Cir. 2002) (holding that a patent's statement that "[e]xemplary of commonly employed . . . techniques for breaking the bonds . . . are those techniques in [specific patents]" was sufficient to incorporate the techniques into the patent) (non-precedential) (Ex. 14); *Voss*, 557 F.2d at 817.

In *Voss*, the issue was whether the phrase "[r]eference is made to [the '971 patent] . . . for a general discussion of glass ceramic material and their general production" constituted an incorporation by reference into a pending patent application. 557 F.2d at 815-16. The court reasoned that the phrase adequately identified the incorporated material because "[r]ather than include in his application a detailed discussion of how to prepare such known starting materials, appellant, for economy, referred to the skilled artisan to [the] '971 patent." *Id.* at 817. The court held that it was "clear" to a person skilled in the art that "appellant intended the 'discussion of glass-ceramic materials and their production' in [the] '971 patent to become part of his application." *Id.* Here, as in *Voss*, the BCS article specifically identifies the ATDM tutorial by its unique designation and expressly calls out the subject matter (*i.e.*, packet-mode techniques) that is incorporated by reference from the tutorial.

The record evidence also establishes that a person of ordinary skill in the art would understand the BCS article to incorporate the ATDM tutorial's description of packet-mode techniques for broadband ISDN interfaces. "The standard of one reasonably skilled in the art should be used to determine whether the host document describes the material to be incorporated

by reference with sufficient particularity." *Advanced Display Sys.*, 212 F.3d at 1282.[9]  Here, a

review of the BCS article shows that its very purpose is to integrate the work done by the T1X1

standards committee, which related to synchronous optical network (SONET) interfaces,

together with the ATDM work done by the T1D1 standards committee, which is described as "a

packet access capability for broadband interfaces to ISDNs."  Ex. 11 at 4.

> To that end, the BCS article begins by noting that:

> > During the past year and half, *T1X1 has been discussing the development of a standard optical interface. . . . Also during this time related conversations have occurred in T1D1 and CCITT concerning broadband ISDN interfaces. The documentation for each of these activities is normally spread over many documents and it is sometimes difficult to keep the important issue clear and in perspective.* One may ask why these seem[ingly] unrelated activities are related. . . .  It is because the links between central offices, remote electronics, and subscribers are becoming so similar effort should be made to provide a standard interface specification which will satisfy each application's needs.

Ex. 11 at 2 (emphasis added).

> The introduction section then explains that the BCS article:

> > *focuses on the related documents from T1X1 and T1D1 and collects all of the details of a signal rate format . . . that will satisfy the transport requirements of both activities.*  The basic concept of this signal is to provide a path for services defining transport overhead but leaving the information payload flexible which can be channelized at a later date by T1D1 (broadband ISDN).

*Id.* (emphasis added).

---

[9]    Similar to obviousness and indefiniteness, incorporation by reference is a question of law involving subsidiary factual issues because determining whether material is incorporated by reference requires an inquiry as to how a person skilled in the art would understand the references. Indeed, Telcordia has argued that "[w]hile the question of definiteness is an issue of law, a jury would be in the best position to resolve the factual issues relating to the definiteness." D.I. 232/219 at 3.  The same is true regarding incorporation by reference: summary judgment is appropriate only when the underlying factual inquiries concerning how a person skilled in the art would understand a reference present no lingering genuine issues.  Furthermore, to the extent incorporation by reference is a purely legal question, this discussion herein establishes that the BCS reference incorporates by reference the packet-mode techniques described in the ATDM tutorial.

The conclusion section cements the understanding that the BCS article incorporates by reference the packet-mode techniques from the ATDM tutorial, stating that *"[i]t has been shown that by taking into consideration many views and contributions from a variety of organizations, principally T1X1 and T1D1, a standard optical interface can be defined which will satisfy the transport needs of the present network, the broadband ISDN network,* and still provide flexibility for transport of future as yet undefined services." Ex. 11 at 9. Accordingly, the BCS article explicitly describes a modular system that uses the T1X1 SONET transport mechanism in combination with the T1D1 ATDM packet-mode technique for a broadband ISDN network described in the ATDM tutorial.

