**REDACTED – PUBLIC VERSION**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TELCORDIA TECHNOLOGIES, INC., | ) | **CONFIDENTIAL:** |
| | ) | **FILED UNDER SEAL** |
| Plaintiff/Counterclaim Defendant, | ) | |
| | ) | |
| v. | ) | C.A. No. 04-875-GMS |
| | ) | |
| LUCENT TECHNOLOGIES INC., | ) | |
| | ) | |
| Defendant/Counterclaim Plaintiff. | ) | |
| | ) | |
| TELCORDIA TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff/Counterclaim Defendant, | ) | |
| | ) | |
| v. | ) | C.A. No. 04-876-GMS |
| | ) | |
| CISCO SYSTEMS, INC., | ) | |
| | ) | |
| Defendant/Counterclaim Plaintiff. | ) | |

---

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY
JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 4,893,306**

John W. Shaw (No. 3362)
Monte T. Squire (No. 4764)
Andrew A. Lundgren (No. 4429)
YOUNG CONAWAY STARGATT &
TAYLOR, LLP
The Brandywine Building
1000 West Street
Wilmington, DE 19801
Telephone: (302) 571-6600
Facsimile: (302) 576-3334
jshaw@ycst.com
msquire@ycst.com
alundgren@ycst.com

*Attorneys for Defendant Lucent Technologies Inc.*

Jack B. Blumenfeld (No. 1014)
Leslie A. Polizoti (No. 4299)
MORRIS, NICHOLS, ARSHT & TUNNELL
LLP
1201 North Market Street
Wilmington, DE 19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
jblumenfeld@mnat.com
lpolizoti@mnat.com

*Attorneys for Defendant Cisco Systems, Inc.*

057224.1004

OF COUNSEL:

Steven C. Cherny
LATHAM & WATKINS LLP
885 Third Avenue, Suite 1000
New York, NY 10022
Telephone: (212) 906-1200
Facsimile: (212) 571-4864

David A. Nelson
Israel Sasha Mayergoyz
David C. McKone
LATHAM & WATKINS LLP
Sears Tower, Suite 5800
Chicago, IL 60606
Telephone: (312) 876-7700
Facsimile: (312) 993-9767


Dated: November 2, 2006

OF COUNSEL:

Matthew D. Powers
Edward R. Reines
Jessica L. Davis
Sonal N. Mehta
Thomas B. King
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Telephone: (650) 802-3000
Facsimile: (650) 802-3100

Ryan Owens
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

# Table of Contents

I.      INTRODUCTION ...................................................................................................1

II.     ARGUMENT........................................................................................................3

        A.      Telcordia Repeatedly Concedes That No Factual Disputes Exist And
                Instead Improperly Attempts To Reargue The Claim Constructions It Lost...........3

                1.      There Is No Dispute That The Accused Products Do Not Put
                        Packets Only In Frames Which Are Empty And Summary
                        Judgment On That Ground Is Warranted.....................................................4

                2.      Telcordia Admits That "Defendants' Products Place Data From
                        Multiple Sources Into SONET Frames" .....................................................5

                3.      Telcordia Improperly Challenges The Court's Construction Of
                        "Available Empty Payload Field"...............................................................8

                4.      Telcordia Improperly Challenges The Court's Construction Of
                        "Generating Means" And "Inserting Means" .............................................9

        B.      ATM Over SONET Is The Packet Overlay System Distinguished By The
                '306 Patent .........................................................................................................10

        C.      Telcordia Improperly Blames This Court For Its Failure To Serve An
                Expert Report On Infringement And Ignores The Legal Consequence Of
                Such Failure .......................................................................................................15

III.    CONCLUSION....................................................................................................18

# Table of Authorities

## FEDERAL CASES

*ABB Air Preheater v. Regenerative Env. Equip. Co.*
  167 F.R.D. 668 (D. N.J. 1996) .................................................................................................. 16

*Ali v. Sims,*
  788 F.2d 954 (3d Cir. 1986) ..................................................................................................... 16

*Celotex Corp. v. Catrett,*
  477 U.S. 317 (1986) ................................................................................................................... 4

*Centricut, LLC v. Esab Group, Inc.,*
  390 F.3d 1361 (Fed. Cir. 2004) ............................................................................................... 17

*Childers v. Joseph,*
  842 F.2d 689, 695 (3d Cir. 1988) ............................................................................................... 4

*In re CitX Corp.,*
  448 F.3d 672, 679-80 (3d Cir. 2006) ........................................................................................ 14

*In re Paoili,*
  35 F.3d 717 (3d Cir. 1994) ....................................................................................................... 16

*Meyers v. Pennypak Woods Home Ownership Assoc.,*
  559 F.2d 894 (3d Cir. 1977) ..................................................................................................... 16

*Phillips v. AWH Corp.,*
  415 F.3d 1303 (Fed. Cir. 2005) ............................................................................................... 11

*Poulis v. State Farm Fire & Casuality Co.,*
  747 F.2d 863 (3d Cir. 1984) ..................................................................................................... 16

*Whelan Assoc. Inc. v. Jaslow Dental Labs., Inc.,*
  797 F.2d 1222 (3d Cir. 1986) ................................................................................................... 17

## I.    INTRODUCTION

In its "partial opposition," Telcordia concedes that Defendants do not infringe the '306 patent and that summary judgment of non-infringement should be entered.  The only disputed question is whether the Court's judgment should be restricted to the claim limitations Telcordia strategically has chosen, or whether the judgment should include the additional claim limitations absent from Defendants' accused products.  Defendants urge the latter.

