**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

TELCORDIA TECHNOLOGIES, INC.,                          )
                                                                                    )
         Plaintiff/Counterclaim Defendant,           )      **REDACTED PUBLIC**
                                                                                    )      **VERSION**
         **v.**                                                              )
                                                                                    )
LUCENT TECHNOLOGIES INC.,                                )      Civil Action No. 04-875-GMS
                                                                                    )
         Defendant/Counterclaim Plaintiff.            )
                                                                                    )
_____            )

TELCORDIA TECHNOLOGIES, INC.,                          )
                                                                                    )
         Plaintiff/Counterclaim Defendant,           )
                                                                                    )
         **v.**                                                              )
                                                                                    )
CISCO SYSTEMS, INC.,                                           )      Civil Action No. 04-876-GMS
                                                                                    )
         Defendant/Counterclaim Plaintiff.            )
                                                                                    )
_____            )

**TELCORDIA TECHNOLOGIES, INC.'S ANSWER TO DEFENDANTS' MOTION *IN***
***LIMINE* NO. 3:**

**DEFENDANTS' SURPRISE DISCLOSURE**
**OF THE EXISTENCE OF ALLEGED "OPINIONS OF COUNSEL"**

                         ASHBY & GEDDES
                         Steven J. Balick (I.D. #2114)
                         John G. Day (I.D. #2403)
*Of Counsel:*              Tiffany Geyer Lydon (I.D. #3950)
                         500 Delaware Avenue, 8th Floor
Donald R. Dunner          P.O. Box 1150
Steven M. Anzalone        Wilmington, Delaware 19899
Richard H. Smith           (302) 654-1888
James T. Wilson            sbalick@ashby-geddes.com
John M. Williamson        jday@ashby-geddes.com
FINNEGAN, HENDERSON, FARABOW,  tlydon@ashby-geddes.com
   GARRETT & DUNNER, L.L.P.
901 New York Ave., N.W.       *Attorneys for Plaintiff*
Washington, D.C. 20001      *Telcordia Technologies, Inc*
(202) 408-4000

Dated: February 22, 2007

## I.    INTRODUCTION

The defendants' motion seeking to preclude Telcordia from telling the jury that "an opinion was received but not tendered" misses the mark entirely—if defendants had opinions (which they do not) Telcordia would not tell the jury that the opinions "were received but not tendered." Rather, Telcordia intends to tell the jury the simple fact that the defendants never obtained opinions in the first instance—and Telcordia intends to do so without any suggestion that the jury should infer anything about what an opinion would have said had one been obtained. Defendants' motion gratuitously assumes that the real issue in dispute—whether they obtained opinions—has somehow already been established in their favor. Cisco has not obtained an opinion (indeed, Cisco identifies its highly suspect alleged "advice of counsel" for the first time in its motion) and under recent Federal Circuit law, there is nothing that should preclude Telcordia from presenting that simple fact to the jury.[1]

## II.    CISCO'S DISCOVERY GAMESMANSHIP SHOULD PRECLUDE CISCO FROM NOW SUGGESTING THAT IT OBTAINED OPINIONS

Cisco's outright discovery gamesmanship regarding the existence of opinions of counsel should, by itself, preclude Cisco from enjoying an eleventh hour surprise assertion that it obtained opinions. When discovery opened almost three years ago, Telcordia propounded an interrogatory and document requests asking Cisco to identify "each person familiar with or responsible for any consideration by Cisco of the Relevant Patent," (Ex. A) and to produce (or log) any and all opinions on infringement or validity. (Ex. B at nos. 19, 20, *see also* nos. 3-8, 17, 18, 21-25). Telcordia explained that these standard discovery requests merely sought the type of information that must be disclosed in a privilege log (e.g., author, date, recipients, and description) in

---

[1] In its part of the motion, Lucent does not allege, as Cisco now does, that it obtained opinions but hid them during discovery. Instead, Lucent argues that the absence of an opinion is irrelevant in its case because it is entitled to a summary determination of no willfulness based on its lack of knowledge of Telcordia's patent. But Lucent never moved for summary judgment of no willful infringement due to no awareness of the patent. Indeed, during the summary judgment phase of this case, Lucent sought leave to move for summary judgment of no notice (for purposes of damages) and the Court denied Lucent's request. (D.I. 237 at 43). Telcordia opposes this second bite at the same apple for all of the same reasons advanced by Telcordia in responding to Lucent's summary judgment request. (D.I. 219 at 5). Moreover, Telcordia's theory of Lucent's awareness of Telcordia's patent is fully set forth, among other places, in Telcordia's trial brief. The substantive issue of Lucent's awareness is a critical factual issue that should be decided by the jury, not couched in a motion *in limine*. And Telcordia's willfulness claim against Lucent should not be summarily dismissed in the context of a motion *in limine*. Moreover, for the reasons discussed herein in connection with the Cisco case, the fact of whether or not Lucent obtained an opinion regarding infringement or validity remains highly relevant and probative of willfulness, and should be presented to the jury.

enough detail to enable Telcordia to "assess the applicability of the privilege" as expressly required by Fed. R. Civ. P. 26(b)(5). (Exs. C, D). Despite its clear obligations under the Federal Rules, Cisco refused to identify and log its opinions under the unconventional theory that all discovery on opinions, including the information required by Fed. R. Civ. P. 26(b)(5), was deferred under the Court's Scheduling Order:

> During the initial case management conference, the Court made clear that discovery as to opinions of counsel is stayed until Cisco elects whether or not to rely on any such opinion of counsel. Under the Court's Scheduling Order, it is clear that Telcordia is not entitled to discovery concerning the existence or substance of any opinions of counsel until that election has been made.

(Ex. E). Cisco thereafter served two privilege logs—and consistent with Cisco's representation that "Telcordia is not entitled to discovery concerning the existence" of opinions, neither log contained any entry described as an opinion of counsel regarding validity or infringement. (Exs. F, G). But when the willfulness discovery period opened on July 6, 2006, (D.I. 72), Cisco surprisingly held steady in its refusal to comply with Fed. R. Civ. P. 26(b)(5). Specifically, when asked to log its opinions of counsel, Cisco refused and advanced the absurd position that:

> Because Cisco elected not to rely on any opinion of counsel, discovery with respect to such opinions never opened and, pursuant to Cisco's written objections to Telcordia's discovery responses, **Cisco is under no obligation to provide non-privileged information about opinion letters, if any exist. Simply put, the existence of such opinions is not relevant or responsive** now that Cisco has elected not to rely on an opinion letter.

(Ex. H)(emphasis added). In other words, Cisco explained that it would not provide "non-privileged information about opinion letters" because, in its self-serving view, opinions regarding the validity, enforceability, or infringement of the patents-in-suit "if any exist" were "not relevant or responsive." Telcordia disagreed with this position and made its position very clear—unless Cisco answered Telcordia's discovery requests and provided the information required by Fed. R. Civ. P. 26(b)(5), Telcordia would be entitled to a presumption that "Cisco does not have, and has never had, any opinions concerning the patents-in-suit." (Ex. C). The discovery periods (fact and willfulness) have long since come and gone, and Cisco never (until now) identified any opinions, never updated or explained its privilege log, and never answered Telcordia's discovery requests merely seeking disclosure of the information mandated under Fed. R. Civ. P. 26(b)(5).

Now, on the eve of trial and faced with the consequences of its gamesmanship during discovery, Cisco contends that the previously styled irrelevant and non-responsive opinions, "if any existed," were actually

properly disclosed and logged all along. This shameless about face should be dismissed outright. First, it is entirely inconsistent with Cisco's position during discovery. Cisco should not be entitled to stonewall, mislead, and misdirect by classifying information as irrelevant and non-responsive during discovery only to turn around and use that very information to improve its position at trial.[2] Second, even now Cisco continues to hide behind vague and obscure references to supposed "advice of counsel." (D.I. 292, Ex. 3). As Cisco well knows, the type of advice of counsel at issue here is a thorough opinion from unbiased and competent counsel that, for example, must be obtained in a timely manner, must analyze relevant facts and explain conclusions based upon the applicable law, and must include a thorough review of the prior art and prosecution history. *See, e.g., Johns Hopkins Univ. v. CellPro, Inc.*, 152 F.3d 1342, 1364 (Fed. Cir. 1998); *SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.*, 127 F.3d 1462, 1467 (Fed. Cir. 1997). Cisco's vague allusion to "legal advice" provided by its in-house counsel, Robert Barr, and its outside licensing negotiation counsel, Baker & Botts, is hardly the type of opinion involved in the willfulness inquiry. Indeed, Cisco's privilege log contains well over 100 entries authored by Robert Barr over a ten year period. They are described as "email" and are directed toward either "patent licensing," "agreements," or "prosecution." (Exs. F, G). Moreover, Mr. Barr's personal investment and bias was certainly evident throughout his deposition (Ex. I at 140-41)(snapping "I'm not going to answer this out-of-context crap" when presented with a simple question about whether he regarded a presentation that Telcordia gave to Cisco as an assertion of infringement). Nothing on Cisco's privilege log even remotely suggests that the entries authored by Mr. Barr are opinions on validity or infringement. The same holds true for the nearly 50 entries authored by Baker & Botts—they are virtually all emails and they all are described as relating to licensing negotiations, not opinions on validity and infringement.[3]

---

[2] Indeed, had Telcordia known that Cisco obtained an opinion of counsel—a true opinion of counsel regarding validity or infringement from a competent, unbiased attorney—and had Cisco disclosed the date, author, and recipient of such an opinion, Telcordia would have explored the issue and would have approached discovery differently. At the very least, Telcordia would have deposed the authors of the alleged opinions to explore whether in fact they were true opinions, the circumstances surrounding their generation, and whether they were relied upon by Cisco.

[3] Cisco's amorphous privilege log is troubling in many respects, and rather than permit Cisco to take advantage of gamesmanship with its privilege log, the Court should view Cisco's conduct and misleading log with scrutiny. *See, e.g., Trudeau v. New York State Consumer Protection Board*, 237 F.R.D. 325, 334 (N.D.N.Y. 2006) (recognizing that failure to comply with Rule 26(b)(5) can result in a waiver of privilege).

III.   **TELCORDIA SHOULD BE PERMITTED TO INFORM THE JURY THAT CISCO DID NOT OBTAIN AN OPINION**

Cisco's own proposed jury instruction on willfulness (although deficient in other respects) directs the jury to consider "whether Cisco and/or Lucent obtained and followed the advice of a competent lawyer," recognizing the ongoing applicability and viability of the Federal Circuit's controlling "totality of the circumstances" test for willful infringement. *See, e.g., Read Corp. v. Portec, Inc.,* 970 F.2d 816, 827 (Fed. Cir. 1992); *Tenneco Automotive Operating Co. v. Visteon Corp.,* 375 F. Supp.2d 360, 365 (D. Del. 2005). Moreover, contrary to Cisco's arguments, there is no "adverse inference" issue implicated here because Telcordia does not intend to tell the jury that they should infer anything from the fact that the defendants did not obtain an opinion. With that caveat, Cisco's failure to obtain an opinion of counsel remains highly relevant and probative on the issue of "whether Cisco formed a good faith belief that the patent was invalid or that the patent was not infringed" and, as illustrated in Cisco's own proposed jury instruction, is a fact properly considered by the jury.

In an effort to distract attention from the fact that Cisco did not obtain an opinion, Cisco unilaterally proclaims that it did receive an opinion and then accuses Telcordia of attempting to generate an adverse inference in violation of the principles of *Knorr-Bremse System Fuer Nutzfahrzeuge GmbH v. Dana Corp.,* 383 F.3d 1337, 1341 (Fed. Cir. 2004). That is not the issue at all—again there is no *Knorr-Bremse* adverse inference problem. Quite simply, Cisco did not obtain an opinion and Telcordia intends to present that fact to the jury without any suggestion of an adverse inference. Indeed, post *Knorr-Bremse,* courts clearly and consistently distinguish between (1) the situation where an accused infringer obtains but chooses not to produce an opinion, and (2) the situation where an accused infringer neglects to obtain an opinion at all. *See, e.g., IMX Inc. v. Lendingtree, LLC,* No. Civ. 03-1067-SLR, 2006 WL 38918 (D. Del. Jan. 6, 2006); *McKesson Information Solutions, Inc. v. Bridge Medical, Inc.,* 434 F. Supp.2d 810, 811-12 (E.D. Cal. 2006). This Court acknowledged that very distinction recently during pretrial proceedings in *ITT Mfg. Enterprises v. Samsung Elecs. Am., Inc.* No. Civ. 03-1086-GMS. (Ex. J at p. 26). In the former situation, where an accused infringer obtains but withholds an opinion, an argument may be made that informing the jury about the withheld opinion might implicate the adverse inference precluded under *Knorr-Bremse,* even if there is no express mention of an adverse inference. But in the latter situation, nothing in the *Knorr-Bremse* opinion or otherwise precludes the jury from considering the fact that the defendant simply did not obtain an opinion (provided that there is no

4

express reference to an adverse inference). *IMX* 2006 WL 38918; *McKeeson* 434 F.Supp.2d at 811-12. To the contrary, when considering whether the jury should be informed that a defendant did not obtain an opinion, post *Knorr-Bremse*, the Federal Circuit explained:

> In the instant case, we do not see any error, let alone plain error, in the instructions submitted to the jury. That is because the instructions merely directed the jury to consider whether Donaldson sought a legal opinion as one factor in assessing whether, under the totality of the circumstances, infringement by the Air Alert was willful. *Knorr-Bremse System Fuer Nutzfahrzuege GmbH v. Dana Corp.*, 383 F.3d 1337, 1342-43 (Fed. Cir. 2004) (en banc) ("Determination of willfulness is made on consideration of the totality of the circumstances.").

*Engineered Products Co. v. Donaldson Co.*, No. 04-1596, 2005 WL 2090662 (Fed. Cir. Aug. 31, 2005) (unpublished). To the same effect:

> We reject Peterson's argument that the district court drew an inference of the type prohibited by *Knorr-Bremse* from the fact that Peterson failed to obtain a competent opinion of counsel. The district court did not infer that if Peterson had obtained a competent opinion regarding the '159 patent, the opinion would have been unfavorable to Peterson.

*Golden Blount, Inc. v. Peterson*, 438 F.3d 1354, 1369 (Fed. Cir. 2006). As such, Telcordia should be permitted to inform the jury that Cisco did not, in fact, obtain an opinion of counsel regarding validity or infringement.

This Court's treatment of this precise issue in *ITT Mfg.* is highly instructive because, like this case, the *ITT Mfg.* case involved a defendant's belated assertion that certain emails on its privilege log were in fact "opinions" that might preclude the plaintiff from informing the jury that no opinion was obtained. In that case, the Court called the defendant's bluff, ordering them to produce the supposed "opinions" for *in camera* inspection before the Court would render its decision on the issue. (Ex. J, K). Here, Cisco's belated and obscure contention that an "opinion" is buried somewhere in over 150 emails on its privilege log is facially suspect. And Cisco's coy and misleading conduct during discovery (including apparently mis-describing opinions on validity or infringement as "patent licensing" information on its privilege log while telling Telcordia that any opinions, "if they exist," are simply irrelevant and non-responsive) should preclude Cisco from enjoying even the chance to have its bluff called. From the outset, Telcordia served the appropriate discovery requests, followed up on its pursuit of the existence of opinions, and made its position known that unless Cisco complied with the Federal Rules, Telcordia would be entitled to tell the jury that, quite simply, no opinion was obtained. Telcordia's willfulness case should not now be prejudiced by Cisco's eleventh hour, un-testable assertion that something somewhere on its privilege log is actually an opinion in disguise.

5

ASHBY & GEDDES

/s/ Tiffany Geyer Lydon
_____
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware  19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Plaintiff*
*Telcordia Technologies, Inc*

*Of Counsel:*

Donald R. Dunner
Steven M. Anzalone
Richard H. Smith
James T. Wilson
John M. Williamson
FINNEGAN, HENDERSON, FARABOW,
    GARRETT & DUNNER, L.L.P.
901 New York Ave., N.W.
Washington, D.C.  20001
(202) 408-4000

Dated:  February 22, 2007

178111.1

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

TELCORDIA TECHNOLOGIES, INC.            )
    Plaintiff/Counterclaim Defendant,    )    Civil Action No. 04-876-GMS
    v.                                  )
CISCO SYSTEMS, INC.                     )
    Defendant/Counterclaim Plaintiff.   )

## CISCO'S RESPONSE TO TELCORDIA'S FIRST SET OF INTERROGATORIES (NOS. 1-12)

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, defendant Cisco Systems, Inc. ("Cisco") objects and responds to plaintiff Telcordia Technologies, Inc. ("Telcordia") First Set of Interrogatories (Nos. 1-12) as follows:

### GENERAL OBJECTIONS AND OBJECTIONS TO INSTRUCTIONS

1.    Cisco objects to each interrogatory to the extent it seeks information protected by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity. Nothing contained in Cisco's responses is intended to be, or in any way shall be deemed, a waiver of any such applicable privilege, doctrine, or immunity.

2.    Nothing in these responses is an admission by Cisco of the existence, relevance, or admissibility of any information, for any purpose, or the truth or accuracy of any statement or characterization contained in any interrogatory. Cisco reserves all objections and other questions as to competency, relevance, materiality, privilege, or admissibility related to the use of its responses and any document or thing identified in its responses as evidence for any purpose whatsoever in any subsequent proceeding in this trial or any other action.

3.    Cisco objects to each interrogatory to the extent it seeks information in Telcordia's possession or information that is available to Telcordia from public or other sources.

further objects to this interrogatory as overly broad and unduly burdensome, and as vague and ambiguous. Cisco further objects to this interrogatory as not being limited in time.

Subject to and without waiving its objections, pursuant to Fed. R. Civ. P. 33(d), Cisco will produce documents sufficient to show relevant sales and revenues relating to the accused products after Telcordia identifies the specific Cisco products that Telcordia is accusing of infringement in this litigation.

## INTERROGATORY NO. 3

Identify each person familiar with or responsible for any consideration by Cisco of the Relevant Patents. The response should include, but not be limited to, an identification of current or former officers, employees, agents, and consultants retained by or for Cisco familiar with or responsible for any consideration by Cisco of the Relevant Patents.

## RESPONSE TO INTERROGATORY NO. 3

In addition to its general objections, Cisco objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege or the work-product doctrine. Cisco further objects to this interrogatory as premature to the extent it seeks discovery on its willfulness allegations. Cisco further objects to this interrogatory as vague and ambiguous.

## INTERROGATORY NO. 4

For the Relevant Patents, please identify separately for each patent the following:
(a)     the date Cisco first became aware of the existence of the patent;

(b)     the person(s) who first became aware of the patent; and

(c)     the circumstances surrounding Cisco's discovery of the patent.

## RESPONSE TO INTERROGATORY NO. 4

In addition to its general objections, Cisco objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege or the work-product doctrine. Cisco further objects to this interrogatory as vague and ambiguous.

5

## CERTIFICATE OF SERVICE

I hereby certify that I caused to be served copies of the foregoing document on

May 9, 2005 upon the following in the manner indicated:

### BY HAND

Steven J. Balick
ASHBY & GEDDES
222 Delaware Avenue
P.O. Box 1150
Wilmington, DE 19899

### BY FEDERAL EXPRESS

Don O. Burley
FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER
1300 I Street, N.W.
Washington, DC 20005-3315

Leslie A. Polizoti

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

TELCORDIA TECHNOLOGIES, INC.,                    )
                                                 )
            Plaintiff,                           )
                                                 )
    v.                                           )   C.A. No. 04-876-GMS
                                                 )
CISCO SYSTEMS, INC.,                             )
                                                 )
            Defendant.                           )

## TELCORDIA'S FIRST SET OF REQUESTS FOR PRODUCTION TO CISCO SYSTEMS, INC. (NOS. 1-98)

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Plaintiff Telcordia Technologies, Inc. ("Telcordia") hereby serves this First Set of Requests for Production of Documents and Things to Defendant Cisco Systems, Inc. ("Cisco") and requests that Cisco produce the requested documents and things within thirty (30) days of service at the offices of Telcordia's counsel, Finnegan, Henderson, Farabow, Garrett & Dunner, L.L.P., 901 New York Avenue, NW, Washington, DC 20001-4413.

## INSTRUCTIONS AND DEFINITIONS

The following instructions and definitions apply to all of Telcordia's requests for production in this case as well as to Cisco's discovery responses:

1.      The term "Cisco" shall mean Cisco Systems, Inc., together with all partners, directors, owners, officers, members, employees, agents, representatives, attorneys, and any other persons under the control of Cisco Systems, Inc., including all parents, divisions, subsidiaries, affiliates, and predecessors of Cisco Systems, Inc.

2.     The term "document" shall have the comprehensive meaning set forth in Rule 34(a) of the Federal Rules of Civil Procedure, including but not limited to all tangible embodiments, manifestations, or evidence of a communication, as defined in paragraph 3 below.

3.     The term "communication" shall mean and include any and all forms of information transmission or storage, including but not limited to written, oral, electronic, telephonic, or videographic inquiries, responses to inquiries, discussions, conversations, negotiations, agreements, understandings, meetings, letters, notes, telegrams, advertisements, comments, and interviews, and all documents (as defined above) related to any such communication.

4.     The term "thing" shall mean any tangible item other than a document.

5.     The terms "concerning" or "concerns" mean referring to, describing, evidencing or constituting.

6.     The term "person" shall refer to natural persons or any business, legal, or governmental entity or association, as well as any entity's or association's officers, agents, or employees.

7.     Cisco shall search for all documents and things within its possession, custody or control, wherever located, including but not limited to any documents or things placed in storage facilities or in the possession of any employee, agent, representative, attorney, investigator, or other person acting or purporting to act on Cisco's behalf (whether located at their residence or place(s) of business) in order to respond fully to these requests.

8.     Cisco shall supplement its production if it comes into possession, custody, or control of responsive documents or things between the time of initial production and the time of trial, by promptly producing such documents or things to Telcordia.

2

9.      All documents or things that are responsive in whole or in part to any of the requests herein shall be produced in full, without abridgement, abbreviation, or expurgation of any sort. If any document or thing cannot be produced in full, Cisco shall produce the document or thing to the extent possible and indicate in its written response what portion of the document or thing is not produced and why it could not be produced.

10.     Cisco is required to produce not only the original or an exact copy of the original of all documents or things responsive to any of the following numbered requests, but also all copies of such documents or things that bear any notes or markings not found on the originals and all preliminary, intermediate, final, and revised drafts or embodiments of such documents or things. Cisco is required to produce all versions of such documents as well as identical copies found in different files.

11.     If Cisco claims that any responsive document or thing is privileged or immune from discovery as work product, Cisco shall provide a full identification of the withheld document, thing, or portion thereof, including by identifying:

(a)     the date or dates appearing on such document or thing, or if no date appears thereon, the date (or approximate date) such document or thing was prepared;

(b)     the identity of all persons who prepared, authored, signed, and/or received (including "blind copy" recipients) such document or thing, or who learned of its contents, including an identification of any affiliations of such persons with Cisco;

(c)     the general nature of the document or thing (*e.g.*, letter, photograph, etc.);

(d)     a summary of its contents or its general subject matter; and

(e)     the specific grounds for not providing the document or thing, including the nature of the privilege (*e.g.*, attorney-client privilege, work product) or other rule of law relied upon to withhold the document or thing, and the facts supporting those grounds.

12.     Any purportedly privileged document or thing containing non-privileged matter must be produced, with the purportedly privileged portion excised.  Cisco shall identify the specific location on each page where matter has been excised.

13.     If Cisco is aware of any document or thing requested to be produced that has been lost, discarded, destroyed, or is otherwise not available for production by Cisco for any reason whatsoever, Cisco shall provide:

(a)     a full identification of each such document or thing, including its author, addressee, recipient, date, and general type (*e.g.*, letter, report);

(b)     a summary of its contents or general subject matter;

(c)     the names, affiliations, and job titles of all persons who participated in preparing and/or signing the document or thing;

(d)     the date and manner of disposal;

(e)     the reason for disposal;

(f)     the identity of any person who has possession, custody, or control of a partial or complete copy of such document or thing; and

(g)     the identity of all persons who participated in and/or authorized the destruction or discarding or who have knowledge of the dates and circumstances surrounding the destruction or discarding.

