# EXHIBIT 1

## RESPONSE TO TELCORDIA'S MOTION *IN LIMINE* NO. 1
## RE: TELCORDIA'S PRIOR CLAIM CONSTRUCTION POSITIONS AND
## CONCESSION OF NONINFRINGEMENT OF THE '306 PATENT

This Court should dismiss the first part of Telcordia's motion *in limine* as moot because defendants will not, and never intended to, publish Telcordia's numerous failed claim construction positions to the jury. Had Telcordia met and conferred with Defendants before filing this motion, as Defendants repeatedly requested, the Court would never have been burdened with this issue. Instead, Telcordia refused to meet and confer as required by the Court's rules and now the Court's and Defendants' time has been wasted addressing a non-issue.

This Court should deny the second part of Telcordia's motion *in limine* because the fact that Defendants do not infringe the '306 patent is probative of several issues, including issues Telcordia admittedly intends to try to the jury. Telcordia has not explained why this probative fact is unduly prejudicial and instead merely asserts that it is prejudicial. That is not enough.

## I.    TELCORDIA'S REQUEST THAT THE COURT PRECLUDE DEFENDANTS FROM REFERENCING TELCORDIA'S CLAIM CONSTRUCTION POSITIONS IS MOOT

The first part of Telcordia's motion asks the Court to "preclude defendants from referencing claim construction positions advocated by Telcordia during the claim construction phase of this litigation." D.I. 287 at 1.[1] Telcordia's request is surprising given that Telcordia's own trial exhibit list is littered with claim construction briefs and attachments that were filed during this litigation. After receiving Telcordia's exhibit list, Defendants requested that Telcordia withdraw exhibits that were not relevant to any issues at trial, including its claim construction briefs. Exh. 1-A [Email from E. Reines dated January 20, 2007]. Amazingly, however, Telcordia, refused to remove its claim construction briefs from the exhibit list even though it now asks the Court to preclude Defendants from referencing the positions set forth in those briefs. Telcordia cannot have it both ways.

This issue could have been resolved without involving the Court had Telcordia engaged in the meet and confer process that Defendants requested. Two weeks before the date for filing

---

[1]    All D.I. numbers are from *Telcordia v. Cisco*, Civil Action No. 04-876-GMS.

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

motions *in limine*, Defendants sought to meet and confer with Telcordia to determine whether the parties could avoid burdening the Court with issues on which there was no genuine dispute. To further that process, Defendants provided Telcordia with a list of motions *in limine* that they anticipated filing and sought the same from Telcordia.  Exh. 1-B [Email from E. Reines dated January 24, 2007].  Telcordia, however, flatly refused to participate in the meet and confer process.  Exh. 1-C [Email from J. Williamson dated February 5, 2007].  As a result, Telcordia has unnecessarily burdened the Court with an issue where there seems to be no dispute. Defendants have no present intention of referencing the parties' claim construction positions assuming Telcordia, notwithstanding its insistence on including its claim construction briefs on its exhibit list, does not intend to reference those constructions.  If that is Telcordia' position, then there is no dispute.[2]

## II.    THE FACT THAT DEFENDANTS DO NOT INFRINGE THE '306 PATENT IS PROBATIVE OF SEVERAL ISSUES AND IS NOT UNDULY PREJUDICIAL TO TELCORDIA

In contrast to Telcordia's claim construction positions, the fact that Defendants do not infringe the '306 patent is relevant and highly probative to several issues that will be tried to the jury.  Because all relevant evidence against a party is inherently prejudicial,[3] Rule 403 of the Federal Rules of Evidence serves to exclude relevant evidence only if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."  Fed. R. Evid. 403; *Kempe v. Dometic Corp.*, 866 F. Supp. 817, 819 (D. Del. 1994). Here, the absence of any undue prejudice under Rule 403 is confirmed by Telcordia's own brief, which simply makes a conclusory statement regarding prejudice but provides no analysis to support that conclusion.  D.I. 287 at 4.

---

[2]  Of course, if Telcordia raises the issue of prior claim construction positions, Defendants reserve the right to respond appropriately.

[3]  *See, e.g.,* Wigmore on Evidence §10(a); *Corrigan v. Methodist Hosp.*, 874 F. Supp. 657, 658 (E.D. Pa 1995).

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

**A.    Telcordia's Concession of Noninfringement is Relevant to Defendants' Defenses to Telcordia's Claims of Willful Infringement**

The fact that Defendants do not infringe the '306 patent is highly relevant to Telcordia's claims of willful infringement. ██████████████████████████████████████ ███████████████████ *See, e.g.,* Exh. 1-D [Letter from Stanley Rosen to Cisco dated June 16, 1994]; Exh. 1-E [Letter from Vincent Kovalick to Cisco dated April 12, 1999]. The fact that Defendants do not infringe the '306 patent is relevant to providing the jury with the proper context concerning the sequence of events leading up to litigation and trial, especially with regard to Defendants' belief that they have meritorious defenses against Telcordia's claims. *See, e.g., Delta-X Corp. v. Baker Hughes Prod. Tools, Inc.,* 984 F.2d 410, 413 (Fed. Cir. 1993) (explaining that defendants "may generally avoid enhanced damages with a meritorious good faith defense and a substantial challenge to infringement").

Presented with analogous circumstances, courts have declined to exclude a plaintiff's concession of non-infringement. *See, e.g.,* Exh. 1-F [*Samsung Elecs. Co. v. Quanta Comp., Inc.,* Civil Action No. 00-4524-VRW, 2006 WL 2850028, at *2 (N.D. Cal. Oct. 4, 2006)]. In *Samsung,* the plaintiff stipulated to the dismissal of five asserted patents and then, pursuant to Rule 403, moved *in limine* to preclude the defendants from referencing the stipulation during trial. *Id.* at *2. The court denied plaintiff's motion, holding that "whether [the defendant] reasonably believed it had a meritorious defense is a consideration in determining willfulness; that [defendant] voluntarily dismissed five claims of patent infringement is relevant to the reasonability of such a belief." *Id.*

**B.    Telcordia's Concession of Noninfringement is Relevant to the Strength and Value of Telcordia's Asserted Patents**

Telcordia's concession of Defendants' non-infringement of the '306 patent also is relevant to the jury's ability to evaluate the strength and value of the '763 and '633 patents relative to the '306 patent. ██████████████████████████████████████ ████████████████████████████████████████████████████

3

[REDACTED]

Accordingly, the fact that Defendants do not infringe the '306 patent is highly probative to the jury's determination of the appropriate royalty rate for the '763 and '633 patents.[4]

## C.    Telcordia's Concession of Noninfringement is Relevant to Telcordia's Litigation and Settlement Agreement with Fore

Telcordia has stated that it "reserves its right to rely upon agreements with FORE Systems and, presently, it seems likely that such agreements would be part of our case." Exh. 1-H [Email from J. Williamson dated January 26, 2007]. For the reasons explained in Defendants' Motion *in Limine* No. 4, D.I. 292, the Court should exclude any reference to the *Fore* settlement and license agreements. If, however, the *Fore* settlement and license agreements are introduced into evidence, then Defendants will need to explain to the jury that they do not infringe the '306 patent to explain the context of the *Fore* settlement and license agreement.

The *Fore* settlement and license agreements were a direct result of a litigation between Telcordia and Fore involving the '306 patent.

[REDACTED]

In order for the jury to place the *Fore* settlement in the proper context, Defendants will need to explain that the dollar amount Telcordia recovered as part of the *Fore* settlement is

---

[4]    The fact that Defendants do not infringe the '306 patent is also relevant because it will provide the jury with the proper context and background for Defendants' invalidity and unenforceability arguments with respect to the '306 patent.

4

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

largely irrelevant because that agreement admittedly was driven by Fore's concern about infringing a patent that Telcordia concedes Defendants do not infringe. The fact of non-infringement is highly probative of the relevance and weight that the jury should give to the ▮ ▮ ▮ ▮ The jury is entitled to take the value of the *Fore* settlement and deduct the amount of that value created by Fore's risk of infringing the '306 patent, a risk defendants no longer bear. The jury cannot do that without knowing Defendants do not infringe the '306 patent. [5]

---

[5] To the extent Telcordia intends to rely on its litigation with Fore to explain its long delay in bringing these actions against Defendants, Telcordia's concession of noninfringement of the '306 patent is also relevant to put Telcordia's excuse for its delay in its proper context.

5

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

# TAB A



Edward Reines /SV/WGM/US
01/20/2007 03:15 PM

To   john.williamson@finnegan.com,  don.dunner@finnegan.com

cc

bcc

Subject   Pretrial Statement – Resend

---

Gentlemen:

As we begin the review of Telcordia's exhibit list -- even as revised and corrected -- we have fundamental concerns.  The list Telcordia provided contains voluminous, extraneous materials that prejudicially compromise our ability to review the list and prepare our portions of the pretrial statement.  The following are glaring examples of extraneous materials:

⊙   Pleadings, judicial opinions, and briefs.  While some number of such documents might conceivably have some role in a trial, the indiscriminate inclusion of such documents, including the claim construction briefing and Telcordia's summary judgment letters, including one with 83 exhibits, is not proper.  Mr. Balick's letter to the Court regarding a request for oral argument is another example of something that should not be on Telcordia's exhibit list.

⊙   Scores of documents only relevant to the '306 Patent non-infringement claims -- even though Telcordia does not deny infringement and does not even believe that this issue is within the scope of the trial.  To cite merely one example, Telcordia includes all the deposition exhibits to the Carroll and Takefman deposition even though they were witnesses on the '306 patent's accused products and at most a small fraction of their exhibits are even arguably relevant to this trial.  Indeed, there are many instances where entire sets of deposition exhibits are included even though they include materials that are obviously irrelevant.  This is a major problem area.

⊙   Expert Reports submitted by Telcordia's own experts.  For the same reason Telcordia withdrew its designations of its damages' experts deposition, this is improper.

⊙   Multiple copies of identical exhibits in direct violation of Judge Sleet's rules.  As an example, the 306 Patent is identified many times.

Please review Telcordia's list and eliminate extraneous materials so Telcordia can provide us a cleaned up list as soon as possible.  In that regard, let us know right away whether you intend to do that.  Whether these issues arise from oversight or otherwise is, for present purposes, irrelevant.  What matters is that we receive a reasonable list promptly.

Best,

Ed

< END >

# TAB B

Edward Reines /SV/WGM/US    To  "Donald R. Dunner" <don.dunner@finnegan.com>
01/24/2007 06:03 AM      cc

                               bcc

                     Subject  Telcordia Pretrial Statement

Don:

Thank you for taking the time yesterday to meet and confer concerning the limine motions we plan to file in view of our recent receipt of Telcordia's portion of the pretrial statement. This is our current position in the middle of a meet and confer and should not be perceived as final. Please respond as soon as you can on the open issues, given the upcoming deadline.

(1) Fore settlement -- The parties agreed that defendants should file a motion if they want because Telcordia plans to rely on this material.

