# EXHIBIT I1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TELCORDIA TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff/Counterclaim Defendant, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-875-GMS |
| | ) | |
| LUCENT TECHNOLOGIES INC., | ) | |
| | ) | |
| Defendant/Counterclaim Plaintiff. | ) | |
| ——————————————— | ) | **REDACTED** |
| | | **PUBLIC VERSION** |
| TELCORDIA TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff/Counterclaim Defendant, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-876-GMS |
| | ) | |
| CISCO SYSTEMS, INC., | ) | |
| | ) | |
| Defendant/Counterclaim Plaintiff. | ) | |
| ——————————————— | ) | |

## EX. I1:  TRIAL BRIEF OF PLAINTIFF
## TELCORDIA TECHNOLOGIES, INC.

*Of Counsel:*

Donald R. Dunner
Steven M. Anzalone
Richard H. Smith
James T. Wilson
John M. Williamson
FINNEGAN, HENDERSON, FARABOW,
   GARRETT & DUNNER, L.L.P.
901 New York Ave., N.W.
Washington, D.C.  20001
(202) 408-4000

Dated: March 2, 2007

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware  19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Plaintiff*
*Telcordia Technologies, Inc*

**TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES ............................................................................... iii

I.    NATURE OF THE CASE ........................................................................1

      A.    Telcordia v. Cisco ......................................................................1

      B.    Telcordia v. Lucent ....................................................................3

II.   CONTESTED FACTS TO BE ESTABLISHED AT TRIAL .......................4

III.  TELCORDIA'S THEORY OF LIABILITY .............................................5

      A.    Infringement................................................................................5

            1.    Infringement of the '763 Patent ..................................5

                  a)    Cisco and Lucent....................................................5

            2.    Infringement of the '633 Patent ..................................6

                  a)    Cisco .........................................................................6

                  b)    Lucent ......................................................................8

            3.    Inducement and Contributory Infringement of the '763 and '633 Patents .....................................................9

      B.    Willfulness ...................................................................................9

            1.    Cisco ...........................................................................9

            2.    Lucent .......................................................................10

IV.   TELCORDIA'S THEORY OF DAMAGES ............................................11

V.    DEFENDANT'S AFFIRMATIVE DEFENSES AND COUNTERCLAIMS...................12

      A.    Invalidity ....................................................................................13

      B.    Laches ........................................................................................13

      C.    Equitable Estoppel / Implied License .......................................13

      D.    Intervening Rights.....................................................................14

      E.    Patent Misuse / Unclean Hands ................................................14

i

**TABLE OF CONTENTS (Cont'd)**

**Page(s)**

F.    Patent Exhaustion.................................................................14

G.    Inequitable Conduct..............................................................14

H.    Equities Generally.................................................................15

VI.    TELCORDIA'S ANTICIPATED MOTIONS FOR A DIRECTED VERDICT...............15

# TABLE OF AUTHORITIES

## FEDERAL CASES

*A.C. Aukerman Co. v. R.L. Chaides Construction Co.,*
   960 F.2d 1020 (Fed. Cir. 1992)..................................................................................13, 15

*Amsted Industrial, Inc. v. Buckeye Steel Castings Co.,*
   24 F.3d 178 (Fed. Cir. 1994)................................................................................................12

*Aptix Corp. v. Quickturn Design System, Inc.,*
   269 F.3d 1369, (Fed. Cir. 2001).........................................................................................14

*Aro Manufacturing Co. v. Convertible Top Replacement Co.,*
   377 U.S. 476 (1964)...............................................................................................................9

*Bayer AG v. Schein Pharms., Inc.,*
   301 F.3d 1306 (Fed. Cir. 2002)..........................................................................................13

*Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.,*
   326 F.3d 1226 (Fed. Cir. 2003)..........................................................................................14

*C.R. Bard, Inc. v. M3 Systems, Inc.,*
   157 F.3d 1340 (Fed. Cir. 1998)..........................................................................................14

*Catalina Marketing International, Inc. v. Coolsavings.com, Inc.,*
   289 F.3d 801 (Fed. Cir. 2002)..............................................................................................5

*Dayco Products, Inc. v. Total Containment, Inc.,*
   329 F.3d 1358 (Fed. Cir. 2003)..........................................................................................15

*DSU Medical Corp. v. JMS Co.,*
   Nos. 04-1620, 05-1048, -1052, 2006 WL 3615056 (Fed. Cir. Dec. 13, 2006)..................9, 12

*Durel Corp. v. Osram Sylvania Inc.,*
   256 F.3d 1298 (Fed. Cir. 2001)..........................................................................................13

*eBay Inc. v. MercExchange, L.L.C.,*
   126 S. Ct. 1837 (2006)........................................................................................................12

*Electro Medical Systems S.A. v. Cooper Life Sciences, Inc.,*
   34 F.3d 1048 (Fed. Cir. 1994)..............................................................................................9

*Gasser Chair Co. v. Infanti Chair Manufacturing Corp.,*
   60 F.3d 770 (Fed. Cir. 1995)..............................................................................................13

**TABLE OF AUTHORITIES (Cont'd)**

Page(s)

*Georgia-Pacific Corp. v. United States Plywood Corp.,*
318 F. Supp. 1116 (S.D.N.Y. 1970) ........................................................ 12

*Graham v. John Deere Co.,*
383 U.S. 1 (1966) ..................................................................................... 13

*Jurgens v. CBK Ltd.,*
80 F.3d 1566 (Fed. Cir. 1996) ................................................................. 10

*Kalman v. Berlyn Corp.,*
914 F.2d 1473 (Fed. Cir. 1990) ............................................................... 12

*LG Electronics, Inc. v. Bizcom Electronics, Inc.,*
453 F.3d 1364 (Fed. Cir. 2006) ............................................................... 14

*Lucent Technologies, Inc. v. Newbridge Networks, Corp.,*
168 F.Supp.2d 181 (D. Del. 2001) ........................................................ 7, 9

*Markman v. Westview Instruments, Inc.,*
52 F.3d 967 (Fed. Cir. 1995) ..................................................................... 5

*Maxwell v. J. Baker, Inc.,*
86 F.3d 1098 (Fed. Cir. 1996) ................................................................. 12

*nCube Corp. v. SeaChange International, Inc.,*
436 F.3d 1317 (Fed. Cir. 2006) ............................................................... 10

*Ortho Pharm. Corp. v. Smith,*
959 F.2d 936 (Fed. Cir. 1992) ................................................................. 13

*Panduit Corp. v. Stahlin Brothers Fibre Works, Inc.,*
575 F.2d 1152 (6th Cir. 1978) ................................................................. 11

*Railroad Dynamics, Inc. v. A. Stucki Co.,*
727 F.2d 1506 (Fed. Cir. 1984) ........................................................... 6, 8, 9

*Ryco, Inc. v. Ag-Bag Corp.,*
857 F.2d 1418 (Fed. Cir. 1988) ............................................................... 12

*Schering Corp. v. Geneva Pharms., Inc.,*
339 F.3d 1373 (Fed. Cir. 2003) ............................................................... 13

*Shockley v. Arcan, Inc.,*
248 F.3d 1349 (Fed. Cir. 2001) ............................................................... 14

## TABLE OF AUTHORITIES (Cont'd)

**Page(s)**

*Stickle v. Heublein, Inc.,*
   716 F.2d 1550 (Fed. Cir. 1983) ................................................................12

*Stryker Corp. v. Intermedics Orthopedics, Inc.,*
   96 F.3d 1409 (Fed. Cir. 1996) ..................................................................10

*Texas Digital System, Inc. v. Telegenix, Inc.,*
   308 F.3d 1193 (Fed. Cir. 2002) ................................................................12

*University of Rochester v. G.D. Searle & Co.,*
   358 F.3d 916 (Fed. Cir. 2004) ..................................................................13

*Visto Corp. v. Sproqit Techs., Inc.,*
   413 F. Supp.2d 1073, 1088-91 (N.D. Cal. 2006) ......................................14

*Wang Laboratoriess, Inc. v. Mitsubishi Electronics America, Inc.,*
   103 F.3d 1571 (Fed. Cir. 1997) ................................................................13

*Warner-Jenkinson Co. v. Hilton Davis Chemical Co.,*
   520 U.S. 17 (1997) ............................................................................5, 7, 9

## FEDERAL STATUTES AND RULES

35 U.S.C. §§ 102, 103 ................................................................................14

35 U.S.C. § 112 ..........................................................................................15

35 U.S.C. § 271(a) ................................................................6, 8, 9, 10, 13

35 U.S.C. § 282 ..........................................................................................14

35 U.S.C.§ 283 ...........................................................................................13

35 U.S.C. § 284 ..............................................................................11, 12, 13

35 U.S.C. § 285 ..........................................................................................13

35 U.S.C. § 287(a) ......................................................................................13

47 U.S.C. § 273(d)(2) .................................................................................15

Fed. R. Evid. 1006 .....................................................................................13

v

## I.    NATURE OF THE CASE

### A.    Telcordia v. Cisco

This lawsuit is the unfortunate culmination of continuous and heated licensing negotiations between Cisco and Telcordia that lasted for over a decade. At any point during the decade-long negotiation, Cisco could have avoided this litigation by simply taking a license at the modest rates offered by Telcordia—rates accepted by many others in the industry.

Instead, the evidence will show that Cisco chose to string Telcordia along, to ignore Telcordia's patents and license offers, to design and market products that it knew practiced Telcordia's inventions, and to greatly profit from the unsanctioned use of Telcordia's patented technologies. Indeed, Cisco's revenues from the unlicensed sales of products practicing Telcordia's patents-in-suit approach almost **REDACTED** during the limited time period of 1999 through 2005.

Concluding that Cisco simply had not taken Telcordia's efforts to license its patents on modest and reasonable terms seriously, and in order to protect its property rights in the face of Cisco's staggering commercial success with products using Telcordia's patented technologies, Telcordia was forced to sue Cisco for patent infringement. Specifically, on July 17, 2004, Telcordia filed its complaint against Cisco alleging willful infringement of Telcordia's U.S. Patent Nos. 4,893,306 ("the '306 patent") and Re. 36,633 ("the '633 patent"). On June 14, 2005, Telcordia amended its complaint to add allegations of willful infringement of its U.S. Patent No. 4,835,763 ("the '763 patent"). After the Court issued its June 22, 2006, Order construing the claims, Telcordia determined that it could not establish infringement of the '306 patent under the Court's claim construction. As such, Telcordia's infringement allegations against Cisco for purposes of trial are limited to claims 1, 2, 7, and 8 of the '763 patent and claims 11 and 33 of the '633 patent.

Telcordia's infringement allegations are straightforward and, given the negotiation history between Cisco and Telcordia as well as the high profile of Telcordia's patents in the industry, so are Telcordia's willfulness allegations. This is particularly true for the '633 patent, which is a widely known, widely practiced, and widely licensed standardized technology for recovering timing signals called "Synchronous Residual Time Stamp" or "SRTS." Specifically, the technology is directly incorporated into fundamental telecommunications

standards and specifications issued by the International Telecommunications Union ("ITU"), the American National Standards Institute ("ANSI"), and the ATM Forum. These organizations are comprised of many companies and participants in the industry, and Telcordia disclosed the existence of its patent to each of these organizations. The incorporation of SRTS into the ITU, ANSI, and ATM Forum standards and specifications evidences widespread acceptance, awareness, and applicability of Telcordia's SRTS technology.

Cisco certainly knew about Telcordia's SRTS patent. Indeed, during the consideration of SRTS technology at the ATM Forum,

# REDACTED

Telcordia will show that both efforts failed—the industry embraced SRTS technology and embraced Telcordia's reasonable and non-discriminatory license offers.                REDACTED            is not the act of a company that believes it does not infringe or that the patent is invalid. Rather it is the act of a company that appreciates the importance and applicability of SRTS technology. In fact,                REDACTED

employees acknowledge two important facts: (1) SRTS technology was too important to exclude from the ATM Forum specification, and (2) a license fee would be due to Telcordia for the practice of SRTS technology. Although its efforts to sidestep and devalue Telcordia's SRTS technology failed, and although it recognized the applicability of SRTS to its products, Cisco nevertheless opted to ignore Telcordia's offers to license its patent on reasonable terms.

Other companies took a license to Telcordia's SRTS patent, recognizing its clear applicability to ATM communications equipment. But Cisco forged ahead with the design and development of ATM products that it knew employed Telcordia's technology without a license. Indeed,

# REDACTED

Moreover, data sheets for certain third party components purchased by Cisco and used in some of Cisco's accused products contain a legend alerting the purchaser to Telcordia's SRTS patent.

Unsurprisingly, against the acknowledged industry demand for and widespread awareness of SRTS technology, Cisco expressly marketed and promoted its products as compliant with the standards and specifications that include Telcordia's SRTS technology. During every step of the standardization, product

2

planning, commercial development, market launches, and the astounding commercial success of the Cisco products incorporating Telcordia's technology, Telcordia constantly reminded Cisco of Telcordia's SRTS patent and Telcordia tirelessly sought to license its technology to Cisco on reasonable terms. Cisco refused, ultimately necessitating this lawsuit.

Similar circumstances surround Telcordia's allegations of infringement of its '763 patent. The '763 patent is not the subject matter of national and international standards as is the '633 patent, and the '763 patent is not widely licensed as is the '633 patent (although the '763 is licensed). But Cisco has certainly been aware of the '763 patent, has been actively engaged in negotiations with Telcordia regarding the '763 patent, has refused to take a license to the '763 patent, and has nevertheless forged ahead with highly successful products that incorporate Telcordia's patented '763 technology. Like the '633 patent, Cisco's ongoing failure to simply license Telcordia's '763 patent on reasonable terms necessitated this lawsuit.

Telcordia remains and has always remained willing to provide a license to Cisco that accounts for Cisco's past and ongoing infringement of Telcordia's patents. Cisco apparently remains unwilling to consider a license.

**B.    Telcordia v. Lucent**

Just like the Cisco case, Telcordia's case against Lucent results from Lucent's failure to license Telcordia's patents. Lucent was originally a part of AT&T (a Telcordia licensee) called AT&T Network System that was eventually spun off in April of 1996. Prior to its spin-off, AT&T Network Systems was a participant in the industry groups that discussed Telcordia's patented SRTS technology. After its spin-off, Lucent continued to participate in these groups and was, therefore, continuously exposed to and aware of Telcordia's SRTS patent. Moreover, Telcordia expressly contacted Lucent with an offer to license Telcordia's ATM portfolio, including Telcordia's SRTS patent, in 1997. Lucent failed to respond to Telcordia's letter, but proceeded to acquire two major ATM equipment makers—Yurie Systems and Cascade/Ascend—who made some of the products that are predecessors to the Lucent products in suit. Both of these companies, prior to Lucent's acquisitions, were expressly contacted by Telcordia with an offer to license Telcordia's ATM portfolio, including Telcordia's SRTS patent. In sum, Lucent and its predecessors were well aware of Telcordia's patent and the need for a license to practice Telcordia's SRTS technology. But, like Cisco, these companies all failed

3

to acquire a license. Rather, they simply ignored Telcordia's patent and marketed successful products that incorporate Telcordia's patented technologies. Indeed, like Cisco, Lucent expressly marketed its products as capable of performing the standards that include Telcordia's SRTS technology.

While a number of additional contacts between Telcordia and Lucent ensued, including a face-to-face meeting to discuss cross-licensing, Lucent ultimately chose not to license Telcordia's patents.

**REDACTED** . Lucent should have performed careful due diligence on the Yurie and Ascend ATM product lines, which would have revealed Telcordia's enforcement letters and reemphasized the need to obtain a license to practice Telcordia's SRTS technology. Lucent bought these companies and brought their ATM products to market without first performing any study or analysis of Telcordia's patents and without first obtaining a license from Telcordia. Given the clear warning letters sent to Lucent, Yurie, and Cascade, and given the industry-wide recognition of Telcordia's SRTS patent, Lucent's disregard of Telcordia's SRTS patent was particularly egregious.

On July 17, 2004, Telcordia filed its complaint against Lucent alleging infringement of Telcordia's U.S. Patent Nos. 4,893,306 ("the '306 patent"). Telcordia did not serve its complaint for 120 days, and the parties met in the interim to again discuss a negotiated settlement. These discussions were unsuccessful. On June 14, 2005, Telcordia amended its complaint to add allegations of willful infringement of its U.S. Patent Nos. Re. 36,633 ("the '633 patent") and infringement of its U.S. Patent No. 4,835,763 ("the '763 patent").

After the Court issued its June 22, 2006, Order construing the claims, Telcordia determined that it could not establish infringement of the '306 patent under the Court's claim construction. As such, Telcordia's infringement allegations against Lucent for purposes of trial are limited to claims 1, 2, 7, and 8 of the '763 patent and claims 11 and 33 of the '633 patent.

## II.    CONTESTED FACTS TO BE ESTABLISHED AT TRIAL

The contested facts to be established at trial by Telcordia are set forth in Exhibit B to the final joint proposed pretrial order. Telcordia contends that it will establish all contested issues of fact in its favor.

### III.    TELCORDIA'S THEORY OF LIABILITY

#### A.    Infringement

As the Court has already construed the claims of the '763 and '633 patents as a matter of law, only the second step of the two step infringement determination remains—comparing the construed claims to Lucent's and Cisco's allegedly infringing products and processes to determine, as a matter of fact, whether all of the claim limitations are present, either literally or under the doctrine of equivalents. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995)(*en banc*); *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 812 (Fed. Cir. 2002) ("An element in the accused product is equivalent to a claim limitation if the differences between the two are 'insubstantial' to one of ordinary skill in the art.")

#### 1.    Infringement of the '763 Patent

##### a)    Cisco and Lucent

Telcordia owns U.S. Patent No. 4,835,763, entitled "SURVIVABLE RING NETWORK," issued May 30, 1989.  Asserted claims 1, 2, 7, and 8 are directed, generally, toward a system and method for providing path protection switching in a network of nodes arranged in a ring configuration.  A comprehensive enumeration of the factual and legal issues regarding infringement of the '763 patent that Telcordia will establish in its favor is set forth in Telcordia's "Statement of Contested Issues of Fact and Law," Exhibit B to the joint proposed pretrial order.

Telcordia will establish that each and every element of each of asserted claims 1, 2, 7, and 8 is found in each of Cisco's ONS products (Cisco ONS 15454, 15455, 15310, 15305, 15327, and 15600 series products), and each of Lucent's DMX products (DMX Access Multiplexer, DMXtend Access Multiplexer, DMXplore Access Multiplexer, and DMXpress Access Multiplexer) either literally or under the doctrine of equivalents.  *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40 (1997).  The presence of each and every element of each asserted claim in Cisco's ONS products and Lucent's DMX products will be clear from testimony introduced at trial (including expert testimony), documentation reflecting the structure, operation, design, testing, and use of Cisco's ONS products and Lucent's DMX products (including data sheets, functional specifications, engineering documents, source code, and/or white papers), and demonstrations of the

functionality of the actual products if necessary. Telcordia intends to use demonstratives to assist in explaining its infringement case, as described in Exhibit C to the pretrial order.

