# Morris, Nichols, Arsht & Tunnell llp

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347

302 658 9200
302 658 3989 Fax

Jack B. Blumenfeld
302 351 9291
302 425 3012 Fax
jblumenfeld@mnat.com

April 26, 2007

The Honorable Gregory M. Sleet                                             VIA E-FILING
United States District Court
  for the District of Delaware
844 North King Street
Wilmington, DE  19801

      Re:    *Telcordia Technologies, Inc. v. Lucent Technologies, Inc.*
             C.A. No. 04-875 (GMS)

             *Telcordia Technologies, Inc. v. Cisco Systems, Inc.*
             C.A. No. 04-876 (GMS)

Dear Judge Sleet:

        At the pretrial conference, Your Honor stated that you intended to have "three [peremptory challenges] a side." (March 30, 2007 Tr. at 195). I write on behalf of defendant Cisco to seek clarification and request that each defendant get three challenges.

        Pursuant to 28 U.S.C. § 1870, "each party shall be entitled to three peremptory challenges," unless the Court considers "several defendants . . . as a single party." Here, Cisco and Lucent are not a "single party." Cisco and Lucent are unaffiliated companies that were sued in separate actions that have been consolidated. They are competitors with many differences. The claims against them are based on different accused products and different facts. Cisco and Lucent have separate counsel. Under the circumstances, they each should get three peremptory challenges.

        As set forth in 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2483 (2d ed. 1995) (emphasis added):

> [I]f consolidation results in multiple parties on one or both sides of the action, ***each party in the consolidated action is entitled to three challenges.***

The Honorable Gregory M. Sleet
April 26, 2007
Page 2

*See, e.g., Mutual Life Ins. Co. v. Hillmon,* 145 U.S. 285, 293-94 (1892) (holding that lower court erred in only allowing three peremptory challenges for three defendants consolidated for trial because each had the right to three challenges and consolidation did not divest them of their individual rights); *Allen v. United Mine Workers,* 30 F.R.D. 41, 46 (E.D. Tenn. 1962) ("[c]onsolidation for joint trial shall not deprive the parties of the right to their peremptory jury challenges in each case"). *See also Tidemann v. Nadler Golf Car Sales, Inc.,* 224 F.3d 719, 725 (7th Cir. 2000) (affirming district court's grant of three peremptory challenges for each defendant); *Nehring v. Empresa Lineas Maritimas Argentinas,* 401 F.2d 767, 767-68 (5th Cir. 1968) (holding district court did not abuse its discretion in allowing each defendant three challenges).

Thus, in *Stambler v. RSA Security Inc. and Verisign, Inc.,* C.A. No. 01-65 (SLR) (D. Del. Feb 24, 2003) (Ex. A), as here, there were two unaffiliated defendants, each represented by its own counsel. Chief Judge Robinson granted "three peremptories for each" party, seating 19 potential jurors, and explaining that out of "19 names, that's 10 jurors and then three peremptories for each side [*i.e.*, each party]." (Ex. A at 35, 82). Cisco requests that the same procedure be followed here, and that Cisco and Lucent each get three peremptory challenges.

Respectfully,

/s/ Jack B. Blumenfeld

Jack B. Blumenfeld (#1014)

JBB/dlb
Enclosure
cc: Clerk of Court (by hand; w/ encl.)
    Steven J. Balick, Esquire (by e-mail and hand; w/ encl.)
    John W. Shaw, Esquire (by e-mail and hand; w/ encl.)
    John Williamson, Esquire (by e-mail; w/ encl.)
    Steven Cherny, Esquire (by e-mail; w/ encl.)
    Edward R. Reines, Esquire (by e-mail; w/ encl.)

