# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

TELCORDIA TECHNOLOGIES, INC.,      )
                                       )
        Plaintiff/Counterclaim Defendant,  )
                                       )
            v.                       )
                                       )   Civil Action No. 04-875-GMS
LUCENT TECHNOLOGIES INC.,        )
                                       )
        Defendant/Counterclaim Plaintiff.  )
                                       )
                                       )
_____ )

TELCORDIA TECHNOLOGIES, INC.,      )
                                       )
        Plaintiff/Counterclaim Defendant,  )   Civil Action No. 04-876-GMS
                                       )
           v.                      )
                                       )
CISCO SYSTEMS, INC.,             )
                                       )
        Defendant/Counterclaim Plaintiff.  )
_____ )

## EXHIBIT I3.A:

## PRELIMINARY JURY INSTRUCTIONS [PATENT]

Plaintiff Telcordia Technologies, Inc. ("Telcordia") and Defendants Cisco Systems, Inc. and Lucent Technologies Inc. ("Defendants") submit the following proposed preliminary jury instructions and objections as of March 2, 2007. The parties reserve the right to submit modifications to these instructions and/or additional instructions on any pertinent issue, if the need arises.[1,2,3]

---

[1]    In submitting these instructions, Defendants have made efforts to streamline the instructions such that only one instruction be read per issue. In doing so, Defendants have

ASHBY & GEDDES

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, Delaware 19899-1150
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com

Donald R. Dunner
Steven M. Anzalone
Griffith B. Price
James T. Wilson
John M. Williamson
FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, L.L.P.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Jack B. Blumenfeld (I.D. #1014)
Leslie A. Polizoti (I.D. #4299)
1201 North Market Street
Wilmington, DE  19899-1347
 (302) 658-9200
jblumenfeld@mnat.com
lpolizoti@mnat.com

Matthew D. Powers
Edward R. Reines
Jessica Davis
Sonal N. Mehta
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA  94065

attempted to clarify instructions to make clear where the claims and defenses apply separately to each Defendant and where they are common. Defendants reserve the right to propose modifications to the instructions to clarify that there are two different Defendants as appropriate to minimize juror confusion.

[2]    Telcordia incorporates its position on mootness of '306 validity and enforceability issues. *See* Exhibit B2 at Section IX.  Defendants' position with respect to the invalidity and unenforceability issues relating to the '306 patent are set forth in *Defendants' Statement on Telcordia's Assertion of Mootness of '306 Invalidity and Unenforceability Defenses and Counterclaims* (Exhibit B3 at p. 40-41).  The parties incorporate their respective statements by reference.

[3]    Defendants submit these instructions based on theories that Telcordia has disclosed and for which it has identified some alleged legal, factual and expert support.  To the extent Telcordia is permitted to try other theories, Defendants reserve the right to update and supplement their instructions to take into account such theories. Defendants also submit these proposed jury instructions prior to adjudication of the pending summary judgment motions and motions *in limine*.  Insofar as the Court's rulings on those motions alter the scope of the issues in this case, Defendants reserve the right to revise their proposed instructions accordingly. Telcordia submits these instructions based on theories that Defendants have disclosed and for which they have identified some alleged legal, factual and expert support.  To the extent Defendants are permitted to try other theories, Telcordia reserves the right to update and supplement its instructions to take into account such theories.  Telcordia also submits these proposed jury instructions prior to adjudication of the pending summary judgment motions and motions *in limine*.  Insofar as the Court's rulings on those motions alter the scope of the issues in this case, Telcordia reserves the right to revise its proposed instructions accordingly.

901 New York Avenue, NW
Washington, DC  20001-4413
(202) 408-4000

*Attorneys for Plaintiff*
*Telcordia Technologies Inc.*

(650) 802-3000

*Attorneys for Defendant Cisco Systems, Inc. in C.A.*

YOUNG CONAWAY STARGATT & TAYLOR LLP
John W. Shaw (I.D. #3362)
The Brandywine Building
1000 West Street
Wilmington, DE  19801
(302) 571-6600
jshaw@ycst.com

Steven C. Cherny
LATHAM & WATKINS LLP
885 Third Avenue, Suite 1000
New York, NY  10022
(212) 906-1200

David A. Nelson
Israel Sasha Mayergoyz
David C. McKone
LATHAM & WATKINS LLP
Sears Tower, Suite 5800
Chicago, IL  60606
(312) 876-7700

Sean S. Pak
LATHAM & WATKINS LLP
633 West Fifth Street, Suite 4000
Los Angeles, CA 90071-2007
(213) 485-1234

*Attorneys for Defendant Lucent Technologies Inc.*

## INTRODUCTION    *(AGREED)*

Members of the jury: Now that you have been sworn, I am now going to give you some preliminary instructions to guide you in your participation in the trial.

These instructions will give you some general rules and guidance that might apply to any civil case. However, because this is a patent trial which will deal with subject matter that is not within the every day experience of most of us, I will also give you some additional preliminary instructions regarding patents to assist you in discharging your duties as jurors.

**Source:**    Preliminary Jury Instructions - Patent (GMS)
Rev: 1/18/06

4

**THE PARTIES AND THEIR CONTENTIONS**    *(DISPUTED)*

**Plaintiff's Proposed Instruction**

Before I begin with those instructions, however, allow me to give you an overview of who the parties are and what each contends.

You may recall that during the process that led to your selection as jurors, I advised you that this is a civil action for patent infringement arising under the patent laws of the United States.

The parties in this case are the plaintiff, Telcordia Technologies, Inc., and the defendants, Lucent Technologies Inc. and Cisco Systems, Inc. Telcordia Technologies, Inc. was formerly known as Bellcore and you may hear attorneys and witnesses refer to Bellcore at times during this trial

The dispute between the parties relates to the manufacture and operation of equipment for telecommunications or data communications networks, including routers, switches, and hubs.. During the trial, the parties will offer testimony to familiarize you with this technology.

Telcordia asserts that it owns two United States Patents which it alleges that Cisco and Lucent infringes, Patent Nos. 4,835,763 and Re. 36,633, and a third United States Patent, United States Patent No. 4,893,306. Infringement of that patent is not an issue for your consideration. Rather, you will consider only the validity and enforceability of that patent. Because these numbers are so long, patents are usually referred to by their last three digits. For example, Patent No. 4,835,763 is called simply "the '763 patent," Patent No. Re. 36,633 is called simply "the '633 patent," and Patent No. 4,893,306 is called simply "the '306 patent." Sometimes the patents collectively will be referred to as the "Patents-In-Suit." Telcordia contends that Lucent and Cisco make, use, sell, and offer for sale communications equipment that infringes these patents. Telcordia contends that Cisco's infringement of the '763 and '633 patents is willful.

5

Telcordia contends that Lucent's infringement of the '633 patent is willful.   Telcordia seeks damages for Lucent's and Cisco's alleged infringement.

Telcordia does not contend that all of the claims of each patent are infringed by Lucent and Cisco.   Instead, Telcordia asserts that only certain claims are infringed.   They may be called "asserted claims."   Telcordia contends that some of Lucent's and Cisco's products infringe the asserted claims.   I, and the attorneys and witnesses, may refer to these products as "accused products."   You, of course, will determine whether or not each accused product infringes the asserted claims of any of Telcordia's patents.

Persons or companies sued for allegedly infringing a patent can deny infringement.   They can also defend a charge of infringement by proving the patent is invalid or unenforceable.   In this case, Lucent and Cisco deny that they infringe Telcordia's patents and assert what are called affirmative defenses to the charges of infringement.   I will tell you more about infringement in a few minutes.   I will instruct you as to defenses to a charge of infringement and possible damages resulting from a finding of infringement in my instructions to you at the close of the evidence.

