FILED IN OPEN COURT
5/9/07

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TELCORDIA TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-876-GMS |
| | ) | |
| CISCO SYSTEMS, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## **FINAL JURY INSTRUCTIONS**

Plaintiff Telcordia Technologies, Inc. and Defendant Cisco Systems, Inc. submit the

following jury instructions.

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, Delaware 19899-1150
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com

Donald R. Dunner
Vincent P. Kovalick
Laura P. Masurovsky
Steven M. Anzalone
Griffith B. Price
James T. Wilson
John M. Williamson
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
901 New York Avenue, NW
Washington, DC 20001-4413
(202) 408-4000

***Attorneys for Plaintiff***
***Telcordia Technologies Inc.***

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (I.D. #1014)
Leslie A. Polizoti (I.D. #4299)
1201 North Market Street
Wilmington, DE 19899-1347
 (302) 658-9200
jblumenfeld@mnat.com
lpolizoti@mnat.com

Matthew D. Powers
Edward R. Reines
Jessica Davis
Sonal N. Mehta
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
(650) 802-3000

***Attorneys for Defendant***
***Cisco Systems, Inc. in C.A.***

**TABLE OF CONTENTS**

1. GENERAL INSTRUCTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
   1.1   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
   1.2   JURORS' DUTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
   1.3   BURDENS OF PROOF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   1.4   EVIDENCE DEFINED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
   1.5   CONSIDERATION OF EVIDENCE . . . . . . . . . . . . . . . . . . . . . . . . 4
   1.6   DIRECT AND CIRCUMSTANTIAL EVIDENCE . . . . . . . . . . . . . . . . . 4
   1.7   CREDIBILITY OF WITNESSES . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
   1.8   NUMBER OF WITNESSES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
   1.9   EXPERT WITNESSES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

2. THE PARTIES' CONTENTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
   2.1   THE PARTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
   2.2   TELCORDIA'S CONTENTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
   2.3   CISCO'S CONTENTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
   2.4   SUMMARY OF PATENT ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . 9

3. INFRINGEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
   3.1   CLAIM INFRINGEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
   3.2   CONSTRUCTION OF CLAIMS . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
   3.3   PATENT INFRINGEMENT - GENERALLY . . . . . . . . . . . . . . . . . . . . 11
   3.4   DIRECT INFRINGEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
         3.4.1   INDIRECT INFRINGEMENT . . . . . . . . . . . . . . . . . . . . . . 12
   3.5   INDUCING PATENT INFRINGEMENT . . . . . . . . . . . . . . . . . . . . . . 13
   3.6   CONTRIBUTORY INFRINGEMENT . . . . . . . . . . . . . . . . . . . . . . . . 14
   3.7   LITERAL INFRINGEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
   3.8   DOCTRINE OF EQUIVALENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
   3.9   MEANS-PLUS-FUNCTION CLAIMS . . . . . . . . . . . . . . . . . . . . . . . 16
   3.10  INFRINGEMENT DESPITE DEFENDANT'S
         IMPROVEMENTS OR PATENTS ON IMPROVEMENTS . . . . . . . . . . . . . . . 17
   3.11  WILLFUL INFRINGEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

4. VALIDITY DEFENSES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
   4.1   DEFINITENESS UNDER 35 U.S.C. §112 . . . . . . . . . . . . . . . . . . . . . . . 19
   4.2   BEST MODE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
   4.3   ANTICIPATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
   4.4   WHAT IS PRIOR ART . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
         4.4.1   PRINTED PUBLICATIONS AS PRIOR ART . . . . . . . . . . . . . . . 24
         4.4.2   REFERENCES DESCRIBING THE INVENTOR'S WORK . . . . . . . . 25
   4.5   OBVIOUSNESS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
         4.5.1   SCOPE AND CONTENT OF THE PRIOR ART . . . . . . . . . . . . . . 27
         4.5.2   DIFFERENCES OVER THE PRIOR ART . . . . . . . . . . . . . . . . . . 28

       4.5.3  LEVEL OF ORDINARY SKILL . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

       4.5.4  OBJECTIVE CRITERIA CONCERNING OBVIOUSNESS

                  (SECONDARY CONSIDERATIONS) . . . . . . . . . . . . . . . . . . . . . . . . . 29

       4.5.5  OBVIOUSNESS - HINDSIGHT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

       4.5.6  TEACHING AWAY OF PRIOR ART . . . . . . . . . . . . . . . . . . . . . . . . 30

  4.6     INVENTORSHIP . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

  4.7     CONCEPTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

5.    EQUITABLE DEFENSES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

  5.1     LACHES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

  5.2     EQUITABLE ESTOPPEL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

  5.3     UNCLEAN HANDS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

  5.4     INTERVENING RIGHTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

  5.5     INEQUITABLE CONDUCT – GENERALLY . . . . . . . . . . . . . . . . . . . . 36

  5.6     MATERIALITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

  5.7     INTENT TO DECEIVE OR MISLEAD . . . . . . . . . . . . . . . . . . . . . . . . 38

  5.8     BALANCING OF MATERIALITY AND INTENT . . . . . . . . . . . . . . . . . 38

6.    DAMAGES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

  6.1     COMPENSATORY DAMAGES IN GENERAL . . . . . . . . . . . . . . . . . . . 39

  6.2     BURDEN OF PROOF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

  6.3     NOTICE AND MARKING . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

  6.4     ENTIRE MARKET VALUE RULE . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

  6.5     REASONABLE ROYALTY AS A MEASURE OF DAMAGES . . . . . . . . 41

  6.6     FACTORS FOR DETERMINING REASONABLE ROYALTY . . . . . . . . . 41

  6.7     CURATIVE INSTRUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

7.    DELIBERATIONS AND VERDICT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

  7.1     INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

  7.2     UNANIMOUS VERDICT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

  7.3     DUTY TO DELIBERATE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

  7.4     COURT HAS NO OPINION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

APPENDIX A

# 1. GENERAL INSTRUCTIONS

## 1.1 INTRODUCTION

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case.

Each of you has been provided a copy of these instructions. You may read along as I deliver them if you prefer, however, I would encourage you to focus your attention on me while the instructions are being read. You will be able to take your copies with you into your deliberations and refer to them at that time, if necessary.

I will start by explaining your duties and the general rules that apply in every civil case.

Then I will explain some rules that you must use in evaluating particular testimony and evidence.

Then I will explain the positions of the parties and the law you will apply in this case.

And last, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.

Please listen very carefully to everything I say.

## 1.2 JURORS' DUTIES

Members of the Jury, it is important that you bear in mind the distinction between your duties and my duties. You have two main duties as jurors. The first one is to decide what the facts are from the evidence that you saw and heard here in court. You are the sole judges of the facts. It is your judgment, and your judgment alone, to determine what the facts are, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide whether the defendants are liable.  It is my job to instruct you about the law and about what the claims of the patent mean, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them.  This includes the instructions that I gave you before and during the trial, and these instructions.  All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly.  Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

### 1.3 BURDENS OF PROOF

This is a civil case in which the plaintiff, Telcordia, is charging the defendant, Cisco with patent infringement.  Telcordia alleges that Cisco has infringed the asserted claims of Telcordia's patents.  Telcordia has the burden of proving patent infringement by a preponderance of the evidence.  That means that Telcordia has to produce evidence which, when considered in light of all of the facts, leads you to believe that what Telcordia claims is more likely true than not.  To put it differently, if you were to put Telcordia's and the defendant's evidence relating to infringement on the opposite sides of a scale, the evidence supporting Telcordia's claims would have to make the scales tip somewhat on Telcordia's side.

