# EXHIBIT 1

# THE FEDERAL CIRCUIT BAR ASSOCIATION

# MODEL PATENT JURY INSTRUCTIONS

Committee

**Matthew D. Powers, Chair**
**Linda E. Alcorn**
**S. Calvin Capshaw**
**John P. Donohue**
**David R. Todd**
**Maureen Toohey**

*B.3. Infringement*

### 3.8 WILLFUL INFRINGEMENT

[This instruction should be given only if willfulness is in issue.

In this case, [patent holder] argues both that [alleged infringer] infringed and that [alleged infringer] infringed willfully. Even if you have decided that [accused infringer] has infringed, you must go on and address the additional issue of whether or not this infringement was willful. Willfulness requires you to determine [alleged infringer]'s state of mind. If [alleged infringer] had actual notice of [patent holder]'s rights, then [alleged infringer] had a duty to respect those rights.

To prove willful infringement, [patent holder] must establish that [alleged infringer] willfully infringed by clear and convincing evidence. That is [patent holder] must prove willfulness in such a way that you have been left with a clear conviction that the infringement was willful.

Specifically, [patent holder] must show, by clear and convincing evidence that:

(1)     [Alleged infringer] was aware of the [  ] patent; and

(2)     [Alleged infringer] engaged in the accused infringing activities without a reasonable basis for believing, either: (1) that [alleged infringer]'s [product] [method] did not infringe the [  ] patent; or (2) that the [  ] patent was invalid[; or that the [...] patent was unenforceable].

In deciding whether or not [alleged infringer] committed willful infringement, you must consider all of the facts, which include but are not limited to:

(1)     Whether or not [alleged infringer] intentionally copied a product of [patent holder] that is covered by the [  ] patent;

(2)     Whether or not [alleged infringer], when it learned of [patent holder]'s patent protection, investigated the scope of the patent and formed a good-faith belief that the patent was invalid [or unenforceable] or that it was not infringed before [alleged infringer] started or continued any possible infringing activity;

(3)     Whether or not [alleged infringer] reasonably believed that it had a substantial defense to infringement and reasonably believed that the defense would be successful if litigated;

(4)     Whether or not [alleged infringer] made a good faith effort to avoid infringing the patent, for example [alleged infringer] took remedial action upon learning of the patent by ceasing infringing activity or attempting to design around the patent;

(5)     Whether or not [alleged infringer] tried to cover up its infringement; and

(6)     [Give this instruction only if [alleged infringer] relies upon an opinion of counsel
        as a defense to an allegation of willful infringement:

        Whether or not [alleged infringer] relied on a legal opinion that appeared to it to be
        well-supported and believable and that advised [alleged infringer] (1) that the
        [product] [method] did not infringe the [   ] patent or (2) that the [   ] patent was
        invalid [or unenforceable].]

In assessing these various factors and deciding whether or not [accused infringer] willfully
infringed the [   ] patent, you need not find that all of the factors are present. In addition, no one
or more of these factors are determinative. Rather, you must decide, based on the evidence that is
presented to you, whether you have a clear conviction that the alleged infringement was willful.

<u>Authorities</u>

35 U.S.C. § 284; *Knorr-Bremse v. Dana Corp.*, 383 F.3d 1337 (Fed. Cir. 2004); *Crystal
Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1346 (Fed. Cir.
2001); *WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1354 (Fed. Cir. 1999); *Read Corp.
v. Portec, Inc.*, 970 F.2d 816 (Fed. Cir. 1992); *Gustafson, Inc. v. Intersystems Indus. Prods., Inc.*,
897 F.2d 508, 510 (Fed. Cir. 1990); *Underwater Devices, Inc. v. Morrison-Knudsen Co., 717
F.2d 1380, 1389 (Fed. Cir. 1983).*

35

# EXHIBIT 2

Model Patent Jury Instructions
for the Northern District of California


September 20, 2004



Working Committee

Martin Fliesler – Chair
Professor Mark Lemley
David McIntyre
James Pooley
Matthew Powers
Honorable Ronald Whyte
James Yoon

*B.3. Infringement*

## 3.11 WILLFUL INFRINGEMENT

In this case, [patent holder] argues both that [alleged infringer] infringed and that [alleged infringer] infringed willfully. To prove willful infringement, [patent holder] must persuade you that it is "highly probable" that [alleged infringer] willfully infringed.

