# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| TELCORDIA TECHNOLOGIES, INC., | ) | **REDACTED** |
|  | ) | **PUBLIC VERSION** |
| Plaintiff/Counterclaim Defendant, | ) |  |
|  | ) |  |
| v. | ) | Civil Action No. 04-876-GMS |
|  | ) |  |
| CISCO SYSTEMS, INC., | ) |  |
|  | ) |  |
| Defendant/Counterclaim Plaintiff. | ) |  |

## TELCORDIA TECHNOLOGIES, INC.'S BRIEF IN SUPPORT OF ITS FED. R. CIV. P. 54(b) MOTION FOR ATTORNEY FEES AND EXPENSES PURSUANT TO 35 U.S.C. § 285 AND/OR THE COURT'S INHERENT EQUITABLE AUTHORITY

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Plaintiff*
*Telcordia Technologies, Inc*

*Of Counsel:*

Donald R. Dunner
Steven M. Anzalone
Richard H. Smith
James T. Wilson
John M. Williamson
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
901 New York Ave., N.W.
Washington, D.C. 20001
(202) 408-4000

Dated: May 30, 2007
181116.1

## TABLE OF CONTENTS

I.     Nature and Stage of the Proceeding................................................................1

II.    Summary of the Argument.........................................................................2

III.   Statement of Facts.......................................................................................3

     A.     Telcordia's Estimate of Attorney Fees and Expenses.............................3

IV.    Argument ....................................................................................................7

     A.     The Jury's Determination that Cisco Willfully Infringed Telcordia's
           Patents  Warrants an Award of Attorney Fees Under 35 U.S.C. § 285 ...................7

     B.     Cisco Forced Telcordia to Produce Hundreds of Thousands of Documents
           that Cisco Already Possessed and that Cisco Did Not Use .....................................8

     C.     Cisco Employed a Shotgun Approach to this Litigation .......................11

     D.     Cisco Withheld Highly Relevant Critical Information About its Products
           Until the Month Before Trial ............................................................................13

     E.     Cisco Asserted Serious Fraud Charges Without the Requisite Evidence of
           Knowledge or Intent .......................................................................................14

V.     Conclusion ...............................................................................................16

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Advanced Medical Optics, Inc. v. Alcon Labs., Inc.,*
No. Civ. A. 03-1095-KAJ, 2005 WL 3454283 at *10 (D. Del. Dec. 16, 2005) ........................ 2

*Amstead Industries Inc. v. Buckeye Steel Castings Co.,*
23 F.3d 374 (Fed. Cir. 1994) ....................................................................................... 6

*Beckman Instruments, Inc. v. LKB Produkter AB,*
892 F.2d 1547, n1 (Fed. Cir. 1989) ........................................................................... 10

*Blanchard v. Bergeron,*
489 U.S. 87 (1989) ....................................................................................................... 4

*Blum v. Stenson,*
465 U.S. 886 (1984) ..................................................................................................... 4

*Elk Corp. v. GAF Bldg. Materials Corp.,*
168 F.3d 28 (Fed. Cir. 1999) ..................................................................................... 14

*Eltech Systems, Corp. v. PPG Industries, Inc.,*
903 F.2d 805 (Fed. Cir. 1990) ................................................................................... 13

*Golight, Inc. v. Wal-Mart Stores, Inc.,*
355 F.3d 1327 (Fed. Cir. 2004) ................................................................................... 3

*Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.,*
995 F.2d 414 (3d Cir. 1993) ......................................................................................... 4

*Hensley v. Eckerhart,*
461 U.S. 424 (1983) (42 U.S.C. § 1988) ...................................................................... 4

*Imonex Servs., Inc. v. W.H. Munzprufer GmbH,*
408 F.3d 1374 (Fed. Cir. 2005) ................................................................................... 2

*Kloster Speedsteel AB v. Crucible Inc.,*
793 F.2d 1565 (Fed. Cir. 1986) ................................................................................... 3

*Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmBH v. Dana Corp.,*
372 F. Supp. 2d 833, n24 (E.D. Va. 2005) ................................................................ 10

*Lam, Inc. v. Johns-Manville Corp.,*
718 F.2d 1056 (Fed. Cir. 1983) ................................................................................... 5

*Lindy Bros. Bldrs., Inc. v. American Radiator & Standard Sanitary Corp. (Lindy I),*
487 F.2d 161 (3d Cir. 1973) ......................................................................................... 4

