# EXHIBIT A

# AIPLA

# Report of the Economic Survey

## 2005

PREPARED UNDER DIRECTION OF
LAW PRACTICE MANAGEMENT COMMITTEE

American Intellectual Property Law Association
2001 Jefferson Davis Highway, Suite 203
Arlington, Virginia 22202
www.aipla.org

# AIPLA

# REPORT OF THE ECONOMIC SURVEY 2005

PREPARED UNDER DIRECTION OF THE
AMERICAN INTELLECTUAL PROPERTY LAW ASSOCIATION
LAW PRACTICE MANAGEMENT COMMITTEE

SALVATORE ANASTASI, CHAIR
KEVIN ALAN WOLFF, VICE CHAIR

September 2005



4 RESEARCH PLACE, SUITE 220
ROCKVILLE, MARYLAND 20850
TEL: (240) 268-1262
ARI@ASSOCIATIONRESEARCH.COM

©2005 AMERICAN INTELLECTUAL PROPERTY LAW ASSOCIATION

ALL RIGHTS RESERVED. NO PART OF THIS BOOK MAY BE REPRODUCED OR TRANSMITTED IN
ANY FORM OR BY ANY MEANS, ELECTRONIC OR MECHANICAL, INCLUDING PHOTOCOPYING,
RECORDING, OR BY AN INFORMATION STORAGE AND RETRIEVAL SYSTEM, WITHOUT PERMISSION
IN WRITING FROM THE PUBLISHER.

COPIES OF THIS REPORT ARE AVAILABLE FROM AIPLA AT A COST OF $35 PER COPY FOR
MEMBERS AND $300 PER COPY FOR NON-MEMBERS.

AMERICAN INTELLECTUAL PROPERTY LAW ASSOCIATION
2001 JEFFERSON DAVIS HIGHWAY, SUITE 203
ARLINGTON VA  22202-3694
(703) 415-0780
WWW.AIPLA.ORG

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

DATA COLLECTION .................................................................................................... 1

DESCRIPTION OF STATISTICS AND FORMATTING CONVENTIONS ...................... 2

RESPONDENT BACKGROUND .................................................................................. 4

INCOME RECEIVED IN 2004 AND PROJECTED FOR 2005 ...................................... 7

TEN-YEAR COMPARISON OF MEDIAN INCOMES ................................................... 8

SUMMARY OF SURVEY RESULTS BY PRACTICE TYPE ......................................... 8
    SOLO PRACTITIONER ............................................................................................ 8
    PRIVATE FIRM PARTNER/SHAREHOLDER ........................................................ 11
    PRIVATE FIRM ASSOCIATE ................................................................................ 13
    HEAD OF CORPORATE IP DEPARTMENT ......................................................... 16
    CORPORATE IP DEPARTMENT ATTORNEY ...................................................... 17

TYPICAL CHARGES FOR IP LAW SERVICES ........................................................ 18

TYPICAL COSTS OF LITIGATION ........................................................................... 22

CHARACTERISTICS OF FIRMS ............................................................................... 27
    NUMBER AND TYPE OF ATTORNEYS ............................................................... 27
    ASSOCIATE STARTING AND SUMMER COMPENSATION .................................. 30
    SUPPORT STAFF AND SERVICES ..................................................................... 31
    BILLING RATES AND PRACTICES ...................................................................... 34
    LIABILITY INSURANCE ........................................................................................ 36

STATISTICAL TABLES ................................................................................ APPENDIX A
    INDIVIDUAL DATA .................................................................................. I-1 TO I-124
    FIRM DATA ................................................................................................ F-1 TO F-29

SURVEY INSTRUMENTS ............................................................................ APPENDIX B

## TYPICAL COSTS OF LITIGATION

Survey participants were asked to provide cost estimates, *but only for the types of litigation they had personal knowledge of, either as a service provider (attorney in private practice) or as a purchaser (corporate counsel), and were engaged in recently.* "Total cost" was requested, including outside legal and paralegal services, local counsel, associates, paralegals, travel and living expenses, fees and costs for court reporters, photocopies, courier services, exhibit preparation, analytical testing, expert witnesses, translators, surveys, jury advisors, and similar expenses.

