IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TELCORDIA TECHNOLOGIES, INC., ) | **REDACTED** |
| ) | **PUBLIC VERSION** |
| Plaintiff/Counterclaim Defendant, ) | |
| ) | Civil Action No. 04-876-GMS |
| v. ) | |
| ) | |
| CISCO SYSTEMS, INC., ) | |
| ) | |
| Defendant/Counterclaim Plaintiff. ) | |
| ) | |

### TELCORDIA TECHNOLOGIES, INC.'S OPENING BRIEF IN SUPPORT OF ITS MOTION FOR ENTRY OF A PERMANENT INJUNCTION OR, IN THE ALTERNATIVE, FOR AN ORDER REQUIRING CISCO TO PAY A MARKET-RATE ROYALTY

*Of Counsel:*

Donald R. Dunner
Steven M. Anzalone
Richard H. Smith
James T. Wilson
John M. Williamson
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
901 New York Ave., N.W.
Washington, D.C. 20001
(202) 408-4000

Dated: May 30, 2007
181113.v1

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Plaintiff/Counterclaim Defendant
Telcordia Technologies, Inc*

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................................ ii

I. BACKGROUND ............................................................................................................... 1

II. ARGUMENT ..................................................................................................................... 1

    A. The Standard for a Permanent Injunction ............................................................. 1

        1. Telcordia Will Suffer Irreparable Harm if Cisco's Infringement Is Allowed to Continue ............................................................................... 2

        2. Monetary Damages Are Not Enough ........................................................ 5

        3. A Balance of the Hardships Warrants a Remedy in Equity ...................... 6

        4. The Public Interest Is Served by a Permanent Injunction ........................ 7

    B. The Scope of the Injunctive Relief Sought by Telcordia Is Appropriate ................ 7

        1. The Scope of the Order ............................................................................. 8

        2. The Notice Requirement ........................................................................... 8

        3. The Injunction Should Take Effect Immediately ..................................... 9

III. IN THE ALTERNATIVE THIS COURT SHOULD ORDER CISCO TO PAY A MARKET-RATE ROYALTY UNTIL THE EXPIRATION OF THE PATENTS ........... 11

IV. CONCLUSION ................................................................................................................ 11

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Abbott Laboratories v. Andrx Pharmaceuticals, Inc.*, 452 F.3d 1331
   (Fed. Cir. 2006) .................................................................................................. 5

*ArthroCare Corp. v. Smith & Nephew, Inc.*, 310 F. Supp. 2d 638 (D. Del. 2004),
   *rev'd on other grounds*, 406 F.3d 1365 (Fed. Cir. 2005) ..................................... 4

*Continental Paper Bag Co. v. Eastern Paper Bag Co.*, 210 U.S. 405, 28 S. Ct.
   748, 52 L. Ed. 1122 (1908) ................................................................................. 3

*eBay, Inc. v. MercExchange, L.L.C.*, 126 S. Ct. 1837 (2006) ................................... 1,2,3,4

*Finisar Corp. v. DirecTV Group, Inc.*, 1:05 CV-264 (E. D. Tex. July 7, 2006) ........... 11

*Fisher-Price, Inc. v. Safety 1st, Inc.*, 279 F. Supp. 2d 526 (D. Del. 2003) ................ 2,5,7

*H.H. Robertson, Co. v. United Steel Deck, Inc.*, 820 F.2d 384 (Fed. Cir. 1987) ........ 4,10

*Hesston Corp. v. Sloop*, 734 F. Supp. 952 (D. Kan. 1990) .......................................... 10

*Hybritech Inc. v. Abbott Laboratories*, 849 F.2d 1446 (Fed. Cir. 1988) ...................... 5

*Ivac Corp. v. Terumo Corp.*, 15 U.S.P.Q. 2d 1453 (S.D. Cal. 1989) ............................ 8

*KSM Fastening System, Inc. v. H.A. Jones Co.*, 776 F.2d 1522 (Fed. Cir. 1985) ........ 8

