# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| TELCORDIA TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff/Counterclaim Defendant, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-876-GMS |
| | ) | |
| CISCO SYSTEMS, INC., | ) | |
| | ) | |
| Defendant/Counterclaim Plaintiff. | ) | |
| | ) | |

**ORDER OF PERMANENT INJUNCTION OR COMPULSORY LICENSE  [PROPOSED]**

Finding upon a jury verdict that Cisco Systems, Inc. ("Cisco") has infringed claims 11

and 33 of U.S. Patent Re. 36,633 ("the '633 patent") and claims 1, 2, 7 and 8 of U.S. Patent No.

4,835,763 ("the '763 patent") (collectively, the "patents-in-suit"), owned by plaintiff Telcordia

Technologies, Inc. ("Telcordia"),

IT IS HEREBY ORDERED that

      A.    <u>With respect to the '633 patent:</u>

Cisco, its officers, agents, representatives, servants, employees, and

attorneys, and those persons and entities in active concert or participating with them who receive

actual notice of this Order by personal service or otherwise are hereby ordered and enjoined from

infringing claims 11 and 33 of the '633 patent by making, using, offering to sell, selling,

providing maintenance or customer support or inducing others to make, use, sell, offer for sale,

providing maintenance of customer support within the United States (including its territories or

possessions) or by importing into the United States (including its territories or possessions) products having Synchronous Residual Time Stamp (SRTS)-specific features, including Cisco's MGX 8200 and 8800 series products, Cisco's LightStream 1010 series products, Cisco's Catalyst 8510 and 8540 series products, Cisco's IGX 8400 series products, Cisco's 7200 series routers, and Cisco's 3600 series routers, and other devices not colorably different therefrom.

    B.   <u>With respect to the '763 patent:</u>

    Cicso, its officers, agents, representatives, servants, employees, and attorneys, and those persons and entities in active concert or participating with them who receive actual notice of this Order by personal service or otherwise are hereby ordered and enjoined from infringing claims 1, 2, 7 and 8 of the '763 patent by making, using, offering to sell, or selling, providing maintenance or customer support or inducing others to make, use, sell, offer for sale, providing maintenance of customer support within the United States (including its territories or possessions), or by importing into the United States (including its territories or possessions) products having Unidirectional Path Switched Ring (UPSR) or Path Protected Mesh Network (PPMN)-specific features, including Cisco's ONS 15310, 15305, 15327, 15454, and 15600 series products, and other devices not colorably different therefrom.

    C.   Within twenty (20) days of this Order, Cisco shall provide a copy of this Order to its officers, agents, representatives, servants, employees, and attorneys, and those persons and entities in active concert or participating with them, such persons and entities including Cisco's manufacturer(s) of products identified in A and B above, and to its United States sales representatives and/or distributors of these products in or to the United States, and at the same time, file a certificate of compliance with this paragraph with the Court with a copy to

be served simultaneously on Telcordia. This Order shall be binding on Cisco and its officers, agents, representatives, servants, employees, and attorneys, and those persons and entities in active concert or participating with them, such persons and entities including Cisco's manufacturer(s) of such products, and to its United States sales representatives and/or distributors of such products in or to the United States.

        D.    This Order shall take effect immediately upon execution by the Court and shall continue in effect until the respective expiration dates of the patents-in-suit: October 30, 2012 for the '633 patent and February 4, 2008 for the '763 patent.

     OR

     IT IS HEREBY ORDERED that

     Cisco shall pay Telcordia for use of the patents found to be valid and infringed a lump sum of $400,000 and from May 10, 2007 until the expiration of the '763 patent on February 4, 2008, an ongoing royalty of 3.5%. Beginning on February 5, 2008, Cisco shall pay Telcordia an ongoing royalty of 2% until the expiration of the '633 patent on October 30, 2012. Royalties shall be paid quarterly accompanied by a statement accounting for Cisco's use, importation, sale or offer for sale, and that of persons and entities in active concert or participating with Cisco, of products having Unidirectional Path Switched Ring (UPSR) or Path Protected Mesh Network (PPMN)-specific features, including Cisco's ONS 15310, 15305, 15327, 15454, and 15600 series products, and other devices not colorably different therefrom, and products having Synchronous Residual Time Stamp (SRTS)-specific features, including Cisco's MGX 8200 and 8800 series products, Cisco's LightStream 1010 series products, Cisco's Catalyst 8510 and 8540 series products, Cisco's IGX 8400 series products, Cisco's 7200 series routers, and Cisco's 3600 series routers, and other devices not colorably different therefrom. Payments shall begin three months

after the date of the entry of this judgment and shall be made quarterly thereafter. Telcordia shall

have the right to request audits. It is anticipated that, as sophisticated entities with experience in

licensing, the parties may wish to agree to more comprehensive or convenient terms. The parties

shall promptly notify the court of any such agreement. The Court will maintain jurisdiction to

enforce this portion of the judgment.


SO ORDERED:


_____
United States District Judge

Dated: _____

# EXHIBIT B

Westlaw.

Slip Copy                                                           Page 1
Slip Copy, 2006 WL 2570614 (W.D.Okla.)
**(Cite as: Slip Copy)**

**H**
Voda v. Cordis Corp.
W.D.Okla.,2006.
Only the Westlaw citation is currently available.
United States District Court,W.D. Oklahoma.
Jan K. **VODA**, M.D., Plaintiff and Counterclaim Defendant,
v.
**CORDIS** CORPORATION, Defendant and Counterclaim Plaintiff.
No. CIV-03-1512-L.

Sept. 5, 2006.

Jonathan Keith Waldrop, Mitchell G. Stockwell, Kilpatrick Stockton LLP, Atlanta, GA, John A. Kenney, Spencer F. Smith, McAfee & Taft, Oklahoma City, OK, for Plaintiff and Counterclaim Defendant.
Adam R. Steinert, Diane C. Ragosa, John M. Dimatteo, Kelsey I. Nix, Willkie Farr & Gallagher LLP, New York, NY, Amanda Leigh Maxfield, Clyde A. Muchmore, Crowe & Dunlevy, Mahaffey & Gore PC, John A. Kenney, Spencer F. Smith, McAfee & Taft, Oklahoma City, OK, Mitchell G. Stockwell, Jonathan Keith Waldrop, Kilpatrick Stockton LLP, Atlanta, GA, for Defendant and Counterclaim Plaintiff.

