IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TELCORDIA TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff/Counterclaim Defendant, | ) | |
| | ) | |
| v. | ) | C.A. No. 04-876 (GMS) |
| | ) | |
| CISCO SYSTEMS, INC., | ) | |
| | ) | **REDACTED-PUBLIC VERSION** |
| Defendant/Counterclaim Plaintiff. | ) | |
| | ) | |

**DEFENDANT CISCO SYSTEMS, INC.'S ANSWERING BRIEF IN OPPOSITION TO
TELCORDIA TECHNOLOGIES, INC.'S MOTION FOR (1) AN AWARD OF
PREJUDGMENT INTEREST AND (2) AN ACCOUNTING OF DEFENDANT CISCO
SYSTEMS, INC.'S INFRINGING SALES SINCE JANUARY 31, 2007**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Leslie A. Polizoti (#4299)
1201 North Market Street
Post Office Box 1347
Wilmington, Delaware  19899-1347
(302) 658-9200
lpolizoti@mnat.com

*Attorneys for Defendant Cisco Systems, Inc.*

OF COUNSEL:

Matthew D. Powers
Edward R. Reines
Jessica L. Davis
Sonal N. Mehta
Thomas B. King
Derek C. Walter
Weil, Gotshal & Manges LLP
201 Redwood Shores Parkway
Redwood Shores, CA  94065

Originally Filed:  July 23, 2007
Redacted Version Filed:  July 30, 2007

# TABLE OF CONTENTS

Page(s)

I.  NATURE AND STAGE OF THE PROCEEDING..............................................1

II.  SUMMARY OF THE ARGUMENT .............................................................1

III.  STATEMENT OF FACTS ..........................................................................2

IV.  TELCORDIA'S REQUEST FOR PREJUDGMENT INTEREST SHOULD BE DENIED...................................................................................................2

    A.    The Jury's Damages Award Includes Prejudgment Interest...................3

    B.    In Any Event, Telcordia Waived Any Request For Prejudgment Interest ............4

    C.    If Prejudgment Interest Is Awarded, The Treasury Bill Rate Should Apply.........6

V.  TELCORDIA IS NOT ENTITLED TO AN ACCOUNTING .........................................11

VI.  CONCLUSION...........................................................................................12

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Datascope Corp. v. SMEC, Inc.*,
  879 F.2d 820 (Fed. Cir. 1989)..................................................................10

*General Motors Corp. v. Devex Corp.*
  461 U.S. 648 (1983)............................................................................2, 6

*Golight, Inc. v. Wal-Mart Stores, Inc.*,
  216 F. Supp. 2d 1175 (D. Colo. 2002)........................................................10

*Joy Techs., Inc. v. Flakt, Inc.*,
  954 F. Supp. 796 (D. Del 1996)................................................................10

*Kaiser Aluminum & Chem. Corp. v. Bonjorno*,
  494 U.S. 827 (1990)...............................................................................3

*Laitram Corp. v. NEC Corp.*,
  115 F.3d 947 (Fed. Cir. 1997)..............................................................6, 9

*Oiness v. Walgreen Co.*,
  88 F.3d 1025 (Fed. Cir. 1996)..................................................................6

*Poleto v. Consolidated Rail Corp.*,
  826 F.2d 1270 (3d Cir. 1987)...................................................................3

**OTHER AUTHORITIES**

SKENYON ET AL, PATENT DAMAGES LAW & PRACTICE § 4:8..........................................6

## I.    NATURE AND STAGE OF THE PROCEEDING

Telcordia filed this patent infringement lawsuit against Cisco in July 2004, asserting U.S. Patents Nos. 4,893,306 ("the '306 patent"), RE 36,633 ("the '633 patent"), and 4,835,763 ("the '763 patent"). Because Telcordia did not oppose summary judgment of non-infringement of the '306 patent, infringement of that patent was not tried to the jury; the Court entered an Order granting summary judgment of non-infringement on five grounds requested by Cisco. D.I. 341. The Court held a jury trial on all issues relating to the '633 and '763 patents from April 30 to May 10, 2007. The jury determined that Cisco willfully infringed the '633 and '763 patents, and the Court entered judgment on May 16, 2007. D.I. 346, 348. The parties have filed a number of post-trial motions. D.I. 362, 366, 369, 371, 373 and 375.