Once again, the parties' dispute as to key facts regarding the disclosure of the BCS article is confirmed by the disagreement between the experts. Dr. Prucnal argues that "it is not clear" what BCS incorporates from the ATDM tutorial. Ex. 1 at 21. In contrast, the expert report of Dr. Acampora (and the testimony of the authors of the BCS article and ATDM tutorial) confirms that a person of ordinary skill in the art would understand the BCS article to incorporate the description of packet-mode techniques in the ATDM tutorial. Dr. Acampora explained that the "Boehm-Ching-Say Submission discloses the transmission of packetized data from a plurality of sources over SONET and expressly incorporates the teachings of the Beckner Minzer Tutorial [the ATDM tutorial], including the teachings of the transmission of packetized data over a synchronous bit stream." Ex. 2 at 38; *id.* at 39-40; Ex. 4 at 10.

Similarly, Dr. Ching, a co-author of the BCS article and a former employee of Bell Labs (Telcordia's predecessor), testified that his intent in writing the BCS article was to incorporate the subject matter of the ATDM tutorial and present it to the T1X1 standards committee:



Ex. 13 at 322:14-324:5 (objections omitted and emphasis added).

Likewise, Mr. Mark Beckner, a co-author of the ATDM tutorial and another former employee of Bell Labs, testified that he understood that the BCS article specifically incorporated the "packet-mode access capability" described in his tutorial:





*See* Exhibit 15 at 276:1-15 (objections omitted and emphasis added).

Rather than address this record evidence, Telcordia argues that the packet-mode techniques from ATDM tutorial are not incorporated because the BCS article did not invoke the specific mantra of "incorporate[d] by reference." D.I. 261/248 at 18. Telcordia's position finds no support in the law. Neither the Federal Circuit nor its predecessor has ever required that a host document use the precise phrase "incorporated by reference"—or any other specific formulation—in order to encompass material discussed in other references. *See, e.g., Voss*, 557 at 817 (holding that phrase "reference is made to . . . a general discussion" was effective incorporation); *In re Hughes*, 550 F.2d at 1275-76 (holding that phrase "[r]eference is made to application Ser. No. 131,108 for complete descriptions of methods of preparing aqueous polymeric dispersions" constituted effective incorporation); *In re Fouche*, 439 F.2d 1237, 1238-40 (CCPA 1971) (holding that phrase "prepared as described in Example 1 of our application no." was effective for purposes of incorporating material); *In re Fried*, 329 F.2d 323, 325-26 (CCPA 1964) (holding that phrase "reactants can be prepared as disclosed in [another application]" was effective incorporation); *see also Southern Clay*, 2002 WL 1733333 at *5 (holding that phrase "techniques for breaking the bonds . . . are those disclosed in [various patents]" was effective incorporation). No specific language is required to trigger incorporation

of material so long as the host document identifies the "subject matter which is incorporated and where it is to be found," both of which are satisfied here. *Voss*, 557 F.2d at 817.[10]

Telcordia also argues that the BCS article does not incorporate the packet-mode techniques from the ATM tutorial because the article does not delineate the material to be incorporated by specific page or column-and-line number. Once again, no Federal Circuit or CCPA decision supports such a position. To the contrary, incorporation by reference simply requires that a host document identify the incorporated subject matter "in such a manner that it is apparent that the cited document is part of the referencing document as if it were fully set out therein." *In re Lund*, 336 F.2d 982, 989 (CCPA 1967). This approach comports with the requirement that incorporation by reference be determined from the perspective of a person skilled in the art. Indeed, in *Voss, Fried,* and *Hughes*, the courts found incorporation by reference when the host document provided a technical description of the subject matter to be incorporated rather than a page or column citation. For example, in *Voss* material was incorporated by referencing "glass-ceramic materials and their production." 557 F.2d at 816. In *Hughes* material was incorporated by referencing "methods of preparing aqueous polymeric dispersions." 550 F.2d at 1275-76. Likewise, the BCS article unequivocally describes the subject matter incorporated through use of the technical description "the packet-mode techniques," as confirmed by the testimony of Dr. Ching and Mr. Beckner.