Despite vigorously opposing Defendants' constructions of the additional claim limitations (which the Court adopted), Telcordia now contends that Defendants' accused products somehow meet those claim limitations.  However, ***instead of raising disputed issues of fact*** in response to Defendants' citation of exculpatory evidence and expert opinion, Telcordia rehashes claim construction positions already rejected by the Court and impermissibly argues, once again, that it should have been allowed to serve a late expert report.  In fact, Telcordia takes over 18 pages before even addressing any of the claim limitations that Defendants establish are absent from the accused products.  And when it finally addresses those limitations, Telcordia concedes that there are no disputed issues of fact as to how Defendants' products operate.

Telcordia also offers declarations purporting to explain the system described and claimed in the '306 patent.  But the Court already has defined the claimed inventions, and Telcordia's untimely submission of extrinsic evidence is nothing more than a distraction.  Not only are these declarations wholly irrelevant to the issue of whether Defendants' products meet any limitations of the asserted claims, they flatly contradict the sworn testimony those witnesses and others gave during fact discovery.[1]

---

[1]  Telcordia's submission of these belated extrinsic declarations attempting to explain the '306 patent is particularly troublesome given the Court's schedule and the advanced stage of this litigation.  Telcordia plainly seeks to reopen both fact discovery and claim construction to make

Telcordia also submits and relies heavily on a 177-page infringement expert report for the '306 patent (styled as an "Offer of Proof of Dr. Paul Prucnal"). That "proffered" expert report contravenes the Court's Orders denying Telcordia's request to serve an infringement expert report after the time specified by the Court's scheduling order. Telcordia twice asked permission to serve an untimely infringement expert report, and the Court twice said no. Instead of respecting the Court's Orders, Telcordia ignores them by serving and relying upon its unauthorized expert report. Telcordia then spends many pages rearguing the merits of the Court's denial of its request to file an untimely expert report even though the Court clearly stated that "the court will not accept any further filings from the parties as to this issue." D.I. 221/209 at 2.[2] Amazingly, Telcordia does so even though Defendants never made any non-infringement arguments in their opening brief based upon Telcordia's lack of expert evidence and only mention in passing Telcordia's decision not to file an expert report in the "Nature and Stage of the Proceedings" section. Telcordia plainly is troubled by *its own* decision not to file an expert report and willingly engages in contumacious behavior in the hope of avoiding the legal consequences of that decision.

Like claim construction, the question of whether Telcordia can serve an untimely infringement expert report already has been decided by this Court. An opposition to a summary

---

the record it failed to make and to avoid trial of the action it commenced. Telcordia cannot credibly contend nor realistically believe that there is time in the schedule for Defendants to redepose Messrs. Chao and Sincoskie or engage in an entirely new round of expert discovery in response to the belatedly offered opinions of Dr. Prucnal. At this point, Telcordia merely attempts to throw sand in the gears to slow down the litigation it commenced years ago and that now has gone awry.

[2] Defendants' citation to the D.I. number is done by "D.I. xxx/yyy," where "xxx" refers to Civil Action No. 04-875-GMS and "yyy" refers to Civil Action 04-876-GMS. When only a single citation is provided, such citation refers to Civil Action No. 04-875-GMS.

judgment motion is not the proper vehicle again to raise this issue.[3] Instead of rearguing the Court's prior rulings, in direct contravention of the Court's schedule and explicit Orders, Telcordia should have raised *disputed facts* that it contends preclude summary judgment. Telcordia's inability to do so is striking and determinative. Defendants respectfully request that the Court enter judgment on each of the grounds identified in their opening brief.

## II.    ARGUMENT

### A.    Telcordia Repeatedly Concedes That No Factual Disputes Exist And Instead Improperly Attempts To Reargue The Claim Constructions It Lost

Telcordia concedes that "the plurality of sources" limitation and the "empty payload field" limitations are not met by Defendants' products. D.I. 265/252 at 1, 17-19. Instead of raising factual disputes regarding the remaining claim limitations that Defendants establish are not met, Telcordia challenges the Court's constructions. Telcordia relegates to a footnote what should have been the focus of its opposition to summary judgment--raising disputed issues of material fact. D.I. 265/252 at 2 n.3. In that footnote, Telcordia attempts to incorporate by reference "factual issues" it purported to raise in its August 25, 2006 letter to the Court (D.I. 232/219). D.I. 265/252 at 2 n.3. That letter, however, was nothing more than a laundry list of documents that Telcordia never previously identified in any pleading or discovery response despite having full opportunity and obligation to do so. D.I. 243/230.