14.     The "Relevant Patents" are as follows and will be abbreviated as indicated:  U.S. Patent No. 4,893,306, U.S. Patent No. Re. 36,633, and U.S. Patent No. 5,260,978.

4

15. "ATM" means asynchronous transfer mode.

16. "SONET" means Synchronous Optical Network.

17. "ANSI" means American National Standards Institute.

18. The term "product" shall mean hardware and/or software and shall include, without limitation, all models, prototypes, and modifications thereof.

19. "Packet Processing Products" includes products having the capability of processing packet-based bit streams and/or interfacing with SONET-based communication links, including products capable of framing, multiplexing, or demultiplexing SONET, ATM-framed, and/or packet-based bit streams. Processing packet-based bit streams includes placing data into packetized format complying with industry standards, such as IEEE 802.3 or "Ethernet," ATM, RFC 1661, 1662, 2615, GFP, HDLC, or other packet-based communication protocols.

20. "Synchronous Residual Time Stamp Products" include products complying with the ATM Forum Standard, ITU-T Standard I.363.1, and/or ANSI T1.630.

21. "Product(s)-In-Suit" includes all Packet Processing Products and all Synchronous Residual Time Stamp Products.

## REQUESTS FOR PRODUCTION

### REQUEST NO. 1.

All documents and things that refer or relate to any Interrogatory propounded by Telcordia, including any Interrogatory propounded with or following service of Request No. 1.

### REQUEST NO. 2.

All documents and things that referenced in Cisco's Initial Disclosures under Federal Rules of Civil Procedure 26(a).

5

**REQUEST NO. 3.**

All documents and things that refer or relate to the Relevant Patents.

**REQUEST NO. 4.**

All documents and things that refer or relate to any allegation, suggestion, or opinion that any claim of the Relevant Patents is invalid.

**REQUEST NO. 5.**

All documents and things that refer or relate to any allegation, suggestion, or opinion that any of the Relevant Patents is unenforceable.

**REQUEST NO. 6.**

All documents and things that refer or relate to any allegation, suggestion, or opinion that any of the Relevant Patents is or has been licensed.

**REQUEST NO. 7.**

All documents and things that refer or relate to any allegation, suggestion, or opinion that Cisco's use of the technology claimed in any of the Relevant Patents is or has been licensed.

**REQUEST NO. 8.**

All documents and things that refer or relate to any allegation, suggestion, or opinion that Cisco has intervening rights to use the technology claimed in the '633 patent.

**REQUEST NO. 9.**

All organizational charts sufficient to identify current and former Cisco personnel working involved in the research, marketing, and sales of any Product-In-Suit.

6

REQUEST NO. 10.

All documents and things sufficient to identify the current and former Cisco employees involved in the design, development, research, engineering, sales, or marketing of any Product-In-Suit.

REQUEST NO. 11.

All documents and things that refer or relate to any proposed or executed licenses, settlement agreements, or other contractual arrangement (including covenants not to sue) relating to the Relevant Patents, any Product-In-Suit, or any network equipment.

REQUEST NO. 12.

All documents and things that refer or relate to any agreement, including indemnification, joint defense, or other understanding concerning this action, the Relevant Patents, any Product-In-Suit, or any network equipment.

REQUEST NO. 13.

All documents and things that refer or relate to Packet Processing Products, Synchronous Residual Time Stamp Products, or any product embodying any of the inventions described or claimed in the Relevant Patents.

REQUEST NO. 14.

All documents and things that refer or relate to the products identified in response to Interrogatory Nos. 1 and 2.

REQUEST NO. 15.

All documents and things that refer or relate to Telcordia, its networking products, or the Relevant Patents.

**REQUEST NO. 16.**

All documents and things that refer or relate to any patents, publications, uses, sales, or offers for sale that have been identified by or to Cisco as possible prior art to any claim of the Relevant Patents.

**REQUEST NO. 17.**

All documents and things that refer or relate to any present or past interpretation by or for Cisco of any claim in the Relevant Patents.

**REQUEST NO. 18.**

All documents and things that refer or relate to any investigation or analysis performed before or after the filing of this case as to whether Cisco, any Cisco product, or any Product-In-Suit infringes any claim of the Relevant Patents.

**REQUEST NO. 19.**

All documents and things that refer or relate to any allegation, suggestion, or opinion that Cisco, any Cisco product, or Product-In-Suit does or does not infringe claims of the Relevant Patents.

**REQUEST NO. 20.**

All documents and things that refer or relate to any study, analysis, or opinion with respect to whether any claim of the Relevant Patents is invalid or unenforceable.

**REQUEST NO. 21.**

All documents and things that refer or relate to any study, analysis, or opinion with respect to whether any of the Relevant Patents is licensed.

REQUEST NO. 22.

All documents and things that refer or relate to any study, analysis, or opinion with respect to whether Cisco, any Cisco product, or Product-In-Suit is licensed under any of the Relevant Patents.

REQUEST NO. 23.

All documents and things that refer or relate to any study, analysis, or opinion with respect to whether Cisco has intervening rights under the '633 patent.

REQUEST NO. 24.

All documents and things that refer or relate to the date(s) on which Cisco first became aware of each of the Relevant Patents.

REQUEST NO. 25.

All documents and things that refer or relate to any opinion or statement by any past or present Cisco officer, director, employee, agent, representative, contractor, consultant, or attorney with respect to the infringement or noninfringement of any claim of the Relevant Patents, the scope of any claim of the Relevant Patents, the validity or invalidity of any claim of the Relevant Patents, or the enforceability or unenforceability of any claim of the Relevant Patents.

REQUEST NO. 26.

All documents and things that refer or relate to multiplexing packet traffic into synchronous frames in any product made, used, sold, offered for sale, imported, exported, leased, licensed, or distributed by Cisco.

9

**REQUEST NO. 27.**

All documents and things that refer or relate to use of time stamps for synchronization purposes in any product made, used, sold, offered for sale, imported, exported, leased, licensed, or distributed by Cisco.

**REQUEST NO. 28.**

All documents and things that refer or relate to framing, multiplexing, or demultiplexing SONET, ATM-framed, or packet-based bit streams in any product made, used, sold, offered for sale, imported, exported, leased, licensed, or distributed by Cisco.

**REQUEST NO. 29.**

All documents and things that refer or relate to the design, manufacture, configuration, structure, specifications, use, or operation of any product for multiplexing packet traffic into synchronous frames, including but not limited to the following: service manuals, operator's or owner's manuals, installation manuals, reference manuals, customer network configurations, schematics, block diagrams, logic diagrams, state diagrams, timing diagrams, circuit diagrams, specifications, manufacturing or production drawings, engineering drawings, engineering change notices, test procedures, and computer program source code listings.

**REQUEST NO. 30.**

All documents and things that refer or relate to the design, manufacture, configuration, structure, specifications, use, or operation of any product for employing time stamps for synchronization purposes, including but not limited to the following: service manuals, operator's or owner's manuals, installation manuals, reference manuals, customer network configurations, schematics, block diagrams, logic diagrams, state diagrams, timing diagrams, circuit diagrams,

specifications, manufacturing or production drawings, engineering drawings, engineering change notices, test procedures, and computer program source code listings.

REQUEST NO. 31.

All documents and things that refer or relate to the design, manufacture, configuration, structure, specifications, use, or operation of any product for framing, multiplexing, or demultiplexing SONET, ATM-framed, and/or packet-based bit streams, including but, not limited to the following: service manuals, operator's or owner's manuals, installation manuals, reference manuals, customer network configurations, schematics, block diagrams, logic diagrams, state diagrams, timing diagrams, circuit diagrams, specifications, manufacturing or production drawings, engineering drawings, engineering change notices, test procedures, and computer program source code listings.

REQUEST NO. 32.

All documents and things that refer or relate to the design, manufacture, configuration, structure, specifications, use, or operation of any Product-In-Suit, including but, not limited to the following: service manuals, operator's or owner's manuals, installation manuals, reference manuals, customer network configurations, schematics, block diagrams, logic diagrams, state diagrams, timing diagrams, circuit diagrams, specifications, manufacturing or production drawings, engineering drawings, engineering change notices, test procedures, and computer program source code listings.

REQUEST NO. 33.

All documents and things that refer or relate to the evaluation, testing, diagnosis, or troubleshooting of the capability of any Cisco product to multiplex packet traffic into synchronous frames.

11

**REQUEST NO. 34.**

All documents and things that refer or relate to the evaluation, testing, diagnosis, or troubleshooting of the capability of any Cisco product to employ time stamps for synchronization purposes.

**REQUEST NO. 35.**

All documents and things that refer or relate to the evaluation, testing, diagnosis, or troubleshooting of the capability of any Cisco product to frame, multiplex, or demultiplex SONET, ATM-framed, and/or packet-based bit streams.

**REQUEST NO. 36.**

All documents and things that refer or relate to the evaluation, testing, diagnosis, or troubleshooting of the capability of any Product-In-Suit.

**REQUEST NO. 37.**

All current and past promotional or marketing documents, including but not limited to advertisements, sales literature, brochures, catalogs, catalog sheets, bulletins, trade letters, press releases, circulars, and audio or video cassettes, that refer or relate to multiplexing packet traffic into synchronous frames in any Cisco product.

**REQUEST NO. 38.**

All current and past promotional or marketing documents, including but not limited to advertisements, sales literature, brochures, catalogs, catalog sheets, bulletins, trade letters, press releases, circulars, Internet materials, Intranet materials, and audio or video cassettes, that refer or relate to time stamps for synchronization purposes in any Cisco product.

REQUEST NO. 39.

All current and past promotional or marketing documents, including but not limited to advertisements, sales literature, brochures, catalogs, catalog sheets, bulletins, trade letters, press releases, circulars, Internet materials, Intranet materials, and audio or video cassettes, that refer or relate to framing, multiplexing, or demultiplexing SONET, ATM-framed, and/or packet-based bit streams in any Cisco product.

REQUEST NO. 40.

All current and past promotional or marketing documents, including but not limited to advertisements, sales literature, brochures, catalogs, catalog sheets, bulletins, trade letters, press releases, circulars, and audio or video cassettes, that refer or relate to any Product-In-Suit.

REQUEST NO. 41.

All documents and things relating to any actual or potential joint development for any Cisco product.

REQUEST NO. 42.

All documents and things, including electronic records, stating, referring, or relating to quantities of any Product-In-Suit that has been made, used, sold, offered for sale, imported, leased, distributed, or licensed by or for Cisco. If documents containing the precise information called for by this request are not available, produce documents from which this information can be ascertained.

REQUEST NO. 43.

All documents and things, including electronic records, stating, referring, or relating to revenues Cisco has received from the manufacture, use, sale, offer for sale, importation, lease, distribution, or licensing of each Product-In-Suit. If documents containing the precise

13

information called for by this request are not available, produce documents from which this information can be ascertained.

REQUEST NO. 44.

All documents and things, including electronic records, stating, referring, or relating to profits (gross, contribution, pretax, after tax, and/or incremental) Cisco has made from the manufacture, use, sale, offer for sale, importation, lease, distribution, or licensing of each Product-In-Suit. If documents containing the precise information called for by this request are not available, produce documents from which this information can be ascertained.

REQUEST NO. 45.

All documents and things, including electronic records, stating, referring, or relating to costs (direct, indirect, common, or allocated) associated with the manufacture, use, sale, offer for sale, importation, lease, distribution, or licensing of each Product-In-Suit. If documents containing the precise information called for by this request are not available, produce documents from which this information can be ascertained.

REQUEST NO. 46.

All annual reports, financial statements, prospectuses, proxy statements, shareholder reports, incorporation documents, and SEC filings of Cisco that refer or relate to the Relevant Patents and/or Products-In-Suit.

REQUEST NO. 47.

All marketing plans, business plans, long-range plans, and strategic plans for Cisco that refer or relate to the Relevant Patents and/or Products-In-Suit.

**REQUEST NO. 48.**

All minutes and other documents relating to any meeting, whether formal or informal, of the board of directors of Cisco that refer or relate to the Relevant Patents and/or the Products-In-Suit.

**REQUEST NO. 49.**

All documents and things that describe, illustrate, or depict Cisco's corporate or organizational structure, or any group assignment, insofar as that structure or assignment relates to the conception, research, development, design, manufacture, patenting, engineering, production, licensing, marketing, use, lease, offer for sale, sale, or importation of any Product-In-Suit and/or network products.

**REQUEST NO. 50.**

All documents and things that describe, illustrate, or depict titles or job responsibilities of Cisco employees involved in patent work related to any Product-In-Suit, including, but not limited to, investigation or review of any other entity's patents.

**REQUEST NO. 51.**

All documents and things that refer or relate to any document retention and/or destruction policies of Cisco.

**REQUEST NO. 52.**

All documents and things that refer or relate to the named inventors of any Relevant Patent.

**REQUEST NO. 53.**

All documents and things that refer or relate to Cisco's participation and involvement from 1990 to present, in the ATM Forum, the ITU, the CCITT, the IETF, the ANSI, and the

IEEE, including describing Cisco's participation in formation of those bodies, Cisco's membership in each such body, whether Cisco representative attended meetings of those bodies, and Cisco's participation in proposing, adopting, and modifying standards; and describe in detail any communications between any Cisco representatives and Telcordia representatives.

REQUEST NO. 54.

All documents and things that refer or relate to training and/or tutorials relating to networking and framing technologies, including ATM Forum, SONET, ANSI, IETF, CCITT, and/or the IEEE 802 series of standards, including, but not limited to, the following: software, CD-ROMS, video cassettes, audio cassettes, information posted on Cisco's Internet site(s), information posted on Cisco's intranet site(s), material used in connection with course offerings from any Cisco education department, and material distributed to Cisco's customers and employees.

REQUEST NO. 55.

All documents and things that refer to, discuss, or describe "BELLCORE," "Bell Communications Research, Inc.," or Telcordia Technologies, Inc.

REQUEST NO. 56.

All documents and things that refer or relate to any portion of the Products-In-Suit made for Cisco by a third party for resale, import, export, lease, license, or distribution by Cisco.

REQUEST NO. 57.

All documents and things that refer or relate to the research or development relating to any invention, method, product, or device described or shown in any of the Relevant Patents.

16

REQUEST NO. 58.

One representative working unit for each version or configuration of each Cisco product that frames, multiplexes, or demultiplexes SONET, ATM-framed, or packet-based bit streams.

REQUEST NO. 59.

One representative working unit for each version or configuration of each Cisco product that multiplexes packet traffic into synchronous frames.

REQUEST NO. 60.

One representative working unit for each version or configuration of each Cisco product that employs time stamps for synchronization purposes.

REQUEST NO. 61.

One representative working unit for each version or configuration of each Product-In-Suit.

REQUEST NO. 62.

All documents and things that refer or relate to any potential or actual contract, license, or agreement involving Cisco and Telcordia.

REQUEST NO. 63.

All documents and things that refer or relate to or comprising any record and/or index documents that have been destroyed by Cisco.

REQUEST NO. 64.

All computer software (in electronic source code format) and hardware (including without limitation circuitry, switches, micro code, source code, object code, algorithms, and flow charts) for all products ever made by or for or sold by or for Cisco that embody or use any invention disclosed, described, or claimed in the Relevant Patents or are related to circuitry for

17

multiplexing packet traffic into synchronous frames, framing, multiplexing, or demultiplexing SONET and/or ATM-framed bit streams, or employing time stamps for synchronization purposes, whether or not the product was sold or offered for sale and whether or not it worked properly.

REQUEST NO. 65.

All documents and things that Cisco intends to introduce at trial in this action.

REQUEST NO. 66.

All documents and things that refer or relate to any communication between Cisco and Telcordia relating to the Products-In-Suit, any of the Relevant Patents, or technology disclosed in the Relevant Patents.

REQUEST NO. 67.

All documents and things that refer or relate to any communication between Cisco and any other entity, including Fore Systems, Alcatel, and Lucent, regarding this action, any of the Relevant Patents, or technology disclosed in the Relevant Patents.

REQUEST NO. 68.

Documents and things sufficient to show and explain all services and products made, used, sold, offered for sale, imported, exported, leased, licensed, or distributed by Cisco relating to the technology disclosed in the Relevant Patents.

REQUEST NO. 69.

All documents and things that refer or relate to any visit by any Telcordia employee or any Telcordia ex-employee to Cisco's facilities or offices.

REQUEST NO. 70.

All documents and things that refer or relate to any negotiations for a license to any of the

18

Relevant Patents.

REQUEST NO. 71.

All documents that refer or relate to any marketing or sales analyses, evaluations of competing products, consumer studies, communications with resellers, or other information concerning the actual or potential demand and commercial value of any patent in suit, Product-In-Suit, or networking technology.

REQUEST NO. 72.

Documents sufficient to identify the dates of first manufacture, sale, and offer for sale in the United States and importation into the United States of each Product-In-Suit.

REQUEST NO. 73.

All profit and loss ("P&L") statements specific to any Product-In-Suit, including all such statements from any division, office, or group involved in the manufacture, sale, marketing, or distribution of any Product-In-Suit.

REQUEST NO. 74.

All budgets and forecasts that refer or relate to the sale or profitability of any Product-In-Suit.

REQUEST NO. 75.

Documents sufficient to summarize expected returns on investment for any Product-In-Suit, including target rates of return and any standard investment policies and procedures.

REQUEST NO. 76.

All documents, studies, reports, and articles that refer or relate to the market for any Product-In-Suit, including but not limited to:

    a.   Market segments;

19

     b.   Size of the actual and potential markets;

     c.   Growth rates;

     d.   Potential customer base;

     e.   Competitors, their products offerings and pricing;

     f.   Actual and anticipated market shares; and

     g.   Product sales and profitability.

**REQUEST NO. 77.**

    All documents that refer or relate to any product, including any Telcordia product, that competes with any Product-In-Suit, such as the following:

     a.   Competitive intelligence;

     b.   Comparative studies or analyses, including, but not limited to, comparisons to the performance, ease or cost of manufacturing, packaging, or price of any Product-In-Suit;

     c.   Correspondence regarding any technology or potential licenses; and

     d.   Assessments of competitors' products.

**REQUEST NO. 78.**

    All documents that refer or relate to any changes or trends in the industry since 1990 concerning the design, function, and use (i.e., documents describing importance of the feature, heightened demand for certain features of products, or other changes) of SONET, ATM, or Packet Processing Products, or Synchronous Residual Time Stamp Products.

**REQUEST NO. 79.**

    All documents that refer or relate to any design alternative that was adopted or considered by Cisco in the development of any Product-In-Suit.

**REQUEST NO. 80.**

All documents that refer or relate to any reason for rejecting any technology alternative considered, but not adopted, by Cisco in the development of any Product-In-Suit.

**REQUEST NO. 81.**

All documents that refer or relate to a benefit of any design, feature, or function of any Product-In-Suit over any substitute or alternative design, feature, or function.

**REQUEST NO. 82.**

All documents that refer or relate to licensing (in-bound and out-bound) policies and practices of Cisco.

**REQUEST NO. 83.**

All license agreements that refer or relate to intellectual property licensing of any Cisco or other data network product, process, or technology.

**REQUEST NO. 84.**

All documents that refer or relate to intellectual property licensing of any Cisco or other data network product, process, or technology.

**REQUEST NO. 85.**

All documents that refer or relate to the licensing practices of any participants in the worldwide market for data network technology.

**REQUEST NO. 86.**

All valuation/royalty rate analyses that refer or relate to Cisco intellectual property concerning data network technology, including valuations and royalty rate analyses for trademarks, patents, know-how, or trade secrets.

**REQUEST NO. 87.**

All intercompany license agreements for intellectual property that refer or relate to data network technology among Cisco related business units.

**REQUEST NO. 88.**

All valuations prepared by or for Cisco that refer or relate to its technologies or the business segments utilizing such technologies.

**REQUEST NO. 89.**

All sales training materials generated by or for Cisco for products concerning products that compete with any Product-In-Suit.

**REQUEST NO. 90.**

All documents that refer or relate to historical or projected customer preferences over any substitute or desired attributes for any Product-In-Suit, including any document referring or relating to product specifications, attributes, design, size, cost, or quality as a purchasing consideration for customers of the Product-In-Suit.

**REQUEST NO. 91.**

Documents sufficient to summarize Cisco's cost of capital, capital structure, costs of short and long term debt, internal rates of return, or hurdle rates.

**REQUEST NO. 92.**

Documents sufficient to summarize any capital expenditures made by Cisco for the manufacture or sale of any Product-In-Suit.

**REQUEST NO. 93.**

Documents sufficient to summarize any research and development expenditures made by Cisco in connection with the development, manufacture, or sale of any Product-In-Suit.

**REQUEST NO. 94.**

All documents and things that refer or relate to any projection of sales, revenues, or profits concerning any Product-in-Suit.

**REQUEST NO. 95.**

All documents and things that refer or relate to any authorization of or request for the spending of capital in connection with the manufacture, sale, or distribution of any Product-In-Suit.

**REQUEST NO. 96.**

All documents and things that refer or relate to any factor affecting demand for any Product-In-Suit.

**REQUEST NO. 97.**

All documents and things that refer or relate to any survey or evaluation of customer demand for or satisfaction with any Product-In-Suit.

**REQUEST NO. 98.**

All documents and things that refer or relate to any study, survey, evaluation, or other analysis conducted by a third party concerning the marketing, sale, or distribution of any Product-In-Suit.

ASHBY & GEDDES

_____

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
220 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, Delaware 19899
(302) 654-1888

*Attorneys for Plaintiff Telcordia Technologies, Inc.*

*Of Counsel:*

Donald R. Dunner
Richard H. Smith
Don O. Burley
Richard L. Rainey
James T. Wilson
FINNEGAN, HENDERSON,
FARABOW,
  GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C.  20001-4413
(202) 408-4000

York M. Faulkner
FINNEGAN, HENDERSON,
FARABOW,
  GARRETT & DUNNER, L.L.P.
Two Freedom Square
11955 Freedom Drive
Reston, VA  20190-5675
(571) 203-2700

Dated: April 7, 2005
155612.1

24

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of April, 2005, the attached **TELCORDIA'S FIRST**

**SET OF REQUESTS FOR PRODUCTION TO CISCO SYSTEMS, INC. (NOS. 1-98)** was

served upon the below-named counsel of record at the address and in the manner indicated:

Jack B. Blumenfeld, Esquire               **HAND DELIVERY**
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
Wilmington, DE 19899-1347

Matthew D. Powers, Esquire             **VIA ELECTRONIC MAIL**
Weil, Gotshal & Manges LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065

John G. Day

# EXHIBIT C

0002063a

## Christesen, Eric

| | |
|---|---|
| **From:** | Williamson, John |
| **Sent:** | Monday, July 24, 2006 1:59 PM |
| **To:** | sonal.mehta@weil.com |
| **Cc:** | Williamson, John |
| **Subject:** | Telcordia v. Cisco |

Sonal,

In your July 17, 2006, email you ask us to explain Telcordia's basis for its request that Cisco identify its opinion letters on a privilege log. As you know, Telcordia Interrogatory No. 8 asks Cisco to identify all opinions concerning the patents-in-suit (by, for example, date, author, recipient, etc.), and we have already addressed Cisco's earlier refusal to disclose the existence of any opinions in its response to this interrogatory on several occasions. *See, e.g.,* June 15, 2005, letter from J. Williamson to E. Reines; December 30, 2005 letter from G. Mason to S. Mehta.

Throughout the discovery period, Cisco consistently maintained that the Court's Scheduling Order precluded Telcordia from obtaining discovery concerning (1) the existence of any opinions and (2) the substance of any opinions, until the time period for willfulness discovery set forth in the Court's Scheduling Order. Specifically, Cisco maintained that

> During the initial case management conference, the Court made clear that discovery as to opinions of counsel is stayed until Cisco elects whether or not to rely on any such opinion of counsel. Under the Court's Scheduling Order, it is clear that Telcordia is not entitled to discovery concerning the existence or substance of any opinions of counsel until that election has been made. Pursuant to that ruling, Cisco has already agreed to provide discovery as to opinions of counsel if and when appropriate.

August 16, 2005, letter from S. Mehta to J. Williamson. Although Telcordia disagreed with Cisco's position that it was entitled to conceal the mere existence of its opinions until the time period for willfulness discovery set forth in the Court's Scheduling Order, in light of Cisco's assurance that it would provide discovery when appropriate and in order to avoid a discovery dispute before the Court, Telcordia determined to wait until the willfulness discovery period to press the issue further.