(2) Uncorroborated '633 conception date -- The parties agreed that defendants should file a motion if they want because Telcordia plans to rely on pre-September 1991 events on the inventorship issue.

(3) Willfulness opinion -- The parties agreed that defendants should file a motion if they want because Telcordia plans to rely on the absence of a disclosed opinion of counsel.

(4) Exclude undeposed witnesses for which timely depositions are not offered -- Telcordia does not want to take a position on the issue until defendants serve their witness list. Defendants plan to file a limine motion.

(5) Exclude FTI witnesses -- Telcordia reserves the right to call the FTI witnesses and does not know yet if it will do so. The parties agreed that defendants should file a motion if they want.

(6) Reliance on sales of platforms beyond accused modules -- Defendants are interested in precluding Telcordia from arguing that "boxes" are infringing and properly in the royalty base beyond the number of SRTS capable cards. You will look into this and get back to us with your position.

(7) References to Cisco's size/finances beyond products at issue-- Cisco is interested in precluding Telcordia from referencing Cisco's size or finances, except as it relates to the accused products. Please let us know your position.

(8) Alleged "illegal boycott" by Cisco in the SRTS standardization process -- Cisco is interested in precluding Telcordia from arguing that it was involved in an "illegal boycott." Telcordia used this phrase in its trial brief. Please confirm you will not reference any alleged illegal conduct or boycott or similar language at trial.

(9) Foreign sales -- Cisco is interested in precluding Telcordia from seeking royalties for foreign sales. Please let us know your position.

(10) Alcatel-Lucent merger -- Lucent is interested in precluding Telcordia from referencing the Lucent-Alcatel merger Please let us know your position.

Best,

Ed

# TAB C



"Williamson , John"
<John.Williamson @finnegan
.com>

02/05/2007 12:09 PM

To   <edward.reines@weil.com>

cc   <steven.cherny@lw.com>

Subject  RE: Pretrial Statement

Ed,

On your first point, Finnegan, Henderson will represent Dr. Chao in response to your subpoena.

On your second point, we believe that it is premature to meet and confer at this stage. If, after the defendants have considered the relief requested in Telcordia's motions, the defendants determine that they will stipulate to some or all of the requested relief, we will be happy to meet and confer with you at that time.

Finally, we received no response to our February 1 email asking the defendants to raise any issues regarding due dates, requested extensions, etc., for their portion of the draft joint pretrial order before the end of the week last week. As such, we expect to receive the defendants' complete portion of the draft final joint pretrial order on February 8 as set forth in our stipulation.

Regards,

John

---

**From:** edward.reines@weil.com [mailto:edward.reines@weil.com]
**Sent:** Friday, February 02, 2007 9:11 PM
**To:** Williamson, John
**Cc:** steven.cherny@lw.com
**Subject:** RE: Pretrial Statement

John,

Thank you for the response on these two points. Because we served Dr. Chao with a trial subpoena today, the service issue is now moot. Although you describe Dr. Chao as independent of Telcordia, do you still represent him in this matter?

Regarding Telcordia's potential limines, is Telcordia planning to meet and confer?

Best,

# TABS D-E

## REDACTED IN THEIR ENTIRETY

# TAB F

Westlaw.

Slip Copy                                                                    Page 1
Slip Copy, 2006 WL 2850028 (N.D.Cal.)
(Cite as: Slip Copy)

**H**
Samsung Electronics Co., Ltd. v. Quanta Computer,
Inc.N.D.Cal.,2006.Only the Westlaw citation is cur-
rently available.
       United States District Court,N.D. California.
    SAMSUNG ELECTRONICS CO, LTD, Plaintiff,
                            v.
    QUANTA COMPUTER, INC et al, Defendants.
                  **No. C-00-4524 VRW.**

                       Oct. 4, 2006.

M. Elizabeth Day, Mark Fowler, DLA Piper U.S.
LLP, East Palo Alto, CA, Alan D. Albright, Austin,
TX, for Plaintiff.
Maxwell A. Fox, Sang N. Dang, Terry D. Garnett,
Vincent K. Yip, Paul Hastings Janofsky & Walker
LLP, Los Angeles, CA, Christian Platt, Bingham Mc-
Cutchen LLP, East Palo Alto, CA, Craig R.
Kaufman, Kai Tseng, Matthew John Hult, Esq., Wil-
liam L. Anthony, Orrick Herrington & Sutcliffe LLP,
Menlo Park, CA, for Defendants.

                         ORDER
VAUGHN R. WALKER, Chief District Judge.
*1 The court has before it motions in limine filed by
both parties. As the court writes principally for the
parties, it will simply address seriatim certain issues
raised in those motions, without laying out the full
factual background of each of the motions. To the ex-
tent an issue is not addressed in this order, it is be-
cause the court has concluded that the issue is not an
appropriate subject for a motion in limine or is not
ripe for decision and will, therefore, be deemed
DENIED. The court anticipates addressing such is-
sues as they occur at trial, if necessary, and outside
the hearing of the jury, if appropriate. As the parties
are on notice of each other's contentions regarding
the admissibility of certain evidence, the court ex-
pects counsel to be well-prepared at trial to address
issues of relevance, foundation and admissibility.
*1 (1) *Samsung's motion to preclude Compal from
arguing that the IBM PC Convertible or Poqet PC
anticipate asserted claims of the 273 patent (Doc #
460)*

*1 Samsung asks the court to preclude testimony re-
garding anticipation because the court's summary
judgment order already resolved the issue. Compal
agrees, at least "in principle," but seeks clarification
that Samsung's motion would not affect Compal's
ability to argue that the prior art renders the claimed
invention obvious pursuant to 35 USC § 103.

*1 Because Compal "does not intend to argue at trial
that either the IBM PC Convertible or Poqet PC anti-
cipate the 273 patent under 35 USC § 102," this mo-
tion does not concern a material dispute. Accord-
ingly, Samsung's motion is DENIED.
*1 (2) *Samsung's motion to preclude Compal from
presenting non-infringement theories inconsistent
with the court's claim construction (Doc # 461)*

*1 Samsung's motion begins with the non-
controversial proposition that the evidence and argu-
ment at trial should conform to the court's claim con-
struction. But, as Compal notes, the relief sought by
Samsung's motion exceeds this proposition and at-
tempts to convert the court's denial of Compal's mo-
tion for summary judgment of non-infringement into
settled factual findings adverse to Compal.

*1 For example, Samsung's motion asks the court to
prevent Compal from arguing that claims 1 and 5 of
the 273 patent cannot encompass a keyboard and
keyboard controller that share any common circuitry.
But the court's order did not preclude this argument;
rather, it stated that "[a]t this point, defendants have
not convincingly demonstrated that for the keyboard
and keyboard controller to share a microprocessor
core necessarily renders them electronically and
functionally indistinct." Doc # 423.

*1 In any event, the court anticipates the parties will
not offer evidence contrary to the claim construction
order. Should that occur, the court will deal with such
evidence's admissibility at trial. Accordingly, Sam-
sung's motion is DENIED.
*1 (3) *Samsung's motion to exclude evidence of litig-
ation settlement agreements (Doc # 485)*

*2 Both parties agree that evidence, argument and

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                    Page 2
Slip Copy, 2006 WL 2850028 (N.D.Cal.)
(Cite as: Slip Copy)

testimony concerning the terms of the settlement agreements Samsung reached with third parties Inventec, Arima, Twinhead and Quanta should be excluded at trial pursuant to FRE 408. Moreover, the parties appear to agree that the *existence* of settlement agreements may be admissible for limited purposes, although the relevance of this evidence is not clear to the court.

**\*2** Federal Rule of Evidence 408 provides that "[e]vidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to validity or amount, is not admissible to prove liability or invalidity of the claim or its amount." FRE 408. This rule does not necessarily require exclusion here because the parties do not seek to offer the existence of a settlement agreement to prove "liability or invalidity of the claim."

**\*2** Yet, even with a limiting instruction, a jury may still impermissibly infer that Samsung's settlement with third parties bears on the validity of Samsung's claim vis-a-vis Compal. Hence, exclusion under FRE 403 may be appropriate if the danger of unfair prejudice-i e, the threat of this impermissible inference-substantially outweighs the evidence's probative value. According to the advisory notes, in assessing the FRE 403 calculus, the court should also consider the availability of other means of proof. See FRE 403, Advisory Committee Notes. Hence, the court will not entirely preclude reference to settlement but will require a party seeking to admit such evidence to obtain an order governing admissibility prior to offering such evidence. Accordingly, Samsung's motion is DENIED.

**\*2** *(4) Samsung's motion to preclude evidence, argument and reference to patent claims that were voluntarily withdrawn (Doc # 462)*

**\*2** Samsung moves in limine for the court to preclude Compal from referencing the five patent infringement claims previously asserted by Samsung in this action that were voluntarily dismissed by stipulation of the parties. Samsung asserts that it withdrew these patents "voluntarily [to] streamline the case and reduce the number of issues for discovery and trial." As

such, Samsung contends that reference to these patents would not satisfy FRE 402's relevance standard, or alternatively, would inflict unfair prejudice substantially outweighing any probative value under FRE 403.

**\*2** Compal argues that the five withdrawn patents may be relevant to its defense against Samsung's claim for willfulness. In particular, the withdrawn patent claims explain the timing of the written opinion Compal received from its counsel regarding potential infringement of the six patents Samsung originally asserted. Further, whether Compal reasonably believed it had a meritorious defense is a consideration in determining willfulness; that Samsung voluntarily dismissed five claims of patent infringement is relevant to the reasonableness of such a belief.

**\*3** Because referencing the withdrawn patents may be relevant to Samsung's claim for willfulness, categorical exclusion under Samsung's motion is inappropriate. Accordingly, Samsung's motion is DENIED.

**\*3** *(5) Samsung's motion to exclude evidence and argument concerning other litigation regarding the patent-in-suit (Doc # 464)*

**\*3** Samsung asks the court to exclude any evidence concerning its litigation against other defendants. In particular, Samsung worries that a jury may speculate that "(1) Samsung lost these actions; (2) these actions still are pending or (3) Samsung did not, or was unable to, reach agreement with these defendants." Doc # 464.

**\*3** In response, Compal argues that testimony and evidence adduced at the prior litigation concerning the 273 patent is directly relevant on at least two grounds: "(1) testimony by Samsung's employees agents in the prior litigation is admissible for all purposes; and (2) prior testimony at deposition and in hearings is admissible for impeachment on cross-examination." Doc # 499.

**\*3** At the hearing on the present motions, the parties resolved this dispute; namely, Compal will not refer to other litigation concerning the patent-in-suit. Accordingly, Samsung's motion is DENIED.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 2850028 (N.D.Cal.)
(Cite as: Slip Copy)

Page 3

*3 (6) *Samsung's motion to preclude admission of Dr Swatzlander's deposition testimony (Doc # 465)*

*3 Samsung asks the court to prevent Compal from making any reference to testimony from Dr Swartzlander, an expert Samsung retained in the Texas litigation. Dr Swartzlander's testimony allegedly fails under FRE 702 for being "conclusory and unsupported by the evidence." The court rejects Samsung's questionable attack of its own expert. While Samsung is free to switch legal theories during the course of litigation, it may not obscure the resulting inconsistencies and twist the rules of evidence to avert impeachment.