Telcordia will also establish that Cisco's ONS products and Lucent's DMX products are made, used, sold, or offered for sale by Cisco and Lucent, respectively, within the United States or imported by Cisco and Lucent, respectively, into the United States. 35 U.S.C. § 271(a). As contemplated by 35 U.S.C. § 271(a), Telcordia's infringement allegations extend to Cisco and Lucent products manufactured or tested by Cisco and Lucent, respectively, in the United States, even if those products are ultimately sold abroad. *See, e.g., Railroad Dynamics, Inc. v. A. Stucki Co.*, 727 F.2d 1506, 1519 (Fed. Cir. 1984).

## 2.    Infringement of the '633 Patent

Telcordia owns U.S. Patent No. Re. 36,633 entitled "SYNCHRONOUS RESIDUAL TIME STAMP FOR TIMING RECOVERY IN A BROADBAND NETWORK," issued March 28, 2000. Asserted claims 11 and 33 are directed, generally, toward a system and method to provide timing recovery using a synchronous residual time stamp. A comprehensive enumeration of the factual and legal issues regarding infringement of the '633 patent that Telcordia will establish in its favor is set forth in Telcordia's "Statement of Contested Issues of Fact and Law," Exhibit B to the joint proposed pretrial order.

### a)    Cisco

Cisco's accused products fall into two distinct categories based upon the type(s) of integrated circuit(s) used in the product to perform asynchronous transfer mode ("ATM") segmentation and reassembly ("SAR") processing: (1) the Cisco MGX 8200 and 8800 series products, including at least the 8220, 8230, 8240, 8250, 8260, 8830, 8830/B, 8850, and 8850/B ("the MGX products")—

REDACTED                and (2)

the Cisco LightStream 1010, Catalyst 8510 and 8540, IGX 8400, IP Transfer Point, 7200 Series Routers, and 3600 Series Routers ("the LCRIIP products")—                REDACTED

Telcordia will establish that each and every element of each of asserted claims 11 and 33 is found in each of Cisco's MGX products (including at least the MGX 8200 and 8800 series products, including at least the 8220, 8230, 8240, 8250, 8260, 8830, 8830/B, 8850, and 8850/B), when those products are equipped with MGX

CE modules either literally or under the doctrine of equivalents. *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40 (1997). Specifically, Telcordia will show that specific MGX CE modules, when present in an MGX product, combine with the other modules and elements of the MGX product such that every element of claims 11 and 33 is present in the MGX product. The presence of each and every element of each asserted claim in Cisco's MGX products will be clear from testimony introduced at trial (including expert testimony), documentation reflecting the structure, operation, design, testing, and use of Cisco's MGX products (including data sheets, functional specifications, engineering documents, source code, and/or white papers), and demonstrations of the functionality of the actual products if necessary. Telcordia intends to use demonstratives to assist in explaining its infringement case, as described in Exhibit C to the pretrial order.

Telcordia will establish that each and every element of each of asserted claims 11 and 33 is found in each of Cisco's LCRIIP products (the Cisco LightStream 1010, Catalyst 8510 and 8540, IGX 8400, IP Transfer Point, 7200 Series Routers, and 3600 Series Routers), when those products are equipped with CE modules for LCRIIP products, either literally or under the doctrine of equivalents. *Id.* Specifically, Telcordia will show that specific CE modules for LCRIIP products, when present in an LCRIIP product, combine with the other modules and elements of the LCRIIP product such that every element of claims 11 and 33 is present in the LCRIIP product. The presence of each and every element of each asserted claim in Cisco's LCRIIP products will be clear from testimony introduced at trial (including expert testimony), documentation reflecting the structure, operation, design, testing, and use of Cisco's LCRIIP products (including data sheets, functional specifications, engineering documents, source code, and/or white papers), and demonstrations of the functionality of the actual products if necessary. Telcordia intends to use demonstratives to assist in explaining its infringement case, as described in Exhibit C to the pretrial order.

Cisco's infringement of the '633 patent is particularly straightforward given Cisco's compliance with established ATM standards and specifications and Cisco's incorporation of the SRTS technology disclosed in those standards and specifications into its accused products (ANSI T1.630, ITU I.363.1, and ATM Forum af-vtoa-0078.000). *See, e.g., Lucent Techs., Inc. v. Newbridge Networks, Corp.*, 168 F. Supp.2d 181, 223-24 (D. Del. 2001). Indeed,                    **REDACTED**                    the infringement dispute is particularly narrow as Cisco's only noninfringement position is based on a strained argument that the residual

7

time stamp ("RTS") is transmitted in the "convergence sublayer" (the Court's construction requires that "the RTS [be] transmitted in a portion of the overhead other than the convergence sublayer overhead"). But the ITU I.363.1 standard clearly establishes that the RTS is not transmitted in the convergence sublayer, and Cisco's products—which comply with the standard—likewise do not transmit the RTS in the convergence sublayer. Documentary evidence and expert testimony will resolve this narrow and straightforward factual dispute in Telcordia's favor.

Telcordia will also establish that Cisco's MGX and LCRIIP products and/or their components are made, used, sold, or offered for sale by Cisco within the United States or imported by Cisco into the United States. 35 U.S.C. § 271(a). As contemplated by 35 U.S.C. § 271(a), Telcordia's infringement allegations extend to Cisco products manufactured or tested by Cisco in the United States, even if those products are ultimately sold abroad. *See, e.g., Railroad Dynamics, Inc. v. A. Stucki Co.*, 727 F.2d 1506, 1519 (Fed. Cir. 1984).

### b)     Lucent

Telcordia will establish that each and every element of each of asserted claims 11 and 33 is found in each of Lucent's CBX/GX/PSAX products (CBX-500, CBX-3500, GX-550, and PSAX 1000, 1250, 2300, and 4500) either literally or under the doctrine of equivalents. *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40 (1997). The presence of each and every element of each asserted claim in Lucent's CBX/GX/PSAX products will be clear from testimony introduced at trial (including expert testimony), documentation reflecting the structure, operation, design, testing, and use of Lucent's CBX/GX/PSAX products (including data sheets, functional specifications, engineering documents, source code, and/or white papers), and demonstrations of the functionality of the actual products if necessary. Telcordia intends to use demonstratives to assist in explaining its infringement case, as described in Exhibit C to the pretrial order.

Just as in the Cisco case, Lucent's infringement of the '633 patent is particularly straightforward given Lucent's compliance with established ATM standards and specifications (ANSI T1.630, ITU I.363.1, and ATM Forum af-vtoa-0078.000) and Lucent's incorporation of the SRTS technology disclosed in those standards and specifications into its accused products.

8

Telcordia will also establish that Lucent's CBX/GX/PSAX products are made, used, sold, or offered for sale by Lucent within the United States or imported by Lucent into the United States. 35 U.S.C. § 271(a). As contemplated by 35 U.S.C. § 271(a), Telcordia's infringement allegations extend to Lucent products manufactured or tested by Lucent in the United States, even if those products are ultimately sold abroad. *See, e.g., Railroad Dynamics, Inc. v. A. Stucki Co.*, 727 F.2d 1506, 1519 (Fed. Cir. 1984).

### 3. Inducement and Contributory Infringement of the '763 and '633 Patents

For all of the accused products discussed above, Telcordia will establish that Cisco and Lucent induced infringement by providing aid, encouragement, or instructions to its customers to use the accused products in an infringing manner with the intent that their customers actually infringe Telcordia's patents. 35 U.S.C. § 271(b); *DSU Medical Corp. v. JMS Co.*, Nos. 04-1620, 05-1048, -1052, 2006 WL3615056 (Fed. Cir. Dec. 13, 2006)(en banc); *Lucent Techs., Inc. v. Newbridge Networks, Corp.*, 168 F. Supp.2d 181 (D. Del. 2001).

For all of the accused products discussed above, Telcordia will also establish that Cisco and Lucent engaged in contributory infringement by selling, offering for sale, or importing components that are a material part of the inventions of Telcordia's '763 and '633 patents (and that are not staple articles) with knowledge that the components are especially made or especially adapted for use in infringement of Telcordia's '763 and '633 patents. 35 U.S.C. § 271(c); *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476 (1964).

### B. Willfulness

A comprehensive enumeration of the factual and legal issues regarding willfulness that Telcordia will establish in its favor is set forth in Telcordia's "Statement of Contested Issues of Fact and Law," Exhibit B to the joint proposed pretrial order.

### 1. Cisco

Telcordia will establish that Cisco acted in complete disregard of Telcordia's patents, and that Cisco had no reasonable basis for believing that it had a right to engage in the infringing acts. *Electro Med. Sys. S.A. v. Cooper Life Sciences, Inc.*, 34 F.3d 1048, 1056 (Fed. Cir. 1994). Many of the facts bearing upon willfulness have already been set forth in the "Nature of the Case" section above.

Specifically, Cisco learned that Telcordia had a patent covering SRTS technology as early as March 14, 1994, when Bellcore (Telcordia's predecessor) sent a letter to Cisco attaching the cover page of the '978 patent

along with a proposed license agreement for the patent. During the many exchanges and negotiations that followed, Cisco also learned of Telcordia's reissue application and resulting '633 patent. For example, Telcordia disclosed its reissue application to the entire industry by virtue of its disclosure to ANSI, the ATM Forum, and the ITU in June of 1996, and in September of 2001, after the application issued, Telcordia expressly notified Cisco of its '633 patent and the applicability of that patent to Cisco's products. Despite Telcordia's ongoing negotiations with Cisco and Telcordia's offers to license its SRTS patent, Cisco neglected to obtain a license. Nevertheless, Cisco developed and launched many products specifically designed to practice Telcordia's SRTS technology.

Similarly, Cisco learned of Telcordia's '763 patent no later than September of 2001, when Telcordia identified the patent and specific Cisco products that infringe the patent. Just as in the case of the '633 patent, Cisco continued to sell, design, and launch numerous products which infringe the '763 patent, despite not having a license and despite Telcordia's ongoing communications with Cisco regarding the patent.

For both the '633 and '763 patents, Telcordia will establish that Cisco knew of the patents and failed to exercise due care to avoid infringement. *nCube Corp. v. SeaChange Int'l, Inc.*, 436 F.3d 1317, 1324 (Fed. Cir. 2006) ("Actual notice of another's patent rights triggers and affirmative duty of due care to avoid infringement."). Indeed, although the duty of due care usually "includes seeking and obtaining competent legal advice before engaging in activity that may result in infringement," Cisco failed to identify any legal advice— even on its privilege log—during discovery in this case. *Stryker Corp. v. Intermedics Orthopedics, Inc.*, 96 F.3d 1409, 1414 (Fed. Cir. 1996). Telcordia will establish that under the totality of the circumstances, Cisco has engaged in willful infringement of Telcordia's '633 and '763 patents, warranting a finding that this case is exceptional and warranting an award of enhanced damages under 35 U.S.C. § 284, in the Court's sound discretion. *Jurgens v. CBK Ltd.*, 80 F.3d 1566, 1570 (Fed. Cir. 1996).

### 2. Lucent

Many of the facts supporting Telcordia's willfulness case against Lucent are noted above in the "Nature of the Case" section. Lucent, its predecessor AT&T Network Systems, and the predecessor companies that originally made some of the Lucent products in suit, Yurie Systems and Cascade/Ascend, all knew about Telcordia's SRTS patent and failed to obtain a license to practice the patent. Nevertheless, these companies

10

designed, developed, marketed, and profited from products practicing Telcordia's SRTS technology. Under the same legal principles that apply to the Cisco willfulness case, Telcordia will establish that Lucent is also a willful infringer of the '633 patent and should be subject to enhanced damages and attorneys' fees.

## IV.    TELCORDIA'S THEORY OF DAMAGES

If Telcordia prevails, it is entitled to damages "adequate to compensate for the infringement, but in no event less than a reasonable royalty . . . ." 35 U.S.C. § 284. Telcordia's theory of damages is a straightforward **REDACTED** and conservative reasonable royalty theory based upon                **REDACTED**         applied to only a small portion of Lucent's and Cisco's sales (i.e., sales to companies other than AT&T and the RBOCs).

Throughout its history, Telcordia (and its predecessor, Bell Communications Research, Inc.) has always offered patent licenses to the industry at particularly modest royalty rates. Because Telcordia does not, and historically could not legally, participate in the communications hardware market, patent licensing is Telcordia's only way to recover its significant research and development investments in communications hardware. But rather than offer exclusive licenses or otherwise use its patents strategically in the marketplace, Telcordia has always chosen to make its patents available to all similarly situated parties at extraordinarily reasonable rates.

Across time, as the market changed and as Telcordia evolved from a heavily regulated and well funded research and development arm owned by the Regional Bell Operating Companies ("RBOCs") to an independent commercial enterprise, Telcordia modestly raised its royalty rates for its communications equipment patents **REDACTED**                                 **REDACTED** from rates as low        to the still reasonable               range that it seeks in the market today.

Even though Telcordia only seeks **REDACTED** in this litigation (versus the prevailing market rates of **REDACTED**       , Cisco and Lucent insinuate that they should only be liable for damages based upon the extremely low royalty rates that Telcordia historically offered to early adopters in the ATM market                . But those terms were only available for a limited period of time, and the defendants failed to accept those terms when they were available. Moreover, unlike Telcordia's other licensees, the defendants have forced Telcordia into litigation and thus should not be entitled to the same rates as licensees who have not forced Telcordia into litigation. *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1158 (6th Cir. 1978) ("[T]he infringer would have nothing to lose, and everything to gain if he could count on paying only the normal,

routine royalty non-infringers might have paid."), *expressly adopted by Stickle v. Heublein, Inc.*, 716 F.2d 1550, 1563 (Fed. Cir. 1983).

For purposed of calculating damages, Telcordia contends that it has complied with all marking obligations under 35 U.S.C. § 287(a) under a rule of reason analysis. *Texas Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1219-20 (Fed. Cir. 2002); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1111 (Fed. Cir. 1996); Telcordia's August 25, 2006, response summary judgment letter to Judge Sleet (D.I.s 232 (Lucent), 219 (Cisco)). Furthermore, Telcordia provided actual notice to the defendants under 35 U.S.C. § 287(a). *Amsted Indus., Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 186 (Fed. Cir. 1994).

Telcordia will support its damages theory with fact and expert testimony and documentary evidence directed toward Telcordia's history and role in the marketplace, an analysis of relevant reasonable royalty factors under *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), and a calculation of the amount of damages (including demonstratives as described in Exhibit C to the joint final pretrial order and calculations of voluminous financial material pursuant to Fed. R. Evid. 1006). All doubts about the amount of damages due to the defendants' failure to keep or produce adequate records, such as records detailing foreign sales of products that infringe under 35 U.S.C. § 271(a), should be resolved in Telcordia's favor. *DSU Medical Corp. v. JMS Co.*, Nos. 04-1620, 05-1048, -1052, 2006 WL 3615056 (Fed. Cir. Dec. 13, 2006) *citing Kalman v. Berlyn Corp.*, 914 F.2d 1473, 1482 (Fed. Cir. 1990) *quoting Ryco, Inc. v. Ag-Bag Corp.*, 857 F.2d 1418, 1428 (Fed. Cir. 1988).

Finally, Telcordia intends to seek enhanced damages under 35 U.S.C. § 284 due to the defendants' willful infringement, a finding that the case is exceptional under 35 U.S.C. § 285 warranting recovery of attorneys' fees, and an injunction under 35 U.S.C. § 283 and *eBay Inc. v. MercExchange, L.L.C.*, 126 S. Ct. 1837 (2006).

## V.     DEFENDANT'S AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

Telcordia incorporates its "Contested Issues of Fact and Law" (Exhibit B to the joint final pretrial order) regarding the defendants' affirmative defenses and counterclaims and submits that it will establish all contested issues in its favor.

### A.    Invalidity

Each claim of Telcordia's patents is presumed to be valid, and the defendants will be unable to rebut the presumption for any claim by clear and convincing evidence. 35 U.S.C. § 282; *Ortho Pharm. Corp. v. Smith*, 959 F.2d 936, 942 (Fed. Cir. 1992). Specifically, the defendants will be unable to establish, by clear and convincing evidence, that any asserted claim is invalid under 35 U.S.C. §§ 102, 103, or 112. *Graham v. John Deere Co.*, 383 U.S. 1 (1966); *Univ. of Rochester v. G.D. Searle & Co.*, 358 F.3d 916 (Fed. Cir. 2004); *Schering Corp. v. Geneva Pharms., Inc.*, 339 F.3d 1373 (Fed. Cir. 2003); *Bayer AG v. Schein Pharms., Inc.*, 301 F.3d 1306 (Fed. Cir. 2002); *Durel Corp. v. Osram Sylvania Inc.*, 256 F.3d 1298, 1306 (Fed. Cir. 2001).

### B.    Laches

The defendants will be unable to establish the applicability of laches, on a product by product and patent by patent basis, by a preponderance of the evidence. Specifically, Telcordia did not delay for an unreasonable amount of time before bringing suit, any purported delay was both reasonable and excusable, and the defendants did not suffer any material economic or evidentiary prejudice as a result of any purported delay. *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1032-33, 1041, 1045-46 (Fed. Cir. 1992) (*en banc*).

Moreover, Telcordia did not learn of its claim as early as the defendants contend because statutory (*e.g.*, 47 U.S.C. § 273(d)(2)) and contractual restrictions precluded Telcordia from evaluating the defendants' confidential information for purposes of determining whether the defendants' products infringe. Finally, any purported delay was clearly excusable due to factors such as ongoing license negotiations, ongoing litigation, a mutual non-assert agreement tolling laches, lack of resources, changing corporate structure, and/or unsettled claim construction issues pending before the Federal Circuit and the district court. *Id.*

### C.    Equitable Estoppel / Implied License

The defendants will be unable to establish the applicability of equitable estoppel or implied license, on a product by product and patent by patent basis, by a preponderance of the evidence. Specifically, Telcordia did not affirmatively grant permission to the defendants to use its patents and did not engage in any misleading conduct that would lead the defendants to reasonably infer that Telcordia would not enforce its patents. Nor did the defendants rely upon any such conduct or suffer any material economic or evidentiary prejudice. *Wang Labs., Inc. v. Mitsubishi Elecs. America, Inc.*, 103 F.3d 1571, 1580-81 (Fed. Cir. 1997); *Gasser Chair Co. v.*

13

*Infanti Chair Mfg. Corp.*, 60 F.3d 770, 776-77 (Fed. Cir. 1995). To the contrary, Telcordia's conduct consistently reflected its intent to enforce its patent rights.

### D.     Intervening Rights

The defendants will be unable to establish the applicability of intervening rights, either absolute or equitable, to any of the products accused of infringement in this action. Telcordia does not seek infringement damages for any products subject to absolute intervening rights, and even if the defendants can establish the substantial preparations required to prove equitable intervening rights, the defendants have, through their willful infringement, recouped their investments many times over. As such, intervening rights should not apply to limit damages in this case. *Shockley v. Arcan, Inc.*, 248 F.3d 1349 (Fed. Cir. 2001); *Visto Corp. v. Sproqit Techs., Inc.*, 413 F. Supp.2d 1073, 1088-91 (N.D. Cal. 2006).