811725.1

# EXHIBIT A

## Page 1

```
            - VOLUME A -

        IN THE UNITED STATES DISTRICT COURT
        IN AND FOR THE DISTRICT OF DELAWARE

                        - - -

LEON STAMBLER,                  :    CIVIL ACTION
                                :
        Plaintiff               :
                                :
        vs.                     :
                                :
RSA SECURITY INC. and           :
VERISIGN, INC.,                 :
                                :
        Defendants              :    NO. 01-65 (SLR)

                        - - -

                        Wilmington, Delaware
                        Monday, February 24, 2003
                        8:30 o'clock, a.m.

                        - - -

BEFORE:  HONORABLE SUE L. ROBINSON, Chief Judge, and a jury

                        - - -

APPEARANCES:

        MORRIS, NICHOLS, ARSHT & TUNNELL
        BY: DOUGLAS E. WHITNEY, ESQ.,
            MARYELLEN NOREIKA, ESQ. and
            JOHN D. PIRNOT, ESQ.

                -and-



                        Official Court Reporters
```

## Page 2

```
APPEARANCES (Continued):

        SHRAGER, SPIVEY & SACHS
        BY: DAVID S. SHRAGER, ESQ.
            (Philadelphia, Pennsylvania)

                Counsel for Plaintiff


        RICHARDS, LAYTON & FINGER, P.A.
        BY: FREDERICK L. COTTRELL, III

                -and-


        HALE AND DORR LLP
        BY: WILLIAM F. LEE, ESQ.,
            DAVID B. BASSETT, ESQ.,
            DONALD R. STEINBERG, ESQ. and
            MARK D. SELWYN, ESQ.

                Counsel for RSA Security Inc.


        ASHBY & GEDDES
        BY: STEVEN J. BALICK, ESQ.

                -and-


        FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER LLP
        BY: THOMAS W. WINLAND, ESQ. and
            VINCENT P. KOVALICK, ESQ.
            (Washington, D.C.)

                Counsel for Defendant VeriSign, Inc.

                        - - -
```

## Page 3

PROCEEDINGS

(Proceedings commenced at 8:30 a.m.)

THE COURT: Good morning.

We have a lot to discuss. We will start out by my saying this. First of all, I want to apologize for the confusion. Unfortunately, when you have got back-to-back patent trials, sometimes it is difficult to focus on the next one coming when you are still in the midst of one, and I didn't finish my last one until Wednesday of last week. So I apologize for not focusing on this sooner, to give you a head's up and give us a chance to better discuss this.

The second thing I want to say, however, is: Having as many patent cases as we do in this Court, we have come to realize that our most important function as Judges is to make sure that complex patent cases are understandable to a lay jury. Given the complex nature of this technology; at least I find it very difficult to understand, and the fact that we did have multiple parties and multiple products, I believed that sequencing and bifurcation was an appropriate way to limit the issues and, therefore, have a better chance of a jury

## Page 4

actually understanding the landscape and to make more meaningful decisions based on the evidence presented.

Since making that decision, however, I have had some second thoughts, based primarily on the letter that plaintiffs sent and I received on Friday. And that second thinking is focused on the fact that plaintiff has represented that the infringement issues in this case are not so much based on each defendant's products but on an industry protocol. And, therefore, there would be a great deal of overlap which would be inefficient and there would be a chance of inconsistent verdicts. That does cause some concern.

So I am having second thoughts about having two infringement cases. I still believe that it is appropriate to have two juries, one for infringement and one for validity. But I am thinking that it is inefficient and there is a chance of inconsistent verdicts if, in fact, the focus of the infringement evidence is on protocol and not on the products that you all threw at me.

By the same token, if it really is on protocol and not on each defendant's 30 or 40 products, it seems to me only appropriate to reduce the number of products to a manageable, representative number, so that the jury isn't confused by the fact that the evidence is on a protocol and yet they are asked to find infringement on 30 or 40