**Source:**      Preliminary Jury Instructions - Patent (GMS)
                 Rev: 1/18/06

## Defendants' Objections

Defendants object to Telcordia's instruction insofar as Telcordia asserts that "Defendants' digression from the Court's model instruction" to reference invalidity and unenforceability.   This is a somewhat atypical case in which the parties have **_agreed_** that the jury will decide unenforceability.   Defendants have adapted the instruction to take into account the parties' agreement and the issues that the jury will hear.   Otherwise, Defendants have made a concerted effort to mirror the model instruction.

Defendants have also modified their proposal to take into account Telcordia's objections.

*    *    *

<u>**Defendants' Proposed Instruction**</u>

Before I begin with those instructions, however, allow me to give you an overview of who the parties are and what each contends.

You may recall that during the process that led to your selection as jurors, I advised you that this is a civil action for patent infringement arising under the patent laws of the United States.

The parties in this case are the plaintiff, Telcordia Technologies, Inc., and the Defendants Lucent Technologies Inc. and Cisco Systems, Inc. Telcordia Technologies, Inc. was formerly known as Bellcore and you may hear attorneys and witnesses refer to Bellcore at times during this trial.

The dispute between the parties relates to the manufacture and operation of equipment for telecommunications or data communications networks. During the trial, the parties will offer testimony to familiarize you with this technology.

Telcordia asserts that it owns two United States Patents which it alleges that Cisco and Lucent infringe, Patent Nos. 4,835,763 and Re. 36,633, and a third United States Patent, United States Patent No. 4,893,306, which it previously asserted that Cisco and Lucent infringe. Because these numbers are so long, patents are usually referred to by their last three digits. For example, Patent No. 4,893,306 is called simply the "the '306 patent," Patent No. 4,835,763 is called simply "the '763 patent," and Patent No. Re. 36,633 is called simply "the '633 patent." Sometimes the three patents will be referred to collectively as the "Patents-in-Suit."

7

Telcordia contends that Lucent and Cisco make, use, sell, and offer for sale communications equipment that infringes the '763 and '633 patents. Telcordia does not contend that all of the claims of each patent are infringed by Lucent and Cisco. Instead, Telcordia asserts that only certain claims are infringed. They may be called "asserted claims." Telcordia contends that some of Lucent's and Cisco's products infringe the asserted claims. I, and the attorneys and witnesses, may refer to these products as "accused products."

Telcordia contends that Cisco's infringement of both the '763 and '633 patents is willful. Telcordia contends that Lucent's infringement of the '633 patent is willful. Telcordia seeks damages for Lucent's and Cisco's alleged infringement.

Lucent and Cisco deny that they make, use, sell, or offer for sale any products that infringe the '763 or '633 patents. Lucent and Cisco also assert that the '763, '633 and '306 patents are invalid and unenforceable for a number of reasons.

I will tell you more about infringement, invalidity and unenforceability in a few minutes. And, at the close of evidence, I will instruct you as to what it takes to prove infringement, the defenses to a charge of infringement, the possible damages resulting from a finding of infringement, and the limitations on these damages. At that time, you will weigh the evidence and determine whether or not each accused product infringes the asserted claims of the '633 and '763 patents, and whether the Patents-in-Suit are invalid or unenforceable.

**Source:**     Preliminary Jury Instructions - Patent (GMS)
                Rev: 1/18/06

**Plaintiff's Objections**

8

Telcordia has revised its initial proposed instruction to accommodate the defendants' objection regarding the jury rendering a verdict of validity and enforceability as to the '306 patent (which are the only '306 issues for potential presentation to the jury).  Otherwise, Telcordia's instruction remains parallel with the Court's January 18, 2006, model instruction and Telcordia objects to the defendants' digressions from that model instruction.

Telcordia objects to the defendants' statement that the '306 patent was "previously asserted."  Infringement of the '306 patent is presently asserted (subject to appeal), but is not an issue for the jury's consideration due to Telcordia's concession of non-infringement under the Court's claim construction.  Telcordia has revised its proposed instruction to incorporate a more accurate statement of the status of the '306 patent.

**DUTIES OF THE JURY**   *(AGREED)*

So, let me begin with those general rules that will govern the discharge of your duties as jurors in this case.

It will be your duty to find from the evidence what the facts are. You and you alone will be the judges of the facts. You will then have to apply those facts to the law as I will give it to you both during these preliminary instructions and at the close of the evidence. You must follow that law whether you agree with it or not. In addition to instructing you about the law, at the close of the evidence, I will provide you with instructions as to what the claims of the patents mean. Again, of course, you are bound by your oath as jurors to follow these and all the instructions that I give you, even if you personally disagree with them. All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy, or prejudice that you may feel toward one side or the other influence your decision in any way. Also, do not let anything that I may say or do during the course of the trial influence you. Nothing that I may say or do is intended to indicate, or should be taken by you as indicating, what your verdict should be.

**Source:**      Preliminary Jury Instructions - Patent (GMS)
              Rev: 1/18/06

EVIDENCE  *(AGREED)*

The evidence from which you will find the facts will consist of the testimony of witnesses (the testimony of witnesses consist of the answers of the witnesses to questions posed by the attorneys or the court -- you may not ask questions).  Evidence will also consist of documents and other things received into the record as exhibits, and any facts that the lawyers agree to or stipulate to or that I may instruct you to find.

Certain things are not evidence and must not be considered by you.  I will list them for you now:

1.  Statements, arguments, and questions by lawyers are not evidence.

2.  Objections to questions are not evidence.  Lawyers have an obligation to their clients to make objections when they believe evidence being offered is improper under the rules of evidence.  You should not be influenced by the objection or by the court's ruling on it.  If the objection is sustained, ignore the question.  If it is overruled, treat the answer like any other.  If you are instructed that some item of evidence is received for a limited purpose only, you must follow that instruction.

3.  Testimony that the court has excluded or told you to disregard is not evidence and must not be considered.

4.  Anything you may have seen or heard outside the courtroom is not evidence and must be disregarded.  You are to decide the case solely on the evidence presented here in the courtroom.

There are two kinds of evidence: direct and circumstantial.  Direct evidence is direct proof of a fact, such as testimony of an eyewitness.  Circumstantial evidence is proof of facts from which you may infer or conclude that other facts exist.  As a general rule, the law makes no

11

distinction between these two types of evidence, but simply requires that you find facts from all

the evidence in the case, whether direct or circumstantial or a combination of the two.

**Source:**      Preliminary Jury Instructions - Patent (GMS)
                Rev: 1/18/06

**CREDIBILITY OF WITNESSES - WEIGHING CONFLICTING TESTIMONY** *(AGREED)*

You are the sole judges of each witness's credibility. You should consider each witness's means of knowledge; strength of memory; opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witness's biases, prejudices, or interests; the witness's manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony.

If you find the testimony to be contradictory, you must try to reconcile it, if reasonably possible, so as to make one harmonious story of it all. But if you can't do this, then it is your duty and privilege to believe the testimony that, in your judgment, is most believable and disregard any testimony that, in your judgment, is not believable. This instruction applies to the testimony of all witnesses, including expert witnesses.

**Source:**     Preliminary Jury Instructions - Patent (GMS)
           Rev: 1/18/06

13

**BURDEN OF PROOF**   *(DISPUTED)*

### Plaintiff's Proposed Instruction

As I have already told you, in this case, Telcordia is the owner of two patents which it contends Lucent and Cisco infringe.  For each patent and for each defendant, Telcordia has the burden of proving infringement by what is called a preponderance of the evidence.  That means Telcordia has to produce evidence which, considered in light of all the facts, leads you to believe that what the patent owner alleges is more likely true than not.  To put it differently, if you were to put Telcordia's and the defendants' evidence on opposite sides of a scale, the evidence supporting Telcordia's allegations would have to make the scale tip somewhat on its side.  If Telcordia fails to meet this burden, the verdict must be for the defendants.  Telcordia must also prove its damages by a preponderance of the evidence.