Telcordia further urges that Cisco's infringement has been willful.  Telcordia has the burden of proving that the Defendant's infringement was willful by clear and convincing evidence.  Clear and convincing evidence is evidence that produces an abiding conviction that a factual contention is true.  Proof by clear and convincing evidence is thus a higher burden than proof by a preponderance of the evidence.

In this case, Cisco is urging that Telcordia's patents are invalid and unenforceable. A patent, however, is presumed to be valid and enforceable. Accordingly, Cisco has the burden of proving that Telcordia's patents are invalid or unenforceable by clear and convincing evidence.

Those of you who are familiar with criminal cases will have heard the term "proof beyond a reasonable doubt." That burden does not apply in a civil case and you should, therefore, put it out of your mind in considering whether or not the plaintiff or defendant has met its burden of proof.

### 1.4  EVIDENCE DEFINED

You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath, deposition transcript testimony that was read to you, the exhibits that I allowed into evidence, the stipulations that the lawyers agreed to, and the facts that I have judicially noticed. Certain charts, summaries, and graphics have been used to illustrate testimony from witnesses. These charts, summaries, and graphics are not themselves evidence, and are only as good as the underlying evidence supporting them. You should, therefore, give them only as much weight as you think the underlying evidence deserves.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. Their questions and objections are not evidence. My legal rulings are not evidence. Any of my comments and questions are not evidence.

During the trial I may have not let you hear the answers to some of the questions that the lawyers asked. I also may have ruled that you could not see some of the exhibits that the lawyers

wanted you to see. And sometimes I may have ordered you to disregard things that you saw or heard, or I struck things from the record. You must completely ignore all of these things. Do not even think about them. Do not speculate about what a witness might have said if he or she had been allowed to answer, or what an exhibit might have shown had I admitted it. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

Make your decision based only on the evidence, as I have defined it here, and nothing else.

### 1.5  CONSIDERATION OF EVIDENCE

You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

### 1.6  DIRECT AND CIRCUMSTANTIAL EVIDENCE

Now, some of you may have heard the terms "direct evidence" and "circumstantial evidence."

Direct evidence is simply evidence like the testimony of an eyewitness which, if you believe it, directly proves a fact. If a witness testified that he saw it raining outside, and you believed him, that would be direct evidence that it was raining.

Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

- 4 -

It is your job to decide how much weight to give the direct and circumstantial evidence. The law makes no distinction between the weight that you should give to either one, nor does it say that one is any better evidence than the other. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

### 1.7  CREDIBILITY OF WITNESSES

You are the sole judges of each witness's credibility. You should consider each witness's means of knowledge; strength of memory; opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witness's biases, prejudices, or interests; the witness's manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony.

If you find the testimony to be contradictory, you must try to reconcile it, if reasonably possible, so as to make one harmonious story of it all. But if you can't do this, then it is your duty and privilege to believe the testimony that, in your judgment, is most believable and disregard any testimony that, in your judgment, is not believable.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there is evidence tending to prove that the witness testified falsely about some important fact, or, whether there was evidence that at some other time the witness said or did something, or failed to say or do something that was different from the testimony he or she gave at trial. You have the right to distrust such witness's testimony in other particulars and you may reject all or some of the testimony of that witness or give it such credibility as you may think it deserves.

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth. People may tend to forget some things or remember other things inaccurately. If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

This instruction applies to all witnesses.

## 1.8  NUMBER OF WITNESSES

One more point about the witnesses. Sometimes jurors wonder if the number of witnesses who testified makes any difference.

Do not make any decisions based only on the number of witnesses who testified. What is more important is how believable the witnesses were, and how much weight you think their testimony deserves. Concentrate on that, not the numbers.

## 1.9  EXPERT WITNESSES

Expert testimony is testimony from a person who has a special skill or knowledge in some science, profession, or business. This skill or knowledge is not common to the average person but has been acquired by the expert through special study or experience.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness. Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case.

## 2. THE PARTIES' CONTENTIONS

### 2.1 THE PARTIES

The plaintiff is Telcordia Technologies, Inc. Telcordia asserts that it owns United States Patent Nos. 4,893,306, 4,835,763 and Re. 36,633. The defendant in this case is Cisco Systems, Inc. For convenience, I will refer to the plaintiff as Telcordia and the defendant as Cisco. As I noted at the start of the trial, I will refer to the asserted patents by their last three numbers: the '763 patent, the '633 patent, and '306 patent.

### 2.2 TELCORDIA'S CONTENTIONS

Telcordia contends that Cisco has infringed claims 1, 2, 7, and 8 of Telcordia's '763 patent, and claims 11 and 33 of Telcordia's '633 patent by making, using, selling and offering for sale telecommunications devices that fall within or perform methods falling within the scope of one or more of those claims, and by inducing and contributing to infringement by others.

Telcordia contends that Cisco's infringement of the '763 and '633 patents is willful.

Telcordia contends that it has been damaged by Cisco's infringement of the '763 and '633 patents, and that Telcordia is thus entitled to, among other things, an award of a reasonable royalty, as provided by statute.

Telcordia contends that none of the asserted claims of the '763 or the asserted claims of the '633 patent is invalid or unenforceable for any of the reasons alleged by Cisco, or that Cisco's own unclean hands bars Cisco from proving its defenses.

Telcordia contends that Cisco's defenses of equitable estoppel, laches, intervening rights, and unclean hands are not supported by the facts and should be rejected.

There is also another patent at issue in this suit, Telcordia's U.S. Patent No. 4,893,306. Although infringement of that patent is not an issue for your consideration, the validity and enforceability of that patent are issues for your consideration. Telcordia contends that none of claims 1, 3, or 4 of the '306 patent are invalid or unenforceable for any of the reasons alleged by Cisco.

### 2.3  CISCO'S CONTENTIONS

Defendant Cisco contends that it does not infringe any of the asserted claims of the '633 or '763 patents because Telcordia has not proven that it is more likely than not that accused Cisco products meet every limitation of the claims of the '633 patent. Cisco further contends that Telcordia has not proven that it is more likely than not that accused Cisco product meets every limitation of the claims of the '763 patent. Cisco further contends that it has not willfully infringed any claim of the '633 and '763 patents, and that Telcordia cannot prove by clear and convincing evidence that it has.

Defendant Cisco further contends that the three Telcordia patents are invalid and unenforceable. Specifically, Defendant contends that the '306 patent is invalid for failure to satisfy the best mode requirement for patents, is not new and/or is obvious in view of the prior art. Defendant also contends that the '633 patent is invalid because it names improper inventors, is not new and/or is obvious in view of the prior art. Defendant also contends that the '763 patent is not new and/or is obvious in view of the prior art, is invalid for failure to satisfy the best mode requirement for patents, and is invalid for failure to satisfy the definiteness requirement for patents. Defendant further contends that the '306, '633 and '763 patents are unenforceable due to inequitable conduct.

- 8 -

Beyond these contentions, Cisco contends that the '633 patent is unenforceable due to equitable estoppel, laches and/or unclean hands, and that Cisco's conduct with respect to the accused products is protected by the doctrine of intervening rights. Cisco further contends that Telcordia's claims for damages are barred under the doctrine of laches.

### 2.4 SUMMARY OF PATENT ISSUES

The following is a summary of the patent issues that you are asked to decide:

1.       Whether Telcordia has proven by a preponderance of the evidence that Cisco's manufacture, use, sale and/or offer for sale of the accused products, or the methods practiced by the products, infringe any of the asserted claims of Telcordia's '633 patent.

2.       Whether Telcordia has proven by a preponderance of the evidence that Cisco's manufacture, use, sale and/or offer for sale of the accused products, or the methods practiced by the products, infringe any of the asserted claims of Telcordia's '763 patent.

3.       If you find that Cisco has infringed any of the asserted claims of Telcordia's '763 or '633 patent, whether Telcordia has established by clear and convincing evidence that Cisco's infringement was willful.