Specifically, [patent holder] must demonstrate that it is highly probable that:

     A.     [Alleged infringer] had actual knowledge of the [  ] patent; and

     B.     [Alleged infringer] had no reasonable basis for believing (1) that [alleged infringer]'s [product] [method] did not infringe the [  ] patent or (2) that the [  ] patent was invalid [or unenforceable].[6]

In deciding whether [alleged infringer] committed willful infringement, you must consider all of the facts, which include but are not limited to:

     A.     Whether [alleged infringer] intentionally copied a product of [patent holder] covered by the [  ] patent;

     B.     Whether [alleged infringer], when it learned of [patent holder]'s patent protection, investigated the scope of the patent and formed a good-faith belief that the patent was invalid [or unenforceable] or that it was not infringed;

     C.     Whether [alleged infringer] had a substantial defense to infringement and reasonably believed that the defense would be successful if litigated;

     D.     Whether [alleged infringer] made a good faith effort to avoid infringing the patent; and

     E.     [Whether [alleged infringer] relied on a legal opinion that appeared to it to be well-supported and believable and that advised [alleged infringer] (1) that the [product] [method] did not infringe the [  ] patent or (2) that the [  ] patent was invalid [or unenforceable].][7]

---

[6] If unenforceability is an issue, the court will need to give further instruction to the jury explaining the requirements for the particular theory of unenforceability relied on by [alleged infringer].

[7] Factor E should be included only if the alleged infringer relies on a legal opinion as a defense to an allegation of willful infringement. "[I]t is inappropriate to draw an adverse inference that undisclosed legal advice for which attorney-client privilege is claimed was unfavorable . . . (and) it is (also) inappropriate to draw a similar adverse inference from failure to consult counsel." *Knorr-Bremse v. Dana Corporation*, 2004 WL 2049342 *5 (Fed.Cir. (Va.)).

September 20, 2004

<u>Authorities</u>

*35 U.S.C. § 284; Knorr-Bremse v. Dana Corporation*, 2004 WL 2049342 *5 (Fed.Cir. (Va.)); Crystal *Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.,* 246 F.3d 1336, 1346 (Fed. Cir. 2001); *WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1354 (Fed. Cir. 1999); *Read Corp. v. Portec, Inc.*, 970 F.2d 816 (Fed. Cir. 1992); *Gustafson, Inc. v. Intersystems Indus. Prods., Inc.,* 897 F.2d 508, 510 (Fed. Cir. 1990).

# EXHIBIT 3

# AIPLA's Model Patent Jury Instructions

© 2005, American Intellectual Property Law Association

Disclaimer

By using the Model Jury Instructions, you agree to the terms of this disclaimer.

The Model Jury Instructions are provided as general assistance for the litigation of patent issues. While efforts have been and will be made to ensure that the Model Jury Instructions accurately reflect existing law, this work is not intended to replace the independent research necessary for formulating jury instructions that are best suited to particular facts and legal issues. AIPLA does not represent or warrant that the information contained in the Model Jury Instructions is accurate, complete, or current. The work could contain typographical errors or technical inaccuracies, and AIPLA reserves the right to add, change, or delete its contents or any part thereof without notice.

Given the unpredictability of technology and the online environment, AIPLA does not warrant that Internet access to the Model Jury Instructions will be uninterrupted or error-free, that defects will be corrected, or that the Model Jury Instructions or the server that makes it available will be free of viruses or other harmful elements. As a visitor to, and user of, the Model Jury Instructions, you must assume full responsibility for any costs associated with servicing of your equipment used in connection with its use.

# Table of Contents

Introduction
Acknowledgments

**Preliminary Jury Instructions**
I.   The Nature of the Action and the Parties
     A. United States Patents
     B. Patent Litigation
II.  Contentions of the Parties
III. Trial Procedure
Glossary of Patent Terms
Glossary of Technical Terms

**Post-Trial Instructions**
1. Summary of Patent Issues
Claim Construction
          2.0     Claim Construction – Generally
          2.1     Claim Construction for the Case

*Trell v. Marlee Elecs. Corp.*, 912 F.2d 1443, 1446, 1448 (Fed. Cir. 1990); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1581 (Fed. Cir. 1989); *Fromson v. W. Litho Plate & Supply Co.*, 853 F.2d 1568, 1575-76 (Fed. Cir. 1988); *Studiengesellschaft Kohle, mbH v. Dart Indus.*, Inc., 862 F.2d 1564, 1571-72 (Fed. Cir. 1988).