*Maxwell v. Angel-Etts of California, Inc.,*
 No. 01-1601, 2002 WL 31809442 (Fed. Cir. Jan. 2, 2003) ....................................................... 5

*Motorola, Inc. v. Interdigital Tech. Corp.,*
 121 F.3d 1461 (Fed. Cir. 1997) ........................................................................................... 2

*Philips Elecs., Corp. v. Compo Micro Tech, Inc.,*
 No. Civ. A. 02-123-KAJ, 2006 WL 3020724 at *6 (D. Del. Oct. 23, 2006)............................. 5

*Rambus Inc. v. Infineon Tech. AG,*
 318 F.3d 1081 (Fed. Cir. 2003) ........................................................................................... 3

*Ryan v. Asbestos Workers Union,*
 No. 97-604-GMS, 2002 WL 505940 (D. Del. Jan. 31, 2002) ..................................................... 4

*Securacomm Consulting, Inc. v. Securacom Inc.,*
 224 F.3d 273 (3d Cir. 2000) ................................................................................................ 12

*Taltech, Ltd. v. Esquel Apparel, Inc.,*
 No. C04-974Z, 2007 WL 764766 at *36 (W.D. Wash. March 9, 2007) ................................. 12

*Yamanouchi Pharm. Co. v. Danbury Pharmacal, Inc.,*
 21 F. Supp. 2d 366, 378 (S.D.N.Y. 1998), *aff'd*, 231 F.3d 1339 (Fed. Cir. 2000).................... 7

## FEDERAL STATUTES AND RULES

28 U.S.C. § 1920 ....................................................................................................................... 6

28 U.S.C. § 1821 ....................................................................................................................... 6

35 U.S.C. § 284 ....................................................................................................................... 15

35 U.S.C. § 285........................................................................................................................ passim

47 U.S.C. § 273(d)(2) ............................................................................................................... 9

Fed. R. Civ. P. 54(d)(2)(B) ...................................................................................................... 3

I.    **Nature and Stage of the Proceeding**

This action for patent infringement was tried to a jury from April 27, 2007, through May 9, 2007.  On May 10, 2007, the jury returned a verdict in favor of Plaintiff Telcordia Technologies, Inc. ("Telcordia" formerly Bell Communications Research, Inc. or "Bellcore") and against defendant Cisco Systems, Inc. ("Cisco"), finding that Cisco willfully infringed two of Telcordia's patents and awarding Telcordia $6.5 million in damages.

In its original complaint filed on July 16, 2004, Telcordia asserted that Cisco willfully infringed Telcordia's U.S. Patent Nos. 4,893,306 ("the '306 patent") and Re. 36,633 ("the '633 patent").  D.I. 1.  In an amended complaint filed on June 14, 2005, Telcordia asserted that Cisco willfully infringed U.S. Patent No. 4,835,763 ("the '763 patent").[1]  D.I. 28.  On June 22, 2006, the Court issued an Order construing the claims of the '306, '763, and '633 patents.  D.I. 179.  Based on this Order, Telcordia determined that it could not prove that any of Cisco's accused products infringe any of the asserted claims of the '306 patent.  Telcordia did not oppose the entry of summary judgment against it as to noninfringement of the '306 patent, leaving for trial the issue of infringement of the '633 and '763 patents, as well the issues of validity and enforceability of the '306, '633, and '763 patents.  Additionally, the parties agreed to submit all equitable issues to the jury for a final decision.  D.I. 318 at n.3.  On May 16, 2007, after the jury found for Telcordia on every remaining issue, the Court entered judgment "in favor of the plaintiff, TELCORDIA and against the defendant, CISCO in the amount of SIX MILLION FIVE

---

[1]Telcordia asserted these same patents in two parallel cases before this Court against defendants Alcatel USA, Inc. and Lucent Technologies, Inc. (C.A. Nos. 04-874-GMS and 04-875-GMS).  Those defendants settled their cases without the need for a jury trial on April 30, 2007.  D.I. 223 in 04-874-GMS and D.I. 351 in 04-875-GMS.

HUNDRED THOUSAND DOLLARS ($6,500,000) for infringement of the U.S. Patent No.

4,835,763 and the U.S. Patent No. Re. 36,633." D.I. 348.

## II.    Summary of the Argument

"The decision whether to award fees is a two-pronged inquiry that requires, first, a factual

finding that the case is 'exceptional' and, second, a discretionary decision to award fees."