The following table reports typical litigation costs for <u>Patent Infringement</u>, <u>Trademark Infringement</u>, <u>Trademark Opposition/Cancellation</u>, <u>Copyright Infringement</u>, <u>Trade Secret Misappropriation</u>, <u>Interference</u>, and <u>Inter Partes Reexamination</u>.

| TYPICAL LITIGATION COSTS | $000's | | |
|---|---|---|---|
| | 2001 | 2003 | 2005 |
| **PATENT INFRINGEMENT SUIT** | | | |
| LESS THAN $1 MILLION AT RISK | | | |
| End of discovery | $250 | $290 | $350 |
| Inclusive, all costs | 499 | 500 | 650 |
| $1-$25 MILLION AT RISK | | | |
| End of discovery | $ 797 | $1,001 | $1,250 |
| Inclusive, all costs | 1,499 | 2,000 | 2,000 |
| MORE THAN $25 MILLION AT RISK | | | |
| End of discovery | $1,508 | $2,508 | $3,000 |
| Inclusive, all costs | 2,992 | 3,995 | 4,500 |
| | | | |
| **TRADEMARK INFRINGEMENT SUIT** | | | |
| LESS THAN $1 MILLION AT RISK | | | |
| End of discovery | $102 | $150 | $200 |
| Inclusive, all costs | 230 | 298 | 300 |
| $1-$25 MILLION AT RISK | | | |
| End of discovery | $299 | $365 | $400 |
| Inclusive, all costs | 502 | 602 | 700 |
| MORE THAN $25 MILLION AT RISK | | | |
| End of discovery | $ 502 | $ 599 | $ 750 |
| Inclusive, all costs | 1,001 | 1,006 | 1,250 |
| | | | |
| **TRADEMARK OPPOSITION/CANCELLATION** | | | |
| End of discovery | $35 | $50 | $50 |
| Inclusive, all costs | 50 | 78 | 80 |
| | | | |
| **COPYRIGHT INFRINGEMENT SUIT** | | | |
| LESS THAN $1 MILLION AT RISK | | | |
| End of discovery | $101 | $101 | $138 |
| Inclusive, all costs | 200 | 249 | 250 |
| $1-$25 MILLION AT RISK | | | |
| End of discovery | $202 | $298 | $250 |
| Inclusive, all costs | 400 | 499 | 440 |
| MORE THAN $25 MILLION AT RISK | | | |
| End of discovery | $400 | $501 | $550 |
| Inclusive, all costs | 750 | 950 | 975 |

**TYPICAL LITIGATION COSTS**
(CONTINUED)

| | $000's | | |
|---|---|---|---|
| | 2001 | 2003 | 2005 |
| **TRADE SECRET MISAPPROPRIATION SUIT** | | | |
| **LESS THAN $1 MILLION AT RISK** | | | |
| End of discovery | $126 | $199 | $200 |
| Inclusive, all costs | 251 | 350 | 300 |
| **$1-$25 MILLION AT RISK** | | | |
| End of discovery | $400 | $499 | $ 500 |
| Inclusive, all costs | 699 | 875 | 1,000 |
| **MORE THAN $25 MILLION AT RISK** | | | |
| End of discovery | $ 700 | $ 998 | $1,000 |
| Inclusive, all costs | 1,009 | 1,749 | 2,000 |
| **INTERFERENCE** | | | |
| End of discovery | $100 | $113 | $300 |
| Inclusive, all costs | 201 | 302 | 600 |
| **INTER PARTES REEXAMINATION** | | | |
| Through request | NA | NA | $20 |
| Inclusive of first patent owner response | NA | NA | $30 |
| Inclusive of all patent owner responses | NA | NA | $40 |
| Inclusive of an appeal to the board | NA | NA | $52 |
| Inclusive of an appeal to federal court | NA | NA | $95 |