*Minn. Mining & Manufacturing Co. v. Carapace Inc.*, No. 4-93-392, 1993 WL
   528166 (D. Minn. 1993) ..................................................................................... 8

*Minn. Mining & Manufacturing Co. v. Johnson & Johnson Orthopaedic, Inc.*, 22
   U.S.P.Q. 2d 1401 (D. Minn. 1991) ..................................................................... 8

*Odetics, Inc. v. Storage Technology Corp.*, 14 F. Supp. 2d 785 (E.D. Va. 1998),
   *aff'd*, 185 F.3d 1259 (Fed Cir. 1999) ................................................................. 10

*Paice v. Toyota Motor Corp.*, No. 2:04-CV-211-DF, 2006 U.S. Dist. LEXIS
   61600
   (E.D. Tex. Aug. 16, 2006)) ................................................................................ 11

*Polaroid Corp. v. Eastman Kodak Co.*, 228 U.S.P.Q. 305 (D. Mass. 1985),
   *stay denied*, 833 F.2d 930 (Fed. Cir. 1986) ..................................................... 9,10

*Reebok International, Ltd. v. J. Baker, Inc.*, 32 F.3d 1552 (Fed. Cir. 1994) .................. 2,3

*Richardson v. Suzuki Motor Co.*, 868 F.2d 1226 (Fed. Cir. 1989), *cert. denied*,
    493 U.S. 853 (1989) .................................................................................................... 4

*Ruiz v. Estelle*, 666 F.2d 854 (5th Cir. 1982) ............................................................... 9

*S.C. Johnson, Inc. v. Carter-Wallace, Inc.*, 225 U.S.P.Q. 968 (S.D.N.Y. 1985) ......... 9,10

*Schneider (Europe) AG v. SciMed Life System, Inc.*, 852 F. Supp. 813
    (D. Minn. 1994) .......................................................................................................... 8

*Smith International, Inc. v. Hughes Tool Co.*, 718 F.2d 1573 (Fed. Cir. 1983) .............. 7

*Tristrata Technology, Inc. v. ICN Pharmaceuticals, Inc.*, No. Civ. A. 01-150JJF,
    2004 WL 856595 (D. Del. 2003) ................................................................................ 1

*Voda v. Cordis*, No. CIV-03-1512-L, 2006 WL 2570614
    (W.D. Okla. Sept. 5, 2006); *vacated and remanded on other grounds*,
    476 F.3d 887 (Fed. Cir. 2007) .................................................................................. 11

*Windsurfing International, Inc. v. AMF, Inc.*, 782 F.2d 995 (Fed. Cir. 1986) ................ 6

### FEDERAL STATUTES

35 U.S.C. § 271 ............................................................................................................... 8

35 U.S.C. § 283 ............................................................................................................ 1,7

Fed. R. Civ. P. 62(c) ....................................................................................................... 9

Fed. R. Civ. P. 65(d) ....................................................................................................... 8

I.  **BACKGROUND**

On May 9, 2007, the jury in this case found that defendant Cisco Systems, Inc. ("Cisco") infringed claims 1, 2, 7 and 8 of U.S. Patent Nos. 4,835,763 ("the '763 patent") and claims 11 and 33 of Re. 36,633 ("the '633 patent") (collectively the "patents-in-suit") owned by plaintiff Telcordia Technologies, Inc. ("Telcordia"). The jury also found that Cisco acted willfully in infringing the patents-in-suit and rejected Cisco's challenges to the validity and enforceability of the '763 and '633 patents. The jury further rejected Cisco's defenses of laches and equitable estoppel.

Accordingly, Telcordia requests that the Court exercise its inherent equitable powers to grant a permanent injunction against Cisco. 35 U.S.C. § 283. ("The several courts having jurisdiction of cases under this title may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable.") In the alternative, Telcordia asks the Court to award a compulsory license and order Cisco to pay a lump sum and ongoing royalty to Telcordia in accordance with the terms of Telcordia's market-rate royalty for Cisco's continued use of the '763 and '633 patents.