### ORDER
TIM LEONARD, District Judge.
**\*1** This action concerns three patents that were issued by the United States Patent and Trademark Office to plaintiff, Dr. Jan K. Voda. All of the patents concern an angioplasty guide catheter. Patent No. 5,445,625 ("the 625 patent") reflects the catheter "in a relaxed state prior to insertion in the cardiovascular system." The two remaining patents (the 213 and the 195 patents) cover plaintiff's inventive technique for using the catheter to perform angioplasty. In addition to method claims, the 195 patent also includes claims that focus on the catheter as it appears in the aorta. Plaintiff filed this action on October 30, 2003, seeking damages for alleged infringement of the three patents by defendant, Cordis Corporation. Beginning May 15, 2006, the case was tried to a jury, which returned a verdict in favor of plaintiff on May 25, 2006.

The jury specifically held defendant infringed each of the patents in suit and that claims 1, 2, and 3 of the 213 patent were not invalid due to anticipation or obviousness.[FN1] Verdict Form at 1-7. The jury determined that plaintiff was entitled to a reasonable royalty of 7.5% of defendant's gross sales of the infringing catheters. Id. at 8. In addition, the jury found defendant's infringement was willful. Id. at 3.

> FN1. At the conclusion of the trial, defendant conceded it was no longer seeking a declaration as to the validity of the '625 patent, the '195 patent, or claims 4 and 5 of the '213 patent ("the apparatus claims"). The court thus granted judgment as a matter of law in favor of plaintiff on that portion of defendant's counterclaim.

Although the parties were able to stipulate to the amount of compensatory damages based on the jury's verdict,[FN2] they were unable to agree on whether plaintiff should be awarded prejudgment interest and, if so, the rate of interest. Likewise, the parties dispute whether plaintiff is entitled to enhanced damages based on the jury's willfulness finding. In addition, the court must decide whether plaintiff is entitled to injunctive relief and attorney's fees.

> FN2. Joint Stipulation Regarding Compensatory Damages (Doc. No. 341).

### *Prejudgment Interest*

As a general rule, prejudgment interest should ordinarily be awarded in patent infringement actions. *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 655 (1983).
In the typical case an award of prejudgment interest is necessary to ensure that the patent owner is placed in as good a position as he would have been in had the infringer entered into a reasonable royalty agreement. An award of interest from the time that the royalty payments would have been received merely serves to make the patent owner whole, since his damages consist not only of the value of the royalty payments but also of the forgone use of the money

Slip Copy                                                                                                  Page 2
Slip Copy, 2006 WL 2570614 (W.D.Okla.)
**(Cite as: Slip Copy)**

between the time of infringement and the date of the judgment.

*Id.* at 655-56 (footnote omitted). Although defendant recognizes this general rule, it argues prejudgment interest should be denied "[d]ue to Dr. Voda's eight-year delay in bringing suit, and the resultant prejudice". Cord is' Opposition to Dr. Voda' Motions for (1) a Permanent Injunction, (2) Enhanced Damages and (3) Prejudgment Interest at 19 (Doc. No. 362). In support of this contention, defendant identifies the same economic and evidentiary prejudice the court found to be insufficient to support its laches defense. FN3 The court likewise finds the prejudice identified by defendant insufficient to warrant deviating from the general rule regarding prejudgment interest. Plaintiff's request for prejudgment interest is therefore granted.

> FN3. Cord is' Post-Trial Brief Regarding Injunctive Relief, Enhanced Damages and Prejudgment Interest at 23. *See also* Order at 4-5 (Doc. No. 339).

**\*2** The rate of interest and whether to compound it are matters for the court's discretion. *Bio-Rad Laboratories, Inc. v. Nicolet Instrument Corp.*, 807 F.2d 964, 969 (Fed.Ci.1986), *cert. denied*, 482 U.S. 915 (1987). Plaintiff contends the appropriate rate is the prime rate plus two percent, compounded annually. In contrast, defendant proposes using the three-month or one-year United States Treasury Bill rate. *See* Declaration of Kathleen M. Kedrowski at ¶ 5, Exhibit 30 to Declaration of Kelsey I. Nix in Support of Cord is' Opposition to Dr. Voda's Motions (Doc. No. 359). Defendant argues this rate "is the proper rate ... because the damage award is not subject to any investment risk during the waiting period." *Id.* Defendant's argument is based on a misapprehension of the economic policy for prejudgment interest. It is not, as defendant argues, to compensate plaintiff for the risk of default by defendant; rather, the purpose of prejudgment interest is to make plaintiff whole by compensating him for the loss of use of the money owed him. *Bio-Rad Laboratories, Inc.*, 807 F.2d at 969. The court finds that neither rate suggested by the parties fulfills this purpose; plaintiff's suggested rate is too high and defendant's too low. The court concludes the

appropriate rate is the prime rate, compounded annually. This results in a total prejudgment interest award of $489,375.FN4

> FN4. This represents the total prejudgment interest for the '213 patent for the period July 4, 2000 through May 15, 2006. The court's calculation of the yearly totals for the '213 patent are: 2000-0; 2001-$19,388.29; 2002-$35,865.66; 2003-$55,085.63; 2004-$89,068.63; 2005-$176,334.73; 2006-$113,631.94. The total prejudgment interest for the '625 patent is $185,323.91 (2002-0; 2003-$11,988.58; 2004-$32,459.54; 2005-$82,440.35; 2006-$58,435.44). The total prejudgment interest for the '195 patent is $80,477.98 (2003-0; 2004-$3,302.96; 2005-$39,844.47; 2006-$37,330.55).