## II.    SUMMARY OF THE ARGUMENT

The one constant in Telcordia's assertion of the patents-in-suit has been its excessive demand for money. Even leaving aside its settlement positions, Telcordia has sought far more than the legitimate value of its aging and marginal patents. Having sought hundreds of millions of dollars for Cisco's alleged infringement of the '306 patent, Telcordia was forced to accept that it is not entitled to a penny. Having sought nearly $200 million in damages for Cisco's alleged infringement of the '633 patent, Telcordia was forced to reduce its request to less than $5 million after the Court ruled *in limine* that Telcordia's theory did not even have sufficient basis to go before the jury. And having sought $70 million in damages for Cisco's alleged infringement of the '763 patent, the evidence at trial confirmed that Telcordia's theory included tens of millions of dollars for which Telcordia never articulated an infringement theory or identified any factual support. In the end, the $6.5 million verdict confirmed that the jury also recognized Telcordia's demands as grossly inflated.

In its motion for prejudgment interest and an accounting, Telcordia again seeks to inflate its recovery beyond what the record supports, this time hoping to collect additional sums for interest on the jury's damages award and through an accounting for sales past January 31, 2007. Though Telcordia paints itself as entitled to these sums as a matter of course, the reality is that an award of prejudgment interest and/or an accounting would provide Telcordia a double recovery and the amount Telcordia seeks is, in any event, excessive. Telcordia's request should be denied.

**III.    STATEMENT OF FACTS**

The pertinent facts are set forth in the Argument sections, as appropriate.

**IV.    TELCORDIA'S REQUEST FOR PREJUDGMENT INTEREST SHOULD BE DENIED**

In reading Telcordia's motion for prejudgment interest, one is led to believe that the award of prejudgment interest is a foregone conclusion. But the Supreme Court has firmly rejected such an inflexible view of prejudgment interest. In *General Motors Corp. v. Devex Corp.*, the Court ruled that it did "not construe § 284 as requiring the award of prejudgment interest whenever infringement is found," and instead that Section 284 "leaves the court some discretion in awarding prejudgment interest." 461 U.S. 648, 656-57 (1983). Indeed, there are "circumstances in which it may be *appropriate not to award prejudgment interest*" at all. *Id.*[1] This case presents precisely such circumstances. As discussed below, Telcordia has either already received prejudgment interest, or if not, waived its right to it by failing to present evidence on prejudgment interest to the jury.

---

[1]    Emphasis supplied throughout, unless otherwise noted.

2

**A.      The Jury's Damages Award Includes Prejudgment Interest**

It is common sense that, in the absence of evidence or an express instruction that interest not be awarded, a reasonable jury will consider the age of the infringement in its damages award.[2] That is precisely what happened in this case.

As discussed in Cisco's concurrently-filed Answering Brief In Opposition To Telcordia's Motion For Entry Of A Permanent Injunction Or, In The Alternative, For An Order Requiring Cisco To Pay A Market-Rate Royalty, it is indisputable that the jury rejected Telcordia's damages theory in favor of the damages theory presented by Cisco's expert, Mr. Musika. Mr. Musika's *Georgia-Pacific* analysis resulted in damages of $5.7 million for the '763 patent and $550,000 for the '633 patent. Mr. Musika adjusted the total damages for both patents from $6,200,000 to $5,000,000 based on present value considerations. *See* D.I. 359 [5/8/07 Trial Tr] at 1907:19-1909:13.

It is this present-value adjustment that is important for the instant motion. As Mr. Musika explained at trial, his present-value calculation *discounted* the damages award for the interest that would have been awarded had the lump-sum reasonable royalty been paid at the time of the hypothetical negotiation in 2001. *Id.* In other words, a payment of $5.7 million in 2001 is equivalent to one of $6.2 million now, because the $5.7 million would have earned six years of interest.

With this evidence in hand—and with no such evidence from Telcordia's expert, Mr. Nawrocki—the verdict is best understood as adopting Mr. Musika's damages theory minus

---

[2]      Courts have noted as much. *See, e.g., Poleto v. Consolidated Rail Corp.*, 826 F.2d 1270, 1277 (3d Cir. 1987), *overruled on other grounds by Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827 (1990) ("It has been suggested that when a jury has been asked to render only a general verdict, it might be presumed to have included prejudgment interest in its calculation of damages.").

the present-value discount.  Further, the jury verdict is best understood as compensating

Telcordia for the time between the 2001 hypothetical negotiation and the 2007 damages award

by refusing to discount Mr. Musika's lump sum payment to account for the time value of money.