As set forth above, the sole basis for Telcordia's motion for summary judgment is inconsistent with the facts of this case and with the overwhelming weight of the law. That basis

---

[10]    Telcordia's reliance to 37 C.F.R. § 1.57(b) is misplaced. D.I. 261/248 at 17 n.3. Section 1.57(b) applies only to circumstances in which a patent application seeks to incorporate material from another application for purposes of priority. The section does not, and cannot, dictate the manner by which non-patent printed publications and scientific articles, such as the BCS article, incorporate material by reference.

aside, Telcordia does not dispute that a jury is in the best position to resolve whether the Boehm-Ching-Say reference anticipates the asserted claims of the '306 patent. Accordingly, Telcordia's request for summary judgment should be denied.

### C.    Telcordia Improperly Asserts That Defendants Have Conceded Lack of Anticipation By Certain Prior Art References

Telcordia concedes that the accused products do not meet at least two limitations of the asserted claims, stating that "the accused products do not use 'empty payload fields' as defined by the Court in its June 22, 2006, Order construing the claims" and "the accused products do not operate such that 'two or more sources each insert data into the generated bit stream via its own tributary." D.I. 228/215 at 1.

This Court also construed the asserted claims to require "replacing the empty payload field with data from a single source." D.I. 189/179 at 6. Defendants contend that the accused products do not meet this limitation. *See* D.I. 252/239 at 17-18. Defendants also contend that the functionality described in certain prior art references is substantially the same as the accused products with respect to this limitation. Accordingly, Dr. Acampora's reply report explains that such references would not anticipate only to the extent that the accused products do not infringe. Ex. 4 at 9, 10, 11, and 13.

Telcordia, however, attempts to distort Acampora's report to support its argument that the Beckner-Minzer publication on ATDM (Ex. 12), the Beckner-Minzer article on multiplexing structures (Ex. 16), the Dixon Doll STATDM publication (Ex. 17), and the Weinstein publication (Ex. 18) do not meet this limitation. In so doing, Telcordia carefully crops Dr. Acampora's "admissions" from their proper context by removing qualifying language. In particular, Dr. Acampora stated that these references did not show this limitation "for the same reasons the accused products do not meet these limitations. *To the extent that Telcordia*

*contends that the accused products meet these limitations, however, [these references] disclose[ ] [this] limitation[ ] as well, for the reasons stated in my Opening Report.*" Ex. 4 at 9, 10, 11, and 13 (emphasis added).

While Defendants believe there is no issue of material fact that the accused products do not meet the claim limitation of "replacing the empty payload field with data from a single source" for the reasons set forth in their Motion for Summary Judgment of Non-Infringement, to the extent the Court determines that there is a material factual dispute as to whether the accused products meet this limitation, there is similarly a dispute as to whether the prior art references listed above disclose this limitation.

### D.   Defendants Do Not Contest Enablement Under The Court's Claim Construction

Under Telcordia's infringement theory, the asserted claims are not enabled for the reasons outlined in Defendants' interrogatory responses.  However, under the Court's claim construction, Defendants do not contest enablement of the asserted claims of the '306 patent. Should the claim construction change, Defendants reserve the right to later assert lack of enablement.