Telcordia cannot defeat summary judgment by incorporating by reference in a footnote a horde of documents identified for the first time in a letter opposing Defendants' request to file summary judgment. The Third Circuit has rejected Telcordia's attempt to avoid summary judgment through bulk citation as "unworkable and illogical" because "[i]t would require the

---

[3] The Court previously has noted Telcordia's penchant for re-argument when it denied Telcordia's request to move for summary judgment against itself as mere re-packaging of its prior motion for judgment under Rule 54(b). *See* Sept. 18, 2006 Hearing Tr. at 3:23-4:25.

district court judge to search through an often voluminous written record for facts which might support the nonmovant's claim, and would require this Court to review the district judge's search to insure that no facts were missed." *Childers v. Joseph*, 842 F.2d 689, 695 (3d Cir. 1988). Such an approach "would misread the requirement of Rule 56(e) that the nonmoving party 'set forth specific facts showing that there is a genuine issue for trial.'" *Id.* Simply put, Telcordia cannot reasonably or legally expect the Court to search for disputed facts that it failed to *specifically* identify as required by Rule 56. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (holding that non-moving party must "designate specific facts showing that there is a genuine issue for trial").

## 1. There Is No Dispute That The Accused Products Do Not Put Packets Only In Frames Which Are Empty And Summary Judgment On That Ground Is Warranted

Telcordia admits that Defendants' accused products package *multiple* ATM cells together to form the payload of each SONET frame. D.I. 265/252 at 24. Because multiple cells are packaged into one frame, ATM cells indisputably are placed onto SONET frames that are not "empty." This concession establishes that the accused products do not meet the "such that a packet from any of said sources is inserted into any available empty payload field of any of said frames" limitation. Once the first ATM cell is packaged as part of the payload of a SONET frame, that frame necessarily no longer is "empty," and subsequent ATM cells that are packaged into that SONET frame are not "put into frames which are empty."

Telcordia attempts to stave off summary judgment by *reinterpreting* the Court's construction. But the Court's construction does not require reinterpretation. During claim construction, Defendants asked the Court to adopt Judge Farnan's requirement that "packets are only put in frames which are empty." D.I. 102 at 17-19. Defendants explained that this construction was consistent with the specification's explicit teaching that a data packet would not

be put into a frame that already contained a "valid packet" and therefore was not "empty." *See* Ex. 1 at 9:38-41 ("The other condition is that the incoming DTDM frame on the serial data input (sdi) of the framer 53 *is not already occupied by a valid packet, i.e., the incoming DTDM frame is empty.*").[4]  Telcordia opposed this construction and described Defendants' position as "arguing that 'packets are only put in frames which are empty,' it is apparent that Lucent is insisting that only one packet can be put in each frame (i.e., once the first packet is written into the frame, that frame is no longer 'empty' and therefore cannot receive additional packets)." D.I. 120 at 15-16.

The Court adopted Defendants' construction and Telcordia's position was rejected.  The Court's construction on its face requires that only one packet can be put in each frame otherwise packets are put into frames that are not empty--i.e., frames that already have a valid packet. Because it is undisputed that the accused products package multiple ATM cells into the payload of a single SONET frame, summary judgment in favor of Defendants on this claim limitation is warranted.

**2.     Telcordia Admits That "Defendants' Products Place Data From Multiple Sources Into SONET Frames"**

Likewise, there is no dispute that Defendants' accused products place data from several different sources into a SONET frame.  Indeed, in its answering brief, Telcordia "agrees that the Defendants' products place data from multiple sources into SONET frames." D.I. 265/252 at 28. Accordingly, there is no genuine issue of disputed fact that the "inserting each of said packets comprised of data from one of said plurality of sources into any empty payload field" limitation is absent from Defendants' products.

---

[4]  Emphasis added throughout, unless indicated otherwise.

Telcordia again acknowledges the absence of any *factual* dispute, and takes issue with this Court's claim construction--proffering arguments now that contradict those Telcordia advanced during the claim construction process. Specifically, Telcordia now seeks to evade the Court's claim construction by arguing that a DTDM frame may have multiple payload fields each containing data from a different source. D.I. 265/252 at 28. During claim construction, Telcordia conceded that each frame only has one payload field and repeatedly equated a single frame with a single payload field. For example, Telcordia argued that "[t]he specification refers to the *upcoming payload field* (the one in the process of being generated) as the '*incoming frame*.'" D.I. 120 at n.3. As another example, Telcordia contended that "a payload field is 'empty' within the meaning of the patent when the process of inserting data into a given *payload field or frame* begins." *Id.* at 10.