Now that we are in the willfulness discovery period, Cisco has taken the position that it does "not believe the existence of [opinion] letters would be subject to discovery under the Court's Revised Scheduling Order." July 17, 2006, email from S. Mehta to J. Williamson.

Nothing in the Court's Revised Scheduling Order excuses Cisco from identifying relevant, responsive, non-privileged information (i.e., the type of information that would be found on a privilege log) about its opinions. Specifically, the Court's Revised Scheduling Order only provides that:

> Defendants shall inform Telcordia whether they intend to rely upon the advice of counsel as a defense to willful infringement no later than 14 days after the Court enters its claim construction order. If any Defendant elects to rely on advice of

0002064a

counsel as a defense to willful infringement, that Defendant shall produce any such opinions on which that Defendant intends to rely to Telcordia by no later than 14 days after the Court enters its claim construction order.

Revised Scheduling Order at 2. In short, the Revised Scheduling Order governs only (1) when Cisco must elect to rely upon the advice of counsel, and (2) when Cisco must elect whether to waive privilege and produce its otherwise privileged opinions. The Order does not allow Cisco to indefinitely conceal the mere existence of relevant, responsive opinions nor does it relieve Cisco of its duty to log relevant, responsive, withheld information as required by the Federal Rules.

Specifically, Rule 26(b)(6) requires a party such as Cisco who withholds materials under a claim of privilege to provide sufficient information about the withheld materials to "enable other parties to assess the applicability of the privilege or protection." Indeed, in every instance in which Cisco intends to assert an alleged privilege, Cisco bears the burden of proving that privilege. *See, e.g. Martin Marietta Materials, Inc. v. Bedford Reinforced Plastics, Inc.*, 227 F.R.D. 382, 389 (W.D. Pa. 2005) *citing In the Matter of Bevill, Bresler & Shulman Asset Management Corp.*, 805 F.2d 120, 126 (3rd Cir. 1986). Nothing in the Court's Scheduling Order relieves Cisco of that burden.

All opinions concerning the patents-in-suit (privileged or otherwise) are relevant and are responsive to at least Telcordia Request for Production Nos. 3-8 and 17-25, which were served over two years ago. At this late stage of the case, Cisco has not produced any non-privileged opinions and has not produced any opinions for which a potentially applicable privilege has been waived. Additionally, despite Telcordia Interrogatory No. 8 (which seeks the identification of all opinions - privileged or otherwise - by date, author, recipients, etc.), and despite Cisco's obligation to log all withheld documents under Rule 26(b)(6), Cisco has not identified or logged any opinions. Nor has Cisco otherwise provided any information that would enable Telcordia "to asses the applicability of" any claimed privilege.

Under these circumstances, Telcordia is entitled to a presumption that Cisco does not have, and has never had, any opinions concerning the patents-in-suit. We will proceed accordingly.

Regards,

John

7/25/2006

# EXHIBIT D

0003751



**FINNEGAN
HENDERSON
FARABOW
GARRETT &
DUNNER** LLP

901 New York Avenue, NW ▪ Washington, DC 20001-4413 ▪ 202.408.4000 ▪ Fax 202.408.4400
www.finnegan.com

GEOFFREY C. MASON
202.408.4125
geoff.mason@finnegan.com

December 30, 2005

Sonal N. Mehta, Esq.                                              *via email*
Weil, Gotshal & Manges LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065

<u>Telcordia Technologies, Inc. v. Cisco Systems, Inc.</u>

Dear Sonal:

We write regarding Cisco's production in response to Telcordia's Document Requests and Cisco's responses to Telcordia's Interrogatories as well as Cisco's December 29, 2005, and December 30, 2005, letters.

Regarding Telcordia's Document Request Nos. 7, 11-14, 42, and 43, they collectively require the production of, *inter alia*, all sales invoices, contracts (including but not limited to sales contracts), communications regarding sales, licenses and indemnity agreements relating to the products at issue (including but not limited to those with RBOC's). However, with the exception of communications regarding sales, we have not found these materials in Cisco's production, even for products that Telcordia had already accused prior to October 31, 2005, and which therefore should have been produced for those products nearly two months ago. As for communications regarding sales, we have found only extremely limited quantities of these communications, far fewer than we would expect to be in Cisco's possession, custody, or control. As noted in our prior letters regarding Cisco's document production, our review of Cisco's production is on-going and thus, to the extent additional deficiencies come to our attention in the future, we will write to you regarding those deficiencies at that time.

Regarding Telcordia's Interrogatories, Cisco's responses to Interrogatories Nos. 1-5 and 7-12 continue to be deficient. Cisco's response to Interrogatory No. 1 concerning the identification of the products in suit, is deficient because it fails to completely identify each accused product in the manner required by this interrogatory. Specifically, Cisco's answer neglects to identify for each accused product: (1) its name(s) during development, (2) its part number(s), (3) its model, (4) its manufacturer, designer, and supplier, and (5) its dates first sold or offered for sale. Moreover, for each module used in the accused products, Cisco should identify the accused products for which the module is compatible, as this compatibility is surely denoted by some "designation" or "internal name[]," which the interrogatory calls for "all" of. Finally, Cisco's answer also fails to identify each integrated circuit used in each product (including by Cisco and supplier part numbers, manufacturer, designer, and supplier).

0003752

FINNEGAN
HENDERSON
FARABOW
GARRETT &
DUNNER LLP

Sonal N. Mehta, Esq.
December 30, 2005
Page 2

Cisco's response to Telcordia's Interrogatory No. 2, is likewise deficient. Although Cisco relies on Fed. R. Civ. P. 33(d), Telcordia believes Cisco has produced no such information. Accordingly, Cisco must either provide a written response, or fully comply with Rule 33(d), as discussed in our letter to Jessica Davis of November 11, 2005.

Cisco's response to Telcordia's Interrogatory No. 3, regarding identification of persons who considered Telcordia's patent, is likewise deficient, because Cisco has identified no persons, evidently relying on its contention that discovery of "willfulness allegations" is "premature." The Scheduling Order establishes no separate discovery schedule for "willfulness allegations;" rather, it establishes a separate discovery schedule for material currently subject to a privilege that Cisco may decide to later waive. Interrogatory No. 3 seeks information which is not privileged and which thus must be provided now, irrespective of whatever waiver Cisco may later make.

Cisco's response to Telcordia's Interrogatory No. 4, regarding Cisco's first awareness of the patents-in-suit, is incomplete. In fact, Cisco's supplemental response on December 20, 2005, actually provides *less* information than Cisco provided on May 9, 2005, in that it fails to identify any persons. Moreover, the answer does not describe the circumstances surrounding Cisco's discovery of the patent. Finally, while Cisco's answer identifies a series of letters, it does not expressly state that these letters were Cisco's first awareness of the patents-in-suit. Please fully identify and describe Cisco's first awareness of the patents.

Cisco's response to Telcordia's Interrogatory No. 5, regarding prior art, is also incomplete. In particular, Cisco fails to identify the persons who are most knowledgeable about its references. Otherwise, however, Telcordia assumes that Cisco's response is complete and that, other than the prior art that Cisco expressly applies to the '306 and '763 reference, Cisco believes that the remainder of the two-hundred six references cannot be applied to the asserted claims of the '306 and '763 patents. Finally, as Cisco's response applies none of these references to the '633 patent, Telcordia assumes Cisco concedes that it is valid under 35 U.S.C. § 102 and § 103. Please let us know if our assumptions are incorrect.

Cisco's response to Telcordia's Interrogatory No. 7, is deficient, as Cisco provides no substantive response, apparently relying on its "prematur[ity]" objections. However, it is not "premature" for Cisco to provide its non-infringement contentions at this time, and Cisco should supplement its response to this interrogatory accordingly.

With regard to Cisco's response to Telcordia's Interrogatory No. 8, Cisco again fails to meet its obligations to produce the non-privileged information called for by this request, purportedly in reliance on unspecified "orders entered by the Court," evidently referring to the scheduling order relied upon by Cisco in its response to Interrogatory No. 3. However, the mere "identif[ication]" of privileged opinions or communications as called for by this interrogatory is not privileged information, as indeed that is precisely what privilege logs consist of. Accordingly, Cisco should provide a response to this interrogatory immediately.

0003753

FINNEGAN
HENDERSON
FARABOW
GARRETT &
DUNNER LLP

Sonal N. Mehta, Esq.
December 30, 2005
Page 3

Cisco's response to Telcordia's Interrogatory No. 9 is likewise deficient because it only
provides conclusions regarding invalidity under 35 U.S.C. § 112 for the '306 and '633 patents,
not "all bases" for these "contentions" as called for by this interrogatory. Accordingly, please
provide the facts Cisco believes supports the conclusions, particularly in view of Cisco's
identification during the claim construction of certain claim limitations it contends are indefinite.
Telcordia also assumes Cisco concedes that the '763 patent is valid under 35 U.S.C. § 112, as it
does not discuss this patent in its response, but please let us know immediately if we are
incorrect in this assumption.

With regard to Cisco's response to Telcordia's Interrogatory No. 10, regarding network
configurations, Cisco's response is deficient. Cisco has provided no substantive response,
apparently based on its position that "Telcordia has failed to identify the specific Cisco products
it is accusing . . .," which is incorrect. Please provide a substantive response.

Cisco's response to Telcordia's Interrogatory No. 11 is also incomplete. As an initial
matter, although Cisco is relying on an equitable defense, Cisco fails to identify facts relating to
whether its own activities were undertaken with clean hands.

With regard to Cisco's laches defenses, Cisco concludes that "[o]ver those nearly four
years, Cisco reasonably came to believe that Telcordia, through its inaction, did not intend to
enforce these claims." Cisco must explain the facts it intends to rely upon to support its
conclusion of reasonableness. For example, please describe Cisco's activities, if any, and
response, if any, to the June 1994 letter from Telcordia referred to in its response, Cisco's
ATM/SONET, ATM/DS3, and ATM/DS1 and ATM products at that time, and Cisco's reliance
on any inaction by Telcordia, and any other facts supporting Cisco's conclusion. Please also
provide similar information for Cisco's contentions regarding the '763 patent.

With regard to Cisco's conclusion of inadequate marking, please provide all facts
supporting that conclusion.

With regard to Cisco's claim of equitable estoppel, please identify the products for which
Cisco contends the defense applies. Also, please provide any facts showing that Cisco knew of
the '633, '763, and '306 patents at the time Cisco contends equitable estoppel arose. Please also
describe (1) whether Cisco altered any of its conduct after Telcordia sent letters concerning the
patents and (2) whether Cisco contends that any of Telcordia's actions were threats of litigation.
Also, please state any facts regarding whether Cisco believed that it infringed the patents and
whether it believed the patents were valid and enforceable. Also, please describe how Cisco was
prejudiced from any alleged silence.

With regard to Cisco's claim of intervening rights, Cisco's response is deficient as it fails
to describe Cisco's pre-issuance and post-issuance activities, including any pertinent investments
made or business commenced during those periods. Accordingly, please identify all products
that infringe the added claims of the '633 patent but that did not infringe the '978 patent. Next,
please explain all facts related to the claim, including whether Cisco relies on absolute or
equitable intervening rights, and sales and other economics underlying the claim. Also, please

0003754

FINNEGAN
HENDERSON
FARABOW
GARRETT &
DUNNER LLP

Sonal N. Mehta, Esq.
December 30, 2005
Page 4

explain Cisco's knowledge and monitoring of the reissue application for the '978 patent and any
other the activities prior to the '633 patent's issuance related to Cisco's equitable claim.

With regard to Cisco's implied license defense, please describe the identities of the third
parties, the Cisco products implicated, the third party components implicated, and the provisions
in any license Cisco relies upon.

With regard to Cisco's claim regarding its contention that Telcordia "unfairly extend[ed]
the limited scope of the monopoly," Cisco provides only a single "example" it contends supports
its position, not "all facts" as called for by this interrogatory.

With regard to Cisco's claim regarding "reasonable and nondiscriminatory terms," please
describe the terms Cisco believes are reasonable and nondiscriminatory, Cisco's belief of the
terms that Telcordia has offered, and Cisco's actions in response to any and all offers to license
the '978 patent or '633 patent to Cisco.

With regard to Interrogatory No. 12, regarding information regarding framer chips or
chipsets, Cisco's response is deficient. Cisco has provided no substantive response, apparently
based on its position that "Telcordia has failed to identify the specific Cisco products it is
accusing . . .," which is incorrect. Please provide a substantive response.

Please let us know during our meet and confer on January 3, 2006, whether Cisco will
agree to produce the documents discussed above by January 16, 2006. Likewise, please confirm
at that same time that Cisco will supplement its interrogatory responses by January 16, 2006, and
explain how Cisco will address the issues raised above. Finally, please let us know during that
same meet and confer whether Cisco will produce by that same date the documents discussed in
Telcordia's December 21, 2005, letter, assuming the Court overrules Cisco's
"unseasonabl[eness]" objection. If we are unable to resolve these issues informally, we will have
no choice but to bring them to the Court's attention.

Regarding Cisco's December 29, 2005, and December 30, 2005, letters, we are already
meeting with Cisco on January 3, 2006, and will be prepared to address all of the issues raised in
your letters at that time.

Very truly yours,

Geoffrey Mason

# EXHIBIT E

# WEIL, GOTSHAL & MANGES LLP
### SILICON VALLEY OFFICE
#### 201 REDWOOD SHORES PARKWAY
#### REDWOOD SHORES, CALIFORNIA 94065
(650) 802-3000
FAX: (650) 802-3100

AUSTIN
BOSTON
BRUSSELS
BUDAPEST
DALLAS
FRANKFURT
HOUSTON
LONDON
MIAMI
NEW YORK
PARIS
PRAGUE
SINGAPORE
WARSAW
WASHINGTON, D.C.

WRITER'S DIRECT LINE

(650) 802-3118
sonal.mehta@weil.com

August 16, 2005

<u>**VIA E-MAIL**</u>

John Williamson, Esq.
Finnegan Henderson Farabow
  Garrett & Dunner LLP
901 New York Avenue NW
Washington, DC 20001-4413

       Re:    *Telcordia v. Cisco*
             <u>C.A. No. 04-876-GMS</u>

Dear John:

       I write in response to your letters of August 11 and June 15, 2005 concerning Cisco's responses and objections to Telcordia's interrogatories and document requests. I address the issues raised in your letters in turn.

*Interrogatory No. 1*

       First, with regard to the definition of "Products in Suit," we have received your letter of July 13, 2005 proposing a revised definition of "Products in Suit." Though we do not agree that your definition of Products in Suit is coterminous with the scope of the patents-in-suit, Cisco is willing, in the spirit of cooperation and efficient discovery, to supplement its response to Interrogatory No. 1 as follows: (1) with regard to the '306 patent, Cisco will identify those Cisco products that enable customers to transmit data over SONET; (2) with respect to the '633 patent, Cisco will provide discovery as to Cisco products that Cisco has promoted as compliant with the ATM Forum Standard, the I.363.1 standard, or the ANSI T1.630 standard; and (3) for the '763 patent, Cisco will provide discovery as to Cisco products that Cisco has promoted as compliant with GR-1400.

WEIL, GOTSHAL & MANGES LLP

John Williamson, Esq.
August 16, 2005
Page 2

Once Cisco has supplemented its response to Interrogatory No. 1, Cisco will provide discovery sufficient to show the relevant functionality of the products identified therein to the extent such information is in its possession. That said, as the plaintiff in this action, Telcordia still has the burden of identifying the products it accuses of infringement in this action. Once Telcordia has reviewed the discovery provided by Cisco and made the threshold determination whether or not it is accusing these products of infringement in this case, Cisco will provide additional discovery in accordance with its previously-articulated responses and objections to Telcordia's discovery requests. For Cisco to produce all documents or provide exhaustive discovery on all products identified in response to Interrogatory No. 1 without that threshold determination from Telcordia would be unduly burdensome and oppressive, particularly because Cisco expects the list of products identified in response to Interrogatory No. 1 to be lengthy.

*Interrogatory No. 2*

In its written response to Interrogatory No. 2, Cisco has agreed to provide discovery to Telcordia sufficient to show the relevant sales and revenues for accused products after Telcordia has identified those products. For the reasons stated above, it would be incredibly burdensome for Cisco to provide sales and revenue figures for all products identified in response to Interrogatory No. 1 when, due presumably to a lack of information, Telcordia has not even made the threshold determination of whether it is accusing these products of infringement. As you know, the collection of sales and revenue figures is not a simple process, particularly in a company as large as Cisco. It is one thing for Telcordia to seek sales and revenue figures for products actually accused of infringement—information Cisco has already agreed to produce—and quite another for Telcordia to seek sales and revenue figures for broad range of products that it cannot yet accuse of infringement. The burden associated with the latter is tremendous, and is unwarranted.

*Interrogatory No. 3*

Telcordia's Interrogatory No. 3 asks Cisco to "Identify each person familiar with or responsible for any consideration by Cisco of the Relevant Patents" and instructs that "the response should include, but not be limited to, an identification of current or former officers, employees, agents, and consultants retained by or for Cisco familiar with or responsible for any consideration by Cisco of the Relevant Patents." Cisco has objected to this interrogatory as, *inter alia*, premature to the extent it seeks discovery on Cisco's willfulness allegations and as vague and ambiguous. More specifically, Cisco does not understand what is meant by "any consideration by Cisco of the Relevant Patents." To the extent Telcordia intends this phrase to cover opinions of counsel, Telcordia's request is premature. During the initial case management conference, the Court made clear that discovery as to opinions of counsel is stayed until

WEIL, GOTSHAL & MANGES LLP

John Williamson, Esq.
August 16, 2005
Page 3

Cisco elects whether or not to rely on any such opinion of counsel. Under the Court's Scheduling Order, it is clear that Telcordia is not entitled to discovery concerning the existence or substance of any opinions of counsel until that election has been made. To the extent this interrogatory seeks discovery related to opinions of counsel, Cisco will provide discovery as to opinions of counsel if and when appropriate. To the extent this interrogatory seeks something different, Cisco does not understand what information is sought.

*Interrogatory No. 4*

Telcordia's Interrogatory No. 4 seeks discovery of the date on which Cisco first became aware of the existence of the patents-in-suit, the person(s) who first became aware of the patents-in-suit and the circumstances surrounding Cisco's discovery of the patents-in-suit. Subject to its objections, Cisco provided Telcordia with a response to this interrogatory based on its knowledge of the facts and circumstances of the case at this early stage. Naturally, Cisco's investigation is ongoing. As discovery and the case progress, Cisco will supplement its responses to Telcordia's interrogatories consistent with its obligations under the Rules.

*Interrogatory Nos. 5 and 9*

With regard to Interrogatory No. 5 and 9 seeking discovery on Cisco's invalidity contentions in this action, Cisco maintains its responses and objections as previously articulated. Telcordia's demand for detailed contentions at this juncture is premature. Telcordia has not provided a final identification of the claims of the patents-in-suit it intends to assert against Cisco. Cisco has provided responses based on its knowledge of the facts and circumstances of the case at this early stage. As discovery and the case progress, Cisco will supplement its responses to Telcordia's interrogatories consistent with its obligations under the Rules.

*Interrogatory No. 7*

With respect to Interrogatory No. 7 seeking discovery of Cisco's non-infringement contentions in this action, Cisco maintains its objections as previously articulated. Here again, Telcordia's demand for detailed contentions at this juncture is premature. Telcordia has not provided a final identification of the claims of the patents-in-suit it intends to assert against Cisco. Telcordia has not provided a final identification of the products it intends to accuse of infringement. Indeed, notwithstanding Telcordia's interrogatory responses, Telcordia has not provided Cisco with any meaningful discovery of how it is construing or applying any of the claim terms in the patents-in-suit to Cisco's products. Without meaningful discovery of Telcordia's infringement allegations, Cisco cannot provide an identification of its non-infringement allegations. As discovery and

WEIL, GOTSHAL & MANGES LLP

John Williamson, Esq.
August 16, 2005
Page 4

the case progress, Cisco will supplement its responses to Telcordia's interrogatories consistent with its obligations under the Rules.

*Interrogatory No. 8*

With regard to Interrogatory No. 8, Cisco maintains its responses and objections as previously articulated. Interrogatory No. 8 seeks identification of "all opinions and analyses known by Cisco" that relate to non-infringement, including opinions or analyses of counsel, and documents and information related thereto. As we understand it, Telcordia's position is that Telcordia is entitled to discovery as to the existence of any opinions of counsel at this stage, if not to the substance of any such opinion. We disagree. In any incarnation, Telcordia's request that Cisco provide discovery as to opinions of counsel is premature. During the initial case management conference, the Court made clear that discovery as to opinions of counsel is stayed until Cisco elects whether or not to rely on any such opinion of counsel. Under the Court's Scheduling Order, it is clear that Telcordia is not entitled to discovery concerning the existence or substance of any opinions of counsel until that election has been made. Pursuant to that ruling, Cisco has already agreed to provide discovery as to opinions of counsel if and when appropriate.

*Interrogatory No. 10*

Telcordia's Interrogatory No. 10 seeks identification "of all networks in which Products-in-Suit have been installed or used since January 9, 1990," and seeks information falling into no fewer than 8 categories (corresponding to subparts (a) to (h)) for each of the identified networks. Cisco has objected to Interrogatory No. 10 as, *inter alia*, overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. As it stands, this interrogatory theoretically seeks identification of all networks on which Cisco's customers and other end users of which Cisco is not even aware have installed or used the accused products, both in the United States and abroad, over the last 15 years. Moreover, this interrogatory seeks information in the possession of third parties rather than Cisco.

*Interrogatory No. 12*

Telcordia's Interrogatory No. 12 seeks identification of "each product made, used, sold, offered for sale, imported, exported, leased, licensed, or distributed by Cisco between 1990 and the present that included a SONET physical layer interface," and seeks information falling into no fewer than 5 categories (corresponding to subparts (a) to (e)) for each of the identified products. Cisco stands by its objections to this interrogatory as previously articulated. That said, Cisco has agreed, in the context of Interrogatory No. 1 to identify those Cisco products that enable customers to transmit

WEIL, GOTSHAL & MANGES LLP

John Williamson, Esq.
August 16, 2005
Page 5

data over SONET, and to provide discovery sufficient to show the relevant functionality
of such products. We believe this response will provide Telcordia with the information
sought in Interrogatory No. 12 to the extent such information is in Cisco's possession. If,
upon review of Cisco's supplemental response to Interrogatory No. 1 and Cisco's
document production, you disagree, please explain what additional information you seek
and Cisco will consider your request.

\*    \*    \*

Your letter of August 11 also references your letter of June 15, 2005 in
which you raise certain questions about Cisco's responses and objections to Telcordia's
document requests.

*Request for Production Nos. 15, 26-31, 33-35, 37-39, 41, 53-55, 62, 64, 67-68, 78 and
83-87*

In your letter, you suggest that Cisco has improperly limited discovery to
"relevant functionality of the products Cisco understands to be accused of infringement."
We do not agree. The products accused of infringement in this case are complex and
multifunctional. Indeed, each of the products you have accused of infringement thus far
has broad-ranging functionality completely unrelated to any issues in this case. For each
accused product, only a small portion, if any, is relevant to your infringement allegations
or otherwise likely to lead to admissible evidence. Rather than tailor your discovery
requests to this relevant functionality, you seek broad-ranging discovery as to entire
accused platforms. As such, your requests are overbroad and unduly burdensome in the
extreme. For example, your Request No. 41 seeks "All documents and things relating to
any actual or potential joint development for any Cisco product." There is no theory
under which Telcordia would be entitled to all documents and things related to joint
development for *any* Cisco product. Such information is not relevant or reasonably
calculated to lead to the discovery of admissible evidence. Similarly, your Request No.
62 seeks "All documents and things that refer or relate to any potential or actual contract,
license or agreement involving Cisco and Telcordia." Here again, your request is
extremely overbroad in that it seeks discovery of potential contracts or agreements
completely unrelated to the technologies at issue in this case.

In sum, there is simply no basis for your request that we provide broad-
ranging discovery not related to the relevant technologies or accused functionalities in
this case. To the extent you disagree and feel that you are entitled to discovery beyond
that which we have already agreed to provide to Telcordia, please explain the relevance
of that discovery and why you are entitled to it.