*3 Accordingly, Samsung's motion is DENIED. To the extent Samsung raises hearsay objections concerning Dr Swartlander's availability pursuant to FRE 804, the court reserves decision.

*3 (7) *Samsung's motion to preclude Compal from presenting certain incorrect and inadmissible evidence concerning Samsung's licensing activities (Doc # 486)*

*3 During discovery in 2001, Samsung's witnesses (correctly) testified that no defendant had taken a license to the 273 patent. Samsung seeks to exclude this testimony because it cannot "cure" the "misleading testimony through rebuttal testimony from its own witnesses without giving testimony concerning the litigation settlement agreements, evidence of which should be excluded from trial under Rules 402, 403 and 408."

*3 But this testimony is not misleading. Deposition testimony in 2001 only speaks to licensing efforts as of 2001; it does not bear on events in 2006. Hence, this testimony does not force Samsung to disclose the settlement agreement because there is no plausible inference for Samsung to rebut. Moreover, Samsung can cure any prejudice without disclosing the terms of the settlement agreements. Accordingly, Samsung's motion is DENIED.

*4 (8) *Compal's motion to preclude testimony from Dr Robert G Wedig concerning undisclosed expert opinions (Doc # 473)*

*4 Compal moves for the court to prevent Dr Wedig

from asserting that the use of the patented invention increased reliability in notebook computers because Dr Wedig did not provide a complete statement of his opinion regarding this theory in his written expert witness reports.

*4 FRCP 26(a)(2)(B) requires expert witnesses to provide a written report that contains "a complete statement of all opinions to be expressed and the basis and reasons therefor." FRCP 26(a)(2)(B). An expert report is to be a detailed and complete statement of the testimony of the expert on direct examination. FRCP 26 Advisory Committee Note to 1993 amendment. If a party's expert witness, without substantial justification, fails to disclose such information, then FRCP 37(c)(1) provides that the party "shall not, unless such failure is harmless, be permitted to use [such information] as evidence at a trial." FRCP 37(c)(1).

*4 Compal's argument fails because Dr Wedig's theory is not new. Throughout his expert report, Dr Wedig acknowledges that prior art computer systems suffered from poor operation due to interference between multiple programs using hot keys and that the 273 patent resolved these interference problems. Deducing that increased reliability would result from resolving these interference problems constitutes a trivial inference, not a "new reliability theory." As such, Samsung is hardly engaging in "trial by ambush" in violation of FRCP 26(a)(2)(B). Accordingly, Compal's motion is DENIED.

*4 (9) *Compal's motion to preclude Samsung from calling Unki Kim as a witness at trial (Doc # 474)*

*4 Compal moves to preclude Samsung from calling Unki Kim as witness at trial because Samsung did not identify him to testify until September 5, 2006. Samsung asserts that Unki Kim was recently added to replace Justin Ji, who left the employ of Samsung after the December 21, 2005, discovery cut-off, although Samsung fails to inform the court precisely when Justin Ji departed or explain why it waited until last month to replace him.

*4 The issue appears to be moot in light of the bifurcation of injunctive relief claims. Accordingly, Compal's motion is DENIED.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                    Page 4
Slip Copy, 2006 WL 2850028 (N.D.Cal.)
(Cite as: Slip Copy)

*4 (10) *Compal's motion to preclude reference to pre-litigation settlement negotiations (Doc # 448)*

*4 In October 2000, prior to commencing the present suit, Samsung sent Compal a cease-and-desist letter, alleging infringement of the 273 patent. This letter triggered a series of meetings and negotiations to resolve the dispute, including offers and counter-offers regarding licensing terms. Compal contends that evidence of theses negotiations should be excluded under FRE 408. In response, Samsung argues FRE 408 does not apply because the pre-litigation negotiations dealt with licensing, not settlement.

*4 FRE 408 provides that "[e]vidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to validity or amount, is not admissible to prove liability or invalidity of the claim or its amount." FRE 408. Hence, FRE 408 may exclude evidence of pre-litigation negotiations, so long as the parties "disputed" the validity or amount of the claim.

*5 Samsung correctly notes that in patent licensing negotiations, the threat of enforcement necessarily looms in the background. Hence, the question is whether negotiations "crystallized to the point of threatened litigation." See *Big O Tire Dealers, Inc v. Goodyear Tire & Rubber Co.*, 561 F.2d 1365, 1372 (10th Cir1977).

*5 Here, the threat of litigation did not merely loom in the background. In Samsung's first communication, it demanded that Compal "immediately cease the infringement of Samsung patents, including the cessation of all manufacturing and sales of the infringing products in the various nations and territories in which Samsung has procured patent rights." Jones decl, Ex 6. When negotiations stalled, Samsung warned Compal that its "current approach to this matter [could] negatively affect [Compal's] position with Samsung and result in a serious problem after this November." Id, Ex 9. When compromise failed, Samsung followed through on its earlier threats and filed this action on October 13, 2000.

*5 Contrary to Samsung's characterization, these negotiations were not standard "business communications." Samsung expressly and impliedly threatened suit throughout the negotiations. Under these circumstances, Samsung's license offers and Compal's counter-offer are precisely the sort of settlement offers-made in an effort to avoid litigation-that FRE 408 bars. Moreover, permitting Samsung to use these licensing offers in trial would frustrate FRE 408's underlying purpose: "the promotion of the public policy favoring the compromise and settlement of disputes." FRE 408, Advisory Committee Notes.

*5 Nonetheless, FRE 408 only precludes Samsung from using these pre-litigation settlement negotiations to establish infringement or the amount of Compal's liability. Consequently, some evidence regarding the pre-litigation negotiations may be admissible. For example, to demonstrate Compal had actual notice of the 273 patent and Samsung's assertion of infringement, Samsung intends to offer Exhibit STX 227, Samsung's initial letter it sent to Compal on February 5, 1999.

*5 Because portions of the pre-litigation negotiation may satisfy FRE 408, the court declines to exclude evidence regarding the negotiations. The court anticipates addressing this issue with respect to specific evidence as it is offered at trial.

*5 (11) *Compal's motion to preclude testimony or new analysis from Paul Meyer regarding the impact of different operating systems on his damages analysis (Doc # 449)*

*5 Compal asks the court to preclude Samsung's damages expert witness, Paul Meyer, from offering any supplemental damages calculation that multiplies the designated royalty rate by a royalty base that consists only of Compal's 32U, 32U2, 32U3, 32U5, 32NN, 32T3, 32T5 and 32T6 products when sold with Windows NT. Apparently, the royalty rate presented in Meyer's expert witness report is generated by multiplying the royalty rate against a royalty base consisting of all accused Compal computer products. As such, the report does not contain any damage calculations for use if the jury finds that only claims 1, 3 and 4 of the 273 patent are infringed by certain Compal computer products sold with specific

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                    Page 5
Slip Copy, 2006 WL 2850028 (N.D.Cal.)
(Cite as: Slip Copy)

operating systems.

*6 As Samsung notes, Compal's motion is predicated on the occurrence of two contingent events: Compal must be found to infringe claims 1, 3 or 4, but not claims 5, 6 or 7 and Compal must prevail on its argument that its products using an operating system other than Windows NT do not infringer claims 1, 3 or 4. As a result, this motion does not concern a ripe controversy. If these two events occur, the court may address this issue upon Compal's renewed objection. Accordingly, Compal's motion is DENIED.

*6 (12) *Compal's motion to preclude argument attempting to swear behind Compal's prior art (Doc # 450)*

*6 Compal urges the court to preclude Samsung from swearing behind Compal's prior art references because: (1) the testimony of 273 patent's inventors cannot establish an invention before November 9, 1990, (2) Samsung's corroborating documents and testimony are either inadmissible or do not corroborate any date of conception prior to October 26, 1990.

*6 Testimony of a named inventor is inadequate as a matter of law to establish either conception or reduction to practice. *Chen v. Bourchard*, 347 F.3d 1299, 1309-10 (Fed Cir2003). Instead, testimony of an inventor must be corroborated, the adequacy of which is measured under a "rule of reason" standard. *Lack Indus, Inc v. McKechnie Vehicle Components USA, Inc.* 322 F3d 1335, 1349 (Fed Cir2003).

*6 Although questions of law, the issues of priority, conception and reduction to practice often require factual determinations by a jury. *Cooper v. Goldfarb*, 154 F3d 1321, 1327 (Fed Cir1998). Hence, Compal's motion attempts to turn a factual issue, which encompasses the apparently disputed meaning of certain evidence and the disputed credibility of witnesses, into a *de facto* summary judgment issue. The court declines to resolve these factual disputes.

*6 The only evidentiary issue posed in Compal's motion is whether Mr Goodman's daily planner constitutes inadmissible hearsay. The court finds that the statements in the planner evidence Mr. Goodman's then-present state of mind under FRE 803(3), which

exempts "statement[s] of the declarant's then existing state of mind * * * (such as intent, plan, motive, design, mental feeling, pain and bodily health)." FRE 803(3). Accordingly, Mr. Goodman's daily planner does not require exclusion under FRE 802 and Compal's motion is DENIED.

*6 IT IS SO ORDERED.

N.D.Cal.,2006.
Samsung Electronics Co., Ltd. v. Quanta Computer, Inc.
Slip Copy, 2006 WL 2850028 (N.D.Cal.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# TAB G

## REDACTED IN ITS ENTIRETY

# TAB H



"Williamson , John"
<John.Williamson @finnegan
.com>

01/26/2007 03:56 PM

To    <edward.reines@weil.com>

cc    <steven.chemy@lw.com>

Subject   Telcordia v. Cisco / Lucent

Ed,

I write in response to your January 24 email to Don Dunner. You have asked that we "respond to each point with []our position." In your email you said that your positions "should not be perceived as final ." We echo that point as to our responses below .

Point 1

You wrote:

"(1) Fore settlement -- The parties agreed that the defendants should file a motion if they want because Telcordia plans to rely on this material ."

We are unsure exactly how to interpret your statement . That said, Telcordia reserves its right to rely upon agreements with FORE Systems and , presently, it seems likely that such agreements would be part of our case.

Point 2

You wrote:

"(2) Uncorroborated '633 conception date -- The parties agreed that defendants should file a motion if they want because Telcordia plans to rely on pre -September 1991 events on the inventorship issue ."

Again, we are unsure exactly how to interpret your statement , and we disagree with your characterization of the issue entirely . If what you are referring to is the answer that Telcordia provided in response to Cisco interrogatory no . 8, we intend to rely upon that answer.

Point 3

You wrote:

"(3) Willfulness opinion -- The parties agreed that defendants should file a motion if they want because Telcordia plans to rely on the absence of a disclosed opinion of counsel."