### E.     Patent Misuse / Unclean Hands

The defendants will be unable to establish patent misuse or unclean hands by clear and convincing evidence. Telcordia did not engage in fraud, perjury, or any other unconscionable conduct associated with the patents at issue. *Aptix Corp. v. Quickturn Design Sys., Inc.*, 269 F.3d 1369, 1374 (Fed. Cir. 2001). Nor did Telcordia impermissibly broaden the physical or temporal scope of its patent rights to an anticompetitive effect. *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1372 (Fed. Cir. 1998). To the contrary, Telcordia has always simply sought a modest royalty for the use of its patents, and has consistently offered licenses to all similarly situated parties in the market on fair and reasonable terms.

### F.     Patent Exhaustion

Cisco will be unable to establish any unconditional sale or license by Telcordia that would trigger patent exhaustion. *LG Elecs., Inc. v. Bizcom Elecs., Inc.*, 453 F.3d 1364, 1369-70 (Fed. Cir. 2006). Nor will Cisco be able to establish that any of its products incorporate licensed components, such as "off-the-shelf" chips that are manufactured by third parties licensed to practice Telcordia's patents.

### G.     Inequitable Conduct

The defendants will be unable to establish inequitable conduct by clear and convincing evidence. Specifically, the defendants will be unable to show that any non-cumulative, material information was withheld from the Patent and Trademark Office with an intent to deceive. *Bristol-Myers Squibb Co. v. Rhone-Poulenc*

14

*Rorer, Inc.*, 326 F.3d 1226 (Fed. Cir. 2003); *Dayco Prods., Inc. v. Total Containment, Inc.*, 329 F.3d 1358 (Fed. Cir. 2003).

### H.    Equities Generally

As to all of the defendants' equitable defenses and counterclaims, Telcordia submits that the defendants' unclean hands and/or willful infringement negates or bars the defendants' assertion of equitable defenses and counterclaims. *See, e.g., A.C. Aukerman Co.*, 960 F.2d at 1038. Telcordia also notes that the defendants bear the burden of establishing their defenses and counterclaims in equity, and Telcordia reserves the right to address any specific issues raised by the defendants regarding their defenses and counterclaims in equity.

## VI.    TELCORDIA'S ANTICIPATED MOTIONS FOR A DIRECTED VERDICT

Based on the legal theories presented herein, and subject to the evidence presented at trial, Telcordia anticipates that it will move for a directed verdict (or judgment as a matter of law) that no reasonable jury could find:

- Non-infringement (either literally or under the doctrine of equivalents) of the '763 patent;
- Non-infringement (either literally or under the doctrine of equivalents) of the '633 patent;
- That the '306 patent is invalid over the prior art under theories of anticipation or obviousness;
- That the '763 patent is invalid over the prior art under theories of anticipation or obviousness;
- That the '633 patent is invalid over the prior art under theories of anticipation or obviousness;
- That the '306 patent is invalid under 35 U.S.C. § 112 as not enabled, for failure to satisfy the written description requirement, or for failure to disclose the best mode;
- That the '763 patent is invalid under 35 U.S.C. § 112 as not enabled, for failure to satisfy the written description requirement, as indefinite, or for failure to disclose the best mode;
- That the '633 patent is invalid under 35 U.S.C. § 112 for failure to disclose the best mode;
- That the Lucent and/or Cisco equitable defenses or counter claims, including inequitable conduct, bar any or all of Telcordia's claims.

Telcordia reserves the right to move for directed verdict (or judgment as a matter of law) on any additional issues or theories that Cisco and/or Lucent advance at trial depending on the evidence or lack thereof.

# EXHIBIT I2

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

TELCORDIA TECHNOLOGIES, INC.,     )
          )
   Plaintiff/Counterclaim Defendant,   )
          )
      v.          )     C.A. No. 04-875-GMS
          )
LUCENT TECHNOLOGIES, INC.,     )
          )
   Defendant/Counterclaim Plaintiff.   )     **REDACTED**
          )     **PUBLIC VERSION**
TELCORDIA TECHNOLOGIES, INC.,     )
          )
   Plaintiff/Counterclaim Defendant,   )
          )
      v.          )     C.A. No. 04-876-GMS
          )
CISCO SYSTEMS, INC.,     )
          )
   Defendant/Counterclaim Plaintiff.   )

## DEFENDANTS' TRIAL BRIEF

John W. Shaw (I.D. #3362)
Monte T. Squire (I.D. #4764)
YOUNG CONAWAY STARGATT &
  TAYLOR, LLP
The Brandywine Building
1000 West Street
Wilmington, DE 19801
Telephone: (302) 571-6600
Facsimile: (302) 576-3334
jshaw@ycst.com
msquire@ycst.com

Jack B. Blumenfeld (I.D. #1014)
Leslie A. Polizoti (I.D. #4299)
MORRIS, NICHOLS, ARSHT & TUNNELL
LLP
1201 North Market Street
Wilmington, DE 19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
jblumenfeld@mnat.com
lpolizoti@mnat.com

OF COUNSEL:

Steven C. Cherny
LATHAM & WATKINS LLP
885 Third Avenue, Suite 1000
New York, NY  10022
Telephone:  (212) 906-1200
Facsimile:  (212) 571-4864

David A. Nelson
Israel Sasha Mayergoyz
David C. McKone
LATHAM & WATKINS LLP
Sears Tower, Suite 5800
Chicago, IL  60606
Telephone:  (312) 876-7700
Facsimile:  (312) 993-9767

Attorneys for Defendant Lucent Technologies
Inc.

OF COUNSEL:

Matthew D. Powers
Edward R. Reines
Jessica L. Davis
Sonal N. Mehta
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA  94065
Telephone:  (650) 802-3000
Facsimile:  (650) 802-3100

Attorneys for Defendant Cisco Systems, Inc.

## I.     NATURE OF THE CASE

This patent case is an unfortunate result of a belated effort to extract revenue from three old, and not very good, patents. As Telcordia has been passed from owner to owner, it has been squeezed harder to focus on the bottom line. Despite that pressure, Telcordia's licensing efforts have largely failed to the point where its last owner, SAIC, concluded that it would derive more revenue from giving Telcordia's patents away to receive a tax deduction than from licensing. Ultimately SAIC sold Telcordia to a consortium of private equity firms where the pressure to squeeze money out of Telcordia's "aging portfolio" continues. Telcordia's myopic pursuit of profits has caused it to push dubious patent claims way too hard.

As will be shown at trial, each of the three patents-in-suit[1] is invalid and unenforceable. The lead patent in the group is admittedly not infringed and the others plainly are not infringed. Each of these counterclaims and defenses is addressed further in the body of this brief.

Telcordia's trial brief conspicuously omits its overreaching $200 million damages demand.[2] Lacking any legally cognizable theory, Telcordia attempts to justify generally its demand based on a self-serving story regarding its licensing history. However, of the **REDACTED** **REDACTED** in royalties that Telcordia attributes to the patents-in-suit, all but about **REDACTED** was to settle a litigation involving the '306 patent, a patent that Telcordia asserted and now concedes is not infringed. Only about **REDACTED** can be attributed to the '763 and '633 patents.[3] Thus almost all of the licensing revenue Telcordia touts is unrelated to the patents for which Telcordia still has an infringement theory.

---

[1]     The three patents-in-suit are U.S. Patent Nos. 4,893,306 ("the '306 patent"), 4,835,763 ("the '763 patent"), and Re. 36,633 ("the '633 patent").

[2]     Of that, **REDACTED** for Cisco and **REDACTED** is for Lucent.

[3]     Defendants are filing a motion *in limine* to prevent this settlement from being considered based on Fed. R. Evid. 403 because there is a serious risk of confusion given the elimination of the '306 patent infringement claims and based on Rule 408 because it is a litigation settlement.

The remaining **REDACTED** in licensing revenue cited by Telcordia to justify its demands is for the '633 patent. Almost every single license and term sheet that Telcordia has on this patent apply the royalty to the network cards ("cards") being sold – not the network router and switch products ("boxes") sold independently from the cards. The SRTS capable cards are rarely-used optional cards that are purchased infrequently to supplement the basic cards used in all boxes. This explains why Telcordia's actual licensing revenue on this patent from 15 licensees is minute compared to its damages demand. Nonetheless, in a complete and discriminatory break from its prior licensing practices for the '633 patent, Telcordia now seeks a "reasonable" royalty based on the boxes that Defendants sell independent from the cards.

Amazingly, Telcordia seeks damages from Defendants based on every box and every card sold with those boxes, regardless of whether the customer ever purchased an SRTS card or the box ever had an SRTS capable card in it! Thus, for example, Telcordia attempts to recover from Cisco a royalty on 200,000 boxes even though only about 3,000 SRTS capable cards have ever been sold, and thus, at most, only 3,000 Cisco boxes even could potentially infringe the '633 patent. Its demands from Lucent are similarly unsupported. Telcordia's approach is particularly improper because Telcordia claims the SRTS patent covers an industry standard and it agreed to offer reasonable, non-discriminatory terms to those that practice the patent. Yet it now demands terms from Lucent and Cisco that materially differ from all previous licenses it granted. This is wrongful conduct rendering the patent unenforceable.

For the '763 patent, the grand total of historic licensing revenues is **REDACTED** Telcordia, nevertheless, seeks tens of millions of dollars in this case based on alleged use of the '763 patent. Again, Telcordia's request is unjustifiably broad. The patent covers a particular-style communications network. Yet, Telcordia seeks recovery for every box sold by defendants that

can possibly be deployed in the required communications network design without proof that any of those boxes are even used in the type of network Telcordia alleges to infringe.

The following are the issues and theories that Defendants will present at trial based on Telcordia's disclosed positions and the scope of the trial as presently understood.

## II.     CONTESTED FACTS DEFENDANTS WILL ESTABLISH

Defendants intend to establish each of the contested facts set forth in Exhibit B3 to the parties' proposed pretrial order in their favor.

## III.     COUNTERCLAIMS AND DEFENSES: THE PATENTS-IN-SUIT ARE NOT INFRINGED, AND ARE INVALID AND UNENFORCEABLE

### A.     The '306 Patent

#### 1.     The '306 Patent Is Not Infringed

The '306 patent relates to Dynamic Time Division Multiplexing ("DTDM"). As Telcordia has never been shy to trumpet, it has considered the '306 patent to be its premier patent. This patent has been the source of almost all of the **REDACTED** licensing revenue that Telcordia attributes to the patents-in-suit and supposedly covered broad industry standards. However, the parties now agree that, for multiple independent reasons, the '306 patent does not cover industry standards and is not infringed by Defendants, as confirmed by this Court's claim construction. Thus, infringement of this patent will not be a disputed issue at trial.

#### 2.     The '306 Patent Is Invalid And Unenforceable

The parties do, however, plan to try the invalidity and unenforceability of the '306 patent.[4] The '306 patent is fundamentally flawed, starting with the fact that, in the words of the

---

[4]   This Court specifically rejected Telcordia's request to deem Defendants' invalidity and unenforceability counterclaims moot, relying on *Liquid Dynamics Corp. v. Vaughan Co.*, 355 F.3d 1361, 1371 (Fed. Cir. 2004). The Court's decision makes sense not only due to the public interest in eliminating an invalid and unenforceable patent that is still being asserted, but also because Defendants' inequitable conduct claims (which are intertwined with the invalidity issues) form a basis for Defendants' claim that this is an exceptional case entitling them to fees, which has to be

named inventor (Hung-Hsiang Chao), it discloses "the opposite" of the best mode of using the claimed inventions. *See United States Gypsum Co. v. National Gypsum Co.*, 74 F.3d 1209, 1212-13 (Fed. Cir. 1996) (setting forth two-prong test for best mode violations). The explanation that this was some kind of mistake, even if true, does not change the fact that a best mode violation occurred. *See, e.g., Graco, Inc. v. Binks Mfg. Co.*, 60 F.3d 785, 789 (Fed. Cir. 1995) (failure to disclose the best mode is not excused by an innocent mistake). The law does not require wrongful intent for best mode invalidity. *Id.*

On top of that, as with each of the other two patents-in-suit, there is compelling evidence that the named inventors did not conceive of the claimed inventions themselves. Rather, the idea for the patent was obtained from – and is identical to prior art work within – the same Bell organization that was published and widely known. Such patent gamesmanship not only invalidates the patent, but renders it unenforceable due to inequitable conduct.

Most conspicuously, perhaps, the claimed inventions are anticipated by a project within the Bell organization known as FasNet. *See* J. Limb and C. Flores, "Description of Fasnet – A Unidirectional Local-Area Communications Network," The Bell System Technical Journal, Vol. 61, No. 7 (September 1982) and Z. Budrikis and A. Netravali, "A Packet/Circuit Switch," AT&T Bell Laboratories Technical Journal, Vol. 63, No. 8 (October 1984). Although not called DTDM, the FasNet prior art teaches each of the elements of the asserted claims of the '306 patent and thus invalidates this patent. *See Celeritas Techs., Ltd. v. Rockwell*, 150 F.3d 1354, 1361 (Fed. Cir. 1998) ("[A] claim is anticipated if each and every limitation is found either expressly or inherently in a single prior art reference.").

---

adjudicated in any event. *See, e.g., Samsung Elecs. Co. v. Rambus, Inc.*, 398 F. Supp. 2d 470, 482-84 (E.D. Va. 2005) (error to dismiss inequitable conduct declaratory judgment claim when it forms the basis for an exceptional case claim).

In addition, the DTDM work was itself described and fully disclosed in prior art publications by non-inventors, such as Mark Beckner and Steven Minzer, and T.T. Lee. *See* M. Wm. Beckner, T.T. Lee, and S.E. Minzer, "A Protocol and Prototype for Broadband and Subscriber Access to ISDNs," Proceedings of the International Switching Symposium, Vol. 2, pp. 462-69 (1987); Wu, Lee, and Lee, "Dynamic TDM – a Packet Approach to Broadband Networking," IEEE International Conference on Communications (June 1987).[5]

Insofar as Telcordia argues that the anticipatory prior art does not fully disclose the claimed inventions due to an absence of certain structure, the '306 patent is nevertheless invalid as obvious[6] because the structures to use were well known and obviously would have been included. *See, e.g.,* J.S. Turner, "Design of an Integrated Services Packet Network," IEEE Journal of Selected Areas in Communications, Vol. SAC-4, No. 8 (November 1986).

The failure to submit the FasNet and DTDM prior art work referenced above to the Patent Office constitutes inequitable conduct. *Digital Control Inc. v. Charles Machine Works*, 437 F.3d 1309, 1316 (Fed. Cir. 2006) (setting forth inequitable conduct standard). The named inventors knew of the work that surrounded them at Bellcore, including the FasNet and DTDM work by others, and yet failed to submit it for consideration. There is no reasonable explanation for this failure to identify prior art with which the named inventors were intimately familiar and which showed they were not the true inventors of the claimed subject matter.

---

[5]   The latter constitutes prior art under 35 U.S.C. § 102(a) because T.T. Lee is not a named inventor of the '306 patent, and therefore the article is authored by a different inventive entity than the patent.

[6]   *See* 35 U.S.C. § 103; *Graham v. John Deere Co.*, 383 U.S. 1 (1966).

**B.    The '763 Patent**

     **1.    The '763 Patent Is Not Infringed**

The '763 patent describes a way to respond to a break in particular networks. Specifically, it describes a protection scheme for unidirectional counter-rotating ring networks in which each node can compare the channels it receives from each ring and select the better one.

As this Court determined in its claim construction ruling, the claims of the '763 patent require the various communication channels to be demultiplexed before error signals are inserted and detected. For the reasons detailed in Defendants' summary judgment motion, Telcordia will not be able to show that Defendants' products meet these requirements because Defendants are able to, and do, perform error insertion and detection *before* demultiplexing.

Even leaving aside this fatal problem with Telcordia's infringement theory, it suffers from an even more basic problem. The claims of the '763 patent require the accused products to operate within a communications network with very specific characteristics. Telcordia has tendered no evidence showing how often, if ever, Defendants' products are deployed and used in the United States in the ring networks required by the claims. It is beyond question that Defendants' products can be used in networks that are not rings at all. This failure of proof is another basis for finding that Defendants' products do not infringe.

Finally, Defendants' products do not include the structures the Court found to correspond to the means-plus-function terms in the asserted claims. For example, the Court found the terms "monitoring means" and "insertion means" to correspond to a controller, and the term "selector means" to correspond to a switch that receives two demultiplexed channels and selects the channel that does not contain an error signal. The accused instrumentalities in Defendants' products do not correspond to the structures disclosed in the specification.

### 2.    The '763 Patent Is Invalid And Unenforceable

Like the '306 patent, the '763 patent was also misappropriated from others by the named inventor. This time, the named inventor (Chi-Leung Lau) derived the claimed invention from an outside publication (rather than his internal colleague). Specifically, in what Telcordia labels its "conception document," Lau describes the claimed invention, but identifies it as the work of Prisco and Hoss. *See* J. Prisco and R. Hoss, "Fiber Optic Regional Area Networks," IEEE Communications Magazine, Vol. 23, No. 11 (November 1985). It is undisputed that the putative "conception document," which is a survey of pre-existing technology, does not state that Lau conceived of the ideas that Telcordia now claims as his invention. Instead it references Prisco & Hoss as the source of the ideas now claimed in the '763 patent.

Because the Prisco & Hoss publication, as well as other prior art with similar disclosures, including U.S. Patent No. 4,347,605 issued to Hashizume and G. Ester, "Ring up big profits with ring architecture," Telephony, pp. 22-29 (December 1987) disclose every limitation of the '763 patent, they anticipate the claims-in-suit. To the extent any of these anticipatory references do not fully disclose the insertion of error signals, the claimed invention is invalid as obvious because the insertion of an all ones error signal in response to a line break was well-known at the time of the invention. *See, e.g.*, Bellcore Technical Advisory TA-TSY-000010.

In addition, the '763 patent is unenforceable for inequitable conduct due to the withholding of the Prisco & Hoss reference from the Patent Office. Having identified Prisco & Hoss as the source of the ideas claimed as an invention in the '763 patent, there is no excuse for not having presented that prior art to the Patent Office.

Like the '306 patent, the inventor of the '763 patent also failed to disclose his best mode of using the claimed invention. In his "conception document," and another pre-filing internal memorandum, Lau described what he thought was the best equipment to use at each node and

how best to absorb delays and derive external timing information. None of these modes are disclosed in the '763 patent.[7]

### C.     The '633 Patent

The '633 patent claims a method for clock recovery called Synchronous Residual Time Stamping ("SRTS"), which is a combination of two existing prior art methods. SRTS aimed to combine the advantages of both by including two main features:  (1) the transmission of a time stamp outside the so-called "convergence sublayer overhead" and (2) shortening the time stamp.

### 1.     The '633 Patent Is Not Infringed

As noted above, a major aspect of the claimed invention is the transmission of the time stamp outside the convergence sublayer overhead. Nevertheless, Telcordia argued during the claim construction hearing that the claims should be construed broadly to cover products that transmit a time stamp anywhere, including in the convergence sublayer overhead. Telcordia pursued this claim construction because it knew that Defendants' products transmit a time stamp in the convergence sublayer overhead. The Court rejected Telcordia's position and ruled that the asserted claims require the time stamp to be transmitted in a portion of the overhead *other than* the convergence sublayer overhead. Because the Court ruled that the claims do not cover the transmission of time stamps in the convergence sublayer overhead, and that is how Defendants' products work, the patent is not infringed. There are other claim limitations not met by Defendants' products as well.