### Page 33

1     Well, I have to make a decision for better or
2 worse. I am not sure what it should be at this point. I
3 would like counsel for VeriSign -- I am going to take a
4 few minutes. It would probably help me to have copies of
5 the expert reports.
6     MR. WHITNEY: We have a set here.
7     THE COURT: In the meantime I want VeriSign's
8 counsel to lot a the jury pool and decide whether there
9 is any way during the day today we can at least select
10 the jury in case I decide to go forward with one trial.
11 And I will see if I can determine from something whether
12 one infringement trial or two is appropriate, based on
13 the actual evidence that is going to be presented. That
14 is the decision.
15     MR. KOVALICK: Just to point out for you, at
16 the end of the Mr. Tygar report, that is where he breaks
17 down the positions for VeriSign on the pay flow products,
18 some of the payment techniques.
19     THE COURT: Fine.
20     Let's make sure VeriSign has the information
21 it needs. Let me take 15 minutes or so to look through
22 these and I will come back with a decision momentarily.
23     (Short recess taken.)
24         - - -
25

### Page 34

1
2     (Court resumed after the recess.)
3
4     THE COURT: All right. I have reviewed the
5 expert reports, and it is clear to me that much of the
6 case is going to be on the SSL protocol. If you look at
7 the expert reports, probably 90 to 95 percent of the
8 reports have to do with the protocol and not with individual
9 products. So I have decided that plaintiff's position is
10 the more correct one. That, although there is going to be
11 jury confusion, I believe there may be jury confusion or a
12 risk of jury confusion is the proper way of saying it,
13 because there are different products and different
14 defendants. We have made some efforts to help that by
15 splitting up the infringement and the validity issues.
16 And that's I think all we can do at this stage.
17     So the remaining question is if we're going to
18 go forward with both defendants in the infringement case,
19 is whether VeriSign is going to be ready to pick a jury
20 today. We won't go forward with the presentation of
21 evidence because, clearly, I've made my decision too late
22 in the day to do that. But I certainly don't want to,
23 even though I really do hate to bring a jury back tomorrow.
24 That doesn't speak well for the Court. On the other hand,
25 I want to make sure VeriSign will be ready to select and

### Page 35

1 that we have the best information we can have, so I need
2 to have VeriSign's counsel let me know what is going on.
3     MR. KOVALICK: Your Honor, I'm not sure I
4 quite understood what you were saying. You were saying
5 you don't want to pick a jury today.
6     THE COURT: I want to pick a jury today, but
7 we wouldn't go forward with any opening statements or the
8 presentation of evidence today. I would like to get
9 through jury selection sometime today because it's -- well,
10 it's just very inefficient and inconsiderate to bring a
11 panel in and not do anything with them for a day.
12     MR. KOVALICK: I appreciate that.
13     We've discussed it with our client and we
14 would be prepared to pick a jury for today.
15     THE COURT: All right.
16     MR. KOVALICK: I'm hoping we can get maybe
17 three peremptories.
18     THE COURT: Yes, I have three peremptories for
19 each. What we need to do, and you can just hand-write in,
20 we updated the parties and the proposed witnesses and the
21 attorneys based on the information RSA gave us, but you
22 need to hand-write in whatever other witnesses and
23 attorneys, et cetera, so we can update voir dire.
24     The other thing I wanted to discuss with you
25 is the issue of using the little bus tour tape instead of

### Page 36

1 my giving my preliminary instructions. I saw it on Friday
2 over our lunch. And I thought -- I mean it was a little
3 silly, but I thought it was pretty good and certainly
4 more helpful than the preliminary jury instructions I
5 have been using. I would show them the whole thing because
6 I intend to tell them that the defendants have asserted
7 that the patents are invalid, just that they're not going
8 to be concerned with that. And the tape, I think it's
9 actually 14 minutes having to do with a walk-through and
10 infringement and about two minutes maybe of the validity
11 issue maybe. I don't even think it's that.
12     So that's another issue that we should
13 address before we bring a jury up. I think it should be
14 the Court presenting it to educate the jury, not any of
15 the parties presenting it. The plaintiff is the one who
16 proposed it, so I assume they have no objection.
17     MS. NOREIKA: Correct, your Honor.
18     THE COURT: So anything from the defendants?
19     MR. KOVALICK: I think we have talked and we
20 would be amenable as well.
21     THE COURT: All right. Well, let me give you
22 some time to update the voir dire and I'm also thinking
23 about having ten jurors instead of eight. The last patent
24 trial with the weather delays we had, we were risking
25 getting below six, having selected eight for a two week