In this case, Lucent and Cisco assert that Telcordia's patents are invalid and unenforceable.  A patent, however, is presumed to be valid and enforceable.  Accordingly, the party challenging the patent has the burden of proving by clear and convincing evidence that the patent is invalid or unenforceable.  Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a factual contention is highly probable.  Proof by clear and convincing evidence is thus a higher burden than proof by a preponderance of the evidence.  Telcordia also contends that Lucent and Cisco willfully infringed the patents in suit.  Telcordia must prove willful infringement by clear and convincing evidence.

Those of you who have sat on criminal cases will have heard of proof beyond a reasonable doubt.  That requirement does not apply to a civil case; therefore, you should put it out of your mind.

**Source:**     Preliminary Jury Instructions - Patent (GMS)
                Rev: 1/18/06

**Defendants' Objections**

Defendants object to Plaintiff's proposed instruction because it includes an instruction on the presumption of validity. Such an instruction is likely to be confusing and is unsupported by current Federal Circuit case law. The presumption itself is not entitled to any evidentiary weight and, therefore, an instruction on the presumption is cumulative of the instruction on the burden of proof. Including both an instruction as the burden of proof and a statement as to the presumption of validity may suggest to the jury that that presumption has some separate evidentiary weight. *See Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247, 1259 (Fed. Cir. Mar. 30, 2004) ("[T]he presumption of validity and heightened burden of proving invalidity 'are static and in reality different expressions of the same thing – a single hurdle to be cleared.'") (upholding district court's decision to not instruct the jury on the presumption of validity); *SSIH Equip. S.A. v. U.S. Int'l Trade Comm'n*, 718 F.2d 365, 375 (Fed. Cir. 1983) ("The presumption of validity afforded by 35 U.S.C. § 282 does not have independent evidentiary value. Rather the presumption places the burden of going forward, as well as the burden of persuasion, upon the party asserting invalidity."); *Avia Group Int'l, Inc. v. L.A. Gear California, Inc.*, 853 F.2d 1557, 1562 (Fed. Cir. 1988) ("[T]he presumption is a procedural device, which assigns the burden of going forward as well as the burden of proof of facts to the challenger. . . . [T]he presumption is one of law, not fact, and does not constitute "evidence" to be weighed against a challenger's evidence.").

Since the Federal Circuit's 2004 decision in *Chiron*, other courts have declined to instruct the jury on presumption of validity once it has already been instructed on the clear and convincing standard. *See, e.g., Agere Sys., Inc. v. Atmel Corp.*, 2005 WL 2994702, *3 (E.D. Pa. Aug. 17, 2005) ("Given this clear explanation of the applicable burden of proof, Agere's

argument that the Court erred in failing to explicitly instruct the jury that each individual patent claim is presumed valid must also fail, as the Federal Circuit has clearly held that a district court does not err by failing to so instruct when the instruction on the burden of proof has been adequate."). Telcordia's authority, which predates *Chiron*, fails to take into account the Federal Circuit's clear holding that the presumption of validity and the heightened burden of proof are "a single hurdle to be cleared."

Moreover, several sets of model patent jury instructions echo these principles. For example, the Federal Circuit Bar Association's Model Patent Jury Instructions -- adopted in 2001, even before *Chiron* -- echo this concern that a separate instruction on the presumption of validity may lead to jury confusion:

> In light of the procedural role of the presumption of validity, instruction the jury on the presumption in addition to informing it of the clear and convincing burden of proof may cause jury confusion as to its role in deciding invalidity. This instruction, therefore, omits any reference to the presumption of validity.

Federal Circuit Bar Association Model Patent Jury Instructions (2001) at 54. Similarly, the American Intellectual Property Law Association (AIPLA) and Northern District of California instruct the jury as the heightened burden of proof for invalidity without including a presumption of validity instruction. *See* AIPLA Model Patent Jury Instructions (2006) at 8, 9, 19; N.D. Cal. Model Patent Jury Instructions (2004) § B.4.1 at 23.

In sum,, Plaintiff's proposed instruction invites the jury to err by assigning evidentiary weight both to the presumption and to the heightened burden of proof and should not be adopted.

Defendants further object to Plaintiff's proposed instruction because it does not explain to the jury that it will be asked to render a verdict on infringement for the '633 and '763 patents, and to render a verdict on invalidity and unenforceability as to the '306, '633 and '763 patents.

\*    \*    \*

16

## Defendants' Proposed Instruction

As I have already told you, Telcordia is the owner of two patents which it contends Lucent and Cisco infringe, and a third patent which it previously contended Lucent and Cisco infringe. For each patent and for each defendant, Telcordia has the burden of proving infringement by what is called a preponderance of the evidence. That means Telcordia has to produce evidence which, considered in light of all the facts, leads you to believe that what the patent owner alleges is more likely true than not. To put it differently, if you were to put Telcordia's and the Defendants' evidence on opposite sides of a scale, the evidence supporting Telcordia's allegations would have to make the scale tip somewhat on its side. If Telcordia fails to meet this burden for either Defendant, the verdict must be for that Defendant. Telcordia must also prove its damages by a preponderance of the evidence.

In this case, Lucent and Cisco assert that all three of Telcordia's patents are invalid and unenforceable. The party challenging the patent has the burden of proving by clear and convincing evidence that the patent is invalid or unenforceable. Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a factual contention is highly probable. Telcordia also contends that Lucent and Cisco willfully infringed the patents in suit. Telcordia must prove willful infringement by clear and convincing evidence.

Those of you who have sat on criminal cases will have heard of proof beyond a reasonable doubt. That requirement does not apply to a civil case; therefore, you should put it out of your mind.

**Source:**     Preliminary Jury Instructions - Patent (GMS)
                Rev: 1/18/06

## Plaintiff's Objections

17

Telcordia has modified its initial proposed instruction to account for the defendants' addition of unenforceability, and recognition that unenforceability must be proven by clear and convincing evidence. Telcordia has also modified its instruction to account for the defendants' objection that "Telcordia has the burden of separately proving infringement by each Defendant for each asserted patent." Telcordia notes that the defendants' concerns in this regard are overstated as each proposed verdict form clearly delineates between patents and defendants. Additionally, defendants' proposed language delineating between patents and parties is confusing and difficult to follow. Telcordia has added the simple phrase "for each patent and for each defendant . . ." to its instruction. There is no need to confuse the jury with burdensome language (i.e. "separately for each of the first two patents, the '763 and '633 patents, and for each of the Defendants") when a simple phrase ("For each defendant and for each patent") will do.

Telcordia objects to the defendants' proposed instruction because it removes, without comment, the sentence "Proof by clear and convincing evidence is thus a higher burden than proof by a preponderance of the evidence," which properly belongs after the sentence "Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a factual contention is highly probable." There is no reason for the defendants to meddle with this Courts' recent model instructions on the burden of proof. The jury will not necessarily be familiar with the respective burdens of proof, and there is no reason not to give the jury context as to which burden is higher. Moreover, informing the jury about the respective burdens is a practice that has been reviewed and approved by this Court, has been included in the Court's January 18, 2006, model preliminary instructions, and should not be modified as defendants propose. *Lifescan, Inc. v. Home Diagnostics, Inc.*, 103 F.Supp.2d 345, 378-79 (D. Del. 2000).