4.       If you find that Cisco has infringed any of the asserted claims of Telcordia's '763 or '633 patents, what amount of damages Telcordia has proven by a preponderance of the evidence is due to the infringement.

5.       Whether Cisco has proven by clear and convincing evidence that the '306 patent claims are invalid due to anticipation, obviousness, and/or failure to satisfy the best mode requirement.

6.      Whether Cisco has proven by clear and convincing evidence that the '633 patent claims are invalid due to improper inventorship, anticipation, and/or obviousness.

7.      Whether Cisco has proven by clear and convincing evidence that the '763 patent claims are invalid due to anticipation, obviousness and/or indefiniteness.

8.      Whether Cisco has proven by clear and convincing evidence that the '306, '633 and/or '763 patent claims are unenforceable due to inequitable conduct.

9.      Whether Cisco has proven by clear and convincing evidence that the '633 patent claims are unenforceable due to equitable estoppel, and/or unclean hands.

10.      Whether Cisco has proven that its activities with respect to the products accused of infringing the '633 patent are protected by the doctrine of intervening rights.

11.      If Cisco is found to have infringed any valid claim of the '633 or '763 patents, whether any part of Telcordia's request for damages is barred by the doctrine of laches.

12.      If Cisco is found to have infringed any valid claim of the '633 or '763 patents, whether any part of Telcordia's request for damages is limited to damages occurring after Telcordia provided Defendants notice of the patents, or not limited if you find Telcordia satisfied the marking statute.

### 3. INFRINGEMENT

### 3.1 CLAIM INFRINGEMENT

Before you can decide whether Cisco has infringed Telcordia's '763 and '633 patents, you will have to understand the patent "claims." Patent claims define, in words, the boundaries of what Telcordia claims as its invention. The patent claims are the numbered paragraphs at the end of the patent. The patent claims at issue here are claims 1, 2, 7, and 8 of the '763 patent,

beginning at column 4, line 53 of the patent, and claims 11 and 33 of the '633 patent, beginning at column 11, line 43 of the patent. Only the claims of a patent can be infringed. Neither the specification, which is the written description of the invention, nor the drawings of a patent can be infringed. The specification and drawings merely describe certain embodiments of the invention. Limitations of those embodiments may not be incorporated into the claims. Each of the claims must be considered individually, and to show infringement of a patent, Telcordia need only establish that one claim of the patent has been infringed.

## 3.2  CONSTRUCTION OF CLAIMS

You have a copy of each patent in your juror book. The claims of each patent at issue are 1, 2, 7 and 8 of the '763, 11 and 33 of the '633, and 1, 3 and 4 of the '306.

I will provide you with a list of claim terms from each patent and the meaning of the terms the Court construed in Appendix A. As used in these claims, the definitions for certain terms as I construed them must be applied.

## 3.3  PATENT INFRINGEMENT—GENERALLY

A patent confers on its owner the right to exclude others from importing, making, using, selling or offering to sell the patented invention in the United States during the term of its patent. The patent owner may do so by filing a lawsuit for patent infringement. Here, Telcordia, the patent owner, has sued Cisco, and has alleged that certain of Cisco's product infringe claims 1, 2, 7, and 8 of Telcordia's '763 patent, and claims 11 and 33 of Telcordia's '633 patent.

Any person or business entity which imports, makes, uses, sells or offers to sell, without the patent owner's permission, any product, apparatus or method legally protected by at least one claim of a patent within the United States before the patent expires, infringes the patent. You

- 11 -

must decide, for the defendant, whether Telcordia has proven by a preponderance of the evidence that the defendant's products or methods infringe any of the asserted claims of the '763 or '633 patents.

### 3.4  DIRECT INFRINGEMENT

Cisco is liable for directly infringing Telcordia's '763 or '633 patents if you find that Telcordia has proven by a preponderance of the evidence that Cisco has made, used, sold, or offered to sell the invention defined in one or more asserted claims of Telcordia's '763 patent or '633 patents.

A person may directly infringe a patent without knowledge that what he is doing is an infringement of the patent. He may directly infringe even though in good faith he believes that what he is doing is not an infringement. However, good faith may be relevant to whether Cisco may be liable for indirect infringement, or for willful infringement, which I will instruct you on shortly.

### 3.4.1.  INDIRECT INFRINGEMENT

Telcordia asserts that Cisco indirectly infringes Telcordia's '763 and '633 patents. There are two kinds of indirect infringement – 1) inducement to infringe; and 2) contributory infringement. Both types of indirect infringement require that Telcordia prove that someone other than Cisco directly infringes the patent claim by making, using, selling, offering for sale or importing a Cisco product in a way that includes all of the requirements of the asserted claims. Cisco can be liable for indirect infringement only where its sale of a product results in a direct infringement. Therefore, Cisco can only be liable for acts of indirect infringement stemming from specific instances of direct infringement.

### 3.5  INDUCING PATENT INFRINGEMENT

To be liable for inducement to infringe, the accused inducer must have known of the patent and actively encouraged or instructed another person how to use a product or perform a method in a manner that you find infringes the asserted patent claims.

Thus, to prove that Cisco induced infringement of the '633 or '763 patents, Telcordia must prove by a preponderance of the evidence each of the following four things with respect to that patent and that Defendant:

1.     Cisco had knowledge of the patent;

2.     Cisco actively encouraged or instructed another person how to use a product or perform a method in a way you, the jury, finds infringes the patent claims;

3.     Cisco had an affirmative intent to cause the acts that constitute direct infringement and must have known or should have known that its action would cause direct infringement; and

4.     The induced person directly infringed a claim of the patent.

All four of these things must be proven by either direct or circumstantial evidence before you may find that Cisco induced patent infringement.

Whoever without authority supplies or causes to be supplied in or from the United States all or a substantial portion of the components of a patented invention, where such components are uncombined in whole or in part, in such manner as to actively induce the combination of such components outside of the United States in a manner that would infringe the patent if such combination occurred within the United States, shall be liable as an infringer.

### 3.6  CONTRIBUTORY INFRINGEMENT

Cisco may also be infringing if they contribute to the infringement of others.  Elements of contributory infringement are:

(1)     sale or supply by Cisco;

(2)     of a material component of the patented invention, or a material component for use in practicing a patented process, that is not a staple article of commerce capable of substantial noninfringing use;

(3)     with knowledge of the patent and with knowledge that the component was especially made or adapted for use in infringement of such invention.

A "staple" article is a commodity or product with substantial uses apart from a patented invention.  In determining whether the component supplied by Cisco is a "staple article of commerce," you should take into account the quality, quantity, and efficiency of Cisco's suggested uses for its products.

Cisco can be liable for contributory infringement if a patent claim is directly infringed by one of its customers.  Proof of contributory infringement and the underlying direct infringement may be based on circumstantial evidence you have heard in this case, rather than direct evidence of infringement.

Whoever without authority supplies or causes to be supplied in or from the United States any component of a patented invention that is especially made or especially adapted for use in the invention and not a staple article or commodity of commerce suitable for substantial noninfringing use, where such component is uncombined in whole or in part, knowing that such component is so made or adapted and intending that such component will be combined outside of

- 14 -

the United States in a manner that would infringe the patent if such combination occurred within

the United States, shall be liable as an infringer.

### 3.7 LITERAL INFRINGEMENT

A patent claim is literally infringed if the defendant's product or method includes each and every component, or limitation, of that claim. If Cisco's products or methods include each and every limitation of any claim of the '763 or '633 patents, then you must find that Cisco infringes that claim. You must conduct this comparison for each asserted claim of each patent-in-suit. Infringement may not be avoided simply by adding features or components or method steps not required by the claims. If Cisco's products or methods do not meet each of the limitations of any asserted claim of the '763 or '633 patents, then there is no literal infringement. You must determine literal infringement with respect to each patent claim, and each product and method, individually.