## 13.    Willful Infringement

You are instructed that where a potential infringer has actual notice of another's patent rights, he has an affirmative duty of due care not to infringe a valid and enforceable patent. Thus if you find by a preponderance of the evidence that [the Defendant] infringed [the Plaintiff]'s patent, either literally or under the doctrine of equivalents, then you must further determine if this infringement was willful. Willfulness must be proven by clear and convincing evidence showing that:

1.    [The Defendant] had actual knowledge of [the Plaintiff]'s patent, and

2.    [The Defendant] had no reasonable basis for believing (a) that [the Defendant]'s [[product] [method]] did not infringe [the Plaintiff]'s patent or (b) that [the Plaintiff]'s patent was invalid [or unenforceable]. In making the determination as to willfulness, you must consider the totality of the circumstances. The totality of the circumstances comprises a number of factors, which include, but are not limited to whether [the Defendant] intentionally copied the claimed invention or a product covered by [the Plaintiff]'s patent, whether [the Defendant] exercised due care to avoid infringing the patent, [whether [the Defendant] relied on competent legal advice[5],] and whether [the Defendant] presented a substantial defense to infringement, including the defense that the patent is invalid [or unenforceable].

*Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1347 (Fed. Cir. 2004) (en banc); *Jurgens v. CBK, Ltd.*, 80 F.3d 1566, 1571 (Fed. Cir. 1996); *In re Hayes Microcomputer Prods., Inc.*, 982 F.2d 1527, 1543 (Fed. Cir. 1992); *Ortho Pharm. Corp. v. Smith*, 959 F.2d 936, 944 (Fed. Cir. 1992); *Gustafson, Inc. v. Intersystems Indus. Prods., Inc.*, 897 F.2d 508, 510-11 (Fed. Cir. 1990); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1581 (Fed. Cir. 1989); *Ryco, Inc. v. Ag-Bag Corp.*, 857 F.2d 1418, 1428 (Fed. Cir. 1988).

---

[5] This factor, "whether the Defendant relied on competent legal advice," should only be included if the alleged infringer relies on a legal opinion as a defense to an allegation of willful infringement. "[I]t is inappropriate to draw an adverse inference that undisclosed legal advice for which attorney-client privilege is claimed was unfavorable . . . [and] it is [also] inappropriate to draw a similar adverse inference from failure to consult counsel." *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1347 (Fed. Cir. 2004) (en banc).

# EXHIBIT 4

CONTAINS CONFIDENTIAL BUSINESS INFORMATION
SUBJECT TO PROTECTIVE ORDER

## UNITED STATES INTERNATIONAL TRADE COMMISSION
### WASHINGTON, D.C.

| |
|---|
| In the Matter of |
| CERTAIN EQUIPMENT FOR TELECOMMUNICATIONS OR DATA COMMUNICATIONS NETWORKS, INCLUDING ROUTERS, SWITCHES, AND HUBS, AND COMPONENTS THEREOF |

Investigation No. 337-TA-574

**DECLARATION OF EDWARD R. REINES IN SUPPORT OF
CISCO'S RESPONSE TO THE COMMISSION INVESTIGATIVE STAFF'S
COMBINED RESPONSE TO (i) TELCORDIA'S SIXTH MOTION TO COMPEL CISCO
TO PRODUCE DISCOVERY, (ii) TELCORDIA'S FIRST MOTION FOR SANCTIONS
AGAINST CISCO, AND (iii) CISCO'S MOTION FOR A PROTECTIVE ORDER
LIMITING FURTHER DISCOVERY**

I, Edward Reines, declare as follows:

1.      I am a member of the State Bar of California and a partner at the law firm of Weil, Gotshal, & Manges LLP, attorneys for Respondent Cisco Systems, Inc. ("Cisco") in this action. I make this declaration in support of Cisco's Response To The Commission Investigative Staff's Combined Response To (i) Telcordia's Sixth Motion To Compel Cisco To Produce Discovery, (ii) Telcordia's First Motion For Sanctions Against Cisco, And (iii) Cisco's Motion For A Protective Order Limiting Further Discovery.