*Motorola, Inc. v. Interdigital Tech. Corp.*, 121 F.3d 1461, 1468 (Fed. Cir. 1997). "The criteria

for declaring a case exceptional include willful infringement, bad faith, litigation misconduct and

unprofessional behavior." *Imonex Servs., Inc. v. W.H. Munzprufer GmbH*, 408 F.3d 1374, 1378

(Fed. Cir. 2005). "An award of attorneys' fees and costs is typical in cases of willful

infringement." *Advanced Medical Optics, Inc. v. Alcon Labs., Inc.*, No. Civ. A. 03-1095-KAJ,

2005 WL 3454283 at *10 (D. Del. Dec. 16, 2005).

Against the jury's finding that Cisco willfully infringed Telcordia's patents, Telcordia

respectfully requests that the Court find this case exceptional and award Telcordia its reasonable

attorney fees and expenses pursuant to the fee shifting provision of the Patent Act, which

provides:

> The court in exceptional cases may award reasonable attorney fees
> to the prevailing party.

35 U.S.C. § 285.

The case is exceptional under 35 U.S.C. § 285 and an award of attorney fees and

expenses is appropriate because—in addition to Cisco's willful infringement and in addition to

all of the reasons set forth in Telcordia's Brief in Support of Its Motion for Enhanced Damages,

which Telcordia incorporates by reference in support of this motion—Cisco litigated this case in

a careless manner such that Telcordia's litigation expenses were unnecessarily increased. For

example, Cisco (1) forced Telcordia to needlessly produce hundreds of thousands of documents

that Cisco already possessed and that Cisco had no intention of using in this litigation, (2) asserted meritless defenses in a shotgun manner (including a new defense disclosed just before trial) without ultimately pursuing the defenses, (3) withheld highly relevant critical information from production until the month before trial, and (4) carelessly asserted inequitable conduct claims with no evidence of intent and questionable positions on knowledge. Cisco's litigation behavior, in conjunction with all of the facts and circumstances surrounding Cisco's willful infringement, warrants a finding of an exceptional case and an award of attorney fees and expenses. *Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1340 (Fed. Cir. 2004) ("[O]ur cases uniformly indicate that the willfulness of the infringement by the accused infringer may be a sufficient basis in a particular case for finding the case 'exceptional' for purposes of awarding attorney fees to the prevailing patent owner."); *Rambus Inc. v. Infineon Tech. AG*, 318 F.3d 1081, 1106 (Fed. Cir. 2003)("Litigation misconduct and unprofessional behavior may suffice, by themselves, to make a case exceptional under § 285. . . ."); *Kloster Speedsteel AB v. Crucible Inc.*, 793 F.2d 1565, 1580 (Fed. Cir. 1986) ("[B]ad-faith displayed in pretrial and trial stages, by counsel or party, may render the case exceptional under § 285.").

## III.    Statement of Facts

### A.    Telcordia's Estimate of Attorney Fees and Expenses

Pursuant to Fed. R. Civ. P. 54(d)(2)(B), Telcordia calculated a fair estimate of the attorney fees and expenses that it will seek in the event that the Court determines that Telcordia is entitled to fees and expenses.[2]             **REDACTED**

---

[2]The Advisory Committee Notes to Rule 54 regarding motions for recovery of attorney fees explain that "[t]he rule does not require that the motion be supported at the time of filing with evidentiary material bearing on the fees." Fed. R. Civ. P. 54(b) advisory committee's note.  In accordance with the Rule 54 procedure, this Court in prior cases has elected to determine whether attorney fees will be awarded before requiring the party seeking fees to submit its

(continued on next page)

**REDACTED**

> The lodestar is the "initial estimate of a reasonable attorney's fee [which] is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Blum v. Stenson*, 465 U.S. 886, 888 (1984) (hereafter *Blum*). Since the establishment of the lodestar approach as the "only reasonably objective basis for valuing an attorney's services," *Lindy Bros. Bldrs., Inc. v. American Radiator & Standard Sanitary Corp. (Lindy I)*, 487 F.2d 161, 167 (3d Cir. 1973), it has become the standard method for calculating fee awards. *See, e.g., Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (42 U.S.C. § 1988). It has been applied notwithstanding a different fee arrangement between the client and the attorney. *See Blanchard v. Bergeron*, 489 U.S. 87, 92-93 (1989) (applying lodestar approach to calculate fees awarded to counsel who had a contingent fee arrangement with client); *Blum*, 465 U.S. at 895 (applying lodestar approach to calculate fees awarded to a non-profit legal organization with salaried attorneys and refusing to limit recovery to the litigation costs).

*Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 414, 421-22 (3d Cir. 1993)

(applying lodestar approach to determine reasonable attorney fees in antitrust case with

---

(continued from previous page)
methodology for calculating fees and its evidentiary support. *See, e.g., Ryan v. Asbestos Workers Union*, No. 97-604-GMW, 2002 WL 505940 (D. Del. Jan. 31, 2002). Nevertheless, Telcordia has thoroughly evaluated its fees and expenses in order to generate the fair estimate required by Rule 54(d)(2)(B) and Telcordia stands ready to submit its evidentiary support and calculation methodology—including an explanation of its billing rates, the particular expertise of the attorneys working on the matter, the reasonableness of the billing rates in light of the particular skills needed to litigate the case, the reasonableness of the billing rates in comparison to billing rates of other similarly situated attorneys, the reasonableness of the amount of time spent on the matter, an explanation of the time spent on the matter, etc.—should the Court wish to evaluate Telcordia's detailed evidentiary support for fees and expenses in connection with the determination of whether Telcordia is entitled such fees and expenses. But unless the Court instructs otherwise, Telcordia will file its petition for attorney fees and expenses after the Court has ruled on this motion.

contingency fee agreement between client and attorney). Similarly, the Federal Circuit expressly

condones the lodestar approach for determining the amount of reasonable attorney fees under 35

U.S.C. § 285. *See, e.g., Maxwell v. Angel-Etts of California, Inc.*, No. 01-1601, 2002 WL

31809442 (Fed. Cir. Jan. 2, 2003).

      In determining the lodestar, Telcordia evaluated each time entry recorded by its litigation

team (including attorneys and litigation support personnel) to determine what percentage of the

time entry applied only to efforts regarding the '763 and '633 patents in the case against Cisco.

The time was then multiplied by the normal billing rate used by the attorneys and litigation

support personnel involved. Using this standard approach, Telcordia calculates the lodestar for

attorney fees at **REDACTED**, consisting of **REDACTED** from Finnegan, Henderson, Farabow,

Garrett & Dunner, L.L.P., and **REDACTED** from Ashby & Geddes, P.C.[3]

      "[S]ection 285 also permits the prevailing party to recover disbursements that were

necessary for the case." *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1069 (Fed. Cir.

1983). In evaluating expenses under 35 U.S.C. § 285, this Court has indicated

> Courts may award reimbursement of certain expenses when the
> expenses are reasonable, necessary to the prosecution of the
> litigation, and adequately documented. These expenses normally
> include those related to travel, food, lodging, telephone, mail,
> photocopying, facsimile, courier, filing fees, deposition transcripts,
> subpoena services, and other related services.

*Philips Elecs., Corp. v. Compo Micro Tech, Inc.*, No. Civ. A. 02-123-KAJ, 2006 WL 3020724 at

*6 (D. Del. Oct. 23, 2006)(internal citations omitted). As such, Telcordia applied the same

---

[3] Telcordia's actual attorney fees will ultimately be slightly greater than this estimate.
Specifically, Telcordia has not included in the estimate the amount for attorney fees associated
with post-trial matters such as the fees associated with preparing this motion. In the event that
the Court determines that Telcordia is entitled to attorney fees, Telcordia's fee petition will
include appropriate post-trial fees.

allocation approach to calculate its non-taxable costs and expenses[4] (i.e., determination of what percentage of each cost applied to efforts regarding the '763 and '633 patents in the case against Cisco) of the type set forth in the *Philips* case. Telcordia's calculations yield an estimate of **REDACTED** in non-taxable costs and expenses.

Finally, Telcordia seeks recovery of its expert witness fees and experts' expenses[5] pursuant to the Court's inherent equitable authority. *Amstead Industries Inc. v. Buckeye Steel Castings Co.*, 23 F.3d 374, 378 (Fed. Cir. 1994) (recognizing that expert witness fees beyond those recoverable under 28 U.S.C. § 1920 may be recoverable pursuant to the court's inherent equitable authority where a party acts "in bad faith, vexatiously, wantonly, or for oppressive reasons."). Telcordia estimates its non-taxable costs associated with its expert witnesses, including its expert witness fees, at **REDACTED**[6]

Again, if the Court grants attorney fees and expenses to Telcordia in this case, Telcordia will submit a detailed petition for fees and costs with an explanation of the fees and costs and supporting documentation memorializing the fees and costs. At this stage, however, Telcordia notes that the total attorney fees and expenses sought by Telcordia–**REDACTED**—is an ordinary and customary amount for a complex patent infringement case. Specifically, Telcordia

---

[4] Telcordia will submit its Bill of Costs for the recovery of taxable costs in accordance with the procedure and schedule set forth in D. Del. L.R. 54.1.