## ESTIMATED TOTAL COST OF A
## PATENT INFRINGEMENT SUIT (P. I-108 to I-110, Q42a-Q42f)



*Typical Costs of Litigation*

**Litigation-Patent Infringement >$25M End of Discovery (Q42e)**

| Total Cost | | Number of Individuals | Mean (Average) | First Quartile 25% | Median (Midpoint) | Third Quartile 75% |
|---|---|---|---|---|---|---|
| | | Litigation-Patent Infringement >$25M End of Discovery | | | | |
| All Individuals | | 294 | $3,239,136 | $1,400,000 | $3,000,000 | $4,000,000 |
| Type of Practice | 1-5 Attorneys | 25 | $2,127,000 | $500,000 | $2,000,000 | $2,750,000 |
| | 6-75 Attorneys | 124 | $3,058,871 | $1,000,000 | $2,350,000 | $4,000,000 |
| | 76 or more Attorneys | 58 | $3,888,793 | $3,000,000 | $3,000,000 | $3,125,000 |
| | All Corporate | 74 | $3,472,040 | $1,500,000 | $3,000,000 | $5,000,000 |
| Location | Boston CMSA | 14 | $2,528,571 | $1,375,000 | $2,500,000 | $3,000,000 |
| | NYC CMSA | 35 | $4,135,742 | $2,000,000 | $4,000,000 | $5,000,000 |
| | Philadelphia CMSA | 29 | $2,793,103 | $2,650,000 | $3,000,000 | $3,000,000 |
| | Washington, DC CMSA | 25 | $4,468,000 | $3,000,000 | $4,000,000 | $5,000,000 |
| | Other East | 13 | $1,680,769 | $775,000 | $1,200,000 | $2,050,000 |
| | Metro Southeast | 11 | $7,118,182 | $2,000,000 | $3,000,000 | $8,000,000 |
| | Other Southeast | 7 | $1,921,429 | $500,000 | $1,000,000 | $3,000,000 |
| | Chicago CMSA | 33 | $2,664,545 | $1,900,000 | $2,500,000 | $3,500,000 |
| | Minne.-St. Paul PMSA | 8 | $2,218,750 | $1,200,000 | $1,500,000 | $4,000,000 |
| | Other Central | 34 | $1,876,471 | $500,000 | $1,125,000 | $3,000,000 |
| | Texas | 24 | $2,917,708 | $1,075,000 | $2,750,000 | $4,000,000 |
| | Los Angeles CMSA | 16 | $2,121,875 | $1,000,000 | $1,875,000 | $3,000,000 |
| | San Francisco CMSA | 20 | $5,710,000 | $2,275,000 | $3,000,000 | $3,875,000 |
| | Other West | 23 | $3,247,826 | $2,000,000 | $3,000,000 | $3,000,000 |

**Litigation-Patent Infringement >$25M Inclusive, all costs (Q42f)**

| Total Cost | | Number of Individuals | Mean (Average) | First Quartile 25% | Median (Midpoint) | Third Quartile 75% |
|---|---|---|---|---|---|---|
| | | Litigation-Patent Infringement >$25M Inclusive, all costs | | | | |
| All Individuals | | 299 | $5,175,753 | $2,500,000 | $4,500,000 | $6,000,000 |
| Type of Practice | 1-5 Attorneys | 26 | $3,548,077 | $937,500 | $2,750,000 | $5,000,000 |
| | 6-75 Attorneys | 123 | $5,044,715 | $2,250,000 | $4,000,000 | $5,000,000 |
| | 76 or more Attorneys | 60 | $5,640,833 | $4,000,000 | $5,000,000 | $5,375,000 |
| | All Corporate | 77 | $5,710,390 | $3,000,000 | $5,000,000 | $8,000,000 |
| Location | Boston CMSA | 14 | $4,107,143 | $2,875,000 | $3,750,000 | $5,250,000 |
| | NYC CMSA | 35 | $6,190,000 | $4,000,000 | $5,000,000 | $8,000,000 |
| | Philadelphia CMSA | 28 | $4,712,500 | $4,400,000 | $5,000,000 | $5,000,000 |
| | Washington, DC CMSA | 24 | $6,947,917 | $4,500,000 | $6,000,000 | $7,750,000 |
| | Other East | 13 | $3,076,923 | $2,000,000 | $3,000,000 | $3,250,000 |
| | Metro Southeast | 11 | $9,440,909 | $1,500,000 | $4,500,000 | $11,000,000 |
| | Other Southeast | 7 | $3,342,857 | $1,000,000 | $2,500,000 | $4,000,000 |
| | Chicago CMSA | 34 | $4,404,412 | $3,000,000 | $4,450,000 | $5,187,500 |
| | Minne.-St. Paul PMSA | 9 | $3,688,889 | $2,150,000 | $3,000,000 | $5,000,000 |
| | Other Central | 35 | $3,258,571 | $1,000,000 | $2,000,000 | $5,000,000 |
| | Texas | 24 | $4,993,750 | $2,200,000 | $4,900,000 | $6,750,000 |
| | Los Angeles CMSA | 18 | $4,866,667 | $2,075,000 | $3,000,000 | $5,000,000 |
| | San Francisco CMSA | 21 | $7,985,714 | $3,000,000 | $5,000,000 | $6,000,000 |
| | Other West | 24 | $5,283,333 | $2,750,000 | $5,000,000 | $5,750,000 |