II.  **ARGUMENT**

A.  **The Standard for a Permanent Injunction**

Telcordia's request for injunctive relief asks the Court to permit Telcordia to exercise its right to exclude Cisco from further encroachment on its patent rights. *Tristrata Tech., Inc. v. ICN Pharms., Inc.*, No. Civ. A. 01-150JJF, at *1, 2004 WL 856595 (D. Del. 2003) (essence of the property right granted by a patent is the right to exclude) (citation omitted). This case meets the standard for an injunction under the four-factor test as recently analyzed in *eBay Inc. v. MercExchange, L.L.C.*, 126 S. Ct. 1837 (2006). In particular, the evidence shows that (1) Telcordia has suffered and will suffer irreparable injury without an injunction; (2) remedies at

law are inadequate to compensate for that injury; (3) balancing of hardships tips in favor of an injunction; and (4) the public interest will not be disserved by a permanent injunction. *Id* at 1839.

### 1. Telcordia Will Suffer Irreparable Harm if Cisco's Infringement Is Allowed to Continue

Telcordia holds approximately 570 United States patents, the fruits of the research work of its team of engineers specializing in solving telecommunications problems. Telcordia began licensing its patents in the early 1990s, initially under restrictions of the divestiture order, and then developed a royalty-based licensing program after the Telecom Act of 1996 and its sale to SAIC in 1997. Trial Testimony of Joseph Giordano, April 30, 2007, at 271-277; Declaration of Joseph Giordano, May 29, 2007 ("Giordano Dec.") at 1. Telcordia is not, nor has it ever been, an equipment manufacturer. Instead, its focus is research and development of solutions for the telecommunications industry, protected by its patents, and the licensing of its intellectual property. *Id.*

Telcordia would suffer great harm if Cisco's infringement were to continue. Telcordia's lifeblood is its ability to enforce its patents and to continue to generate innovative solutions and provide patent protection for its engineers' novel improvements and pioneering inventions. Telcordia's ability to enforce its patents in the future will be significantly hampered if it becomes known, as it will, that infringement of its patents following a jury verdict finding willful infringement does not support an injuction. *Id.*

"'The patent statute provides injunctive relief to preserve the legal interests of the parties against future infringement which may have market effects never fully compensable in money.'" *Fisher-Price, Inc. v. Safety 1st, Inc.*, 279 F. Supp. 2d 526, 528 (D. Del. 2003) (Sleet J.), quoting *Reebok Int'l, Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1557 (Fed. Cir. 1994). In particular,

2

Telcordia's leverage in the market will be harmed if it cannot advise potential licensees that infringement of its patents can result in a permanent injunction. *Id.* Cisco stands in relation to Telcordia like a customer to a manufacturer who has appropriated the manufacturer's technology and is not paying to purchase it. Cisco is also a competitor of the companies who were or are Telcordia's licensees as well as potential licensees of Telcordia's technology. Therefore, Telcordia's position in the marketplace will be harmed beyond the amount of specific monetary damages from Cisco's infringement if Cisco's approach of willfully ignoring Telcordia's intellectual property rights results only in an award of damages. *Id.*

As a licensor of the intellectual property that is the fruit of its labors, Telcordia is entitled to an injunction just as much as any patentee that practices a patent. In *eBay*, the Supreme Court addressed this issue, holding that the district court's categorical denial of permanent injunctions to a certain class of patentees constituted reversible error:

> Although the District Court recited the traditional four-factor test, 275 F. Supp. 2d, at 711, it appeared to adopt certain expansive principles suggesting that injunctive relief could not issue in a broad swath of cases. Most notably, it concluded that a "plaintiff's willingness to license its patents" and "its lack of commercial activity in practicing the patents" would be sufficient to establish that the patent holder would not suffer irreparable harm if an injunction did not issue. *Id.*, at 712. But traditional equitable principles do not permit such broad classifications . . . To the extent that the District Court adopted such a categorical rule, then, its analysis cannot be squared with the principles of equity adopted by Congress. The court's categorical rule is also in tension with *Continental Paper Bag Co. v. Eastern Paper Bag Co.*, 210 U.S. 405, 422-430, 28 S. Ct. 748, 52 L. Ed. 1122 (1908), which rejected the contention that a court of equity has no jurisdiction to grant injunctive relief to a patent holder who has unreasonably declined to use the patent.