*Enhanced Damages*

The Patent Act permits the court to award enhanced damages of "up to three times the amount found or assessed." 35 U.S.C. § 284. Whether to award such damages is two-step process. "First, the fact-finder must determine whether an infringer is guilty of conduct upon which increased damages may be based. If so, the court then determines, exercising its sound discretion, whether, and to what extent, to increase the damages award given the totality of the circumstances." *Jurgens v. CBK, Ltd.*, 80 F.3d 1566, 1570 (Fed.Cir.1996). The jury's determination that defendant's infringement was willful satisfies the first requirement. A finding that infringement was willful does not, however, mandate an award of enhanced damages. *Id.* at 1573. Whether to increase damages, and to what extent, is left to the sound discretion of the court. In exercising that discretion, the court is guided by the factors enunciated by the Federal Circuit in *Read Corp. v. Portec, Inc.*, 970 F.2d 816 (Fed.Cir.1992).

Courts consider several factors when determining whether an infringer has acted in bad faith and whether damages should be increased. They include: "(1) whether the infringer deliberately copied the ideas or design of another; (2) whether the infringer, when he knew of the other's patent protection, invest-

Slip Copy                                                                                                                                Page 3
Slip Copy, 2006 WL 2570614 (W.D.Okla.)
(Cite as: Slip Copy)

igated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed; ... (3) the infringer's behavior as a party to the litigation;" (4) "defendant's size and financial condition;" (5) "closeness of the case;" (6) "duration of defendant's misconduct;" (7) "remedial action by the defendant;" (8) "defendant's motivation for harm;" and (9) "whether defendant attempted to conceal its misconduct."

*3 *Liquid Dynamics Corp. v. Vaughan Co., Inc.,* 449 F.3d 1209, 1225 (Fed.Cir.2006) (quoting *Read Corp.,* 970 F.2d at 826-27).

Based on the totality of the circumstances, the court concludes plaintiff's damages should be increased, but not trebled. In reaching this conclusion, the court finds factors 1, 2, 4, and 7 weigh in favor of increasing damages. First, plaintiff presented evidence that defendant consciously copied his design and ideas. Although defendant vigorously disputed this notion, a finding of conscious copying is inherent in the jury's finding of willfulness. At trial the jury was specifically instructed:

Other factors you may consider in determining willfulness are whether, in designing the product accused of infringement, Cordis copies the disclosures of Dr. Voda's patents, or whether Cordis instead tried to "design around" the patents by designing a product that Cordis believed did not infringe the patent claims. Evidence of copying a patent is evidence of willful infringement. On the other hand, evidence that Cordis attempted to avoid infringement by designing around the patent claims, even if that attempt was unsuccessful, is evidence that the infringement was not willful.

Court's Instructions to the Jury at 47 (Doc. No. 335). Also implicit in this finding is a rejection of defendant's argument that it attempted to design around plaintiff's claims. Thus, the court finds defendant did not take any remedial actions; moreover, defendant has indicated it will continue to produce and market the infringing devices without change even after the jury verdict.[FN5] Likewise, in making its willfulness finding, the jury rejected defendant's advice of counsel defense. At trial, defendant presented evidence that it sought and obtained opinion letters from both

in-house and outside counsel with respect to the patents-in-suit. Plaintiff countered this evidence by questioning the timing of the requests, the thoroughness of the information defendant provided to counsel, and the independence of counsel. The jury was then instructed:

FN5. *See* Exhibit PX400 to Consolidated Appendix in Support of Dr. Voda's (1) Brief in Support of Plaintiff's Motion for Enhanced Damages (2) Brief in Support of Plaintiff's Request for Permanent Injunction (3) Brief in Support of Plaintiff's Request for Prejudgment Interest.

In evaluating Cordis' reliance on the advice of a lawyer, you should consider when Cordis obtained the advice, the quality of the information Cordis provided to the lawyer, the competence of the lawyer's opinion, and whether Cordis relied upon the advice. Advice is competent if it was based upon a reasonable examination of the facts and law relating to validity, enforceability and/or infringement issues, consistent with the standards and practices generally followed by competent lawyers.

*Id.* Defendant's lengthy post-trial argument that it did in fact rely on competent legal advice is misplaced, as it asks the court to reweigh an issue decided by the jury. The court, however, does not have discretion to do so at this time; it may not disregard the jury's willfulness finding and the findings implicit therein. *See Jurgens,* 80 F.3d at 1572. Finally, the fact that defendant is "a large company with extensive financial means"[FN6] is another factor that justifies increasing the damages award.

FN6. *Metabolite Laboratories, Inc. v. Laboratory Corp. of America Holdings,* 370 F.3d 1354, 1371 (Fed.Cir.2004).

*4 On the other hand, the other *Read* factors are either neutral or do not support an award of enhanced damages. For example, factor 6, the duration of defendant's misconduct, cuts both ways. Although defendant has been manufacturing infringing devices for years, plaintiff also waited years to challenge defendant's infringement. While the court found plaintiff's delay was not sufficient to establish laches

or to prevent plaintiff from receiving prejudgment interest, it is a factor the court considers in determining the amount any enhancement. Factor 5 also is neutral. Although the jury's relatively quick deliberation might indicate the issues that remained for decision were not close, other issues-including literal infringement-were decided adversely to plaintiff prior to trial. Contrary to plaintiff's assertions, factors 3, 8, and 9 do not support enhancement. The court finds there is no evidence of litigation misconduct by defendant, nor has plaintiff demonstrated any intent by defendant to harm him. Hyperbole in marketing documents does not indicate intent to harm; moreover, any harm would have been directed at plaintiff's licensee, Scimed, not plaintiff. Also, there is no evidence defendant sought to conceal its activities. These factors, however, do not outweigh defendant's conscious copying, lack of good-faith belief that it was not infringing, and failure to take remedial action.

Based on the totality of the circumstances, the court finds trebling plaintiff's damages is not warranted. The court, however, exercises its discretion to double the infringement damages. Plaintiff is thus awarded compensatory damages of $3,803,094 through May 15, 2006,[FN7] together with prejudgment interest in the amount of $489,375, and enhanced damages of $3,803,094, for a total award of $8,095,563.

> FN7. *See* Joint Stipulation Regarding Compensatory Damages at 1.