That the jury would consider lost interest is not surprising.  Not only did Mr. Musika expressly

discuss this in his presentation, but both parties emphasized the decade-long pre-suit discussions

throughout the trial.  *See, e.g.*, D.I. 358 [Trial Tr.] at 2167:5-7 (Telcordia's Closing Argument)

("I suggest this is not the kind of conduct that is acceptable, and I suggest that it's more of the

same type of conduct that we've seen over the *past ten years*."); D.I. 358 [Trial Tr.] at 2198:4-

2200:25 (Cisco's Closing Argument).  On these facts, the most reasonable way to understand the

verdict is to conclude that the jury considered the age of the infringement in arriving at its $6.5

million award.[3]

**B.      In Any Event, Telcordia Waived Any Request For Prejudgment Interest**

In its pretrial submissions, Telcordia was silent on its request for prejudgment

interest.[4]  Knowing full well that its pretrial submissions "are intended to provide full and

complete disclosure of the parties' respective theories of the case" and that it risked waiver of

any theory of liability or defense not expressed therein, Telcordia expressly sought enhanced

damages, attorneys' fees, costs and an injunction, and affirmatively *excluded* a request for

prejudgment interest:

---

[3]     That common-sense conclusion is particularly appropriate where, as here, the verdict
form expressly invited the jury to award the "amount of monetary damages that will
*compensate* Telcordia for Cisco's infringement," and the jury was not instructed to
exclude interest from its deliberations.  D.I. 346 [Verdict Form]; D.I. 343 [Final Jury
Instructions].

[4]     Although Telcordia's damages expert report included a general caveat that Mr. Nawrocki
"may also be asked to calculate the amount of prejudgment interest on the damages
awarded," Mr. Nawrocki in fact provided no calculation or analysis of prejudgment
interest in his report or at trial.  Exhibit 1 [Expert Report of James Nawrocki].

4

> Finally, Telcordia intends to seek **enhanced damages** under 35
> U.S.C. § 284 due to the defendants' willful infringement, a finding
> that the case is exceptional under 35 U.S.C. § 285 warranting
> recovery of **attorneys' fees**, and an **injunction** under 35 U.S.C. §
> 283 and eBay Inc. v. MercExchange, L.L.C., 126 S. Ct. 1837
> (2006).

D.I. 318 [Pretrial Order], Exhibit I1 (Telcordia's Trial Brief) at 12.

> In the event that liability is found on U.S. Patent No. Re. 36,633
> ("the '633 patent") and U.S. Patent No. 4,835,763 ("the '763
> patent") with regard to Cisco, **Telcordia will seek treble damages,
> attorneys' fees, and a permanent injunction.**

D.I. 318 [Pretrial Order] at Paragraph (1).

ITEMIZED STATEMENT OF SPECIAL DAMAGES

I.    TELCORDIA'S STATEMENT

> Telcordia asserts that Cisco's and Lucent's infringement has been,
> and continues to be, willful. As such **Telcordia seeks enhanced
> damages.** Telcordia has also requested a finding that this is an
> exceptional case and is seeking an award of its **attorneys' fees and
> costs.**

D.I. 318 [Pretrial Order], Exhibit G (Itemized Statement of Special Damages).[5]

Under these circumstances, it is clear that the omission of prejudgment interest

was not an accident, but that Telcordia affirmatively chose to remain silent on the question of

prejudgment interest in its pretrial submissions and at trial. That choice precludes it from

seeking prejudgment interest—amounting, according to Telcordia, to nearly 20% of the jury's

damages award—now. To hold otherwise would be to reward Telcordia for its failure to pursue

prejudgment interest and to subject Cisco to what is in all likelihood a double recovery by

---

[5]  This omission is particularly telling because the parties had agreed, subject to the Court's
approval, that **all issues** would be tried by the jury. Exhibit 2 [Pretrial Conference
Transcript] at 155:13-17 ("Mr. Dunner: The parties discussed with one another, as we
were preparing the pretrial order, whether we would **agree, subject to your approval, that
all the issues,** including typically equitable issues, **would be decided not as an advisory
matter but as a final matter.**").