## V.    CONCLUSION

For the foregoing reasons, Lucent and Cisco respectfully submit that Telcordia's Motion

For Partial Summary Judgment that the '306 Patent is Not Invalid as Anticipated or for Lack of

Enablement (D.I. 258/245) should be denied.

| | |
|---|---|
| YOUNG CONAWAY STARGATT &<br>    TAYLOR, LLP | MORRIS, NICHOLS, ARSHT & TUNNELL,<br>    LLP |
| | |
| /s/ *Andrew A. Lundgren* | /s/ *Leslie A. Polizoti* |
| John W. Shaw (No. 3362) | Jack B. Blumenfeld (No. 1014) |
| Monte T. Squire (No. 4764) | Leslie A. Polizoti (No. 4299) |
| Andrew A. Lundgren (No. 4429) | 1201 North Market Street |
| The Brandywine Building | Wilmington, DE 19899-1347 |
| 1000 West Street | Telephone: (302) 658-9200 |
| Wilmington, DE 19801 | Facsimile: (302) 658-3989 |
| Telephone: (302) 571-6600 | jblumenfeld@mnat.com |
| Facsimile: (302) 576-3334 | lpolizoti@mnat.com |
| jshaw@ycst.com | |
| msquire@ycst.com | |
| alundgren@ycst.com | OF COUNSEL: |
| | |
| OF COUNSEL: | Matthew D. Powers |
| | Edward R. Reines |
| Steven C. Cherny | Jessica L. Davis |
| LATHAM & WATKINS LLP | Sonal N. Mehta |
| 885 Third Avenue, Suite 1000 | Thomas B. King |
| New York, NY 10022 | WEIL, GOTSHAL & MANGES LLP |
| Telephone: (212) 906-1200 | 201 Redwood Shores Parkway |
| Facsimile: (212) 571-4864 | Redwood Shores, CA 94065 |
| | Telephone: (650) 802-3000 |
| David A. Nelson | Facsimile: (650) 802-3100 |
| Israel Sasha Mayergoyz | |
| David C. McKone | Ryan Owens |
| LATHAM & WATKINS LLP | WEIL, GOTSHAL & MANGES LLP |
| Sears Tower, Suite 5800 | 767 Fifth Avenue |
| Chicago, IL 60606 | New York, NY 10153 |
| Telephone: (312) 876-7700 | Telephone: (212) 310-8000 |
| Facsimile: (312) 993-9767 | Facsimile: (212) 310-8007 |
| | |
| *Attorneys for Defendant Lucent Technologies Inc.* | *Attorneys for Defendant Cisco Systems, Inc.* |
| | |
| Dated: October 20, 2006 | |

## CERTIFICATE OF SERVICE

I, Andrew A. Lundgren, hereby certify that on November 8, 2006, a true and correct copy

of the foregoing document was electronically filed with the Clerk of the Court using CM/ECF, which will

send notification that such filing is available for viewing and downloading to the following counsel of

record:

> Steven J. Balick, Esquire
> *sbalick@ashby-geddes.com*
> Ashby & Geddes
> 222 Delaware Avenue
> P.O. Box 1150
> Wilmington, DE 19899

I further certify that on November 8, 2006 I caused a copy of the foregoing document to

be served by hand delivery on the above-listed counsel of record and on the following non-registered

participants in the manner indicated:

### BY E-MAIL AND FEDERAL EXPRESS

> Donald R. Dunner, Esquire
> *don.dunner@finnegan.com*
> Finnegan, Henderson, Farabow, Garrett, & Dunner, LLP
> 901 New York Ave., N.W.
> Washington, DC 20001
>
> York M. Faulkner, Esquire
> *york.faulkner@finnegan.com*
> Finnegan, Henderson, Farabow, Garrett, & Dunner, LLP
> Two Freedom Square
> 11955 Freedom Drive
> Reston, VA 20190

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Andrew A. Lundgren*
John W. Shaw (No. 3362)
*jshaw@ycst.com*
Andrew A. Lundgren (No. 4429)
*alundgren@ycst.com*
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19899-0391
(302) 571-6600
*Attorneys for Lucent Technologies Inc.*