Conceding that each frame only has one payload field, Telcordia opted to make a different argument that the claims "should be construed to cover the insertion of multiple packets into the same payload field." D.I. 120 at 9. The Court rejected that argument, construing the claims to require "replacing *the empty payload field* with data from a single source." D.I. 189 at 6-7. Telcordia now seeks to resurrect the very argument that it previously abandoned during claim construction by contending that a single "frame" should be construed as having multiple payload fields that each may contain data from a different source, thus allowing the frame to contain data from multiple sources. D.I. 265/252 at 28.

Not only is Telcordia's attempt to reargue claim construction at summary judgment improper, it is refuted by its own statements during the claim construction process (discussed above), as well as the patent specification itself. The '306 patent explains that "[e]ach *such*

*frame comprises two fixed length fields: overhead and payload*" (Ex. 1 at 4:50-52) and shows

each frame as having *one* payload field (Ex. 1 at Fig. 1):



FIG. 1

Moreover, Telcordia's contention that the claimed "frame" has multiple payload fields is

wholly inconsistent with, and would circumvent, this Court's claim construction requiring that

"packets are only put in frames which are empty." If a frame has multiple payload fields, then

packets would necessarily be put into that frame after it no longer is empty because each payload

field in that one frame would contain a separate valid packet. The Court's claim constructions

reflect the fact that, in the claimed DTDM system, a frame equals a packet as depicted above--in

other words, there is one payload per frame. When a packet is placed into that single payload,

the frame is no longer "empty."[5]

Telcordia strangely points to Dr. Acampora's testimony regarding the fact that the

accused SONET frames have multiple ATM cell fields in support of its resurrected claim

construction argument that DTDM frames can be construed to have multiple payload fields. But

that is the precise point establishing non-infringement: the accused SONET frames can (and do)

carry multiple payloads with data from multiple sources, DTDM frames can not. The accused

systems use SONET, which allows for multiple cells from multiple sources per frame, whereas

---

[5]  This is confirmed by the sworn testimony of inventor Lee as well as Dr. T.T. Lee, who
collaborated with the named inventors on the DTDM system. Ex. 8 at 88:8-89:7; Ex. 12 at
160:11-162:20, 193:5-196:3, 217:18-219:10.

DTDM requires one packet from one source per frame. The fact that each SONET frame contains multiple ATM payloads is yet another point of departure from the claimed invention.

Given the absence of any factual dispute that the accused products place data from multiple sources into a SONET frame, Telcordia cannot avoid summary judgment of non-infringement by re-arguing claim construction with a theory that it had abandoned during the claim construction process.

### 3. Telcordia Improperly Challenges The Court's Construction Of "Available Empty Payload Field"

During claim construction, Defendants argued, and the Court agreed, that the term "available empty payload field" required a priority scheme by which different sources have access to the empty payload fields. Telcordia argued against a priority scheme, contending that Defendants' construction attempted to import a priority scheme from the specification. D.I. 120 at 18. It is not surprising that Telcordia made this argument during claim construction, given that it own interrogatory responses concede that the accused products do not implement a priority scheme among a plurality of sources that have access to the bit stream and instead use "ATM SONET framing chips" that insert packets "into payload fields on a *first-come-first served basis* whereby any packet from any source can occupy any available payload field in any frame." Ex. 2 at 7; Ex. 3 at 10.

Confronted with the construction it argued against, Telcordia ignores its prior interrogatory response and now incredibly argues that the accused products do not insert packets "on a first come first served basis," but instead use a priority scheme as described and claimed by the '306 patent. In so doing, Telcordia does not dispute that the accused products use SONET framers that are "blind" to the priority of the incoming data stream (consisting of data from multiple sources) and do not alter the priority of such data in any way. Rather, Telcordia

contends that the accused products are "actually designed to maintain and respect the QoS [quality of service] priority scheme by filling the payload fields with packets on a first-come-first-served basis." D.I. 265/252 at 31. In doing so, Telcordia completely neglects that the required priority scheme must resolve contention between a plurality of sources that have access to the bit stream used to transport the data. Dr. Acampora's testimony, which is uncontested, refuted the very same argument Telcordia now advances:

> Q. [D]oesn't the mechanism of the FIFO itself establish a priority? The first one in has the priority of being the first one out, correct?
>
> A. But I think that's the point. That was given by the sequence in which the cells arrived from the premultiplexer, if any. The FIFO cannot reorder that. *So this product cannot fill an empty payload field with packet data from a source among the plurality of sources of the highest priority with a data packet ready to send.* Those sources somewhere else did or did not have data packets to send. And based upon some prioritization scheme, if any, in the source multiplexer, that sequence was established. So that was done. That was a done deed before the cells got to this chip.

Ex. 4 at 216:4-19.

Telcordia's new infringement theory is simply an attempt to reargue claim construction by reinterpreting the Court's construction to mean exactly what this Court rejected, namely that "a payload field that is available to receive packet data from a source" is all that is required. D.I. 120 at 18. The Court has already rejected Telcordia's proposed construction and need not address it again at summary judgment.