SV1:\226040\02\4%#W02LDOC\58126.0048

WEIL, GOTSHAL & MANGES LLP

John Williamson, Esq.
August 16, 2005
Page 6

*Request for Production Nos. 17 to 25*

For the reasons discussed above in the context of Interrogatory No. 8, your Request for Production Nos. 17 to 25 are premature, and thus objectionable, to the extent they seek information concerning opinions of counsel. In the event Cisco chooses to rely on an opinion of counsel, Cisco will provide discovery related to such an opinion, consistent with its obligations under the Rules.

*Request for Production Nos. 33 to 36*

With regard to Request Nos. 33 to 36, you have requested that Cisco clarify that its response is not limited solely to testing, but also to documents related to evaluation, diagnosis or troubleshooting of products as requested. Subject to and without waiving its objections, Cisco will agree to produce non-privileged documents relating to the testing, *evaluation, diagnosis or troubleshooting* of the relevant functionality of the products it understands to be accused of infringement in this litigation.

*Request for Production Nos. 29 to 32*

You have requested that Cisco clarify that its response is not limited solely to design, but also to documents related to manufacture, configuration, structure, specifications, use or operation of products as requested. Subject to and without waiving its objections, Cisco will agree to produce non-privileged documents relating to the testing, *manufacture, configuration, structure, specifications, use or operation* of the relevant functionality of the products it understands to be accused of infringement in this litigation.

*Request for Production No. 57*

Request No. 57 seeks documents and things that "refer or relate to research or development relating to any invention, method, product or device described or shown in any of the Relevant Patents." Cisco has objected to this request as, *inter alia*, vague and ambiguous. Specifically, it is not clear to us what "research and development relating to any invention, method, product or device described or shown in any of the Relevant Patents" means. Does this mean documents or things in Cisco's possession, custody or control, referring or relating to Telcordia's (or Bellcore's) research and development relating to the Relevant Patents? Or does this request seek documents or things referring or relating to Cisco's research and development relating to the Relevant Patents? If the former, Cisco will agree to produce responsive documents if any exist. To the extent your request is aimed at the latter, the request is vague and only likely to provoke dispute.

WEIL, GOTSHAL & MANGES LLP

John Williamson, Esq.
August 16, 2005
Page 7

*Request for Production Nos. 58 to 61*

Request Nos. 58 to 61 seek working units for each version of Cisco products meeting certain broad criteria. Cisco has agreed to "make a sample of each commercially-available accused product available for purchase after Telcordia identifies the specific Cisco products it is accusing of infringement in this litigation." In your letter, you state that "Cisco is obligated to preserve and produce all products responsive to these requests regardless of whether the product is a 'commercially-available accused product.'" We disagree. To the extent Cisco has possession, custody or control of products that are not commercially available, these products are not relevant to this litigation. Cisco has already agreed to make available for purchase working units of products accused of infringement in this case, to the extent Cisco still has possession, custody or control of such working units. To the extent you view this commitment as somehow insufficient, please explain specifically the basis for your position that Telcordia is entitled to something more. In any event, please contact us to arrange for the purchase of working units of the products accused of infringement to the extent you wish to do so.

*Request for Production No. 63*

Request No. 63 seeks all documents or things that refer or relate to or comprising any record and/or index of documents that have been destroyed by Cisco. Cisco has objected to this request as, *inter alia*, overly broad and unduly burdensome, and vague and ambiguous. Cisco maintains these objections. On its face, this request seeks all documents *relating* to or *referring* to *any* document *ever* destroyed by Cisco. There is no theory under which such information is discoverable, let alone relevant. If Telcordia can appropriately narrow this request to seek information that is discoverable, Cisco will consider producing responsive documents subject to its objections.

*Request for Production No. 69*

Request No. 69 seeks all documents or things relating to any visit by any Telcordia employee or ex-employees to Cisco's facilities. Cisco has objected to this request as, *inter alia*, overly broad and unduly burdensome, and vague and ambiguous. Cisco maintains these objections. Telcordia's request is extremely overbroad. On its face, this request seeks all documents relating to *any* visit by *any* Telcordia employee or ex-employee, of which there are presumably thousands, *ever* to *any* of Cisco's hundreds of offices worldwide. For obvious reasons, it would be incredibly—indeed prohibitively--burdensome for Cisco to collect this information. Indeed, to the extent such documents are in Cisco's possession, custody or control at all, it would require an enormous investigation, at tremendous expense, to locate such documents. Such a burden is unjustified: there is no theory under which such information is discoverable, let alone

**WEIL, GOTSHAL & MANGES LLP**

John Williamson, Esq.
August 16, 2005
Page 8

relevant. If Telcordia can appropriately narrow this request to seek information that is discoverable, Cisco will consider producing responsive documents subject to its objections.

### Request for Production No. 85

Request No. 85 seeks all documents referring or relating to "licensing practices of any participants in worldwide market for data network technology." Cisco has objected to this request as, *inter alia*, overly broad, unduly burdensome, vague and ambiguous, and not relevant or reasonably-calculated to lead to discovery of admissible evidence. On its face, this request could be construed to cover all documents concerning licenses issued by or to other companies that sell networking technology. If so, the request is severely overbroad and burdensome. Please either clarify the scope of the request or appropriately narrow this request to seek information that is discoverable. Cisco will then consider producing responsive documents subject to its objections.

### Request for Production Nos. 86 and 88

Request No. 86 seeks all "valuations/royalty rate analyses that refer or relate to Cisco's intellectual property concerning data network technology, including valuations and royalty rate analyses for trademarks, patents, know-how, or trade secrets." Request No. 88 seeks all "valuations prepared by or for Cisco that refer or relate to its technologies or the business segments utilizing such technologies." Cisco has objected to these requests as, *inter alia*, overly broad, unduly burdensome, vague and ambiguous, and not relevant or reasonably-calculated to lead to discovery of admissible evidence. On their face, these requests call for all "valuations/royalty rate analyses" concerning *any* Cisco technology. As such, Telcordia's requests are utterly divorced from its infringement allegations in this case. Please either clarify the scope of these requests or appropriately narrow the requests to seek information that is discoverable. Cisco will then consider producing responsive documents subject to its objections.

### Request for Production Nos. 91 and 95

Request Nos. 91 and 95 seek documents sufficient to summarize Cisco's cost of capital, capital structure, costs of short/long term debt, internal rates of return or hurdle rates, and documents referring or relating to any authorization of or request for the spending of capital in connection with the manufacture, sale, or distribution of any Product-in-Suit. Cisco has objected to these requests as, *inter alia*, not limited in time, not relevant or reasonably calculated to lead to discovery of admissible evidence, overly broad, unduly burdensome, and vague and ambiguous. As an initial matter, we do not understand the relevance of this information to this to the issues in this case. Moreover, even to the extent the requested information were somehow relevant or discoverable,

WEIL, GOTSHAL & MANGES LLP

John Williamson, Esq.
August 16, 2005
Page 9

these requests are overbroad in that they are not limited in time or limited to the products actually accused of infringement in this suit. As discussed in detail above, it would be incredibly burdensome for Cisco to provide such information for all products identified in response to Interrogatory No. 1 when Telcordia has not even made the threshold determination of whether it is accusing these products of infringement. Please explain the relevance of the documents sought by these requests and appropriately narrow the requests to seek information that is discoverable. Cisco will then consider producing responsive documents subject to its objections.

*     *     *

We believe the above discussion addresses the issues raised in your August 11 and June 15 letters. To the extent Telcordia continues to have concerns as to any of the above, we look forward to discussing those concerns in the ongoing meet and confer process and hope that the parties will be able to resolve these disputes in a mutually-agreeable manner.

Very truly yours,

Sonal N. Mehta

# EXHIBIT F

Telcordia v. Cisco

12/5/2005

## Cisco's First Privilege Log

| # | Date | Document Type | Title | Author | Recipient(s) | Basis for Privilege | Description |
|---|------|---------------|-------|--------|--------------|---------------------|-------------|
| 1 | 30-Nov-94 | Email | Steve Jacobs: patents | J. Goodhue (Lightstream) | G. Fedorkow (Lightstream) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice and created in anticipation of litigation re: patent licensing. |
| 2 | 30-Jan-95 | Email | Tim Dwight: AF-SAA: atm950070, Comments on Circuit Emulation straw vote | G. Fedorkow (Lightstream) | A. Allea (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice and created in anticipation of litigation re: patent licensing. |
| 3 | 31-Jan-95 | Email | Re: Tim Dwight: AF-SAA: atm95-0070, Comments on Circuit Emulation straw vote | A. Allea (Cisco) | G. Fedorkow (Lightstream), D. Schelmann Esq. (Cisco), G. Swallow (Lightstream), T. Daly (Cisco); cc: J. Goodhue (Lightstream) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice and created in anticipation of litigation re: patent licensing. |
| 4 | 1-Feb-95 | Email | ATM/Bellcore Patent | R. Barr, Esq. | G. Fedorkow (Lightstream), A. Allea (Cisco); cc: D. Schelmann (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice and created in anticipation of litigation re: patent licensing. |
| 5 | 1-Feb-95 | Email | Re: bellcore/atm | A. Allea (Cisco) | R. Barr, Esq; cc: G. Swallow (Lightstream), J. Goodhue (Lightstream), D. Schelmann, Esq. (Cisco), G. Fedorkow. (Lightstream), L. Lang (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice and created in anticipation of litigation re: patent licensing. |

Telcordia v. Cisco

Cisco's Privilege Log

12/5/2005

| # | Date | Type | Subject | Author | Recipients | Privilege | Description |
|---|------|------|---------|--------|------------|-----------|-------------|
| 6 | 2-Feb-95 | Email | Re: bellcore/atm | R. Barr, Esq. | J7. Goodhue (Lightstream); cc: A. Alles (Cisco), G. Swallow (Lightstream), D. Scheinman Esq. (Cisco), G. Fedorkow (Lightstream), L. Lang (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice and created in anticipation of litigation re: patent licensing. |
| 7 | 2-Feb-95 | Email | Re: bellcore/atm | J. Goodhue (Lightstream) | A. Alles (Cisco), R. Barr, Esq.; cc: G. Swallow (Lightstream), D. Scheinman, Esq. (Cisco), G. Fedorkow (Lightstream), L. Lang (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice and created in anticipation of litigation re: patent licensing. |
| 8 | 2-Feb-95 | Email | Re: bellcore/atm | G. Fedorkow (Lightstream) | R. Barr, Esq.; cc: J. Goodhue (Lightstream), G. Swallow (Lightstream), A. Alles (Cisco), D. Scheinman Esq. (Cisco), L. Lang (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice and created in anticipation of litigation re: patent licensing. |
| 9 | 2-Feb-95 | Email | Re: ATM/Bellcore Patent | G. Fedorkow (Lightstream) | R. Barr, Esq.; cc: A. Alles (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice and created in anticipation of litigation re: patent licensing. |
| 10 | 2-Feb-95 | Email | Re: bellcore/atm | G. Swallow (Lightstream) | A. Alles (Cisco); cc: R. Barr, Esq., J. Goodhue (Lightstream), D. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice and created in anticipation of litigation re: |

Telcordia v. Cisco

Cisco's Privilege Log

12/5/2005

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | patent licensing. |
| 11 | 3-Feb-95 | Email | bellcore/atm | J. Goodhue (Lightstream) | Schelsman, Esq. (Cisco), G. Fedorkow (Lightstream), L. Lang (Cisco) | |
| | | | | | G. Fedorkow (Lightstream), R. Barr, Esq.; cc: A. Alles (Cisco), G. Swallow (Lightstream), D. Schelsman, Esq. (Cisco), L. Lang (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice and created in anticipation of litigation re: patent licensing. |
| 12 | 3-Feb-95 | Email | Re: bellcore/atm | J. Goodhue (Lightstream) | R. Barr, Esq.; cc: A. Alles (Cisco), G. Swallow (Lightstream), D. Schelsman, Esq. (Cisco), G. Fedorkow (Lightstream), L. Lang (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice and created in anticipation of litigation re: patent licensing. |
| 13 | 5-Feb-95 | Email | bellcore | R. Barr, Esq. | G. Fedorkow, G. Swallow, J. Goodhue, A. Alles (Lightstream) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice and created in anticipation of litigation re: patent licensing. |
| 14 | 6-Feb-95 | Email | Re: bellcore | J. Goodhue (Lightstream) | R. Barr, Esq.; cc: G. Swallow (Lightstream), A. Alles (Cisco), D. Schelsman, Esq. (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice and created in anticipation of litigation re: patent licensing. |
| 15 | 6-Feb-95 | Email | Re: bellcore | D. Schelsman (Cisco) | R. Barr, Esq., G. Fedorkow | Attorney Client / Work Product | Confidential communication relating to the rendering of |

Telcordia v. Cisco

Cisco's Privilege Log

12/5/2005

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | (Lightstream), G. Swallow (Lightstream), J. Goodhue (Lightstream), A. Alles (Cisco) | | legal advice and created in anticipation of litigation re: patent licensing. |
| 16 | 9-Feb-95 | Email | SRTS Patent | G. Fedorkow (Lightstream) | R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice and created in anticipation of litigation re: patent licensing. |
| 17 | 9-Feb-95 | Email | Re: CES straw vote | J. Goodhue (Lightstream) | A. Alles (Cisco); cc: G. Fedorkow (Lightstream), G. Swallow (Lightstream), D. Schulman, Esq. (Cisco), T. Daly (Cisco), L. Lang (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice and created in anticipation of litigation re: patent licensing. |
| 18 | 13-Feb-95 | Email | Re: bellcore | G. Fedorkow (Lightstream) | D. Schulman, Esq. (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice and created in anticipation of litigation re: patent licensing. |
| 19 | 13-Feb-95 | Email | Re: bellcore | D. Schulman, Esq. (Cisco) | G. Fedorkow (Lightstream); cc: R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice and created in anticipation of litigation re: patent licensing. |
| 20 | 14-Feb-95 | Email | | S. Lackey | G. Fedorkow (Lightstream) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice and created in anticipation of litigation re: patent licensing. |

4/15

Telcordia v. Cisco

Cisco's Privilege Log

12/5/2005

| | | | | | | |
|---|---|---|---|---|---|---|
| 21 | 14-Feb-95 | Email | Re: arts | G. Fedorkow (Lightstream) | S. Lackey | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice and created in anticipation of litigation re: patent licensing. |
| 22 | 14-Feb-95 | Email | Re: bellcore | G. Fedorkow (Lightstream) | D. Scheinman, Esq. (Cisco), R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice and created in anticipation of litigation re: patent licensing. |
| 23 | 16-Feb-95 | Email | bellcore | R. Barr, Esq. | J. Goodhue (Lightstream), D. Scheinman, Esq. (Cisco), G. Fedorkow (Lightstream), A. Altes (Cisco), T. Daly (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice and created in anticipation of litigation re: patent licensing. |
| 24 | 24-Feb-95 | Email | Re: bellcore | R. Barr, Esq. | G. Fedorkow (Lightstream) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice and created in anticipation of litigation re: patent licensing. |
| 25 | 24-Feb-95 | Email | Re: bellcore | G. Fedorkow (Lightstream) | R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice and created in anticipation of litigation re: patent licensing. |
| 26 | 24-Feb-95 | Email | Re: bellcore | G. Fedorkow (Lightstream) | R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice and created in anticipation of litigation re: patent licensing. |
| 27 | 24-Feb-95 | Email | Re: bellcore | R. Barr, Esq. | G. Fedorkow (Lightstream) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice and created in |

Telcordia v. Cisco

Cisco's Privilege Log

12/5/2005

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 28 | 5-Mar-95 | Email | bellcore | R. Barr, Esq. | G. Fedorkow (Lightstream), J. Goodhue (Lightstream), D. Schelman, Esq. (Cisco) | Attorney Client / Work Product | anticipation of litigation re: patent licensing. |
| 29 | 6-Mar-95 | Email | Re: bellcore | R. Barr, Esq. | J. Goodhue, G. Fedorkow (Lightstream) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice and created in anticipation of litigation re: patent licensing. |
| 30 | 6-Mar-95 | Email | Re: bellcore | J. Goodhue (Lightstream) | R. Barr, Esq., G. Fedorkow (Lightstream), D. Schelman (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice and created in anticipation of litigation re: patent licensing. |
| 31 | 6-Mar-95 | Email | sinfoloa@wellabs.com: SRTS Patent progress??? | G. Fedorkow (Lightstream) | R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice and created in anticipation of litigation re: patent licensing. |
| 32 | 6-Mar-95 | Email | Re: bellcore | J. Goodhue (Lightstream) | R. Barr, Esq, G. Fedorkow (Lightstream) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice and created in anticipation of litigation re: patent licensing. |
| 33 | 6-Mar-95 | Email | Re: bellcore | G. Fedorkow (Lightstream) | J. Goodhue (Lightstream); cc: R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice and created in anticipation of litigation re: patent licensing. |
| 34 | 6-Mar-95 | Email | Re: bellcore | R. Barr, Esq. | J. Goodhue (Lightstream); cc: G. Fedorkow | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice and created in |

Telcordia v. Cisco

12/5/2005

Cisco's Privilege Log

| 35 | 6-Mar-95 | Email | Re: bellcore correction | R. Barr, Esq. | J. Goodhue (Lightstream); cc: G. Fedorkow (Lightstream) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice and created in anticipation of litigation re: patent licensing. |
| 36 | 7-Mar-95 | Email | Re: bellcore correction | R. Barr, Esq. | J. Goodhue (Lightstream) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice and created in anticipation of litigation re: patent licensing. |
| 37 | 7-Mar-95 | Email | Re: bellcore | G. Fedorkow (Lightstream) | J. Goodhue (Lightstream); cc: R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice and created in anticipation of litigation re: patent licensing. |
| 38 | 8-Mar-95 | Email | Re: bellcore | J. Goodhue (Lightstream) | G. Fedorkow (Lightstream); cc: R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice and created in anticipation of litigation re: patent licensing. |
| 39 | 15-Mar-95 | Email | aris | G. Fedorkow (Lightstream) | A. Alles (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice and created in anticipation of litigation re: patent licensing. |
| 40 | 15-Mar-95 | Email | bellcore | R. Barr, Esq. | G. Fedorkow (Lightstream), J. Goodhue (Lightstream) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice and created in anticipation of litigation re: patent licensing. |
| 41 | 16-Mar-95 | Email | stoddos@tellabs.com: more on SRTS patent | G. Fedorkow (Lightstream) | R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice and created in anticipation of litigation re: |

Telcordia v. Cisco

Cisco's Privilege Log

12/5/2005

| 42 | 17-Mar-95 | Email | Re: stotolos@tellabs.com: more on SRTS patent | R. Barr, Esq. | G. Fedorkow (Lightstream) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice and created in anticipation of litigation re: patent licensing. |
| 43 | 28-Mar-95 | Email | patent gossip | G. Fedorkow (Lightstream) | R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice and created in anticipation of litigation re: patent licensing. |
| 44 | 28-Mar-95 | Email | Re: patent gossip | R. Barr, Esq. | G. Fedorkow (Lightstream) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice and created in anticipation of litigation re: patent licensing. |
| 45 | 29-Mar-95 | Email | SRTS patent; forecast needed | G. Fedorkow (Lightstream) | J. Goodhue (Lightstream), A. Alles (Cisco), L. Lang (Cisco), J. Unislejewski (Lightstream), littlewo; cc: D. Wade (Cisco); R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice and created in anticipation of litigation re: patent licensing. |
| 46 | 31-Mar-95 | Email | Re: SRTS patent; forecast needed | J. Goodhue (Lightstream) | G. Fedorkow, A. Alles, L. Lang, "jcov", "littlewo" D. Wade (Lightstream), R. Barr Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice and created in anticipation of litigation re: patent licensing. |
| 47 | 4-Apr-95 | Email | Re: FYI... Patent discussion on the ATM forum. | G. Fedorkow (Lightstream) | R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice and created in anticipation of litigation re: patent licensing. |

Telcordia v. Cisco

Cisco's Privilege Log

12/5/2005

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 48 | 5-Apr-95 | Email | Re: FYI... Patent discussion on the ATM forum. | G. Fedorkow (Lightstream) | R. Barr, Esq.; cc: J. Unlejewald (Lightstream), J. Goodhue (Lightstream) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice and created in anticipation of litigation re: patent licensing. |
| 49 | 7-Apr-95 | Email | patent analysis | G. Fedorkow (Lightstream) | S. Leckey | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice and created in anticipation of litigation re: patent licensing. |
| 50 | 7-Apr-95 | Email | Re: Robert Barr: patent analysis | S. Leckey (Lightstream) | G. Fedorkow (Lightstream) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice and created in anticipation of litigation re: patent licensing. |
| 51 | 10-Apr-95 | Email | Re: another patent question | R. Barr, Esq. | G. Fedorkow (Lightstream) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice and created in anticipation of litigation re: patent licensing. |
| 52 | 10-Apr-95 | Email | another patent question | G. Fedorkow (Lightstream) | R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice and created in anticipation of litigation re: patent licensing. |
| 53 | 10-Apr-95 | Email | Re: another patent question | G. Fedorkow (Lightstream) | R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice and created in anticipation of litigation re: patent licensing. |
| 54 | 16-Apr-95 | Email | sets patent status | R. Barr, Esq. | J. Goodhue, D. Wade, A. Allen, G. Fedorkow, (Lightstream) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice and created in anticipation of litigation re: patent licensing. |

Telcordia v. Cisco

Cisco's Privilege Log

12/5/2005

| 55 | 16-Apr-95 | Email | other patent topics | G. Fedorkow (Lightstream) | R. Barr, Esq., J. Goodhue (Lightstream); cc: D. Wade, G. Swallow (Lightstream) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice and created in anticipation of litigation re: patent licensing. |
| 56 | 21-Apr-95 | Email | Re: The second Bellcore Patent | R. Barr, Esq. | G. Fedorkow (Lightstream) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice and created in anticipation of litigation re: patent licensing. |
| 57 | 21-Apr-95 | Email | Robert Barr: Re: The second Bellcore Patent | G. Fedorkow (Lightstream) | T. Daly (Lightstream) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice and created in anticipation of litigation re: patent licensing. |
| 58 | 8-May-95 | Email | Re: bellcore | R. Barr, Esq. | G. Fedorkow (Lightstream) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice and created in anticipation of litigation re: patent licensing. |
| 59 | 23-May-95 | Email | Re: patents, of course | R. Barr, Esq. | G. Fedorkow (Lightstream), Also forwarded to A. Alles, J. Goodhue, G. Swallow (Lightstream) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice and created in anticipation of litigation re: patent licensing. |
| 60 | 23-May-95 | Email | Robert Barr: Re: patents, of course | G. Fedorkow (Cisco) | A. Alles (Cisco), J. Goodhue (Cisco), G. Swallow (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice and created in anticipation of litigation re: patent licensing. |
| 61 | 23-May-95 | Email | patents, of course | G. Fedorkow (Cisco) | R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice and created in anticipation of litigation re: patent licensing. |

Telcordia v. Cisco

Cisco's Privilege Log

12/5/2005

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 62 | 23-May-95 | Email | Re: Robert Barr: Re: patents, of course | A. Alles (Cisco) | G. Fedorkow (Cisco), J. Goodhue (Cisco), G. Swallow (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice and created in anticipation of litigation re: patent licensing. |
| 63 | 25-May-95 | Email | Re: patents, of course | R. Barr, Esq. | G. Fedorkow (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice and created in anticipation of litigation re: patent licensing. |
| 64 | 25-May-95 | Email | Re: patents, of course | G. Fedorkow (Cisco) | R. Barr, Esq.; cc T. Daly (Cisco), D. Wade (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice and created in anticipation of litigation re: patent licensing. |
| 65 | 12-Jun-95 | Email | Gary Muntz SRTS Improvement patents | G. Fedorkow (Cisco) | R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice and created in anticipation of litigation re: patent licensing. |
| 66 | 14-Jun-95 | Email | Re: patent issues at the forum | R. Barr, Esq. | G. Fedorkow (Lightstream), J. Goodhue (Lightstream); cc D. Sebastiann, Esq. (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice and created in anticipation of litigation re: patent licensing. |
| 67 | 15-Jun-95 | Email | Re: patent issue at the forum | G. Fedorkow (Lightstream) | R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice and created in anticipation of litigation re: patent licensing. |
| 68 | 19-Jul-95 | Email | Patent abstract | S. Jacobs (Cisco) | G. Fedorkow (Cisco) | Attorney Client | Confidential communication relating to the rendering of legal advice re: patent application. |