Again, we are unsure exactly how to interpret your statement and disagree with your characterizations. Telcordia reserves the right to address the fact that the defendants did not identify any opinion of counsel during discovery, on their privilege logs or otherwise.

Point 4

You wrote:

"(4) Exclude undeposed witnesses for which timely depositions are not offered -- Telcordia does not want to take a position on the issue until defendants serve their witness list. Defendants plan to file a limine motion."

Again, we are unsure exactly how to interpret your statement. You are correct to note that it is premature to ask Telcordia to agree to offer and conduct additional depositions of potential trial witnesses before Telcordia has seen the defendants' proposed witness list (i.e., before Telcordia has any understanding of the number and identity of potential additional deponents).

If you are asking for an agreement to continue deposition discovery between now and the trial, we do not believe that the parties would be able to so agree. Discovery has long been closed and reopening depositions at this stage would violate the Court's scheduling order. Moreover, the Court's pretrial order requires each party to state that it has completed discovery, and indicates that absent good cause shown no further discovery will be permitted. As such, if we were to propose the continuation of deposition discovery at this stage it seems that leave of Court would be required. In sum, while we certainly are not foreclosing the possibility of agreement on this issue, we note that there are logistical hurdles, and that it is premature to consider the issue before Telcordia has had a chance to evaluate the defendants' witness list.

Point 5

You wrote:

"(5) Exclude FTI witnesses -- Telcordia reserves the right to call the FTI witnesses and does not know yet if it will do so. The parties agreed that the defendants should file a motion if they want."

Again, we are unsure exactly how to interpret your statement and we disagree with your characterizations. The proposed FTI witnesses would be offered only to authenticate

summaries under Fed. R. Evid. 1006.  That would be the entire scope of their testimony.  The testimony would be tailored to allow for the expeditious and smooth presentation of voluminous sales data.

Point 6

You wrote:

"(6)  Reliance on sales of platforms beyond accused modules -- Defendants are interested in precluding Telcordia from arguing that "boxes" are infringing and properly in the royalty base beyond the number of SRTS capable cards.  You will look into this and get back to us with your position."

Again, we are unsure exactly how to interpret your statement and we disagree with your characterizations.  Additionally, we have been unable to address this issue fully with all of the necessary members of our team.  We will get back to you as soon as possible.

Point 7

You wrote:

"(7) References to Cisco's size / finances beyond products at issue -- Cisco is interested in precluding Telcordia from referencing Cisco's size or finances , except as it relates to the accused products.  Please let us know your position."

Again, we are unsure exactly how to interpret your statement.  Telcordia reserves its right to reference Cisco's size and finances.

Point 8

You wrote:

"(8) Alleged 'illegal boycott' by Cisco in the SRTS standardization process  -- Cisco is interested in precluding Telcordia from arguing that it was involved in an 'illegal boycott.'  Telcordia used this phrase in its trial brief.  Please confirm you will not reference any alleged illegal conduct or boycott or similar language at trial ."

Again, we are unsure exactly how to interpret your statement and we disagree with your characterizations.  Specifically, we don't know what you mean by "or similar language." Telcordia's identification of a "self styled illegal boycott" is based upon contemporaneous emails drafted by and circulated among Cisco employees.  Telcordia reserves all rights to use that evidence.

Point 9

You wrote:

"(9)  Foreign sales -- Cisco is interested in precluding Telcordia from seeking royalties for foreign sales.  Please let us know your position."

Cisco has no basis to preclude Telcordia from seeking royalties from foreign sales , and the matter would be properly before (and decided by) a jury.

<u>Point 10</u>

You wrote:

"(10)  Alcatel-Lucent merger -- Lucent is interested in precluding Telcordia from referencing the Lucent-Alcatel merger.  Please let us know your position."

Telcordia reserves its right to reference the Alcatel -Lucent merger.

Regards,

John


This e-mail message is intended only for individua(s) to whom it is addressed and may contain information that is privileged, confidential, proprietary, or otherwise exempt from disclosure under applicable law. If you believe you have received this message in error please advise the sender by return e-mail and delete it from your mailbox Thank you.

# EXHIBIT 2

RESPONSE TO TELCORDIA'S MOTION *IN LIMINE* NO. 2
RE: EXPERT WITNESS ON '633 PATENT INVALIDITY AND UNENFORCEABILITY

Telcordia seeks to preclude Defendants from using their chosen expert on invalidity and unenforceability of the '633 patent. Telcordia's motion *in limine* paints Telcordia as the aggrieved party, held hostage and prejudiced by Defendants' consolidation of experts. In fact, Defendants' consolidation of experts is the natural result of *Telcordia*'s own actions, and it is the *Defendants, Court and jury* – not Telcordia – that stand to be prejudiced.

I.     GOOD CAUSE EXISTS FOR DEFENDANTS' CONSOLIDATION OF EXPERTS

    A.     Consolidation is the Natural Result of the ITC Action

Telcordia sued Lucent, Cisco, and Alcatel in three separate actions asserting different sets of patents against each defendant. See D.I. 1 in C.A. Nos. 04-874, 04-875 and 04-876. Initially, each defendant retained its own expert: Cisco retained Professor Anthony Acampora, Lucent retained Professor Wayne Grover, and Alcatel retained Dr. Vincent Jones. Throughout the case, Defendants sought to coordinate the discovery process to avoid needless repetition and to make trial more efficient. Defendants continued this level of coordination in expert discovery, agreeing that each defendant would compromise on its own chosen expert so that each retained expert would submit an opening report on invalidity and unenforceability on one patent.

Telcordia's motion arises from events triggered by Telcordia's eleventh-hour International Trade Commission filing. On May 15, 2006, nearly two years after filing suit before this Court and with expert discovery about to commence, Telcordia initiated a parallel investigation before the ITC, asserting the same patents against largely the same products. Defendants were presented with the option of staying their respective district court actions. *See* 28 U.S.C. § 1659. Defendants each had 30 days to make their statutory election.

Before this election had to be made, the parties were required to serve opening expert reports. D.I. 183 in C.A. No. 04-876. None of the defendants had determined at that time whether to stay the district court action. As a result, on June 28, 2006, each defendant's expert submitted a report addressing invalidity and unenforceability of one patent on behalf of all defendants. Dr. Grover addressed the '763 patent; Dr. Acampora addressed the '306 patent; and

1

Dr. Jones addressed the '633 patent.

On July 13, 2006, Alcatel exercised its right to stay its district court action. Due to the significant investment made by the parties and Court in this case, Cisco and Lucent chose to go forward in this Court, even though they would also have to proceed in the ITC. D.I. 188 in C.A. No. 04-876; D.I. 200 in C.A. No. 04-875. On July 18, the Court stayed the Alcatel case.

Lucent and Cisco were left with three technical experts but believed that it would be more efficient and helpful to the jury and the Court to reduce the total number of experts testifying at trial. Defendants promptly informed Telcordia that Cisco's expert, Dr. Acampora, would submit the reply invalidity report on the '633 patent when it was due. Exh. 2-A. Dr. Acampora already had submitted a non-infringement report on the '633 patent (which is not the subject of Telcordia's motion *in limine*) and therefore would be testifying on the '633 patent regardless. To streamline the proceeding so only one expert would testify on the '633 patent and to reduce the total number of experts, Defendants proposed that Dr. Acampora adopt Dr. Jones's opening report for purposes of trial. *Id.* Defendants hoped this approach would resolve the issue of two defendants having three technical experts caused by Telcordia's belated filing of its ITC action. Telcordia objected, insisting that Defendants use three experts. Exh. 2-B.

Two days later, and on the Court's scheduled date for exchanging reply reports, Defendants submitted a '633 invalidity and unenforceability reply report from Dr. Acampora.[1,2]

---

[1] On August 11, 2006, Telcordia filed a Motion to Preclude and Request to Compel seeking an order precluding Dr. Acampora from testifying on invalidity and unenforceability of the '633 patent and compelling further deposition time for Dr. Jones. D.I. 216 in C.A. No. 04-876. The Court denied Telcordia's preclusion request as premature, and its discovery request as moot and for failure to comply with the Court's discovery practice. D.I. 280 in C.A. No. 04-876.

[2] Telcordia makes much of the fact that Defendants did not seek the Court's advance permission to serve Dr. Acampora's rebuttal report. But Dr. Acampora's report was timely filed, consistent with the Court's rules. The real issue was Defendants' request of Telcordia that Dr. Acampora be allowed to sponsor the Jones report at trial and the steps Defendants were willing to take to mitigate any potential prejudice. Telcordia declined (and continues to decline) to work this out.

Contrary to Telcordia's suggestion, there was no disrespect or disregard for the Court's rules (except for Telcordia filing a premature motion that was inconsistent with the Court's procedures). To the contrary, and consistent with the Court's ruling on Telcordia's Motion to Preclude, Defendants believed a discussion of which experts would testify at trial to be appropriate for the pretrial phase, and accordingly did not wish to prematurely raise such an issue.

*CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER*

**B.    Consolidation Will Streamline the Trial**

Consistent with the goal of "secur[ing] the just, speedy, and inexpensive determination of every action," Fed. R. Civ. P. 1, Defendants' consolidation of experts increases the efficiency of trial and reduces potential jury confusion.

Recognizing the value in streamlining the trial presentation, Telcordia also opted to offer only two expert witnesses, as opposed to the three experts it originally designated. Telcordia will present a single expert, Dr. Clark, to testify on the '633 patent, and another expert, Dr. Pruncal, to testify on the '306 and '763 patents. Defendants propose to do the same thing: to use Dr. Acampora on the '306 and '633 patents, and Dr. Grover on the '763 patent.

If Telcordia's motion is granted, Defendants would be forced to present one expert on '306 invalidity and unenforceability, '633 non-infringement, and on rebuttal of Telcordia's '633 invalidity and unenforceability issues, but to present a separate expert to testify regarding Defendants' '633 invalidity and unenforceability positions in their case-in-chief. Having two separate experts testify as to these subjects is inefficient for the Court, the jury and the litigants. Instead, under Defendants' approach, the jury will be presented with a single expert to testify as to the '633 patent from Defendants' perspective and a single expert to testify as to that patent from Telcordia's perspective. Defendants believe that their presentation, and as a result, the jury's understanding of the issues, will be meaningfully enhanced if one expert addresses these topics. This is particularly so in view of the technical density of the '633 patent.