---

[7]     The claims of the '763 patent also require a "monitoring means," which is a means-plus-function element governed by 35 U.S.C. § 112, ¶ 6. Yet, because the specification contains no corresponding structure, the patent is invalid as indefinite. *Default Proof, Inc. v. Home Depot, Inc.*, 412 F.3d 1291, 1302 (Fed. Cir. 2005) ("[T]estimony of one of ordinary skill in the art cannot supplant the total absence of structure from the specification.").

### 2.     The '633 Patent Is Invalid And Unenforceable

As with the two other patents-in-suit, the '633 patent was derived from others and thus is invalid. Specifically, the idea to combine the two prior art methods, including specifically the idea to use a shortened time stamp outside of the convergence sublayer, was derived by Telcordia from France Telecom. Contemporaneous documents prove this clearly and convincingly. The France Telecom witnesses explain this as well. Because Telcordia did not invent the claimed inventions itself but derived them from France Telecom, the '633 patent is invalid. Indeed, France Telecom prior art invalidates the '633 patent outright.

In addition, because the Patent Office was not even informed of France Telecom's direct involvement in the conception of the claimed inventions, without good explanation, the '633 Patent is infected by inequitable conduct. This renders it unenforceable. Although it withheld the France Telecom communications from the Patent Office in the original prosecution, when the '633 patent was involved in reissue prosecution, Telcordia attempted to submit many of the France Telecom communications. However, this tactic cannot cleanse the taint of inequitable conduct. *Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*, 326 F.3d 1226, 1239-41 (Fed. Cir. 2003). Further, a very crucial piece of correspondence wherein the inventors acknowledge they derived important concepts from France Telcom was inexplicably omitted from the reissue proceedings as well. This second withholding of material information reveals a pattern of inequitable conduct rendering the '633 patent unenforceable.

### D.     Telcordia's Pre-Suit Conduct

### 1.     Cisco

In March 1994, more than ten years before filing this lawsuit, Telcordia initiated its attempt to pursue licensing of the patents-in-suit by sending Cisco a letter stating that the '306 patent and U.S. Patent No. 5,260,978 (the predecessor to the '633 patent) were "available for

license." A few months later, a different Telcordia representative sent a letter to a different person at Cisco stating that it believed it was "highly likely" that the inventions of the '306 and '978 patents were used in some of Cisco's products. In response, outside counsel for Cisco sent a letter to Telcordia requesting the basis for Telcordia's assertion that Cisco's products use the claimed inventions and the particular terms under which a license would be available.

Several years passed with no response to Cisco's questions. In fact, there is no evidence that Telcordia ever responded to these inquiries. In 1998, Cisco and Telcordia were considering a business relationship to develop new technology. As part of this, the parties agreed not to assert patent infringement claims for 18 months. During this time period, however, Telcordia sent a letter to Cisco stating that it intended to "enforce its patent portfolio against any and all infringers now" or upon conclusion of another litigation.

More than a year passed after the period of non-enforcement ended with no word from Telcordia about its patents. In September 2001, a different person at Cisco received a letter from a different person at Telcordia, this time accusing Cisco of infringing nine *different* patents. Again, Cisco responded to Telcordia's letter and agreed to look into the issue. Telcordia waited more than a year before contacting Cisco, and then once again focused on a business solution, including a joint research lab, instead of following up on its infringement accusations. Telcordia waited until July 2004 to assert the '633 patent against Cisco, and until June 2005 to assert the '763 patent against Cisco.

Information about the accused functionality, including detailed product release notes, was publicly available from many sources, including Cisco's website, throughout this unreasonable delay. Telcordia itself has produced thousands of pages of Cisco documentation, showing that it has been studying Cisco's products for over 10 years.

Because Telcordia waited over six years after it had notice of the activity it is accusing of infringement, there is a presumption of laches. *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1037 (Fed. Cir. 1992) (*en banc*). In order to rebut this presumption, Telcordia must demonstrate that its ten-plus-year delay was not unreasonable and that Cisco was not prejudiced. In addition to the substantial resources Cisco expended on the accused products, including billions of dollars on acquisitions, Telcordia's inexcusable delay has hampered Cisco's ability to present a full defense on the merits because the availability and memories of witnesses have faded and documents have been lost and destroyed.[8]

### 2.  Lucent

Telcordia mischaracterizes this case as being a result of Lucent's refusal to license the '763 and '633 patents. The truth is that Telcordia never approached Lucent about taking a license under either patent – it just sued Lucent. Telcordia's own corporate representative conceded that Telcordia never even notified Lucent of the existence of these patents until shortly before Telcordia amended its complaint to assert the '763 and '633 patents in June 2005:

# REDACTED

Telcordia's executive director of licensing explained that Lucent was never approached before Telcordia filed suit because Telcordia **REDACTED** to do so. Telcordia argues that the patents-in-suit are extremely valuable and that Lucent owes Telcordia millions of dollars, yet

---

[8]  Against this background and given, among other things, the strength of the case presented by Cisco, Telcordia's claim of willful infringement must be rejected. *See Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1342 (Fed. Cir. 2004).

[9]  Rule 30(b)(6) Deposition of Rick DePinho on May 4, 2006 at 200:14 – 201:1.

for years Telcordia did not have a single person that could pick up a phone to discuss those "valuable" patents before Telcordia asserted them in this case. [10]

Aware that its failure to give Lucent notice of these patents is fatal to its damages and willfulness case, Telcordia makes repeated reference to an "SRTS patent," attempting to obscure the difference between the unasserted predecessor '978 patent and the asserted re-issue '633 patent. Telcordia does so because it knows it did not give Lucent the statutorily-required notice of the '633 patent-in-suit. Instead, it alleges Lucent had notice of the unasserted predecessor patent. Because Telcordia literally has nothing to say regarding notice of the patent-in-suit, it desperately attempts to meet its burden by alleging notice of unasserted claims in an unasserted patent. As shown below, Telcordia does not come close to showing notice of that patent either.

Even at this late stage of filing its pre-trial brief, Telcordia still is unable to identify a date on which Lucent became aware of the '633 patent or a date prior to suit upon which it gave Lucent statutorily required notice of that patent.[11] Telcordia's reliance on events before the issuance of the '633 patent is insufficient for purposes of notice under both 35 U.S.C. § 287 (damages) and 35 U.S.C. § 284 (willfulness). For example, Telcordia attempts to impute knowledge of the "SRTS patent" to Lucent by reference to a 1995 letter that Telcordia sent to various industry organizations. That letter, however, was addressed "to whom it may concern" and only mentioned the unasserted predecessor '978 patent. The asserted '633 patent did not even exist nor did Lucent even exist in 1995 – it was part of AT&T, which already had a royalty-free license to the '978 patent.

---

[10]    There is a presumption of laches because more than six years prior to asserting the patent, Telcordia believed that Lucent was a **REDACTED** Telcordia also knew or should have known of Lucent's alleged infringement of the patent because it owned and tested the accused products long before bringing this action.

[11]    Telcordia also cannot identify a date on which it gave Lucent notice of the '763 patent, and does not assert that Lucent willfully infringed the '763 patent.

Telcordia also refers to a form letter that it sent to all members of the ATM Forum in January 1997, including Lucent. When Telcordia sent this letter, neither the '633 patent nor the asserted claims existed and the predecessor '978 patent already had been submitted to the PTO for reissue. Further, Telcordia admits that the letter did not identify any Telcordia patents by number nor any trade names of any Lucent products. As such, the 1997 letter could not have provided legally cognizable notice under § 287, which "requires the affirmative communication of a specific charge of infringement by a specific accused product or device." *Amsted Indus. Inc. v. Buckeye Steel Co.*, 24 F.3d 178, 187 (Fed. Cir. 1994). The letter also did not suffice under § 284 because "[t]o willfully infringe a patent, *the patent must exist* and one must have knowledge of it. . . . Filing an application is no guarantee any patent will issue." *State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985) (emphasis added).

Telcordia also contends that Lucent should have obtained a license to practice SRTS by virtue of its due diligence in acquiring Yurie and Ascend. In 1997, however, Lucent did not sell any cards with the SRTS capability. Also, Lucent plainly had no need to consider a license to the predecessor '978 patent because Telcordia has conceded that none of the originally issued claims that carried over from that patent to the asserted reissue patent are infringed.

### E.     Estoppel

Telcordia's conduct before several different standards bodies bars Telcordia's assertion of the '633 patent.[12] By not disclosing the fact that it had filed a patent application before standards bodies, Cisco contends that Telcordia misled Cisco to believe it did not have any patents relevant to the SRTS clock recovery technique. Telcordia also misled Cisco and the rest

---

[12] *Philips Elecs. N. Am. Corp. v. Contec Corp.*, 312 F. Supp. 2d 639, 641 (D. Del. 2004) (quoting *Scholle Corp. v. Blackhawk Molding Co.*, 133 F.3d 1469, 1471 (Fed. Cir. 1998)).

of the industry to believe that it would license any patents relevant to the SRTS standards for free or at reasonable and nondiscriminatory terms far less than those Telcordia is seeking.

**F.    Intervening Rights**

Cisco is entitled to equitable intervening rights based on its substantial investment in designing and developing products that are accused of infringing the '633 patent but not accused of infringing the pre-reissue '978 patent.[13]

**IV.    AVAILABLE DAMAGES IN THE EVENT LIABILITY IS ESTABLISHED**

**A.    '763 Patent**

As explained above, Telcordia can only recover damages for products deployed in the particular communications network required by the claims. Because Telcordia has failed to prove such use, its damages theory fails totally. Telcordia has only once before licensed the '763 patent for a total of only **REDACTED** The damages adequate to compensate Telcordia for Cisco's alleged infringement is a paid-up, lump-sum royalty of **REDACTED** The maximum damages adequate to compensate Telcordia for Lucent's alleged infringement is [14] **REDACTED**

**B.    '633 Patent**

The functionality accused of infringing the '633 patent is performed by an optional card sold separately from Defendants' router and switch boxes. The appropriate base for the '633 patent should therefore only include revenue attributable to the cards capable of performing the accused SRTS functionality. This is consistent with virtually all of Telcordia's license agreements and term sheets, which require royalties to be based on the SRTS card. The damages adequate to compensate Telcordia for Cisco's alleged infringement is a paid-up, lump-sum

---

[13]  *Shockley v. Arcan, Inc.*, 248 F.3d 1349, 1360-61 (Fed. Cir. 2001).

[14]  Defendants' primary customers for the products accused of infringing the '763 patent are the RBOCs and AT&T. Telcordia admits that Defendants have no liability for sales to those licensed customers.

**REDACTED**

royalty of          The damages adequate to compensate Telcordia for Lucent's alleged

infringement is **REDACTED**

### C.     Foreign Sales

There is no basis for Telcordia's assertion that it is entitled to worldwide sales of Cisco's

products because there is no evidence that Cisco performed any allegedly infringing activities

within the United States connected to products sold outside of the United States. There also is no

basis for Telcordia's damages expert's unsupported "estimation" of foreign sales.[15]

### D.     No Marking

Telcordia's damages are statutorily limited to sales occurring after it provided actual or

constructive notice. Constructive notice requires that a patentee and its licensees mark licensed

products with appropriate patent numbers. Failure to mark by a licensee extends to products that

were manufactured on behalf of the licensee. *See Amsted*, 24 F.3d at 185. It is undisputed that

Defendants and others have made the accused products pursuant to licenses for the RBOCs and

AT&T, that those licenses say nothing about marking, and that products made under licenses to

the asserted patents have never been marked. Telcordia also has failed to identify evidence that

any of its other licensees have ever marked licensed products with its patent numbers, or that

Telcordia took any reasonable steps to ensure that products made under the patent were marked.

## V.     DEFENDANTS' ANTICIPATED MOTIONS FOR A DIRECTED VERDICT

Defendants anticipate moving for judgment as a matter of law on the following:

(1) No Direct Infringement; (2) No Intent for Inducement; (3) No Contributory Infringement; (4)

No Willful Infringement; (5) Invalidity; (6) Unenforceability; (7) Overbreadth of Damages Base;

(8) No Damages Prior to Notice; and (9) No Damages for Cisco Foreign Sales. Based on the

evidence presented at trial, Defendants reserve the right to amend this list.

---

[15]    Cisco is requesting the exclusion of this unsubstantiated theory in a motion *in limine*.

# EXHIBIT I3.A

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TELCORDIA TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff/Counterclaim Defendant, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-875-GMS |
| | ) | |
| LUCENT TECHNOLOGIES INC., | ) | |
| | ) | |
| Defendant/Counterclaim Plaintiff. | ) | |
| | ) | |
| | ) | |
| _____ | ) | |

| | | |
|---|---|---|
| TELCORDIA TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff/Counterclaim Defendant, | ) | Civil Action No. 04-876-GMS |
| | ) | |
| v. | ) | |
| | ) | |
| CISCO SYSTEMS, INC., | ) | |
| | ) | |
| Defendant/Counterclaim Plaintiff. | ) | |
| _____ | ) | |

## EXHIBIT I3.A:

## PRELIMINARY JURY INSTRUCTIONS [PATENT]

Plaintiff Telcordia Technologies, Inc. ("Telcordia") and Defendants Cisco Systems, Inc. and Lucent Technologies Inc. ("Defendants") submit the following proposed preliminary jury instructions and objections as of March 2, 2007. The parties reserve the right to submit modifications to these instructions and/or additional instructions on any pertinent issue, if the need arises. [1, 2, 3]

---

[1]    In submitting these instructions, Defendants have made efforts to streamline the instructions such that only one instruction be read per issue. In doing so, Defendants have

**INTRODUCTION**   *(AGREED)*

Members of the jury: Now that you have been sworn, I am now going to give you some preliminary instructions to guide you in your participation in the trial.

These instructions will give you some general rules and guidance that might apply to any civil case. However, because this is a patent trial which will deal with subject matter that is not within the every day experience of most of us, I will also give you some additional preliminary instructions regarding patents to assist you in discharging your duties as jurors.

**Source:**        Preliminary Jury Instructions - Patent (GMS)
                   Rev: 1/18/06

---

attempted to clarify instructions to make clear where the claims and defenses apply separately to each Defendant and where they are common. Defendants reserve the right to propose modifications to the instructions to clarify that there are two different Defendants as appropriate to minimize juror confusion.

[2]     Telcordia incorporates its position on mootness of '306 validity and enforceability issues. *See* Exhibit B2 at Section IX. Defendants' position with respect to the invalidity and unenforceability issues relating to the '306 patent are set forth in *Defendants' Statement on Telcordia's Assertion of Mootness of '306 Invalidity and Unenforceability Defenses and Counterclaims* (Exhibit B3 at p. 40-41). The parties incorporate their respective statements by reference.

[3]     Defendants submit these instructions based on theories that Telcordia has disclosed and for which it has identified some alleged legal, factual and expert support. To the extent Telcordia is permitted to try other theories, Defendants reserve the right to update and supplement their instructions to take into account such theories. Defendants also submit these proposed jury instructions prior to adjudication of the pending summary judgment motions and motions *in limine*. Insofar as the Court's rulings on those motions alter the scope of the issues in this case, Defendants reserve the right to revise their proposed instructions accordingly. Telcordia submits these instructions based on theories that Defendants have disclosed and for which they have identified some alleged legal, factual and expert support. To the extent Defendants are permitted to try other theories, Telcordia reserves the right to update and supplement its instructions to take into account such theories. Telcordia also submits these proposed jury instructions prior to adjudication of the pending summary judgment motions and motions *in limine*. Insofar as the Court's rulings on those motions alter the scope of the issues in this case, Telcordia reserves the right to revise its proposed instructions accordingly.

<u>**THE PARTIES AND THEIR CONTENTIONS**</u>   *(DISPUTED)*

<u>**Plaintiff's Proposed Instruction**</u>

Before I begin with those instructions, however, allow me to give you an overview of who the parties are and what each contends.

You may recall that during the process that led to your selection as jurors, I advised you that this is a civil action for patent infringement arising under the patent laws of the United States.

The parties in this case are the plaintiff, Telcordia Technologies, Inc., and the defendants, Lucent Technologies Inc. and Cisco Systems, Inc.  Telcordia Technologies, Inc. was formerly known as Bellcore and you may hear attorneys and witnesses refer to Bellcore at times during this trial

The dispute between the parties relates to the manufacture and operation of equipment for telecommunications or data communications networks, including routers, switches, and hubs. During the trial, the parties will offer testimony to familiarize you with this technology.

Telcordia asserts that it owns two United States Patents which it alleges that Cisco and Lucent infringes, Patent Nos. 4,835,763 and Re. 36,633, and a third United States Patent, United States Patent No. 4,893,306.  Infringement of that patent is not an issue for your consideration. Rather, you will consider only the validity and enforceability of that patent.  Because these numbers are so long, patents are usually referred to by their last three digits.  For example, Patent No. 4,835,763 is called simply "the '763 patent," Patent No. Re. 36,633 is called simply "the '633 patent," and Patent No. 4,893,306 is called simply "the '306 patent."  Sometimes the patents collectively will be referred to as the "Patents-In-Suit."  Telcordia contends that Lucent and Cisco make, use, sell, and offer for sale communications equipment that infringes these patents.  Telcordia contends that Cisco's infringement of the '763 and '633 patents is willful.

Telcordia contends that Lucent's infringement of the '633 patent is willful.  Telcordia seeks damages for Lucent's and Cisco's alleged infringement.

Telcordia does not contend that all of the claims of each patent are infringed by Lucent and Cisco.  Instead, Telcordia asserts that only certain claims are infringed.  They may be called "asserted claims."  Telcordia contends that some of Lucent's and Cisco's products infringe the asserted claims.  I, and the attorneys and witnesses, may refer to these products as "accused products."  You, of course, will determine whether or not each accused product infringes the asserted claims of any of Telcordia's patents.

Persons or companies sued for allegedly infringing a patent can deny infringement.  They can also defend a charge of infringement by proving the patent is invalid or unenforceable.  In this case, Lucent and Cisco deny that they infringe Telcordia's patents and assert what are called affirmative defenses to the charges of infringement.  I will tell you more about infringement in a few minutes.  I will instruct you as to defenses to a charge of infringement and possible damages resulting from a finding of infringement in my instructions to you at the close of the evidence.

**Source:**    Preliminary Jury Instructions - Patent (GMS)
               Rev: 1/18/06

### Defendants' Objections

Defendants object to Telcordia's instruction insofar as Telcordia asserts that "Defendants' digression from the Court's model instruction" to reference invalidity and unenforceability.  This is a somewhat atypical case in which the parties have ***agreed*** that the jury will decide unenforceability.  Defendants have adapted the instruction to take into account the parties' agreement and the issues that the jury will hear.  Otherwise, Defendants have made a concerted effort to mirror the model instruction.

Defendants have also modified their proposal to take into account Telcordia's objections.