### Page 81

1 numbers when we excuse them. Let me go talk to my staff
2 to make sure we have numbers and I'll come back to and
3 make sure our numbers and names correspond.
4     (The Court and Deputy Clerk conferred.)
5     THE COURT: Okay. Blackwelder is 2, Farley
6 is 7, Humes is 15, Johnson is 16, Kelleher is 17, Krewson
7 is 19, Pierce is 26, Powell is 27, Raffle is 28 and
8 Williams is 32.
9     MS. NOREIKA: Right.
10     THE COURT: All right. Are there any other
11 applications for excuses for cause, or are there objections?
12     MS. NOREIKA: I think we would move to exclude
13 for cause Mr. Tolbert. I think since he read about
14 patents, I think he would have a partial view in the
15 administration of patents.
16     MR. LEE: Well, your Honor, it would depend
17 upon what the evidence said. If we're starting to excuse
18 people on that basis, then we should excuse the gentleman
19 who said all of his relatives have patents and he thinks
20 he should be entitled to get for what you get for them.
21     THE COURT: They counterbalance each other.
22     MR. LEE: Right.
23     THE COURT: Anything else for the record?
24     MR. KOVALICK: All I heard him say was he has
25 an opinion and he is willing to listen to the evidence.

### Page 82

1     THE COURT: Well, what we'll do is we'll take
2 these numbers out of the box, shuffle them up, draw out
3 19 names, that's 10 jurors and then three peremptories
4 for each side. That's the list that you would be striking
5 from. The first 10 that are left after you are done will
6 be our 10 jurors.
7     MR. LEE: Great.
8     THE COURT: Okay. Thank you so much, counsel.
9     (End of sidebar conference.)
10     - - -
11     THE COURT: All right. We have another
12 problem. We had three jurors that we listed as absent
13 and again we're not sure whether we have the right names
14 and numbers. We had an Alycia Benson as absent. Is she
15 in fact here?
16     All right. We had a Delores Fierro as absent.
17 Is that person here?
18     And finally, we had a Walter Taylor as absent.
19 Is he, in fact, here?
20     So does that help us? All right.
21     THE DEPUTY CLERK: Juror No. 23, please move
22 to the other side of the room, taking the first row, the
23 first seat.
24     Juror No. 18, please go in next to Juror No.
25 23.

### Page 83

1     Juror No. 33, please move to the other side of
2 the room, the first row.
3     Juror No. 12, please fill in the next seat.
4     Juror No. 31, please move over to the other
5 side.
6     Juror No. 5, please move over to the other
7 side.
8     Juror No. 4, please move over to the other
9 side.
10     Juror No. 9, please move over to the other
11 side.
12     Juror No. 11, please move over to the other
13 side.
14     Juror No. 25, please take a seat on the other
15 side.
16     Juror No. 34, please take a seat on the other
17 side.
18     Juror No. 22, please take a seat on the other
19 side.
20     Juror No. 21, please take a seat on the other
21 side.
22     Juror No. 6, please take a seat on the other
23 side.
24     THE COURT: I think the front row is going to
25 have to condense somewhat.

### Page 84

1     THE DEPUTY CLERK: Juror No. 24, please take a
2 seat on the other side.
3     Juror No. 14, please take a seat on the other
4 side.
5     Juror No. 20, please take a seat on the other
6 side.
7     Juror No. 3, please take a seat on the other
8 side.
9     THE COURT: We might have to move a third row
10 out.
11     Yes. Move the next row back and put them in
12 the last row in the other side. Thank you.
13     THE DEPUTY CLERK: Juror No. 10, please take a
14 seat on the other side.
15     THE COURT: If you are uncomfortable, you can
16 spread out a little bit, since I emptied the whole row
17 there.
18     Thank you very much.
19     (Silent striking process begins at 11:25 a.m.)
20     THE DEPUTY CLERK: Juror No. 23, please come
21 forward and take the first seat in the first row.
22     Juror No. 18, please come forward and take
23 the second seat in the first row.
24     Juror No. 12, please come forward and take the
25 next seat in the first row.