**Telcordia's Objection to Defendants' Digression from Model Instruction on Presumption of Validity:**

Telcordia objects to the defendants' deliberate and significant digression from this Court's January 18, 2006, model instructions in an effort to ignore the presumption of validity. The presumption of validity is a fundamental tenet of patent law.  35 U.S.C. § 282; *Cardinal Chemical Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 93 (1993).  There is simply no reason to refrain from instructing the jury about the presumption.  The defendants cite no case holding that it is improper to instruct the jury about the presumption of validity.  Indeed, this Court's January 18, 2006, model preliminary instructions include the presumption of validity, as do the 1993 Delaware model instructions and the 2004 draft Delaware model instructions.   This is unsurprising against the backdrop of countless Federal Circuit and district court opinions that recognize the propriety of instructing the jury on the presumption of validity.  *Novo Nordisk v. Becton Dickinson and Co.*, 304 F.3d 1216, 1220 (Fed. Cir. 2002) ("the district court instructed the jury that Novo's patents carried a presumption of validity, and that clear and convincing evidence was needed to overcome that presumption."); *United States Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1564 (Fed. Cir. 1997) ("The jury was correctly instructed on the presumption of validity, and that Ethicon bore the burden of proving invalidity by clear and convincing evidence."); *Richardson v. Suzuki Motor Co.*, 868 F.2d 1226, 1236-37 (Fed. Cir. 1989) ("The court correctly instructed the jury that invalidity must be proved by clear and convincing evidence, referring to the presumption of validity.") (citing cases); *Handgards, Inc. v. Ethicon, Inc.*, 743 F.2d 1282, 1292-93 (Fed. Cir. 1984) ("The district court properly instructed the jury . . . that a patent is presumptively valid and that presumption can only be rebutted with clear and convincing evidence."); *Lifescan, Inc. v. Home Diagnostics, Inc.*, 103 F.Supp.2d 345,

19

377-78 (D. Del. 2000) (jury instructions not erroneous where they "appropriately advise[d] the jury on the clear and convincing evidence standard, the presumption of validity, and the relationship between the two concepts . . . [which] are at the core of the statutory scheme of patent litigation.") (citation omitted).

Indeed, two of the cases cited by the defendants, *Avia Group Int'l, Inc. v. L.A. Gear California, Inc.*, 853 F.2d 1557, 1562 (Fed. Cir. 1988); *SSIH Equip. S.A. v. U.S. Int'l Trade Comm'n*, 718 F.2d 365, 375 (Fed. Cir. 1983), are entirely consistent with instructing the jury as to the presumption of validity. The third case merely notes that in the specific circumstances of that case, and after reviewing the district court's jury instructions in their entirety, the Federal Circuit found no error in the district court's failure to instruct on the presumption. *Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247, 1259 (Fed. Cir. Mar. 30, 2004). The *Chiron* case does not hold that it is improper to instruct on the presumption (nor does any Federal Circuit case so hold), and indeed against the numerous cases recognizing the propriety of the instruction, it may very well be improper not to instruct as to the presumption under circumstances different from the *Chiron* case.

Telcordia objects to the defendants' unwarranted and unfairly prejudicial digression from this Court's model instructions regarding the presumption of validity. Hereinafter, Telcordia incorporates this objection by reference as its "objection to defendants' digression from Model Instruction on presumption of validity."


General Guidance Regarding Patents    *(DISPUTED IN PART)*  I will now give you a general overview of what a patent is and how one is obtained.

**A.     Constitutional Basis for Patent Grant  *(AGREED)***

The United States Constitution, Article I, Section 8, grants the Congress of the United States the power to enact laws "to promote the progress of science and the useful arts, by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries."

**B.     Exclusionary Right and Term of a Patent  *(AGREED)***

The United States Patent and Trademark Office is responsible for reviewing patent applications and granting patents.  Once the "Patent and Trademark Office" or "PTO" has issued a patent, the patent owner has the right to exclude others from making, using, selling, or offering for sale the invention throughout the United States for the length of the patent term.   If the invention covered by the patent is a method, the patent law gives the patent owner the right to exclude others from using the method throughout the United States or making or selling throughout the United States any product made by the patented method anywhere in the world.

A person who, without the patent owner's authority makes, uses, sells, or offers to sell a product or employs a method that is covered by one or more claims of a valid patent, infringes the patent.  A person can also induce others to infringe a patent by suggesting to other persons or companies that they undertake acts that constitute infringement.   This is called inducing infringement.

**The Parts Of A Patent  *(DISPUTED)***

**Plaintiff's Proposed Instruction**

I will next briefly describe the parts of a patent and some of the procedures followed by those attempting to obtain patents.  Many of the terms used by me in this description are contained in a "Glossary of Patent Terms," which I will give to you along with a copy of these preliminary instructions.  Feel free to refer to the Glossary throughout the trial.

For an invention to be patentable, it must be new, useful, and, at the time the invention was made, must not have been obvious to a person having ordinary skill in the art to which the subject matter pertains.

Under the patent laws, the United States Patent and Trademark Office examines patent applications and issues patents. A person applying for a patent must include a number of items in his or her application, including: (1) a detailed description of the invention in terms sufficiently full, clear, concise and exact to enable any person skilled in the art to which the invention pertains to be able to make and use the invention; (2) a disclosure of the best mode of carrying out the invention known to the inventor at the time of filing; and (3) one or more claims.

The application includes a written description of the invention called a "specification" and may include drawings that illustrate the invention. The specification concludes with one or more claims that particularly and distinctly define the subject matter that the inventor regards as his or her invention. When a patent application is received at the Patent and Trademark Office, it is assigned to an examiner, who examines the application, including the claims, to determine whether the application complies with the requirements of the U.S. patent laws. The examiner reviews the prior work of others in the form of voluminous files of patents and publications. This type of material is called "prior art." Prior," and each piece of prior art is ~~generally technical information and knowledge that was known to the public either before the invention by the applicant or more than one year before the filing date of the application. Sometimes, in specific circumstances and under specific conditions, technical information that was not known to the public can also be prior art. Documents found in the search of prior art are called "references."~~called a "reference." The examiner may receive a list of prior art from the inventors and also conducts his or her own search. In conducting the search of prior art, the examiner

notes in writing on the file the classes or subclasses of art searched. The compilation of the papers concerning the proceedings before the Patent and Trademark Office is called the "prosecution history," "file wrapper," or "file history." The PTO does not have its own laboratories or testing facilities. The patent examiner is not necessarily aware of all relevant prior art references.

The examiner may "reject" the application claims if he or she believes that they are applications for inventions that are not patentable in light of the prior art, or because the patent specification does not adequately describe the claimed inventions. The applicant may then amend the claims to respond to the examiner's rejections. If, after reviewing the prior art maintained at the PTO, the examiner concludes that the claims presented by the applicant define the applicant's claimed invention over the most relevant known prior art in a manner that is patentable and that the patent meets the other requirements for patentability, the application is granted as a U.S. patent.

**Source:**    Preliminary Jury Instructions - Patent (GMS)
Rev: 1/18/06

### Defendants' Objections

The parties' dispute is focused on the two sentences of Telcordia's proposed instruction which define prior art: "Prior art is generally technical information and knowledge that was known to the public either before the invention by the applicant or more than one year before the filing date of the application. Sometimes, in specific circumstances and under specific conditions, technical information that was not known to the public can also be prior art." Defendants object to Plaintiff's proposed instruction because it includes the instruction that "Prior art is generally technical information and knowledge that was known to the public either before the invention by the applicant or more than one year before the filing date of the

23

application." Sections 102 and 103 of the Patent Code allow for non-public material to constitute prior art in certain circumstances, and here, Defendants intend to rely on non-public prior art as part of their invalidity defense. *See OddzOn Prods. v. Just Toys, Inc.*, 122 F.3d 1396 (Fed. Cir. 1997). Inclusion of this instruction unduly limits the scope of prior art which Defendants are entitled to rely upon and may confuse the jury.

Telcordia's attempt to "more accurately account" for Defendants' concern about Section 102(f) does not adequately address Defendants' concern. Instructing the jury that "Sometimes, in specific circumstances and under specific conditions, technical information that was not known to the public can also be prior art," does not accurately reflect the law and (prejudicially) implies that non-public prior art is very rare and should be viewed with great skepticism. Rather than instruct the jury that prior art is generally "public" and only rarely may be non-public as Telcordia proposes, Defendants propose a neutral statement of prior art for these preliminary instructions: "However, in general, prior art includes subject matter that existed before the claimed invention." The final jury instructions will provide the jury with the legal standards for prior art.