### 3.8 DOCTRINE OF EQUIVALENTS

As shown in Appendix A of these instructions, the Court has ruled that certain claim elements are "means-plus-function" limitations. Telcordia alleges that the "doctrine of equivalents" applies to these claim limitations only. Accordingly, you may find that Cisco's products infringe a claim, even if not all of the means-plus-function elements of the claim are literally present in Cisco's products. Patent claims must be clear enough so that the public has fair notice of what was patented. Notice permits other parties to avoid actions which infringe the patent and to design around the patent. On the other hand, the patent owner should not be deprived of the benefits of his patent by competitors who appropriate the essence of an invention while avoiding the literal language of the patent claims.

- 15 -

The test to determine equivalence under the doctrine of equivalents is whether Cisco's products and components involve no substantial differences from the inventions claimed in Telcordia's patents. One way to determine if the differences are substantial is to determine whether each component of Cisco's products perform substantially the same function in substantially the same way to produce substantially the same result as the corresponding component claimed in Telcordia's patents.

It is not a requirement under doctrine of equivalents infringement that those of ordinary skill in the art knew of the equivalent when the patent application was filed or when the patent issued. The question of whether Cisco's products and components are equivalent to that defined in Telcordia's claims is to be determined as of the time of the alleged infringement.

### 3.9 MEANS-PLUS-FUNCTION CLAIMS

Claims 1, 2, and 7 of the '763 patent and claim 11 of the '633 patent define a component of the invention as a means for performing a certain function.

A means-plus-function element is a claim element that claims a means for performing a specified function. For example, a table could be claimed in a patent as being a tabletop, legs, and means for attaching the legs to the tabletop. The means-plus-function element would cover structures described in the specification that perform the required function of "attaching the legs to the tabletop" and all equivalents.

I will now explain the three special rules that apply to this type of claim language. First, the accused device must perform the specified function. Specifically, for claims 1, 2, and 7 of the '763 patent and claim 11 of the '633 patent, you must first determine whether Cisco's

accused products perform the functions of those claims. If not, the claim containing that means-plus-function element is not infringed.

Second, if Cisco's accused product does perform the required function, you must identify the structure in that Cisco's accused product that actually performs this function.

Finally, you must determine whether that accused structure is the same as or equivalent to the structure identified in the patent for performing the required function that I described to you earlier. If the structure of the accused device is the same as, or equivalent to, the structure in the patent that I have described, then the means-plus-function element of the claim is present.

Two structures are equivalent if a person of ordinary skill in the art would consider the differences between them to be insubstantial. One way to determine this is to look at whether or not the accused structure performs the identical function in substantially the same way to achieve substantially the same result. Another way is to consider whether or not people of ordinary skill in the art would have believed that the structure of the accused product and the structure in the patent were interchangeable as of the date the patent issued.

### 3.10 INFRINGEMENT DESPITE DEFENDANT'S IMPROVEMENTS OR PATENTS ON IMPROVEMENTS

You may find that Cisco's accused products represent an improvement over the invention defined in Telcordia's patent claims. You may have even seen and heard evidence that Cisco obtained patents on its products or methods. However, you are not to presume that this means that Cisco cannot infringe Telcordia's patent claims. As long as Cisco's accused products or methods include all of the elements of at least one of Telcordia's patent claims, or if Cisco's accused products or methods are found to be equivalent under the doctrine of equivalents, then

- 17 -

Telcordia's patent claims are infringed by Cisco's products despite any improvements made or patents obtained by Cisco.

### 3.11  WILLFUL INFRINGEMENT

Telcordia asserts that Cisco has willfully infringed Telcordia's '763 and '633 patents. If you find that Cisco's products infringe at least one of Telcordia's '763 or '633 patent claims, you must further decide whether or not Telcordia has proven by clear and convincing evidence that Cisco's infringement was willful.

Willful infringement is established where Telcordia has proven 1) that the defendant was aware of the '763 and/or '633 patent, and 2) that the defendant had no reasonable good faith basis for concluding that, at the time the defendant began its infringement, it did not infringe Telcordia's patent and/or that the patent was not valid or enforceable. In determining whether Cisco willfully infringed Telcordia's patents, you must consider the totality of the circumstances. The law requires that a potential infringer having actual notice of another's patent has an affirmative duty to use due care. The determination of willingness is made in consideration of the totality of the circumstances and may include contribution of several factors. These factors include:

(1)     Whether the infringer deliberately copied the ideas or design of another;

(2)     Whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed;

(3)     The infringer's behavior as a party to the litigation;

(4)     Defendant's size;

(5)    Closeness of the case;

(6)    Duration of defendant's misconduct;

(7)    Remedial action by the defendant;

(8)    Defendant's motivation for harm; and

(9)    Whether defendant attempted to conceal its misconduct.

## 4. <u>VALIDITY DEFENSES</u>

### 4.1 DEFINITENESS UNDER 35 U.S.C. § 112

The claims of a patent must be sufficiently definite that one skilled in the art can determine the limits of the claimed invention. Put differently, the claims of patent must be "definite" enough for a person of skill in the art to know what the patent covers.

As I mentioned previously, when the patentee employs means-plus-function language in a claim, the patentee must describe in the specification of the patent the structures that correspond to the claimed function. If a patentee does not adequately disclose those structures, the applicant has in effect failed to provide a definite statement of his claims that would allow a person of skill in the art to know what those claims cover.

Here, Cisco contend that asserted claims 1, 2, 7 and 8 of the '763 patent are indefinite because the patent does not provide sufficient information for a person of ordinary skill to know what the patent covers. Specifically, Cisco contends that the patent does not disclose structure that corresponds to the "monitoring means" identified in the claims. In deciding this issue, you must determine whether the specification as a whole describes structure capable of performing the function of the "monitoring means." A structure disclosed in the specification only qualifies as "corresponding" structure if the specification or prosecution history clearly links or associates

that structure to the function recited in the claim.  It is not proper to look to the knowledge of one skilled in the art apart from and unconnected to the disclosure of the patent.

Thus, you must decide whether the '763 patent describes a structure for the "monitoring means" and whether it links that structure to the function of the "monitoring means."  If it does not meet either of this requirements, the claims of the '763 patent are indefinite.

### 4.2  BEST MODE

The patent laws require that a patent must describe the best mode of carrying out the invention contemplated by the inventor at the time that the patent application was filed.  The purpose of this requirement is to ensure that the public obtains a full disclosure of what the inventor believes is the best way of carrying out their invention.

Cisco must prove, by clear and convincing evidence, that as of the filing dates of Telcordia's patents, the inventor 1) knew of, and 2) did not disclose a better mode of carrying out the invention.  I will address these two requirements.

First, at the time the patent application was filed, did the inventors know of a mode of practicing the claimed invention that they considered to be better than any other?  This is a subjective inquiry. It is insufficient to show that a better way of practicing the invention existed or that another person may have perceived another mode to be better; the focus is on the inventor's understanding of the best mode of carrying out the invention.   This knowledge must be the inventor's.  You may not impute knowledge by others at Telcordia to the inventor.  In other words, whether others may have known of a better way to practice the claimed invention is irrelevant to this first question.

- 20 -

Second, if the inventors did have a best mode for practicing their invention on those dates, did the inventors adequately disclose their best mode(s) in the patent specification? This is an objective inquiry. To do so, you must compare what the inventor knew with what is disclosed in Telcordia's patents to determine whether that disclosure is adequate to permit one skilled in the art to practice the best mode. This in turn depends on the scope of the claimed invention and the level of skill in the art. The best mode requirement does not require an inventor to disclose production details. If the patent disclosure, combined with the knowledge of those skilled in the art, is adequate to permit those skilled in the art to practice the best mode, then there is no best mode violation. The accidental failure to disclose the best mode does not cure a best mode violation. The inventors' intent is not relevant to your decision on best mode.