2.      Shortly after the issuance of Order No. 15, Cisco's outside counsel at Weil Gotshal & Manges conducted internal discussions to identify a suitable 30(b)(6) designee regarding its equitable defenses. Cisco's lawyers quickly identified Robert Barr, who had been present during the events at issue in this investigation and would thus be well suited to providing testimony on Cisco's behalf.

3.      Mr. Barr had not been employed by Cisco for some time, but was a consultant to Cisco and had previously cooperated with Cisco, including by serving as Rule

CONTAINS CONFIDENTIAL BUSINESS INFORMATION
SUBJECT TO PROTECTIVE ORDER

30(b)(6) witness in other litigation. We were accordingly confident he would agree to be deposed on Cisco's behalf.

4.      We promptly contacted Mr. Barr to obtain dates for his deposition but were surprised to learn that his consulting relationship with Cisco had ended and that he would not agree to voluntarily represent the company as a 30(b)(6) deponent. We also learned that Mr. Barr was in poor health after a recent angioplasty procedure and was highly reluctant to sit for deposition, regardless of the nature of his relationship with Cisco.

5.      After additional communications with Mr. Barr from Cisco's in-house and outside counsel, both I and the in-house legal team conclusively determined that Mr. Barr would not agree to represent Cisco as a 30(b)(6) witness.

6.      Upon learning this information, we immediately attempted to identify a backup witness with the expertise to serve as a 30(b)(6) designee on equitable defenses in patent law. Attorneys at Weil, Gotshal & Manges were in continuous contact with Cisco's in-house counsel in an effort to do this, including on several telephone conferences and by numerous email exchanges.

7.      We were cognizant of the potential that Telcordia would argue that our Rule 30(b)(6) designee was not sufficiently knowledgeable, and accordingly, made significant efforts to select a person with personal knowledge or a person who could be educated of the relevant facts.

8.      Cisco's counsel carefully considered three different individuals as potential 30(b)(6) designees. We ultimately concluded that none of them would be appropriate 30(b)(6) designees.

CONTAINS CONFIDENTIAL BUSINESS INFORMATION
SUBJECT TO PROTECTIVE ORDER

9.      As a result of this investigation and these discussions, we eventually identified and considered Rick Frenkel as a potential 30(b)(6) designee and concluded that, under the circumstances, Mr. Frenkel would be the most appropriate designee.

10.     We have identified Mr. Frenkel to Telcordia as Cisco's Rule 30(b)(6) designee and have agreed to make Mr. Frenkel available for deposition on March 14, 15, or 16 at Finnegan Henderson's offices in Palo Alto.

Executed this 21st day of February, 2007 at Washington, DC.

I declare under penalty of perjury that the foregoing is true and correct.

_Ed Reines /ms._
Edward Reines

# EXHIBIT 5

# Telcordia Damages From Cisco's Infringement

## Cisco's Sales of Accused Products

|  | '763 Patent | '633 Patent |
|---|---|---|
| U.S. Revenue | $1,754,367,697 | $115,974,461 |
| Non-U.S. Revenue | $1,769,195,229 | $116,954,652 |
| **Total Royalty Base** | **$3,523,562,926** | **$232,929,113** |
| **Royalty Rate** | **x 2.0%** | **x 2.0%** |
| **Royalty Damages** | **$70,471,259** | **$4,658,582** |

# Damages Adequate to Compensate

**35 USC §284**

35 § 284          PATENTS: PROTECTION OF RIGHTS    Pt. III

**§ 284. Damages**

Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court.

When the damages are not found by a jury, the court shall assess them. In either event the court may increase the damages up to three times the amount found or assessed. Increased damages under this paragraph shall not apply to provisional rights under section 154(d) of this title.

The court may receive expert testimony as an aid to the determination of damages or of what royalty would be reasonable under the circumstances.

"Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer ....."