[5] Again, Telcordia intends to pursue taxable expert witness costs pursuant to 28 U.S.C. § 1920, as limited by 28 U.S.C. § 1821, in accordance with the procedure and schedule set forth in D. Del. L.R. 54.1. By this motion, however, Telcordia seeks expert witness fees and expenses beyond the taxable costs recoverable under 28 U.S.C. § 1920.

[6] Due to a time lag in billing cycles, Telcordia's actual costs will be slightly greater than this estimate. Specifically, Telcordia's calculation of both expert and non-expert costs will likely be modestly adjusted upward in the future after a full record is developed to account for all relevant costs incurred in May of 2007.

notes that the most recent "Report of the Economic Survey" published by the American

Intellectual Property Law Association shows that average total fees and costs in year 2005 for

patent infringement litigations with more than $25 million at stake fall in the range of around

$3.0 million to $9.4 million, depending on the type of practice and location involved. Ex. A.

## IV.    Argument

### A.    The Jury's Determination that Cisco Willfully Infringed Telcordia's Patents Warrants an Award of Attorney Fees Under 35 U.S.C. § 285

On May 10, 2007, the jury returned its verdict expressly finding that Cisco willfully

infringed Telcordia's '763 and '633 patents. D.I. 348. As noted in Telcordia's Opening Brief in

Support of Its Motion for Enhanced Damages, the jury rendered its verdict of willful

infringement against substantial evidence showing at least (1) that Cisco was acutely aware of

Telcordia's patents through 10 years of stonewalling against Telcordia's efforts to license Cisco,

(2) that Cisco's engineers were acutely aware of Telcordia's technology due to its objective

technical merits, (3) that Cisco copied Telcordia's technology, (4) that Cisco benefited from its

unsanctioned use of Telcordia's technology by expressly marketing its products as capable of

practicing Telcordia's technology, and (5) that Cisco enjoyed billions of dollars in non-RBOC

sales of its products that practice Telcordia's technology.

The jury's finding of willfulness alone is sufficient to warrant an award of attorney fees

under 35 U.S.C. § 285. *Yamanouchi Pharm. Co. v. Danbury Pharmacal, Inc.*, 21 F. Supp. 2d

366, 378 (S.D.N.Y. 1998), *aff'd*, 231 F.3d 1339 (Fed. Cir. 2000) ("[W]hile a finding of

willfulness does not mandate a fee award, it is sufficient—standing alone—to warrant such an

award.")

**B.    Cisco Forced Telcordia to Produce Hundreds of Thousands of Documents that Cisco Already Possessed and that Cisco Did Not Use**

As a general matter, during the discovery phase of the case Cisco vigorously pursued wide ranging and expensive discovery from Telcordia without a good faith need for the discovery. Cisco was well aware of                **REDACTED**

and employed a discovery strategy designed to needlessly increase Telcordia's fees and expenses in order to exert pressure on Telcordia and its counsel. For its part, Telcordia and its counsel had every incentive to try to refocus Cisco on the core substantive issues in the case and to avoid engaging in collateral litigation gamesmanship. Nevertheless, Cisco often succeeded in its strategy to divert and drain Telcordia's financial resources during the discovery process.

One of the most notable examples of Cisco's discovery excess concerns Cisco's insistence that Telcordia produce its "OSMINE" documentation. As established during trial, through its Operation Systems Modifications for the Integration of Network Elements ("OSMINE") services, Telcordia modifies its operation systems software to accommodate new products from vendors, including Cisco, and to ensure that the products are compatible with the network. Testimony of J. Giordano at Trial Tr. 371-72. During this process, as Cisco knows, a large volume of technical documentation is exchanged between the vendor and Telcordia.