# EXHIBIT B

10 27 05 (from Cisco)

From: DOMGWIA.Internet.jessica.davis@weil.com
Sent: Thursday, October 27, 2005 7:52 PM
To: Williamson, John
Cc: JBlumenfeld@MNAT.com
Subject: Telcordia v. Cisco

Attachments: Mime.822

John:

As a result of the recent teleconference with the Court in the Telcordia v. Lucent case, we expect Telcordia will promptly supplement its responses to Cisco's interrogatories and its document production consistent with the Court's rulings.  In particular, we expect that Telcordia will supplements its discovery as follow:

1.    Telcordia will produce all documents and things relating to Telcordia's analyses of Cisco's accused products as part of Telcordia's OSMINE testing and certification process and Telcordia's sale of its products as compatible with Cisco's accused products, including documents showing what Telcordia knew about Cisco's accused products, the individuals with this knowledge, and when Telcordia became aware of this information. We will agree that outside counsel for Telcordia can collect these documents from Telcordia employees for the sole purpose of producing them in the Telcordia v. Cisco litigation without violating any contractual obligations to Cisco.

2.    Telcordia will supplement its response to Cisco's Interrogatory No. 8 to provide Telcordia's earliest claimed conception and reduction to practice dates.  As the Court held, Telcordia's response that the claimed inventions were conceived and reduced to practice "at least as early as" the filing dates of the patents in suit is not appropriate.  Telcordia must promptly identify the earliest conception and reduction to practice dates it intends to rely on at trial.  As you know, the Court rejected Telcordia's strategy of waiting to see what prior art the defendants identify before providing definite dates.

3.    Telcordia will supplement its response to Cisco's Interrogatory No. 7 to provide the dates by which Telcordia claims it became aware of Cisco's alleged infringement of each of the asserted patents.  Telcordia's response to this interrogatory discusses pre-suit communications with Cisco, but does not identify the dates by which Telcordia is claiming it became aware of Cisco's alleged infringement as the Court ordered Telcordia to do in the Lucent case.

Please let us know by when we can expect this information.

Thanks,
Jessica

Jessica L. Davis
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Telephone:   (650) 802-3909
Facsimile:    (650) 802-3100
Only admitted to practice in NY

< END >

-----------------------------------------
The information contained in this email message is intended only for

10 27 05 (from Cisco)

use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by email (postmaster@weil.com), and destroy the original message. Thank you

# EXHIBIT C

## Williamson, John

| | |
|---|---|
| **From:** | jessica.davis@weil.com |
| **Sent:** | Friday, February 09, 2007 3:39 AM |
| **To:** | Dunner, Don; Anzalone, Steven; Williamson, John; SBalick@ashby-geddes.com |
| **Cc:** | steven.cherny@lw.com; Sasha.Mayergoyz@lw.com; sean.pak@lw.com; David.McKone@lw.com; david.nelson@lw.com; JBlumenfeld@MNAT.com; lpolizoti@mnat.com; jshaw@ycst.com; matthew.powers@weil.com; edward.reines@weil.com; sonal.mehta@weil.com |
| **Subject:** | Defendants' Draft Proposed Pretrial Order (Email 3 of 4) |
| **Attachments:** | #264454 v3 - Exhibit I3A -- Preliminary Jury Instructions.doc; #263932 v5 - Exhibit I3 B -- Final Jury Instructions and Comments.doc; #264469 v4 - Exhibit I4 -- Proposed Verdict Form.doc; Pretrial Order_#264446.DOC; #264681 v2 - Exhibit G -- Special Damages.doc |

Counsel:

Attached please find Defendants' draft of the proposed Pretrial Order.