3

*eBay*, 126 S. Ct. at 1840-41. Thus, the fact that Telcordia's primary business is research, development of new telecommunications solutions, and licensing is entirely consistent with this Court's granting an injunction.

Indeed, Telcordia will suffer irreparable harm if, having proven its patents valid and infringed, it cannot enjoin the infringer from continuing to infringe, as the lifeblood of a licensing business is its ability to enforce its patents. Giordano Dec. at 1-2.

Further, the Court can, and should, presume irreparable harm from the jury's verdict. *See, e.g., Richardson v. Suzuki Motor Co.*, 868 F.2d 1226, 1247 (Fed. Cir. 1989), *cert. denied*, 493 U.S. 853 (1989). "This presumption derives in part from the finite term of the patent grant, for patent expiration is not suspended during litigation, and the passage of time can work irremediable harm." *H.H. Robertson, Co. v. United Steel Deck, Inc.*, 820 F.2d 384, 390 (Fed. Cir. 1987). This is especially true in this case because the '763 patent term expires February 4, 2008, and it is the '763 patent that covers most of the infringing products.

Applying this presumption of irreparable harm was not abrogated by *eBay*. Rather, *eBay* held a patentee is not automatically entitled to an injunction upon a finding of infringement, mandating that district courts exercise their discretion in a manner "consistent with traditional principles of equity." *eBay Inc.* at 1841. In addition, as Chief Justice Roberts noted:

> [T]here is a difference between exercising equitable discretion pursuant to the established four-factor test and writing on an entirely clean slate. "Discretion is not whim, and limiting discretion according to legal standards helps promote the basic principle of justice that like cases should be decided alike." When it comes to discerning and applying those standards, in this area as others, "a page of history is worth a volume of logic."

*Id.* at 1841-42 (Roberts, C.J. concurring) (citations omitted).

This Court has historically applied the traditional principles of equity in granting injunctions, *see, e.g., ArthroCare Corp. v. Smith & Nephew, Inc.*, 310 F. Supp. 2d 638, 680 (D.

4

Del. 2004), *rev'd on other grounds*, 406 F.3d 1365 (Fed. Cir. 2005); *Fisher-Price, Inc.*, 279 F. Supp. 2d at 528-29. There is no reason this Court should decline to issue an injunction where, as here, the evidence and the verdict showed that Cisco was willfully infringing Telcordia's patents for years. *See e.g., Abbott Labs. v. Andrx Pharms., Inc.*, 452 F.3d 1331, 1348 (Fed. Cir. 2006) (plaintiff, seeking a preliminary injunction, was not entitled to the presumption only because it had not established a likelihood of success on the merits).

Thus, in view of Cisco's long-standing refusal to take a license and infringement of Telcordia's valid and enforceable patents, as well as the fact that Telcordia's primary business is research and licensing of its intellectual property, this Court should find irreparable harm from Cisco's continued infringement.

### 2. Monetary Damages Are Not Enough

Money damages are inadequate in this case.

> It is well-settled that, because the principal value of a patent is its statutory right to exclude, the nature of the patent grant weighs against holding that monetary damages will always suffice to make the patentee whole. The patent statute provides injunctive relief to preserve the legal interests of the parties against future infringement which may have market effects never fully compensable in money.

*Hybritech Inc. v. Abbott Labs.*, 849 F.2d 1446, 1456-57 (Fed. Cir. 1988).

As succinctly stated by this Court, "there are certain tangential benefits associated with patent rights, such as a marketplace reputation for enforcing one's patents, the value of which cannot be quantified in monetary damages." *Fisher-Price, Inc.*, 279 F. Supp. 2d at 528.

There is no question that an injunction entered against Cisco will provide Telcordia additional leverage in licensing its technology, leverage to which it is legally entitled because the jury found that Cisco's products infringe the patents-in-suit and which is not available simply through the jury's award of past damages. The record in this case abundantly demonstrated

5

Cisco's deliberate disregard for Telcordia's patent rights. The time has come for an injunction order requiring Cisco to recognize those rights.