*Attorney's Fees*

Section 285 provides the court "in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. As with enhanced damages, the decision to award attorney's fees involves two steps. *Cybor Corp. v. FAS Techs., Inc.,* 138 F.3d 1448, 1460 (Fed.Cir.1998). First, the court must determine whether the action constitutes an exceptional case. "As a general rule, attorneys fees under section 285 may be justified by any valid basis for awarding increased damages under section 284." *Jurgens,* 80 F.3d at 1573 n. 4. Based on the analysis enunciated above, the court finds this is an exceptional case warranting an award of attorney's fees. Specifically, the jury's implicit findings that defendant consciously

copied plaintiff's design and did not have a good faith belief as to infringement and validity provide the requisite degree of bad faith necessary to support finding this case exceptional.[FN8]

> FN8. "A case may be deemed exceptional when there has been some material inappropriate conduct related to the matter in litigation, such as willful infringement...." *Brooks Furniture Mfg., Inc. v. Dutailier Intern., Inc.,* 393 F.3d 1378, 1381 (Fed.Cir.2005).

Having concluded the case is exceptional, the court also determines that an award of fees is appropriate. Defendant does not dispute the hours expended by plaintiff's attorneys or the reasonableness of the rates charged by plaintiff's attorneys. Defendant does, however, ask the court to impose two limits on any fee award. First, it argues plaintiff's contingent fee contract with his attorneys "sets the maximum amount the court can award." Cordis' Opposition to Voda's Motion for Attorneys' Fees at 15 (Doc. No. 380). Second, it contends local attorney billing rates should be used to calculate the lodestar figure. *Id.* at 17-18.

*5 Defendant's first argument is not only without merit, given the court's award of enhanced damages, it is moot.[FN9] The cases cited by defendant in support of this contention are inapposite as they concern fees sought pursuant to Florida's fee-shifting statute. The court also rejects defendant's second argument. Although local hourly rates should be used to calculate fees in the normal case, patent litigation is a specialized practice with a national bar. Defendant does not contest that "the rates usually charged by Voda's national counsel may be reasonable for the Atlanta market". Cord is' Opposition to Voda's Motion for Attorneys' Fees at 17. The court's independent examination of those rates confirms they are objectively reasonable for the national patent bar. Therefore, the court calculates the lodestar figure by multiplying the rates normally charged by plaintiff's Atlanta and Oklahoma City attorneys by the hours expended. This results in an attorney's fee award of $2,133,086.25. FN10 The court finds no reason to increase this award based on any of the factors enunciated in *Hensley v. Eckerhart,* 461 U.S. 424, 433-34 (1983).

Slip Copy                                                                    Page 5
Slip Copy, 2006 WL 2570614 (W.D.Okla.)
(Cite as: Slip Copy)

As defendant does not contest plaintiff's request for litigation expenses, the court awards plaintiff litigation expenses of $68,053.21, making the total fee award $2,201,139.46.

> FN9. In response to Cordis' Motion to Compel Dr. Voda to Produce his Contingency Fee Agreement (Doc. No. 367), plaintiff provided a copy of the contingency fee contract for the court to review *in camera*. The court denied defendant's motion to compel, finding the contract was not relevant since defendant did not challenge the reasonableness of either the rates charged by plaintiff's attorneys or the hours expended. Order at 2 (Doc. No. 377). Nonetheless, in the interest of full disclosure, the court notes plaintiff's contingent fee contract provided plaintiff would pay 45 percent of the recovery received after trial or after the filing of a notice of appeal. Forty-five percent of the damages awarded by the court, including pre-judgment interest, equals $3,643,003.35, a sum that is significantly larger than the amount sought by plaintiff in his Motion for Attorneys' Fees.

> FN10. Plaintiff's motion sought an award of $2,133,086.20. The supporting documentation, however, reflects a fee request of $2,133,086.25    ($1,708,842.25  ☞ $424,244.00). Exhibits PX 427 and PX 428 to Supplemental Appendix to Dr. Voda's (1) Brief in Support of Plaintiff's Motion for Enhanced Damages (2) Brief in Support of Plaintiff's Request for Permanent Injunction (3) Brief in Support of Plaintiff's Request for Prejudgment Interest (4) Plaintiff's Motion for Attorneys' Fees (Doc. No. 366).

### *Injunctive Relief*

Plaintiff requests a permanent injunction barring defendant, "its officers, agents servants, directors, employees and all those in active concert or participation with them ... from infringing, inducing the infringement of, and contributorily infringing any one or more claims" of the patents-in-suit. Attachment to Brief in Support of Plaintiff's Request for Permanent Injunction at 1 (Doc. No. 350). The Patent Act permits the court to "grant injunctions in accordance with principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283. The United States Supreme Court recently confirmed that permanent injunctions in patent cases should not automatically follow a finding of infringement; rather, requests for permanent injunctions in such cases are governed by the same four-factor test that applies to injunctive relief in general. *eBay Inc. v. MercExchange, L.L.C.*, 126 S.Ct. 1837, 1839-40 (2006).

According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Id.* at 1839.

As plaintiff has failed to demonstrate either irreparable injury or that monetary damages are inadequate, the court denies his request for a permanent injunction.[FN11] Plaintiff argues irreparable harm is presumed whenever validity and continuing infringement have been established. Brief in Support of Plaintiff's Request for Permanent Injunction at 5 (Doc. No. 350). This argument, however, runs afoul of the court's reasoning in *eBay* where the Court clearly held the right to exclude does not, standing alone, justify a general rule in favor of injunctive relief. *eBay Inc.*, 126 S.Ct. at 1840. Moreover, other than the presumption of irreparable harm, plaintiff identifies no harm to himself; rather, he relies on alleged harm to a non-party, Scimed.[FN12] *See* Brief in Support of Plaintiff's Request for Permanent Injunction at 6-12. The court concurs with defendant that such harm is irrelevant because Scimed elected not to sue to enforce the patent rights. As patents have "the attributes of personal property"[FN13], the person

Slip Copy                                                                              Page 6
Slip Copy, 2006 WL 2570614 (W.D.Okla.)
**(Cite as: Slip Copy)**

seeking a permanent injunction must demonstrate harm from infringement of those rights that is personal as well.

> FN11. The court therefore need not address defendant's assertions that plaintiff did not timely seek injunctive relief or that the relief requested is not sufficiently limited or specific to comply with Fed.R.Civ.P. 65(d).