5

Telcordia. More generally, allowing an after-the-fact recovery of interest would incentivize plaintiffs to remain purposefully silent on prejudgment interest at trial with the hope of receiving interest once from the jury and again from the court. This approach should be rejected.

**C.    If Prejudgment Interest Is Awarded, The Treasury Bill Rate Should Apply**

Even if prejudgment interest is applied, Telcordia's position that it is entitled to interest at the prime rate should be rejected.

The Supreme Court has made clear that the purpose of prejudgment interest, if any is awarded, is to restore the patentee to the position it would have been in had a reasonable royalty been paid at the time of the hypothetical negotiation. *Devex*, 461 U.S. at 655. As such, "[p]rejudgment interest has no punitive, but only compensatory, purposes." *Oiness v. Walgreen Co.*, 88 F.3d 1025, 1033 (Fed. Cir. 1996). In determining the position the patentee would have been in if it had been paid at the time of the hypothetical negotiation, courts frequently consider whether the patentee was in an investing position or a borrowing position during the relevant time. In the former case, interest is often awarded at the Treasury Bill rate, which represents the risk-free rate an investor would earn; in the latter case, interest may be awarded at the prime rate or a similar rate, to reimburse the borrower for interest it had to pay on funds it had to borrow as a result of the lost use of the funds. *See generally* SKENYON ET AL, PATENT DAMAGES LAW & PRACTICE § 4:8 (noting that courts may award prejudgment interest at a prime rate, or some variant thereof, if the patent owner was in a "borrowing" situation during the relevant period, and at the Treasury Bill rate, or something similar, if the patent owner was in a "investing" position); *see also Laitram Corp. v. NEC Corp.*, 115 F.3d 947, 955 (Fed. Cir. 1997) (affirming use of Treasury Bill interest rate absent evidence that the patentee "borrowed money at a higher rate,

what that rate was or that there was a *causal connection between any borrowing and the loss of the use of the money awarded as a result of the [defendant's] infringement*").

Here, Telcordia's request for interest at the prime rate—which for the relevant period ranges between 4% and over 8%—is based on its assertion that it was in debt and was paying interest on its debt at a rate approximating or exceeding the prime rate.  D.I. 363, Opening Brief at 3

REDACTED

; D.I. 364 [Giordano Prejudgment Interest Declaration] at ¶ 2.  However, the picture Telcordia paints of a heavily-indebted company is not accurate.

At the outset, Telcordia did not have any debt until March 15, 2005.  Indeed, notwithstanding Mr. Giordano's sworn statement that

Mr. Giordano admitted in deposition

REDACTED

Exhibit 3 [7/19/07 Giordano Depo Tr.] at 765:15-19 (objections omitted).

The reason for this is simple: between 1998 and 2005, Telcordia was owned by SAIC.  *Id.* at 768:11-769:12.  As a wholly-owned subsidiary of SAIC, Telcordia

REDACTED

SAIC itself touted Telcordia's financial health, stating in its 2003 Annual Report that Telcordia was providing it "good profitability." Exhibit 5 [2003 SAIC Annual Report] at 3-4.  Indeed, even Telcordia employees commented on

7

the profits SAIC reaped from its ownership of Telcordia:

## REDACTED

As a result of this profitability, Telcordia was able to fund a $70 million acquisition of another telecommunications company in 2004 alone. *See, e.g.*, Exhibit 7 [Who Makes What: OSS] (article noting Telcordia's $70 million acquisition of Granite Systems in 2004).

Given these facts, Telcordia is left with only two explanations for its assertion that it was in debt during the period from 2001 through 2007. First, Telcordia asserts that SAIC, its corporate owner, was the one in debt, not Telcordia. Exhibit 3 [7/19/07 Giordano Depo Tr.] at 766:6-16. This explanation falls flat. There is no dispute that Telcordia was a

## REDACTED

Accordingly, SAIC's debt, to the extent it had any,[6] is not probative of Telcordia's position as an investor or borrower during the relevant time period. To conclude otherwise would be to conclude that Telcordia had ignored its corporate form and was, for example, an alter ego of SAIC (with all the regulatory and tax implications that would have). Moreover, given Telcordia's profitability, it is clear that whatever debt was incurred by SAIC

---

[6]     SAIC is a large research and engineering firm with multibillion dollar revenues. In furtherance of its business model—which includes the strategic acquisition and sale of subsidiaries—SAIC engages in complex financial maneuverings to maximize profits and leverage. To the extent SAIC's business model includes the taking on of debt, this is not of necessity but because SAIC deems it profitable.

during the period from 2001 to 2005 was not attributable to, or related in any way to, Telcordia or the $6.5 million at issue here.