**4.    Telcordia Improperly Challenges The Court's Construction Of "Generating Means" And "Inserting Means"**

Telcordia argues that the accused products "do in fact generate empty frames" because "the chips used in the defendants' products generate a train of 'idle cells' when there is no data to send." D.I. 265/252 at 33-34. This is flatly inconsistent with Telcordia's concession that "the 'empty payload fields' of the defendants' products are not 'payload fields that are empty of

source data but include bit signals of some kind, i.e. garbage bits' because they do not consist exclusively of non-source bits that serve no purpose other than place-holding, but rather consist at least partly of non-source bits that can serve other purposes." D.I. 265/252 at 30 n.20; *accord id.* at 18. Because these "idle cells" are not garbage bits as required by this Court's construction, their generation is not the generation of empty frames.

Telcordia also contends that the accused products "replace[ ] those idles cells with ATM cells when there is data ready to send." D.I. 265/252 at 34. Telcordia finds no support for this position other than its belated expert report.[6] Contrary to Telcordia's unsupported assertion, idle cells in the accused products are never replaced with any data. Either an idle cell is generated *or* a packet is read, not both. This is confirmed by the testimony Telcordia cites from Dr. Acampora's deposition, namely that "one would see an all zeros pattern where the overhead would be followed by a string of full or partial ATM cells *or* idle cells, followed by more zeros corresponding to overhead." D.I. 265/252 at 34. Accordingly, Telcordia has introduced no evidence that idle cells are ever *replaced* in the accused products even under Telcordia's incorrect identification of idle cells as the claimed empty frames.

**B.     ATM Over SONET Is The Packet Overlay System Distinguished By The '306 Patent**

Unable to establish any issues of disputed facts, Telcordia attempts to argue that the accused products are similar to the system claimed in the '306 patent with the hope of escaping summary judgment. Telcordia's thinly-veiled attempt to side-step the core issues presented by Defendants' motion fails.

---

[6] In fact, even in the belated infringement expert report, Dr. Prucnal concedes that idle cells are never replaced with ATM cells containing data. ███████████████████████████ ████████████████████████████████████████████████████████████████ Thus, Dr. Prucnal admits that either an idle cell is generated *or* a packet is read, not both.

Telcordia has no choice but to concede that the '306 patent explicitly distinguishes "packet overlay networks." D.I. 265/252 at 3; Ex. 1 at 3:3-18. Telcordia's witnesses (including its corporate representatives) admitted that the accused systems are packet overlay systems, and in its opposition brief Telcordia even concedes that the accused ATM over SONET systems can be "called 'overlaying' packets on frames." D.I. 265/252 at 4. Telcordia nevertheless argues that the accused ATM over SONET systems are not "packet overlay networks." *Id.* Telcordia does so by attempting to reargue the import of its disclaimer in the specification on the meanings of the disputed claim limitations. But the time for argument regarding the effect and import of intrinsic evidence is over, and the Court already has construed the claims.

Defendants correctly discussed the intrinsic evidence during the claim construction process and specifically pointed to Telcordia's express disclaimer of packet overlay networks in the '306 patent. Defendants addressed at length the import of Telcordia's disclaimer and explained how that disclaimer informed the proper construction of a number of disputed claim limitations. *See* May 3, 2006 Hearing Tr. at 56-58. At the Markman hearing, Telcordia did not dispute the substance of Defendants' analysis of Telcordia's explicit disclaimer and the related intrinsic evidence. Instead, Telcordia's counsel incorrectly characterized the analysis of that disclaimer in the specification as an expert issue. *See* May 3, 2006 Hearing Tr. at 133. But a disclaimer in the patent specification--"the single best guide to the meaning of a disputed claim"--is precisely the type of intrinsic evidence that must be considered during the *Markman* process as a question of law. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315-16 (Fed. Cir. 2005) ("[T]he specification may reveal an intentional disclaimer, or disavowal, of claim scope by the inventor. In that instance as well, the inventor has dictated the correct claim scope, and the inventor's intention, as expressed in the specification, is regarded as dispositive."). Telcordia now

belatedly seeks to explain away its disclaimer. But the task at hand is to apply the Court's constructions to the accused packet overlay systems, not to engage in re-analysis of what the patent means, particularly based upon an argument that Telcordia did not substantively address during the *Markman* phase.

As discussed in Defendants' opening brief, it is well understood in the field of telecommunications and data networking that ATM over SONET is a packet overlay network. For instance, a leading treatise on telecommunications systems (cited by Defendants in their opening brief) explicitly describes ATM (and other packet layer systems such as IP) over SONET as an "overlay network":

> ### OVERLAY NETWORKS
>
> Today's data networks typically have four layers:
>
> - IP for carrying applications
> - *ATM* for traffic engineering
> - *SONET/SDH* for transport
> - DWDM for capacity

Ex. 5 at 839. This common understanding is confirmed by the sworn testimony of the named inventors. For example, inventor Wu testified:

███████████████████████████████████

██████████████████

Ex. 6 at 232:24-233:2.[7] Likewise, Dr. Mark Garrett, a Telcordia corporate representative, also testified during his 30(b)(6) deposition that ATM over SONET is a packet overlay network:

---

[7] Similarly, inventor Lee testified: ████████████████████████████

████████████████████████████████████████    Ex. 8 at 176:4-13 (objection omitted).