Telcordia v. Cisco

Cisco's Privilege Log

12/5/2005

| | | | | | | |
|---|---|---|---|---|---|---|
| 69 | 24-Nov-97 | Email | SRTS Patent research | G. Mintz (Cisco) | C. Barbas, Esq. + (unnamed person wal@n-m.com) (Cesari and McKenna LLP); cc: G. Fedorkow, S. Jacobs, I. Plunin (Cisco) | Attorney Client | Confidential communication relating to the rendering of legal advice re:   prosecution of patent application |
| 70 | 24-Nov-97 | Email | SRTS Patent research | G. Mintz (Cisco) | C. Barbas, Esq. + (unnamed person wal@n-m.com) (Cesari and McKenna LLP); cc: G. Fedorkow, S. Jacobs, I. Plunin (Cisco) | Attorney Client | Confidential communication relating to the rendering of legal advice re:   prosecution of patent application |
| 71 | 24-Nov-97 | Email | SRTS Patent research | G. Mintz (Cisco) | C. Barbas, Esq. + (unnamed person wal@n-m.com) (Cesari and McKenna LLP); cc: G. Fedorkow, S. Jacobs, I. Plunin (Cisco) | Attorney Client | Confidential communication relating to the rendering of legal advice re:   prosecution of patent application |
| 72 | 10-Mar-98 | Email | SRTS patent, your file 112025-0009 | G. Mintz (Cisco) | C. Barbas, Esq (Cesari and McKenna LLP) | Attorney Client | Confidential communication relating to the rendering of legal advice re:   prosecution of patent application |
| 73 | 11-Mar-98 | Email | RE: SRTS patent, your file 112025-0009 | C. Barbas, Esq (Cesari and McKenna LLP) | G. Mintz (Cisco) | Attorney Client | Confidential communication relating to the rendering of legal advice re:   prosecution of patent application |
| 74 | 12-Mar-98 | Email | transwitch | G. Fedorkow (Cisco) | R. Barr, Esq. (Cisco) | Attorney Client | Confidential communication relating to the rendering of legal advice re:   prosecution of patent application |

12/15

Telcordia v. Cisco

Cisco's Privilege Log

12/5/2005

| 75 | 12-Mar-98 | Email | Re: transwitch | R. Barr, Esq. (Cisco) | G. Federkow (Cisco) | Attorney Client | Confidential communication relating to the rendering of legal advice re:  prosecution of patent application |
| 76 | 12-Mar-98 | Email | Re: transwitch | R. Barr, Esq. (Cisco) | G. Federkow (Cisco) | Attorney Client | Confidential communication relating to the rendering of legal advice re:  prosecution of patent application |
| 77 | 12-Mar-98 | Email | transwitch | G. Federkow (Cisco) | R. Barr, Esq. (Cisco) | Attorney Client | Confidential communication relating to the rendering of legal advice re:  prosecution of patent application |
| 78 | 12-Mar-98 | Email | RE: SRTS patent, your file 112025-0009 | G. Muntz (Cisco) | C. Barbas, Esq. (Cesari and McKenna LLP) | Attorney Client | Confidential communication relating to the rendering of legal advice re:  prosecution of patent application |
| 79 | 13-Mar-98 | Email | Re: transwitch | G. Federkow (Cisco) | P. Hall (Cisco) | Attorney Client | Confidential communication relating to the rendering of legal advice re:  prosecution of patent application |
| 80 | 13-Mar-98 | Email | RE: SRTS patent, your file 112025-0009 | C. Barbas, Esq (Cesari and McKenna LLP) | G. Muntz (Cisco) | Attorney Client | Confidential communication relating to the rendering of legal advice re:  prosecution of patent application |
| 81 | 22-Apr-98 | Email | new patent | R. Barr, Esq. (Cisco) | G. Muntz (Cisco); cc C. Barbas, Esq. (Cesari and McKenna LLP) | Attorney Client | Confidential communication relating to the rendering of legal advice re:  prosecution of patent application. |
| 82 | 30-Apr-98 | Email | Analysis of Thompson patent | G. Muntz (Cisco) | C. Gagne, Esq., C. Barbas, Esq. (Cesari and McKenna LLP | Attorney Client | Confidential communication relating to the rendering of legal advice re:  prosecution of patent application. |
| 83 | 30-Apr-98 | Email | RE: Analysis of Thompson patent | G. Muntz (Cisco) | C. Gagne, Esq., C. Barbas, Esq. (Cesari and McKenna LLP | Attorney Client | Confidential communication relating to the rendering of legal advice re:  prosecution of patent application. |

Telcordia v. Cisco

Cisco's Privilege Log

12/5/2005

| 84 | 30-Apr-98 | Email | RE: Analysis of Thompson patent | G. Muntz (Cisco) | C. Gagne, Esq., C. Barbas, Esq. (Cesari and McKenna LLP) | Attorney Client | Confidential communication relating to the rendering of legal advice re: prosecution of patent application. |
| 85 | 30-Apr-98 | Email | RE: Analysis of Thompson patent | C. Gagne, Esq. (Cesari and McKenna LLP) | G. Muntz (Cisco) | Attorney Client | Confidential communication relating to the rendering of legal advice re: prosecution of patent application. |
| 86 | 30-Apr-98 | Email | Analysis of Thompson patent | G. Muntz (Cisco) | C. Gagne, Esq., C. Barbas, Esq. (Cesari and McKenna LLP) | Attorney Client | Confidential communication relating to the rendering of legal advice re: prosecution of patent application. |
| 87 | 1-May-98 | Email | RE: Analysis of Thompson patent | C. Gagne, Esq. (Cesari and McKenna LLP) | G. Muntz (Cisco) | Attorney Client | Confidential communication relating to the rendering of legal advice re: prosecution of patent application. |
| 88 | 1-May-98 | Email | Status | G. Muntz (Cisco) | D. Abe, I. Plauth (Cisco) | Attorney Client | Confidential communication relating to the rendering of legal advice re: prosecution of patent application |
| 89 | 4-May-98 | Email | RE: Analysis of Thompson patent | C. Gagne, Esq. (Cesari and McKenna LLP) | G. Muntz (Cisco) | Attorney Client | Confidential communication relating to the rendering of legal advice re: prosecution of patent application, attaching draft response to Official Action. |
| 90 | 4-Dec-98 | Email | Re: Allowance of Cisco 9C1 - Cont. of Inv. Dis. 19 | C. Gagne, Esq. (Cesari and McKenna) | G. Muntz (Cisco) | Attorney Client | Confidential communication relating to the rendering of legal advice re: prosecution of patent application. |
| 91 | 4-Dec-98 | Email | Re: Allowance of Cisco 9C1 - Cont. of Inv. Dis. 19 | G. Muntz (Cisco) | C. Gagne, Esq. (Cesari and McKenna) | Attorney Client | Confidential communication relating to the rendering of legal advice re: prosecution of patent application. |
| 92 | 6-Feb-02 | Email | SRTS Patents | D. Chinnaiah (Cisco) | D. Kabeli, Esq. (Baker Botts), cc: | Attorney Client | Confidential communication relating to the rendering of |

14/15

Telcordia v. Cisco

Cisco's Privilege Log

12/5/2005

| 93 | Email | 14-Nov-03 | RE: CPOL v.2.7.12 Feedback - ReqType:Team | G. Ellis (Cisco) | vipjain@cisco.com, K. Sanders, G. Muntz, J. Jayakum (Cisco) G. Muntz (Cisco) patent-team@cisco.com | Attorney-Client | legal advice and created in anticipation of litigation re: patent licensing. Confidential communication relating to the rendering of legal advice and created in anticipation of litigation re: patent licensing. |

15/15

# EXHIBIT G

Cisco v. Telcordia

Cisco's Second Privilege Log

4/28/2006

| 94 | 11/30/1994 | Email | J. Goodhue (Lightstream) | G. Fedorkow (Lightstream) | Attorney Client / Work Product | Confidential communication at the direction of counsel re: patent licensing. |
| 95 | 1/30/1995 | Email | G. Fedorkow (Lightstream) | A. Alles (Cisco) | Attorney Client / Work Product | Confidential communication requesting legal advice re: patent licensing. |
| 96 | 1/30/1995 | Email | A. Alles (Cisco) | R. Barr, Esq., cc: G. Swallow (Lightstream), J. Goodhue (Lightstream), D. Scheinman, Esq. (Cisco), G. Fedorkow (Lightstream), L. Lang (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 97 | 1/31/1995 | Email | A. Alles (Cisco) | G. Fedorkow (Lightstream), D. Scheinman, Esq. (Cisco), G. Swallow (Lightstream), T. Daly (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 98 | 2/1/1995 | Email | A. Alles (Cisco) | R. Barr, Esq., cc: G. Swallow (Lightstream), J. Goodhue (Lightstream), D. Scheinman, Esq. (Cisco), G. Fedorkow (Lightstream) L. Lang (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 99 | 2/1/1995 | Email | A. Alles (Cisco) | R. Barr, Esq., cc: G. Swallow (Lightstream), J. Goodhue (Lightstream), D. Scheinman, Esq. (Cisco), G. Fedorkow (Lightstream) L. Lang | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |

Cisco v. Telcordia

Cisco's Second Privilege Log

4/28/2006

| | | | (Cisco) | | | |
|---|---|---|---|---|---|---|
| 100 | 2/1/1995 | Email | A. Alles (Cisco) | R. Barr, Esq., cc: G. Swallow (Lightstream), J. Goodhue (Lightstream), D. Schelman, Esq. (Cisco), G. Federkow (Lightstream) L. Lang (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 101 | 2/1/1995 | Email | A. Alles (Cisco) | R. Barr, Esq., cc: G. Swallow (Lightstream), J. Goodhue (Lightstream), D. Schelman, Esq. (Cisco), G. Federkow (Lightstream) L. Lang (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 102 | 2/1/1995 | Email | A. Alles (Cisco) | R. Barr, Esq., cc: G. Swallow (Lightstream), J. Goodhue (Lightstream), D. Schelman, Esq. (Cisco), G. Federkow (Lightstream) L. Lang (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 103 | 2/1/1995 | Email | R. Barr, Esq. | A. Alles (Cisco), G. Federkow (Lightstream), cc: D. Scheinman, Esq. (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 104 | 2/2/1995 | Email | G. Federkow (Lightstream) | G. Swallow (Lightstream), A. Alles (Cisco) | Work Product | Redacted confidential communication made in anticipation of litigation and relating to the rendering of legal advice re: attorney advice re |

2 of 34

Cisco v. Telcordia

Cisco's Second Privilege Log

4/28/2006

| | | | | | | licensing. |
|---|---|---|---|---|---|---|
| 105 | 2/2/1995 | Email | G. Fedorkow (Lightstream) | A. Alles (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 106 | 2/2/1995 | Email | G. Fedorkow (Lightstream) | R. Barr, Esq., J. Goodhue (Lightstream), G. Swallow (Lightstream), A. Alles, D. Scheinman Esq., L. Lang (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 107 | 2/2/1995 | Email | J. Goodhue (Lightstream) | A. Alles (Cisco), R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 108 | 2/2/1995 | Email | R. Barr, Esq. | J. Goodhue (Lightstream), cc: A. Alles (Cisco), G. Swallow (Lightstream), D. Scheinman, Esq. (Cisco), G. Fedorkow (Lightstream), L. Lang (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 109 | 2/2/1995 | Email | G. Swallow (Lightstream) | A. Alles (Cisco), R. Barr, Esq., J. Goodhue (Lightstream), D. Scheinman, Esq. (Cisco), G. Fedorkow (Lightstream), L. Lang (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 110 | 2/3/1995 | Email | J. Goodhue (Lightstream) | G. Fedorkow (Lightstream), R. Barr, Esq., A. Alles (Cisco), G. Swallow (Lightstream), D. Scheinman, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |

Cisco v. Telcordia

4/28/2006

Cisco's Second Privilege Log

| # | Date | Type | From | To | Privilege | Description |
|---|------|------|------|-----|-----------|-------------|
| | | | | (Cisco), L. Lang (Cisco) | | |
| 111 | 2/3/1995 | Email | J. Goodhue (Lightstream) | R. Barr, Esq., cc: A. Alles (Cisco), G. Scheinman, Esq. (Cisco), G. Fedorkow (Lightstream), L. Lang (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 112 | 2/5/1995 | Email | R. Barr, Esq. | G. Fedorkow, G. Swallow, J. Goodhue (Lightstream), A. Alles (Lightstream) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 113 | 2/6/1995 | Email | J. Goodhue (Lightstream) | R. Barr, Esq., G. Swallow (Lightstream), A. Alles (Cisco), D. Scheinman (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 114 | 2/6/1995 | Email | D. Scheinman (Cisco) | R. Barr, Esq., G. Fedorkow, G. Swallow, J. Goodhue (Lightstream), A. Alles (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 115 | 2/9/1995 | Email | G. Fedorkow (Lightstream) | R. Barr, Esq. J. Goodhue (Lightstream), D. Scheinman, Esq. (Cisco) A. Alles (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 116 | 2/9/1995 | Email | J. Goodhue (Lightstream) | A. Alles (Cisco), G. Fedorkow, G. Swallow (Lightstream), D. Scheinman, Esq. (Cisco), T. Daly, L. Lang (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |

Cisco v. Telcordia

Cisco's Second Privilege Log

4/28/2006

| # | Date | Type | From | To | Attorney Client / Work Product | Description |
|---|------|------|------|-----|------|------|
| 117 | 2/13/1995 | Email | G. Fedorkow (Lightstream) | D. Scheinman, Esq. (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 118 | 2/13/1995 | Email | D. Scheinman, Esq. (Cisco) | G. Fedorkow (Lightstream), R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 119 | 2/14/1995 | Email | G. Fedorkow (Lightstream) | D. Scheinman, Esq. (Cisco), R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 120 | 2/14/1995 | Email | S. Lackey | G. Fedorkow (Lightstream) | Attorney Client / Work Product | Confidential communication under the direction of an attorney relating to the rendering of legal advice re: patent licensing. |
| 121 | 2/16/1995 | Email | R. Barr, Esq. | J. Goodhue (Lightstream), D. Scheinman, Esq. (Cisco), G. Fedorkow (Lightstream), A. Alles, T. Daly (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 122 | 2/24/1995 | Email | R. Barr, Esq. | G. Fedorkow (Lightstream) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 123 | 2/24/1995 | Email | R. Barr, Esq. | G. Fedorkow (Lightstream) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 124 | 2/24/1995 | Email | G. Fedorkow (Lightstream) | R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 125 | 2/24/1995 | Email | G. Fedorkow (Lightstream) | R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 126 | 3/5/1995 | Email | R. Barr, Esq. | G. Fedorkow (Lightstream), J. Goodhue (Lightstream), D. Scheinman, Esq. (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 127 | 3/6/1995 | Email | J. Goodhue (Lightstream) | R. Barr, Esq., G. Fedorkow (Lightstream) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |

Cisco v. Telcordia

4/28/2006

Cisco's Second Privilege Log

| | | | | | | |
|---|---|---|---|---|---|---|
| 128 | 3/6/1995 | Email | R. Barr, Esq. | J. Goodhue (Lightstream), G. Fedorkow (Lightstream) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 129 | 3/6/1995 | Email | G. Fedorkow | R. Barr | Attorney Client / Work Product | Redacted confidential communication relating to the rendering of legal advice re: patent licensing |
| 130 | 3/6/1995 | Email | G. Fedorkow (Lightstream) | J. Goodhue (Lightstream), R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 131 | 3/6/1995 | Email | R. Barr, Esq. | J. Goodhue (Lightstream), G. Fedorkow (Lightstream) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 132 | 3/6/1995 | Email | R. Barr, Esq. | J. Goodhue (Lightstream), G. Fedorkow (Lightstream) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 133 | 3/6/1995 | Email | J. Goodhue (Lightstream) | R. Barr, Esq.; G. Fedorkow (Lightstream); D. Scheinman, Esq. (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 134 | 3/6/1995 | Email | G. Fedorkow (Lightstream) | R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 135 | 3/7/1995 | Email | G. Fedorkow (Lightstream) | J. Goodhue (Lightstream); R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 136 | 3/7/1995 | Email | R. Barr, Esq. | J. Goodhue (Lightstream) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 137 | 3/7/1995 | Email | G. Fedorkow (Lightstream) | J. Goodhue (Lightstream), R. Barr, Esq., G. Fedorkow (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |

Cisco v. Telcordia

Cisco's Second Privilege Log

4/28/2006

| | | | | | | |
|---|---|---|---|---|---|---|
| 138 | 3/7/1995 | Email | J. Goodhue (Lightstream) | G. Fedorkow (Cisco), R. Barr, Esq., G. Fedorkow (Lightstream) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 139 | 3/8/1995 | Email | J. Goodhue (Lightstream) | G. Fedorkow (Lightstream), R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 140 | 3/14/1995 | Draft Agreement | R. Barr, Esq. | | Attorney Client / Work Product | Redacted confidential attorney notes re patent license agreement. |
| 141 | 3/15/1995 | Email | R. Barr, Esq. | G. Fedorkow (Lightstream), J. Goodhue (Lightstream) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 142 | 3/15/1995 | Email | G. Fedorkow (Lightstream) | A. Alles (Cisco), cc: J. Goodhue (Lightstream), A. Alles (Cisco), G. Swallow (Lightstream), D. Scheiman, Esq., L. Lang (Lightstream). | Attorney Client / Work Product | Email summarizing confidential communications with R. Barr, Esq, relating to the rendering of legal advice in anticipation of litigation re: patent licensing. |
| 143 | 3/16/1995 | Email | G. Fedorkow | R. Barr, Esq. | Attorney Client / Work Product | Redacted confidential communication relating to the rendering of legal advice re: patent licensing |
| 144 | 3/16/1995 | Email | G. Fedorkow (Lightstream) | R. Barr, Esq. | Attorney Client / Work Product | Redacted Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 145 | 3/17/1995 | Email | R. Barr, Esq. | G. Fedorkow (Lightstream) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 146 | 3/22/1995 | Fax / Email | G. Fedorkow (Lightstream) | R. Barr | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 147 | 3/27/1995 | Email | G. Fedorkow (Cisco) | R. Barr, Esq, G. Fedorkow (Lightstream), A. Alles (Lightstream) | Attorney Client / Work Product. | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 148 | 3/28/1995 | Email | G. Fedorkow (Lightstream) | R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |

Cisco v. Telcordia

4/28/2006

Cisco's Second Privilege Log

| | | | | | | |
|---|---|---|---|---|---|---|
| 149 | 3/28/1995 | Email | G. Fedorkow | R. Barr, Esq. | Attorney Client / Work Product | Redacted confidential communication related to the rendering of legal advice re: patent licensing |
| 150 | 3/28/1995 | Email | R. Barr, Esq. | G. Fedorkow (Lightstream) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: SRTS and ATM over SONET licensing. |
| 151 | 3/28/1995 | Email | G. Fedorkow (Cisco) | R. Barr, Esq., G. Fedorkow (Lightstream) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 152 | 3/29/1995 | Email | G. Fedorkow | J. Goodhue (Lightstream), A. Alles (Lightstream), L. Lang (Lightstream), J. Uniejewski, (Lightstream), "littlewo", D. Wade (Lightstream) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 153 | 3/29/1995 | Email | G. Fedorkow (Lightstream) | R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 154 | 3/31/1995 | Email | J. Goodhue (Lightstream) | G. Fedorkow, A. Alles, L. Lang, "joea", "littlewo" D. Wade (Lightstream), R. Barr Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 155 | 3/31/1995 | Email | J. Goodhue (Lightstream) | R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 156 | 4/4/1995 | Email | G. Fedorkow (Lightstream) | R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 157 | 4/4/1995 | Email | G. Fedorkow (Cisco) | R. Barr, Esq., G. Fedorkow (Lightstream) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 158 | 4/5/1995 | Email | G. Fedorkow (Lightstream) | R. Barr, Esq., J. Uniejewski, | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |

| No. | Date | Type | Author | Recipient | Privilege | Description |
|---|---|---|---|---|---|---|
| 159 | 4/6/1995 | Email | R. Barr, Esq., | G. Federkow (Cisco) (Lightstream) J. Goodhue (Lightstream) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 160 | 4/7/1995 | Email | R. Barr, Esq. | G. Federkow (Lightstream) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 161 | 4/7/1995 | Email | R. Barr, Esq. | G. Federkow (Lightstream) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 162 | 4/7/1995 | Email | R. Barr, Esq. | G. Federkow (Lightstream) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 163 | 4/7/1995 | Email | R. Barr, Esq. | G. Federkow (Lightstream) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 164 | 4/7/1995 | Email | G. Federkow (Lightstream) | S. Lackey (Lightstream) | Attorney Client / Work Product | Email relaying confidential communication relating to the rendering of legal advice re: patent licensing from R. Barr, Esq. |
| 165 | 4/7/1995 | Email | S. Lackey (Lightstream) | G. Federkow (Lightstream) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 166 | 4/10/1995 | Email | G. Federkow (Lightstream) | R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 167 | 4/10/1995 | Email | R. Barr, Esq. | G. Federkow (Lightstream) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 168 | 4/10/1995 | Email | G. Federkow (Lightstream) | R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 169 | 4/10/1995 | Email | G. Federkow (Cisco) | R. Barr, Esq., D. Wade (Lightstream), J. Goodhue (Lightstream), G. Federkow (Lightstream), S. Jacobs (Lightstream), G. Mintz | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |

Cisco v. Telcordia

4/28/2006

Cisco's Second Privilege Log

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | (Lightstream), S. Wallow (Lightstream) | | |
| 170 | 4/10/1995 | Email | G. Fedorkow (Cisco) | J. Goodhue (Lightstream), D. Wade (Lightstream), R. Barr, Esq., G. Fedorkow (Lightstream), S. Jacobs (Lightstream), G. Muntz (Lightstream), G. Swallow (Lightstream) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 171 | 4/10/1995 | Email | G. Fedorkow (Cisco) | R. Barr, Esq, G. Fedorkow (Lightstream) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 172 | 4/10/1995 | Email | G. Fedorkow (Cisco) | R. Barr, Esq., G. Fedorkow (Lightstream) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 173 | 4/13/1995 | Email | G. Fedorkow (Cisco) | R. Barr, Esq., J. Goodhue (Lightstream), D. Wade (Lightstream) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 174 | 4/13/1995 | Email | G. Fedorkow (Lightstream) | R. Barr, Esq, cc: J. Goodhue (Lightstream), D. Wade (Lightstream) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 175 | 4/16/1995 | Email | G. Fedorkow | R. Barr, Esq., J. Goodhue (Lightstream), D. Wade (Lightstream), A. Altes (Lightstream) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 176 | 4/16/1995 | Email | G. Fedorkow (Lightstream) | R. Barr, Esq., J. Goodhue (Lightstream), D. Wade, G. Swallow (Lightstream) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: 306 patent |
| 177 | 4/16/1995 | Email | G. Fedorkow (Cisco) | R. Barr, Esq., J. Goodhue (Lightstream), D. Wade (Lightstream), | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |

Cisco v. Telcordia

Cisco's Second Privilege Log

4/28/2006

| # | | | | | | |
|---|---|---|---|---|---|---|
| | | | | G. Fedorkow (Lightstream), G. Swallow (Lightstream) | | |
| 178 | 4/20/1995 | Email | G. Fedorkow (Cisco) | R. Barr, Esq., G. Fedorkow (Lightstream) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 179 | 4/21/1995 | Email | R. Barr, Esq. | G. Fedorkow (Lightstream) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 180 | 4/21/1995 | Email | G. Fedorkow (Lightstream) | T. Daly (Lightstream) cc: G. Fedorkow (Lightstream) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing |
| 181 | 5/1/1995 | Email | G. Fedorkow (Cisco) | R. Barr, Esq., G. Fedorkow (Lightstream) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 182 | 5/3/1995 | Email | D. Parinacci | F. Marshall, Esq. (Cisco), patent-council@cisco, parent@cisco | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 183 | 5/3/1995 | Email | F. Marshall, Esq. (Cisco) | patent-council@cisco, parent@cisco | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 184 | 5/3/1995 | Email | D. Scheinman, Esq. (Cisco) | R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 185 | 5/8/1995 | Email | R. Barr, Esq. | G. Fedorkow (Lightstream) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 186 | 5/8/1995 | Email | G. Fedorkow (Cisco) | R. Barr, Esq., G. Fedorkow (Lightstream) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 187 | 5/23/1995 | Email | R. Barr, Esq. | G. Fedorkow (Cisco), A. Alles (Cisco), J. Goodhue (Cisco), G. Swallow (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |

Cisco's Second Privilege Log

| | | | | | |
|---|---|---|---|---|---|
| 188 | 5/23/1995 | Email | R. Barr, Esq. | G. Federkow (Cisco), A. Alles (Cisco), J. Goodhue (Cisco), G. Swallow (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 189 | 5/23/1995 | Email | R. Barr, Esq. | G. Federkow (Cisco), A. Alles (Cisco), J. Goodhue (Cisco), G. Swallow (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 190 | 5/23/1995 | Email | R. Barr, Esq. | G. Federkow (Cisco), A. Alles (Cisco), J. Goodhue (Cisco), G. Swallow (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 191 | 5/23/1995 | Email | G. Federkow (Cisco) | R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 192 | 5/23/1995 | Email | G. Federkow (Cisco) | A. Alles (Cisco), J. Goodhue (Lightstream), G. Swallow (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 193 | 5/23/1995 | Email | R. Barr, Esq. | G. Federkow (Lightstream), A. Alles (Cisco), J. Goodhue (Lightstream), G. Swallow (Lightstream) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 194 | 5/23/1995 | Email | A. Alles (Cisco) | G. Federkow (Lightstream), J. Goodhue (Lightstream), G. Swallow (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 195 | 5/23/1995 | Email | G. Federkow (Lightstream) | R. Barr, Esq., G. Federkow (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 196 | 5/25/1995 | Email | G. Federkow (Cisco) | R. Barr, Esq., T. Daly (Cisco), D. Wade (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re:patent licensing |
| 197 | 5/25/1995 | Email | R. Barr, Esq. | G. Federkow (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |

Cisco v. Telcordia

Cisco's Second Privilege Log

4/28/2006

| # | Date | Type | From | To | Privilege | Description |
|---|---|---|---|---|---|---|
| 198 | 5/25/1995 | Email | G. Fedorkow (Lightstream) | R. Barr, Esq., G. Fedorkow (Cisco), T. Daly (Cisco), D. Wade (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 199 | 5/31/1995 | Email | D. Scheinman, Esq. (Cisco) | R. Barr, Esq., J. Goodhue (Lightstream), P. Lazay (Lightstream) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 200 | 6/12/1995 | Email | G. Fedorkow (Cisco) | R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent applications. |
| 201 | 6/12/1995 | Email | G. Fedorkow (Cisco) | R. Barr, Esq., G. Fedorkow (Lightstream) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 202 | 6/14/1995 | Email | R. Barr, Esq. | G. Fedorkow (Lightstream), J. Goodhue (Lightstream), D. Scheinman, Esq. (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 203 | 6/15/1995 | Email | G. Fedorkow (Lightstream) | R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 204 | 6/15/1995 | Email | G. Fedorkow (Lightstream) | R. Barr, Esq., G. Fedorkow (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 205 | 6/26/1995 | Email | G. Muntz (Lightstream) | D. Abe (Cisco), Plannin (Cisco), G. Muntz (Cisco) | Attorney Client | Redacted confidential document relating to the rendering of legal advice re: patent prosecution |
| 206 | 6/30/1995 | Email | G. Swallow (Cisco) | R. Barr, Esq., G. Swallow (Cisco), G. Muntz (Cisco) | Attorney Client | Confidential communication relating to the rendering of legal advice re: patent prosecution. |
| 207 | 7/5/1995 | Email | G. Muntz (Lightstream) | B. Eggers (Cisco), G. Muntz (Cisco) | Attorney Client | Confidential communication relating to the rendering of legal advice re: patent prosecution. |
| 208 | 7/6/1995 | Email | R. Barr, Esq. | G. Swallow (Cisco), G. Muntz (Cisco), C. Barbus, Esq.(Cesari and | Attorney Client | Confidential communication relating to the rendering of legal advice re: patent prosecution. |

13 of 34

Cisco v. Telcordia

Cisco's Second Privilege Log

4/28/2006

| | Date | Type | Author | Recipients (... McKenna LLP) | Privilege | Description |
|---|---|---|---|---|---|---|
| 209 | 7/6/1995 | Email | D. Scheinman, Esq. (Cisco) | B. Eggers (Cisco), G. Muntz (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 210 | 7/18/1995 | Email | G. Swallow (Lightstream) | R. Barr, Esq., G. Swallow (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 211 | 7/19/1995 | Email | S. Jacobs (Cisco) | G. Fedorkow (Cisco) | Attorney Client | Confidential communication relating to the rendering of legal advice re: patent application |
| 212 | 9/11/1995 | Email | G. Muntz (Lightstream) | D. Abe (Cisco), J. Pfanin (Cisco), G. Muntz (Cisco) | Attorney Client | Redacted confidential document relating to the rendering of legal advice re: patent prosecution |
| 213 | 10/2/1995 | | | | Attorney Client | Draft patent application |
| 214 | 10/23/1995 | Email | G. Muntz (Lightstream) | D. Abe (Cisco), J. Pfanin (Cisco), G. Muntz (Cisco) | Attorney Client | Redacted confidential document relating to the rendering of legal advice re: patent prosecution |
| 215 | 10/30/1995 | Email | G. Muntz (Lightstream) | G.Swallow (Cisco), G. Muntz (Cisco) | Attorney Client | Confidential communication relating to the rendering of legal advice re: patent prosecution. |
| 216 | 11/17/1995 | Email | G. Muntz (Cisco) | Michael Verga, Esq. (Cesari and McKenna LLP), G. Swallow (Cisco), G. Muntz (Cisco) | Attorney Client | Confidential communication relating to the rendering of legal advice re: patent prosecution. |
| 217 | 9/28/1996 | Email | S. Phillips, Esq. (Cisco) | D. Scheinman, Esq. (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 218 | 11/7/1996 | Email | D. Abe (Cisco) | F. Marshall, Esq. (Cisco), R. Edmond (Cisco), J. Goodhue (Cisco), M. Furman (Cisco), M. Stoecki (Cisco), R. Barr, Esq. | Attorney Client | Confidential communication relating to the rendering of legal advice re: patent prosecution. |

Cisco v. Telcordia

Cisco's Second Privilege Log

4/28/2006

| 219 | 3/26/1997 | Email | D. Hughes, Esq. (Cisco) | R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 220 | 10/9/1997 | Email | G. Muntz (Cisco) | G. Federkow (Cisco) | Attorney Client | Confidential communication relating to the rendering of legal advice re: patent prosecution. |
| 221 | 10/24/1997 | | G. Federkow (Cisco) | | Attorney Client | Confidential communication prepared at the direction of counsel relating to the rendering of legal advice re: prosecution of patent application |
| 222 | 11/4/1997 | Email | G. Federkow (Cisco) | | Attorney Client | Confidential communication relating to the rendering of legal advice re: prosecution of patent application |
| 223 | 11/21/1997 | Email | G. Muntz (Cisco) | C. Barbas, Esq. (Cesari and McKenna LLP) + (unnamed person wal@c-m.com) (Cesari and McKenna LLP), G. Federkow (Cisco), S. Jacobs (Cisco), J. Planin (Cisco) | Attorney Client | Confidential communication relating to the rendering of legal advice re: patent prosecution. |
| 224 | 11/21/1997 | Email | G. Muntz (Cisco) | C. Barbas, Esq. (Cesari and McKenna LLP) + (unnamed person wal@c-m.com) (Cesari and McKenna LLP), G. Federkow (Cisco), S. Jacobs (Cisco), J. Planin (Cisco) | Attorney Client | Confidential communication relating to the rendering of legal advice re: patent prosecution. |
| 225 | 11/24/1997 | Email | G. Muntz (Cisco) | C. Barbas, Esq. (Cesari and McKenna LLP) + (unnamed person wal@c-m.com) (Cesari and McKenna LLP), G. Federkow (Cisco), S. Jacobs (Cisco), J. | Attorney Client | Confidential communication relating to the rendering of legal advice re: patent prosecution. |

Cisco v. Telcordia

Cisco's Second Privilege Log

4/28/2006

| | | | | | Planin (Cisco) | |
|---|---|---|---|---|---|---|
| 226 | 11/24/1997 | Email | G. Muntz (Lightstream) | S. Jacobs (Cisco), G. Muntz (Cisco) | Attorney Client | Confidential communication relating to the rendering of legal advice re: patent prosecution. |
| 227 | 11/24/1997 | Email | G. Muntz (Lightstream) | C. Barbas, Esq. (Cesari and McKenna LLP), (unnamed person wal@c-m.com) (Cesari and McKenna LLP), G. Federkow (Cisco), S. Jacobs (Cisco), J. Planin (Cisco), G. Muntz (Cisco) | Attorney Client | Confidential communication relating to the rendering of legal advice re: patent prosecution. |
| 228 | 11/24/1997 | Email | G. Muntz (Cisco) | C. Barbas, Esq. (Cesari and McKenna LLP) + (unnamed person wal@c-m.com) (Cesari and McKenna LLP), G. Federkow (Cisco), S. Jacobs (Cisco), J. Planin (Cisco) | Attorney Client | Confidential communication relating to the rendering of legal advice re: prosecution of patent application |
| 229 | 11/24/1997 | Email | S. Jacobs (Cisco) | G. Muntz (Cisco) | Attorney Client | Confidential communication relating to the rendering of legal advice re: patent prosecution. |
| 230 | 11/24/1997 | Email | G. Muntz (Cisco) | S. Jacobs (Cisco) | Attorney Client | Confidential communication relating to the rendering of legal advice re: patent prosecution. |
| 231 | 3/12/1998 | Email | G. Federkow (Lightstream) | R. Barr, Esq., G. Federkow (Cisco) | Attorney Client | Confidential communication relating to the rendering of legal advice re: prosecution of patent application |
| 232 | 4/6/1998 | Email | D. Scheinman, Esq. (Cisco) | R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 233 | 5/5/1998 | Email | D. Scheinman, Esq. (Cisco) | R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |

4/28/2006

Cisco v. Telcordia

Cisco's Second Privilege Log

| | | | | | |
|---|---|---|---|---|---|
| 234 | 5/20/1998 | Email | R. Barr, Esq. | S. MacDonald (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 235 | 5/29/1998 | Email | J. Kipnis, Esq. | R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 236 | 5/29/1998 | Email | J. Kipnis, Esq. | R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 237 | 5/29/1998 | Email | R. Barr, Esq. | D. Hughes, Esq. (Cisco), pjain@cisco | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 238 | 5/31/1998 | Email | D. Hughes, Esq. (Cisco) | R. Barr, Esq., pjain@cisco | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 239 | 5/31/1998 | Email | R. Barr, Esq. | D. Hughes, Esq. (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 240 | 5/31/1998 | Email | R. Barr, Esq. | D. Hughes, Esq. (Cisco), S. Cross (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 241 | 5/31/1998 | Email | R. Barr, Esq. | J. Kipnis, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 242 | 5/31/1998 | Email | R. Barr, Esq. | D. Hughes, Esq. (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 243 | 6/2/1998 | Email | D. Scheinman, Esq. (Cisco) | S. MacDonald (Cisco), Charlie G. (Cisco), Sandy C. (Cisco), R. Barr, Esq., J. Shantz (Cisco), susmith@cisco | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 244 | 6/2/1998 | Email | S. MacDonald (Cisco) | Charlie G. (Cisco), D. Scheinman, Esq. (Cisco), Sandy C. (Cisco), R. Barr, Esq., J. Shantz (Cisco), susmith@cisco | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |

Cisco v. Telcordia

4/28/2006

Cisco's Second Privilege Log

| | | | | | |
|---|---|---|---|---|---|
| 245 | 6/2/1998 | Email | R. Barr, Esq. | | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 246 | 6/3/1998 | Email | J. Kipnis, Esq. | R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 247 | 6/3/1998 | Email | A. Gupta (Cisco) | D. Hughes, Esq. (Cisco), R. Barr, Esq., msosa@cisco. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 248 | 6/3/1998 | Email | J. Kipnis, Esq. | R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 249 | 6/3/1998 | Email | D. Hughes, Esq. (Cisco) | R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 250 | 6/3/1998 | Email | J. Kipnis, Esq. | R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 251 | 6/3/1998 | Email | R. Barr, Esq. | J. Kipnis, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 252 | 6/9/1998 | Email | J. Kipnis, Esq. | R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 253 | 7/1/1998 | Email | S. MacDonald (Cisco) (Cisco) | R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 254 | 7/1/1998 | Email | R. Barr, Esq. | S. MacDonald (Cisco) (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 255 | 7/31/1998 | Email | S. MacDonald (Cisco) (Cisco) | R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 256 | 7/31/1998 | Email | R. Barr, Esq. | S. MacDonald (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 257 | 8/31/1998 | Email | J. Kipnis, Esq. | S. MacDonald (Cisco), R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 258 | 10/7/1998 | Email | S. MacDonald (Cisco) | R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |

Cisco v. Telcordia

Cisco's Second Privilege Log

4/28/2006

| | | | | | | |
|---|---|---|---|---|---|---|
| 259 | 10/11/1998 | Email | R. Barr, Esq. | S. MacDonald (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 260 | 10/12/1998 | Email | J. Kipnis, Esq. | R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 261 | 10/14/1998 | Email | M. Chambliss, Esq. (Cisco) | R. Barr, Esq., M. Chambliss, Esq., (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 262 | 10/14/1998 | Document | R. Barr | | Attorney Client | Draft agreement between Cisco and Bellcore |
| 263 | 10/15/1998 | Document | R. Barr | | Attorney Client | Draft agreement between Cisco and Bellcore |
| 264 | 10/16/1998 | Letter | R. Barr | | Attorney Client | Draft letter from C. Giancarlo (Cisco) to S. Ahuja (Bellcore) relating to Memorandum of Understanding. |
| 265 | 10/17/1998 | Email | S. MacDonald (Cisco) | R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 266 | 10/17/1998 | Email | S. MacDonald (Cisco) | R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 267 | 2/12/1999 | Email | D. Cheriton (Cisco) | R. Barr, Esq., deering@cisco | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 268 | 2/12/1999 | Email | R. Barr, Esq. | D. Scheinman, Esq. (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 269 | 2/16/1999 | Email | C. Marchese, Esq (Fish & Richardson). | R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 270 | 2/16/1999 | Email | R. Barr, Esq. | D. Cheriton (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 271 | 2/16/1999 | Email | R. Barr, Esq. | C. Marchese, Esq (Fish & Richardson). | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 272 | 2/23/1999 | Email | R. Barr, Esq. | mrr@cisco | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |

4/28/2006

Cisco's Second Privilege Log

| 273 | 2/23/1999 | Email | R. Barr, Esq. | nfinn@cisco, M. Fine (Cisco), S. Gai (Cisco), kzm@cisco, edsall@cisco | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 274 | 4/27/1999 | Email | D. Scheinman, Esq. (Cisco) | C. Dobrec (Cisco), C. Giancarlo (Cisco), kjkenned@cisco.coon, M. Chambers, Esq. (Cisco), D. Listwin (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 275 | 4/28/1999 | Email | C. Giancarlo (Cisco) | D. Scheinman, Esq. (Cisco), C. Dobrec, K (Cisco), kjkenned@cisco, M. Chambers, Esq. (Cisco), Sandy C. (Cisco), D. Listwin (Cisco), R. Barr, Esq., S. Leonard (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 276 | 7/9/1999 | Email | S. MacDonald (Cisco) | D. Scheinman, Esq. (Cisco), R. Barr, Esq., Sandy C. (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 277 | 10/5/1999 | Email | V. Dang, Esq. (Cisco) | J. Kipnis, Esq., R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 278 | 10/5/1999 | Email | J. Kipnis, Esq. | R. Barr, Esq., V. Dang, Esq. (Cisco), M. Chambliss, Esq. (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 279 | 10/5/1999 | Email | V. Dang, Esq. (Cisco) | J. Kipnis, Esq., R. Barr, Esq., M. Chambliss, Esq. (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 280 | 10/5/1999 | Email | J. Kipnis, Esq. | V. Dang, Esq. (Cisco), R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |

Cisco v. Telcordia

Cisco's Second Privilege Log

4/28/2006

| | Date | | Author | Recipients | Privilege | Description |
|---|---|---|---|---|---|---|
| 281 | 10/6/1999 | Email | M. Chambliss, Esq. (Cisco) | J. Kipnis, Esq., V. Dang, Esq. (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 282 | 10/6/1999 | Email | M. Chambliss, Esq. (Cisco) | V. Dang, Esq. (Cisco), J. Kipnis, Esq., R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 283 | 10/6/1999 | Email | V. Dang, Esq. (Cisco) | R. Barr, Esq., J. Kipnis, Esq., M. Chambliss, Esq. (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 284 | 10/6/1999 | Email | J. Kipnis, Esq. | V. Dang, Esq. (Cisco), M. Chambliss, Esq. (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 285 | 10/6/1999 | Email | R. Barr, Esq. | J. Kipnis, Esq., V. Dang, Esq. (Cisco), M. Chambliss, Esq. (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 286 | 10/7/1999 | Email | V. Dang, Esq. (Cisco) | M. Chambliss, Esq. (Cisco), J. Kipnis, Esq., R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 287 | 5/31/2000 | Email | S. Lester, Esq. (Brobeck) | V. Dang, Esq. (Cisco), R. Barr, Esq. | Attorney Client | Confidential communication relating to the rendering of legal advice re: Asset Purchase Agreement |
| 288 | 5/31/2000 | Email | V. Dang, Esq. (Cisco) | R. Barr, Esq. | Attorney Client | Confidential communication relating to the rendering of legal advice re: Asset Purchase Agreement |
| 289 | 7/10/2000 | Email | J. Naumann | R. Barr, Esq., sks@cisco, meir@hynex | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 290 | 7/17/2000 | Email | M. Schreiber | R. Barr, Esq., jnaumann@cisco, M. Roth, J. Sarusi | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 291 | 1/7/2001 | Email | B. Showalter, Esq. (Baker Botts) | R. Barr, Esq., S. Hoffman, Esq. (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 292 | 8/22/2001 | Email | R. Barr, Esq. | F. Baker (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |

Cisco v. Telcordia

Cisco's Second Privilege Log

4/28/2006

| | | | | | |
|---|---|---|---|---|---|
| 293 | 8/22/2001 | Email | F. Baker | R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 294 | 9/13/2001 | Email | R. Barr, Esq. | M. Chandler, Esq, (Cisco), V. Dang, Esq. (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 295 | 9/13/2001 | Email | R. Barr, Esq. | J. Kipnis, Esq, B. Showalter, Esq, (Baker Botts) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 296 | 9/13/2001 | Email | V. Dang, Esq. (Cisco) | R. Barr, Esq., M. Chandler, Esq, (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 297 | 9/13/2001 | Email | J. Kipnis, Esq. | R. Barr, Esq., B. Showalter, Esq, (Baker Botts) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 298 | 9/14/2001 | Email | R. Barr, Esq. | S. Hoffman, Esq. (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 299 | 9/14/2001 | Email | R. Barr, Esq. | M. Chambliss, Esq. (Cisco), M. Thomas (Cisco), S. Hoffman, Esq. (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 300 | 9/14/2001 | Email | S. Hoffman, Esq. (Cisco) | R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 301 | 9/14/2001 | Email | M. Chambliss, Esq. (Cisco) | G. Ohana, Esq. (Cisco), F. Chan (Cisco), R. Barr, Esq., S. Hoffman, Esq, (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 302 | 9/14/2001 | Email | S. Hoffman, Esq. (Cisco) | F. Chan (Cisco), R. Barr, Esq., G. Ohana, Esq, (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 303 | 9/14/2001 | Email | G. Ohana, Esq. (Cisco) | F. Chan (Cisco), R. Barr, Esq., M. Chambliss, Esq. (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |

22 of 34

Cisco v. Telcordia

4/28/2006

Cisco's Second Privilege Log

| | | | | | | |
|---|---|---|---|---|---|---|
| 304 | 9/14/2001 | Email | M. Chambliss, Esq. (Cisco) | M. Thomas (Cisco), R. Barr, Esq., S. Hoffman, Esq. (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 305 | 9/16/2001 | Email | R. Barr, Esq. | A. Chen (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 306 | 9/17/2001 | Email | B. Showalter, Esq. (Baker Botts) | R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 307 | 9/19/2001 | Email | R. Barr, Esq. | B. Showalter, Esq. (Baker Botts) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 308 | 9/19/2001 | Email | B. Showalter, Esq. (Baker Botts) | R. Barr, Esq., G. Ellis (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 309 | 9/19/2001 | Email | M. Chambliss, Esq. (Cisco) | S. Hoffman, Esq. (Cisco), R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 310 | 9/20/2001 | Email | B. Showalter, Esq. (Baker Botts) | R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 311 | 9/24/2001 | Email | R. Barr, Esq. | C. Palermo, Esq. (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 312 | 9/26/2001 | Email | B. Showalter, Esq. (Baker Botts) | R. Barr, Esq. | Attorney Client / Work Product | |
| 313 | 10/6/2001 | Email | B. Showalter, Esq. (Baker Botts) | K. Meek, D. Kubehl, Esq. (Baker Botts) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 314 | 10/7/2001 | Email | R. Barr, Esq. | B. Schowalter, Esq.(Baker Botts), K. Meek, Esq. (Baker Botts), D. Kubehl, Esq. (Baker Botts) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 315 | 10/7/2001 | Email | B. Showalter, Esq. (Baker Botts) | R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 316 | 10/7/2001 | Email | B. Showalter, Esq. (Baker Botts) | R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |

Cisco v. Telcordia

Cisco's Second Privilege Log

4/28/2006

| | | | | | | |
|---|---|---|---|---|---|---|
| 317 | 10/8/2001 | Email | A. Sitaraman (Cisco) | R. Barr, Esq., S. Zhang (Cisco), B. Showalter, Esq. (Baker Botts) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 318 | 10/23/2001 | Email | B. Showalter, Esq. (Baker Botts) | S. Hoffman, Esq. (Cisco), R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 319 | 10/30/2001 | Email | B. Showalter, Esq. (Baker Botts) | R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 320 | 11/16/2001 | Email | R. Barr, Esq. | B. Showalter, Esq. (Baker Botts) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 321 | 11/16/2001 | Email | B. Showalter, Esq. (Baker Botts) | R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 322 | 11/20/2001 | Email | S. Hoffman, Esq. (Cisco) | R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 323 | 11/20/2001 | Email | B. Showalter, Esq. (Baker Botts) | R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 324 | 11/21/2001 | Email | B. Showalter, Esq. (Baker Botts) | R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 325 | 12/18/2001 | Email | B. Showalter, Esq. (Baker Botts) | R. Barr, Esq., S. Hoffman, Esq. (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 326 | 1/7/2002 | Email | R. Barr, Esq. | B. Showalter, Esq. (Baker Botts), S. Hoffman, Esq. (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 327 | 1/7/2002 | Email | B. Showalter, Esq. (Baker Botts) | R. Barr, Esq., S. Hoffman, Esq. (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 328 | 1/7/2002 | Email | B. Showalter, Esq. (Baker Botts) | S. Hoffman, Esq. (Cisco), R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 329 | 1/7/2002 | Email | S. Hoffman, Esq. (Cisco) | B. Showalter, Esq. (Baker Botts), R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |

Cisco v. Telcordia

4/28/2006

Cisco's Second Privilege Log

| | | | | | | |
|---|---|---|---|---|---|---|
| 330 | 1/7/2002 | Email | B. Showalter, Esq. (Baker Botts) | R. Barr, Esq., S. Hoffman, Esq. (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 331 | 1/7/2002 | Email | B. Showalter, Esq. (Baker Botts) | R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 332 | 1/9/2002 | Email | R. Barr, Esq. | S. Hoffman, Esq. (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 333 | 1/15/2002 | Email | B. Showalter, Esq. (Baker Botts) | R. Barr, Esq., S. Hoffman, Esq. (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 334 | 5/1/2002 | Email | R. Barr, Esq. | T. Tinor (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 335 | 5/1/2002 | Email | R. Barr, Esq. | S. Chu, Esq. (Cisco), K. Dahm (Cisco), A. Chen (Cisco), D. Rathi (Cisco), T. Tinor, L. Rajaram (Cisco), S. Hatch (Cisco), C. Chen, Esq. (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 336 | 5/1/2002 | Email | S. Chu, Esq. (Cisco), Esq. | K. Dahm (Cisco), A. Chen (Cisco), D. Rathi (Cisco), L. Rajaram (Cisco), S. Hatch (Cisco), C. Chen (Cisco), R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 337 | 5/6/2002 | Email | R. Barr, Esq. | M. Shannon, Esq. (Cisco), V. Dang, Esq. (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 338 | 5/6/2002 | Email | R. Barr, Esq. | M. Shannon, Esq. (Cisco), V. Dang, Esq. (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 339 | 5/6/2002 | Email | R. Barr, Esq. | M. Shannon, Esq. (Cisco), V. Dang, Esq. (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |

Cisco v. Telcordia

Cisco's Second Privilege Log

4/28/2006

| | | | | (Cisco) | | |
|---|---|---|---|---|---|---|
| 340 | 5/6/2002 | Email | M. Shannon, Esq. (Cisco) | R. Barr, Esq., V. Dang, Esq. (Cisco), S. Hoffman, Esq. (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 341 | 5/7/2002 | Email | V. Dang, Esq. (Cisco) | R. Barr, Esq., M. Shannon, Esq. (Cisco), S. Hoffman, Esq. (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 342 | 5/8/2002 | Email | T. Tinor (Cisco) | R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 343 | 5/15/2002 | Email | S. Hoffman, Esq. (Cisco) | V. Dang, Esq. (Cisco), R. Barr, Esq., C. Chen, Esq. (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 344 | 6/5/2002 | Email | C. Chen, Esq. (Cisco) | R. Barr, Esq., V. Dang, Esq., S. Chu, Esq. (Cisco), | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 345 | 6/13/2002 | Email | V. Dang, Esq. (Cisco) | C. Chen, Esq. (Cisco), R. Barr, Esq., S. Chu, Esq. (Cisco), Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 346 | 6/13/2002 | Email | C. Chen, Esq. (Cisco) | R. Barr, Esq., V. Dang, Esq. (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 347 | 6/19/2002 | Email | R. Barr, Esq. | V. Dang, Esq. (Cisco), C. Chen, Esq. (Cisco), S. Chu, Esq. (Cisco). | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 348 | 6/19/2002 | Email | C. Chen, Esq. (Cisco) | V. Dang, Esq. (Cisco), S. Chu, Esq. (Cisco), Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 349 | 6/19/2002 | Email | V. Dang, Esq. (Cisco) | C. Chen, Esq. (Cisco), R. Barr, Esq., S. Chu, Esq. (Cisco), Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |

| | | | | | |
|---|---|---|---|---|---|
| 350 | 6/19/2002 | Email | C. Chen, Esq. (Cisco) | V. Dang, Esq. (Cisco), R. Barr, Esq., S. Chu, Esq. (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 351 | 8/14/2002 | Email | R. Barr, Esq. | B. Showalter, Esq. (Baker Botts) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 352 | 12/17/2002 | Email | R. Barr, Esq. | M. Yen, Esq. (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 353 | 12/17/2002 | Email | D. Scheinman, Esq. (Cisco) | R. Barr, Esq., M. Chandler, Esq. (Cisco) | Attorney Client / Work Product | Redacted confidential communication relating to the rendering of legal advice re: patent licensing. |
| 354 | 1/21/2003 | Email | R. Ahmadi-Zenooz | A. Chen, L. Rajaram, R. Barr, Esq., abauman@cisco, rhamadan@cisco, cgriffin@cisco | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 355 | 1/22/2003 | Email | B. Showalter, Esq. (Baker Botts) | R. Barr, Esq., M. Yen, Esq. (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 356 | 1/25/2003 | Email | D. Scheinman, Esq. (Cisco) | E. Paradise, N. Hooper (Cisco), R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 357 | 2/4/2003 | Email | E. Rajaram | R. Ahmadi-Zenooz (Cisco), A. Chen (Cisco), R. Barr, Esq., A. Bauman (Cisco), rhamadan@cisco, cgriffin@cisco | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 358 | 2/6/2003 | Email | B. Showalter, Esq. (Baker Botts) | M. Yen, Esq. (Cisco), R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 359 | 2/6/2003 | Email | B. Showalter, Esq. (Baker Botts) | M. Yen, Esq. (Cisco), R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 360 | 2/6/2003 | Attachment | B. Showalter, Esq. (Baker Botts) | M. Yen, Esq. (Cisco), R. Barr, Esq. | Attorney Client / Work Product | Confidential memorandum prepared by outside counsel relating to patent licensing |

Cisco v. Telcordia

4/28/2006

Cisco's Second Privilege Log

| 361 | 2/6/2003 | Attachment | B. Showalter, Esq. (Baker Botts) | M. Yen, Esq. (Cisco), R. Barr, Esq. | Attorney Client / Work Product | **Confidential memorandum prepared by outside counsel relating to patent licensing.** |
|-----|----------|------------|----------------------------------|-------------------------------------|--------------------------------|----------------------------------------------------------------------------------------|
| 362 | 2/12/2003 | Email | R. Barr, Esq. | M. Yen, Esq. (Cisco) | Attorney Client / Work Product | **Confidential communication relating to the rendering of legal advice re: patent licensing.** |
| 363 | 2/12/2003 | Email | M. Yen, Esq. (Cisco) | R. Barr, Esq | Attorney Client / Work Product | **Confidential communication relating to the rendering of legal advice re: patent licensing.** |
| 364 | 2/24/2003 | Email | B. Showalter, Esq. (Baker Botts) | M. Yen, Esq. (Cisco), R. Barr, Esq. | Attorney Client / Work Product | **Confidential communication relating to the rendering of legal advice re: patent licensing.** |
| 365 | 2/24/2003 | Email | M. Yen, Esq. (Cisco) | B. Showalter, Esq. (Baker Botts), R. Barr, Esq. | Attorney Client / Work Product | **Confidential communication relating to the rendering of legal advice re: patent licensing.** |
| 366 | 2/25/2003 | Email | M. Yen, Esq. (Cisco) | V. Dang, Esq. (Cisco), R. Barr, Esq. | Attorney Client / Work Product | **Confidential communication relating to the rendering of legal advice re: patent licensing.** |
| 367 | 3/13/2003 | Email | R. Barr, Esq. | D. McCurdy (Thinkfire) | Attorney Client / Work Product | **Confidential communication relating to the rendering of legal advice re: patent licensing.** |
| 368 | 3/17/2003 | Email | M. Yen, Esq. (Cisco) | B. Showalter, Esq. (Baker Botts), R. Barr, Esq. | Attorney Client / Work Product | **Confidential communication relating to the rendering of legal advice re: patent licensing.** |
| 369 | 3/18/2003 | Email | M. Yen, Esq. (Cisco) | B. Showalter, Esq. (Baker Botts), R. Barr, Esq. | Attorney Client / Work Product | **Confidential communication relating to the rendering of legal advice re: patent licensing.** |
| 370 | 4/7/2003 | Email | R. Barr, Esq. | B. Showalter, Esq. (Baker Botts) | Attorney Client / Work Product | **Confidential communication relating to the rendering of legal advice re: patent licensing.** |
| 371 | 4/7/2003 | Email | R. Barr, Esq. | V. Jain (Cisco), patent-team@cisco, M. Yen, Esq. (Cisco) | Attorney Client / Work Product | **Confidential communication relating to the rendering of legal advice re: patent licensing.** |
| 372 | 4/7/2003 | Email | R. Barr, Esq. | V. Jain (Cisco), M. Yen, Esq. (Cisco), R. Sastry (Cisco) | Attorney Client / Work Product | **Confidential communication relating to the rendering of legal advice re: patent licensing.** |
| 373 | 4/7/2003 | Email | R. Barr, Esq. | B. Showalter, Esq. (Baker Botts), M. Yen, Esq. | Attorney Client / Work Product | **Confidential communication relating to the rendering of legal advice re: patent licensing.** |

28 of 34

Cisco's Second Privilege Log

| | | | | | | |
|---|---|---|---|---|---|---|
| 374 | 4/7/2003 | Email | V. Jain (Cisco) | R. Barr, Esq., M. Yen, Esq (Cisco), R. Sastry (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 375 | 4/7/2003 | Email | V. Jain (Cisco) | patent-team@cisco, M. Yen, Esq. (Cisco), R. Sastry (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 376 | 4/7/2003 | Email | V. Jain (Cisco) | patent-team@cisco | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 377 | 4/11/2003 | Email | R. Barr, Esq. | M. Yen, Esq. (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 378 | 4/11/2003 | Email | R. Barr, Esq. | B. Showalter, Esq. (Baker Botts) M. Yen, Esq. (Cisco), D. Kubehl, Esq, (Baker Botts) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 379 | 4/15/2003 | Email | M. Yen, Esq. (Cisco) | R. Barr, Esq., M. Chandler, Esq. (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 380 | 4/16/2003 | Email | R. Ahmadi-Zenooz (Cisco) | M. Yen, Esq. (Cisco), A. Chen, C. Chen, Esq. (Cisco), R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 381 | 4/16/2003 | Email | M. Yen, Esq. (Cisco) | A. Chen, R. Ahmadi-Zenooz (Cisco), C. Chen, Esq. (Cisco), R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 382 | 4/21/2003 | Email | D. Brinkman (Cisco) | R. Renfree (Cisco), M. Michels (Cisco), R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 383 | 5/8/2003 | Email | R. Barr, Esq. | T. Tinor (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |

Cisco v. Telcordia

Cisco's Second Privilege Log

4/28/2006

| 384 | 6/4/2003 | Email | B. Showalter, Esq. (Baker Botts) | M. Yen, Esq. (Cisco), R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
|---|---|---|---|---|---|---|
| 385 | 7/2/2003 | Email | B. Showalter, Esq. (Baker Botts) | M. Yen, Esq. (Cisco), R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 386 | 8/8/2003 | Email | M. Yen, Esq. (Cisco) | R. Barr, Esq., M. Chandler, Esq. (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 387 | 8/15/2003 | Email | D. Kubehl Esq. (Baker Botts) | File | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 388 | 8/15/2003 | Email | D. Kubehl, Esq. (Baker Botts) | M. Yen, Esq. (Cisco), R. Barr, Esq., B. Showalter, Esq. (Baker Botts), B. Oaks, Esq. (Baker Botts) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 389 | 8/17/2003 | Email | M. Yen, Esq. (Cisco) | D. Kubehl, Esq. (Baker Botts), R. Barr, Esq., B. Showalter, Esq. (Baker Botts), B. Oaks, Esq. (Baker Botts) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 390 | 8/18/2003 | Email | B. Showalter, Esq. (Baker Botts) | M. Yen, Esq. (Cisco), R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 391 | 8/19/2003 | Letter | B. Showalter, Esq. (Baker Botts) | | Attorney Client / Work Product | Draft letter from B. Showalter to V. Anthony. |
| 392 | 8/19/2003 | Letter | B. Showalter, Esq. (Baker Botts) | | Attorney Client / Work Product | Draft letter from B. Showalter to V. Anthony. |
| 393 | 8/19/2003 | Letter | B. Showalter, Esq. (Baker Botts) | | Attorney Client / Work Product | Draft letter from B. Showalter to V. Anthony. |
| 394 | 8/19/2003 | Letter | B. Showalter, Esq. (Baker Botts) | | Attorney Client / Work Product | Draft letter from B. Showalter to V. Anthony. |
| 395 | 8/20/2003 | Email | R. Barr, Esq. | M. Yen, Esq. (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |

Cisco v. Telcordia

Cisco's Second Privilege Log

4/28/2006

| | | | | | |
|---|---|---|---|---|---|
| 396. | 8/20/2003 | Email | B. Showalter, Esq. (Baker Botts) | M. Yen, Esq. (Cisco), R. Barr, Esq., D. Kubehl, Esq., B. Oaks, Esq. (Baker Botts) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 397. | 8/21/2003 | Email | M. Yen, Esq. (Cisco) | B. Showalter, Esq. (Baker Botts), R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 398. | 9/2/2003 | Email | M. Yen, Esq. (Cisco) | B. Showalter, Esq. (Baker Botts), R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 399. | 9/3/2003 | Email | B. Showalter, Esq. (Baker Botts) | M. Yen, Esq. (Cisco), R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 400. | 9/8/2003 | Email | B. Showalter, Esq. (Baker Botts) | M. Yen, Esq. (Cisco), R. Barr, Esq., D. Kubehl, Esq. (Baker Botts), B. Oaks (Baker Botts) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 401. | 9/16/2003 | Email | M. Yen, Esq. (Cisco) | B. Showalter, Esq. (Baker Botts) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 402. | 10/16/2003 | Email | B. Showalter, Esq. (Baker Botts) | R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 403. | 10/24/2003 | Email | B. Showalter, Esq. (Baker Botts) | M. Yen, Esq. (Cisco), R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 404. | 10/24/2003 | Email | B. Showalter, Esq. (Baker Botts) | M. Yen, Esq. (Cisco), R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 405. | 11/5/2003 | Email | B. Showalter, Esq. (Baker Botts) | M. Yen, Esq. (Cisco), R. Barr, Esq., D. Kubehl, Esq. (Baker Botts) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 406. | 11/13/2003 | Email | B. Showalter, Esq. (Baker Botts) | M. Yen, Esq. (Cisco), R. Barr, Esq., D. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |

Cisco v. Telcordia

4/28/2006

Cisco's Second Privilege Log

| | | | | | |
|---|---|---|---|---|---|
| | | | | Kubehl, Esq. (Baker Botts), B. Oaks, Esq. (Baker Botts) | |
| 407 | 11/17/2003 | Letter | B. Showalter, Esq. (Baker Botts) | | Attorney Client / Work Product | Draft letter from B. Showalter to V. Anthony. |
| 408 | 11/19/2003 | Email | B. Showalter, Esq. (Baker Botts) | M. Yen, Esq. (Cisco), R. Barr, Esq., D. Kubehl, Esq. (Baker Botts), B. Oaks, Esq. (Baker Botts) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 409 | 11/20/2003 | Email | M. Yen, Esq. (Cisco) | B. Showalter, Esq. (Baker Botts), D. Kubehl, Esq. (Baker Botts), B. Oaks, Esq. (Baker Botts) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 410 | 1/15/2004 | Email | M. Yen, Esq. (Cisco) | E. Conway (Cisco), W. Issa (Cisco), M. Michels (Cisco), pbear@cisco, R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 411 | 1/19/2004 | Email | W. Issa (Cisco) | M. Yen, Esq. (Cisco), E. Conway (Cisco), M. Michels, Esq. (Cisco), rabarron@cisco, R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 412 | 1/20/2004 | Email | M. Yen, Esq. (Cisco) | B. Schowalter, Esq. (Baker Botts) D. Kubehl, Esq. (Baker Botts), R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 413 | 1/21/2004 | Email | B. Showalter, Esq. (Baker Botts) | M. Yen, Esq. (Cisco), R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |

Cisco v. Telcordia

Cisco's Second Privilege Log

4/28/2006

| | | | | | |
|---|---|---|---|---|---|
| 414 | 1/21/2004 | Email | B. Rushka (Cisco) | B. Oats, Esq. (Baker Botts), N. Allan (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 415 | 6/21/2004 | Email | R. Barr, Esq. | M. Chandler, Esq. (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 416 | 6/21/2004 | Email | B. Showalter, Esq. (Baker Botts) | R. Barr, Esq., M. Yen, Esq. (Cisco), D. Kubehl, Esq. (Baker Botts), K. Pankratz, Esq. (Baker Botts) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 417 | 6/21/2004 | Email | M. Chandler, Esq. (Cisco) | R. Barr, Esq. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 418 | 6/21/2004 | Email | B. Showalter, Esq. (Baker Botts) | R. Barr, Esq., M. Yen, Esq. (Cisco), D. Kubehl, Esq. (Baker Botts), K. Pankratz, Esq. (Baker Botts) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 419 | 6/25/2004 | Email | M. Chandler, Esq. (Cisco) | R. Barr, Esq., M. Yen, Esq. (Cisco) | Attorney Client / Work Product | Redacted confidential communication relating to the rendering of legal advice re: patent licensing |
| 420 | 7/12/2004 | Email | M. Yen, Esq. (Cisco) | R. Barr, Esq., M. Chandler, Esq. (Cisco) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 421 | 7/12/2004 | Email | M. Chandler, Esq. (Cisco) | R. Barr, Esq., M. Yen, Esq. (Cisco) | Attorney Client / Work Product | Redacted confidential document relating to the rendering of legal advice re: patent licensing |
| 422 | 7/12/2004 | Email | D. Kubehl, Esq. (Baker Botts) | M. Yen, Esq. (Cisco), D. Kubehl Esq. (Baker Botts), R. Barr, Esq., B. Showalter, Esq. (Baker Botts), B. Oaks (Baker Botts) | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |
| 423 | 7/14/2004 | Email | D. Kubehl, Esq. (Baker Botts) | M. Yen, Esq. (Cisco), D. Kubehl (Baker Botts), B. Schowalter Esq. (Baker Botts), R. | Attorney Client / Work Product | Confidential communication relating to the rendering of legal advice re: patent licensing. |

Cisco v. Telcordia

Cisco's Second Privilege Log

4/28/2006

|   |   |   |   |   | Barr, Esq. |
|---|---|---|---|---|---|
|   |   |   | B. Nguyen (Weil) | G. Fedorkow (Cisco) | Attorney Client / Work Product |
| 424 | 11/18/2004 | Email |   |   | Confidential communication relating to the rendering of legal advice re: patent litigation. |

34 of 34

# EXHIBIT H

0002114a

## Christesen, Eric

**From:** Sonal.Mehta@weil.com
**Sent:** Tuesday, July 25, 2006 9:03 PM
**To:** Williamson, John
**Subject:** Re: Telcordia v. Cisco

John,

I write in response to your email concerning logging of opinion letters on the '633 and '763 patents to the extent any such letters exist. Although lengthy, your email fails to articulate any basis for Telcordia's demand for privilege log entries on opinion letters (if they exist) upon which Cisco has elected not to rely. As we understand it, Telcordia's position is that, during fact discovery, Cisco somehow promised to provide this information once the election with respect to advice of counsel had been made, and that the Court's Scheduling Order "does not excuse Cisco from identifying relevant, responsive, non-privileged information (i.e., the type of information that would be found on a privilege log) about its opinions." This position is wrong on both counts.

First, as you yourself acknowledge, Cisco has never wavered from its position that it would provide "discovery as to opinions of counsel if and when appropriate." Had Cisco elected to rely on any such opinion, we would have provided Telcordia with prompt discovery on such opinions. However, given Cisco's decision not to rely on opinion letters (if they exist), discovery as to such opinions never became appropriate.

Second, your suggestion that the Court's Scheduling Order "does not excuse Cisco from identifying relevant, responsive, non-privileged information (i.e., the type of information that would be found on a privilege log) about its opinions" both mischaracterizes Cisco's position and misses the point. It is not Cisco's position that the Court's Scheduling Order excuses the logging of relevant, responsive and non-privileged information as required by the Federal Rules. Cisco has, and will continue to, abide by its obligations to log relevant, responsive and non-privileged information as appropriate under the Rules. The issue here is whether the discovery sought by Telcordia is relevant or responsive. It is not. Because Cisco elected not to rely on any opinion of counsel, discovery with respect to such opinions never opened and, pursuant to Cisco's written objections to Telcordia's discovery responses, Cisco is under no obligation to provide non-privileged information about opinions letters, if any exist. Simply put, the existence of such opinions is not relevant or responsive now that Cisco has elected not to rely on an opinion letter.

In view of the above, we find Telcordia's suggestion that it "is entitled to a presumption that Cisco does not have, and has never had, any opinions concerning the patents-in-suit" and stated intent to "proceed accordingly" to be improper. Cisco will vigorously oppose any action by Telcordia in furtherance of this perceived "presumption."

Regards,
Sonal N. Mehta
Weil Gotshal & Manges
201 Redwood Shores Pkwy
Redwood Shores, CA 94065
t: (650) 802-3118
f: (650) 802-3100
sonal.mehta@weil.com

```
    ----- Original Message -----
From: "Williamson, John" [John.Williamson@finnegan.com]
Sent: 07/24/2006 01:58 PM
To: <sonal.mehta@weil.com>
Cc: Williamson, John" <John.Williamson@finnegan.com>
Subject: Telcordia v. Cisco
```

7/26/2006

# EXHIBIT I

# REDACTED

# EXHIBIT J

```
 1              IN THE UNITED STATES DISTRICT COURT

 2             IN AND FOR THE DISTRICT OF DELAWARE

 3                       -  -  -

 4   ITT MANUFACTURING ENTERPRISES,      :     Civil Action
     INC., a Delaware corporation,       :
 5                                        :
                 Plaintiff,               :
 6                                        :
           v.                             :
 7                                        :
     SAMSUNG ELECTRONICS AMERICA, INC.,   :
 8   a New York corporation, SAMSUNG      :
     TELECOMMUNICATIONS AMERICA LP, a     :
 9   Delaware corporation, SAMSUNG        :
     ELECTRONICS CO., LTD., a Republic    :
10   of Korea corporation,                :
                                          :
11               Defendants.              :     NO. 03-1086 (GMS)

12                       -  -  -

13                  Wilmington, Delaware
                  Monday, January 23, 2006
14                       10:10 a.m.
                    Pretrial Conference
15
16                       -  -  -

17   BEFORE:  HONORABLE GREGORY M. SLEET, U.S.D.C.J.

18   APPEARANCES:

19           THOMAS P. PRESTON, ESQ.
             Blank Rome LLP
20                   -and-
             JAMES D. BERQUIST, ESQ.,
21           DONALD L. JACKSON, ESQ.,
             J. SCOTT DAVIDSON, ESQ.,
22           PETER W. GOWDEY, ESQ., and
             MARK B. ANGRES, ESQ.
23           Davidson, Berquist, Klima & Jackson LLP
             (Arlington, Virginia)
24
                            Counsel for Plaintiff
25
```

1           I am going to deny the motion, and order that

2   discovery be reopened so that this matter can be properly

3   addressed.

4           MR. BERQUIST:  Thank you, Your Honor.  I just

5   like to avoid surprise.

6           THE COURT:  I think both sides are interested in

7   that, and certainly the Court is as well, because that is

8   going to mean less time at sidebar and less waste of the

9   jury's time when they are finally empaneled.

10          That's why we do these things that we are doing

11  today.

12          Let's go to the defendant Samsung's first

13  motion, which occurs at Docket Item 149, defendants' joint

14  motion in limine to preclude plaintiff ITT from offering at

15  trial evidence and argument regarding defendants' decision

16  not to rely on advice of counsel.

17          Is this addressed -- I thought I had made some

18  notes on this.

19          MR. BERQUIST:  Your Honor, we have a counterpart

20  motion as well.

21          THE COURT:  Let me find that.  I think it's No.

22  4, Docket Item 162.

23          MR. SHERWOOD:  Yes, Your Honor.

24          THE COURT:  ITT's motion to preclude any

25  evidence regarding advice of counsel.  This is the

25

1   Knorr-Bremse conundrum and what has happened since

2   Knorr-Bremse and counsel's view of whether anything has

3   happened since Knorr-Bremse really gives us the guidance we

4   need for a situation like this.

5              So why don't we hear both of these together.

6              MR. SHERWOOD:  Mr. Park will speak to this.

7              MR. PARK:  Good morning, Your Honor.

8              In this interrogatory Samsung requests under

9   Knorr-Bremse and the law that followed after Knorr-Bremse

10  that ITT be precluded from telling the jury that Samsung,

11  for one, did not obtain advice of counsel or that we did not

12  produce the advice of counsel.  This is because under

13  Knorr-Bremse and subsequent law that is irrelevant to the

14  jury in their determination of willfulness.