## II.    TELCORDIA WILL NOT SUFFER ANY PREJUDICE

Telcordia's only assertion of prejudice is that Dr. Acampora "expressly distanced himself" from Dr. Jones's report on invalidity and unenforceability of the '633 patent. Ironically, Telcordia's claims of prejudice from this "distancing" are belied by the fact that the very testimony Telcordia points to was elicited during Telcordia's two-day deposition of Dr. Acampora. During that deposition, Telcordia had, and took, the opportunity to fully explore Dr. Acampora's opinions, including his adoption of Dr. Jones's opinions. Indeed, Defendants even offered Telcordia a third day of deposition with Dr. Acampora regarding invalidity of the '633

*CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER*

patent to mitigate any alleged "prejudice" caused by reducing the number of testifying experts.[3]

In any event, Telcordia's deposition examination of Dr. Acampora revealed that, rather than "distancing" himself from Dr. Jones's opinions, Dr. Acampora embraced them. Dr. Acampora expressly endorsed those opinions and made clear that "in terms of [Dr. Jones's] conclusions and the opinions that he expresses, I do agree with those." Exh. 2-C; Exh. 2-D at 433-38. The only "distancing" that Telcordia can point to is Dr. Acampora's statement in deposition that, naturally, had he been asked to put pen to paper and author a report, "I might have worded some things a little bit differently." *Id.* at 433-35. However, when asked what he might have worded differently, Dr. Acampora could not identify anything:

> Q. I just asked you if there were any portions of the report that you're aware of that you would rewrite.
>
> A. No. As we sit here now, no. If I were to take a few hours and read it, I might be able to identify some wording that I would have written differently. These are not my words, but as we sit here now, can I identify any such spot? No.

*Id.* at 436:10-17.

Telcordia's claim that it is prejudiced by this alleged "distancing" is not convincing. If Telcordia believes that this testimony is somehow inconsistent with Dr. Acampora's adoption of Dr. Jones's opinions or with his testimony at trial, Telcordia is free to cross-examine Dr. Acampora on that point before the jury. The hypothetical concern that Dr. Acampora will contradict both his adoption of Dr. Jones's opinions and his deposition testimony merely because he did not agree that he would write the report *in haec verba* is not, however, cognizable prejudice to Telcordia. *See Cardiac Sci. v. Koninklijke Philips Elecs*, Civil Action No. 03-1064, 2006 WL 3836137, *4 (D. Minn. Dec. 22, 2006) (Exh. 2-E) (allowing party to substitute new expert and noting that new expert's "analysis can be different" so long as new expert does "not testify in any manner that is contrary or inconsistent" with previous expert); *Roberts v. Galen of Virginia*, 325 F.3d 776, 783-84 (6th Cir. 2003) (precluding a new expert from deviating from the

---

[3] Telcordia has also deposed Dr. Jones on the substance of his opening report.

*CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER*

conclusions of the prior expert was a "sensible compromise" that allowed the defendant "to replace its expert without unfairly surprising" his opponent, and was "consonant with both the text and logic of Rule 37(c)(1)"); *Adams v. Cooper Indus., Inc.*, No. 03-476, 2007 WL 438236, *2 (E.D. Ky. Feb. 7, 2007) (Exh. 2-F).

This is particularly true because Telcordia *now has an opening expert report from Dr. Acampora* on invalidity and unenforceability of the '633 patent that Defendants do not object to Telcordia using during trial of this action. As part of the expert discovery process in the ITC, Dr. Acampora prepared and served an opening report on invalidity and unenforceability of the '633 patent, echoing the opinions (and in many cases, the exact words) of the Jones opening report and his own reply report from this case. In the coming weeks, Telcordia will again depose Dr. Acampora on these opinions.

## III.    DEFENDANTS WILL BE PREJUDICED

Telcordia contends that Defendants will not be prejudiced because they can present Dr. Jones to testify at trial. However, Telcordia fails to recognize that, under its proposal, Defendants will in fact have to present *two* experts to testify on the '633 patent at trial.[4] Preparation of a third expert will impose unnecessary time, expense and burden, which could be avoided if Defendants are permitted to consolidate experts and have Dr. Acampora testify on both opening and rebuttal. This is particularly true because Dr. Acampora will already be preparing to testify on non-infringement of the '633 patent and the '306 patent issues.

---

[4]  Defendants would have to prepare and present Dr. Jones to testify on Defendants' positions relating to '633 invalidity and unenforceability and separately prepare and present Dr. Acampora to testify on '306 invalidity and unenforceability and '633 non-infringement, and to rebut Telcordia's positions on '633 invalidity and unenforceability (a subject on which Dr. Jones has not prepared an expert report). Worse yet, if Telcordia's proposal is adopted *in toto*, Defendants would be precluded from presenting Dr. Acampora to testify on the separate topic of why Telcordia's invalidity and unenforceability positions are incorrect, even though he undisputedly submitted a timely report on that topic.

Moreover, although rebuttal of Telcordia's invalidity and unenforceability positions and the affirmative presentation of Defendants' defenses in their case-in-chief are different subjects of testimony, permitting Dr. Acampora to testify on both areas, as well as non-infringement, comports most closely with the Court's directive that only one witness testify per topic. Allowing Dr. Acampora to opine on these three different but related topics advances the efficiencies that the Court clearly seeks to achieve, without prejudicing Telcordia.

*CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER*

# TAB A

**From:** edward.reines@weil.com [mailto:edward.reines@weil.com]
**Sent:** Tuesday, July 25, 2006 1:10 PM
**To:** Dunner, Don
**Cc:** Steven.Cherny@lw.com; david.nelson@lw.com; Williamson, John; jessica.davis@weil.com;
Sonal.Mehta@weil.com
**Subject:** Experts

Don:

Confirming our discussion at your request:

I informed you that we plan to have Dr. Acampora adopt the Jones opening report on the '633
Patent and also submit any reply in further support.   The reason is as follows.   The defendants
have bent over backwards to avoid submitting multiple briefs, letters, and expert reports on the
issues in this case.    As part of that effort, the defendants submitted a '633 Report from Jones to
accommodate Alcatel, who has used him in the past.  Now that Alcatel's case is stayed, Cisco
and Lucent will use instead their preferred expert, Dr. Acampora.

Regarding depositions, we propose two days of expert deposition for each witness.  For Dr.
Acampora, we would make him available for a third day if you thought you needed that.

Best,

Ed

< END >

---

**The information contained in this
email message is intended only for use of the individual or entity
named above. If the reader of this message is not the intended
recipient, or the employee or agent responsible to deliver it to
the intended recipient, you are hereby notified that any
dissemination, distribution or copying of this communication is
strictly prohibited. If you have received this communication in
error, please immediately notify us by email (postmaster@weil.com),
and destroy the original message. Thank you**

This e-mail message is intended only for individual(s) to whom it is addressed and may contain
information that is privileged, confidential, proprietary, or otherwise exempt from disclosure
under applicable law. If you believe you have received this message in error, please advise the
sender by return e-mail and delete it from your mailbox. Thank you.

# TAB B



"Dunner, Don"
<Don.Dunner@finnegan.com>

07/25/2006 12:00 PM

To  <edward.reines@weil.com>

cc  <Steven.Cherny@lw.com>, <david.nelson@lw.com>, "Williamson, John" <John.Williamson@finnegan.com>, <jessica.davis@weil.com>, <Sonal.Mehta@weil.com>

Subject  RE: Experts

Ed:

Your proposal to have Dr. Acampora file a reply validity report on the '633 patent is unacceptable to Telcordia. Dr. Jones filed the opening report on behalf of all defendants and it is therefore too late to offer a new expert on this subject, particularly after Telcordia has already submitted its answering report on this very issue.

Don

**From:** edward.reines@weil.com [mailto:edward.reines@weil.com]
**Sent:** Tuesday, July 25, 2006 1:10 PM
**To:** Dunner, Don
**Cc:** Steven.Cherny@lw.com; david.nelson@lw.com; Williamson, John; jessica.davis@weil.com; Sonal.Mehta@weil.com
**Subject:** Experts

Don:

Confirming our discussion at your request:

I informed you that we plan to have Dr. Acampora adopt the Jones opening report on the '633 Patent and also submit any reply in further support. The reason is as follows. The defendants have bent over backwards to avoid submitting multiple briefs, letters, and expert reports on the issues in this case. As part of that effort, the defendants submitted a '633 Report from Jones to accommodate Alcatel, who has used him in the past. Now that Alcatel's case is stayed, Cisco and Lucent will use instead their preferred expert, Dr. Acampora.

Regarding depositions, we propose two days of expert deposition for each witness. For Dr. Acampora, we would make him available for a third day if you thought you needed that

Best,

Ed

< END >

---

**The information contained in this**
**email message is intended only for use of the individual or entity**
**named above. If the reader of this message is not the intended**
**recipient, or the employee or agent responsible to deliver it to**
**the intended recipient, you are hereby notified that any**
**dissemination, distribution or copying of this communication is**
**strictly prohibited. If you have received this communication in**
**error, please immediately notify us by email (postmaster@weil.com),**
**and destroy the original message. Thank you**


This e-mail message is intended only for individuals to whom it is addressed and may contain
information that is privileged, confidential, proprietary, or otherwise exempt from disclosure
under applicable law. If you believe you have received this message in error please advise the
sender by return e-mail and delete it from your mailbox Thank you.

# TABS C-D

## REDACTED IN THEIR ENTIRETY

# TAB E

Westlaw.

Slip Copy                                                    Page 1

Slip Copy, 2006 WL 3836137 (D.Minn.)
**(Cite as: Slip Copy)**

**H**
Briefs and Other Related Documents
Cardiac Science, Inc. v. Koninklijke Philips
Electronics N.V.D.Minn.,2006.Only the Westlaw
citation is currently available.
United States District Court,D. Minnesota.
CARDIAC SCIENCE, INC., a Delaware
Corporation, Plaintiff,
v.
KONINKLIJKE PHILIPS ELECTRONICS N.V., a
Netherlands corporation d/b/a Royal Philips
Electronics; Philips Electronics North America
Corporation, a Delaware corporation; and Philips
Medical Systems North America Company, a
Delaware corporation, Defendants,
andKoninklijke Philips Electronics N.V., a
Netherlands corporation; and Philips Electronics
North America Corporation, a Delaware
corporation, Counter Claimants,
v.
Cardiac Science, Inc., a Delaware corporation,
Counter Defendant.
**Civil No. 03-1064 (DWF/RLE).**

Dec. 22, 2006.

Bruce E. Black, Esq., David K. Tellekson, Esq.,
Heather C. Wilde, Esq., James E. Hanft, Esq.,
Robert L. Jacobson, Esq., Paul H. Beattie, Esq., and
Kevin Reiner, Esq., Darby & Darby PC; and Dennis
C. Bremer, Esq., and Matthew J. Goggin, Esq.,
Carlson Caspers Vandenburgh & Lindquist, counsel
for Plaintiff and Counter Defendant.
Adam R. Steinert, Esq., Eugene L. Chang, Esq.,
Gary Serbin, Esq., John M. DiMatteo, Esq.,
Kimberly May Rosen, Esq., Spyros S. Loukakos,
Esq., Steven H. Reisberg, Esq., Willkie Farr &
Gallagher LLP; and Lawrence J. Field, Esq., David
D. Axtell, Esq., Douglas R. Boettge, Esq., and
Harold D. Field, Jr., Esq., Leonard Street and
Deinard, PA, counsel for Defendant and Counter
Claimant.