*    *    *

### Defendants' Proposed Instruction

Before I begin with those instructions, however, allow me to give you an overview of who the parties are and what each contends.

You may recall that during the process that led to your selection as jurors, I advised you that this is a civil action for patent infringement arising under the patent laws of the United States.

The parties in this case are the plaintiff, Telcordia Technologies, Inc., and the Defendants Lucent Technologies Inc. and Cisco Systems, Inc.  Telcordia Technologies, Inc. was formerly known as Bellcore and you may hear attorneys and witnesses refer to Bellcore at times during this trial.

The dispute between the parties relates to the manufacture and operation of equipment for telecommunications or data communications networks.  During the trial, the parties will offer testimony to familiarize you with this technology.

Telcordia asserts that it owns two United States Patents which it alleges that Cisco and Lucent infringe, Patent Nos. 4,835,763 and Re. 36,633, and a third United States Patent, United States Patent No. 4,893,306, which it previously asserted that Cisco and Lucent infringe. Because these numbers are so long, patents are usually referred to by their last three digits.  For example, Patent No. 4,893,306 is called simply the "the '306 patent," Patent No. 4,835,763 is called simply "the '763 patent," and Patent No. Re. 36,633 is called simply "the '633 patent." Sometimes the three patents will be referred to collectively as the "Patents-in-Suit."

Telcordia contends that Lucent and Cisco make, use, sell, and offer for sale communications equipment that infringes the '763 and '633 patents. Telcordia does not contend that all of the claims of each patent are infringed by Lucent and Cisco. Instead, Telcordia asserts that only certain claims are infringed. They may be called "asserted claims." Telcordia contends that some of Lucent's and Cisco's products infringe the asserted claims. I, and the attorneys and witnesses, may refer to these products as "accused products."

Telcordia contends that Cisco's infringement of both the '763 and '633 patents is willful. Telcordia contends that Lucent's infringement of the '633 patent is willful. Telcordia seeks damages for Lucent's and Cisco's alleged infringement.

Lucent and Cisco deny that they make, use, sell, or offer for sale any products that infringe the '763 or '633 patents. Lucent and Cisco also assert that the '763, '633 and '306 patents are invalid and unenforceable for a number of reasons.

I will tell you more about infringement, invalidity and unenforceability in a few minutes. And, at the close of evidence, I will instruct you as to what it takes to prove infringement, the defenses to a charge of infringement, the possible damages resulting from a finding of infringement, and the limitations on these damages. At that time, you will weigh the evidence and determine whether or not each accused product infringes the asserted claims of the '633 and '763 patents, and whether the Patents-in-Suit are invalid or unenforceable.

**Source:**      Preliminary Jury Instructions - Patent (GMS)
                 Rev: 1/18/06

**<u>Plaintiff's Objections</u>**

Telcordia has revised its initial proposed instruction to accommodate the defendants' objection regarding the jury rendering a verdict of validity and enforceability as to the '306 patent (which are the only '306 issues for potential presentation to the jury). Otherwise, Telcordia's instruction remains parallel with the Court's January 18, 2006, model instruction and Telcordia objects to the defendants' digressions from that model instruction.

Telcordia objects to the defendants' statement that the '306 patent was "previously asserted." Infringement of the '306 patent is presently asserted (subject to appeal), but is not an issue for the jury's consideration due to Telcordia's concession of non-infringement under the Court's claim construction. Telcordia has revised its proposed instruction to incorporate a more accurate statement of the status of the '306 patent.

## DUTIES OF THE JURY    *(AGREED)*

So, let me begin with those general rules that will govern the discharge of your duties as jurors in this case.

It will be your duty to find from the evidence what the facts are.  You and you alone will be the judges of the facts.  You will then have to apply those facts to the law as I will give it to you both during these preliminary instructions and at the close of the evidence.  You must follow that law whether you agree with it or not.  In addition to instructing you about the law, at the close of the evidence, I will provide you with instructions as to what the claims of the patents mean.  Again, of course, you are bound by your oath as jurors to follow these and all the instructions that I give you, even if you personally disagree with them.  All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly.  Do not let any bias, sympathy, or prejudice that you may feel toward one side or the other influence your decision in any way.  Also, do not let anything that I may say or do during the course of the trial influence you.  Nothing that I may say or do is intended to indicate, or should be taken by you as indicating, what your verdict should be.

**Source:**       Preliminary Jury Instructions - Patent (GMS)
                  Rev: 1/18/06

**EVIDENCE**  *(AGREED)*

The evidence from which you will find the facts will consist of the testimony of witnesses (the testimony of witnesses consist of the answers of the witnesses to questions posed by the attorneys or the court -- you may not ask questions). Evidence will also consist of documents and other things received into the record as exhibits, and any facts that the lawyers agree to or stipulate to or that I may instruct you to find.

Certain things are not evidence and must not be considered by you. I will list them for you now:

1.      Statements, arguments, and questions by lawyers are not evidence.

2.      Objections to questions are not evidence. Lawyers have an obligation to their clients to make objections when they believe evidence being offered is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it. If the objection is sustained, ignore the question. If it is overruled, treat the answer like any other. If you are instructed that some item of evidence is received for a limited purpose only, you must follow that instruction.

3.      Testimony that the court has excluded or told you to disregard is not evidence and must not be considered.

4.      Anything you may have seen or heard outside the courtroom is not evidence and must be disregarded. You are to decide the case solely on the evidence presented here in the courtroom.

There are two kinds of evidence: direct and circumstantial. Direct evidence is direct proof of a fact, such as testimony of an eyewitness. Circumstantial evidence is proof of facts from which you may infer or conclude that other facts exist. As a general rule, the law makes no

distinction between these two types of evidence, but simply requires that you find facts from all

the evidence in the case, whether direct or circumstantial or a combination of the two.

**Source:**      Preliminary Jury Instructions - Patent (GMS)
                  Rev: 1/18/06

**CREDIBILITY OF WITNESSES - WEIGHING CONFLICTING TESTIMONY** *(AGREED)*

You are the sole judges of each witness's credibility. You should consider each witness's means of knowledge; strength of memory; opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witness's biases, prejudices, or interests; the witness's manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony.

If you find the testimony to be contradictory, you must try to reconcile it, if reasonably possible, so as to make one harmonious story of it all. But if you can't do this, then it is your duty and privilege to believe the testimony that, in your judgment, is most believable and disregard any testimony that, in your judgment, is not believable. This instruction applies to the testimony of all witnesses, including expert witnesses.

**Source:**       Preliminary Jury Instructions - Patent (GMS)
                  Rev: 1/18/06

<u>**BURDEN OF PROOF**</u>    *(DISPUTED)*

<u>**Plaintiff's Proposed Instruction**</u>

As I have already told you, in this case, Telcordia is the owner of two patents which it contends Lucent and Cisco infringe.  For each patent and for each defendant, Telcordia has the burden of proving infringement by what is called a preponderance of the evidence.  That means Telcordia has to produce evidence which, considered in light of all the facts, leads you to believe that what the patent owner alleges is more likely true than not.  To put it differently, if you were to put Telcordia's and the defendants' evidence on opposite sides of a scale, the evidence supporting Telcordia's allegations would have to make the scale tip somewhat on its side.  If Telcordia fails to meet this burden, the verdict must be for the defendants.  Telcordia must also prove its damages by a preponderance of the evidence.

In this case, Lucent and Cisco assert that Telcordia's patents are invalid and unenforceable.  A patent, however, is presumed to be valid and enforceable.  Accordingly, the party challenging the patent has the burden of proving by clear and convincing evidence that the patent is invalid or unenforceable.  Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a factual contention is highly probable.  Proof by clear and convincing evidence is thus a higher burden than proof by a preponderance of the evidence.  Telcordia also contends that Lucent and Cisco willfully infringed the patents in suit.  Telcordia must prove willful infringement by clear and convincing evidence.

Those of you who have sat on criminal cases will have heard of proof beyond a reasonable doubt.  That requirement does not apply to a civil case; therefore, you should put it out of your mind.

**Source:**      Preliminary Jury Instructions - Patent (GMS)
                 Rev: 1/18/06

**<u>Defendants' Objections</u>**

Defendants object to Plaintiff's proposed instruction because it includes an instruction on the presumption of validity. Such an instruction is likely to be confusing and is unsupported by current Federal Circuit case law. The presumption itself is not entitled to any evidentiary weight and, therefore, an instruction on the presumption is cumulative of the instruction on the burden of proof. Including both an instruction as the burden of proof and a statement as to the presumption of validity may suggest to the jury that that presumption has some separate evidentiary weight. *See Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247, 1259 (Fed. Cir. Mar. 30, 2004) ("[T]he presumption of validity and heightened burden of proving invalidity 'are static and in reality different expressions of the same thing – a single hurdle to be cleared.'") (upholding district court's decision to not instruct the jury on the presumption of validity); *SSIH Equip. S.A. v. U.S. Int'l Trade Comm'n*, 718 F.2d 365, 375 (Fed. Cir. 1983) ("The presumption of validity afforded by 35 U.S.C. § 282 does not have independent evidentiary value. Rather the presumption places the burden of going forward, as well as the burden of persuasion, upon the party asserting invalidity."); *Avia Group Int'l, Inc. v. L.A. Gear California, Inc.*, 853 F.2d 1557, 1562 (Fed. Cir. 1988) ("[T]he presumption is a procedural device, which assigns the burden of going forward as well as the burden of proof of facts to the challenger. . . . [T]he presumption is one of law, not fact, and does not constitute "evidence" to be weighed against a challenger's evidence.").

Since the Federal Circuit's 2004 decision in *Chiron*, other courts have declined to instruct the jury on presumption of validity once it has already been instructed on the clear and convincing standard. *See, e.g.*, *Agere Sys., Inc. v. Atmel Corp.*, 2005 WL 2994702, *3 (E.D. Pa. Aug. 17, 2005) ("Given this clear explanation of the applicable burden of proof, Agere's

argument that the Court erred in failing to explicitly instruct the jury that each individual patent claim is presumed valid must also fail, as the Federal Circuit has clearly held that a district court does not err by failing to so instruct when the instruction on the burden of proof has been adequate."). Telcordia's authority, which predates *Chiron*, fails to take into account the Federal Circuit's clear holding that the presumption of validity and the heightened burden of proof are "a single hurdle to be cleared."

Moreover, several sets of model patent jury instructions echo these principles. For example, the Federal Circuit Bar Association's Model Patent Jury Instructions -- adopted in 2001, even before *Chiron* -- echo this concern that a separate instruction on the presumption of validity may lead to jury confusion:

> In light of the procedural role of the presumption of validity, instruction the jury on the presumption in addition to informing it of the clear and convincing burden of proof may cause jury confusion as to its role in deciding invalidity. This instruction, therefore, omits any reference to the presumption of validity.

Federal Circuit Bar Association Model Patent Jury Instructions (2001) at 54. Similarly, the American Intellectual Property Law Association (AIPLA) and Northern District of California instruct the jury as the heightened burden of proof for invalidity without including a presumption of validity instruction. *See* AIPLA Model Patent Jury Instructions (2006) at 8, 9, 19; N.D. Cal. Model Patent Jury Instructions (2004) § B.4.1 at 23.

In sum,, Plaintiff's proposed instruction invites the jury to err by assigning evidentiary weight both to the presumption and to the heightened burden of proof and should not be adopted.

Defendants further object to Plaintiff's proposed instruction because it does not explain to the jury that it will be asked to render a verdict on infringement for the '633 and '763 patents, and to render a verdict on invalidity and unenforceability as to the '306, '633 and '763 patents.

*      *      *

14

## **Defendants' Proposed Instruction**

As I have already told you, Telcordia is the owner of two patents which it contends Lucent and Cisco infringe, and a third patent which it previously contended Lucent and Cisco infringe. For each patent and for each defendant, Telcordia has the burden of proving infringement by what is called a preponderance of the evidence. That means Telcordia has to produce evidence which, considered in light of all the facts, leads you to believe that what the patent owner alleges is more likely true than not. To put it differently, if you were to put Telcordia's and the Defendants' evidence on opposite sides of a scale, the evidence supporting Telcordia's allegations would have to make the scale tip somewhat on its side. If Telcordia fails to meet this burden for either Defendant, the verdict must be for that Defendant. Telcordia must also prove its damages by a preponderance of the evidence.

In this case, Lucent and Cisco assert that all three of Telcordia's patents are invalid and unenforceable. The party challenging the patent has the burden of proving by clear and convincing evidence that the patent is invalid or unenforceable. Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a factual contention is highly probable. Telcordia also contends that Lucent and Cisco willfully infringed the patents in suit. Telcordia must prove willful infringement by clear and convincing evidence.

Those of you who have sat on criminal cases will have heard of proof beyond a reasonable doubt. That requirement does not apply to a civil case; therefore, you should put it out of your mind.

**Source:**     Preliminary Jury Instructions - Patent (GMS)
             Rev: 1/18/06

**Plaintiff's Objections**

Telcordia has modified its initial proposed instruction to account for the defendants' addition of unenforceability, and recognition that unenforceability must be proven by clear and convincing evidence.  Telcordia has also modified its instruction to account for the defendants' objection that "Telcordia has the burden of separately proving infringement by each Defendant for each asserted patent."  Telcordia notes that the defendants' concerns in this regard are overstated as each proposed verdict form clearly delineates between patents and defendants.  Additionally, defendants' proposed language delineating between patents and parties is confusing and difficult to follow.  Telcordia has added the simple phrase "for each patent and for each defendant . . ." to its instruction.  There is no need to confuse the jury with burdensome language (i.e. "separately for each of the first two patents, the '763 and '633 patents, and for each of the Defendants") when a simple phrase ("For each defendant and for each patent") will do.

Telcordia objects to the defendants' proposed instruction because it removes, without comment, the sentence "Proof by clear and convincing evidence is thus a higher burden than proof by a preponderance of the evidence," which properly belongs after the sentence "Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a factual contention is highly probable."  There is no reason for the defendants to meddle with this Courts' recent model instructions on the burden of proof.  The jury will not necessarily be familiar with the respective burdens of proof, and there is no reason not to give the jury context as to which burden is higher.  Moreover, informing the jury about the respective burdens is a practice that has been reviewed and approved by this Court, has been included in the Court's January 18,

2006, model preliminary instructions, and should not be modified as defendants propose. *Lifescan, Inc. v. Home Diagnostics, Inc.*, 103 F.Supp.2d 345, 378-79 (D. Del. 2000).

**Telcordia's Objection to Defendants' Digression from Model Instruction on Presumption of Validity:**

Telcordia objects to the defendants' deliberate and significant digression from this Court's January 18, 2006, model instructions in an effort to ignore the presumption of validity. The presumption of validity is a fundamental tenet of patent law.  35 U.S.C. § 282; *Cardinal Chemical Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 93 (1993).  There is simply no reason to refrain from instructing the jury about the presumption.  The defendants cite no case holding that it is improper to instruct the jury about the presumption of validity.  Indeed, this Court's January 18, 2006, model preliminary instructions include the presumption of validity, as do the 1993 Delaware model instructions and the 2004 draft Delaware model instructions.   This is unsurprising against the backdrop of countless Federal Circuit and district court opinions that recognize the propriety of instructing the jury on the presumption of validity.  *Novo Nordisk v. Becton Dickinson and Co.*, 304 F.3d 1216, 1220 (Fed. Cir. 2002) ("the district court instructed the jury that Novo's patents carried a presumption of validity, and that clear and convincing evidence was needed to overcome that presumption."); *United States Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1564 (Fed. Cir. 1997) ("The jury was correctly instructed on the presumption of validity, and that Ethicon bore the burden of proving invalidity by clear and convincing evidence."); *Richardson v. Suzuki Motor Co.*, 868 F.2d 1226, 1236-37 (Fed. Cir. 1989) ("The court correctly instructed the jury that invalidity must be proved by clear and convincing evidence, referring to the presumption of validity.") (citing cases); *Handgards, Inc. v. Ethicon, Inc.*, 743 F.2d 1282, 1292-93 (Fed. Cir. 1984) ("The district court properly instructed

17

the jury . . . that a patent is presumptively valid and that presumption can only be rebutted with clear and convincing evidence."); *Lifescan, Inc. v. Home Diagnostics, Inc.*, 103 F.Supp.2d 345, 377-78 (D. Del. 2000) (jury instructions not erroneous where they "appropriately advise[d] the jury on the clear and convincing evidence standard, the presumption of validity, and the relationship between the two concepts . . . [which] are at the core of the statutory scheme of patent litigation.") (citation omitted).

Indeed, two of the cases cited by the defendants, *Avia Group Int'l, Inc. v. L.A. Gear California, Inc.*, 853 F.2d 1557, 1562 (Fed. Cir. 1988); *SSIH Equip. S.A. v. U.S. Int'l Trade Comm'n*, 718 F.2d 365, 375 (Fed. Cir. 1983), are entirely consistent with instructing the jury as to the presumption of validity. The third case merely notes that in the specific circumstances of that case, and after reviewing the district court's jury instructions in their entirety, the Federal Circuit found no error in the district court's failure to instruct on the presumption. *Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247, 1259 (Fed. Cir. Mar. 30, 2004). The *Chiron* case does not hold that it is improper to instruct on the presumption (nor does any Federal Circuit case so hold), and indeed against the numerous cases recognizing the propriety of the instruction, it may very well be improper not to instruct as to the presumption under circumstances different from the *Chiron* case.

Telcordia objects to the defendants' unwarranted and unfairly prejudicial digression from this Court's model instructions regarding the presumption of validity. Hereinafter, Telcordia incorporates this objection by reference as its "objection to defendants' digression from Model Instruction on presumption of validity."

18

<u>General Guidance Regarding Patents</u>   *(DISPUTED IN PART)*   I will now give you a general overview of what a patent is and how one is obtained.

**A.**      **<u>Constitutional Basis for Patent Grant</u>** *(AGREED)*

The United States Constitution, Article I, Section 8, grants the Congress of the United States the power to enact laws "to promote the progress of science and the useful arts, by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries."

**B.**      **<u>Exclusionary Right and Term of a Patent</u>** *(AGREED)*

The United States Patent and Trademark Office is responsible for reviewing patent applications and granting patents.  Once the "Patent and Trademark Office" or "PTO" has issued a patent, the patent owner has the right to exclude others from making, using, selling, or offering for sale the invention throughout the United States for the length of the patent term.  If the invention covered by the patent is a method, the patent law gives the patent owner the right to exclude others from using the method throughout the United States or making or selling throughout the United States any product made by the patented method anywhere in the world.

A person who, without the patent owner's authority makes, uses, sells, or offers to sell a product or employs a method that is covered by one or more claims of a valid patent, infringes the patent.  A person can also induce others to infringe a patent by suggesting to other persons or companies that they undertake acts that constitute infringement.  This is called inducing infringement.

**<u>The Parts Of A Patent</u>** *(DISPUTED)*

**<u>Plaintiff's Proposed Instruction</u>**

I will next briefly describe the parts of a patent and some of the procedures followed by those attempting to obtain patents.  Many of the terms used by me in this description are

contained in a "Glossary of Patent Terms," which I will give to you along with a copy of these preliminary instructions. Feel free to refer to the Glossary throughout the trial.