*   *   *

**<u>Defendants' Proposed Instruction</u>**

I will next briefly describe the parts of a patent and some of the procedures followed by those attempting to obtain patents. Many of the terms used by me in this description are contained in a "Glossary of Patent Terms," which I will give to you along with a copy of these preliminary instructions. Feel free to refer to the Glossary throughout the trial.

24

For an invention to be patentable, it must be new, useful, and, at the time the invention was made, must not have been obvious to a person having ordinary skill in the art to which the subject matter pertains.

Under the patent laws, the United States Patent and Trademark Office examines patent applications and issues patents. A person applying for a patent must include a number of items in his or her application, including: (1) a detailed description of the invention in terms sufficiently full, clear, concise and exact to enable any person skilled in the art to which the invention pertains to be able to make and use the invention; (2) a disclosure of the best mode of carrying out the invention known to the inventor at the time of filing; and (3) one or more claims.

The application includes a written description of the invention called a "specification" and may include drawings that illustrate the invention. The specification concludes with one or more claims that particularly and distinctly define the subject matter that the inventor regards as his or her invention. When a patent application is received at the Patent and Trademark Office, it is assigned to an examiner, who examines the application, including the claims, to determine whether the application complies with the requirements of the U.S. patent laws.

The examiner reviews the prior work of others in the form of voluminous files of patents and publications. This type of material is called "prior art." The examiner reviews this prior art to determine whether the invention is truly an advance over the state of the art at the time, i.e., whether each claim defines an invention that is new and not obvious in view of the prior art. Prior art is defined by law, and I will give you at a later time specific instructions as to what constitutes prior art. However, in general, prior art includes subject matter that existed before the claimed invention. Documents found in the search of prior art are called "references." A patent lists the prior art that the examiner considered; this list is called the "cited references." In

25

conducting the search of prior art, the examiner notes in writing on the file the classes or subclasses of art searched. The compilation of the papers concerning the proceedings before the Patent and Trademark Office is called the "prosecution history," "file wrapper," or "file history." The PTO does not have its own laboratories or testing facilities.

The examiner may "reject" the application claims if he or she believes that they are applications for inventions that are not patentable in light of the prior art, or because the patent specification does not adequately describe the claimed inventions. The applicant may then amend the claims to respond to the examiner's rejections. If, after reviewing the prior art maintained at the PTO, the examiner concludes that the claims presented by the applicant define the applicant's claimed invention over the most relevant known prior art in a manner that is patentable and that the patent meets the other requirements for patentability, the application is granted as a U.S. patent.

**Source:**    Preliminary Jury Instructions - Patent (GMS)
        Rev: 1/18/06

## Plaintiff's Objections

Telcordia objects to the defendants' instruction as an unnecessary digression from the Court's verbatim January 18, 2006, Model Preliminary Patent Instruction. Telcordia specifically objects to the defendants' modification to include the phrase "in general, prior art includes subject matter that existed before the claimed invention" as overly broad and as encompassing material that does not qualify as prior art. Specifically, "secret prior art" unknown to the public, under many circumstances, does not qualify as prior art. *See, e.g., Vulcan Engineering Co. v. Fata Aluminum, Inc.,* 278 F.3d 1366, 1372 (Fed. Cir. 2002). In the spirit of compromise,

Telcordia has modified its proposed instruction to more accurately account for the defendants'
concern about 102(f) prior art.


**Summary Of The Patent Issues** *(DISPUTED)*

**Plaintiff's Proposed Instruction**

In this case, you must decide several things according to the instructions that I will give
you at the end of the trial. Those instructions will repeat this summary and will provide more
detail. One thing you will need not decide is the meaning of the patent claims. That is one of
my jobs -- to explain to you what the patent claims mean. By the way, the word "claims" is a
term of art and I will instruct you on its meaning at trial's end. Meanwhile, you will find a
definition in the glossary attached to these preliminary instructions. In essence, you must decide:

(1) for each patent and for each defendant, whether Telcordia has proven by a
preponderance of the evidence that the Lucent or Cisco accused products infringe
the asserted claims of one or more of the '633 and '763 patents;

(2) ~~if you find that Cisco infringes the '763 or '633 patent, whether Telcordia has
proven by clear and convincing evidence that Cisco's infringement was willful;~~

(2) whether the asserted claims of Telcordia's patents have been proven by
Lucent or Cisco by clear and convincing evidence to be invalid or unenforceable;

(3) ~~if you find that Lucent infringes the '633 patent,~~ whether ~~Telcordia has~~ Telcordia's
'306 patent has been proven by Lucent or Cisco by clear and convincing evidence
~~that Lucent's infringement was willful;~~ to be invalid or unenforceable; and

(4) ~~whether the asserted claims of Telcordia's patents that have been infringed have
been proven by Lucent or Cisco by clear and convincing evidence to be invalid or
unenforceable;~~

27

(5)    ~~whether Telcordia's '306 patent has been proven by Lucent or Cisco by clear and~~ ~~convincing evidence to be invalid or unenforceable; and~~

(6)    for ~~those patents that are~~any valid and enforceable claim of the '763 or '633 patent that you find infringed, whether Telcordia has proven its measure of damages for the infringement by a preponderance of the evidence~~.~~;

(5)    if you find that Cisco infringes any valid and enforceable claim of the '763 or '633 patent, whether Telcordia has proven by clear and convincing evidence that Cisco's infringement was willful; and

(6)    if you find that Lucent infringes any valid and enforceable claim of the '633 patent, whether Telcordia has proven by clear and convincing evidence that Lucent's infringement was willful.

**Source:**    Preliminary Jury Instructions - Patent (GMS)
Rev: 1/18/06

### **Defendants' Objections**

Defendants object to Telcordia's proposed instruction because it does not instruct the jury that they need only determine willful infringement of *valid and enforceable* claims that are found to be infringed. For the same reason, Defendants object to Telcordia's proposed instruction because it places willful infringement before invalidity and unenforceability issues. Defendants would agree to the following modification to Telcordia's proposed instruction:

In this case, you must decide several things according to the instructions that I will give you at the end of the trial. Those instructions will repeat this summary and will provide more detail. One thing you will need not decide is the meaning of the patent claims. That is one of my jobs -- to explain to you what the patent claims mean. By the way, the word "claims" is a

term of art and I will instruct you on its meaning at trial's end.  Meanwhile, you will find a

definition in the glossary attached to these preliminary instructions.  In essence, you must decide:

(1)     for each patent and for each defendant, whether Telcordia has proven by a
        preponderance of the evidence that the Lucent or Cisco accused products infringe
        the asserted claims of one or more of the '633 and '763 patents;

(2)     whether Telcordia's '306, '763 and/or '633 patents have been proven by Lucent
        or Cisco by clear and convincing evidence to be invalid or unenforceable;

(3)     for those patents that are valid, enforceable and infringed, whether Telcordia has
        proven its measure of damages for the infringement by a preponderance of the
        evidence;

(4)     if you find that Cisco infringes a valid and enforceable claim of the '763 or '633
        patent, whether Telcordia has proven by clear and convincing evidence that
        Cisco's infringement was willful; and

(5)     if you find that Lucent infringes a valid and enforceable claim of the '633 patent,
        whether Telcordia has proven by clear and convincing evidence that Lucent's
        infringement was willful.