Finally, the best mode inquiry is directed to what the inventor regards as his invention, which is measured by the claims. Unclaimed subject matter is not subject to the best mode requirement. Each claim must be considered individually.

### 4.3 ANTICIPATION

Cisco contends that the invention defined in the claims of Telcordia's patents is not new or novel. Something that shows that a patent claim is not novel is said to anticipate that claim. Several different types of events may anticipate and invalidate a patent claim. Here, Cisco contends that the claims are anticipated by different articles or patents which, if they meet certain requirements, may be "prior art." I will explain the requirements as to each shortly.

In order to prove invalidity of the invention claimed in Telcordia's patents for anticipation, Cisco must prove by clear and convincing evidence for each claim that each and every limitation of the claimed invention is found in a single piece of prior art. Absence from the

single piece of prior art of even a single claim limitation negates anticipation. Stated another way, Cisco may not rely on any evidence beyond the piece of prior art itself, such as testimony by the prior art reference's author, to supplement or fill gaps in the teachings of the prior art.

To meet its burden, Cisco must prove by clear and convincing evidence that:

1)      the material upon which it relies is "prior art" under the law;

2)      if the material is prior art, that the prior art contains each and every limitation of the claimed invention; and

3)      the prior art contains enough information to enable one skilled in the art to make and use the claimed invention.

If you find that Cisco has failed to meet its burden with respect to any of these elements, then you must find that the claims are not invalid for anticipation.

A piece of prior art anticipates a patent claim if it discloses, either expressly or inherently, all of the limitations of the claim. There is no anticipation unless every one of the limitations of the claimed invention is found in a single piece of prior art. If the piece of prior art is silent about a limitation of a claim, it may still anticipate that claim if that limitation is inherently present in that piece of prior art. To prove that a limitation is inherent in a piece of prior art, Cisco must show by clear and convincing evidence that the missing matter is necessarily present in the piece of prior art and that it would be recognized by persons skilled in the art. Inherency may not be established by probabilities or possibilities. Thus, the allegedly inherent property must always be present. The mere fact that a certain thing may result from a given set of circumstances is not enough.

Prior art that is publicly known is information in the general body of knowledge in the public domain, such as articles or other patents before the invention was made. It is not

necessary that the prior art have been available to every member of the public. It must have been available, without restriction, to that segment of the public most likely to make use of the prior art contents. Information that is communicated from someone other than the named inventors to the named inventors from which the named inventors derived the claimed invention qualifies as prior art, whether or not it is public. Such information could include private communications (oral or written). This is because that information obtained by the named inventors from someone else is inherently "prior," whether the information is public or not.

You must keep these requirements in mind and apply them to each kind of alleged anticipatory prior art offered by Cisco. There are additional requirements that apply to each kind of anticipation that Cisco contends apply here, and I will discuss those further.

Accordingly, the claims of the '763 patent are anticipated if each and every element of the claimed invention was disclosed in a single prior art reference before February 4, 1988; the claims of the '633 patent are anticipated if each and every element of the claimed invention was disclosed in a single prior art reference before October 30, 1992; and the claims of the '306 patent are anticipated if each and every element of the claimed invention was disclosed in a single prior art reference before November 10, 1987.

### 4.4  WHAT IS PRIOR ART

As previously discussed, for Cisco to prevail on an anticipation defense as to any asserted claim, Cisco must prove by clear and convincing evidence not only that the material relied upon contains each and every limitation of the claims of Telcordia's patents, but also that the material relied upon is legally available as prior art. Because Cisco relies on different types of alleged prior art, I will discuss what is required for various categories of material to be legally available

as prior art. If you determine that any of the material or events on which Cisco relies is not prior art, then you must disregard that material or event, because it can have no effect on the validity of the patent.

### 4.4.1 PRINTED PUBLICATIONS AS PRIOR ART

Cisco contends that claims 1, 3, and 4 of Telcordia's '306 patent, 1, 2, 7, and 8 of Telcordia's '763 patent and claims 11 and 33 of Telcordia's '633 patent were anticipated because the inventions defined by those claims were described in a printed publication. Cisco must prove this by clear and convincing evidence.

A printed publication may be prior art if it was sufficiently accessible to interested members of the public either more than one year before the filing date of the patent in suit (or the filing date of the parent application in the case of a reissued patent), or before the inventor made the invention. Books, periodicals, or newspapers of general circulation or patents are common examples of printed publications. On the other extreme, information that can only be located in a person's private files or a company's private files is not a printed publication. Documents disseminated to a degree between these extremes may constitute printed publications under certain circumstances. Documents maintained in a library, for example, may constitute printed publications if the public could, by reference to a subject matter index, locate and access the document without restriction.

The existence of lack of confidentiality restrictions on the document is one factor to consider in determining whether the document was sufficiently accessible. The mere lack of a confidentiality label, however, does not compel the conclusion that the document constitutes a printed publication. Rather, there still must be clear and convincing evidence of actual

dissemination.

Even if a reference meets the conditions I just discussed, it still will not qualify as invalidating prior art unless it meets the so-called "enablement" requirement. Enablement requires that the disclosure of the reference be sufficiently detailed to enable one skilled in the art to practice the reference's teachings without undue experimentation. This requirement ensures that the subject matter of the reference was truly put into the possession of the public, thereby operating as a surrender of patent rights to that same subject matter. If a reference does not enable one skilled in the art to practice the reference's teachings without undue experimentation, then it cannot be used to invalidate a patent claim. Shortly, I will list various factors to consider when evaluating the issue of undue experimentation.

### 4.4.2 REFERENCES DESCRIBING THE INVENTOR'S WORK

References describing the inventor's own work published less than one year before the application filing date are not prior art that will render the invention anticipated or obvious. It does not matter whether the article was authored by the inventor or someone else. So long as the article describes the inventor's own work, it cannot be used as prior art to invalidate the claimed invention. However, if prior art references authored by individuals other than the named inventors are not shown to reflect the work of the inventors, these references may be prior art so long as they were published before the filing of the application that led to the patent. A reference is authored by individuals other than the inventors even if the authorship differs only by one person. In determining whether references authored by individuals other than the inventors reflect the work of the authors, you should consider the content and nature of the reference, as well as the circumstances surrounding its publication.

### 4.5 OBVIOUSNESS

Even though an invention claimed in Telcordia's patents is not anticipated by the prior art, the claimed invention may nevertheless be invalid if it would have been obvious to one of skill in the art at the time the invention was made.

In order to prove that the invention claimed in the claims of Telcordia's patents is invalid for obviousness, Cisco must prove by clear and convincing evidence for each claim that the differences between the subject matter of the claimed inventions and the prior art are such that the subject matter of the claim taken as a whole would have been obvious at the time the invention was made to a person of ordinary skill in the relevant art.

In order to be patentable, an invention must not be obvious to a person of ordinary skill in the art at the time the invention was made. The issue is not whether the claimed invention would be obvious to you as a layman, to me as a judge, or to a genius in the art, but whether it would have been obvious to one of ordinary skill in the art at the time it was made.

In determining whether or not Cisco has established obviousness by clear and convincing evidence, you must consider the following factors:

1.      The scope and content of the prior art relied upon by Cisco;

2.      The differences between each claim of Telcordia's patents and the prior art;

3.      The level of ordinary skill in the pertinent art at the time the invention of Telcordia's patents was made; and

4.      Any objective indicia of non-obviousness.

I will now explain each of these factors.