754

# What is a Royalty?



# Cisco's "Extent of Use" of Patents at Issue

| | '763 Patent | '633 Patent |
|---|---|---|
| 1999 | $13,071,328 | |
| 2000 | $513,047,894 | $35,416,548 |
| 2001 | $293,411,457 | $24,955,165 |
| 2002 | $10,642,825 | $12,442,085 |
| 2003 | $158,251,291 | $13,232,274 |
| 2004 | $195,880,237 | $7,003,150 |
| 2005 | $239,533,331 | $11,961,724 |
| 2006 | $311,118,012 | $10,963,517 |
| 2007 | $19,411,316 | |
| US Total | $1,754,367,697 | $115,974,461 |
| International Total | $1,769,195,229 | $116,954,652 |
| Worldwide Total | $3,523,562,926 | $232,929,113 |

4

Georgia-Pacific Corp. v. U.S. Plywood Corp.
Factors to Consider



# Georgia-Pacific Corp. v. U.S. Plywood Corp. Factors to Consider

## Licensing

1) Royalties received by the patentee for the licensing of the patent in suit tending to show an established royalty rate

2) Rates paid by the licensee for the use of other comparable patents

3) Nature and scope of the license

4) Licensor's established policy and marketing program to maintain patent monopoly

7) Duration of the patent and term of license

## Financial / Business

5) Commercial relationship between the licensor and licensee

6) Effect or value as a generator of sales on non-patented items

8) Profitability, commercial success and popularity of products made under patent

12) Portion of profit or sales price customary to allow for use of the patented invention

13) Portion of realizable profit that should be credited to the patented invention

14) Opinion testimony of qualified experts

15) Hypothetical negotiation between licensor and licensee

## Technical

9) Utility and advantages of the patent over old modes or devices

10) Nature, character and benefits of the patented invention to users

11) Extent of use by infringer and evidence probative of the value of that use

## Licensing Factors to Consider

### Telcordia Technologies



- Agreements include upfront and running royalties and annual minimums

- Discounted licensing rates offered from 0.5% to 1% (1997)

- Non-discounted licensing rates from 1% to 6%

- Licensing term sheets include upfront and running rates of 1% to 5%

### CISCO™

- Agreements include cross-licensing provisions

- Some agreements include running royalties

- Significant payments to acquire IP license rights:
  - $60 million to IBM
  - $40 million + $66 million to Lucent

7

# Financial / Business Factors to Consider

## Telcordia Technologies



- Sustained effort to commercialize IP portfolio
- Developer of software, service solutions and technology used in the telecommunications and network industries.
- One of the leaders in developing U.S. and Worldwide standards through:
  - ATM Forum
  - ANSI
  - ITU

## CISCO

- Major acquisitions of technology and network product companies (Cerent Lightstream, Others)
- Relatively high profitability on accused SRTS ('633) products
- Limited profitability on ONS ('763) products
- Importance of ONS products to Cisco's market presence

8

# Technical Factors to Consider



|  | | |
|---|---|---|
| **Protocol** | 4,835,763<br>'763 Patent | Re. 36,633<br>'633 Patent |
| **Feature** | | |
| **Applicable Standards/<br>Requirements** | GR - 1400 | ATM Forum/ ITU/ ANSI |
| **Products** | Network of<br>Routers & Switches | Boxes/ Modules |

9

# Cisco's 30(b)(6) on UPSR Products (Rushka)



**Q.** Does Cisco believe that the architecture for path protection switching is its idea?

**THE WITNESS:**
**A.** Specific -- a specific instance or aspect of that I cannot -- Cisco did not define -- excuse me, Cisco did not define a workable, usable or desirable or scalable set of switching criteria for path protection switching. **The definition of the criteria was obtained from GR 1400 because that was a pre-existing description of what people expect, want, need, and are willing to purchase.** So I can say with certainty that that was not an invention or discovery by myself or my coworkers.