During an October 11, 2005, discovery hearing in the Lucent case, counsel for Lucent argued that Telcordia should produce all of its OSMINE documentation for Lucent products, despite acknowledging that the documentation was sent to Telcordia by Lucent in the first instance during Lucent's participation in the OSMINE program. October 11, 2005, Hearing Tr. at 29-30. Cisco quickly jumped on this bandwagon, demanding that "Telcordia [] produce all documents and things relating to Telcordia's analyses of Cisco's accused products as part of Telcordia's OSMINE testing and certification process . . ." Ex. B. Cisco knew that the volume

of documents it sought was extraordinary (indeed, Cisco was requesting that Telcordia produce back to Cisco the documents that Cisco had already exchanged with Telcordia as part of the OSMINE services that Telcordia provided to Cisco).

This burdensome discovery demand was made under the assumption that Telcordia had violated both contractual and statutory obligations governing Telcordia's use of the technical documentation that it receives by virtue of its OSMINE business. Specifically, in furtherance of its strained laches theory, Cisco sought reproduction of the OSMINE documents in an effort to establish that Telcordia knew that Cisco was infringing long ago because Telcordia was in possession of detailed technical documentation about Cisco's products. But Cisco knew that under express contractual and statutory provisions, Cisco's technical documentation and information submitted to Telcordia for OSMINE purposes could be used by Telcordia only for OSMINE purposes, and could not be used to evaluate infringement or for any other purposes. Specifically, Telcordia's OSMINE contract with Cisco provides:

> 9.1  Confidential Information disclosed by CISCO (and appropriately marked as being confidential) in connection with the work conducted under this Agreement shall be used by BELLCORE only for such modifications and other work performed under this Agreement.

Testimony of J. Giordano at Trial Tr. 371-72; PTX 451. Additionally, Section 273(d)(2) of the Telecommunications Act of 1996 provides:

> [a]ny entity which establishes standards for telecommunications equipment or customer premises equipment, or generic network requirements for such equipment, or certifies telecommunications equipment or customer premises equipment shall be prohibited from releasing or otherwise using any proprietary information, designated as such by its owner, in its possession as a result of such activity, for any purpose other than purposes authorized in writing by the owner of such information, even after such entity ceases to be so engaged.

47 U.S.C. § 273(d)(2).

Cisco had no basis to believe that Telcordia violated these contractual and statutory provisions, but Cisco nevertheless demanded that Telcordia produce all OSMINE documentation under the assumption that Telcordia had in fact violated its obligations.  The argument was articulated by counsel for Lucent at the October 11, 2005, hearing: "they are saying you have the documents.  My answer is, I understand we have the documents and we gave them to you.  But once they went into the black hole of Telcordia -- I don't know how they saw them, what they used them for, when they used them."  October 11, 2005, Tr. at 30-31.  Again, Cisco adopted these arguments and demanded production from Telcordia.  Ex. B.  In sum, Cisco subjected Telcordia to highly burdensome demands for production of material that was already in Cisco's possession on the baseless speculation that Telcordia improperly used the material in violation of contractual and statutory provisions.

Because many of Telcordia's core business operations involve vendors' submission of highly confidential technical documentation to Telcordia with the trust that Telcordia will honor contractual and statutory obligations protecting the confidentiality of the information, Cisco's rank speculation that Telcordia misuses vendor information when the information is sent into the "black hole" of Telcordia threatened to adversely impact Telcordia's business and reputation well beyond the bounds of this litigation.  In order to clear its name and avoid any negative inferences or further unjustified accusations about Telcordia's treatment of its customers' highly confidential and sensitive information, Telcordia reluctantly reproduced Cisco's OSMINE documentation back to Cisco.

Specifically, at great expense Telcordia collected, reviewed, processed, and produced to Cisco at least 216,035 hardcopy documents and at least 19,213 computer files consisting of hundreds of thousands of pages of documents.  Cisco never used any of this material in the

litigation—not as trial exhibits and not even as deposition exhibits. As Cisco knew before it demanded production from Telcordia, the material simply was not relevant to any issue in the case. Given Cisco's excessive approach to discovery in this litigation, an award of attorney fees is particularly appropriate. *Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1552 n.1 (Fed. Cir. 1989)(recognizing discovery abuses as an appropriate consideration in an attorney fees analysis under 35 U.S.C. § 285); *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmBH v. Dana Corp.*, 372 F. Supp. 2d 833, 849 n.24 (E.D. Va. 2005)(recognizing discovery abuses as a proper consideration in an attorney fees analysis under 35 U.S.C. § 285).