Jessica L. Davis
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Direct Dial:    (650) 802-3909
Facsimile:    (650) 802-3100

< END >

The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by email (postmaster@weil.com), and destroy the original message. Thank you

## 5.5 PATENT EXHAUSTION *(DISPUTED)*

### Plaintiff's Instruction

Cisco alleges that Telcordia's patent infringement claims are barred by the doctrine of patent exhaustion. To establish patent exhaustion, Cisco must show that Telcordia unconditionally licensed its patent to a third party, and that Cisco is entitled to the benefit of that license because it bought licensed components of its product from the licensed third party supplier. For example, Cisco contends that it bought licensed "off-the-shelf" chips from a licensed supplier, and therefore it should not be subject to further license obligations to Telcordia.

**Source:**    *LG Electronics, Inc. v. Bizcom Electronics, Inc.*, 453 F.3d 1364, 1369-70 (Fed. Cir. 2006).

### Defendants' Objections

Cisco objects to Telcordia's proposed instruction as unnecessary because Cisco is not pursuing a patent exhaustion defense.

113

### 5.3  IMPLIED LICENSE    *(DISPUTED)*

#### Plaintiff's Instruction

Cisco alleges that Telcordia's patent infringement claims are barred by implied license. Cisco asserts that any infringement in this case should be excused because Telcordia granted an implied license to Cisco under the patents.  An implied license may only be found, however, where Telcordia exhibited language or conduct from which Cisco may properly have inferred that Telcordia consented to Cisco's use of the patents.  And, Cisco must have acted as a direct consequence of Telcordia's conduct or language.  Thus, an implied license cannot arise out of Cisco's unilateral expectations or even reasonable hopes.  Cisco must have been led to take action by Telcordia's actions.  Accordingly, if Cisco was unaware of the conduct which supposedly created the license, or Cisco did not act in response to such conduct, there can be no finding of implied license.

**Source:**  *De Forest Radio Telephone Co. v. United States,* 273 U.S. 236, 241 (1927); *Stickle v. Heublein, Inc.,* 716 F.2d 1559; *Wang Labs., Inc. v. Mitsubishi Electronics America, Inc.,* 103 F.3d 1571, 1580-81 (Fed. Cir. 1997); *Bandag, Inc. v. Al Bolser's Tire Stores, Inc.,* 750 F.2d 903, 925 (Fed. Cir. 1984).

#### Defendants' Objections

Cisco objects to Telcordia's proposed instruction as unnecessary because Cisco is not pursuing an implied license defense.

# EXHIBIT D



**FINNEGAN
HENDERSON
FARABOW
GARRETT &
DUNNER LLP**

901 New York Avenue, NW ▪ Washington, DC 20001-4413 ▪ 202.408.4000 ▪ Fax 202.408.4400
www.finnegan.com

JOHN M. WILLIAMSON
202.408.4282
john.williamson@finnegan.com

August 5, 2005

Edward R. Reines, Esq.
Weil, Gotshal & Manges LLP                         *via email*
201 Redwood Shores Parkway
Redwood Shores, CA 94065

<u>Telcordia Technologies, Inc. v. Cisco Systems, Inc.</u>

Dear Ed:

We write concerning (1) the status of Cisco's document production, and (2) Telcordia's 30(b)(6) notice of deposition to Cisco. As you are aware, we have asked Cisco to agree to a date for the mutual substantial completion of document production. We are, however, not only concerned about Cisco's reluctance to cooperate in establishing an appropriate time frame for document production, but also about the deficient content of Cisco's production.

To date, Cisco has only produced nine boxes of documents and, by any standard, those nine boxes do not fully respond to Telcordia's discovery requests. Cisco's production of technical documents is incomplete and its production of financial documents is nonexistent.

Cisco appears to have only produced the manuals and documentation that it provides to customers, not the type of documents Cisco used to build its products. Missing from Cisco's production are, for example, technical documents showing (1) Cisco's internal communications (including e-mails) concerning its products, (2) Cisco's communications with component suppliers, (3) Cisco's communications with customers concerning its products, and (4) documents created by Cisco's engineers when designing its products (such as engineering specifications, board layouts, bills of materials, and schematics).

Moreover, Cisco has produced no financial documents, no purchasing data relating to its suppliers, no sales data, and no licensing agreements at all. We recognize that Cisco is producing documents on a rolling basis, and we expect Cisco to cure these, and all other, deficiencies with its future document productions. If, however, you believe that Cisco has completed its production on the topics identified in this letter, and you do not intend to produce additional documents responsive to the above categories, please let us know by no later than August 9, 2005.