For these reasons, this factor also weighs in favor of granting a permanent injunction.

### 3.     A Balance of the Hardships Warrants a Remedy in Equity

The balance of hardships tips decidedly in Telcordia's favor. Cisco's witnesses repeatedly testified that the systems that infringe Telcordia's patents have fallen from favor and are not currently much in use, e.g., Trial Testimony of Mark Carroll, May 4, 2007, at 1396:9-21; 1399:25-1400:10; 1404:13-18; Trial Testimony of Dr. Acampora, May 7, 2007, at 1530:21-1531:9; 1540:17-21; 1561:14-1564:8; 1594:23-1595:9; 1598:4-18; so Cisco cannot be heard to complain that it would suffer greater harm from an injunction than Telcordia would from Cisco's continued taking Telcordia's intellectual property without paying for it. Further, any harm that falls on Cisco, a willful infringer, is of its own doing. Cisco was repeatedly told that the technology it was using was covered by Telcordia's patents not only by repeated communications over the years from Telcordia, but also by specific warning notices in the product literature of the chip manufacturer from whom it purchased chips for its products. Trial Testimony of Brian Holden (by deposition), May 2, 2007, at 819:17-820:25; PTX 1366 (AAL1gator Data Sheet). The evidence at trial showed that, notwithstanding these warnings, Cisco purchased companies so as to enter markets taking advantage of Telcordia's patented technology. Trial Testimony of Mr. Rushka (by deposition), May 3, 2007, at 1027:3-21; Trial Testimony of Mr. Carroll, May 4, 2007, at 1413:19-1415:24; Trial Testimony of Mr. Nawrocki, May 4, 2007, at 1299:6-1300:15.

"One who elects to build a business on a product found to infringe cannot be heard to complain if an injuction against continuing infringement destroys the business so elected." *Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1003 n. 12 (Fed. Cir. 1986). Cisco took a

6

calculated risk when acquiring new businesses and continuing to sell its products knowing that they infringed, gambling on whether or not Telcordia would enforce its rights and the outcome of this litigation. Having lost that gamble, Cisco should be made to face the consequences.

### 4. The Public Interest Is Served by a Permanent Injunction

When patent rights are "flagrantly violated," such as by Cisco's willful infringement, the public interest is best served by protecting the patentee's rights. *Smith Int'l, Inc. v. Hughes Tool Co.*, 718 F.2d 1573, 1581 (Fed. Cir. 1983).

This Court has accordingly recognized that in most cases, there is "no countervailing harm to the public in granting the requested injunctive relief." *Fisher-Price, Inc.*, 279 F. Supp. 2d at 528. Cisco cannot point to any compelling public interest that would call for this Court to deny an injuction. In particular, there is no risk that the market will face a shortage of systems sold by Cisco. Cisco's witnesses, as noted above, testified at trial that these systems are obsolete or that the infringing features are unnecessary options. Trial Testimony of Mark Carroll, May 4, 2007, at 1396:9-21; 1399:25-1400:10; 1404:13-18; Trial Testimony of Dr. Acampora, May 7, 2007, at 1530:21-1531:9; 1540:17-21; 1561:14-1564:8; 1594:23-1595:9; 1598:4-18.

Finally, it is in the public interest to enforce patents by entering an injunction. As the jury found that Cisco willfully infringed both patents and Telcordia's limited patent term of at least the '763 patent is a wasting asset, the public interest would be best served by vindicating Telcordia's patent rights and removing the infringing products from the market.

### B. The Scope of the Injunctive Relief Sought by Telcordia Is Appropriate

The appropriate injunction is one which "prevent[s] the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283. The proposed Permanent Injunction Order ("Order") (Exhibit A hereto) is well within the scope of § 283 and

Federal Rule of Civil Procedure 65(d), which governs the form of injunctions issued by federal district courts.