> FN12. Cordis' Motion to Strike the Lundeen Declaration and Dr. Voda's Arguments Relying on that Declaration in his Post-trial Brief (Doc. No. 363) is denied. In accordance with defendant's request, the court reserved the issue of injunctive relief until after the jury returned its verdict. Order at 3 (Doc. No. 311). Plaintiff's post-trial submission of the Lundeen Declaration is in accord with that ruling.

> FN13. *eBay Inc.*, 126 S.Ct. at 1840.

**\*6** The court also finds plaintiff has not established that monetary damages are inadequate to compensate him. Plaintiff argues he granted Scimed an exclusive license to his patented inventions and defendant's continuing infringement will damage his relationship with Scimed. This argument, however, is simply the other side of the right-to-exclude coin and is not sufficient to justify granting injunctive relief. Plaintiff's request for a permanent injunction is therefore denied.

### *Post-Verdict Infringement*

As the court has declined to issue a permanent injunction and defendant has indicated it will continue to infringe the patents-in-suit, the court must fashion a remedy for the continuing harm to plaintiff. Plaintiff suggests severing his action for monetary damages for post-verdict infringement. In addition, plaintiff asks the court to order defendant to file quarterly reports of sales and to establish an interest-bearing escrow account into which defendant would pay the royalty rate assessed by the jury. The court sees no reason for severance of a cause of action for the post-verdict damages as there would be no issues for decision except simple mathematical calculations

based on defendant's sales. The court therefore denies plaintiff's motion for severance. The court, however, concludes that quarterly reporting by defendant is reasonable. The reports shall be filed beginning September 15, 2006 and every three months thereafter until final resolution of this action. Defendant may file the reports under seal without seeking leave of court to do so. Given defendant's size and financial stability, the court will not order defendant to pay the royalty funds into an interest-bearing escrow account. Defendant is cautioned, however, that absent establishment of an escrow account, prejudgment interest will accrue on any post-verdict infringement damages.

### *Conclusion*

In sum, plaintiff's requests for prejudgment interest and enhanced damages are GRANTED to the extent noted above. Plaintiff's request for a permanent injunction is DENIED. Plaintiff's Motion for Entry of Judgment, Severance of Continuing Causes of Action for Post-Verdict Infringement, and Establishment of Reporting and Escrow Requirement (Doc. No. 353) is GRANTED in part and DENIED in part. Cordis' Motion to Strike the Lundeen Declaration and Dr. Voda's Arguments Relying on that Declaration in his Post-trial Briefs (Doc. No. 363) is DENIED. Plaintiff's Motion for Attorneys' Fees (Doc. No. 365) is GRANTED. Judgment in accordance with this Order, the parties' stipulation, and the jury's verdict will issue according.

It is so ordered this 5th day of September, 2006.

W.D.Okla.,2006.
Voda v. Cordis Corp.
Slip Copy, 2006 WL 2570614 (W.D.Okla.)

END OF DOCUMENT

# EXHIBIT C

Westlaw.

Slip Copy                                                                                    Page 1
Slip Copy, 2006 WL 2385139 (E.D.Tex.)
(Cite as: Slip Copy)

C
Paice LLC v. Toyota Motor Corp.
E.D.Tex.,2006.
Only the Westlaw citation is currently available.
United States District Court,E.D. Texas,Marshall Division.
PAICE LLC, Plaintiff,
v.
TOYOTA MOTOR CORP., et al., Defendants.
No. 2:04-CV-211-DF.

Aug. 16, 2006.

Samuel Franklin Baxter, Attorney at Law, Marshall, TX, Ahmed J. Davis, Ahmed J. Davis, Ruffin B. Cordell, Fish & Richardson, Washington, DC, for Plaintiff.
Fred Grasso, Jeffrey Gerchick, T. CY Walker, Kenyon & Kenyon, Washington, DC, Nicholas H. Patton, Justin Kurt Truelove, Patton & Tidwell, Texarkana, TX, Thomas R. Makin, George E. Badenoch, John Flock, Kenyon & Kenyon, New York, NY, for Defendants.

**_ORDER_**
DAVID FOLSOM, District Judge.
*1 Before the Court is Plaintiff Paice LLC's ("Paice") Motion for Entry of an Injunction. Dkt. No. 207. Also before the Court is Defendants' Combined (1) Opposition to Paice LLC's Motion for Entry of an Injunction and (2) In the Alternative, Motion for a Stay of Any Injunction Entered and Plaintiffs' Combined Response to Toyota's Motion for Stay and Reply in Support of Its Motion for Injunction. Dkt. Nos. 212 and 219, respectively. On April 25, 2006 the Court heard the parties on these motions. Subsequent to the hearing, the parties submitted letter briefing to the Court. 6/23/06 Letter from G. Badenoch, 6/30/06 Letter from R. Cordell, and 7/13/06 Letter from G. Badenoch. Having considered the motions, all other relevant briefing, and the applicable law, the Court finds that Plaintiff's Motion for Injunction should be **DENIED.**

**I. BACKGROUND**

In this patent infringement action, Plaintiff claimed three of Defendants' hybrid vehicles infringe three of Plaintiff's patents, U .S. Patent Nos. 5,343,970 ("the 970 patent"), 6,209,672 ("the 672 patent"), and 6,554,088 ("the 088 patent") (collectively, the "patents-in-suit"). FN1 Plaintiff alleged that nine claims among three patents were literally infringed by Defendants' accused vehicles and that ten claims were infringed under the doctrine of equivalents. Plaintiff also argued that Defendants' alleged infringement was willful.

> FN1. A detailed explanation of each of the asserted patents and the underlying technology can be found in the Court's Claim Construction Order. Dkt. No. 91. The present Order assumes familiarity with the patents-in-suit.

In December 2005, the case was tried to a jury. The jury found that Defendants' accused vehicles infringed claims 11 and 39 of the 970 patent under the doctrine of equivalents, but found no further infringement. The jury did not find Defendants' infringement was willful.

Plaintiff now moves for entry of a permanent injunction.