Second, Telcordia points to the debt it took on in March 2005. This debt is a particularly poor barometer of Telcordia's position as either a borrower or investor during the period from 2001 through 2007. At the outset, the late acquisition of this debt confirms that the period for which Telcordia requests prejudgment interest as a borrower is grossly inflated. As a matter of sheer logic, borrowing in mid-2005 does not justify the conclusion that there was borrowing in 2001, 2002, 2003, 2004, and part of the 2005 when, in fact, there was not. Moreover, even for the post-2005 period, the cause of the debt must be considered. That debt was a result of the billion-dollar leveraged buyout of Telcordia by Providence Equity Partners and Warburg Pincus, multibillion dollar private equity firms. Exhibit 3 [7/19/07 Giordano Depo Tr.] at 772:2-10. This type of financial transaction does not reflect a company in poor financial condition and in need of cash, but rather a complex, billion dollar transaction in which debt was incurred as structured by private equity firms to maximize leverage.[7]

In any event, whatever debt was incurred by SAIC or later by Telcordia is wholly irrelevant to the present inquiry. There is no evidence that Telcordia incurred any debt as a result of the timing of the receipt of the $6.5 million award in this case. In fact, Telcordia has not asserted—let alone proved—the requisite causal connection between any borrowing and the loss of the use of the money awarded as a result of Cisco's infringement. *Laitram*, 115 F.3d at 955. Nor has Telcordia proven that it would have used the $6.5 million to pay down its alleged debt.

**REDACTED**

---

[7]     Even now, Telcordia's annual revenues are approximately               Exhibit 3
[7/19/07 Giordano Depo Tr.] at 696:23-697:8.

**REDACTED**

REDACTED

Exhibit 3 [7/19/07 Giordano Depo Tr.] at 779:25-780:18.  In other words, had Telcordia received the $6.5 million in 2001, the record provides no basis to conclude how it would have been used.

Based on the above, it is clear that Telcordia was not driven to borrow money at high interest rates at all during the relevant period, and certainly not as a result of lost use of the $6.5 million award.  In this situation, if prejudgment interest is awarded at all, the proper rate for such interest is the Treasury Bill rate, which would adequately compensate Telcordia for the lost investment income it might have earned on that $6.5 million award.[8]  *See, e.g., Datascope Corp. v. SMEC, Inc.*, 879 F.2d 820, 829 (Fed. Cir. 1989) (upholding award of prejudgment interest Treasury Bill rate rather than prime rate); *Golight, Inc. v. Wal-Mart Stores, Inc.*, 216 F. Supp. 2d 1175, 1187 (D. Colo. 2002) ("Upon consideration of the evidence in this case, the Court finds that since Golight has not shown that it was required to borrow money or cover losses associated with the infringement, use of the prime rate is not justified.  Accordingly, the Court will assess prejudgment interest at the T-Bill rate."); *see also, e.g., Joy Techs., Inc. v. Flakt, Inc.*, 954 F.

---

[8]    Not only is the Treasury Bill rate the statutory rate for post-judgment interest, but it more closely approximates the actual interest rate Telcordia is paying now.  As Mr. Giordano explained in his deposition,

REDACTED

10

Supp. 796 (D. Del 1996) (awarding prejudgment interest at Treasury Bill rate).[9] To award

interest at a higher rate would provide Telcordia more than the amount necessary to adequately

compensate it for the infringement and thus exceed the permissible award of prejudgment

interest.

## V.     TELCORDIA IS NOT ENTITLED TO AN ACCOUNTING

Just as with its prejudgment interest request, Telcordia's request for an accounting

seeks to go well beyond simple compensation for the infringement found by the jury, and

instead, to artificially enlarge its award.