Ex. 7 at 45:9-13.[8]

Now, Telcordia seeks to introduce belated sham declarations of Mr. Sincoskie and Dr. Chao. Telcordia relies on these declarations in an attempt to avoid the clear and unequivocal testimony of Mr. Sincoskie and two of the inventors (Drs. Wu and Lee) describing the accused ATM over SONET[9] products as packet overlay systems – ***the very systems explicitly disclaimed by the '306 patent***. These two inventors, however, never recanted their testimony, and Telcordia's own documents, as well as authoritative treatises, uniformly characterize ATM over SONET as a packet overlay system.[10]

There is no dispute that the patent disclaims packet overlay systems in favor of DTDM, and there is no real dispute that the accused products are packet overlay systems. Telcordia cannot manufacture a factual dispute by now disputing the words of its own patent and by

---

[8]  Mr. Sincoskie testified during his deposition:

Ex. 9 at 168:6-16.

[9]  As noted in Defendants' opening brief, the discussion regarding ATM over SONET is equally applicable to other types of accused systems that transport segmented data over SONET.

[10]  It is significant that inventors Wu and Lee have not recanted their testimony because they were the inventors with actual expertise in networking and Telcordia credits Dr. Wu with conception of DTDM. Ex. 8 at 27:11-23; Ex. 6 at 75:13-76:4. Telcordia's decision to rely on inventor Chao speaks volumes because he was brought in ***after*** the DTDM networking concepts were already decided and his role was limited to designing chips to implement the other inventors' concepts. Ex. 8 at 244:2-13. Simply put, inventor Chao had nothing to do with the basic issue of what DTDM is, nor with the choice to reject packet overlay networks. His role was to design the circuits that implemented that choice.

submitting litigation-driven sham declarations that contradict prior sworn testimony.[11] The time for Telcordia to argue against the evidence intrinsic to its patent was during the *Markman* process, not during the application of the Court's constructions to Defendants' products at the summary judgment stage. And the time for Telcordia to attempt to offer opinions regarding the import of its witnesses' admissions was during expert discovery. Telcordia did neither.

A central piece of evidence cited in Defendants' opening brief is Telcordia's 1987 Preliminary Special Report on Broadband ISDN Access ("Special Report," Ex. 10). In the Special Report, Telcordia presents the claimed DTDM system and the accused ATM over SONET system as *alternative options*, and recommends the adoption of ATM over SONET instead of DTDM.[12] Ex. 10 at 20-21. Telcordia and the entire industry chose the *opposite* of what is taught in the '306 patent. Instead of replacing the existing transmission network with the claimed DTDM system, Telcordia recommended the deployment of a packet network overlaid on top of the existing transmission network, and the industry agreed. *Id.* at 33.

When questioned about the Special Report, inventor Wu confirmed Telcordia's decision to recommend a packet overlay network in the form of ATM over SONET rather than the claimed DTDM system:

---

[11] The "sham affidavit" doctrine "refers to the trial courts practice of disregarding an offsetting affidavit that is submitted in opposition to a motion for summary judgment when the affidavit contradicts the affiant's prior deposition testimony." *In re CitX Corp.*, 448 F.3d 672, 679-80 (3d Cir. 2006).

[12] Telcordia argues that the DTDM system described in the '306 patent is "commercially viable," citing licenses to Marconi and Motorola. D.I. 265/252 at 5. But Telcordia's recent concession of non-infringement makes clear that these systems do not practice DTDM as claimed in the '306 patent. These licensees did not have the benefit of the Court's claim construction and Telcordia's concession that ATM over SONET systems do not infringe its '306 patent at the time they made a business arrangement with Telcordia and that business decision does not alter Telcordia's concession nor the unequivocal testimony by its inventor that no one has commercialized DTDM. *See* Ex. 8 at 366:9-12 ▮▮▮▮▮▮▮▮▮



Ex. 6 at 234:7-18.