15             We believe the only value of that information

16  that ITT can have for the jury is to submit it for the jury

17  and hope that the jury makes the negative inference that was

18  taken out of the law of willful infringement by

19  Knorr-Bremse.  So because of that, Samsung moves that the

20  Court preclude ITT from mentioning that to the jury, Your

21  Honor.

22             THE COURT:  Do I understand correctly, counsel,

23  that Samsung did, indeed, request and secure opinions of

24  counsel?

25             MR. PARK: Yes, Your Honor.  If I may, ITT

26

1    refers to the two privilege logs produced by Samsung.  One

2    was the initial log.  Then they have referred to a second

3    supplemental log.  But they don't point to the first

4    supplemental log that was produced ten days after the first

5    log that lists two opinions, the two opinions.  So the

6    opinions were obtained.  But even at that point, whether or

7    not ITT wants to tell the jury that the opinions were

8    obtained but then not produced, we believe that is also

9    irrelevant.

10              THE COURT:  The reason I ask is because that is

11    a different, perhaps, situation than if no opinion was

12    sought at all.

13              Counsel.

14              MR. BERQUIST:  Your Honor, if I could start in

15    sort of reverse and address that question first.

16              THE COURT:  Sure.

17              MR. BERQUIST:  Your Honor, it is not clear to me

18    that they did seek and obtain the type of counsel that the

19    cases talk about, an exculpatory advice of counsel from a

20    non-interested lawyer.  What they are referring to is a

21    memo, two memos, that were done by Qualcomm's in-house

22    counsel.  Qualcomm, you may recall, is the supplier of these

23    chips.

24              And so what they are referring to are two e-mail

25    memos from their in-house counsel, saying whatever they

1    purport to say.  And one of the things we looked at is, of

2    course, at the time we even filed our motion in limine we

3    were unaware of even those.  Those two e-mails were

4    described in supplemental privilege logs that were produced

5    after the close of fact discovery, and they were described

6    using the same language as maybe ten other entries that were

7    e-mails as between the two.  Why those two are significant

8    and important I have no idea.  I have not seen them.

9              I question whether or not, in fact, they did

10   seek and obtain the kind of advice of counsel that is

11   appropriate.  If they had just asked somebody on the street

12   what's your feeling on this and then listed it on a

13   privilege log, I don't think that either would qualify.

14              THE COURT:  I agree.

15              MR. BERQUIST:  To address the main problem, I

16   think it is what the effect of Knorr-Bremse is.  It was

17   decided in 2004 in the Federal Circuit.  And the way it

18   changed the law is very clear.  How to apply it best is not

19   so clear.  All it did was, prior to Knorr-Bremse, and

20   actually it wasn't always this way, starting in about 1992

21   the Federal Circuit created this, the Federal Circuit

22   created an allowance that if there was no advice of counsel

23   obtained, or if there was advice of counsel obtained but

24   withheld on the grounds of privilege, the jury was to be

25   instructed, you are to presume that it was negative or if it

1    was obtained it would be negative.  We are not asking for

2    that.

3              What we are asking for is a statement that they

4    didn't get one, either, because they didn't turn it over.  I

5    don't know what is in there.  Or if I can't say they didn't

6    get one, and they say, well, we are not turning it over

7    because of privilege, every member of the jury has watched

8    TV and they know about the attorney-client privilege, they

9    may not assume anything is wrong with that.

10              But here, if you want to rely on advice of

11    counsel as a defense, then you have to produce it, the

12    opinion and the documents relating to that, and take

13    depositions.  And the reason is because privilege isn't to

14    be used as both a sword and a shield.

15              So in this case, certainly at the time we filed

16    the motion we were not aware that they had any advice of

17    counsel.  But I think that proper application of

18    Knorr-Bremse is just to instruct the jury that there is none

19    or, alternately, that they are not relying on advice of

20    counsel as a defense.

21              THE COURT:  Is it ITT's position, whether or not

22    Samsung procured an appropriate opinion, the jury should be

23    instructed as you suggest?

24              MR. BERQUIST:  They should, because it is one of

25    the factors of the totality of circumstances.

1          THE COURT:  Then doesn't the question arise, I

2    think it's raised by Samsung, for what other purpose than

3    having the jury draw an adverse inference would you want to

4    tell the jury, in the situation where an opinion, an

5    appropriate opinion was withheld from the jury's

6    consideration, what else do you imagine the jury might think

7    about that?

8          MR. BERQUIST:  I don't know what the jury might

9    think about that.  But the Federal Circuit used to say tell

10   the jury that --

11         THE COURT:  I agree.

12         MR. BERQUIST:  Now they are saying don't tell

13   them.  They are blessing the idea that the jury can draw

14   whatever reasonable conclusions they want from that.  I have

15   got the concern the jury will look at that and say --

16         THE COURT:  I understand your position.  I think

17   you have correctly outlined the state of the law both

18   pre-Knorr and correctly indicated that the Court didn't

19   exactly tell us how to apply this.  But in so doing I don't

20   think the Court requires either explicitly or implicitly

21   that we put our collective heads in the sand and ignore what

22   we as adults I think can reasonably -- well, our common

23   sense, let me suggest it that way, that we throw that to the

24   wind.

25         If you could suggest to me what else the jury in

1    that situation I posited where the opinion was obtained but

2    withheld, what else would a fact-finder, in your view,

3    imagine or infer from that withholding, other than the

4    withholding must suggest that there is something adverse

5    contained in the opinion.

6              MR. BERQUIST:  I hope that is what the jury does

7    conclude, because I think that's --

8              THE COURT:  That's candid.  I appreciate that.

9              MR. BERQUIST:  But that's the consequence of

10   either not getting opinion or getting an opinion and not

11   turning it over.  It is certainly one of the factors laid

12   out by the Bremse decision that should be considered.  We

13   shouldn't ask the jury to stick their head in the sand and

14   not even be aware of it, which I think is the Samsung

15   approach.  I think it's going way beyond what the Federal

16   Circuit did.  The Federal Circuit said, I don't want the

17   courts instructing the jury to find that that is a

18   presumption that it's bad, but they can find whatever they

19   want.

20             I think, my fear is -- I told you quite candidly

21   what I want the jury to do with that -- my fear is the jury

22   may look at that and say, that is natural.  On Law and Order

23   they never make the lawyers come out and testify.  There is

24   a privilege associated with that.  And that's the way it's

25   always been in this country.  They may look at that and it

1    be water off the duck's back and total irrelevancy, and I

2    think Samsung will try to spin the whole thing that way.

3         By doing that, I think we effectively expanded

4    Knorr and let the privilege apply as both a sword and

5    shield, we are going to keep it out but then say, we have

6    advice of counsel.

7         If I can circle back to where I started, I am

8    not even sure that kind of e-mail, off-the-cuff e-mail from

9    a supplier qualifies --

10        THE COURT:  That is what I was going to bring us

11   back to with my next comment.  That is that we as trial

12   lawyers and a trial judge don't have the luxury that my

13   brethren and sisters, brothers and sisters in the circuit

14   courts do of addressing this in sort of an academic way.  We

15   really do have two issues, it seems to me, that ITT raises.

16   Number one, was there a proper opinion, and then what do you

17   do with the withholding -- right now I am assuming it was a

18   proper opinion.  But since ITT has legitimately raised it as

19   an issue, we have to get to the crux of that first question,

20   get to the bottom of that first question, the answer being

21   perhaps the only way to do that is an in-camera review by

22   the Court.  But perhaps there is another way.

23        Counsel.

24        MR. PARK:  Your Honor, the first point being

25   that Samsung is not electing to rely on the advice of

1    counsel.  So the substance of that advice is not at issue.

2    It is a threshold issue of whether or not ITT gets to say

3    something to the jury about some advice of counsel, whether

4    or not Samsung elected or otherwise.

5              Samsung is not using privilege as a sword and a

6    shield.  We have maintained it as a shield, Your Honor.  To

7    tell the jury otherwise would be penalizing Samsung for

8    using that as a shield.

9              There is no offensive use of the privilege in

10   this case, Your Honor.  Samsung isn't saying we are going to

11   hold back the information, the substantive information, but

12   we are going to say things to the jury that go up to but not

13   through the privilege.  We are not doing that here, Your

14   Honor.

15             THE COURT:  By saying that Samsung is not

16   relying on the advice of counsel, does that insulate Samsung

17   from what it, in fact, did, that is, you say, seek an

18   opinion, of course, that opinion was privileged to this

19   point, and protect yourselves from what might be a fair

20   inference that the opinion, not an instructed inference, but

21   a totality of the circumstances fair inference that the

22   opinion was not fair or favorable to Samsung?

23             MR. PARK:  Your Honor, when we chose not to rely

24   on it, we didn't do it lightly.  We analyzed the cases.  We

25   analyzed the scope of waiver in this Court and this Circuit

33

1    regarding privilege as well.  Given that, I think that the

2    choice was made with a lot of consideration, Your Honor, as

3    to what the effect of that waiver will be.

4              To be able to maintain the privilege as a shield

5    was always allowed under the law.  That wasn't changed by

6    Knorr-Bremse.  Knorr-Bremse reconciled what was recognized

7    as the privilege law in other laws besides patent law and

8    reconciled that with patent law and brought that together.

9    It didn't say that you couldn't continue to maintain that as

10   a shield, Your Honor.

11             To speak to the other points Mr. Berquist made,

12   one of the things that I think Your Honor had started by

13   saying that you wanted us to point you to jury instructions,

14   maybe, that may be tangential to the motions in limine, ITT

15   filed their proposed jury instruction for No. 28, which is

16   willful infringement.  And in that, they specifically tried

17   to include -- requested to include a statement about the

18   advice of counsel.

19             Samsung then proposed, counter-proposed that

20   Knorr-Bremse changed that.  And we used the Northern

21   Division of California, that specifically states, after

22   Knorr-Bremse, that that portion should only be included if

23   advice of counsel is relied upon.  Samsung has not relied

24   upon the advice of counsel.  I want to make that very clear,

25   that we are not using the privilege offensively at all.

34

1          THE COURT:  Is there any case, counsel, that

2     addresses this exact scenario that we have in front of us?

3          MR. PARK:  We cite in our brief Union Carbide.

4          THE COURT:  You think it's on all fours with

5     Union Carbide?

6          MR. PARK:  Not precisely.  The facts aren't

7     exactly.  The facts in our case are actually pretty similar

8     to Knorr-Bremse, in that there is at the point when a

9     supplier gets an opinion, and the supplier, the original

10    manufacturer gets an opinion but the customer may or may

11    not.  Qualcomm was the company, as Your Honor may know, in

12    this case, that was the manufacturer of the chips.  They

13    know the technology.  They know what goes in there.  They

14    gave us the opinion, or the opinion that we relied upon.  I

15    think in that way it is much closer to Knorr-Bremse.

16          To say Knorr-Bremse has informed the law to say

17    that we can't hide behind the privilege, I think that is

18    incorrect.

19          To say we can tell the jury, again, as Mr.

20    Berquist has so candidly stated, the main inference he hopes

21    the jury will make is a negative inference, to do that, I

22    think Knorr-Bremse was saying that that is improper, because

23    to not allow or penalize a company or defendant from using

24    the privilege I think is improper.

25          THE COURT:  So in your view, in Samsung's view,

1    it is really not critical to this motion, both these

2    motions, the resolution, that is, whether or not the opinion

3    sought by the e-mails that have been you said discussed by

4    Mr. Berquist are, quote-unquote, appropriate opinions or

5    not.  That's really not critical.

6                MR. PARK:  Exactly, Your Honor.  We are not

7    relying on it.

8                If I may, Your Honor, under the totality of the

9    circumstances, I think Mr. Berquist is referring to the

10   second factor that was outlined by the Federal Circuit,

11   which is the duty of care.  And we have other evidence in

12   our case, the Samsung case, that will go to that that is not

13   privileged as well.

14               So we are not preventing ITT from putting on

15   their willfulness case at all, Your Honor.  This is

16   something that was always contemplated by the courts before

17   Knorr-Bremse in terms of holding the privilege, and it

18   continues to be so after Knorr-Bremse.

19               THE COURT:  You say there are other facts that

20   will demonstrate a lack of willful misconduct.

21               MR. PARK:  Yes, sir.

22               THE COURT:  That is, that you were adhering to

23   your duty, your responsibility.

24               MR. PARK:  Yes, sir.

25               THE COURT:  Was there any implication by the

1    Court in Knorr or any other subsequent case or case before

2    Knorr by the Federal Circuit that seeking the advice of

3    competent counsel would be a part of that list of items that

4    one would check off to demonstrate due care?

5    MR. PARK: Yes, sir. I believe that is correct,

6    before Knorr-Bremse. At Knorr-Bremse, I believe, the second

7    question or issue addressed by Knorr-Bremse took that issue

8    head on and said, whether or not to obtain an advice of

9    counsel, that is not a matter of privilege but a matter of

10   duty. Whether every patent case requires that defendant

11   obtain advice of counsel, the Federal Circuit said no. The

12   amicus briefing said cost was a factor.

13   MR. SHERWOOD: Your Honor, could I add a

14   comment?

15   THE COURT: Go ahead.

16   MR. SHERWOOD: I come to this from the

17   standpoint of not having spent my whole career doing patent

18   litigation.

19   THE COURT: Probably a good thing.

20   MR. SHERWOOD: Right, I agree.

21   When I read Knorr-Bremse, it seemed to me pretty

22   clear that one of the things the Court was saying is, patent

23   litigation ought not to be sort of going down this different

24   track from all other kinds of litigation.

25   I think if I came into you and I said we have a

1    products liability case and I want to do what Mr. Berquist

2    just very candidly said to you he wants to do, you would

3    look down off the Bench and at me and say, are you crazy?

4    That is a classic 403 situation.  I can't believe you even

5    raised that.

6                So I think Knorr does provide us some guidance

7    with respect to it.  It is admittedly a high level.  It is

8    not down into the weeds about exactly how you would do this.

9    But I think it said, let's move patent infringement

10   litigation with respect to this issue back into the

11   mainstream of the law in the way we try all other cases.

12               So the totality of the circumstances, I think,

13   is let's look at all the things that a jury would ordinarily

14   look at in making a decision about willfulness.

15               That would not happen, I don't think, Your

16   Honor, in your nonpatent cases.

17               I think, really, that's what we can take out of

18   Knorr-Bremse.

19               I don't mean to take anything from Mr. Park's

20   great argument.  I am not a patent lawyer.  I thought maybe

21   that was a useful thing to say.

22               THE COURT:  Mr. Berquist.

23               MR. BERQUIST:  Your Honor, a couple quick

24   points.

25               That's not what Knorr-Bremse did.  They just

38

1    said take away the presumption we are instructing.  It is

2    still the question of, we are an unusual circumstance that

3    once -- one of the factors that has to be established, I

4    think, that Samsung's counsel is referring to is we have to

5    establish, number one, that there was knowledge of the

6    patent.  So there are some other factors, certainly.  And we

7    are not doing anything to minimize those.

8            But I think that the Knorr decision does not do

9    what they are asking you to do with it.  And I think that

10   they are basically saying throw out the whole issue and not

11   even get into privilege, because purportedly that's what

12   would happen in the products liability case.

13           This isn't a products liability case.  I am not

14   even sure that is right.  I have never looked at it.  This

15   is a case of patent infringement.  And the Federal Circuit's

16   decisions on that are really what govern here.

17           One thing I find difficult --

18           THE COURT:  Do you agree with counsel that

19   clearly, at least to me, the way I read Knorr, the Court

20   spent some time trying to move away, move all of us away

21   from notions that patent cases should somehow be excepted

22   from the heretofore well-developed common law privileges and

23   that whole body of law, because we had, in fact, begun

24   Knorr?

25           MR. BERQUIST:  That's what they were looking at.

1    But what the result was was them saying let's take away this

2    one thing, leave everything else intact.

3              THE COURT:  It is difficult for me to imagine

4    that they would spend that many words intending that one

5    small result.  I agree, that is the holding of the case, no

6    question.

7              MR. BERQUIST:  Your Honor, two other quick

8    points I would like to make.  I looked for cases that

9    applied jury instructions in this context after Knorr, which

10   was decided sometime in 2004, I think it was late.  What I

11   found, ironically, I found one case very local here, very

12   recent, Judge Robinson just in January 6, 2006 addressed

13   this.  Unfortunately, it wasn't in the context of a jury

14   instruction.  Essentially, what she came down to -- I will

15   just tell you the cite if you are interested, it's 2006

16   WestLaw 38918.  It's IMX, Inc. versus Lending Tree LLC.

17             Basically, she just summarized what I was

18   saying, although, unfortunately, she doesn't get to the

19   bottom line of saying here is how I am going to instruct the

20   jury, whether it was a jury trial or not.  But I think it's

21   very helpful in understanding the jury should understand

22   what has actually happened.

23             There is no advice of counsel, which is our

24   belief when we filed the paper, or that there was some

25   advice of counsel, and the law on that has not really

1   changed.  The advice of counsel, one of the things that by

2   relying on it has always opened up is was this person who

3   gave the advice, were they knowledgeable, were they

4   qualified, were they independent?

5           THE COURT:  But Samsung rejects your proposition

6   as to the correct formulation of the issue.  They say they

7   are not -- they say it in their papers, that ITT

8   misperceives our argument, that Samsung is not making the

9   argument that you are suggesting, they were not relying on

10  advice of counsel at all.  So therefore, isn't that a

11  different issue, or is it?

12          MR. BERQUIST:  It is and isn't.  I am not saying

13  we should get into it in their context.  I am disputing

14  whether or not they even have one.  We don't know.  They

15  could have put anything on that privileged log.

16          THE COURT:  Let's assume they didn't.  They are

17  not relying on advice of counsel.  That is not part of their

18  defense to your charge of willful infringement.

19          MR. BERQUIST:  So if that is the case, then I

20  think that what they are trying to do is duck the whole

21  issue and not have the jury even hear of it, which I think

22  would take one of the factors that the Federal Circuit said

23  should be considered under the totality of circumstances --

24          THE COURT:  The Federal Circuit didn't require

25  that as a defense to a charge of willful infringement that a

1    party must be able to assert that it had gone out and sought

2    an opinion of counsel.  I think the Federal Circuit spoke

3    specifically to this point insofar as the cost issue was

4    concerned associated with the procuring of that type of

5    opinion.

6             MR. BERQUIST:  It was the cost issue, as I

7    understand it, that caused the Federal Circuit to come out

8    the way they did to say let's take away the presumption.

9    But the cost issue didn't say let's change the law more

10   broadly, as Samsung wants, and that is, put the whole issue

11   under ground unless someone opts to rely on advice of

12   counsel.

13            THE COURT:  Then the net effect of what you

14   suggest could be to negate what the Court did and its

15   holding.  Then you get the inference either way.  I suggest

16   to you that it's really not, it's really probably not

17   correct to assume that the jury is going to apply the Law

18   and Order, LA Law -- I am dating myself, whatever the

19   current --  whatever they are showing us.

20            MR. BERQUIST:  That is fully consistent with

21   what the Federal Circuit said.  I think if we take away

22   facts, then how is that fact within the totality?  Because

23   you have taken it out of the totality.  Now it's partial

24   totality.  So the Federal Circuit did address that by saying

25   let it all go in and let the jury figure out what to do with

1   it, but without the presumption.

2           The one last thing I wanted to mention, I think

3   counsel identified the competing instruction on willfulness,

4   our 28A and their 28B, which they say is based on not this

5   Court's rules --

6           THE COURT:  The Northern District.

7           MR. BERQUIST:  -- but the Northern District of

8   California.  I went and looked up the Northern District of

9   California.  The one thing that they took out of here is,

10  they go A, B, C and D.  They do format theirs similar to the

11  way the Northern District does.  But the Northern District

12  has an E as well.  And it says whether the alleged infringer

13  relied upon legal opinion that appeared to be

14  well-supportable and believable and that it advised the

15  alleged infringer that the product/method did not infringe,

16  and it goes on.

17          So even under that standard, I don't know when

18  this Northern -- it is apparently after Knorr-Bremse because

19  it cites it in a footnote.  So it's one of the factors

20  that -- I am not saying that the Northern District of

21  California ought to be controlling because I am not sure

22  that I agree with what they have done.  I think we need to

23  look at the Federal Circuit and say, you can't give the

24  instruction, you can't presume that it was bad or would have

25  been bad had we gotten one.  But here is the facts, we are

43

1    not relying upon one.  So that is a factor.

2                    THE COURT:  The Court is going --

3                    MR. HAMEL:  Your Honor, may I speak to that

4    issue?

5                    THE COURT:  Sure.

6                    MR. HAMEL:  I have the Northern District

7    California rules for jury instructions.  I should say in

8    advance that this was certainly something -- there is a list

9    of individuals who were involved in coming up with these, I

10   imagine they were both plaintiffs and defense counsel.  So

11   it's probably right down the middle of the road.  Paragraph

12   E Mr. Berquist refers to we deleted.  There is a footnote

13   attached to that, Footnote 7.  Factor E should be included

14   only if the alleged infringer relies on a legal opinion as a

15   defense to an allegation of willful infringement.  And it

16   cites Knorr.

17                   THE COURT:  Okay.

18                   It's worth pointing out at this time, since we

19   are talking about model jury instructions, that Delaware's

20   are a little dated.  In point of fact, a committee of the

21   Patent Bar has been working on, they have actually submitted

22   a revised proposal, set of revised instructions to the

23   judges, which, with all due respect to all of the hard work

24   that went into it, the judges have not found satisfactory,

25   so are going to engage in a longer-term process, hopefully

44

1     with some academics, to assist in that process.

2                    Mr. Crawford, were you part of that?

3                    MR. CRAWFORD:  No.  I was back in the '93

4     version, Your Honor.

5                    THE COURT:  With Judge McKelvie?

6                    MR. CRAWFORD:  Yes.  I am dating myself.

7                    THE COURT:  So to the extent that -- I just say

8     to the extent that the Delaware rules or model instructions

9     inform further considerations for us, you should keep that

10    in mind insofar as their consideration of substantive law

11    issues.

12                   So the Court will reserve on both of these

13    motions.

14                   Let me take care of one that is fairly simple,

15    in my view.  I am not going to entertain argument on it,

16    because we have a lot to do and, quite frankly, I feel

17    pretty strongly that the plaintiff is correct as to

18    Defendants' No. 6, that is, Samsung's and Sprint's joint, it

19    is styled as Samsung's and Sprint's joint motion to preclude

20    ITT from offering at trial evidence and/or argument

21    regarding infringement under the doctrine of equivalents.

22                   I believe that this is one that ITT has

23    suggested is a stealth motion for summary judgment, and I

24    tend to agree with that view.  I am going to summarily deny

25    defendants' motion.

# EXHIBIT K

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ITT MANUFACTURING ENTERPRISES, INC.,    )
                                        )
              Plaintiff,                )
                                        )
        v.                              )        Civil Action No. 03-1086 GMS
                                        )
SAMSUNG TELECOMMUNICATIONS,             )
AMERICA, LP, and SAMSUNG ELECTRONICS    )
CO., LTD,                               )
                                        )
                                        )
              Defendants.               )

## ORDER

WHEREAS, on November 30, 2005, Samsung Telecommunications America, LP and Samsung Electronics Co., Ltd. (collectively, "Samsung") filed a motion *in limine* to exclude from evidence and argument its decision not to rely on advice of counsel as a defense to the plaintiff's willful infringement allegation;

WHEREAS, on December 15, 2005, ITT Manufacturing Enterprises ("ITT") filed an opposition to Samsung's motion, asserting that Samsung did not obtain advice of counsel because the only "opinions" on which it relies are two emails sent by Qualcomm, who is Samsung's supplier and, therefore, not an uninterested party to the litigation;

WHEREAS, ITT's opposition further asserts that the court should permit it to advise the jury that Samsung did not seek advice of counsel;

WHEREAS, the court conducted a pretrial conference on January 23, 2005, at which it heard oral argument from the parties on Samsung's motion; and

WHEREAS, after having considered the parties arguments and written submissions, the court concludes that it is necessary to determine, *in camera*, whether the Qualcomm emails qualify as advice of counsel;

IT IS HEREBY ORDERED that:

1.     Samsung shall produce the two Qualcomm emails for *in camera* review within three

(3) days of the date of this Order.

Dated: January **31** , 2006



UNITED STATES DISTRICT JUDGE

FILED

JAN 3 1 2006

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

2