**AMENDED MEMORANDUM ORDER AND
OPINION**
DONOVAN W. FRANK, United States District
Court Judge.
*1 On December 22, 2006, the Court docketed an
Order granting in part and denying in part Cardiac
Science's Motion for Order to Substitute Dr.
Michael Kallok for Dr. Stanley Bach, Jr. *See* Doc.
No. 546. That Order contained an omission on page
8. Specifically, the italicized portion of the
following sentence was missing: "While the Court
recognizes that this limitation will inevitably be the
subject of trial objections, *including Rule 104 offers
of proof and in limine motions,* the Court
encourages the parties to think of Dr. Bach's
testimony as contained in a three-inch electrode pad.
" Therefore, the Court now vacates the Order
contained in Doc. No. 546 and enters the following
Amended Order, which is exactly the same as Doc.
No. 546 except that it also includes the italicized
portion discussed above.

**Introduction**

*1 This matter came before the Court on December
19, 2006, pursuant to Plaintiff Cardiac Science,
Inc.'s ("Cardiac Science") Motion for Order to
Substitute Dr. Michael Kallok for Dr. Stanley Bach,
Jr. For the reasons set forth below, the Court grants
in part and denies in part the motion.

**Background**

*1 This litigation involves numerous patents owned
by Cardiac Science and Defendants Koninklijke
Philips Electronics N.V., Philips Electronics North
America Corporation, Koninklijke Philips
Electronics N.V., and Philips Electronics North
America Corporation's (collectively, "Philips") for
automatic external defibrillators ("AEDs"). AEDs
are portable electronic devices that allow a person
with no medical training to administer a

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                    Page 2

Slip Copy, 2006 WL 3836137 (D.Minn.)
(Cite as: Slip Copy)

defibrillation shock to another person who is in sudden cardiac arrest.

*1 The parties refer to four patents held by Philips-U.S. Patent Nos. 5,879,374, 5,800,460, 5,591,213, and 6,016,059-as the "self-test" patents. Generally, those patents describe an AED that can periodically test itself to ensure that the AED will work properly when needed. According to Cardiac Science, Philips' most commercially important patents in this case are the self-test patents. The present dispute concerns Cardiac Science's expert on the self-test patents. Cardiac Science wishes to substitute Dr. Michael Kallok, who has submitted a proposed expert report on the self-test patents, for Dr. Stanley Bach, Jr., who has already submitted his expert reports on the self-test patents and been deposed. Dr. Kallok has also submitted expert reports about different patents in dispute, and Philips has deposed Dr. Kallok about those reports.

## II. Procedural History Relevant to Current Motion

*1 This action was commenced on February 12, 2003. Under the Court's February 4, 2005 Order, the parties were required to exchange a list of the prior art asserted against the claims at issue no later than March 15, 2005. On October 24, 2005, Cardiac Science changed counsel. On October 30, 2005, Cardiac Science retained Dr. Kallok to serve as one of its experts, and on December 29, 2005, it retained Dr. Bach to serve as its expert for the self-test patents. In April 2006, Cardiac Science sought to have Dr. Bach appointed as a non-party expert under the protective order. Cardiac Science argued that Dr. Bach, a recently retired Medtronic employee, was uniquely qualified to render opinions on the self-test patents, and therefore, he needed access to Philips' confidential material. Philips objected, and the Court agreed in its May 8, 2006 Order, concluding that Cardiac Science had not demonstrated how Dr. Bach was different than Cardiac Science's multiple other experts (at least one of which is no longer involved in this litigation) who had been granted access under the protective order to Philips' confidential material.

*2 After the *Markman* Order and pursuant to the parties' stipulation, on May 11, 2006, the Court entered an amended scheduling order that set the following due dates: expert reports with respect to claims or defenses for each party with the burden of proof due on or before June 12, 2006; responsive expert reports due on or before July 10, 2006; reply expert reports, limited to new matters raised in responsive reports, due on or before August 9, 2006; and dispositive motions filed, briefed, and heard prior to October 17, 2006. (*See* Doc. No. 51 and 435.) Dr. Bach submitted his expert report on validity of the self-test patents on June 12, 2006, his rebuttal report on non-infringement on July 10, 2006 (which, without seeking leave of the Court, contained new opinions about why the patents were invalid), and his reply report on invalidity on August 9, 2006. Sometime thereafter, Philips' expert submitted a sur-reply report.

*2 On August 22, 2006, Cardiac Science moved for summary judgment on the issues of invalidity and non-infringement of Claims 8-10 of U.S. Patent No. 6,047,212. On August 24, 2006, Philips moved to amend the scheduling order to extend the dispositive motion deadline, which the Court denied on August 29, 2006. On that same date, Philips filed two motions-one for summary judgment of non-infringement of U.S. Patent No. 6,029,085 and one for summary judgment of non-infringement of the electrode patents. At no time did the parties discuss filing a motion for summary judgment on the self-test patents.

*2 On September 14 and 15, 2006, Philips deposed Dr. Bach. In early October 2006, Dr. Bach contacted Cardiac Science's counsel to tell him that he was unwilling to proceed as an expert. In his termination letter, he explained:
*2 My reason is that I have endured and continue to endure a great amount of stress as a result of recent personal tragedies that have occurred and continue to occur. This stress, coupled with the stress of Expert Report preparation and deposition testimony in this case has become too much to handle and still perform at a level that is acceptable to myself while maintaining some kind of retirement quality of life. It is my understanding that work stress involved in this litigation will escalate further as the trial date

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                    Page 3

Slip Copy, 2006 WL 3836137 (D.Minn.)
(Cite as: Slip Copy)

approaches and it may very well continue after trial during subsequent legal proceedings.

*2 (Dr. Bach Decl., Ex. B.) Shortly after receiving Dr. Bach's termination letter, Cardiac Science informed Philips of Dr. Bach's withdrawal, offered to make every effort to minimize the potential prejudice to Philips, and informed Philips that it intended to substitute Dr. Kallok for Dr. Bach. On October 13, 2006, the Court conducted a motion hearing on the three summary judgment motions, and, at that time, Cardiac Science informed the Court of issues concerning Dr. Bach. On November 9, 2006, Cardiac Science submitted Dr. Kallok's proposed expert report on the self-patents to Philips, which includes some opinions and prior art that are different than those contained in Dr. Bach's reports. On that same day, the Court informed that parties that they had a firm trial date in April or May 2007.

*3 When Philips would not stipulate to Dr. Kallok's substitution, Cardiac Science filed a motion for an order to substitute Dr. Kallok for Dr. Bach on November 13, 2006. In that motion, Dr. Bach, a 63-year-old man, states that his personal tragedies involve the brutal death of his father in 2004, his mother's diagnosis of Alzheimer's-related dementia in 2005, and sometime more recently the death of his mother-in-law. (Id., ¶¶ 5, 7.) He also explains that his pre-existing vision and other health problems have begun to worsen in the last few years. (Id., ¶ 4.) He describes himself as a deliberate and methodical thinker, who does not respond well in an adversarial setting, and he complains about how attorneys treat scientists. (Id. ¶¶ 8-10.)

*3 On December 11, 2006, the Court issued its Order on the summary judgment motions. Four days later, the parties agreed to begin the 16-day trial on April 23, 2007.

## Discussion

*3 The parties acknowledge that there is a dearth of cases discussing situations similar to the present dispute and that this procedural issue is governed by

Eighth Circuit law, as opposed to Federal Circuit law. In essence, the parties agree that the Federal Rules of Civil Procedure permit a court, in its discretion, to exclude untimely expert opinions unless the failure to disclose was either harmless or substantially justified. *Trost v. Trek Bicycle Corp.,* 162 F.3d 1004, 1008 (8th Cir.1998); *see also Citizens Bank of Batesville v. Ford Motor Co.,* 16 F.3d 965, 966 (8th Cir.1994) (using a four-part test).

*3 Cardiac Science states that it did not act in bad faith and asserts that the substitution is substantially justified based on Dr. Bach's inability to continue in the litigation. It argues that Philips would not be prejudiced by the substitution because Philips would have more than enough time to depose Dr. Kallok and prepare for his testimony at trial, given that there are over four months until trial. In a footnote, it mentions that Dr. Kallok has "adopted the essence of" Dr. Bach's opinions and that Dr. Kallok's modifications "do not significantly change the substantive opinions" offered by Dr. Bach. (Cardiac Science Mem. at 3, n. 2.) Further, it argues that Dr. Kallok should not be constrained to simply adopt another expert's opinions *ipsissima verba.* (Id. at 12, n. 5.) Finally, Cardiac Science offers to pay the court reporting fees for Dr. Kallok to be deposed for one day in New York.

*3 In response, Philips is sympathetic to Dr. Bach's personal issues. It points out, however, that most of his personal tragedies occurred prior to his retention by Cardiac Science and that it is highly unlikely that Cardiac Science did not know about Dr. Bach's personal history. Philips is therefore appropriately suspect of Cardiac Science's motivation for the substitution. Relying on *Dunkin' Donuts, Inc. v. N.A.S.T., Inc.,* Civ. No. 02-C-1272, 2005 U.S. Dist. LEXIS 16703 (N.D.Ill. Aug. 10, 2005), Philips explains that it does not object to the substitution as long as Dr. Kallok's report and testimony are in strict conformity with Dr. Bach's analysis and conclusions. In its memorandum, it provides charts to show how Dr. Kallok's testimony differs from Dr. Bach's and how some of Dr. Bach's opinions on invalidity were improperly contained in Dr. Bach's rebuttal report on non-infringement.[FN1] Moreover, Philips shows how both Dr. Bach and Dr. Kallok improperly rely on prior art references that were not

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2006 WL 3836137 (D.Minn.)
(Cite as: Slip Copy)

disclosed prior to the March 15, 2005 deadline.

      FN1. Philips provided additional and helpful examples at the motion hearing.

*4 If the Court does allow the substitution and does not require Dr. Kallok to testify in strict conformity to Dr. Bach, at a minimum Philips requests the following: (1) limiting Dr. Kallok to Dr. Bach's timely invalidity opinions in Dr. Bach's opening report; (2) holding Dr. Kallok to Dr. Bach's concessions during his deposition; (3) permitting Philips to file for summary judgment based on Dr. Bach's testimony; and compensating Philips for any fees and costs associated with responding to and deposing Dr. Kallok, including any necessary supplemental reports by Philips' expert witnesses. (Philips' Mem. at 2.)

*4 After considering the parties' arguments, the flexibility allowed under the discovery rules and this circuit's law, the Court in its discretion will allow Cardiac Science to substitute Dr. Kallok for Dr. Bach because the substitution is substantially justified. To minimize the inevitable prejudice to Philips caused by the substitution, the Court will limit the substitution in the following manner.