For an invention to be patentable, it must be new, useful, and, at the time the invention was made, must not have been obvious to a person having ordinary skill in the art to which the subject matter pertains.

Under the patent laws, the United States Patent and Trademark Office examines patent applications and issues patents. A person applying for a patent must include a number of items in his or her application, including: (1) a detailed description of the invention in terms sufficiently full, clear, concise and exact to enable any person skilled in the art to which the invention pertains to be able to make and use the invention; (2) a disclosure of the best mode of carrying out the invention known to the inventor at the time of filing; and (3) one or more claims.

The application includes a written description of the invention called a "specification" and may include drawings that illustrate the invention. The specification concludes with one or more claims that particularly and distinctly define the subject matter that the inventor regards as his or her invention. When a patent application is received at the Patent and Trademark Office, it is assigned to an examiner, who examines the application, including the claims, to determine whether the application complies with the requirements of the U.S. patent laws. The examiner reviews the prior work of others in the form of voluminous files of patents and publications. This type of material is called "prior art." Prior art is generally technical information and knowledge that was known to the public either before the invention by the applicant or more than one year before the filing date of the application. Sometimes, in specific circumstances and under specific conditions, technical information that was not known to the public can also be prior art. Documents found in the search of prior art are called "references." In conducting the

20

search of prior art, the examiner notes in writing on the file the classes or subclasses of art searched.  The compilation of the papers concerning the proceedings before the Patent and Trademark Office is called the "prosecution history," "file wrapper," or "file history."  The PTO does not have its own laboratories or testing facilities.

The examiner may "reject" the application claims if he or she believes that they are applications for inventions that are not patentable in light of the prior art, or because the patent specification does not adequately describe the claimed inventions.  The applicant may then amend the claims to respond to the examiner's rejections.  If, after reviewing the prior art maintained at the PTO, the examiner concludes that the claims presented by the applicant define the applicant's claimed invention over the most relevant known prior art in a manner that is patentable and that the patent meets the other requirements for patentability, the application is granted as a U.S. patent.

**Source:**        Preliminary Jury Instructions - Patent (GMS)
                 Rev: 1/18/06
                              <u>**Defendants' Objections**</u>

The parties' dispute is focused on the two sentences of Telcordia's proposed instruction which define prior art:  "Prior art is generally technical information and knowledge that was known to the public either before the invention by the applicant or more than one year before the filing date of the application.  Sometimes, in specific circumstances and under specific conditions, technical information that was not known to the public can also be prior art."  Defendants object to Plaintiff's proposed instruction because it includes the instruction that "Prior art is generally technical information and knowledge that was known to the public either before the invention by the applicant or more than one year before the filing date of the application."  Sections 102 and 103 of the Patent Code allow for non-public material to

constitute prior art in certain circumstances, and here, Defendants intend to rely on non-public prior art as part of their invalidity defense.  *See OddzOn Prods. v. Just Toys, Inc.*, 122 F.3d 1396 (Fed. Cir. 1997).  Inclusion of this instruction unduly limits the scope of prior art which Defendants are entitled to rely upon and may confuse the jury.

Telcordia's attempt to "more accurately account" for Defendants' concern about Section 102(f) does not adequately address Defendants' concern.  Instructing the jury that "Sometimes, in specific circumstances and under specific conditions, technical information that was not known to the public can also be prior art," does not accurately reflect the law and (prejudicially) implies that non-public prior art is very rare and should be viewed with great skepticism. Rather than instruct the jury that prior art is generally "public" and only rarely may be non-public as Telcordia proposes, Defendants propose a neutral statement of prior art for these preliminary instructions:  "However, in general, prior art includes subject matter that existed before the claimed invention."  The final jury instructions will provide the jury with the legal standards for prior art.

\*      \*      \*

### Defendants' Proposed Instruction

I will next briefly describe the parts of a patent and some of the procedures followed by those attempting to obtain patents.  Many of the terms used by me in this description are contained in a "Glossary of Patent Terms," which I will give to you along with a copy of these preliminary instructions.  Feel free to refer to the Glossary throughout the trial.

For an invention to be patentable, it must be new, useful, and, at the time the invention was made, must not have been obvious to a person having ordinary skill in the art to which the subject matter pertains.

22

Under the patent laws, the United States Patent and Trademark Office examines patent applications and issues patents.  A person applying for a patent must include a number of items in his or her application, including: (1) a detailed description of the invention in terms sufficiently full, clear, concise and exact to enable any person skilled in the art to which the invention pertains to be able to make and use the invention; (2) a disclosure of the best mode of carrying out the invention known to the inventor at the time of filing; and (3) one or more claims.

The application includes a written description of the invention called a "specification" and may include drawings that illustrate the invention.  The specification concludes with one or more claims that particularly and distinctly define the subject matter that the inventor regards as his or her invention.  When a patent application is received at the Patent and Trademark Office, it is assigned to an examiner, who examines the application, including the claims, to determine whether the application complies with the requirements of the U.S. patent laws.

The examiner reviews the prior work of others in the form of voluminous files of patents and publications.  This type of material is called "prior art."  The examiner reviews this prior art to determine whether the invention is truly an advance over the state of the art at the time, i.e., whether each claim defines an invention that is new and not obvious in view of the prior art.  Prior art is defined by law, and I will give you at a later time specific instructions as to what constitutes prior art.  However, in general, prior art includes subject matter that existed before the claimed invention.  Documents found in the search of prior art are called "references."  A patent lists the prior art that the examiner considered; this list is called the "cited references."   In conducting the search of prior art, the examiner notes in writing on the file the classes or subclasses of art searched.  The compilation of the papers concerning the proceedings before the

23

Patent and Trademark Office is called the "prosecution history," "file wrapper," or "file history." The PTO does not have its own laboratories or testing facilities.

The examiner may "reject" the application claims if he or she believes that they are applications for inventions that are not patentable in light of the prior art, or because the patent specification does not adequately describe the claimed inventions. The applicant may then amend the claims to respond to the examiner's rejections. If, after reviewing the prior art maintained at the PTO, the examiner concludes that the claims presented by the applicant define the applicant's claimed invention over the most relevant known prior art in a manner that is patentable and that the patent meets the other requirements for patentability, the application is granted as a U.S. patent.

**Source:**     Preliminary Jury Instructions - Patent (GMS)
               Rev: 1/18/06

## **Plaintiff's Objections**

Telcordia objects to the defendants' instruction as an unnecessary digression from the Court's verbatim January 18, 2006, Model Preliminary Patent Instruction. Telcordia specifically objects to the defendants' modification to include the phrase "in general, prior art includes subject matter that existed before the claimed invention" as overly broad and as encompassing material that does not qualify as prior art. Specifically, "secret prior art" unknown to the public, under many circumstances, does not qualify as prior art. *See, e.g., Vulcan Engineering Co. v. Fata Aluminum, Inc.,* 278 F.3d 1366, 1372 (Fed. Cir. 2002). In the spirit of compromise, Telcordia has modified its proposed instruction to more accurately account for the defendants' concern about 102(f) prior art.

**Summary Of The Patent Issues**  *(DISPUTED)*

**Plaintiff's Proposed Instruction**

In this case, you must decide several things according to the instructions that I will give you at the end of the trial.  Those instructions will repeat this summary and will provide more detail.  One thing you will need not decide is the meaning of the patent claims.  That is one of my jobs -- to explain to you what the patent claims mean.  By the way, the word "claims" is a term of art and I will instruct you on its meaning at trial's end.  Meanwhile, you will find a definition in the glossary attached to these preliminary instructions.  In essence, you must decide:

(1)     for each patent and for each defendant, whether Telcordia has proven by a preponderance of the evidence that the Lucent or Cisco accused products infringe the asserted claims of one or more of the '633 and '763 patents;

(2)     if you find that Cisco infringes the '763 or '633 patent, whether Telcordia has proven by clear and convincing evidence that Cisco's infringement was willful;

(3)     if you find that Lucent infringes the '633 patent, whether Telcordia has proven by clear and convincing evidence that Lucent's infringement was willful;

(4)     whether the asserted claims of Telcordia's patents that have been infringed have been proven by Lucent or Cisco by clear and convincing evidence to be invalid or unenforceable;

(5)     whether Telcordia's '306 patent has been proven by Lucent or Cisco by clear and convincing evidence to be invalid or unenforceable; and

(6)     for those patents that are valid and infringed, whether Telcordia has proven its measure of damages for the infringement by a preponderance of the evidence.

**Source:**     Preliminary Jury Instructions - Patent (GMS)
Rev: 1/18/06

**Defendants' Objections**

Defendants object to Telcordia's proposed instruction because it does not instruct the jury that they need only determine willful infringement of *valid and enforceable* claims that are found to be infringed. For the same reason, Defendants object to Telcordia's proposed instruction because it places willful infringement before invalidity and unenforceability issues. Defendants would agree to the following modification to Telcordia's proposed instruction:

In this case, you must decide several things according to the instructions that I will give you at the end of the trial. Those instructions will repeat this summary and will provide more detail. One thing you will need not decide is the meaning of the patent claims. That is one of my jobs -- to explain to you what the patent claims mean. By the way, the word "claims" is a term of art and I will instruct you on its meaning at trial's end. Meanwhile, you will find a definition in the glossary attached to these preliminary instructions. In essence, you must decide:

(1)    for each patent and for each defendant, whether Telcordia has proven by a preponderance of the evidence that the Lucent or Cisco accused products infringe the asserted claims of one or more of the '633 and '763 patents;

(2)    whether Telcordia's '306, '763 and/or '633 patents have been proven by Lucent or Cisco by clear and convincing evidence to be invalid or unenforceable;

(3)    for those patents that are valid, enforceable and infringed, whether Telcordia has proven its measure of damages for the infringement by a preponderance of the evidence;

(4)    if you find that Cisco infringes a valid and enforceable claim of the '763 or '633 patent, whether Telcordia has proven by clear and convincing evidence that Cisco's infringement was willful; and

26

(5)     if you find that Lucent infringes a valid and enforceable claim of the '633 patent, whether Telcordia has proven by clear and convincing evidence that Lucent's infringement was willful.

\*     \*     \*

### Defendants' Proposed Instruction

In this case, you must decide several things according to the instructions that I will give you at the end of the trial.  Those instructions will repeat this summary and will provide more detail.  One thing you will need not decide is the meaning of the patent claims.  That is one of my jobs -- to explain to you what the patent claims mean.  By the way, the word "claims" is a term of art and I will instruct you on its meaning at trial's end.  Meanwhile, you will find a definition in the glossary attached to these preliminary instructions.  In essence, you must decide:

(1)     separately for the '763 and '633 patents and for each of the Defendants, whether Telcordia has proven by a preponderance of the evidence that that Defendant's accused products infringe the asserted claims of that patent;

(2)     if you find that Cisco infringes the '763 or '633 patent, whether Telcordia has proven by clear and convincing evidence that Cisco's infringement was willful;

(3)     if you find that Lucent infringes the '633 patent, whether Telcordia has proven by clear and convincing evidence that Lucent's infringement was willful;

(4)     whether the '763, '633 and '306 patents have been proven by Lucent or Cisco by clear and convincing evidence to be invalid;

(5)     whether the '763, '633 and '306 patents have been proven by Lucent or Cisco by clear and convincing evidence to be unenforceable;

27

(6)      for those patents that are valid and infringed, whether Telcordia has proven its

measure of damages for the infringement by a preponderance of the evidence.

**Source:**      Preliminary Jury Instructions - Patent (GMS)
                 Rev: 1/18/06


## Plaintiff's Objections

Telcordia objects to the defendants' unnecessary digression from the Court's January 18,

2006, model instructions.   Telcordia objects to the defendants' proposed instruction as

unnecessarily cumbersome.   Telcordia has revised its initial instruction to accommodate the

defendants' concerns about enforceability and about delineating between defendants and patents

(but in a less cumbersome manner).

## CONDUCT OF THE JURY     *(AGREED)*

Now, a few words about your conduct as jurors.

First, I instruct you that during the trial you are not to discuss the case with anyone or permit anyone to discuss it with you.  Until you retire to the jury room at the end of the case to deliberate on your verdict, you simply are not to talk about this case.  If any lawyer, party, or witness does not speak to you when you pass in the hall, ride the elevator, or the like, remember it is because they are not supposed to talk with you nor you with them.  In this way, any unwarranted and unnecessary suspicion about your fairness can be avoided.  If anyone should try to talk to you about it, bring it to the court's attention promptly.

Second, do not read or listen to anything touching on this case in any way.

Third, do not try to do any research or make any investigation about the case on your own.

Finally, do not form any opinion until all the evidence is in.  Keep an open mind until you start your deliberations at the end of the case.

During the trial, I will permit you to take notes.  A word of caution is in order.  There is always a tendency to attach undue importance to matters which one has written down.  Some testimony which is considered unimportant at the time presented, and thus not written down, takes on greater importance later in the trial in light of all the evidence presented.  Therefore, you are instructed that your notes are only a tool to aid your own individual memory and you should not compare your notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence.  Your notes are not evidence, and are by no means a complete outline of the proceedings or a list of the highlights of the trial.  Above all, your memory should be your greatest asset when it comes time to deliberate and render a decision in this case.

So, if you do take notes, leave them in your seat at the end of the day, and my Deputy will collect them and return them to your seat the next day.  And, remember that they are for your own personal use.

I will give you detailed instructions on the law at the end of the case, and those instructions will control your deliberations and decision.

**Source:**     Preliminary Jury Instructions - Patent (GMS)
                Rev: 1/18/06

## COURSE OF THE TRIAL   *(AGREED)*

This trial, like most jury trials, comes in seven stages or phases.  We have already been through the first phase, which was to select you as jurors.  The remaining stages are:

(2)     These preliminary instructions to you;

(3)     Opening statements which are intended to explain to you what each side intends to prove and are offered to help you follow the evidence.  The lawyers are not required to make opening statements at this time or they may defer this opening until it is their turn to present evidence.

(4)     The presentation of the evidence which will include live witnesses and may also include previously recorded testimony, as well as documents and things;

(5)     My final instructions on the law to you;

(6)     The closing arguments of the lawyers which will be offered to help you make your determination; and, finally,

(7)     Your deliberations where you will evaluate and discuss the evidence among yourselves and determine the outcome of the case.

Please keep in mind that evidence is often introduced somewhat piecemeal.  So, as the evidence comes in, you as jurors need to keep an open mind.

We will begin shortly, but first I want to outline the anticipated schedule of the trial.

**Source:**     Preliminary Jury Instructions - Patent (GMS)
                Rev: 1/18/06

**TRIAL SCHEDULE**  *(AGREED)*

Though you have heard me say this during the voir dire, I want to again outline the schedule I expect to maintain during the course of this trial.

This case is expected to take 10 days to try.  We will normally begin the day at 9:00 A.M. promptly.  We will go until 1:00 P.M. and, after a one hour break for lunch, from 2:00 p.m.  to 4:30 P.M.  There will be a fifteen minute break at 11:00 A.M. and another fifteen minute break at 3:15 P.M.  The only significant exception to this schedule may occur when the case is submitted to you for your deliberations.  On that day, the proceedings might last beyond 5:00 p.m.  We will post a copy of this schedule for your convenience in the jury deliberation room.

**Source:**        Preliminary Jury Instructions - Patent (GMS)
                Rev: 1/18/06

### GLOSSARY OF PATENT TERMS

| | |
|---|---|
| <u>Applicants</u> | The named inventors who are applying for the patent. |
| <u>Assignment</u> | Transfer of ownership rights in a patent or patent application from one person or company to another. |
| <u>Claims</u> | The part of a patent that defines the invention. These are found at the end of the patent specification in the form of numbered paragraphs. |
| <u>Disclosure of Invention</u> | The part of the patent specification that explains how the invention works and usually includes a drawing. |
| <u>File Wrapper, File History or Prosecution History</u> | The written record of proceedings in the United States Patent and Trademark Office ("Patent and Trademark Office" or "PTO"), including the original patent application and later rejections, responses to the rejections and other communications between the Patent and Trademark Office and the applicant. |
| <u>Patent Application</u> | The initial papers filed in the Patent and Trademark Office by an applicant. These typically include a specification, drawings, claims and the oath (Declaration) of the applicant. |
| <u>Patent Examiners</u> | Personnel employed by the Patent and Trademark Office having expertise in various technical areas who review (examine) patent applications to determine whether the claims of a patent application are patentable and whether the disclosure adequately describes the invention. |
| <u>Prior art</u> | Any information that is used to describe public, technical knowledge prior to the invention by the applicant or more than a year prior to the filing of his/her application. |
| <u>Prior Art References</u> | Any item of prior art (publication, patent or product) used to determine patentability. |
| <u>Specification</u> | The part of the patent application or patent that describes the invention, and may include drawings. The specification does not define the invention, only the claims do. |

**Source:**      Preliminary Jury Instructions - Patent (GMS)
                 Rev: 1/18/06

# EXHIBIT I4

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

TELCORDIA TECHNOLOGIES, INC.,              )
                                                                                )
    Plaintiff/Counterclaim Defendant,   )
                                                                                )
    v.                                                          )
                                                                                )   Civil Action No. 04-875-GMS
LUCENT TECHNOLOGIES INC.,                   )
                                                                                )
    Defendant/Counterclaim Plaintiff.   )
                                                                                )
                                                                                )
_____     )


TELCORDIA TECHNOLOGIES, INC.,              )
                                                                                )
    Plaintiff/Counterclaim Defendant,   )   Civil Action No. 04-876-GMS
                                                                                )
    v.                                                          )
                                                                                )
CISCO SYSTEMS, INC.,                              )
                                                                                )
    Defendant/Counterclaim Plaintiff.   )
_____     )


## EXHIBIT I4:  PLAINTIFF TELCORDIA'S
## PROPOSED VERDICT FORM

Plaintiff Telcordia Technologies Inc. ("Telcordia") hereby submits its proposed verdict form as of March 2, 2007.  Telcordia may submit revisions to its proposed verdict form after meeting and conferring with defendants Cisco Systems, Inc. ("Cisco") and Lucent Technologies, Inc. ("Lucent") on outstanding trial management issues, after receiving the Court's rulings on the parties' respective motions *in limine*, and as necessary to conform to the evidence presented at trial and the rulings of the Court.

1

(Form No. 1)
## INFRINGEMENT

We, the jury, unanimously find as follows:

Question No. 1(a):

Do you find that Telcordia has proven, by a preponderance of the evidence, that Cisco has infringed any of the following claims of U.S. Patent No. 4,835,763 either literally or under the doctrine of equivalents?

Answer "Yes" or "No".

|  | Yes (For Telcordia) | No (For Cisco) |
|---|---|---|
| Claim 1 |  |  |
| Claim 2 |  |  |
| Claim 7 |  |  |
| Claim 8 |  |  |

Question No. 1(b):

Do you find that Telcordia has proven, by a preponderance of the evidence, that Cisco has infringed any of the following claims of U.S. Patent No. Re. 36,633, either literally or under the doctrine of equivalents?

Answer "Yes" or "No".

|  | Yes<br>(For Telcordia) | No<br>(For Cisco) |
|---|---|---|
| Claim 11 |  |  |
| Claim 33 |  |  |

Question No. 1(c):

Do you find that Telcordia has proven, by a preponderance of the evidence, that Lucent has infringed any of the following claims of U.S. Patent No. 4,835,763 either literally or under the doctrine of equivalents?