*     *     *

### Defendants' Proposed Instruction

In this case, you must decide several things according to the instructions that I will give

you at the end of the trial.  Those instructions will repeat this summary and will provide more

detail.  One thing you will need not decide is the meaning of the patent claims.  That is one of

my jobs -- to explain to you what the patent claims mean.  By the way, the word "claims" is a

term of art and I will instruct you on its meaning at trial's end.  Meanwhile, you will find a definition in the glossary attached to these preliminary instructions.  In essence, you must decide:

(1)     separately for the '763 and '633 patents and for each of the Defendants, whether Telcordia has proven by a preponderance of the evidence that that Defendant's accused products infringe the asserted claims of that patent;

(2)     if you find that Cisco infringes the '763 or '633 patent, whether Telcordia has proven by clear and convincing evidence that Cisco's infringement was willful;

(3)     if you find that Lucent infringes the '633 patent, whether Telcordia has proven by clear and convincing evidence that Lucent's infringement was willful;

(4)     whether the '763, '633 and '306 patents have been proven by Lucent or Cisco by clear and convincing evidence to be invalid;

(5)     whether the '763, '633 and '306 patents have been proven by Lucent or Cisco by clear and convincing evidence to be unenforceable;

(6)     for those patents that are valid and infringed, whether Telcordia has proven its measure of damages for the infringement by a preponderance of the evidence.

**Source:**        Preliminary Jury Instructions - Patent (GMS)
Rev: 1/18/06


### Plaintiff's Objections

Telcordia objects to the defendants' unnecessary digression from the Court's January 18, 2006, model instructions.    Telcordia objects to the defendants' proposed instruction as unnecessarily cumbersome.  Telcordia has revised its initial instruction to accommodate the defendants' concerns about enforceability and about delineating between defendants and patents (but in a less cumbersome manner).

## CONDUCT OF THE JURY   *(AGREED)*

Now, a few words about your conduct as jurors.

First, I instruct you that during the trial you are not to discuss the case with anyone or permit anyone to discuss it with you. Until you retire to the jury room at the end of the case to deliberate on your verdict, you simply are not to talk about this case. If any lawyer, party, or witness does not speak to you when you pass in the hall, ride the elevator, or the like, remember it is because they are not supposed to talk with you nor you with them. In this way, any unwarranted and unnecessary suspicion about your fairness can be avoided. If anyone should try to talk to you about it, bring it to the court's attention promptly.

Second, do not read or listen to anything touching on this case in any way.

Third, do not try to do any research or make any investigation about the case on your own.

Finally, do not form any opinion until all the evidence is in. Keep an open mind until you start your deliberations at the end of the case.

During the trial, I will permit you to take notes. A word of caution is in order. There is always a tendency to attach undue importance to matters which one has written down. Some testimony which is considered unimportant at the time presented, and thus not written down, takes on greater importance later in the trial in light of all the evidence presented. Therefore, you are instructed that your notes are only a tool to aid your own individual memory and you should not compare your notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence. Your notes are not evidence, and are by no means a complete outline of the proceedings or a list of the highlights of the trial. Above all, your memory should be your greatest asset when it comes time to deliberate and render a decision in this case.

So, if you do take notes, leave them in your seat at the end of the day, and my Deputy will collect them and return them to your seat the next day.  And, remember that they are for your own personal use.

I will give you detailed instructions on the law at the end of the case, and those instructions will control your deliberations and decision.

**Source:**     Preliminary Jury Instructions - Patent (GMS)
                Rev: 1/18/06

**COURSE OF THE TRIAL**  *(AGREED)*

This trial, like most jury trials, comes in seven stages or phases. We have already been through the first phase, which was to select you as jurors. The remaining stages are:

(2)    These preliminary instructions to you;

(3)    Opening statements which are intended to explain to you what each side intends to prove and are offered to help you follow the evidence. The lawyers are not required to make opening statements at this time or they may defer this opening until it is their turn to present evidence.

(4)    The presentation of the evidence which will include live witnesses and may also include previously recorded testimony, as well as documents and things;

(5)    My final instructions on the law to you;

(6)    The closing arguments of the lawyers which will be offered to help you make your determination; and, finally,

(7)    Your deliberations where you will evaluate and discuss the evidence among yourselves and determine the outcome of the case.

Please keep in mind that evidence is often introduced somewhat piecemeal. So, as the evidence comes in, you as jurors need to keep an open mind.

We will begin shortly, but first I want to outline the anticipated schedule of the trial.

**Source:**    Preliminary Jury Instructions - Patent (GMS)
Rev: 1/18/06

33

**TRIAL SCHEDULE** *(AGREED)*

Though you have heard me say this during the voir dire, I want to again outline the schedule I expect to maintain during the course of this trial.

This case is expected to take 10 days to try. We will normally begin the day at 9:00 A.M. promptly. We will go until 1:00 P.M. and, after a one hour break for lunch, from 2:00 p.m. to 4:30 P.M. There will be a fifteen minute break at 11:00 A.M. and another fifteen minute break at 3:15 P.M. The only significant exception to this schedule may occur when the case is submitted to you for your deliberations. On that day, the proceedings might last beyond 5:00 p.m. We will post a copy of this schedule for your convenience in the jury deliberation room.

**Source:**     Preliminary Jury Instructions - Patent (GMS)
                Rev: 1/18/06

## GLOSSARY OF PATENT TERMS

Applicants — The named inventors who are applying for the patent.

Assignment — Transfer of ownership rights in a patent or patent application from one person or company to another.

Claims — The part of a patent that defines the invention. These are found at the end of the patent specification in the form of numbered paragraphs.

Disclosure of Invention — The part of the patent specification that explains how the invention works and usually includes a drawing.

File Wrapper, File History or Prosecution History — The written record of proceedings in the United States Patent and Trademark Office ("Patent and Trademark Office" or "PTO"), including the original patent application and later rejections, responses to the rejections and other communications between the Patent and Trademark Office and the applicant.

Patent Application — The initial papers filed in the Patent and Trademark Office by an applicant. These typically include a specification, drawings, claims and the oath (Declaration) of the applicant.

Patent Examiners — Personnel employed by the Patent and Trademark Office having expertise in various technical areas who review (examine) patent applications to determine whether the claims of a patent application are patentable and whether the disclosure adequately describes the invention.

Prior art — Any information that is used to describe public, technical knowledge prior to the invention by the applicant or more than a year prior to the filing of his/her application.

Prior Art References — Any item of prior art (publication, patent or product) used to determine patentability.

Specification — The part of the patent application or patent that describes the invention, and may include drawings. The specification does not define the invention, only the claims do.

**Source:**   Preliminary Jury Instructions - Patent (GMS)
Rev: 1/18/06

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| TELCORDIA TECHNOLOGIES, INC.,        ) | |
|        ) | |
| Plaintiff/Counterclaim Defendant,  ) | |
|        ) | |
| v.        ) | Civil Action No. 04-875-GMS |
| LUCENT TECHNOLOGIES INC.,        ) | |
|        ) | |
| Defendant/Counterclaim Plaintiff.  ) | |

| | |
|---|---|
| TELCORDIA TECHNOLOGIES, INC.,        ) | |
|        ) | |
| Plaintiff/Counterclaim Defendant,  ) | Civil Action No. 04-876-GMS |
|        ) | |
| v.        ) | |
|        ) | |
| CISCO SYSTEMS, INC.,        ) | |
|        ) | |
| Defendant/Counterclaim Plaintiff.  ) | |

## PRELIMINARY JURY INSTRUCTIONS

### INTRODUCTION

Members of the jury: Now that you have been sworn, I am now going to give you some preliminary instructions to guide you in your participation in the trial.

These instructions will give you some general rules and guidance that might apply to any civil case. However, because this is a patent trial which will deal with subject matter that is not within the every day experience of most of us, I will also give you some additional preliminary instructions regarding patents to assist you in discharging your duties as jurors.

## THE PARTIES AND THEIR CONTENTIONS

Before I begin with those instructions, however, allow me to give you an overview of who the parties are and what each contends.