### 4.5.1 SCOPE AND CONTENT OF THE PRIOR ART

As I just instructed you, in arriving at your decision on the issue of whether or not the claimed invention is obvious to one of ordinary skill in the art, you must first determine the scope and content of the prior art. This means that you must determine what prior art is reasonably pertinent to the particular problem with which the inventor was faced. Prior art is reasonably pertinent if, although in a different field from that of the inventor's endeavor, it is one which, because of the matter with which it deals, logically would have presented itself as worthy of an inventor's attention in considering his problem. Scope and content of the prior art includes references from those areas a person with ordinary skill in the art would look at in solving a particular problem. The prior art includes the following:

1.     Prior patents that issued before the dates of invention or more than one year before the filing dates of the patents in suit (or more than one year prior to the filing date of the parent application in the case of a reissued patent);

2.     Prior publications having a publication date before the dates of invention or more than one year before the filing dates of the patents in suit (or more than one year prior to the filing date of the parent application in the case of a reissued patent);

3.     U.S. Patents that have a filing date prior to the date of invention of the patents in suit;

4.     Anything that was publicly known or publicly used by others in this country before the date of invention of the patent in suit; and

5.     Anything that, although not publicly known at the time of the invention, existed before the claimed invention, but was not invented by any of the inventors of the patents-in-suit, was known to the inventor(s) prior to invention, and from which

- 27 -

the named inventors derived the claimed invention.

As you did in considering Cisco's anticipation contentions, you must first determine whether the material or events relied on by Cisco are "prior art." If these materials or events are the same as those relied on by Cisco in alleging anticipation, your determination should be the same here. Thus, if you previously found that something did not qualify as "prior art" for anticipation purposes, it is likewise not prior art for the obviousness determination.

You must then consider what the qualifying prior art would have taught to one skilled in the art at the time of the invention.

### 4.5.2 DIFFERENCES OVER THE PRIOR ART

The next factor that you must consider is the differences, if any, between the prior art and the claimed invention. Although it is proper for you to note any differences between the claimed invention and the prior art, it is improper to consider the invention as only the differences because the test is whether the claimed invention as a whole would have been obvious over all of the prior art. Each claim must be considered in its entirety.

### 4.5.3 LEVEL OF ORDINARY SKILL

Next, you are to determine the level of ordinary skill in the art to which the claimed invention pertains at the time the claimed invention was made. The issue of obviousness is determined entirely with reference to a hypothetical person having ordinary skill in the art. It is only that hypothetical person who is presumed to be aware of all the pertinent prior art. The actual inventor's skill is irrelevant to the inquiry. A person of ordinary skill in the art is also presumed to be one who thinks along the line of conventional wisdom in the art and is not one who undertakes to innovate. Factors to be considered in determining the level of ordinary skill in

the pertinent art include the educational level of the inventor, the types of problems encountered in the art, the prior art patents and publications, the activities of others and prior art solutions to the problems encountered by the inventor, the sophistication of the technology and the education of others working in the field.

### 4.5.4 OBJECTIVE CRITERIA CONCERNING OBVIOUSNESS (SECONDARY CONSIDERATIONS)

In deciding whether a claimed invention is obvious, you must consider the following objective evidence which may show that the claims at issue are not obvious:

1.    Commercial success of products covered by Telcordia's '306, '763, or '633 patents. Evidence concerning commercial success may take the form of sales figures coupled with market share data, or sales figures alone. The commercial success may be shown through the sales of anyone practicing the claimed inventions, including Cisco.

2.    A long felt need in the art which was satisfied by the inventions of the patents in suit;

3.    The failure of others to make the invention;

4.    Unexpected results achieved by the invention;

5.    Praise of the invention by those in the field;

6.    The taking of licenses under the patent by others;

7.    Skepticism or expressions of disbelief;

There must be a connection between the evidence showing any of these factors and the claimed invention.

### 4.5.5 OBVIOUSNESS – HINDSIGHT

- 29 -

In evaluating whether an invention is obvious in light of prior art, you may not use hindsight to combine references to piece together the invention. However, when there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions, a person of ordinary skill in the art has good reason to pursue the known options within his or her technical grasp. If you find the available prior art shows each of the elements of the claims in suit, you must determine whether it would then have been obvious to a person of ordinary skill in the art to combine or coordinate these elements in the same manner as the claims in suit.

### 4.5.6 TEACHING AWAY OF PRIOR ART

If the patentee proceeds contrary to accepted wisdom of prior art, this is evidence of non-obviousness.

### 4.6 INVENTORSHIP

Cisco alleges that the '633 patent fails to meet the requirement to name all actual inventors and only the actual inventors. This is known as the "inventorship" requirement. ~~In order to meet their clear and convincing burden of proof, Cisco must present corroborating evidence of a contemporaneous disclosure that would enable one skilled in the field to make~~ the ~~invention claimed in the '633 patent.~~

To be an inventor, one must make a significant contribution to the conception (the mental part of an inventive act) of one or more claims in the patent. Whether the contribution is significant is measured against the dimension of the full invention. Explaining to the actual inventors well-known concepts or the current state of the art does not make someone an inventor. Persons may be inventors even if they do not make the same type or amount of contribution, or

do not contribute to the subject matter of each claim of the patent. However, merely helping with experimentation by carrying out the inventor's instructions does not make someone an inventor. Persons may be joint or co-inventors even though they do not physically work together, but they must have some open line of communication at the time of their inventive effort.

### 4.7 CONCEPTION

Conception is the mental part of an inventive act, *i.e.*, the formation in the mind of the inventor of a definite and permanent idea of the complete and operative invention as it is thereafter to be applied in practice. Conception of an invention is complete when the idea is so clearly defined in then inventor's mind that a person of ordinary skill in the field of the technology would be able to reduce the invention to practice without extensive research or experimentation. Conception may be proven when the invention is shown in its complete form by drawings, disclosure to another person, or other forms of evidence presented at trial.

In this case, Telcordia agrees that the corroborated conception date for all the elements of claims 11 and 33 of the '633 patent is November 4, 1991 and contends that it was in possession of certain inventive aspects of SRTS before August 26, 1991.

An inventor contending that any aspect of his or her patent was invented prior to the filing of the patent, he or she must corroborate his or her testimony with independent evidence which is evaluated under a rule of reason considering all the evidence. Corroborating evidence is evidence independent of the oral testimony of that witness that confirms his or her testimony.

### 5. <u>EQUITABLE DEFENSES</u>

### 5.1 LACHES

- 31 -

Cisco allege that Telcordia's patent infringement claims are barred by laches. To prove that Telcordia's patent infringement claims are barred by laches, for each accused product Cisco must prove by a preponderance of the evidence that Telcordia 1) unreasonably and inexcusably delayed in asserting its patent infringement claim; 2) that the defendant was prejudiced or injured as a result of the belated claim.

The period of delay for laches is measured from the time the patent owner knew or reasonably should have known of the activities of the accused infringer to the date of the filing of the lawsuit. The length of time during which it may be reasonable to file suit has no fixed boundaries, but rather depends on the circumstances. You should consider whether the plaintiff has offered any justification for the delay. Such circumstances include other litigation. To operate as an excusable delay, Cisco must have had adequate notice of the proceeding. Other circumstances that may excuse delay include negotiations between the parties. In considering the circumstances, you should also consider whether the infringer has engaged in egregious conduct, such as deliberate copying or willful infringement.

If you find that Telcordia delayed filing this lawsuit for more than six years, then you must presume that all the elements of laches have been proved in this case unless you also find that the evidence introduced in this case proves that the delay in filing suit was reasonable or justified, or that Cisco suffered no prejudice as a result of Telcordia's delay. Cisco does not contend that there was a delay with filing suit on the '763 patent of more than six years and thus no presumption of laches would apply to the '763 patent.