10

# Perspectives at the Hypothetical Negotiation: Late 1999 / Early 2000

- Anticipated growth in ATM and SONET market segments

- Importance of conformance to industry standards/requirements

- Provide enhanced product capabilities to establish/sustain market leadership

- Elevated level of industry consolidation/acquisitions

- Recognition of Telcordia's patent portfolio and licensing program

11

# Cisco's "Extent of Use" of Patents at Issue

| | '763 Patent | '633 Patent Accused Modules and Boxes | '633 Patent Accused Modules |
|---|---|---|---|
| 1999 | $13,071,328 | | |
| 2000 | $513,047,894 | $35,416,548 | $3,802,173 |
| 2001 | $293,411,457 | $24,955,165 | $3,372,217 |
| 2002 | $10,642,825 | $12,442,085 | $2,265,237 |
| 2003 | $158,251,291 | $13,232,274 | $1,627,537 |
| 2004 | $195,880,237 | $7,003,150 | $850,671 |
| 2005 | $239,533,331 | $11,961,724 | $1,212,050 |
| 2006 | $311,118,012 | $10,963,517 | $744,563 |
| 2007 | $19,411,316 | | |
| US Total | $1,754,367,697 | $115,974,461 | $13,874,450 |
| International Total | $1,769,195,229 | $116,954,652 | $13,991,714 |
| Worldwide Total | $3,523,562,926 | $232,929,113 | $27,866,164 |

2

13

# Telcordia Damages From Cisco's Infringement

## Cisco's Sales of Accused Products

|  | '763 Patent | '633 Patent Accused Modules and Boxes | '633 Patent Accused Modules |
|---|---|---|---|
| U.S. Revenue | $1,754,367,697 | $115,974,461 | $13,874,450 |
| Non-U.S. Revenue | $1,769,195,229 | $116,954,652 | $13,991,714 |
| Total Royalty Base | $3,523,562,926 | $232,929,114 | $27,866,164 |
| Royalty Rate | x 2.0% | x 2.0% | x 2.0% |
| Royalty Damages | $70,471,259 | $4,658,582 | $557,323 |

# Technologies

## Licenses

**1999** Term Sheets to Several Companies

**June 1999** Newbridge Networks Corp.

**Jan. 2000** Term Sheet to Alcatel

**Sept. 2000** Term Sheet to Alcatel

**Sept. 2000** Atmosphere Networks

**Dec. 2000** Terawave Communications

**Aug. 2001** Paceon Corporation

**Aug. 2001** Netro Corporation

**May 2002** Jedai BroadBand Networks

**Dec. 2003** NEC USA

**Sept. 2005** Terawave Communications

## Discounted Licensing Offered

**Discounted Licenses**

- Ericsson Telecomm AB
- General Instrument
- Fore Systems Inc.
- Integrated Telecom Technology
- Telecommunications Techniques Corporation
- Fujitsu Ltd.
- NEC Corp.
- Siemens AG

**Timeline:** 1994 | 1995 | 1996 | 1997 | 1998 | 1999 | 2000 | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007

## Acquisitions

**Dec. 1994** Cisco purchases Lightstream for *$120 million*

**April 1996** Cisco purchases StrataCom for *$4 Billion*

**August 1999** Cisco purchases Cerent for *$6.9 billion*

CISCO



# CISCO Products Contain Boards and Chips

| CHIPS | BOARDS | PRODUCTS |
|---|---|---|
| **AAL1gator** | CESM-8-T1<br>CESM-8-T1/B<br>CESM-8E1 | MGX 8220, MGX 8230, MGX 8250,<br>MGX 8830, MGX 8830/B, and MGX<br>8850, IGX 8400 |
| | WAI-T1C-4RJ48, WAI-E1C-4RJ48, and<br>WAI-E1C-4BNC | MGX 8240, MGX 8260 |
| **DCU** | NM-1A-OC3MM-1V, NM-1A-<br>OC3SMI-1V, and NM-1A-OC3SML-1V | LightStream 1010, Catalyst 8500<br>family |
| | PA-A2-4E1XC-E3ATM, PA-A2-4E1XC-<br>OC3SM, PA-A2-4T1C-OC3SM, and<br>PA-A2-4T1C-T3ATM | 3600 family routers<br><br>7200 family routers |
| **SLFP + Winpath** | MPSM-8-T1E1 | MGX 8230, MGX 8250, MGX 8830,<br>MGX 8830/B, and MGX 8850 |

*Source: PTX-111-12, PTX-378, PTX-1368-75, PTX-1378-80, PTX-1382-85*

15

16



**Cisco's Infringing Products Use UPSR**

1. ONS 15305

2. ONS 15310

3. ONS 15327

4. ONS 15454

5. ONS 15600