### C.    Cisco Employed a Shotgun Approach to this Litigation

Cisco employed a haphazard shotgun approach to its defenses in this action asserting—in addition to noninfringement, invalidity, and inequitable conduct—laches, equitable estoppel, patent misuse, unclean hands, intervening rights, implied license, and exhaustion. D.I. 33. Although Telcordia was forced to investigate, conduct discovery, and develop positions in response to each of Cisco's defenses, Cisco never pursued the majority of its shotgun equitable defenses at trial. First, during the parties' exchange of draft final pretrial orders, and only after Telcordia had gone as far as addressing the defenses in its trial brief, its statement of contested issues, and its jury instructions, Cisco finally disclosed that it intended to drop its defenses of implied license and exhaustion. Ex. C . Next, during trial Cisco finally dropped its misuse, unclean hands, and intervening rights defenses by removing the defenses from the verdict form, leaving only laches and equitable estoppel. In sum, although Telcordia was forced expend its time and resources to address all seven of the collateral equitable defenses that Cisco pled, Cisco only ultimately pursued two of the defenses.

Moreover, Cisco further needlessly complicated the expense and burden of addressing Cisco's shotgun defenses by actually adding a new, complex unenforceability theory to the case

just before trial.  Specifically, Cisco added in its trial brief—too late for Telcordia to move *in limine*—the brand new contention that Telcordia's SRTS patent should be rendered unenforceable because Telcordia "now demands terms from Lucent and Cisco that materially differ from all previous licenses it granted."  D.I. 318 at Ex. I2.  Although it ultimately did not actually pursue the defense at trial, the addition of the defense had the desired effect of disrupting Telcordia's trial preparation and presentation.  Specifically, Cisco's newly disclosed unenforceability theory—based upon Telcordia's effort to seek different recovery from a willful infringer during litigation than it sought from willing licensees in a business negotiation—required at least two Telcordia witnesses, Mr. Giordano and Mr. Nawrocki, to prepare to address issues relating to the untimely unenforceability theory.  Testimony of J. Giordano at Trial Tr. 315-16, 364-66; Testimony of J. Nawrocki at Trial Tr. 1318, 1383-84.

In sum, Cisco's shotgun approach to its defenses had the desired effect—it diluted Telcordia's litigation resources, drove up Telcordia's costs and expenses, and distracted Telcordia from addressing the substantive issues in the case that truly mattered.  Cisco's casual approach to its assertion of defenses in this case warrants an award of attorney fees. *Securacomm Consulting, Inc. v. Securacom Inc.*, 224 F.3d 273, 281-82 (3d Cir. 2000) (recognizing "litigation conduct includ[ing] filing and dropping defenses and claims, plead[ing] defenses of only marginal relevance, and various discovery and trial abuses" as proper considerations in a fee shifting analysis under 35 U.S.C. § 285); *Taltech, Ltd. v. Esquel Apparel, Inc.*, No. C04-974Z, 2007 WL 764766 at *36 (W.D. Wash. March 9, 2007) (finding an exceptional case and awarding attorney fees where "[t]here has been a pattern of making expansive claims, only to later withdraw them prior to an adjudication on the merits.").

12

**D.    Cisco Withheld Highly Relevant Critical Information About its Products Until the Month Before Trial**

Much to Telcordia's surprise, Cisco—in an effort to comply with an Order compelling it to produce discovery in the parallel investigation before the International Trade Commission—produced highly relevant technical documentation regarding the structure and operation of its products for the first time in February and March of 2007. *See, e.g.,* PTX 1517 produced on Feb. 5, 2007. Telcordia expressly requested the production of this exact technical documentation—board layout schematics that illustrate the relationship between all of the components on the accused Cisco modules—multiple times during discovery in this case. For example, in a letter addressing deficiencies in Cisco's production sent as early as August of 2005, Telcordia expressly requested that Cisco produce its "engineering specifications, board layouts, bills of materials, and schematics." Ex. D. Having received no response, Telcordia repeated its request for this critical technical documentation in a letter dated September 27, 2005. Ex. E. Ultimately, Cisco responded that it believed its document production to be substantially complete and that it believed that its "document production as of October 31 [2005] resolved the issues in your September 27 [2005] letter." Ex. F. Although Telcordia sent additional letters directed toward board layout schematics (Ex. G), given Cisco's representations about the completeness of its production in the face of Telcordia's express requests for board layout schematics, Telcordia did not expect that Cisco was simply withholding the schematics from production.