Washington, DC ▪ Atlanta, GA ▪ Cambridge, MA ▪ Palo Alto, CA ▪ Reston, VA ▪ Brussels ▪ Taipei ▪ Tokyo

HENDERSON
FARABOW
GARRETT &
DUNNER LLP

Edward R. Reines, Esq.
August 5, 2005
Page 2

     Finally, during a telephone call with Richard Rainey, you have indicated that Cisco does not intend to produce a witness in response to Telcordia's July 22, 2005, 30(b)(6) deposition notice on the noticed date.  Please provide an alternative date by no later than August 9, 2005.

     Very Truly Yours,

John M. Williamson

# EXHIBIT E



901 New York Avenue, NW ▪ Washington, DC 20001-4413 ▪ 202.408.4000 ▪ Fax 202.408.4400
www.finnegan.com

**FINNEGAN
HENDERSON
FARABOW
GARRETT &
DUNNER LLP**

JOHN M. WILLIAMSON
202.408.4282
john.williamson@finnegan.com

September 27, 2005

Sonal N. Mehta, Esq.
Weil, Gotshal & Manges LLP            *via email*
201 Redwood Shores Parkway
Redwood Shores, CA 94065

<u>Telcordia Technologies, Inc. v. Cisco Systems, Inc.</u>

Dear Sonal:

Further to our letter of August 5, 2005, the status of Cisco's production of documents and information remains deficient as to certain broad categories of responsive documents. We are aware that Cisco will, pursuant to our agreement, produce documents and information on a rolling basis to be substantially completed by October 31, 2005. In this regard, Telcordia expects that Cisco's production will include, for example, technical documents showing (1) Cisco's internal communications (including emails) concerning its products, (2) Cisco's communications with component suppliers, (3) Cisco's communications with customers concerning its products, and (4) documents created by Cisco's engineers when designing its products (such as engineering specifications, board layouts, bills of materials, and schematics). At this point, we believe Cisco has not produced these types of documents. Moreover, Cisco has not produced significant financial documents, such as, for example, purchasing data, sales data, and licensing agreements.

Also, it appears that Cisco has produced voluminous electronic files in hard copy form. Telcordia expects that Cisco will produce relevant electronic files, such as those tracking sales information by product number for example, in electronic form.

Please let us know, by no later than October 3, 2005, whether Cisco is collecting and intends to produce the types of documents and information referenced in this letter and in our letter of August 5, 2005. If Cisco intends to withhold any of the types of documents and information identified in our letters, please explain the basis for withholding the production.

Very Truly Yours,

John M. Williamson

Washington, DC ▪ Atlanta, GA ▪ Cambridge, MA ▪ Palo Alto, CA ▪ Reston, VA ▪ Brussels ▪ Taipei ▪ Tokyo

# EXHIBIT F

# WEIL, GOTSHAL & MANGES LLP

SILICON VALLEY OFFICE
201 REDWOOD SHORES PARKWAY
REDWOOD SHORES, CALIFORNIA 94065

(650) 802-3000
FAX: (650) 802-3100

AUSTIN
BOSTON
BRUSSELS
BUDAPEST
DALLAS
FRANKFURT
HOUSTON
LONDON
MIAMI
MUNICH
NEW YORK
PARIS
PRAGUE
SINGAPORE
WARSAW
WASHINGTON, D.C.

WRITER'S DIRECT LINE

(650) 802-3118
sonal.mehta@weil.com

November 14, 2005

**VIA E-MAIL**

John Williamson, Esq.
Finnegan Henderson Farabow
   Garrett & Dunner LLP
901 New York Avenue NW
Washington, DC 20001-4413

Re:    *Telcordia v. Cisco*, C.A. No. 04-876-GMS

Dear John:

I write in response to your letter of November 4, 2005. Pursuant to our agreement, Cisco has worked in good faith to substantially complete its document production by October 31, and, as explained in my letter of October 6, 2005, we believe that our production as of October 31 resolved the issues raised in your September 27 letter. To the extent questions or concerns remain, we propose that the parties meet and confer after they have had the opportunity to review each other's productions as of October 31.

Very truly yours,

Sonal N. Mehta