As set forth below, the Order is narrowly tailored to protect Telcordia's patent rights. Each provision is narrowly crafted to prevent a specific further act of infringement by Cisco. There are no unnecessary provisions. Thus, the Court can and should enter an injunction in the form of the proposed Order.

### 1. The Scope of the Order

The provisions of the Order are narrowly crafted to enjoin only products litigated and products not colorably different therefrom. See *KSM Fastening Sys., Inc. v. H.A. Jones Co.*, 776 F.2d 1522, 1526 (Fed. Cir. 1985) ("contempt proceedings, civil or criminal, are available only with respect to devices previously admitted or adjudged to infringe, and to other devices which are no more than colorably different therefrom and which clearly are infringements of the patent"). The proposed Order tracks the language of 35 U.S.C. § 271 and FED. R. CIV. P. 65(d) to specifically list the acts of infringement from which Cisco will be enjoined.

### 2. The Notice Requirement

Paragraph (C) of the proposed Order requires Cisco to provide notice of the injunction to those persons involved in Cisco's infringement of the patents-in-suit so that the Order is binding on those with "actual notice" in accordance with FED. R. CIV. P. 65(d).

Notice provisions such as this one are common in patent injunctions. *See, e.g., Schneider (Europe) AG v. SciMed Life Sys., Inc.*, 852 F. Supp. 813, 869 (D. Minn. 1994); *Minn. Mining & Mfg. Co. v. Carapace Inc.*, No. 4-93-392, 1993 WL 528166, at *7 (D. Minn. 1993); *Minn. Mining & Mfg. Co. v. Johnson & Johnson Orthopaedic, Inc.*, 22 U.S.P.Q.2d 1401, 1417 (D. Minn. 1991); *Ivac Corp. v. Terumo Corp.*, 15 U.S.P.Q.2d 1453, 1454 (S.D. Cal. 1989). The

proposed notice provision is thus appropriate under the law, and will ensure that there is no inadvertent future infringement of Telcordia's patents-in-suit.

### 3. The Injunction Should Take Effect Immediately

Paragraph (D) of the proposed Order specifies that the injunction should take effect immediately. Under FED. R. CIV. P. 62(c), a district court can stay the execution of a permanent injunction pending appeal upon an appropriate showing by the party seeking the stay. Injunctive relief in a patent case, however, is generally not stayed pending appeal unless the party seeking that relief meets the heavy burden of establishing compelling reasons justifying a stay. *Polaroid Corp. v. Eastman Kodak Co.*, 228 U.S.P.Q. 305, 343 (D. Mass. 1985), *stay denied*, 833 F.2d 930 (Fed. Cir. 1986).

The criteria to be applied in determining whether a district should grant a stay under Rule 62(c) are: (i) whether the movant has made a showing of likelihood of success on the merits; (ii) whether the movant has made a showing of irreparable injury if the stay is not granted; (iii) whether the granting of the stay would substantially harm the other parties; (iv) whether the granting of the stay would serve the public interest. *Ruiz v. Estelle*, 666 F.2d 854, 856 (5th Cir. 1982). Injunctive relief in a patent case is generally "not stayed pending appeal unless the party seeking that relief meets the burden of establishing compelling reasons justifying it." *S.C. Johnson, Inc. v. Carter-Wallace, Inc.*, 225 U.S.P.Q. 968, 971 (S.D.N.Y. 1985) (citing 11 C. Wright & A. Miller, Federal Practice & Procedure § 2904 (1973)). Thus, the burden is on Cisco to prove the four factors. Given the facts of this case, Cisco plainly cannot meet that burden.

First, Cisco has had a fair opportunity to present its case to a jury. Based on the record presented, substantial evidence supports the jury's verdict of patent infringement, validity and enforceability. In view of the substantial record, Cisco cannot point to evidence sufficient to

substantiate a likelihood of success on appeal on the merits of the wide-reaching issues of infringement, validity, and enforceability. *See, e.g., Polaroid*, 228 U.S.P.Q. at 343.

Second, Cisco cannot support a showing of irreparable injury by simply pointing to damage to its business. Wholly aside from Cisco's protestations that the technology in question is obsolete, numerous cases, as noted above, have found that one who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected.