**II. LEGAL PRINCIPLES**
051 Extra cent-Y found within cent-Y markup.
Recently the Supreme Court revisited the propriety of issuing permanent injunctions as a matter of course after a finding of infringement in patent cases. _eBay Inc., v. MercExchange, L.L.C.,_ 126 S.Ct. 1837, 1839-1841 (U.S.2006) (hereinafter _"eBay"_). Observing the existence of a " 'general rule,' unique to patent disputes" that mandated the issuance of a permanent injunction once infringement and validity were decided, the Supreme Court explored the origins of this general rule and compared it to other instances in which courts are faced with deciding whether or not to issue equitable relief. _Id._ The Supreme Court determined that equitable relief is not mandatory in patent cases, but instead should be decided in accordance with traditional equitable consid-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                          Page 2
Slip Copy, 2006 WL 2385139 (E.D.Tex.)
(Cite as: Slip Copy)

erations. *Id.*

To this end, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief:

A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

**\*2** *Id.* Further, the Supreme Court held that:[T]he decision whether to grant or deny injunctive relief rests within the equitable discretion of the district courts, and that such discretion must be exercised consistent with traditional principles of equity, in patent disputes no less than in other cases governed by such standards.

*Id.* It is clear that the Supreme Court by its decision did not intend to part with long-standing decisions in equity. As noted by Chief Justice Roberts, "there is a difference between exercising equitable discretion pursuant to the established four-factor test and writing on an entirely clean slate." *Id.* at 1841 (Roberts, C.J.concurring). And, as Justice Kennedy notes in his concurrence, "the existence of a right to exclude does not dictate the remedy for a violation of that right," which aligns equitable decisions in patent cases with other cases. *Id.* at 1842 (Kennedy, J. concurring).

### III. THE PARTIES' POSITIONS

Plaintiff, seeking entry of a permanent injunction, principally argued that it is entitled to an injunction pursuant to 35 U.S.C. § 283 because the Defendants are adjudged infringers of its valid patent claims. Dkt. No. 207 at 2. Plaintiff additionally argued that no exceptional circumstances exist for which an injunction should be denied. *Id.* Defendants responded in opposition to Plaintiff's motion but spent the majority of their pre-hearing brief arguing that any injunction that issues should be stayed pending the outcome of an appeal or the issuance of a decision in *eBay.* Dkt. No. 212. Less than a month after the hear-

ing, the *eBay* opinion issued.

Following the traditional four-factor test for equitable relief, Defendants argue no injunction should issue as Plaintiff cannot meet its burden of demonstrating each of the factors, let alone any of the factors. Dkt. No. 222. According to Defendants, Plaintiff failed to demonstrate irreparable harm. *Id.* at 3. Defendants argue that, following from the Supreme Court's decision, irreparable harm cannot be presumed. Further, citing a decision in *z4 Technologies, Inc. v. Microsoft Corporation,* Defendants argue that the inability to license Plaintiff's patents to others without an injunction in hand is not a viable reason for issuing an injunction. Dkt. No. 222 at 3, *citing z4 Technologies, Inc. v. Microsoft Corp .,* 6:06-cv-142, Dkt. No. 394 (E.D. Tex. June 14, 2006). Defendants also point to evidence demonstrating that there are reasons unrelated to Defendants' conduct that explain why Plaintiff's efforts to license its patents have been refused. *Id.* citing evidence at Dkt. No. 212, 5-6. Defendants argue there is no evidence supporting Plaintiff's contention that Defendants' sales of the accused vehicles have resulted in the harm Plaintiff alleges as Plaintiff does not sell vehicles. Dkt. No. 222 at 3-4.

Defendants argue that monetary damages are sufficient to compensate Plaintiff. Because Plaintiff does not manufacture competing vehicles, but rather is geared toward licensing its technology, Defendants argue that there is "no question" that monetary damages are sufficient. Dkt. No. 222 at 4. Defendants further argue that the claims found to be infringed make up only a "small component" of the overall accused vehicles. *Id.*

**\*3** The two claims found to be infringed by equivalents are not to the entirety of the hybrid transmission, let alone the entire car. For there to be an entire working vehicle that meets [Defendants'] standards, there are many tens of thousands of separate parts that make up the various essential parts of the car ... Any contribution of [Plaintiff's] technology to the accused vehicles is relatively minor when compared to the value of the overall vehicles sought to be enjoined....

Dkt. No. 222 at 4. Defendants further cite the jury's

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 2385139 (E.D.Tex.)
(Cite as: Slip Copy)

reasonable royalty verdict as demonstrative of the relatively small contribution of that Plaintiff's invention to the accused vehicles as a whole:Any contribution of [Plaintiff's] technology to the accused vehicles is relatively minor when compared to the value of the overall vehicle sought to be enjoined, as confirmed by the jury's verdict awarding reasonable royalty damages of only $25 per vehicle-or 1/8th of one percent of the $20,000 price of a Prius and even less of a percentage of the price of the Highlander ($33,000) and the RX400h ($42,000).

*Id.*

Defendants argue that the third and fourth factors weigh against issuing a permanent injunction. According to Defendants, implementation of an injunction would cause substantial economic injury to it, its dealers, and its suppliers. An injunction would also severely damages its "reputation as the industry leader in bringing hybrid and other vehicles to market," argue Defendants. *Id.* at 4. And, Defendants argue, significant time and money have been invested in designing the accused devices while a redesign would be "extraordinarily expensive and a great hardship." *Id.* Defendants argue that there is "no discernable hardship" to Plaintiff in the absence of an injunction because Plaintiff seeks only licensing fees for the use of its patents. *Id.* Defendants also argue that an injunction would be contrary to the public interest as hybrid vehicles play an important role in "reducing harmful automobile emissions and American reliance on foreign oil." *Id.*

Lastly, Defendants remind the Court that, although accused, the jury did not find that Defendants' infringement was willful. Nor were they found to literally infringe Plaintiff's patents-only two of ten asserted claims from one of three patents were found infringed under the doctrine of equivalents. Defendants argue that these facts should also be considered in determining whether an injunction should issue. Dkt. No. 222 at 4-5.