As noted above and discussed in detail in Cisco's concurrently-filed Answering

Brief In Opposition To Telcordia's Motion For Entry Of A Permanent Injunction Or, In The

Alternative, For An Order Requiring Cisco To Pay A Market-Rate Royalty, the jury's damages

award of $6.5 million is best understood to have granted Cisco a fully-paid up license for all

activities relating to the '633 and '763 patents. The evidence and analysis in support of that

conclusion is detailed in that submission and incorporated here by reference. For present

purposes, it is sufficient to note that, if the Court finds that the jury awarded Cisco a lump-sum

license, that verdict has already fully compensated Telcordia for any and all use of the '633 and

'763 patents by Cisco, and thus bars Telcordia from obtaining any further relief. In other words,

Cisco's sales from January 31 through the entry of judgment, and all sales thereafter, are fully

licensed and not subject to any recovery by Telcordia. Given this license, Telcordia's request for

an accounting must be denied.

---

[9]     Should the Court decide to award prejudgment interest at the Treasury Bill rate, Cisco
would be happy to provide a proposed prejudgment interest calculation for the Court's
review.

11

Moreover, even if the Court were to find that Cisco is not licensed, Telcordia has failed to properly request an accounting now. Notwithstanding its conclusory request for "accounting for infringing sales from January 31, 2007, to the date of final judgment in this case" and an award of damages and interest on those sales, Telcordia's opening brief is completely silent as to what "infringing sales" should be included within that accounting and what royalty rate should apply. D.I. 363, Opening Brief at 9-10. Those questions are threshold questions that must be answered for a request for an accounting to be meaningful, particularly because the jury was presented with extremely divergent views as to the appropriate royalty base (*e.g.*, the parties' dispute as to whether Telcordia is entitled to damages on SRTS-compatible cards only, or on SRTS-compatible cards and corresponding boxes) and as to the appropriate royalty rate. Telcordia's silence on these issues renders its request for an accounting meaningless.[10]

## VI.    CONCLUSION

For the foregoing reasons, Cisco respectfully requests that the Court deny Telcordia's Motion For An (1) An Award Of Prejudgment Interest And (2) An Accounting Of Defendant Cisco Systems, Inc.'s Infringing Sales Since January 31, 2007.

---

[10]    Should the Court permit Telcordia to amend its request for an accounting to set forth its proposal as to the applicable royalty base and rate for an accounting, Cisco will of course respond.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Leslie A. Polizoti (#4299)*
Jack B. Blumenfeld (#1014)
Leslie A. Polizoti (#4299)
1201 North Market Street
Post Office Box 1347
Wilmington, Delaware  19899-1347
(302) 658-9200
lpolizoti@mnat.com

*Attorneys for Defendant Cisco Systems, Inc.*

OF COUNSEL:

Matthew D. Powers
Edward R. Reines
Jessica L. Davis
Sonal N. Mehta
Thomas B. King
Derek C. Walter
Weil, Gotshal & Manges LLP
201 Redwood Shores Parkway
Redwood Shores, CA  94065

July 23, 2007
979018

## CERTIFICATE OF SERVICE

I hereby certify that on July 23, 2007 I electronically filed the foregoing

with the Clerk of the Court using CM/ECF, which will send notification of such filing to Steven

J. Balick and John G. Day.

I further certify that I caused copies of the foregoing document to be

served on July 23, 2007 upon the following in the manner indicated:

**BY HAND**

John G. Day
ASHBY & GEDDES
500 Delaware Avenue, 8th Fl.
Wilmington, DE 19801

**BY FEDERAL EXPRESS**
**(on July 24, 2007)**

Don O. Burley
FINNEGAN, HENDERSON,
 FARABOW, GARRETT & DUNNER
901 New York Avenue
Washington, DC 20001

**BY ELECTRONIC MAIL**

John Day (jday@ashby-geddes.com)
Steven J. Balick (sbalick@ashby-geddes.com)
John Williamson (john.williamson@finnegan.com)
York Faulkner (york.faulkner@finnegan.com)
Don Burley (don.burley@finnegan.com)

/s/ Leslie A. Polizoti (#4299)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
Wilmington, DE 19801
(302) 658-9200
lpolizoti@mnat.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 30, 2007 I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing to Steven J. Balick and John G. Day.

I further certify that I caused copies of the foregoing document to be served on July 30, 2007 upon the following in the manner indicated:

**BY ELECTRONIC MAIL**

John Day (jday@ashby-geddes.com)
Steven J. Balick (sbalick@ashby-geddes.com)
John Williamson (john.williamson@finnegan.com)
York Faulkner (york.faulkner@finnegan.com)
Don Burley (don.burley@finnegan.com)


*/s/ Leslie A. Polizoti*

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
Wilmington, DE 19801
(302) 658-9200
lpolizoti@mnat.com