**C.    Telcordia Improperly Blames This Court For Its Failure To Serve An Expert Report On Infringement And Ignores The Legal Consequence Of Such Failure**

This Court already has decided the issue of Telcordia's attempt to serve an untimely expert report in two separate orders, D.I. 206/196, 221/209, and instructed that it "will not accept any further filings from the parties on this issue." D.I. 221/209 at 2. Despite that admonition, Telcordia ignores this Court and *again* wrongly asserts that the Court somehow has "disadvantage[d]" Telcordia and "denied [Telcordia] the right to support its argument" through expert testimony. D.I. 265/252 at 12.[14] However, as its own brief concedes, "***Telcordia decided not to serve*** an opening expert report of the party bearing the burden of proof as set forth in the

---

[13] Telcordia also argues that the "OSI 'Layers' model is unrelated to the '306 patented invention." D.I. 265/252 at 6. That is exactly Defendants' point. The accused products utilize the OSI Layers model in order to construct ***packet overlay networks*** such as ATM over SONET, whereas the '306 patent claims a fundamentally different and "unrelated" DTDM system, which does not use overlayer networks. Instead, the claimed DTDM system performs framing and packetizing at the same transmission layer, as confirmed by the undisputed testimony of inventor Lee. *See* Ex. 8 at 89:15-24; 225:3-15.

[14] Telcordia attempts to justify its re-argument of this issue for the third time under the guise of "preserve[ing] its rights on appeal and avoid[ing] waiver." D.I. 265/252 at 10 n.10. Telcordia, however, already made the very same argument with the very same proffered justification in a letter to this Court. D.I. 232/219 at n.2.

Court's Revised Scheduling Order." D.I. 265/252 at 11. The Court did not disadvantage Telcordia; rather Telcordia made a strategic decision based on its own assumptions and now it is unhappy with the natural consequences of that decision. Telcordia cannot create a genuine issue by submitting an untimely expert report that this Court has twice ruled may not be submitted.

Telcordia's reliance on various Third Circuit cases in an attempt to escape the effect of its decision to forego an expert report concerning infringement of the '306 patent is also misplaced. Those cases involved circumstances where evidence was newly discovered after a scheduled disclosure date,[15] or where a party failed to disclose evidence because of extenuating circumstances such as a change in counsel.[16] No such circumstances exist in this case. Here, when opening expert reports were due, Telcordia indisputably possessed all the evidence necessary to serve such a report and even received additional time from this Court so that its experts could "review and digest the Court's construction of claim terms and incorporate the Court's claim construction into their reports before submitting them." D.I. 190 at ¶ 3. Telcordia's sole purported justification for not complying with the Court's Scheduling Order was that it "assumed" it did not have to serve an infringement expert report because it "assumed" that the Court would enter a Rule 54(b) judgment, although it did not consult with the Court or

---

[15] *Meyers v. Pennypak Woods Home Ownership Assoc.*, 559 F.2d 894, 904 (3d Cir. 1977) (allowing testimony from witnesses when "Plaintiff timely filed his pretrial memorandum listing seven witnesses and . . . [t]here days later . . . evidently [ ] learned of potential new fact witnesses"); *In re Paoili*, 35 F.3d 717, 791 (3d Cir. 1994) (allowing expert to testify based on evidence that was not available at time of deposition); *ABB Air Preheater v. Regenerative Env. Equip. Co.*, 167 F.R.D. 668, 672 (D. N.J. 1996) (allowing defendant's expert to address secondary considerations in reply report when "[i]t is undisputed that defendant disclosed expert's opinions well before trial, and in accordance with deadlines set in the Court's scheduling order").

[16] *Ali v. Sims*, 788 F.2d 954, 957 (3d Cir. 1986) (allowing party to answer interrogatories when failure to do so timely "resulted from [party] being caught between counsel for a period of time); *Poulis v. State Farm Fire & Casuality Co.*, 747 F.2d 863, 865 (3d Cir. 1984) (allowing party to answer interrogatories when failure to do so timely was due to counsel's illness).

Defendants, and had not even moved for such a judgment before it "decided" not to serve an expert report.

Regardless, the question of whether Telcordia may file an untimely expert report already has been decided. The only issue pertinent to Defendants' summary judgment motion is what consequences follow from Telcordia's failure to serve an expert report. The Federal Circuit addressed this issue in *Centricut, LLC v. Esab Group, Inc.*, holding that "in a case involving complex technology, where the accused infringer offers expert testimony negating infringement, the patentee cannot satisfy its burden of proof by relying on testimony from those who are admittedly not expert in the field." 390 F.3d 1361, 1370 (Fed. Cir. 2004). In *Centricut*, the patentee did not provide any expert testimony on infringement, and the Federal Circuit entered judgment of non-infringement as a matter of law because "the patentee thus failed to satisfy its burden of proof." *Id.* The Federal Circuit explained that "[t]his case stands as an apt example of what may befall a patent law plaintiff who presents complex subject matter without inputs from experts qualified on the relevant points in issue when the accused infringer has negated infringement with its own expert." *Id.*[17]