*4 First, Dr. Kallok may not testify in any manner that is contrary to or inconsistent with Dr. Bach. While the Court recognizes that this limitation will inevitably be the subject of trial objections, including Rule 104 offers of proof and in limine motions, the Court encourages the parties to think of Dr. Bach's testimony as contained in a three-inch electrode pad. Dr. Kallok's testimony must also fit into that pad; his testimony cannot enlarge the pad into a four-inch electrode pad. Dr. Kallok's analysis can be different than Dr. Bach's, but he must reach the same conclusions as Dr. Bach did. Second, Dr. Kallok's invalidity opinions must also be limited to the opinions properly disclosed in Dr. Bach's opening expert report; opinions concerning invalidity raised in his rebuttal non-infringement report are excluded. Third, with respect to prior art, Dr. Kallok may only testify with respect to prior art that was properly disclosed by the March 15, 2005 deadline and included in Dr. Bach's opening expert

report. Fourth, Cardiac Science shall submit a revised report of Dr. Kallok that is consistent with this Order.

*4 Fifth, if Philips wishes, it may depose Dr. Kallok for up to two days at a location it chooses. Cardiac Science shall pay for the court reporter fees incurred during the deposition, travel costs (if any), and the attorney fees incurred preparing for and taking Dr. Kallok's deposition.[FN2] The parties shall agree to a schedule for Dr. Kallok's revised report and deposition, if any. Sixth, Dr. Bach's deposition testimony may be used for impeachment purposes at trial consistent with the Federal Rules of Evidence.

      FN2. The Court declines to require Cardiac Science to pay for any supplement expert report prepared by Philips. Given the Court's limitations on the substitution and because the reports will not be used at trial, except perhaps for Rule 1006 purposes, the Court does not believe a supplemental report is necessary. If Philips wishes to submit one, it may do so at its own cost.

*4 The Court declines to allow Philips to file a summary judgment motion based on Dr. Bach's testimony because, but for Dr. Bach's substitution, such a motion would have been untimely. The Court, however, encourages Cardiac Science to withdraw those claims that would have been likely granted as a result of Philips' motion. Doing so will allow Cardiac Science to avoid the real possibility of a directed verdict at trial.

### Conclusion

*5 According to Dr. Bach, "[a] new expert should have no trouble adopting, supporting, and standing by my opinions." (Dr. Bach.Decl .¶ 10.) Given this, the result reached today minimizes the prejudice to both parties as a result of Dr. Bach's unwillingness to (or Cardiac Science's unwillingness to have him) continue as an expert in this case. As discussed at the motion hearing, the parties must work together to ensure that this case is

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2006 WL 3836137 (D.Minn.)
(Cite as: Slip Copy)

presented to the jury in the time allowed. Neither party benefits from having the jury empanelled longer than expected. The Court therefore urges Cardiac Science to strictly abide by the limitations outlined in this Order in order to minimize objections and sidebars at trial, which will inevitably lengthen the trial.

*5 For the reasons stated above, **IT IS HEREBY ORDERED THAT:**

*5 1. Cardiac Science's Motion for Order to Substitute Dr. Michael Kallok for Dr. Stanley Bach, Jr. (Doc. No. 533) is **GRANTED IN PART and DENIED IN PART**, as discussed above.

D.Minn.,2006.
Cardiac Science, Inc. v. Koninklijke Philips Electronics N.V.
Slip Copy, 2006 WL 3836137 (D.Minn.)

Briefs and Other Related Documents (Back to top)

• 2006 WL 1434837 (Trial Motion, Memorandum and Affidavit) Memorandum of Law In Support of Cardiac Science, Inc.'s Motion to. Designate Dr. Stanley M. Bach, Jr. A Non-Party Expert Under The Protective Order (Apr. 18, 2006) Original Image of this Document (PDF)
• 2006 WL 1434836 (Trial Motion, Memorandum and Affidavit) Cardiac Science, Inc.'s Opposition to Philips' Motion to Strike Csi's Post-Hearing Markman Briefing (Apr. 10, 2006) Original Image of this Document (PDF)
• 2006 WL 1434835 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Philips' Motion to Strike Csi's Post-Hearing Markman Briefing (Apr. 6, 2006) Original Image of this Document (PDF)
• 2006 WL 1207401 (Trial Motion, Memorandum and Affidavit) Plaintiff Cardiac Science, Inc.'s Response to Philips' Post-Markman Hearing Submission of Claim Definitions (Mar. 31, 2006) Original Image of this Document (PDF)
• 2006 WL 769470 (Trial Motion, Memorandum and Affidavit) Plaintiff Cardiac Science, Inc.'s Submission of Terms for Markman Hearing (Feb. 6, 2006) Original Image of this Document (PDF)
• 2005 WL 3621548 (Trial Motion, Memorandum

and Affidavit) Cardiac Science Inc.'s Memorandum of Law in Opposition to Philips' Motion to Compel Production of Documents and Allow Deposition Discovery (Nov. 8, 2005) Original Image of this Document (PDF)
• 2005 WL 3621545 (Trial Motion, Memorandum and Affidavit) Philips' Memorandum of Law in Support of Its Motion (1) to Compel the Production of Documents for Which Privilege was Waived and (2) to Allow Deposition Discovery Related to the Waiver (Oct. 21, 2005) Original Image of this Document (PDF)
• 2005 WL 3621539 (Trial Motion, Memorandum and Affidavit) Plaintiff's Supplemental Claim Construction Reply Brief (Oct. 14, 2005) Original Image of this Document (PDF)
• 2005 WL 3621544 (Trial Motion, Memorandum and Affidavit) Philips' Reply Memorandum of Law on Claim Construction for Twenty-Six Remaining Terms (Oct. 14, 2005) Original Image of this Document (PDF)
• 2005 WL 3024545 (Trial Motion, Memorandum and Affidavit) Cardiac Science, Inc.'s Supplemental Response Brief (Sep. 30, 2005) Original Image of this Document (PDF)
• 2005 WL 3024546 (Trial Motion, Memorandum and Affidavit) Philips' Opposition to Cardiac Science, Inc.S Supplemental Markman. Brief on Twenty-Six Remaining Claim Terms (Sep. 30, 2005) Original Image of this Document (PDF)
• 2005 WL 3024544 (Trial Motion, Memorandum and Affidavit) Philips' Memorandum of Law on Claim Construction for Disputed Terms for which Csi Asserts No Construction is Necessary (Sep. 16, 2005) Original Image of this Document (PDF)
• 2005 WL 2267305 (Trial Motion, Memorandum and Affidavit) Plaintiff Cardiac Science, Inc.'s Reply Markman Brief (Aug. 6, 2005) Original Image of this Document (PDF)
• 2005 WL 2266840 (Trial Motion, Memorandum and Affidavit) Philips' Reply Brief on Claim Construction (Aug. 5, 2005) Original Image of this Document (PDF)
• 2005 WL 2266839 (Trial Motion, Memorandum and Affidavit) Plaintiff Cardiac Science, Inc.'s Response Markman Brief (Jul. 21, 2005) Original Image of this Document (PDF)
• 2005 WL 2267304 (Trial Motion, Memorandum and Affidavit) Philips' Opposition to Cardiac

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2006 WL 3836137 (D.Minn.)
(Cite as: **Slip Copy**)

Science, Inc.'s Opening Markman Brief (Jul. 21, 2005) Original Image of this Document (PDF)
• 2005 WL 1584878 (Trial Motion, Memorandum and Affidavit) Plaintiff Cardiac Science, Inc.'s Opening Markman Brief (Jun. 10, 2005) Original Image of this Document (PDF)
• 2005 WL 1584882 (Trial Motion, Memorandum and Affidavit) Philips' Memorandum of Law on Claim Construction for Philips' Patents-In-Suit (Jun. 10, 2005) Original Image of this Document (PDF)
• 2005 WL 1584884 (Trial Motion, Memorandum and Affidavit) Philips' Memorandum of Law on Claim Construction for Csi's Patents-In-Suit (Jun. 10, 2005) Original Image of this Document (PDF)
• 2005 WL 1352739 (Trial Motion, Memorandum and Affidavit) Cardiac Science, Inc.'s Memorandum of Law in Opposition to Royal Philips' Motions to Compel (1) Additional Time to Complete the Personal Deposition of Kenneth F. Olson, (2) Associated Documents for Which Privilege was Waived; (3) the Deposition of Ra ymond F. Cohen; and (4) Motion to Reopen Discovery with Regard to Quinton Cardiology Systems, Inc. (May 11, 2005) Original Image of this Document (PDF)
• 2005 WL 1352736 (Trial Motion, Memorandum and Affidavit) Brief in Support of Expedited Motion of Philips for Clarification of the Markman Procedure (Apr. 20, 2005) Original Image of this Document (PDF)
• 2005 WL 1352734 (Trial Pleading) Plaintiff Cardiac Science, Inc.'s Reply to Defendants' Third Amended Answer with Amended Counterclaims (Feb. 8, 2005) Original Image of this Document (PDF)
• 2005 WL 1352733 (Trial Pleading) Third Amended Answer with Amended Counterclaims (Jan. 27, 2005) Original Image of this Document (PDF)
• 2005 WL 3790936 (Trial Motion, Memorandum and Affidavit) Plaintiff Cardiac Science, Inc.'s Memorandum of Law on Claim Construction for Additional Claim Terms from Philips' Patents (Jan. 17, 2005) Original Image of this Document (PDF)
• 2004 WL 3370905 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Opposition to the Philips Defendants' Motion to Compel Adequate Time for the Deposition of Kenneth F. Olson (Dec. 14, 2004) Original Image of this Document (PDF)

• 2004 WL 3370908 (Trial Motion, Memorandum and Affidavit) The Philips Defendants' Memorandum of Law in Opposition to Plaintiff Cardiac Science, Inc.'s Motion to Overrule Defendants' Objections to Expert Ted Adams (Dec. 14, 2004) Original Image of this Document (PDF)
• 2004 WL 3370900 (Trial Motion, Memorandum and Affidavit) Plaintiff Cardiac Science, Inc.'s Memorandum of Law in Support of Motion to Overrule Defendants' Objections to Expert Ted Adams (Dec. 7, 2004) Original Image of this Document (PDF)
• 2004 WL 3370902 (Trial Motion, Memorandum and Affidavit) The Philips Defendants' Memorandum of Law in Support of Its Motion to Compel Adequate Time for the Deposition of Kenneth F. Olson (Dec. 7, 2004) Original Image of this Document (PDF)
• 2004 WL 3370904 (Trial Motion, Memorandum and Affidavit) The Philips Defendants' Memorandum of Law in Support of Their Motion to Continue the Deposition of Mr. Masahiko Inomata or to Preclude Plaintiff Cardiac Science, Inc., from Using the Substance of the Deposition to Attack the Validity of Philips' Pate nts-in-Suit (Dec. 7, 2004) Original Image of this Document (PDF)
• 2004 WL 3370899 (Trial Motion, Memorandum and Affidavit) Philips' Consolidated Brief in Opposition to Plaintiff Cardiac Science's Four Motions to Compel (Sep. 7, 2004) Original Image of this Document (PDF)
• 2004 WL 3370895 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Plaintiff Cardiac Science, Inc.'s Motion to Compel Philips Electronics' Rule 30(b)(6) Deposition (Aug. 31, 2004) Original Image of this Document (PDF)
• 2004 WL 3370896 (Trial Motion, Memorandum and Affidavit) Plaintiff Cardiac Science, Inc.'s Memorandum of Law in Support of Motion to Overrule Defendants' Objections to Experts Byron Gilman and Edward Schroeppel, Ph.D. (Aug. 31, 2004) Original Image of this Document (PDF)
• 2004 WL 3370891 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Plaintiff's Motions to Extend the Pretrial Schedule Deadlines and Set a Claim Construction Schedule (Aug. 23, 2004) Original Image of this Document (PDF)
• 0:03cv01064 (Docket) (Feb. 12, 2003)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2006 WL 3836137 (D.Minn.)
(Cite as: **Slip Copy**)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# TAB F

Westlaw.