Answer "Yes" or "No".

|  | Yes<br>(For Telcordia) | No<br>(For Lucent) |
|---|---|---|
| Claim 1 |  |  |
| Claim 2 |  |  |
| Claim 7 |  |  |
| Claim 8 |  |  |

Question No. 1(b):

Do you find that Telcordia has proven, by a preponderance of the evidence, that Lucent has infringed any of the following claims of U.S. Patent No. Re. 36,633, either literally or under the doctrine of equivalents?

Answer "Yes" or "No".

| | Yes<br>(For Telcordia) | No<br>(For Lucent) |
|---|---|---|
| Claim 11 | | |
| Claim 33 | | |

**CONTINUE ON TO VERDICT FORM 2.**

5

(Form No. 2)
**WILLFULNESS**

Question No. 2(a)

Has Telcordia proven, by clear and convincing evidence, that Cisco's infringement of any one of claims 1, 2, 7, or 8 of Telcordia's U.S. Patent No. 4,835,763 was willful?

Answer "Yes" or "No".

| Yes<br>(For Telcordia) | No<br>(For Cisco) |
| --- | --- |
|  |  |

Question No. 2(b)

Has Telcordia proven, by clear and convincing evidence, that Cisco's infringement of any one of claims 11 or 33 of Telcordia's U.S. Patent No. Re. 36,633 was willful?

Answer "Yes" or "No".

| Yes (For Telcordia) | No (For Cisco) |
|---|---|
|  |  |

Question No. 2(c)

Has Telcordia proven, by clear and convincing evidence, that Lucent's infringement of any one of claims 11 or 33 of Telcordia's U.S. Patent No. Re. 36,633 was willful?

Answer "Yes" or "No".

| Yes<br>(For Telcordia) | No<br>(For Lucent) |
|---|---|
|  |  |

**CONTINUE ON TO VERDICT FORM 3.**

(Form No. 3)
**ANTICIPATION**

Question No. 3(a)

Has Cisco or Lucent proven, by clear and convincing evidence, that any of the following claims of Telcordia's U.S. Patent No. 4,893,306 are invalid because each and every element of the invention defined in the claim of Telcordia's patents was disclosed in a single item of prior art relied upon by Cisco or Lucent?[1]

Answer "Yes" or "No".

|  | Yes (For Cisco/Lucent) | No (For Telcordia) |
|---|---|---|
| Claim 1 of the '306 patent |  |  |
| Claim 3 of the '306 patent |  |  |
| Claim 4 of the '306 patent |  |  |

---

[1]  As to all '306 validity and enforceability issues raised in this exhibit (Exhibit I4), Telcordia incorporates its "mootness of '306 validity and enforceability position."  *See* Telcordia's Statement of Contested Issues of Fact and Law (Exhibit B2) at Section IX.

Question No. 3(b)

If you answered "Yes" to Question 3(a) with respect to any claim, please identify each item of prior art that you find rendered that claim invalid:

| | |
|---|---|
| Claim 1 of the '306 patent | |
| Claim 3 of the '306 patent | |
| Claim 4 of the '306 patent | |

Question No. 3(c)

Has Cisco or Lucent proven, by clear and convincing evidence, that any of the following claims of Telcordia's U.S. Patent No. 4,835,763 are invalid because each and every element of the invention defined in the claim of Telcordia's patents was disclosed in a single item of prior art relied upon by Cisco or Lucent?

Answer "Yes" or "No".

|  | Yes (For Cisco/Lucent) | No (For Telcordia) |
|---|---|---|
| Claim 1 of the '763 patent |  |  |
| Claim 2 of the '763 patent |  |  |
| Claim 7 of the '763 patent |  |  |
| Claim 8 of the '763 patent |  |  |

Question No. 3(d)

If you answered "Yes" to Question 3(c) with respect to any claim, please identify each item of prior art that you find rendered that claim invalid:

| | |
|---|---|
| Claim 1 of the '763 patent | |
| Claim 2 of the '763 patent | |
| Claim 7 of the '763 patent | |
| Claim 8 of the '763 patent | |

Question No. 3(e)

Has Cisco or Lucent proven, by clear and convincing evidence, that any of the following claims of Telcordia's U.S. Patent No. Re. 36,633 are invalid because each and every element of the invention defined in the claim of Telcordia's patents was disclosed in a single item of prior art relied upon by Cisco or Lucent?

Answer "Yes" or "No".

|  | Yes<br>(For Cisco/Lucent) | No<br>(For Telcordia) |
|---|---|---|
| Claim 11 of the '633 patent |  |  |
| Claim 33 of the '633 patent |  |  |

13

Question No. 3(f)

If you answered "Yes" to Question 3(e) with respect to any claim, please identify each item of prior art that you find rendered that claim invalid:

| | |
|---|---|
| Claim 11 of the '633 patent | |
| Claim 33 of the '633 patent | |

**PROCEED TO VERDICT FORM 4.**

(Form No. 4)
**OBVIOUSNESS**

Question 4(a)

Has Cisco or Lucent proven, by clear and convincing evidence, that any of the following claims of Telcordia's U.S. Patent No. 4,893,306 are invalid because the claimed invention described in the claim would have been obvious to persons of ordinary skill in the art in view of the prior art at the time of the invention?

Answer "Yes" or "No".

|  | Yes (For Cisco/Lucent) | No (For Telcordia) |
|---|---|---|
| Claim 1 of the '306 patent |  |  |
| Claim 3 of the '306 patent |  |  |
| Claim 4 of the '306 patent |  |  |

Question 4(b)

If you answered "Yes" to Question 4(a) with respect to any claim, please identify the prior art that you find rendered that claim invalid:

| | |
|---|---|
| Claim 1 of the '306 patent | |
| Claim 3 of the '306 patent | |
| Claim 4 of the '306 patent | |

16

Question 4(c)

Has Cisco or Lucent proven, by clear and convincing evidence, that any of the following claims of Telcordia's U.S. Patent No. 4,835,763 are invalid because the claimed invention described in the claim would have been obvious to persons of ordinary skill in the art in view of the prior art at the time of the invention?

Answer "Yes" or "No".

|  | Yes (For Cisco/Lucent) | No (For Telcordia) |
|---|---|---|
| Claim 1 of the '763 patent |  |  |
| Claim 2 of the '763 patent |  |  |
| Claim 7 of the '763 patent |  |  |
| Claim 8 of the '763 patent |  |  |

Question 4(d)

If you answered "Yes" to Question 4(c) with respect to any claim, please identify the prior art that you find rendered that claim invalid:

| | |
|---|---|
| Claim 1 of the '763 patent | |
| Claim 2 of the '763 patent | |
| Claim 7 of the '763 patent | |
| Claim 8 of the '763 patent | |

18

Question 4(e)

Has Cisco or Lucent proven, by clear and convincing evidence, that any of the following claims of Telcordia's U.S. Patent No. Re. 36,633, are invalid because the claimed invention described in the claim would have been obvious to persons of ordinary skill in the art in view of the prior art at the time of the invention?

Answer "Yes" or "No".

|  | Yes<br>(For Cisco/Lucent) | No<br>(For Telcordia) |
|---|---|---|
| Claim 11 of the '633 patent |  |  |
| Claim 33 of the '633 patent |  |  |

Question 4(f)

If you answered "Yes" to Question 4(e) with respect to any claim, please identify the prior art that you find rendered that claim invalid:

| | |
|---|---|
| Claim 11 of the '633 patent | |
| Claim 33 of the '633 patent | |

**PROCEED TO VERDICT FORM 5.**

(Form No. 5)
**SECTION 112**

Question No. 5(a)

Has Cisco or Lucent proven, by clear and convincing evidence, that any of the following claims of Telcordia's U.S. Patent No. 4,893,306 are invalid because  as of the filing dates of Telcordia's patents, the inventors knew of and concealed a better mode of carrying out the invention (i.e., "best mode")?

Answer "Yes" or "No".

|  | Yes<br>(For Cisco/Lucent) | No<br>(For Telcordia) |
|---|---|---|
| Claim 1 of the '306 patent |  |  |
| Claim 3 of the '306 patent |  |  |
| Claim 4 of the '306 patent |  |  |

21

Question No. 5(b)

Has Cisco or Lucent proven, by clear and convincing evidence, that any of the following claims of Telcordia's U.S. Patent No. 4,835,763 are invalid because either (1) the claims, read in light of the patent's specification and prosecution history, do not reasonably apprise those skilled in the art of the proper scope of the invention (i.e., "indefiniteness"), or (2) as of the filing dates of Telcordia's patents, the inventors knew of and concealed a better mode of carrying out the invention (i.e., "best mode")?

Answer "Yes" or "No".

|  | Yes<br>(For Cisco/Lucent) | No<br>(For Telcordia) |
|---|---|---|
| Claim 1 of the '763 patent |  |  |
| Claim 2 of the '763 patent |  |  |
| Claim 7 of the '763 patent |  |  |
| Claim 8 of the '763 patent |  |  |

Question No. 5(c)

Only if you answered "Yes" to Question 5(c) with respect to any claim, for such claim please identify the specific reason(s) for your answer as (1) the claims, read in light of the patent's specification and prosecution history, do not reasonably apprise those skilled in the art of the proper scope of the invention, and/or (2) as of the filing dates of Telcordia's patents, the inventors knew of and concealed a better mode of carrying out the invention?

Answer "N/A" or

"(1)" and/or "(2)".

| | |
|---|---|
| Claim 1 of the '763 patent | |
| Claim 2 of the '763 patent | |
| Claim 7 of the '763 patent | |
| Claim 8 of the '763 patent | |

23

Question No. 5(d)

Has Cisco or Lucent proven, by clear and convincing evidence, that any of the following claims of Telcordia's U.S. Patent No. Re. 36,633 are invalid for omitting to name an inventor?

Answer "Yes" or "No".

|  | Yes<br>(For Cisco/Lucent) | No<br>(For Telcordia) |
|---|---|---|
| Claim 11 of the '633 patent |  |  |
| Claim 33 of the '633 patent |  |  |

**PROCEED TO VERDICT FORM 6.**

24

(Form No. 6)
**MONETARY DAMAGES**

Question No. 6(a)

If you have found any claim of Telcordia U.S. Patent No. 4,835,763 or U.S. Patent No. Re. 36,633 to be both valid and infringed by Cisco, please identify the amount of monetary damages that will compensate Telcordia for Cisco's infringement.

$_____


Question No. 6(b)

If you have found any claim of Telcordia U.S. Patent No. 4,835,763 or U.S. Patent No. Re. 36,633 to be both valid and infringed by Lucent, please identify the amount of monetary damages that will compensate Telcordia for Lucent's infringement.

$_____


**PROCEED TO VERDICT FORM 7.**

(Form No. 7)
## OTHER DEFENSES AND EQUITABLE ISSUES

Question No. 7(a)

Has Cisco proven, by clear and convincing evidence, that any of the relief sought by Telcordia for Cisco's or Lucent's infringement of any of the following claims of Telcordia's patents, U.S. Patent No. 4,893,306, U.S. Patent No. 4,835,763, and U.S. Patent No. Re. 36,633, should be limited or barred on grounds of (1) laches, (2) equitable estoppel, (3) unclean hands, (4) patent misuse, (5) intervening rights, or (6) inequitable conduct?

|  | Yes (For Cisco) | No (For Telcordia) |
|---|---|---|
| Claim 1 of the '306 patent |  |  |
| Claim 3 of the '306 patent |  |  |
| Claim 4 of the '306 patent |  |  |
| Claim 1 of the '763 patent |  |  |
| Claim 2 of the '763 patent |  |  |
| Claim 7 of the '763 patent |  |  |
| Claim 8 of the '763 patent |  |  |
| Claim 11 of the '633 patent |  |  |
| Claim 33 of the '633 patent |  |  |

Question No. 7(b)

Only if you answered "Yes" to Question 7(a) with respect to any claim, for such claim please identify the specific reason(s) for your answer as (1) laches, (2) equitable estoppel, (3) unclean hands, (4) patent misuse, (5) intervening rights, or (6) inequitable conduct.

Answer "N/A" or

"(1)" "(2)" "(3)" "(4)" "(5)" and/or "(6)".

| | |
|---|---|
| Claim 1 of the '306 patent | |
| Claim 3 of the '306 patent | |
| Claim 4 of the '306 patent | |
| Claim 1 of the '763 patent | |
| Claim 2 of the '763 patent | |
| Claim 7 of the '763 patent | |
| Claim 8 of the '763 patent | |
| Claim 11 of the '633 patent | |
| Claim 33 of the '633 patent | |

Question No. 7(c)

Has Lucent proven, by clear and convincing evidence, that any of the relief sought by Telcordia for Cisco's or Lucent's infringement of any of the following claims of Telcordia's patents, U.S. Patent No. 4,893,306, U.S. Patent No. 4,835,763, and U.S. Patent No. Re. 36,633, should be limited or barred on grounds of (1) laches, or (2) inequitable conduct?

|  | Yes (For Lucent) | No (For Telcordia) |
|---|---|---|
| Claim 1 of the '306 patent |  |  |
| Claim 3 of the '306 patent |  |  |
| Claim 4 of the '306 patent |  |  |
| Claim 1 of the '763 patent |  |  |
| Claim 2 of the '763 patent |  |  |
| Claim 7 of the '763 patent |  |  |
| Claim 8 of the '763 patent |  |  |
| Claim 11 of the '633 patent |  |  |
| Claim 33 of the '633 patent |  |  |

Question No. 7(d)

Only if you answered "Yes" to Question 7(c) with respect to any claim, for such claim please identify the specific reason(s) for your answer as (1) laches, or (2) inequitable conduct.

Answer "N/A" or

"(1)" and/or "(2)".

| | |
|---|---|
| Claim 1 of the '306 patent | |
| Claim 3 of the '306 patent | |
| Claim 4 of the '306 patent | |
| Claim 1 of the '763 patent | |
| Claim 2 of the '763 patent | |
| Claim 7 of the '763 patent | |
| Claim 8 of the '763 patent | |
| Claim 11 of the '633 patent | |
| Claim 33 of the '633 patent | |

Question No. 7(e)

Has Telcordia shown that either Cisco or Lucent acted with unclean hands?

Answer "Yes" or "No".

| | |
|---|---|
| Cisco acted with unclean hands | |
| Lucent acted with unclean hands | |

# EXHIBIT I5

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| TELCORDIA TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff/Counterclaim Defendant, | ) | |
| | ) | |
| v. | ) | C.A. No. 04-875-GMS |
| | ) | |
| LUCENT TECHNOLOGIES, INC., | ) | |
| | ) | |
| Defendant/Counterclaim Plaintiff. | ) | |
| | ) | |
| TELCORDIA TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff/Counterclaim Defendant, | ) | |
| | ) | |
| v. | ) | C.A. No. 04-876-GMS |
| | ) | |
| CISCO SYSTEMS, INC., | ) | |
| | ) | |
| Defendant/Counterclaim Plaintiff. | ) | |
| | ) | |

**EXHIBIT I5:  DEFENDANTS' PROPOSED VERDICT FORM**

Defendants Cisco and Lucent submit the following proposed verdict form as of March 2, 2007.  Defendants reserve the right to submit modifications to this proposed verdict form as appropriate.[1, 2]

---

[1]  Defendants submit this proposed verdict form based on theories that Telcordia has disclosed and for which it has identified some alleged legal, factual and expert support.  To the extent Telcordia is permitted to try other theories (including without limitation, infringement under the doctrine of equivalents, inducement of infringement, contributory infringement, or infringement with respect to products not listed herein), Defendants reserve the right to update and supplement this verdict form to take into account such theories if Telcordia is permitted to try them.  Defendants also submit this proposed verdict form prior to adjudication of the pending summary judgment motions and motions *in limine*.  Insofar as the Court's rulings on those motions alter the scope of the issues in this case, Defendants reserve the right to revise this verdict form accordingly.

[2]  Defendants' position with respect to the invalidity and unenforceability issues relating to the '306 patent are set forth in *Defendants' Statement on Telcordia's*

## VERDICT FORM

## I.    INFRINGEMENT (CISCO)

### A.    '763 Patent

**QUESTION 1:**  Do you find that Telcordia has proven that it is more likely than not that the accused Cisco ONS products are covered by claims 1, 2, 7 and/or 8 of the '763 patent?

    _____    **YES**   **(For Telcordia)**

    _____    **NO**   **(For Cisco)**

**If you answered "Yes" to Question 1, then go to Question 2.  If you answered "No" to Question 1, then go to Question 3.**

**QUESTION 2:**  If you answered "Yes" to Question 1, place a check mark next to those '763 patent claims that you find Telcordia has proven are more likely than not to cover the accused Cisco ONS products.

    _____    **Claim 1**

    _____    **Claim 2**

    _____    **Claim 7**

    _____    **Claim 8**

**Go to Question 3.**

---

*Assertion of Mootness of '306 Invalidity and Unenforceability Defenses and Counterclaims* (Exhibit B3 at p. 40-41).  Defendants incorporate that statement by reference.

**B.     '633 Patent**

**QUESTION 3:**  Do you find that Telcordia has proven that it is more likely than not that one or more accused Cisco cards used in conjunction with a compatible accused Cisco box is covered by claims 11 and/or 33 of the '633 patent?

_____     **YES     (For Telcordia)**

_____     **NO     (For Cisco)**

**If you answered "Yes" to Question 3, then go to Question 4.  If you answered "No" to Question 3, then go to Question 7.**

**QUESTION 4:**  If you answered "Yes" to Question 3, check "Yes" for only those accused Cisco cards used in conjunction with a compatible accused Cisco box that you find Telcordia has proven are more likely than not covered by claims 11 and/or 33 of the '633 patent.

| Accused Cards | Boxes | Claim 11 | | Claim 33 | |
|---|---|---|---|---|---|
| MGX-CESM-8T1/B<br>AX-CESM-8T1<br>AX-CESM-8E1<br>MGX-CESM-T3E3 | MGX | □ Yes | □ No | □ Yes | □ No |
| MPSM-8-T1E1 | MGX | □ Yes | □ No | □ Yes | □ No |
| PA-A2-4E1XC-E3ATM<br>PA-A2-4E1XC-OC3SM<br>PA-A2-4T1C-OC3SM<br>PA-A2-4T1C-T3ATM | Cisco 7200 | □ Yes | □ No | □ Yes | □ No |
| WAI-E1C-4BNC<br>WAI-E1C-4RJ48<br>WAI-T1C-4RJ48 | Lightstream and Catalyst | □ Yes | □ No | □ Yes | □ No |
| NM-1A-OC3MM-1V<br>NM-1A-OC3SMI-1V<br>NM-1A-OC3SML-1V | Cisco 3600 | □ Yes | □ No | □ Yes | □ No |

**Go to Question 5.**

**QUESTION 5:** If you answered "Yes" to Question 3, do you find that Cisco has proven that its activities with respect to one or more accused Cisco cards used in conjunction with a compatible accused Cisco box are protected by the doctrine of intervening rights?