You may recall that during the process that led to your selection as jurors, I advised you that this is a civil action for patent infringement arising under the patent laws of the United States.

The parties in this case are the plaintiff, Telcordia Technologies, Inc., and the defendants, Lucent Technologies Inc. and Cisco Systems, Inc.  Telcordia Technologies, Inc. was formerly known as Bellcore and you may hear attorneys and witnesses refer to Bellcore at times during this trial

The dispute between the parties relates to the manufacture and operation of equipment for telecommunications or data communications networks.  During the trial, the parties will offer testimony to familiarize you with this technology.

Telcordia asserts that it owns two United States Patents which it alleges that Cisco and Lucent infringes, Patent Nos. 4,835,763 and Re. 36,633, and a third United States Patent, United States Patent No. 4,893,306.  Infringement of that patent is not an issue for your consideration. Rather, you will consider only the validity and enforceability of that patent.  Because these numbers are so long, patents are usually referred to by their last three digits.  For example, Patent No. 4,835,763 is called simply "the '763 patent," Patent No. Re. 36,633 is called simply "the '633 patent," and Patent No. 4,893,306 is called simply "the '306 patent."  Sometimes the patents collectively will be referred to as the "Patents-In-Suit."  Telcordia contends that Lucent and Cisco make, use, sell, and offer for sale communications equipment that infringes these patents.  Telcordia contends that Cisco's infringement of the '763 and '633 patents is willful.

Telcordia contends that Lucent's infringement of the '633 patent is willful. Telcordia seeks damages for Lucent's and Cisco's alleged infringement.

Telcordia does not contend that all of the claims of each patent are infringed by Lucent and Cisco. Instead, Telcordia asserts that only certain claims are infringed. They may be called "asserted claims." Telcordia contends that some of Lucent's and Cisco's products infringe the asserted claims. I, and the attorneys and witnesses, may refer to these products as "accused products." You, of course, will determine whether or not each accused product infringes the asserted claims of any of Telcordia's patents.

Persons or companies sued for allegedly infringing a patent can deny infringement. They can also defend a charge of infringement by proving the patent is invalid or unenforceable. In this case, Lucent and Cisco deny that they infringe Telcordia's patents. I will tell you more about infringement in a few minutes. I will instruct you as to defenses to a charge of infringement and possible damages resulting from a finding of infringement in my instructions to you at the close of the evidence.

## DUTIES OF THE JURY

So, let me begin with those general rules that will govern the discharge of your duties as jurors in this case.

It will be your duty to find from the evidence what the facts are. You and you alone will be the judges of the facts. You will then have to apply those facts to the law as I will give it to you both during these preliminary instructions and at the close of the evidence. You must follow that law whether you agree with it or not. In addition to instructing you about the law, at the close of the evidence, I will provide you with instructions as to what the claims of the patents mean. Again, of course, you are bound by your oath as jurors to follow these and all the instructions that I give you, even if you personally disagree with them. All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy, or prejudice that you may feel toward one side or the other influence your decision in any way. Also, do not let anything that I may say or do during the course of the trial influence you. Nothing that I may say or do is intended to indicate, or should be taken by you as indicating, what your verdict should be.

## EVIDENCE

The evidence from which you will find the facts will consist of the testimony of witnesses (the testimony of witnesses consist of the answers of the witnesses to questions posed by the attorneys or the court -- you may not ask questions). Evidence will also consist of documents and other things received into the record as exhibits, and any facts that the lawyers agree to or stipulate to or that I may instruct you to find.

Certain things are not evidence and must not be considered by you. I will list them for you now:

1.    Statements, arguments, and questions by lawyers are not evidence.

2.    Objections to questions are not evidence. Lawyers have an obligation to their clients to make objections when they believe evidence being offered is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it. If the objection is sustained, ignore the question. If it is overruled, treat the answer like any other. If you are instructed that some item of evidence is received for a limited purpose only, you must follow that instruction.

3.    Testimony that the court has excluded or told you to disregard is not evidence and must not be considered.

4.    Anything you may have seen or heard outside the courtroom is not evidence and must be disregarded. You are to decide the case solely on the evidence presented here in the courtroom.

There are two kinds of evidence: direct and circumstantial. Direct evidence is direct proof of a fact, such as testimony of an eyewitness. Circumstantial evidence is proof of facts from which you may infer or conclude that other facts exist. As a general rule, the law makes no

distinction between these two types of evidence, but simply requires that you find facts from all the evidence in the case, whether direct or circumstantial or a combination of the two.

CREDIBILITY OF WITNESSES - WEIGHING CONFLICTING TESTIMONY

You are the sole judges of each witness's credibility. You should consider each witness's means of knowledge; strength of memory; opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witness's biases, prejudices, or interests; the witness's manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony.

If you find the testimony to be contradictory, you must try to reconcile it, if reasonably possible, so as to make one harmonious story of it all. But if you can't do this, then it is your duty and privilege to believe the testimony that, in your judgment, is most believable and disregard any testimony that, in your judgment, is not believable. This instruction applies to the testimony of all witnesses, including expert witnesses.

## BURDEN OF PROOF

As I have already told you, in this case, Telcordia is the owner of two patents which it contends Lucent and Cisco infringe. For each patent and for each defendant, Telcordia has the burden of proving infringement by what is called a preponderance of the evidence. That means Telcordia has to produce evidence which, considered in light of all the facts, leads you to believe that what the patent owner alleges is more likely true than not. To put it differently, if you were to put Telcordia's and the defendants' evidence on opposite sides of a scale, the evidence supporting Telcordia's allegations would have to make the scale tip somewhat on its side. If Telcordia fails to meet this burden, the verdict must be for the defendants. Telcordia must also prove its damages by a preponderance of the evidence.

In this case, Lucent and Cisco assert that Telcordia's patents are invalid and unenforceable. A patent, however, is presumed to be valid and enforceable. Accordingly, the party challenging the patent has the burden of proving by clear and convincing evidence that the patent is invalid or unenforceable. Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a factual contention is highly probable. Proof by clear and convincing evidence is thus a higher burden than proof by a preponderance of the evidence. Telcordia also contends that Lucent and Cisco willfully infringed the patents in suit. Telcordia must prove willful infringement by clear and convincing evidence.

Those of you who have sat on criminal cases will have heard of proof beyond a reasonable doubt. That requirement does not apply to a civil case; therefore, you should put it out of your mind.

8

**GENERAL GUIDANCE REGARDING PATENTS**

I will now give you a general overview of what a patent is and how one is obtained.

**A.    Constitutional Basis for Patent Grant**

The United States Constitution, Article I, Section 8, grants the Congress of the United States the power to enact laws "to promote the progress of science and the useful arts, by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries."

**B.    Exclusionary Right and Term of a Patent**

The United States Patent and Trademark Office is responsible for reviewing patent applications and granting patents. Once the "Patent and Trademark Office" or "PTO" has issued a patent, the patent owner has the right to exclude others from making, using, selling, or offering for sale the invention throughout the United States for the length of the patent term. If the invention covered by the patent is a method, the patent law gives the patent owner the right to exclude others from using the method throughout the United States or making or selling throughout the United States any product made by the patented method anywhere in the world.

A person who, without the patent owner's authority makes, uses, sells, or offers to sell a product or employs a method that is covered by one or more claims of a valid patent, infringes the patent. A person can also induce others to infringe a patent by suggesting to other persons or companies that they undertake acts that constitute infringement. This is called inducing infringement.

**The Parts Of A Patent**

I will next briefly describe the parts of a patent and some of the procedures followed by those attempting to obtain patents. Many of the terms used by me in this description are

9

contained in a "Glossary of Patent Terms," which I will give to you along with a copy of these preliminary instructions. Feel free to refer to the Glossary throughout the trial.