Material prejudice to a party is typically either economic or evidentiary. Cisco must offer specific evidence of prejudice; mere conclusory statements or allegations are not enough. Evidentiary prejudice may arise from loss of records, death or disappearance of witnesses, or the

unreliability of memories of long past events. Economic prejudice may result where the accused infringer will suffer the loss of monetary investments or incur damages that likely would have been prevented by an earlier suit. However, it is not prejudice simply that the alleged infringer will have to pay damages if it loses the lawsuit. The proper question is whether there has been a change in the economic position of the alleged infringer during the period of delay. That change must have been caused by and be a result of the delay, not merely a business decision to capitalize on a market opportunity.

Laches does not preclude a finding of infringement. Furthermore, a finding of laches does not preclude Telcordia from recovering damages resulting from the defendants' infringement occurring after Telcordia files its patent infringement lawsuit. Laches is also patent specific. Finally, laches is product-specific, meaning you can find that laches does not apply to bar damages as to some products even if you find that it does apply to other products.

## 5.2 EQUITABLE ESTOPPEL

Cisco alleges that Telcordia's patent infringement claims are barred by equitable estoppel. Specifically, Cisco alleges that Telcordia's misleading conduct in national and international standards setting organizations led Cisco to reasonably infer that Telcordia would not enforce the '978 and/or '633 patents against Cisco.

To establish estoppel, Cisco must prove by a preponderance of the evidence three things. First, it must prove that Telcordia, through misleading conduct, led the Cisco to reasonably infer that Telcordia did not intend to enforce its patent against Cisco. Silence alone will not give rise to an estoppel, unless Telcordia was under a duty to speak and unless Telcordia's continued silence reinforced Cisco's inference that Telcordia would not enforce its rights. Reasonable and

excusable delay does not give rise to an estoppel. Second, Cisco must prove that it reasonably relied on that conduct. Cisco must prove this reliance by specific evidence. Third, Cisco must prove that, as a result of its reliance, it will be materially prejudiced if Telcordia is allowed to proceed with its claim. As with laches, prejudice may be economic or evidentiary. The same principles apply. Damages attributable to a finding of liability do not constitute economic prejudice supporting an estoppel theory. Evidentiary prejudice may arise from loss of records, death or disappearance of witnesses, or the unreliability of memories of long past events. Economic prejudice may result where the accused infringer will suffer the loss of monetary investments or incur damages that likely would have been prevented by an earlier suit. However, it is not prejudice simply that the alleged infringer will have to pay damages if it loses the lawsuit. The proper question is whether there has been a change in the economic position of the alleged infringer during the period of delay. That change must have been caused by and be a result of the delay, not merely a business decision to capitalize on a market opportunity. Conclusory statements are not sufficient to show prejudice.

### 5.3  UNCLEAN HANDS

Cisco alleges that Telcordia's patent infringement claims are barred by the doctrine of unclean hands. To show that Telcordia has unclean hands, Cisco must show by clear and convincing evidence that Telcordia engaged in fraud, perjury, or other unconscionable conduct when obtaining its '306, '763, or '633 patents or enforcing the '306, '763, or '633 patents against Cisco. Unclean hands requires an "unconscionable act" that has an "immediate and necessary relationship" to the claims of patent infringement asserted against Cisco.

While unclean hands can reach other egregious forms of conduct, a patentee does not have unclean hands merely by asserting that someone has infringed its patent or by suing a competitor it believes is infringing its patent. Even if the patentee is mistaken in its belief of infringement, the patentee does not have unclean hands by seeking to enforce what it thinks are its patent rights in court.

Finally, Cisco cannot rely on unclean hands as a defense, or any other equitable defense, if Cisco itself has unclean hands, including any unconscionable conduct related toward the patents in suit. One example of such unclean hands by Cisco would be willful infringement.

## 5.4 INTERVENING RIGHTS

For the '633 patent only, Cisco alleges that Telcordia's patent infringement claims are barred by the doctrine of intervening rights. Because the '633 patent is a reissue patent that includes claims that are broader in scope than its parent '978 patent (including the asserted claims in this case), Telcordia cannot recover patent infringement damages for any physical product that was manufactured prior to the issuance of the '633 patent. Telcordia does not seek damages for '633 patent infringement prior to the issue date of the '633 patent, so this form of intervening rights is not at issue.

Intervening rights may also apply to products that were made or sold by Cisco after the '633 patent issued, but only if Cisco establishes by a preponderance of the evidence that (1) before the issuance of the '633 patent, Cisco made substantial preparations to make, purchase, offer for sale, or use the products, including, for example, substantial investment in the development of the products, and (2) Cisco has not recouped its investment.

## 5.5  INEQUITABLE CONDUCT – GENERALLY

- 35 -

Cisco alleges that Telcordia's patents are unenforceable due to inequitable conduct. Cisco contends that Telcordia may not enforce the '306, '763 and '633 patents against them because Telcordia engaged in inequitable conduct before the Patent and Trademark Office during prosecution of the '306, '763 and '633 patents. "Inequitable conduct" refers to the intentional failure to meet this duty of candor and good faith. To prove inequitable conduct occurred, Cisco must prove that it is highly probable that the patent applicant, or the applicant's attorney or representative, intentionally withheld or misrepresented information with an intent to mislead or deceive the Patent & Trademark Office. Applicants are required to prosecute patent applications with candor, good faith, and honesty. This duty of candor and good faith extends to all inventors named on a patent application, all attorneys and agents involved in preparing and prosecuting the application, and every other person involved in a substantial way with the prosecution of the patent application. Each individual with such a duty must disclose all information known to that individual to be material. Reissue proceedings are not available to cure inequitable conduct with respect to knowingly withheld material prior art or other information in a parent patent. Cisco asserts that Telcordia obtained the '306, '763 and '633 patents through inequitable conduct.

Cisco bears the burden of establishing inequitable conduct by clear and convincing evidence. To determine whether the '306, '763 and '633 patents were obtained through inequitable conduct, you must determine that Telcordia, its representative, or someone involved in a substantial way with the prosecution of the application withheld or misrepresented information that was material to the examination of the patent application, and that this individual or individuals acted with an intent to deceive or mislead the PTO.

## 5.6 MATERIALITY

- 36 -

Cisco contends that material information known to the applicant, the applicant's representative, or someone else involved in a substantial way in the prosecution of the application was withheld or misrepresented to the Patent and Trademark Office during the prosecution of the '306, '763 and '633 patents.

In considering materiality, you first must determine whether or not information was withheld from or false or misleading statements were made to the Patent and Trademark Office during the examination of the '306, '763 and/or '633 patents. If you find that the applicant, the applicant's representative(s), or others involved in a substantial way with the examination of the application withheld information from or made false or misleading statements to the Patent Trademark Office during the examination of the '306, '763 and/or '633 patents, you must then determine whether or not the withheld information or false or misleading statements were material.

Information or statements are material if there is a substantial likelihood that a reasonable examiner would have considered them important in deciding whether to allow an application to issue as a patent.

Information that is cumulative of, or in other words, adds little to or has no more bearing on the examination of an application than information the examiner already had, is not material. Information that discloses a more complete combination of the relevant features of the invention sought to be patented may be highly material. This is true even if those features were before the examiner in other, less complete references.

## 5.7  INTENT TO DECEIVE OR MISLEAD

Cisco contends material information was withheld or misrepresented to the PTO during the prosecution of the '306, '763 and '633 patents with the intent to deceive or mislead the PTO. If you determine that material information was withheld or misrepresented to the PTO, you must next determine whether such information was withheld or misrepresented with the intent to deceive or mislead the PTO. Intent to deceive the PTO may be found from direct evidence. Such direct evidence is rare, however, and as a result, the law allows deceptive intent to be inferred from the facts and surrounding circumstances. In determining whether or not there was intent to deceive or mislead the PTO, you should consider the totality of the circumstances, including the nature of the conduct and evidence of the absence or presence of good faith.