Cisco's late production of fundamental technical documentation that was expressly requested multiple times during discovery is inexcusable. The surprise production in the midst of Telcordia's trial preparation required Telcordia's expert to draft and file a supplemental expert report addressing the new technical documentation on April 13, 2007—a mere two weeks before

the start of trial.  Again, Cisco's casual approach to its discovery obligations and last minute

attempt to cure its improper withholding of critical technical documentation warrants a finding of

attorney fees.  *Eltech Systems, Corp. v. PPG Industries, Inc.*, 903 F.2d 805, 810-12 (Fed. Cir.

1990)(finding of exceptional case and attorney fees award upheld where plaintiff, *inter alia*,

withheld critical technical documentation from production).

### E.    Cisco Asserted Serious Fraud Charges Without the Requisite Evidence of Knowledge or Intent

Cisco's primary defense of inequitable conduct in this case centered on personal attacks

against inventors Richard Lau, Paul Fleischer, and Jonathan Chao.  Yet, Cisco lacked evidence

that any of these inventors committed fraud or intended in any way to deceive the U.S. Patent

Office.  Instead, the evidence showed the opposite.

Highlighting the strained and baseless nature of Cisco's charges, as part one of its

counterclaims, Cisco leveled serious allegations of inequitable conduct against Telcordia and the

inventor of the '306 patent, Jonathan Chao.  In order to prove its case for inequitable conduct,

Cisco had to establish by clear and convincing evidence that someone involved in a substantial

way with the prosecution of the '306 patent application withheld material information during the

prosecution with an intent to deceive or mislead the U. S. Patent and Trademark Office.  *Elk

Corp. v. GAF Bldg. Materials Corp.*, 168 F.3d 28, 30 (Fed. Cir. 1999).  At trial, during the cross

examination of Cisco's expert witness, Dr. Acampora, the questionable nature of Cisco's serious

allegation was exposed.  As it turns out, Dr. Acampora did not seem to even understand the

opinions that he had issued on the serious charge of inequitable conduct:

> Q:    And you are confident about your opinions that Dr. Chao withheld material information from the Patent and Trademark Office.  Is that right?
>
> A:    Did I say that Dr. Chao withheld?  I believe material information was withheld.

> Q:      Okay. So who withheld it?
>
> A:      Perhaps it was Dr. Chao -- I don't know if I said Dr. Chao withheld it or Bellcore withheld it. I believe my testimony was to the effect that there were documents that I think the examiner would have been interested in had he been aware of them.
>
> Q:      Are you accusing any one person of fraud then?
>
> A:      I am not accusing anyone of fraud.
>
> Q:      You are not accusing Dr. Chao of fraud?
>
> A:      I don't think I am. I don't know. What I am saying is there was material that should have been before the examiner that wasn't.

Testimony of A. Acampora at Trial Tr. 1704. Aside from not understanding the import of his opinion, Dr. Acampora testified that he did not know whether Jonathan Chao even knew about the key reference that Cisco relied upon in alleging inequitable conduct:

> Q:      You don't know whether Jonathan Chao knew about Fasnet, do you?
>
> A:      What I do know is it was reference in one of his patents.
>
> Q:      That's all you know.
>
> A:      And assuming that there were other inventors who might have caused that to be cited, then I guess I don't know that Chao knew about Fasnet.

Testimony of A. Acampora at Trial Tr. 1729. Finally, Cisco offered no evidence of intent to deceive whatsoever. Despite the questionable nature of Cisco's positions on knowledge and intent, Telcordia was nevertheless forced to grapple with Cisco's serious charges of inequitable conduct throughout this litigation—all the way through a cross-examination of Cisco's expert on the matter before the jury.

**V.    Conclusion**

For all of the reasons set forth in Telcordia's Motion to Enhance Damages Pursuant to 35

U.S.C. § 284—including Cisco's willful infringement and the egregiousness of Cisco's conduct

based upon the *Read* factors—and because Cisco litigated this case in a manner that

unnecessarily increased Telcordia's expenses, Telcordia respectfully requests that the Court find

this case exceptional and award Telcordia its reasonable attorney fees and expenses pursuant to

35 U.S.C. § 285 and its inherent equitable authority.

ASHBY & GEDDES

/s/ *John G. Day*

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware  19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Plaintiff*
*Telcordia Technologies, Inc*

*Of Counsel:*

Donald R. Dunner
Steven M. Anzalone
Richard H. Smith
James T. Wilson
John M. Williamson
FINNEGAN, HENDERSON, FARABOW,
   GARRETT & DUNNER, L.L.P.
901 New York Ave., N.W.
Washington, D.C.  20001
(202) 408-4000

Dated: May 30, 2007
181116.1