Finally, the public interest is not best served through delay of the injunction. In fact, many courts have found that the public interest is best served by the immediate enforcement of valid patents. *Odetics, Inc. v. Storage Tech. Corp.*, 14 F. Supp. 2d 785, 799-800 (E.D. Va. 1998), *aff'd*, 185 F.3d 1259 (Fed Cir. 1999); *Hesston Corp. v. Sloop*, 734 F. Supp. 952, 954 (D. Kan. 1990); *S.C. Johnson*, 225 U.S.P.Q. at 972 (rejecting defendant's argument that the public would be deprived of competitive product offerings if the injunction was granted).

Additionally, the public interest will not be harmed by a shortage of products in the U.S. marketplace as a result of an injunction against Cisco. When a "patent does not have many more years to run," the "equities weigh heavily against the wrongdoer." *H.H. Robertson, Co.*, 820 F.2d at 391 (citing the district court). Telcordia's '763 patent expires on February 4, 2008. While Telcordia's '633 patent expires in 2012, Cisco testified that products using this technology are now obsolete and considered "legacy" products. *E.g.*, Trial Testimony of Dr. Acampora, May 7, 2007, at 1530:21-1531:9, 1598:4-18; Trial Testimony of Mark Carroll, May 4, 2007, at 1404:3-18. Cisco cannot possibly identify any public interest that would be served through a denial or a stay of the injunction pending appeal. Thus, a permanent injunction should be granted immediately.

## III. IN THE ALTERNATIVE THIS COURT SHOULD ORDER CISCO TO PAY A MARKET-RATE ROYALTY UNTIL THE EXPIRATION OF THE PATENTS

Telcordia respectfully requests that if the Court declines to enter a permanent injunction, the Court instead order a compulsory license for an ongoing royalty, as courts have done in recent cases. *Voda v. Cordis*, No. CIV-03-1512-L, 2006 WL 2570614, at *6 (W.D. Okla. Sept. 5 2006) (Ex. B) (compulsory license), *vacated and remanded on other grounds,* 476 F.3d 887 (Fed. Cir. 2007); *Paice v. Toyota Motor Corp.*, No. 2:04-CV-211-DF, 2006 U.S. Dist. Lexis 61600, at *20 (E.D. Tex. Aug. 16, 2006) (Ex. C) (same); *Finisar Corp. v. DirecTV Group, Inc.*, 1:05 CV-264, Final Judgment (E.D. Tex. July 7, 2006) (Ex. D) (same).

Telcordia respectfully submits that if this Court should determine that it is appropriate to order an ongoing royalty that the royalty should be for Telcordia's most current market rate:

**REDACTED**

Giordano Dec. at 2, Ex. 1 to Giordano Dec. (Telcordia Term Sheet, Mar. 3, 2006). The Court should order royalties to be paid quarterly accompanied by a statement beginning three months after the date of the Court's Order. Finally, Telcordia respectfully requests that the Court retain jurisdiction to enforce this portion of the judgment. *Finisar Corp., supra.*

## IV. CONCLUSION

The right to exclude is central to the rights granted by law to a patent holder, and particularly to a company whose lifeblood is innovation and licensing of its intellectual property. For the reasons stated above, the Court should enter a permanent injunction. Accordingly, Telcordia respectfully requests the Court enter the injunction as set forth in the proposed Order

attached as Exhibit A to this motion. In the alternative, Telcordia respectfully seeks a compulsory license on market-rate terms as also set forth in the proposed Order at Exhibit A.

ASHBY & GEDDES

/s/ John G. Day
_____
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Plaintiff/Counterclaim Defendant Telcordia Technologies, Inc*

*Of Counsel:*

Donald R. Dunner
Steven M. Anzalone
Richard H. Smith
James T. Wilson
John M. Williamson
FINNEGAN, HENDERSON, FARABOW,
   GARRETT & DUNNER, L.L.P.
901 New York Ave., N.W.
Washington, D.C. 20001
(202) 408-4000

Dated: May 30, 2007

12