In response, Plaintiff argues that, even under the traditional four-factor test for equitable relief, they are entitled to a permanent injunction. Plaintiff argues it has proved it will suffer irreparable harm because,

unless Defendants are enjoined from selling the infringing vehicles, it cannot succeed in its efforts to license its technology. Dkt. No. 223 at 2. Plaintiff argues that Defendants' infringement has had a "devastating effect" on its business resulting in great harm. Dkt. No. 207 at 6. During the hearing on this motion, Plaintiff's counsel related that Plaintiff was recently "sidelined" as potential parties to a joint venture chose to put the deal on hold while they await the outcome of this motion. 4/25/06 Hr. Tr. at 99. Plaintiff also cites testimony from Dr. Severinsky, the inventor of the 970 patent and Paice employee, that potential licensees have refused to license Plaintiff's patents pending the outcome of this case. *Id.* at 2-3. Plaintiff argues that even if potential licensees refused licenses in the past for reasons unrelated to the current lawsuit, they are today refusing to license as they await the outcome of this suit. *Id.* at 3. Thus, Plaintiff argues, it is suffering harm from what amounts to a *de facto* stop work injunction. 4/25/06 Hr. Tr. at 106.

**\*4** Addressing the second factor, Plaintiff argues that although it does not manufacture products utilizing the patented invention, this alone does not end the inquiry as to whether there is an adequate remedy at law for Defendants' infringement. Dkt. No. 223 at 3. Instead, Plaintiff argues, because it suffers irreparable harm, there is no adequate remedy at law. According to Plaintiff, without an injunction, Plaintiff will continue to loose licensing opportunities to other potential licensees. Dkt. No. 223 at 3. Further, regarding the relative import of the infringed claims to the accused vehicles, Plaintiff argues that the infringed claims "cover ... the heart of what the Prius is all about." 4/25/06 Hr. Tr. at 105; *see also* Dkt. No. 223 at 4.

Plaintiff argues that the balance of hardships tips in favor of an injunction. According to Plaintiff, the infringing products that would be enjoined can be sold in other parts of the world. Further, Plaintiff argues, the infringing vehicles account for less than 2% of Defendants' worldwide revenue. *Id.; see also* 4/25/06 Hr. Tr. at 108. On the other hand, without an injunction, Plaintiff argues that it faces extinction. Dkt. No. 223 at 4.

Slip Copy                                                                                              Page 4
Slip Copy, 2006 WL 2385139 (E.D.Tex.)
(Cite as: Slip Copy)

Regarding the public interest, Plaintiff argues the that public interest in strong patent rights is better served by enforcing those rights through an injunction, particularly where a small company's patents are infringed. 4/25/06 Hr. Tr. at 111; Dkt. No. 223 at 5. Plaintiff also argues that enjoining sales of the accused vehicles would not leave the public without options-in fact, there are other hybrid alternatives on the market as well as vehicles that are more fuel efficient than the accused vehicles. 4/25/06 Hr. Tr. at 110.

### IV. DISCUSSION

Following the traditional four-factor test for equitable relief, the Court concludes that no injunction is warranted in this case.[FN2]

> FN2. As Plaintiff's motion for an injunction is denied, Defendant's cross-motion for a stay is moot and will not be addressed herein.

Plaintiff fails to establish that it will be irreparably harmed absent an injunction. The *eBay* decision demonstrates that no presumption of irreparable harm should automatically follow from a finding of infringement. *See, e.g.,* 126 S.Ct. at 1840; *see also* 6:06-CV-142, Docket No. 394, at 4. Plaintiff argues that, because no injunction has issued, it has been unsuccessful in its efforts to license its technology. Plaintiff's evidence, however, does not prove that the current litigation or the absence of an injunction have resulted in its inability to successfully license its technology.

Dr. Severinsky's testimony, cited by Plaintiff, addressed only his belief as to why potential licensees were reluctant to take licensees. Plaintiff's counsel's statements that the company was "sidelined" pending the outcome of this litigation are not evidence. There is evidence in the record, however, that potential licensees may have declined business deals because of Plaintiff's misrepresentations and improper business tactics. *See* 12/7/05 PM Trial Tr. at 46:25-49:1; DTX 745.

*5 Irreparable harm lies only where injury cannot be undone by monetary damages. *See Deerfield Med. Ctr. v. City of Deerfield Beach,* 661 F.2d 328, 338

(5th Cir.1981). Plaintiff's losses from Defendant's sales of infringing products can be remedied via monetary damages in accordance with the reasonable royalty set by the jury. As for Plaintiff's allegations of irreparable harm in the form of a failed licensing program, Plaintiff has not demonstrated Defendants' infringement is to blame for this failure. As the evidence demonstrates, there were other reasons Plaintiff may not have succeeded in licensing its technology.

Additionally, Plaintiff has not demonstrated that monetary relief will not aid its licensing efforts. As is discussed below, the entry of a judgment for monetary relief in conjunction with the jury's infringement and validity findings will affirm Plaintiff's patent rights, as would the issuance of an injunction. Although potential licensees will likely consider the outcome of this case in their licensing decisions, Plaintiff has not been prevented from continuing its licensing efforts. It is should also be noted that because Plaintiff does not compete for market share with the accused vehicles, concerns regarding loss of brand name recognition and market share similarly are not implicated.

For these reasons, Plaintiff has not demonstrated that it will suffer irreparable harm in the absence of an injunction.

Second, Plaintiff has not demonstrated that monetary damages are inadequate. According to Plaintiff, monetary damages paid by Defendants will not prevent further lost opportunities to license its technology to potential licensees. Plaintiff further argues that the infringed claims form the "heart" of the accused products. Infringing one's right to exclude alone, however, is insufficient to warrant injunctive relief. 126 S.Ct. at 1840. Plaintiff does not demonstrate why other potential licensees would be less likely to take a license if this case ends with monetary damages instead of equitable relief.[FN3] In either case, the Plaintiff's patent rights are vindicated. The appropriateness of an injunction is determined after considering the traditional four factors addressed here.

> FN3. The Court notes that monetary relief could result in lower licensing rates than Plaintiff would desire. The Court also recog-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2006 WL 2385139 (E.D.Tex.)

(Cite as: Slip Copy)

Page 5

nizes that, if an injunction were to issue, Plaintiff would have a more impressive bargaining tool. This consideration, however, doe not replace the four-factor test that must be satisfied for equitable relief.