---

[17]  Telcordia cites heavily to Third Circuit case law regarding the standard for preclusion of evidence. That standard, however, is irrelevant because the Court already has decided the issue of whether Telcordia may serve a late expert report. Federal Circuit law clearly governs the only issue now before the Court--the type of evidence necessary to meet the burden of proving patent infringement. Indeed, in *Centricut*, the Federal Circuit expressly stated that "*we* have repeatedly approved use of expert testimony to establish infringement [and] ... *[w]e* have also noted that 'typically' expert testimony will be necessary in cases involving complex technology." 370 F.3d at 1369-70. Moreover, *Centricut* cites to cases from other circuits as confirmation that expert testimony is necessary in complex technology cases. *Id.* at 1370 n.5 (quoting *Whelan Assoc. Inc. v. Jaslow Dental Labs., Inc.*, 797 F.2d 1222, 1232-33 (3d Cir. 1986) ("expert testimony is essential to even the most fundamental understanding" of computer programs that were the subject of the copyright infringement action)). Plainly, the Federal Circuit disagrees with Telcordia's position regarding the effect of not serving an infringement expert report as well as Telcordia's analysis of Third Circuit law.

This case, like *Centricut*, involves a complex technology. In fact, Telcordia contends that a person of ordinary skill in the pertinent art ██████████████████████████ ████████████████████████████████ ███████████████████████████ Ex. 11 at 32. Also as in *Centricut*, Telcordia failed to provide any expert input on infringement whereas Defendants served an expert report negating infringement. Telcordia bears the burden of proving that the limitations of its asserted claims are present in Defendants' products, yet Telcordia (based on its concession of two limitations) decided to forego its opportunity to offer expert opinion establishing that Defendants' products meet *any limitation* of the claims. Accordingly, Telcordia cannot satisfy its burden of proof as a matter of law.[18]

## III.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court enter summary judgment of non-infringement of the '306 patent based on each of the claim limitations identified by Defendants in their opening brief.

---

[18] Nor can Telcordia's submission of a 177-page expert report, styled as an "Offer of Proof," regarding alleged factual disputes on infringement of the '306 patent preclude entry of summary judgment on the claim limitations discussed above. As this Court has already decided, the appropriate time for Telcordia to provide any expert "proof" was in accordance with this Court's schedule for serving opening reports.

YOUNG CONAWAY STARGATT &
   TAYLOR, LLP

/s/ *Monté T. Squire*
_____
John W. Shaw (No. 3362)
Monte T. Squire (No. 4764)
Andrew A. Lundgren (No. 4429)
The Brandywine Building
1000 West Street
Wilmington, DE 19801
Telephone: (302) 571-6600
Facsimile: (302) 576-3334
jshaw@ycst.com
msquire@ycst.com
alundgren@ycst.com

OF COUNSEL:

Steven C. Cherny
LATHAM & WATKINS LLP
885 Third Avenue, Suite 1000
New York, NY 10022
Telephone: (212) 906-1200
Facsimile: (212) 571-4864

David A. Nelson
Israel Sasha Mayergoyz
David C. McKone
LATHAM & WATKINS LLP
Sears Tower, Suite 5800
Chicago, IL 60606
Telephone: (312) 876-7700
Facsimile: (312) 993-9767


Attorneys for Defendant Lucent Technologies Inc.


Dated: November 2, 2006

MORRIS, NICHOLS, ARSHT & TUNNELL
LLP

/s/ *Jack B. Blumenfeld*
_____
Jack B. Blumenfeld (No. 1014)
Leslie A. Polizoti (No. 4299)
1201 North Market Street
Wilmington, DE 19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
jblumenfeld@mnat.com
lpolizoti@mnat.com


OF COUNSEL:

Matthew D. Powers
Edward R. Reines
Jessica L. Davis
Sonal N. Mehta
Thomas B. King
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Telephone: (650) 802-3000
Facsimile: (650) 802-3100

Ryan Owens
WEIL, GOTSHAL & MANGES, LLP
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007


Attorneys for Defendant Cisco Systems, Inc.

## CERTIFICATE OF SERVICE

I, Monté T. Squire, hereby certify that on November 9, 2006, a true and correct copy of the foregoing document was electronically filed with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

Steven J. Balick, Esquire
*sbalick@ashby-geddes.com*
Ashby & Geddes
222 Delaware Avenue
P.O. Box 1150
Wilmington, DE 19899

I further certify that on November 9, 2006 I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

**BY E-MAIL ON NOVEMBER 9, 2006 AND**
**BY FEDERAL EXPRESS ON NOVEMBER 10, 2006**

Donald R. Dunner, Esquire
*don.dunner@finnegan.com*
Finnegan, Henderson, Farabow, Garrett, & Dunner, LLP
901 New York Ave., N.W.
Washington, DC 20001

York M. Faulkner, Esquire
*york.faulkner@finnegan.com*
Finnegan, Henderson, Farabow, Garrett, & Dunner, LLP
Two Freedom Square
11955 Freedom Drive
Reston, VA 20190

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Monté T. Squire*
John W. Shaw (No. 3362)
*jshaw@ycst.com*
Monté T. Squire (No. 4764)
*msquire@ycst.com*
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19899-0391
(302) 571-6600
*Attorneys for Lucent Technologies Inc.*