Slip Copy                                                                                                    Page 1

Slip Copy, 2007 WL 438236 (E.D.Ky.)
(Cite as: Slip Copy)

**H**
Briefs and Other Related Documents
Adams v. Cooper Industries,
Inc.E.D.Ky.,2007.Only the Westlaw citation is
currently available.Charles W. ADAMS, Jr., et al.,
Plaintiffs,
v.
COOPER INDUSTRIES, INC. and McGraw
Edison Company, Defendants.
Civil Action No. 03-476-JBC.

Feb. 7, 2007.

Charles L. Cunningham, Jr., Cunningham & Fell,
PLLC, Louisville, KY, Donna Keene Holt, Diane
Lashmit, Knoxville, TN, Nancy Seidler Eichler,
Masry & Vititoe, Westlake Village, CA, Cary L.
McDougal, Ellen A. Presby, Jory D. Lange, Jr.,
Laura J. Baughman, Scott Summy, Thomas M. Sims
, Baron & Budd, P.C., Dallas, TX, Nancy Seidler
Eichler, Masry & Vititoe, Westlake Village, CA, for
Plaintiffs.
Bert L. Wolff, Skadden Arps Slate Meagher &
Flom, New York, NY, Clifford J. Zatz, William L.
Anderson, Crowell & Moring, LLP, Washington,
DC, Elizabeth Ullmer Mendel, Harry K. Herren, Jill
Fran Endicott, Angela Logan Edwards, Mary E.
Eade, Woodward, Hobson & Fulton, LLP,
Louisville, KY, Linnea Brown, Holmes, Roberts &
Owen LLP, Denver, CO, R. Ryan Stoll, Skadden,
Arps, Slate, Meagher & Flom, Chicago, IL, Robert
Ellison Meadows, Tracie J. Renfroe, King &
Spalding LLP, Houston, TX, for Defendants.

*MEMORANDUM OPINION AND ORDER*
JENNIFER B. COFFMAN, U.S. District Judge.
*1 This matter is before the court on the defendants'
motion to strike (DE 450). The court, having
reviewed the record and being otherwise
sufficiently advised, will deny the defendants'
motion.

*1 The defendants have moved to strike the

re-designation of Ronald Mullenex and Richard
Ellis as "available testifying" experts at the trial of
this case. On April 17, 2006, the plaintiffs informed
the defendants that they intended to present the
testimony given by Mullenex and Ellis at the 1996
trial of *Amburgey v. McGraw Edison Company, et
al.* Pursuant to a request by the defendants, the
plaintiffs, on September 5, 2006, confirmed that
both Ellis and Mullenex will not appear live at the
trial. Specifically, the plaintiffs stated that Ellis had
made a career change and no longer provides expert
witness testimony. They also claimed that Mullenex
was "stale" on the details of the case and that his
prior trial testimony would be used to spare the
parties any further expense. On October 2, 2006,
however, the plaintiffs indicated that Mullenex will
testify at the trial of this case. They elaborated that
his trial exhibits would be updated to reflect locations
relevant to the current plaintiffs but that his
testimony regarding the water plume will remain
unchanged. The next day the plaintiffs informed the
defendants that Ellis was still unavailable but would
be called to testify at trial if summoned by the court
to do so.

*1 On November 30, 2006, the defendants informed
the court that they waived their objections under
Fed.R.Evid. 804(b)(1) to the admission of the
former testimony of several of the plaintiffs' expert
witnesses, including Mullenex and Ellis. Based on
that stipulation, the court entered an order on
December 19, 2006, denying as moot the
defendants' motion to strike Mullenex and Ellis as
available testifying experts. At a hearing held on
December 21, 2006, however, the defendants
notified the court that they did not intend their
stipulation as a concession on the issues raised in
their motion to strike. The court has since rescinded
that part of its December 19, 2006, order denying
the motion to strike as moot, and the issue is now
fully briefed and ripe for review.

*1 Fed.R.Civ.P. 37(c)(1) provides that "[a] party
that without substantial justification fails to disclose

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                    Page 2

Slip Copy, 2007 WL 438236 (E.D.Ky.)
(Cite as: Slip Copy)

information required by Rule 26(a) or 26(e)(1) ... is not, unless such failure is harmless, permitted to use as evidence at a trial ... any witness or information not so disclosed. In ... lieu of this sanction, the court ... may impose other appropriate sanctions." Harmlessness, not prejudice, is the key under Rule 37. *Sommer v. Davis,* 317 F.3d 686, 692 (6th Cir.2003). Exclusion is automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless. *Salgado v. Gen. Motors Corp.,* 150 F.3d 735, 742 (7th Cir.1998). The burden of proving harmlessness is on the potentially sanctioned party. *Roberts v. Galen of Virginia, Inc.,* 325 F.3d 776, 782 (6th Cir.2003).

*2 In *Roberts,* the Court of Appeals approved the district court's decision not to exclude the testimony of a defense expert, Dr. Charash, who was identified to the plaintiff at the last minute as a replacement for the testimony of another expert, Dr. Micon, who had become unavailable. The plaintiff argued, as the defendants have here, that they were not provided with the new expert's curriculum vitae or a summary of his conclusions. The district court allowed Charash to appear at trial on the condition that he was not permitted to testify differently than Micon would have. *Id.* at 783. In affirming the district court's ruling, the Sixth Circuit noted that the plaintiff's allegations seemed "relatively harmless in the context of the case" because the plaintiff had been informed that "Charash was going to follow the conclusions of Dr. Micon's original report." *Id.* The court also held that the district court had satisfied Rule 37's mandatory-sanction requirement by not allowing Charash to testify to matters outside of Dr. Micon's opinion. *Id.* at 783-84 ("Rule 37(c)(1) ... provides several remedies to a district judge who is faced with violations of the mandatory-disclosure provisions of Rule 26.").

*2 This case provides an even less compelling case for sanctions than *Roberts.* The plaintiffs have stipulated that Mullenex and Ellis will offer only the testimony they presented in 1996. Thus, not only do the defendants have a summary of these experts' proposed testimony, they already know or should know the substance of that testimony. Under the

circumstances, the plaintiffs' recent designation of Mullenex and Ellis as live witnesses is harmless. Thus, the court will allow Mullenex and Ellis to testify at trial on the condition that they confine their testimony to the opinions expressed in the *Amburgey* trial.

*2 The plaintiffs have also indicated that Mullenex plans to update his exhibits to account for the difference in wells to which the bellwether plaintiffs in this case were exposed, as opposed to the wells that were at issue in *Amburgey.* The defendants claim that they have not received these exhibit updates, that the plaintiffs have therefore violated Rule 26(a), and that Mullenex should accordingly not be permitted to testify at trial. The court finds that this factor alone does not disqualify Mullenex's live testimony. Mullenex will state the same conclusions that he espoused in 1996, modifying only his geographic references. Armed with his 1996 testimony, the defendants should be more than prepared to cross-examine him as to his conclusions. The court will, however, require the plaintiffs to provide the defendants with Mullenex's updated exhibits no later than twenty days after the entry of this order.

*2 IT IS ORDERED that the defendants' motion to strike (DE 450) is DENIED.

*2 IT IS FURTHER ORDERED that the plaintiffs shall provide the defendants with Mullenex's updated exhibits no later than twenty (20) days after the entry of this order.

E.D.Ky.,2007.
Adams v. Cooper Industries, Inc.
Slip Copy, 2007 WL 438236 (E.D.Ky.)

Briefs and Other Related Documents (Back to top)

• 2006 WL 1192467 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Reply to Defendants' Response (De 206 in 5:03-CV-158) to Plaintiffs' Motion for Leave to File A Supplemental Response to Defendants' Motions for Summary Judgment against Bettye Moody, Debra Harris and Virginia Sharp (Mar. 7, 2006) Original Image of this Document (PDF)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                    Page 3

Slip Copy, 2007 WL 438236 (E.D.Ky.)
**(Cite as: Slip Copy)**

• 2006 WL 416445 (Trial Motion, Memorandum and Affidavit) Defendants' Reply to Plaintiffs' Response to Defendants' Motion for Summary Judgment on the Wrongful Death Claims for Decedents Charles Cox, Mossie Caldwell, Lindsey J. Baker, Nyal Bussell, Sr., Maggie Joseph Wolfe, Cawood Bergman, Jimmie Helton, Bet tie Rowe, John Turner and David Lankford (Jan. 9, 2006) Original Image of this Document (PDF)

• 2005 WL 3275414 (Trial Motion, Memorandum and Affidavit) Response to Hugh M. Richards' Objection to Subpoena Duces Tecum and Motion for Protective Order (Oct. 11, 2005) Original Image of this Document (PDF)

• 2005 WL 2913272 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum of Law in Support of their Motion for Summary Judgment on the Wrongful Death Claims for Decedents Charles Cox. Mossie Caldwell, Lindsey J. Baker, Nyal Bussell, Sr., Maggie Joseph Wolfe, Cawood Bergman, Jimmie Helton, Bettie Row e. John Turner and David Lankford (Sep. 30, 2005) Original Image of this Document (PDF)

• 2005 WL 2657871 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum in Support of Motion to Dismiss Certain of the Plaintiffs for Failure to Comply with Court's Order to Retain Substitute Counsel (Sep. 9, 2005) Original Image of this Document (PDF)

• 2004 WL 3370952 (Trial Pleading) Amended Complaint of July 19, 2004 (Aug. 25, 2004) Original Image of this Document (PDF)

• 2004 WL 3365654 (Trial Motion, Memorandum and Affidavit) Answer by Cooper Industries, Inc. and McGraw Edison Company to All Amended Complaints (Jul. 23, 2004) Original Image of this Document (PDF)

• 2004 WL 3365650 (Trial Pleading) Answer of Defendants', Cooper Industries, Inc. and McGraw Edison Company to Plaintiff's First Motion to Amend Complaint (Mar. 24, 2004) Original Image of this Document (PDF)

• 5:03cv00476 (Docket) (Sep. 19, 2003)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.