_____    **YES    (For Cisco)**

_____    **NO    (For Telcordia)**

**If you answered "Yes" to Question 5, then go to Question 6. If you answered "No" to Question 5, then go to Question 7.**

**QUESTION 6:** If you answered "Yes" to Question 5, check "Yes" for each accused Cisco card used in conjunction with a compatible accused Cisco box for which you find Cisco has proven that its activities are protected by the doctrine of intervening rights.

| Accused Cards | Boxes | Intervening Rights | |
|---|---|---|---|
| MGX-CESM-8T1/B<br>AX-CESM-8T1<br>AX-CESM-8E1<br>MGX-CESM-T3E3 | MGX | ☐ Yes | ☐ No |
| MPSM-8-T1E1 | MGX | ☐ Yes | ☐ No |
| PA-A2-4E1XC-E3ATM<br>PA-A2-4E1XC-OC3SM<br>PA-A2-4T1C-OC3SM<br>PA-A2-4T1C-T3ATM | Cisco 7200 | ☐ Yes | ☐ No |
| WAI-E1C-4BNC<br>WAI-E1C-4RJ48<br>WAI-T1C-4RJ48 | Lightstream and Catalyst | ☐ Yes | ☐ No |
| NM-1A-OC3MM-1V<br>NM-1A-OC3SMI-1V<br>NM-1A-OC3SML-1V | Cisco 3600 | ☐ Yes | ☐ No |

**Go to Question 7.**

## II.      INFRINGEMENT (LUCENT)

### A.      '763 Patent

**QUESTION 7:**  Do you find that Telcordia has proven that it is more likely than not that the accused Lucent products are covered by claims 1, 2, 7 and/or 8 of the '763 patent?

_____      **YES     (For Telcordia)**

_____      **NO      (For Lucent)**

**If you answered "Yes" to Question 7, then go to Question 8.  If you answered "No" to Question 7, then go to Question 9.**

**QUESTION 8:** If you answered "Yes" to Question 7, place a check mark next to those '763 patent claims that you find Telcordia has proven are more likely than not to cover the accused Lucent products.

_____      **Claim 1**          _____      **Claim 7**

_____      **Claim 2**          _____      **Claim 8**

**Go to Question 9.**

### B.      '633 Patent

**QUESTION 9:**  Do you find that Telcordia has proven that it is more likely than not that one or more accused Lucent cards used in conjunction with a compatible accused Lucent box is covered by claims 11 and/or 33 of the '633 patent?

_____      **YES     (For Telcordia)**

_____      **NO      (For Lucent)**

**If you answered "Yes" to Question 9, then go to Question 10.  If you answered "No" to Question 9, then go to Question 11.**

**QUESTION 10:** If you answered "Yes" to Question 9, check "Yes" for only those accused Lucent cards used in conjunction with a compatible accused Lucent box that you find Telcordia has proven are more likely than not covered by claims 11 and/or 33 of the '633 patent.

| Accused Cards | Box | Claim 11 | | Claim 33 | |
|---|---|---|---|---|---|
| 60 Port T1/E1 Circuit Emulation Processor Card | CBX-500 CBX-3500 | □ Yes | □ No | □ Yes | □ No |
| 4 Port DS3 ATM/Circuit Emulation Card | GX-550 | □ Yes | □ No | □ Yes | □ No |
| 12 Port DS1/E1/DS0A CES Module<br>1 Port Channelized OC-3/STM-1 Unstructured CES/ATM Single Mode Module<br>3 Port Channelized DS3/STS-1e Multiservice Protection Module<br>1 Port Channelized OC-3/STM-1 Unstructured CES/ATM Multimode Module | PSAX 1000 PSAX 1250 PSAX 2300 PSAX 4500 | □ Yes | □ No | □ Yes | □ No |

**Go to Question 11.**

### III.    INVALIDITY  (CISCO AND LUCENT)

#### A.    '306 Patent

**QUESTION 11**:  Do you find that Cisco or Lucent has proven by clear and convincing evidence that one or more of the asserted claims of the '306 patent are invalid due to anticipation, obviousness, and/or failure to satisfy the best mode requirement?

        _____        **YES**   **(For Cisco and Lucent)**

        _____        **NO**   **(For Telcordia)**

**If you answered "Yes" to Question 11, then go to Question 12.  If you answered "No" to Question 11, then go to Question 13.**

**QUESTION 12**:  If you answered "Yes" to Question 11, place a check mark next to the '306 patent claims that you find are invalid due to anticipation, obviousness, and/or failure to satisfy the best mode requirement.

    _____    **Claim 1**    _____    **Claim 3**    _____    **Claim 4**

**Go to Question 13.**

#### B.    '763 Patent

**QUESTION 13**:  Do you find that Cisco or Lucent has proven by clear and convincing evidence that one or more of the asserted claims of the '763 patent are invalid due to anticipation, obviousness, indefiniteness and/or failure to satisfy the best mode requirement?

        _____        **YES**   **(For Cisco and Lucent)**

        _____        **NO**   **(For Telcordia)**

**If you answered "Yes" to Question 13, then go to Question 14.  If you answered "No" to Question 13, then go to Question 15.**

**QUESTION 14**:  If you answered "Yes" to Question 15, place a check mark next to the '763 patent claims that you find are invalid due to due to anticipation, obviousness, indefiniteness and/or failure to satisfy the best mode requirement?

    _____    **Claim 1**        _____    **Claim 7**

    _____    **Claim 2**        _____    **Claim 8**

**Go to Question 15.**

**C.    '633 Patent**

**QUESTION 15:**  Do you find that Cisco or Lucent has proven by clear and convincing evidence that one or more of the asserted claims of the '633 patent are invalid due to improper inventorship, anticipation and/or obviousness?

_____        **YES    (For Cisco and Lucent)**

_____        **NO    (For Telcordia)**

**If you answered "Yes" to Question 15, then go to Question 16.  If you answered "No" to Question 15, then go to Question 17.**

**QUESTION 16:**  If you answered "Yes" to Question 13, place a check mark next to the '633 patent claims that you find are invalid due to improper inventorship, anticipation and/or obviousness.

_____        **Claim 11**

_____        **Claim 33**

**Go to Question 17.**

**IV.    UNENFORCEABILITY (CISCO AND LUCENT)**

**QUESTION 17:**  Do you find that Cisco or Lucent has proven by clear and convincing evidence that the '306 patent is unenforceable due to inequitable conduct?

_____        **YES    (For Cisco and Lucent)**

_____        **NO    (For Telcordia)**

**Go to Question 18.**

**QUESTION 18:**  Do you find that Cisco or Lucent has proven by clear and convincing evidence that the '763 patent is unenforceable due to inequitable conduct?

_____        **YES    (For Cisco and Lucent)**

_____        **NO    (For Telcordia)**

**Go to Question 19.**

8

**QUESTION 19:**  Do you find that Cisco or Lucent has proven by clear and convincing evidence that the '633 patent is unenforceable due to inequitable conduct?

    _____        **YES**    **(For Cisco and Lucent)**

    _____        **NO**    **(For Telcordia)**

**Go to Question 20.**

**QUESTION 20:**  Do you find that Cisco has proven by clear and convincing evidence that the '633 patent is unenforceable due to equitable estoppel, patent misuse and/or unclean hands?

    _____        **YES**    **(For Cisco)**

    _____        **NO**    **(For Telcordia)**

**Go to Question 21.**

**V.**    **DAMAGES (CISCO)**

**Answer Questions 21 and 22 only if you found Cisco to infringe at least one valid and enforceable claim of the '633 or '763 patents.**

**QUESTION 21:**  If you found infringement of any valid and enforceable claim, do you find that Cisco has proven that Telcordia's request for damages is barred by the doctrine of laches?

    _____        **YES**    **(For Cisco)**

    _____        **NO**    **(For Telcordia)**

**If you answered "Yes" to Question 21, then go to Question 23.  If you answered "No" to Question 21, then go to Question 22.**

**QUESTION 22:**  If you found that Telcordia has proven that Cisco infringed any valid and enforceable claim, what is the total amount of money that Telcordia should receive as a reasonable royalty for that patent infringement?

        $ _____

**Go to Question 23.**

## VI.     WILLFULNESS (CISCO)

**Answer Questions 23 and 24 only if you found Cisco to infringe at least one valid claim of the '763 or '633 patents.**

**QUESTION 23:**  As to any valid and enforceable claims of the '763 patent that you found that Cisco infringed, do you find that Telcordia has proven by clear and convincing evidence that Cisco infringed those claims willfully?

> _____     **YES     (For Telcordia)**

> _____     **NO      (For Cisco)**

**Go to Question 24.**

**QUESTION 24:**  As to any valid and enforceable claims of the '633 patent that you found that Cisco infringed, do you find that Telcordia has proven by clear and convincing evidence that Cisco infringed those claims willfully?

> _____     **YES     (For Telcordia)**

> _____     **NO      (For Cisco)**

**Go to Question 25.**

## VII.    DAMAGES (LUCENT)

**Answer Questions 25 and 26 only if you found Lucent to infringe at least one valid and enforceable claim of the '763 or '633 patents.**

**QUESTION 25:**  If you found infringement of any valid and enforceable claim, do you find that Lucent has proven that Telcordia's request for damages is barred by the doctrine of laches?

> _____     **YES     (For Lucent)**

> _____     **NO      (For Telcordia)**

**If you answered "Yes" to Question 25, then go to Question 27.  If you answered "No" to Question 25, then go to Question 26.**

**QUESTION 26:**  If you found Telcordia has proven that Lucent infringed any valid and enforceable claim, what is the total amount of money that Telcordia should receive as a reasonable royalty for that patent infringement?

$ _____

**Go to Question 27.**


**VIII.   WILLFULNESS (LUCENT)**

**Answer Question 27 only if you found Lucent to infringe at least one valid and enforceable claim of the '633 patent.**

**QUESTION 27:**   As to any claims of the '633 patent that you found that Lucent infringed, do you find that Telcordia has proven by clear and convincing evidence that Lucent infringed those claims willfully?

_____     **YES   (For Telcordia)**

_____     **NO     (For Lucent)**



Dated:  _____          By:  _____

Foreperson

# EXHIBIT I6

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| TELCORDIA TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff/Counterclaim Defendant, | ) | |
| | ) | |
| v. | ) | C.A. No. 04-875-GMS |
| | ) | |
| LUCENT TECHNOLOGIES, INC., | ) | |
| | ) | |
| Defendant/Counterclaim Plaintiff. | ) | |
| TELCORDIA TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff/Counterclaim Defendant, | ) | |
| | ) | |
| v. | ) | C.A. No. 04-876-GMS |
| | ) | |
| CISCO SYSTEMS, INC., | ) | |
| | ) | |
| Defendant/Counterclaim Plaintiff. | ) | |

**EXHIBIT I6:  TELCORDIA AND DEFENDANTS' JOINT PROPOSED VOIR DIRE**

1.      Good morning, ladies and gentlemen, I am about to ask you a series of questions that we call *voir dire*.  The purpose of the *voir dire* examination is:

    (a)      to enable the court to determine whether or not any prospective juror should be excused for cause;

    (b)      to enable counsel for the parties to exercise their individual judgment with respect to peremptory challenges — that is, challenges for which counsel need not give a reason.

2.      If any of you answer "yes" to any of these questions, I would ask you to stand up and, upon being recognized by me, to state your name.  At the end of the questions, I will ask those who have responded "yes" to any of the questions to come to sidebar (that is, up to the bench next to me) with counsel for the parties to discuss your answers.

3.      This case is expected to take 10 days to try.  The schedule that I expect to maintain over those 10 days will be as follows:

We will normally begin the day at 9:00 a.m. promptly.  We will go until 1:00 p.m. and, after a one hour break for lunch, from 2:00 p.m. to 4:30 p.m.  There will be a fifteen minute break at 11:00 a.m. and another fifteen minute break at 3:15 p.m.  One exception to this schedule may occur when the case is submitted to those of you who are selected to serve as jurors for your deliberation.  On that day, the proceedings might last beyond 4:30 p.m.  We will post a copy of this schedule for the jury's convenience in the jury deliberation room.

Does the length of this trial or the schedule contemplated by the court present a special problem to any member of the panel?

4.     This case is an action for patent infringement arising under the patent laws of the United States.  The plaintiff in this case is Telcordia Technologies, Inc. (or simply "Telcordia"), formerly known as Bell Communications Research or Bellcore.  The defendants in this case are Cisco Systems (or simply "Cisco") and Lucent Technologies (or simply "Lucent").

For those of you selected to serve as jurors, I will give you more detailed instructions regarding the meaning of the word infringement once you are sworn-in as jurors and again at the conclusion of the trial.  For now, I will simply tell you that Cisco and Lucent are accused by Telcordia of infringing the patents in suit by making, using, selling or offering for sale certain telecommunications and data communications equipment. Telcordia contends that Cisco's and Lucent's products infringe their patents, and seeks damages for this alleged infringement.  Cisco and Lucent deny that they infringe Telcordia's patents and contend that Telcordia's patents are invalid and unenforceable.

Has any member of the panel heard or read anything about this case?

5.     Have you or any member of your immediate family (spouse, child, parent or sibling) ever been employed by Telcordia, Cisco, Lucent, or Alcatel?

6.     Have you or any member of your immediate family ever owned stock in any of these companies?

7.     Have you or any member of your immediate family ever had a business relationship of any kind with any of these companies?

8.     To the best of your knowledge, have you or any member of your family had any negative or positive experience with the products of any of these companies?

9.     Have you or to the best of your knowledge any member of your immediate family had any experiences with any of these companies that might keep you from being a fair and impartial juror?

2

10.    Do you possess any opinions about any of these companies that might keep you from being a fair and impartial juror?

11.    Have counsel introduce themselves.

Does any member of the panel, or your immediate family, know any of the attorneys involved in the case or have you or any of your immediate family had any business dealings with or been employed by any of these attorneys or their respective law firms?

12.    Have counsel identify all potential witnesses.

Does any member of the panel know or is any member of the panel familiar with any of the prospective witnesses?

13.    Have you ever worked in the fields of telecommunications or data communications or for a company that sells telecommunications or data communications equipment?

14.    Have you ever worked for, had a business relationship with, or owned stock in Bell Labs or any affiliated Bell company?

15.    Have you ever worked for, had a business relationship with, or owned stock in any of the regional Bell Operating Companies, including Verizon, BellSouth, Qwest, or AT&T?

16.    Have you ever worked for, had a business relationship with, or owned stock in Science Applications International Corporation, also known as SAIC?

17.    Have you ever worked for, had a business relationship with, or owned stock in Warburg Pincus or Providence Equity Partners?

18.    Have you ever worked for, had a business relationship with, or owned stock in Alcatel or Newbridge Networks?

19.    Do you believe companies frequently try to infringe or violate the patent rights of other companies?

20.    Have you or any member of your immediate family ever been employed by the United States Patent and Trademark Office or the United States Department of Commerce?

21.    Do you hold any opinions about the U.S. Patent and Trademark Office or the U.S. Department of Commerce that might keep you from being a fair and impartial juror?

22.    Do you have any opinions about the relationship between patents and the public interest that might keep you from being a fair and impartial juror?

23.    Have you or anyone in your immediate family ever applied for or obtained a patent in the U.S. or abroad?

24.    Have you or any member of your immediate family ever had an experience with patents or the patent system that has resulted in feelings that might keep you from being a fair and impartial juror?

25.    Have you ever served as a juror in a criminal or a civil case or as a member of a grand jury in either a federal or state court?

26.    Have you or has anyone in your immediate family ever participated in a lawsuit as a party or in any other capacity (such as a plaintiff, defendant, or witness)?

27.    Is there any member of the panel who has any special disability or problem that would make serving as a member of the jury difficult or impossible?

28.    Having heard the questions put to you by the court, does any other reason suggest itself to you as to why you could not sit on this jury and render a fair verdict based on the evidence presented to you and in the context of the court's instructions to you on the law?

# EXHIBIT J

**THIS SECTION LEFT INTENTIONALLY BLANK**

# EXHIBIT K

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

TELCORDIA TECHNOLOGIES, INC.,    )
    )
    Plaintiff/Counterclaim Defendant,    )
    )
    v.    )    C.A. No. 04-875-GMS
    )
LUCENT TECHNOLOGIES, INC.,    )
    )
    Defendant/Counterclaim Plaintiff.    )
    )

TELCORDIA TECHNOLOGIES, INC.,    )
    )
    Plaintiff/Counterclaim Defendant,    )
    )
    v.    )    C.A. No. 04-876-GMS
    )
CISCO SYSTEMS, INC.,    )
    )
    Defendant/Counterclaim Plaintiff.    )

**EXHIBIT K:**
**HISTORY AND STATUS OF SETTLEMENT NEGOTIATIONS**

## I.    CISCO AND TELCORDIA

After the Complaint was filed in 2004, the parties discussed the possibility of further settlement discussions, but decided to pursue basic discovery first.

The parties have participated in two mediation conferences before Magistrate Judge Thynge.   The parties do not appear close to reaching a settlement, but remain willing to negotiate.

## II.    LUCENT AND TELCORDIA

After the Complaint was filed in 2004, the parties discussed the possibility of settlement discussions, but decided to pursue basic discovery first.

1

The parties have participated in two mediation conferences before Magistrate Judge Thynge.  The parties do not appear close to reaching a settlement, but remain willing to negotiate.

# EXHIBIT L

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| TELCORDIA TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff/Counterclaim Defendant, | ) | |
| | ) | |
| v. | ) | C.A. No. 04-875-GMS |
| | ) | |
| LUCENT TECHNOLOGIES, INC., | ) | |
| | ) | |
| Defendant/Counterclaim Plaintiff. | ) | |
| | ) | |
| TELCORDIA TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff/Counterclaim Defendant, | ) | |
| | ) | |
| v. | ) | C.A. No. 04-876-GMS |
| | ) | |
| CISCO SYSTEMS, INC., | ) | |
| | ) | |
| Defendant/Counterclaim Plaintiff. | ) | |
| | ) | |

**EXHIBIT L: STATEMENT THAT EACH PARTY HAS COMPLETED DISCOVERY**

**I.     TELCORDIA'S STATEMENT**

Telcordia states that it has completed discovery, including the depositions of expert witnesses, with the qualification that Telcordia reserves the right to seek leave of Court to conduct depositions and/or additional discovery in the event that Cisco and/or Lucent designate trial witnesses who were previously undisclosed to Telcordia or otherwise inject issues or information into the trial that were not disclosed during discovery despite proper discovery requests.

## II.    CISCO'S STATEMENT

Cisco states that it has completed fact and expert discovery.

Cisco reserves the right to depose any witnesses on Telcordia's witness list who were not disclosed to Cisco during the discovery period.  Cisco also reserves the right to take discovery regarding any evidence Telcordia attempts to rely on at trial that was not properly disclosed during the discovery period.

## III.    LUCENT'S STATEMENT

Lucent states that it has completed fact and expert discovery.

Lucent reserves the right to depose any witnesses on Telcordia's witness list who were not disclosed to Lucent during the discovery period.  Lucent also reserves the right to take discovery regarding any evidence Telcordia attempts to rely on at trial that was not properly disclosed during the discovery period.