For an invention to be patentable, it must be new, useful, and, at the time the invention was made, must not have been obvious to a person having ordinary skill in the art to which the subject matter pertains.

Under the patent laws, the United States Patent and Trademark Office examines patent applications and issues patents. A person applying for a patent must include a number of items in his or her application, including: (1) a detailed description of the invention in terms sufficiently full, clear, concise and exact to enable any person skilled in the art to which the invention pertains to be able to make and use the invention; (2) a disclosure of the best mode of carrying out the invention known to the inventor at the time of filing; and (3) one or more claims.

The application includes a written description of the invention called a "specification" and may include drawings that illustrate the invention. The specification concludes with one or more claims that particularly and distinctly define the subject matter that the inventor regards as his or her invention. When a patent application is received at the Patent and Trademark Office, it is assigned to an examiner, who examines the application, including the claims, to determine whether the application complies with the requirements of the U.S. patent laws. The examiner reviews the prior work of others in the form of voluminous files of patents and publications. This type of material is called "prior art," and each piece of prior art is called a "reference." The examiner may receive a list of prior art from the inventors and also conducts his or her own search. In conducting the search of prior art, the examiner notes in writing on the file the classes or subclasses of art searched   The compilation of the papers concerning the proceedings before the Patent and Trademark Office is called the "prosecution history," "file wrapper," or "file

history." The PTO does not have its own laboratories or testing facilities. The patent examiner is not necessarily aware of all relevant prior art references.

The examiner may "reject" the application claims if he or she believes that they are applications for inventions that are not patentable in light of the prior art, or because the patent specification does not adequately describe the claimed inventions. The applicant may then amend the claims to respond to the examiner's rejections. If, after reviewing the prior art maintained at the PTO, the examiner concludes that the claims presented by the applicant define the applicant's claimed invention over the most relevant known prior art in a manner that is patentable and that the patent meets the other requirements for patentability, the application is granted as a U.S. patent.

**Summary Of The Patent Issues**

In this case, you must decide several things according to the instructions that I will give you at the end of the trial. Those instructions will repeat this summary and will provide more detail. One thing you will need not decide is the meaning of the patent claims. That is one of my jobs -- to explain to you what the patent claims mean. By the way, the word "claims" is a term of art and I will instruct you on its meaning at trial's end. Meanwhile, you will find a definition in the glossary attached to these preliminary instructions. In essence, you must decide:

(1)     for each patent and for each defendant, whether Telcordia has proven by a preponderance of the evidence that the Lucent or Cisco accused products infringe the asserted claims of one or more of the '633 and '763 patents;

(2)     whether the asserted claims of Telcordia's patents have been proven by Lucent or Cisco by clear and convincing evidence to be invalid or unenforceable;

(3)     whether Telcordia's '306 patent has been proven by Lucent or Cisco by clear and convincing evidence to be invalid or unenforceable; and

11

(4)     for any valid and enforceable claim of the '763 or '633 patent that you find infringed, whether Telcordia has proven its measure of damages for the infringement by a preponderance of the evidence;

(5)     if you find that Cisco infringes any valid and enforceable claim of the '763 or '633 patent, whether Telcordia has proven by clear and convincing evidence that Cisco's infringement was willful; and

(6)     if you find that Lucent infringes any valid and enforceable claim of the '633 patent, whether Telcordia has proven by clear and convincing evidence that Lucent's infringement was willful.

## CONDUCT OF THE JURY

Now, a few words about your conduct as jurors.

First, I instruct you that during the trial you are not to discuss the case with anyone or permit anyone to discuss it with you. Until you retire to the jury room at the end of the case to deliberate on your verdict, you simply are not to talk about this case. If any lawyer, party, or witness does not speak to you when you pass in the hall, ride the elevator, or the like, remember it is because they are not supposed to talk with you nor you with them. In this way, any unwarranted and unnecessary suspicion about your fairness can be avoided. If anyone should try to talk to you about it, bring it to the court's attention promptly.

Second, do not read or listen to anything touching on this case in any way.

Third, do not try to do any research or make any investigation about the case on your own.

Finally, do not form any opinion until all the evidence is in. Keep an open mind until you start your deliberations at the end of the case.

During the trial, I will permit you to take notes. A word of caution is in order. There is always a tendency to attach undue importance to matters which one has written down. Some testimony which is considered unimportant at the time presented, and thus not written down, takes on greater importance later in the trial in light of all the evidence presented. Therefore, you are instructed that your notes are only a tool to aid your own individual memory and you should not compare your notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence. Your notes are not evidence, and are by no means a complete outline of the proceedings or a list of the highlights of the trial. Above all, your memory should be your greatest asset when it comes time to deliberate and render a decision in this case.

So, if you do take notes, leave them in your seat at the end of the day, and my Deputy will collect them and return them to your seat the next day. And, remember that they are for your own personal use.

I will give you detailed instructions on the law at the end of the case, and those instructions will control your deliberations and decision.

## COURSE OF THE TRIAL

This trial, like most jury trials, comes in seven stages or phases. We have already been through the first phase, which was to select you as jurors. The remaining stages are:

(2)    These preliminary instructions to you;

(3)    Opening statements which are intended to explain to you what each side intends to prove and are offered to help you follow the evidence. The lawyers are not required to make opening statements at this time or they may defer this opening until it is their turn to present evidence.

(4)    The presentation of the evidence which will include live witnesses and may also include previously recorded testimony, as well as documents and things;

(5)    My final instructions on the law to you;

(6)    The closing arguments of the lawyers which will be offered to help you make your determination; and, finally,

(7)    Your deliberations where you will evaluate and discuss the evidence among yourselves and determine the outcome of the case.

Please keep in mind that evidence is often introduced somewhat piecemeal. So, as the evidence comes in, you as jurors need to keep an open mind.

We will begin shortly, but first I want to outline the anticipated schedule of the trial.

**TRIAL SCHEDULE**

Though you have heard me say this during the voir dire, I want to again outline the schedule I expect to maintain during the course of this trial.

This case is expected to take 10 days to try. We will normally begin the day at 9:00 A.M. promptly. We will go until 1:00 P.M. and, after a one hour break for lunch, from 2:00 p.m. to 4:30 P.M. There will be a fifteen minute break at 11:00 A.M. and another fifteen minute break at 3:15 P.M. The only significant exception to this schedule may occur when the case is submitted to you for your deliberations. On that day, the proceedings might last beyond 5:00 p.m. We will post a copy of this schedule for your convenience in the jury deliberation room.

## GLOSSARY OF PATENT TERMS

| | |
|---|---|
| Applicants | The named inventors who are applying for the patent. |
| Assignment | Transfer of ownership rights in a patent or patent application from one person or company to another. |
| Claims | The part of a patent that defines the invention. These are found at the end of the patent specification in the form of numbered paragraphs. |
| Disclosure of Invention | The part of the patent specification that explains how the invention works and usually includes a drawing. |
| File Wrapper, File History or Prosecution History | The written record of proceedings in the United States Patent and Trademark Office ("Patent and Trademark Office" or "PTO"), including the original patent application and later rejections, responses to the rejections and other communications between the Patent and Trademark Office and the applicant. |
| Patent Application | The initial papers filed in the Patent and Trademark Office by an applicant. These typically include a specification, drawings, claims and the oath (Declaration) of the applicant. |
| Patent Examiners | Personnel employed by the Patent and Trademark Office having expertise in various technical areas who review (examine) patent applications to determine whether the claims of a patent application are patentable and whether the disclosure adequately describes the invention. |
| Prior art | Any information that is used to describe public, technical knowledge prior to the invention by the applicant or more than a year prior to the filing of his/her application. |
| Prior Art References | Any item of prior art (publication, patent or product) used to determine patentability. |
| Specification | The part of the patent application or patent that describes the invention, and may include drawings. The specification does not define the invention, only the claims do. |