## 5.8  BALANCING OF MATERIALITY AND INTENT

If you determine that Cisco has proven by clear and convincing evidence that material information was withheld or misrepresented and that there was an intent to deceive or mislead the PTO, you must then balance the degree of materiality and the degree of intent to determine whether or not the evidence is sufficient to establish clearly and convincingly that there was inequitable conduct committed in the prosecution of the '306, '763 or '633 patents. Where the materiality of the withheld or misrepresented information is high, the showing of intent needed to establish inequitable conduct is proportionally less, and vice versa.

## 6. DAMAGES

## 6.1 COMPENSATORY DAMAGES IN GENERAL

If you find that one or more of Cisco's products infringes at least one valid claim of Telcordia's patents, you must determine the amount of damages to be awarded to Telcordia for the infringement.  By statute, the amount of those damages must be adequate to compensate

Telcordia for the infringement, but in no event may it be less than a "reasonable royalty." Damages "adequate to compensate" means "full compensation for 'any damages' Telcordia suffered as a result of the infringement." Full compensation includes any reasonably foreseeable damages the patent owner can prove.

## 6.2 BURDEN OF PROOF

Telcordia bears the burden of proving patent infringement damages by a preponderance of the evidence. The amount of damages must not be the result of mere speculation or guess-work. Telcordia, however, does not need to prove its damages with absolute certainty. Rather, Telcordia needs only to show a reasonable probability that it has been damaged in the amount it seeks. All uncertainties in the computation of damages are to be resolved against Cisco.

## 6.3 NOTICE AND MARKING

The amount of damages Telcordia can recover is limited to those acts of infringement by Cisco that occurred after Telcordia gave Cisco notice of infringement. Thus, Telcordia may only recover damages for acts of infringement after it gave Cisco notice that they infringed the '763 and/or '633 patents. Notice of infringement may be either actual or constructive.

Actual notice requires that Telcordia affirmatively communicated to Cisco a specific charge of infringement of the '763 and/or '633 patents by a specific accused product or device.

To show actual notice, Telcordia has the burden of establishing, by a preponderance of the evidence, the date on which Cisco received notice of infringement of the '763 and/or '633 patents.

Constructive notice requires that Telcordia complied with the marking requirement of section 287(a) of Title 35, United States Code, which states that "Patentees, and persons making,

offering for sale, or selling within the United States any patented article for or under them, . . . may give notice to the public that the same is patented. . . .by fixing thereon the word 'patent' or the abbreviation 'pat.', together with the number of the patent. . . ." To show constructive notice, Telcordia has the burden of establishing, by a preponderance of the evidence, substantial compliance with the marking statute. When third parties unrelated to the patentee are involved, a rule of reason approach is applied to determine compliance with the marking requirements. To do so, Telcordia must show that its licensees, or others on behalf of the licensees, who make, offer to sell, or sell a patented product under the '763 and/or '633 patents actually marked products licensed under the '763 and/or '633 patents, or that Telcordia made reasonable efforts to ensure that its licensees who make, offer for sale, or sell products complied with the marking statute.

## 6.4  ENTIRE MARKET VALUE RULE

Under the "entire market value" rule, a patent owner may recover damages based on the value of an entire apparatus or product containing several features, even though only one feature is patented, where the unpatented components function together with the patented components in some manner to produce a desired end product or result. A patent owner may also recover damages under the entire market value rule where the infringing component was the basis of customer demand for the product.

## 6.5  REASONABLE ROYALTY AS A MEASURE OF DAMAGES

By statute, Telcordia is entitled to damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for any infringing sales. A reasonable royalty is the amount of money that would be agreed to in a hypothetical arms length negotiations between Telcordia and Cisco, assuming that all parties were willing to enter into a license and with all

operating under the assumption that the patent is valid and is being infringed.  While the date of

the hypothetical negotiation is the date on which infringement began, all relevant business facts

(even those after the date of the hypothetical negotiation) are deemed known to both parties.

In the hypothetical arms-length negotiation, you must assume that the person negotiating

on behalf of Cisco, and who was willing to take a license, would have known that Telcordia's

patent was valid, enforceable, and infringed by Cisco.

In determining the damages award, you can take into consideration that the alleged

infringer did not voluntarily take a license and that litigation ensued.  However, you may not

enhance damages, due to the litigation.

## 6.6  FACTORS FOR DETERMINING REASONABLE ROYALTY

In determining a reasonable royalty, some of the factors that may be considered are:

1.      the royalties received by the patentee for licensing others under the patent in suit;

2.      the rates paid by the licensee for the use of other patents comparable to the patent

in suit;

3.      the nature and scope of the license, as exclusive or non-exclusive, or as restricted

or unrestricted in terms of territory or with respect to whom the manufactured product may be

sold;

4.      the licensor's established policy and marketing program to maintain his patent

exclusivity by not licensing others to use the invention or by granting licenses under special

conditions designed to preserve that exclusivity;

5.    the commercial relationship between the licensor and licensee, such as, whether they are competitors in the same territory in the same line of business, or whether they are inventors or promoters;

6.    the effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his non-patented items, and the extent of such derivative or convoyed sales;

7.    the duration of the patent and the term of the licenses;

8.    the established profitability of the product made under the patent, its commercial success, and its current popularity;

9.    the utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results;

10.    the nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention;

11.    the extent to which the infringer has made use of the invention, and any evidence probative of the value of that use;

12.    the portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions;

13.    the portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer;

14.    the opinion testimony of qualified experts; and

15.     any other economic factor that a normally prudent businessman would, under similar circumstances, take into consideration in negotiating the hypothetical license.

### 6.7  CURATIVE INSTRUCTION

The fact that I have instructed you regarding damages should not be construed as intimating any view of the Court as to which party is entitled to prevail in this case. Instructions regarding damages are given for your guidance in the event that the evidence leads you to find in favor of Telcordia.

## 7.  DELIBERATION AND VERDICT

### 7.1 INTRODUCTION

That concludes the part of my instructions explaining the rules for considering some of the testimony and evidence. After you hear the closing arguments of counsel, you will return to the jury room to begin your deliberations. Now let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else _The first thing you should do is select a foreperson._ except each other about the case. If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer. The officer will give them to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take me some time to get back to you. Any questions or messages normally should be sent to me through your foreperson, ~~who by custom of this Court is juror No. 1.~~

One more thing about messages. Do not ever write down or tell anyone how you stand on your votes. For example, do not write down or tell anyone that you are split 4-4, or 6-2, or

- 43 -

whatever your vote happens to be. That should stay secret until you are finished.

## 7.2  UNANIMOUS VERDICT

Your verdict must represent the considered judgment of each juror. In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict. Remember at all times that you are not partisans. You are judges -- judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

A form of verdict has been prepared for you. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form. You will then return to the courtroom and your foreperson will give your verdict.

It is proper to add the caution that nothing said in these instructions and nothing in the form of verdict is meant to suggest or convey in any way or manner any intimation as to what verdict I think you should find. What the verdict shall be is the sole and exclusive duty and responsibility of the jury.

- 44 -

## 7.3  DUTY TO DELIBERATE

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room.  In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach a unanimous agreement.  Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say.

Try your best to work out your differences.  Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong.

But do not ever change your mind just because other jurors see things differently, or just to get the case over with.  In the end, your vote must be exactly that -- your own vote.  It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say.  So you should all feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself.

## 7.4  COURT HAS NO OPINION

Let me finish up by repeating something that I said to you earlier.  Nothing that I have said or done during this trial was meant to influence your decision in any way.  You must decide the case yourselves based on the evidence presented.