Further, the Court disagrees with Plaintiff regarding the import of the two claims found infringed to the accused vehicles as a whole. The infringed claims relate to the hybrid transmissions of the accused vehicles, but form only a small aspect of the overall vehicles. The jury's damages award also indicates that the infringed claims constitute a very small part of the value of the overall vehicles. The jury, based on the entire record, determined an appropriate reasonable royalty rate that can be easily calculated on future sales of the accused devices thereby removing uncertainty from future damages calculations.

It is also of note that Plaintiff, throughout post-trial motions, has extended Defendants an offer to license its technology. 4/25/06 Hr. Tr. at 108. This offer further demonstrates the adequacy of monetary relief from Plaintiff's point of view. Thus, the Court finds that Plaintiff has not demonstrated monetary damages are an inadequate remedy to compensate for Defendants' infringement.

*6 Third, the Court finds that the hardships balance against enjoining Defendants. Plaintiff again argues that this factor tips in its favor because it faces extinction absent an injunction while Defendants will experience only minor economic losses. This ignores the reality that two of the accused vehicles were introduced to the market during the 2006 model year and enjoining their sales will likely interrupt not only Defendants' business but that of related businesses, such as dealers and suppliers. The burgeoning hybrid market could also be stifled as the research and expense of bringing its product line to market would be frustrated. And the Court finds that enjoining Defendants will damage their reputation. Defendants face significant hardships if enjoined. Plaintiff's argument that it may go out of business unless Defendants are enjoined is again premised upon their contention that only injunctive relief will lead to a successful licensing program. As discussed above, the Court does not agree with this contention. Thus, the balance of

hardships tips decidedly in favor of Defendants.

Lastly, the Court concludes that the public interest does not weigh heavily in either party's favor. As Plaintiff argues, there is a long recognized public interest in enforcing patent rights. The grant of injunctive relief for such enforcement, as the *eBay* case directs, should be determined using the traditional four-factor test. Relief in non-injunctive form also serves this public interest. Insofar as Defendants argue that an injunction would be contrary to the public interest in reducing dependence of foreign oil, the Court finds this argument unavailing. Defendants' hybrid vehicles are not the only hybrid alternatives on the market, and there has been no evidence demonstrating the demand for hybrid vehicles could not be met by such alternatives. Thus, Defendants have not demonstrated that enjoining the sale of their hybrid vehicles will disserve the public interest.

Having found that Plaintiff has failed to demonstrate that injunctive relief is warranted under any of the four relevant factors, the Court will deny Plaintiff's request.

## V. CONCLUSION

For all the above reasons, Plaintiff's Motion for Entry of an Injunction, Dkt. No. 207, is hereby **DENIED** and Defendants' Motion for a Stay of Any Injunction Entered, Dkt. No. 212, is **DENIED** as moot.

E.D.Tex.,2006.

Paice LLC v. Toyota Motor Corp.

Slip Copy, 2006 WL 2385139 (E.D.Tex.)

END OF DOCUMENT

# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| FINISAR CORP., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | Civil Action No. 1:05-CV-264 |
| v. | § | |
| | § | |
| THE DIRECTV GROUP, INC., ET AL., | § | JUDGE RON CLARK |
| | § | |
| *Defendants.* | § | |
| | § | |

## FINAL JUDGMENT

Pursuant to Rule 58 of the Federal Rules of Civil Procedure and in accordance with the jury verdict delivered on June 23, 2006 and the Court's oral findings and conclusions entered on the record July 6, 2006, the Court hereby enters judgment for Plaintiff Finisar Corp. and against Defendants The DirecTV Group, Inc., DirecTV Holdings, LLC, DirecTV Enterprises, LLC, DirecTV Operations, LLC, DirecTV, Inc., and Hughes Network Systems, Inc. for infringement of U.S. Patent No. 5,404,505, claims 16, 17, 22, 24, 26, 39, and 44.  **IT IS THEREFORE ORDERED** that Plaintiff Finisar Corp. shall have and recover from Defendants The DirecTV Group, Inc., DirecTV Holdings, LLC, DirecTV Enterprises, LLC, DirecTV Operations, LLC, DirecTV, Inc., and Hughes Network Systems, Inc., jointly and severally, the total sum of $103,920,250.25, plus prejudgment interest at the agreed rate of 6%, calculated as stated on the record at the July 6, 2006 hearing, on the damages found by the jury, said prejudgment interest totaling $13,359,276.00, together with post judgment interest on the entire sum calculated pursuant to 28 U.S.C. § 1961.

For the reasons stated at the July 6, 2006 hearing, the Court denied Plaintiff's motion for injunctive relief and granted a compulsory license. Defendants are hereby **ORDERED**, for the

remaining life of the ` 505 patent, to pay Plaintiff an ongoing royalty of $1.60 per Integrated

Receiver Decoder, commonly referred to as a set top box, activated by or on behalf of or for any

of the named Defendants or their present or future affiliates or subsidiaries after June 16,2006.

Royalties shall be paid quarterly accompanied by a statement in accordance with the provisions

of paragraph 3.8 of the MPEG-2 Patent Portfolio License, dated February 22, 2001, granted to

Hughes Network Systems, Inc.  Payments shall begin three months after the date of signing of

this judgment and shall be made quarterly thereafter.  Payments not made within 14 days of the

date due shall accrue interest at the rate of 10% , compounded monthly.  Finisar shall have the

right to request audits in accordance with the provisions of paragraph 3.9 of said MPEG-2 Patent

Portfolio License.  It is anticipated that, as sophisticated entities with experience in licensing

agreements, the parties may wish to agree to more comprehensive or convenient terms.  The

parties shall promptly notify the court of any such agreement.  The court maintains jurisdiction

to enforce this portion of the Final Judgment.

Costs are taxed against Defendants The DirecTV Group, Inc., DirecTV Holdings, LLC,

DirecTV Enterprises, LLC, DirecTV Operations, LLC, DirecTV, Inc., and Hughes Network

Systems, Inc. jointly and severally.  All relief not specifically granted herein is denied.  All

pending motions not previously ruled on are denied. This is a Final Judgment and is appealable.