## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

TELCORDIA TECHNOLOGIES, INC.,    )
                                   )
       Plaintiff/Counterclaim Defendant,    )
                                   )
               v.                     )      C.A. No. 04-876 (GMS)
                                   )
CISCO SYSTEMS, INC.,             )
                                   )      **REDACTED-PUBLIC VERSION**
     Defendant/Counterclaim Plaintiff.    )

---

## CISCO'S ANSWERING BRIEF IN OPPOSITION TO PLAINTIFF TELCORDIA TECHNOLOGIES, INC.'S MOTION FOR ATTORNEYS' FEES AND EXPENSES PURSUANT TO 35 U.S.C. § 285 AND/OR THE COURT'S INHERENT EQUITABLE AUTHORITY

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Leslie A. Polizoti (#4299)
1201 North Market Street
Post Office Box 1347
Wilmington, Delaware 19899-1347
(302) 658-9200
lpolizoti@mnat.com

*Attorneys for Defendant Cisco Systems, Inc.*

OF COUNSEL:

Matthew D. Powers
Edward R. Reines
Jessica L. Davis
Sonal N. Mehta
Thomas B. King
Derek C. Walter
Weil, Gotshal & Manges LLP
201 Redwood Shores Parkway
Redwood Shores, California 94065

Originally Filed: July 23, 2007
Redacted Version Filed: July 30, 2007

# TABLE OF CONTENTS

Page(s)

I.      NATURE AND STAGE OF THE PROCEEDING........................................................ 1

II.     SUMMARY OF THE ARGUMENT ......................................................................... 1

III.    STATEMENT OF FACTS ....................................................................................... 3

IV.     BECAUSE THE EVIDENCE OF WILLFULNESS IS WEAK AND
        TELCORDIA'S ALLEGATIONS OF LITIGATION MISCONDUCT ARE
        ILLUSORY, A FEES AWARD IS INAPPROPRIATE................................................. 3

        A.      The Evidence Of Willful Infringement Is Too Weak To Support A Finding
                Of Exceptional Status And Hence A Fees Award .............................................. 4

        B.      Telcordia's Discovery Complaints Are Illusory ............................................... 7

                1.      Telcordia's Failure To Seek Relief Under Rule 37 Shows That The
                        Complained Of Discovery Misconduct Is Illusory .................................. 7

                2.      Cisco Did Not Improperly Request The Discovery Of Information
                        Pertaining To Telcordia's OSMINE Testing Program ............................ 9

                3.      Cisco Did Not Improperly Withhold Technical Information
                        Relating To The Accused Products............................................................ 12

        C.      Cisco Litigated Defenses In Good-Faith That Were Well Grounded In Fact
                And Law.......................................................................................................... 14

                1.      Cisco's Decision Not To Pursue All Of Its Defenses Was Entirely
                        Appropriate And Does Not Call For A Fees Award................................ 15

                2.      Cisco's Inequitable Conduct Defenses Were Highly Compelling
                        And Were Raised In Good Faith................................................................ 16

V.      TELCORDIA'S LITIGATION CONDUCT DEMONSTRATES THE
        INAPPROPRIATENESS OF THIS CASE FOR A FEES AWARD ............................. 18

        A.      Telcordia's Actions Unnecessarily Multiplied The Scope Of Litigation
                And Are Not Those Of A Party Trying To Minimize Costs................................ 18

        B.      Telcordia's Pursuit Of Numerous Inappropriate Legal Theories And Its
                Numerous Attempts To Use Inadmissible Evidence Show That Telcordia
                Does Not Deserve Attorneys' Fees.................................................................... 21

                1.      Telcordia Repeatedly Attempted To Submit An Expert Report On
                        The '306 Patent Even After The Court Ordered It Not To Do So........... 22

i

**TABLE OF CONTENTS**
**(continued)**

Page(s)

2.    Telcordia Continues To Pursue A Baseless Damages Theory For
      The '633 Patent ............................................................................... 23

3.    Telcordia Haphazardly And Inappropriately Accused Numerous
      Cisco Products ................................................................................. 24

4.    Telcordia Prepared Unreasonable Deposition Designations And
      Insisted Until The Last Minute That It Would Play Inadmissible
      Testimony ......................................................................................... 26

VI.    CONCLUSION ........................................................................................... 28

# TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*A.C. Aukerman Co. v. R.L. Chaides Constr. Co.,*
    960 F.2d 1020 (Fed. Cir. 1992).................................................................10

*Arbrook, Inc. v. American Hospital Supply Corp.,*
    645 F.2d 273 (5th Cir. 1981) ...................................................................7

*Cybor Corp. v. Fas Techs.,*
    138 F.3d 1448 (Fed. Cir. 1998)........................................................1, 4, 16

*Ferring B.V. v. Barr Labs., Inc.,*
    437 F.3d 1181 (Fed. Cir. 2006)................................................................17

*FieldTurf Int'l, Inc. v. Sprinturf, Inc.,*
    433 F.3d 1366 (Fed. Cir. 2006)................................................................3

*Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc.,*
    389 F.3d 1370 (Fed. Cir. 2004)................................................................5

*Honeywell Int'l, Inc. v. Hamilton Sundstrand Corp.,*
    166 F. Supp. 2d 1008 (D. Del. 2001).........................................................4

*IMX, Inc. v. Lendingtree, LLC,*
    469 F. Supp. 2d 203 (D. Del. 2007)..........................................................4

*Insituform of North America, Inc. v. Midwest Pipeliners, Inc.,*
    26 U.S.P.Q.2d (BNA) 1125 (S.D. Ohio 1992) ...........................................7

*Kimberly-Clark Corp. v. Johnson & Johnson,*
    745 F.2d 1437 (Fed. Cir. 1984).................................................................3

*Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.,*
    372 F. Supp. 2d 833 (E.D. Va. 2005) .........................................................4

*Merck & Co., Inc. v. Mylan Pharms., Inc.,*
    79 F. Supp. 2d 552 (E.D. Pa. 2000) ..........................................................7

*Motorola, Inc. v. Interdigital Tech. Corp.,*
    121 F.3d 1461 (Fed. Cir. 1997).................................................................18

*National Presto Indus. v. West Bend Co.,*
    76 F.3d 1185 (Fed. Cir. 1996).............................................................1, 5

iii

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*Power Mosfet Techs., L.L.C. v. Siemens AG,*
  378 F.3d 1396 (Fed. Cir. 2004)..................................................................................18

*Reactive Metals & Alloys Corp. v. ESM, Inc.,*
  769 F.2d 1578 (Fed. Cir. 1985).....................................................................................3

*Sensonics, Inc. v. Aerosonic Corp.,*
  81 F.3d 1566 (Fed. Cir. 1996)..................................................................................3, 18

*State Indus. v. A.O. Smith Corp.,*
  751 F.2d 1226 (Fed. Cir. 1985)...................................................................................16

*Stickle v. Heublein, Inc.,*
  716 F.2d 1550 (Fed. Cir. 1983)..............................................................................15, 25

## I.    NATURE AND STAGE OF THE PROCEEDING

Telcordia filed this patent infringement lawsuit against Cisco in July 2004, asserting U.S. Patents Nos. 4,893,306 ("the '306 patent"), RE 36,633 ("the '633 patent"), and 4,835,763 ("the '763 patent"). This Court held a jury trial on all issues from April 30 to May 10, 2007.[1] The jury determined that Cisco infringed, and the Court entered judgment of willful infringement on May 16, 2007. *See* D.I. 348. Based on the verdict and alleged litigation misconduct by Cisco, Telcordia brought a motion pursuant to 35 U.S.C. § 285 requesting over $6.9 million in attorneys' fees. Cisco opposes Telcordia's motion.

## II.    SUMMARY OF THE ARGUMENT

It is hornbook law that, in American jurisprudence, attorneys' fees should be awarded only in "exceptional" cases that exemplify bad faith, recklessness, or vexatious litigation tactics. And, even in "extraordinary" cases, the Federal Circuit has noted that "the award of attorney fees is not automatic." *National Presto Indus. v. West Bend Co.*, 76 F.3d 1185, 1197 (Fed. Cir. 1996). So long as a party litigates an uncertain case "in good faith," raising defenses that are "not frivolous or asserted for an improper purpose," a court is well within its discretion to deny a prevailing party's motion for attorney fees. *See Cybor Corp. v. Fas Techs.*, 138 F.3d 1448, 1461 (Fed. Cir. 1998). Given that Telcordia actually lost most of the case before trial even began, there can be no doubt that Cisco litigated worthy defenses in good faith. Indeed, with respect to the '306 patent—the key patent that anchored Telcordia's case and allegedly covered fundamental networking technology—Cisco prevailed entirely on its non-

---

[1]    Because Telcordia did not oppose summary judgment of non-infringement of the '306 patent, infringement of that patent was not tried to the jury. The Court has issued an Order granting summary judgment of non-infringement on five grounds requested by Cisco. D.I. 341.

infringement argument *at the summary judgment stage*.  With regard to the '633 patent, which was little more than an afterthought until the Court's *Markman* ruling, the Court's *in limine* order stripped away almost 97% of the $200 million in damages that Telcordia originally sought.  And, when the jury finally issued its verdict, it awarded Telcordia less than 10% of the damages the Court permitted Telcordia to seek, illustrating an underlying—and well deserved—skepticism for Telcordia's case.[2]  Having gained so little from its efforts, Telcordia now asks the Court to award it more money in attorney's fees than the jury awarded it on the substantive issues in the case.  This striking fact is symptomatic of the underlying problem in Telcordia's fees request: Telcordia's request that this be found an exceptional case and that fees be awarded is fundamentally inconsistent with the facts of the case.

As for the alleged litigation misconduct that Telcordia complains of, it must be noted first and foremost that, throughout the litigation, Telcordia took no action whatsoever in response to the supposed misconduct that it now alleges in its motion.  This is so even though the Court made absolutely clear that it was available to assist with litigation disputes.  Telcordia made no attempt to seek an order compelling discovery, a protective order, or even raise any of the alleged disputes during one of the discovery hearings or teleconferences held by the Court.  Telcordia's total inaction on this front is a decisive admission that even Telcordia understands that its complaints of misconduct lack merit.

However, even more than Telcordia's inaction, Telcordia's own litigation conduct demonstrates the inappropriateness of this case for a fees award.  As set forth in detail below, Telcordia took actions that needlessly expanded the scope of the litigation, including, among

---

[2]  For a more detailed discussion on this issue, Cisco refers the Court to its Answering Brief In Opposition To Telcordia Technologies, Inc.'s Motion To Enhance Damages Pursuant To 35 U.S.C. § 284, filed concurrently herewith.

other things, pursuing, and then dropping, infringement theories for products that Cisco never even sold, pursuing a grotesque damages theory designed to capture almost $200 million in royalties for roughly 197,000 *non-infringing* Cisco boxes, submitting untimely expert reports after the Court repeatedly ordered it not to do so, and instituting a completely separate action in the International Trade Commission that it maintains even after all prospect of meaningful relief has been essentially squelched.  In short, Telcordia's conduct demonstrates that this is not a situation where it was one-sidedly subjected to overly aggressive, improper litigation tactics. Rather, this was a case where Telcordia dished out far more than it received.  Under these circumstances, a fees award is clearly unwarranted.  *See, e.g., Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1575 (Fed. Cir. 1996) ("[T]he court may consider the litigation actions of both sides in connection with § 285.").  Certainly, Telcordia cannot meet the high burden of showing by "clear and convincing evidence" that there is any "exceptional character" to this case.  *See Reactive Metals & Alloys Corp. v. ESM, Inc.*, 769 F.2d 1578, 1582 (Fed. Cir. 1985). Accordingly, Telcordia's motion for attorneys' fees should be denied.

### III.     STATEMENT OF FACTS

The pertinent facts are set forth in the Argument sections, as appropriate.

### IV.     BECAUSE THE EVIDENCE OF WILLFULNESS IS WEAK AND TELCORDIA'S ALLEGATIONS OF LITIGATION MISCONDUCT ARE ILLUSORY, A FEES AWARD IS INAPPROPRIATE

Attorneys' fees "are not to be awarded in normal cases involving no unconscionable conduct on the part of the losing party." *Kimberly-Clark Corp. v. Johnson & Johnson*, 745 F.2d 1437, 1458 (Fed. Cir. 1984).  Indeed, attorneys' fees are only to be awarded when it is necessary to prevent a *"gross injustice"* to the prevailing party. *See FieldTurf Int'l,*

3

*Inc. v. Sprinturf, Inc.*, 433 F.3d 1366, 1373 (Fed. Cir. 2006).[3]  This is so because "Congress in choosing to limit district court authority to award attorney's fees to 'exceptional' cases has made clear that this should occur only in rare or extraordinary cases.  And courts elucidating this statutory language have generally found that 'exceptional' cases are those rare or extraordinary cases blighted and marked by a party's bad faith or inequitable conduct."  *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 372 F. Supp. 2d 833, 851 (E.D. Va. 2005).  As set forth below, neither the jury's willfulness verdict nor Telcordia's allegations of litigation misconduct come close to providing the extremely high level of justification necessary to sustain a fees award.

### A. The Evidence Of Willful Infringement Is Too Weak To Support A Finding Of Exceptional Status And Hence A Fees Award

"[A] finding of willful infringement does not require a finding that a case is exceptional." *Cybor Corp. v. FAS Techs.*, 138 F.3d 1448, 1461 (Fed. Cir. 1998).  Specifically, where the evidence of willfulness is "weak," a finding of exceptionality need not follow.  *See id.* at 1460.  Similarly, if the accused infringer litigates non-frivolous defenses in "good faith" and the issue of infringement presents a "close case," a court need not find the case to be exceptional even if the jury finds willful infringement. *See, e.g., Honeywell Int'l, Inc. v. Hamilton Sundstrand Corp.*, 166 F. Supp. 2d 1008, 1040-1041 (D. Del. 2001) (Sleet, J.); *see also IMX, Inc. v. Lendingtree, LLC*, 469 F. Supp. 2d 203, 223 (D. Del. 2007) (holding that a case of willful infringement was not exceptional when "defendant's infringement of the '947 patent was a 'close' question, and defendant's trial tactics did not rise to the level of bad faith or vexatious litigation"); *Atmel Corp. v. Silicon Storage Tech.*, Inc., 202 F. Supp. 2d 1096, 1109 (N.D. Cal.

---

[3]  Emphasis supplied throughout, unless otherwise noted.

2002) (declining to find exceptionality in a case of willful infringement even though defendant's "lawyers may have pushed the boundaries of acceptable courtroom decorum and may have used every known artifice to convince the jury"). And, as the Federal Circuit has repeatedly noted, the trial judge's decision on the issue of attorneys' fees is to be afforded generous deference:

> This court affords trial judges discretion to award attorney fees for good reasons. After presiding over the preparation and trial of the case, the *trial judge can best weigh the relevant considerations, such as the closeness of the case, the tactics of counsel, the flagrant or good faith character of the parties' conduct,* and any other factors contributing to imposition of punitive sanctions or to fair allocation of the burdens of litigation.

*See, e.g., Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc.,* 389 F.3d 1370, 1378 (Fed. Cir. 2004) (internal citations omitted); *see also Nat'l Presto Indus. v. West Bend Co.,* 76 F.3d 1185, 1197 (Fed. Cir. 1996) (affirming the district court's decision not to award attorney's fees, taking "note of the district court's reference to the closeness of the question of infringement").

This is not just a case where the evidence of willfulness is "weak."[4] In fact, this is a case where the record, and the strength of Cisco's defenses, overwhelmingly point to the conclusion that Cisco's belief that Telcordia's patents are either invalid or not infringed is legitimate, well justified, and, indeed, correct.[5] This point is elucidated fully in Cisco's motion for judgment as a matter of law and in Cisco's opposition to Telcordia's motion for enhanced damages, but the following exemplary items pertaining to the willfulness issue are illustrative:

---

[4]   Cisco has elected to address deficiencies connected to the jury's willfulness verdict through its motion for a new trial on the issue of willfulness. D.I. 373, 374.

[5]   Indeed, Cisco has brought motions for judgment as a matter of law that '633, '763, and '306 patents are invalid, and that the '763 patent is not-infringed. D.I. 375, 376.

- On the most important patent in the case, the '306 patent, Cisco prevailed entirely on its non-infringement argument at the summary judgment stage—an example of the overall strength of Cisco's defenses.

- Three former France Telecom employees offered consistent, unswerving testimony demonstrating that SRTS was a joint development between France Telecom and Bellcore, and that Richard Lau and Paul Fleischer derived key concepts of the '633 patent from France Telecom. Cisco also produced contemporaneous documents describing the collaboration, including a fax from Bellcore specifically acknowledging France Telecom's contribution to SRTS. *See* DTX 2367 [August 26, 1991 Facsimile from P. Adam]; DTX 2368 [September 4, 1991 Bellcore Response]. Likewise, contemporaneous standards body documents acknowledge France Telecom's contribution to SRTS, describing its development as "cooperative work." *See* DTX 2119 [CCITT Study Group XVIII entitled "Report of the Meeting of SWP XVIII/8-3 (Services, IVS and AAL types 1 and 2)" (December 1991)]. And critically, Cisco knew of these contributions as early as 1995. *See* PTX 408 [Report from April 1995 ATM Forum Meeting] (noting that Bellcore may have failed to join France Telecom as an inventor on the SRTS patent).

- For the '633 patent, Telcordia's allegations of deliberate copying are based solely on Cisco's observance of a networking standard that Telcordia underhandedly infected with matter allegedly covered by the '633 patent. Telcordia points to nothing akin to the surreptitious copying of a commercial embodiment, of which Telcordia has none. With regard to the '763 patent, Telcordia's expert admitted that compliance with the GR-1400 standard, which is issued by Telcordia, does not necessarily compel a finding of infringement. *See* D.I. 354 [5/3/07 Trial Tr.] at 1105:16-17.

- During the prosecution of the '763 patent, Richard Lau failed to disclose the Prisco & Hoss article, which discloses a ring network strikingly similar to the "hybrid ring" of the '763 patent. Mr. Lau withheld the Prisco & Hoss reference with undeniable knowledge of its materiality, having previously described the article in a technical memorandum as disclosing a "hybrid ring." *See* DTX 2083 [Lau Technical Memorandum]; D.I. 357 [5/2/07 Trial Tr.] at 740:14-18.

- Cisco sought and received the advice of competent legal counsel. *See* D.I. 335 [April 24, 2007 *in limine* order] at 9 n.2.

Given the vast evidence Cisco was aware of showing that Telcordia's patents are either invalid

or not infringed—and which contradicts the jury verdict on several levels—it simply cannot be

said that Cisco acted with the unconscionable level of bad faith required to support a fees award.

## B.    Telcordia's Discovery Complaints Are Illusory

With regard to the award of attorneys' fees in response to discovery misconduct, "the cases have generally disallowed attorneys' fees absent a serious breach, such as dishonest responses or failure to comply with discovery orders." *Merck & Co., Inc. v. Mylan Pharms., Inc.*, 79 F. Supp. 2d 552, 556-557 (E.D. Pa. 2000); *Insituform of North America, Inc. v. Midwest Pipeliners, Inc.*, 26 U.S.P.Q.2d (BNA) 1125, 1132 (S.D. Ohio 1992).

Telcordia comes nowhere close to alleging an adequately "serious breach" of litigation protocol. This is clear because, had such a breach existed, Telcordia surely would have availed itself of Rule 37, the proper vehicle for obtaining relief for alleged discovery abuses. *See Arbrook, Inc. v. American Hospital Supply Corp.*, 645 F.2d 273, 279 (5th Cir. 1981) ("[W]e reject the contention that the plaintiffs' alleged improper conduct during discovery supports a fee award. Assuming such improprieties took place, the proper remedy lies under Fed. R. Civ. P. 37 and not under § 285."). However, Telcordia failed to do this, and cannot now raise *post hoc* allegations of discovery misconduct to support a request for over $6.9 million in attorneys' fees. Furthermore, it is highly ironic that Telcordia, which was the kind of party that would not even stipulate to the simple fact that a witness was deceased, now complains that Cisco was uncooperative in discovery. *See* Exhibit 1 [e-mail chain between S. Mehta and J. Williamson] (noting Telcordia's refusal to stipulate that Steve Gurey, a prosecuting attorney for one of the patents-in-suit, had died).

### 1.    Telcordia's Failure To Seek Relief Under Rule 37 Shows That The Complained Of Discovery Misconduct Is Illusory

Telcordia's pattern of repeatedly alleging novel theories of discovery abuse for which it declined to seek relief under Rule 37 betrays any notion that its misconduct allegations are meritorious. As one example, throughout trial Telcordia complained repeatedly of Cisco's

7

alleged failure to disclose certain information pertaining to foreign sales. *See* D.I. 355 at

1276:16-20; *id.* at 1277:8-15; D.I. 358 at 2191:7-11; D.I. 359 at 1919:3-6. However, at no point

did Telcordia ever make any attempt to avail itself of Rule 37, or even notify the Court

informally of a dispute regarding the production of foreign sales information. This is particularly

surprising given that the Court manifested early on an unequivocal willingness to provide relief,

if necessary:

> There is no question about it. The Court is very jealous of its process, counsel
> know that, and very resentful, not in a personal way, but when lawyers sort of try
> to take the process in hand on your own. We have to deal with that on a daily
> basis. It takes up too much of our time. So I am disappointed that resort to the
> Court wasn't made by plaintiff in a more aggressive manner.

Exhibit 2 [January 5, 2006 Hearing Tr.] at 64:12-20. In view of this, Telcordia's failure to seek

the assistance of the Court is entirely inexplicable if Telcordia genuinely believed that Cisco was

improperly withholding discoverable information. But Telcordia itself has acknowledged that

Cisco provided Telcordia with all the information it needed to support its claims. Indeed,

Telcordia's motion *in limine* on damages evidence, though insisting that that Cisco "improperly

withheld" information from discovery, is firm that any such information was "not necessary to

support Telcordia's damages claim" and that Cisco had otherwise produced "clear and

authenticated evidence of foreign sales." *See* D.I. 298 [Telcordia's Answering Brief in

Opposition to Cisco Motion *In Limine* No. 1] at 5. Recognizing the lack of substance underlying

Telcordia's claim of discovery misconduct, the Court admonished Telcordia during trial to cease

its suggestions to the jury that Cisco had done something improper in connection with the

production of foreign sales information, even going so far as to give a limiting instruction. *See*

D.I. 355 at 1278:11-12.

Now, after trial has concluded, Telcordia's fees motion raises two completely new

theories of discovery misconduct, omitting entirely its previous theory regarding the production

of foreign sales information.[6] For both of Telcordia's new theories, it remains true that Telcordia never sought any kind of relief from the Court under Rule 37. Telcordia did not even warn Cisco that it would move to compel, move for sanctions, or move for fees based on the theories that it now presents for the first time in its motion. In fact, regarding Lucent's allegedly abusive request for the production of documents pertaining to Telcordia's OSMINE testing program, Telcordia did the exact opposite, informing the Court that it "shouldn't be something that we have to bring to your honor," Exhibit 3 [October 11, 2005 Hearing Tr.] at 32:12-13, and that Telcordia was "trying not to create an issue where one doesn't exist," *id.* at 34:12-13. That Telcordia now raises this issue as one of its principal arguments supporting a request for $6.9 million in attorneys' fees illustrates the weakness of Telcordia's position. Furthermore, the ever-shifting nature of Telcordia's misconduct allegations demonstrates their underlying lack of substance.

### 2. Cisco Did Not Improperly Request The Discovery Of Information Pertaining To Telcordia's OSMINE Testing Program

Telcordia's allegations of discovery misconduct must be considered within the context of the extensive discovery scope that patent cases, just like this one, invariably present. Indeed, Cisco's own responsive discovery activities included at least the following: (1) providing roughly 1.5 million pages of documents in response to Telcordia's 200 document requests, from

---

[6]      At trial, Telcordia also raised other accusations of litigation misconduct related to Cisco's decision to present certain witnesses by video, *see* D.I. 358 [5/9/07 Trial Tr.] at 2259:4-9; *id.* at 2266:23-2267:5; D.I. 356 [5/7/07 Trial Tr.] at 1505:16-1506:18, and alleged uncooperative behavior by a Cisco witness during a deposition, *see* D.I. 352 [4/30/07 Trial Tr.] at 215:6-19; D.I. 358 [5/9/07 Trial Tr.] at 2164:15-2165:6. These unsubstantiated allegations of litigation misconduct are discussed thoroughly in Cisco's motion for a new trial. D.I. 374 [Opening Brief in Support of New Trial Motion] at 10-16. Just like Telcordia's allegations of discovery misconduct regarding the production of foreign sales information, Telcordia never sought any relief from the Court for these instances of alleged litigation misconduct and declined to discuss them in its fees motion.

which Telcordia generated 1807 trial exhibits; (2) responding to a staggering 1068 requests for admission; (3) and providing over 100 hours of deposition testimony involving numerous high-level Cisco employees. In short, this was a case in which both sides exchanged vast amounts of information.

Against this backdrop, Telcordia's allegation of discovery abuse in connection with a request for documents pertaining to the OSMINE testing program is particularly puzzling. This discovery request was rather ordinary. For one thing, information tending to show that relevant individuals within Telcordia had detailed technical information regarding Cisco's products is highly relevant to Cisco's laches defense. *See A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1028 (Fed. Cir. 1992) (holding that a presumption of laches applies if a patent holder delays bringing suit for more than six years after the patentee "knew or should have known" of the alleged infringer's activity). There was thus extremely good reason to pursue discovery on this issue, notwithstanding Telcordia's self-serving representations that absolutely no information ever percolated from Telcordia's OSMINE division to other groups within Telcordia over the 10-year time frame of this case.[7] In fact, defendants would have been

---

[7] Telcordia urges in its brief that the discovery request was unwarranted because it required nothing more than for Telcordia to "reproduce Cisco's OSMINE documentation back to Cisco." However, this is an unfair characterization. Defendants were interested in determining precisely how Telcordia was using those documents, as counsel for Lucent articulated at the October 11, 2005 teleconference. *See* Exhibit 3 [October 11, 2005 Hearing Tr.] at 30-31. Indeed, production of the requested documents would have revealed which documents Telcordia retained over the years and were thus most important to Telcordia. Additionally, it very well could have revealed the identities of the individuals who retained those documents and the purposes for which they retained them. The production of modified versions of the documents including markup, notes, or annotations could also have revealed information that would have been relevant to Cisco's laches defenses. Likewise, Telcordia declines to mention relevant documents originating entirely from within Telcordia that could have also been produced in response to this request. Thus, contrary to Telcordia's urging, this was not a discovery request that contemplated an empty, meaningless transfer of Cisco's own documents back to Cisco.

remiss had they simply accepted Telcordia's representations at face-value and not attempted to test these representations in discovery. Telcordia must have recognized this, because, in addition to not requesting a protective order from the Court, Telcordia did not even pursue any sort of relevance objection, nor did they pursue any sort of objection that the requested discovery was unduly burdensome. Telcordia's only request regarding the production of OSMINE related documents was that Cisco waive contractual provisions that otherwise restricted Telcordia's use of OSMINE documents.[8] And, even on this issue, Telcordia informed the Court that the parties had "got basically an agreement" and that Telcordia was "trying not to create an issue where one doesn't exist." *Id.* at 34:12-13.

However, the most puzzling aspect of Telcordia's misconduct allegation is that it relies exclusively on the actions of not Cisco, but *Lucent*, which settled with Telcordia before trial. For example, in its fees motion, Telcordia points only to oral argument that *Lucent* made during a teleconference where *Cisco* was not even present. Telcordia points to no other Cisco conduct prior to the teleconference suggesting, even vaguely, that Cisco railroaded, threatened, or cajoled Telcordia into providing discovery relating to its OSMINE program. Telcordia cannot point to any such conduct because it was Lucent that spearheaded, entirely on its own, the very reasonable request for OSMINE-related documents. It was only after Telcordia and Lucent

---

[8]     For instance, during the October 11, 2005 teleconference, Telcordia explained to the Court that "[w]e need a broader waiver just to make sure we can use whatever information we can for whatever purposes associated with this litigation. But we think we can figure out exactly what the waiver ought to be. So this shouldn't be something that we need to bring to your honor." *Id.* at 32:8-13. As noted above, only Lucent was present during this particular teleconference. However, in Telcordia's subsequent dealings with Cisco on the matter, Telcordia still never raised any objection other than to request that Cisco provide a clear waiver of contractual provisions so that Telcordia faced no liability under 47 U.S.C. § 273(d)(2). *See* Exhibit 5 [November 2, 2005 letter from J. Williamson to J. Davis].

resolved the issue that Cisco requested that Telcordia provide it corresponding discovery. *See* Exhibit 4 [October 27, 2005 e-mail from J. Davis to J. Williamson]. As such, Telcordia's accusation that Cisco was some sort of discovery glutton simply makes no sense, and anyhow falls far short of the dishonesty or disregard of a court order that normally justifies a fees award.

### 3.    Cisco Did Not Improperly Withhold Technical Information Relating To The Accused Products

Citing a few letters from the nascent stages of discovery in mid-2005, Telcordia urges that it repeatedly requested, but never received, board level schematics for Cisco products. However, as the record illustrates, this alternative theory of Cisco discovery abuse is nothing more than another *post hoc* attempt to manufacture a misdeed from the ashes of Telcordia's utter failure to pursue discovery diligently months ago. To be sure, Telcordia's earliest discovery requests asked for schematics. However, these requests were in the context of "kitchen sink" requests calling for the production of literally tens of millions of pages of documents. *See, e.g.*, Exhibit 6 [Telcordia Interrogatory No. 31]. Telcordia's early discovery requests were so expansive that the August and September 2005 letters Telcordia points to as requesting the disputed schematics fail to even identify the specific discovery request under which Cisco was allegedly required to provide board level schematics.

As is typical under these circumstances, the parties met and conferred about the scope of Telcordia's requests, exchanging several written communications, many of which Telcordia did not discuss in its motion. For instance, in an August 16, 2005 letter, Cisco informed Telcordia that "only a small portion" of the accused products were relevant to Telcordia's infringement allegations, and that Telcordia was improperly seeking "broad-ranging discovery as to entire accused platforms." *See* Exhibit 7 [August 16, 2006 letter from S. Mehta to J. Williamson]. In a subsequent December 23, 2005 letter, *see* Exhibit 8 [December 23, 2005

12

letter from S. Mehta to G. Mason], Cisco again addressed the overbreadth of Telcordia's discovery requests, this time in response to a December 21, 2005 Telcordia request for virtually every document even tangentially related to an accused product (whether or not relevant to the case), *see* Exhibit 9 [December 21, 2005 letter from G. Mason to S. Mehta].

        Following up on the December correspondence, Cisco expressed a willingness to meet and confer to the extent Telcordia believed Cisco had not produced certain documents. Perhaps recognizing the overbreadth of its original schematic requests, Telcordia narrowed its request to cover only "framing schematics for Cisco's SONET framing *chips*, SRTS schematics for Cisco's SRTS *chips*, and UPSR schematics for Cisco's UPSR *chips*." *See* Exhibit 10 [January 17, 2006 letter from G. Mason to E. Reines]. In other words, by January of 2006 Telcordia was seeking only *chip* level schematics, and not *board* level schematics, which are the subject of Telcordia's current misconduct allegations. In response, Cisco explained that it had searched for and produced documents relating to these chips, but would, in the spirit of compromise, go back and again search for specific additional documents that Telcordia contended were missing. *See* Exhibit 11 [January 18, 2006 e-mail from S. Mehta to G. Mason]. Following up on a January 19, 2006 teleconference, Telcordia again specifically requested chip schematics for a number of chips, *see* Exhibit 12 [January 20, 2006 letter from J. Williamson to S. Mehta], and Cisco agreed yet again to go back and look for schematics, *see* Exhibit 13 [January 25, 2006 letter from S. Mehta to J. Williamson].

        Finally, on February 7, 2006, Cisco confirmed to Telcordia that no such schematics existed, but that we would be producing additional verilog code for these chips in a good faith effort to put the issue to rest. *See* Exhibit 14 [February 7, 2006 letter from S. Mehta to J. Williamson]. *There were no additional requests for chip schematics, or any other type of*

13

*schematics, during the district court litigation.* It was not until January of 2007—roughly one year later—that Telcordia suddenly chose to seek board level schematics in the ITC investigation. At this point, Cisco agreed to produce such schematics to avoid a dispute. *See* Exhibit 15 [January 26, 2007 e-mail from S. Mehta to V. Kakarla].

The above record exemplifies nothing more than the typical discovery back-and-forth in which experienced litigators engage when attempting to mutually delineate the extent of discovery—nothing that even remotely supports an award of attorneys' fees. This is especially so because Telcordia suffered no prejudice from the allegedly late disclosure of schematics. Indeed, at trial Telcordia merely plopped a one-inch stack of schematics in front of its expert and asked him to identify the documents. Telcordia did not display the schematics to the jury, have its expert explain the schematics, delve into any details present in the schematics, or use them in the cross-examination of Cisco's expert. Telcordia's use of the schematics at trial consumes a mere 13 lines of the trial transcript. *See* D.I. 357 [5/2/07 Trial Tr.] at 885:25-886:12. Under these circumstances, any allegedly late disclosure of documents simply adds nothing to the fees analysis.

### C. Cisco Litigated Defenses In Good-Faith That Were Well Grounded In Fact And Law

Telcordia also calls for the Court to assess fees in response to Cisco's good-faith decision to narrow the scope of trial by not pursuing certain defenses. All experienced trial counsel narrow issues to be tried, and that should be encouraged, not punished. Telcordia also asks the court to award fees in response to the particularly compelling defenses that Cisco *did* choose to pursue fully. Telcordia's "all-inclusive" approach to its fees motion hints at its lack of merit. And, as discussed below, consideration of each misconduct allegation reveals fully the unusual weaknesses in Telcordia's misconduct claims.

14

### 1.  Cisco's Decision Not To Pursue All Of Its Defenses Was Entirely Appropriate And Does Not Call For A Fees Award

The Federal Circuit has, for good reason, recognized that a fees award should not be based on a party's decision to drop certain defenses that it raised during the course of a lengthy litigation. *See Stickle v. Heublein, Inc.*, 716 F.2d 1550, 1564-1565 (Fed. Cir. 1983) (noting that although defendant's answer "disclose[d] the litany of defenses commonly asserted in patent cases," some of which were dropped shortly before trial, "something more in the way of vexatious tactics is necessary to establish that defenses are asserted in bad faith"). Indeed, strategic trial decisions are often made at the last minute, especially by the defendant, who must respond to plaintiff's case-in-chief and cannot possibly be expected to know with certainty how extensively to pursue certain defenses until the midpoint of trial. Likewise, lawyers may need to make such decisions "on-the-fly" in response to witness examinations, jury reactions, rulings by the Court, or evidentiary issues. Further, parties should be encouraged to narrow issues during litigation for purposes of judicial economy and so that the jury may focus on core issues. This is especially true in a case of this complexity, involving three patents on disparate network technologies, numerous witnesses, and events that took place over the course of more than a decade. To even suggest that Cisco should be punished for failing to pursue all of its defenses throughout trial is absurd.

This absurdity is even more apparent upon consideration of the one allegedly improperly dropped defense that Telcordia chose to emphasize in its motion—specifically, Cisco's decision to drop a patent misuse defense stemming from Telcordia's desperate attempt to collect almost $200 million in royalties for about 197,000 *non-infringing* Cisco boxes. *See* Exhibit 16 [Cisco's May 26, 2006 Supplemental Response to Interrogatory Nos. 1,2,5-7 and 9-11] at 101. Here, the Court ruled *in limine* roughly one week before trial that Telcordia could not

15

show damages for the 197,000 non-infringing boxes, thus precluding Telcordia from pursuing its excessive damages theory in the first place. *See* D.I. 335 [April 24, 2007 *in limine* order] at 2-5. As a result, the issue vaporized completely, and Cisco had little reason to pursue a patent misuse defense before the jury when it could otherwise focus on its core invalidity and non-infringement defenses. Telcordia's attempt to take *Cisco* to task for raising a legitimate defense in response to *Telcordia's* far-fetched damages theory, which the Court affirmed to be without merit, is simply unjustifiable.

### 2. Cisco's Inequitable Conduct Defenses Were Highly Compelling And Were Raised In Good Faith

That Cisco's defenses happened to be unsuccessful with the jury does not by any means make this an exceptional case. *See State Indus. v. A.O. Smith Corp.*, 751 F.2d 1226, 1238 (Fed. Cir. 1985) ("Merely losing on the defenses of invalidity and non-infringement is not enough to make a case exceptional."). This rings especially true where the accused infringer's defenses are particularly persuasive. *See Cybor Corp. v. FAS Techs.*, 138 F.3d 1448, 1461 (Fed. Cir. 1998) (declining to find exceptionality in a case of willful infringement where the accused infringer's defenses had such merit that the outcome of the case was "far from a foregone conclusion").

Here, the merit of Cisco's inequitable conduct defenses is so far beyond reproach that, for Cisco's '633 and '763 inequitable conduct positions, Telcordia could not even muster a responsive argument to include in its fees motion. Instead, Telcordia simply asserted, without any other explanation, that Cisco's arguments "lacked evidence." Nothing could be further from the truth. For instance, with respect to the '633 patent, Cisco presented testimony from named inventor Richard Lau that he disclosed highly material correspondence with France Telecom to his patent lawyer James Hammond. *See* D.I. 353 [5/1/07 Trial Tr.] at 692:1-6. Mr. Hammond,

16

however, unequivocally contradicted this testimony, testifying at trial that Mr. Lau never gave him the correspondence. *See* D.I. 359 [5/8/07 Trial Tr.] at 1970:21-1971:8. Similarly, for the '763 patent, Cisco introduced evidence that Mr. Lau failed to disclose the Prisco & Hoss reference to the Patent Office, even though he had previously described it in a technical memorandum as disclosing a "hybrid ring" that had a "relationship" to his "hybrid ring." *See, e.g.*, D.I. 357 [5/2/07 Trial Tr.] at 740:14-18. Mr. Lau went so far as to admit during trial that none of the seven references he considered "most relevant" were disclosed to the Patent Office. *Id.* at 764:5-8. Such high-quality evidence of intent to mislead is rare. *See Ferring B.V. v. Barr Labs., Inc.*, 437 F.3d 1181, 1191 (Fed. Cir. 2006) ("[A] patentee facing a high level of materiality and clear proof that it knew or should have known of that materiality, can expect to find it difficult to establish 'subjective good faith' sufficient to prevent the drawing of an inference of intent to mislead.") (quoting *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253, 1257 (Fed. Cir. 1997)).

The only inequitable conduct defense that Telcordia chose to actually discuss in its motion pertains to the '306 patent. Telcordia's argument on this issue is, quite frankly, strange. Specifically, Telcordia quotes at length the testimony of Telcordia's *technical* expert on the '633 and '306 patents, Anthony Acampora, and chastises him for not offering more elaborate testimony on the *legal* question, reserved for the jury, of whether Mr. Lau committed fraud. It is manifest that Mr. Acampora's role at trial was to offer an opinion only on the pure technical matter of whether "there was material that should have been before the examiner that wasn't," D.I. 356 [5/7/07 Trial Tr.] at 1703:20-21, and not to offer legal opinions on issues such as fraud. Indeed, Mr. Acampora stated in his expert report that his assignment was only to "provide an opinion on the materiality of the art withheld." Exhibit 17 [Acampora Opening '306 Invalidity

17

Report] at 68.  In fact, had Cisco attempted to elicit testimony from Mr. Acampora on the legal issue of whether Mr. Lau committed fraud, Telcordia almost certainly would have objected that Mr. Acampora is not qualified to render such an opinion.[9]

## V.    TELCORDIA'S LITIGATION CONDUCT DEMONSTRATES THE INAPPROPRIATENESS OF THIS CASE FOR A FEES AWARD

It is a well-settled principle that the Court "may consider the litigation actions of both sides in connection with § 285." *Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1575 (Fed. Cir. 1996); *see also Motorola, Inc. v. Interdigital Tech. Corp.*, 121 F.3d 1461, 1468 (Fed. Cir. 1997) (noting the "considerable leeway" district courts have to deny fees in light of a movant's own litigation misconduct); *Power Mosfet Techs., L.L.C. v. Siemens AG*, 378 F.3d 1396, 1415 (Fed. Cir. 2004) ("A party subjected to behavior warranting an award of sanctions or fees might justifiably be denied those fees in a district court's discretion for the behavior to which it subjected others.").  While Telcordia fails to identify any Cisco misconduct remotely supporting a fees award, Telcordia's own litigation conduct makes excruciatingly clear that this is not a case justifying a fees award.

### A.    Telcordia's Actions Unnecessarily Multiplied The Scope Of Litigation And Are Not Those Of A Party Trying To Minimize Costs

Telcordia's fees motion stresses its allegedly limited "financial resources," asserting that cost concerns incentivized it to avoid "collateral litigation gamesmanship."  But

---

[9]    Cisco notes that, contrary to Telcordia's assertions, it had evidence demonstrating that Telcordia knew of—but did not disclose to the PTO—the reference about which Telcordia complains.  For instance, one of the '306 patent inventors, Liang T. Wu, admitted that he  REDACTED  articles and work pertaining directly to the FasNet system. *See* Exhibit 18 [Apr. 21, 2006 Wu Dep. Vol. 2 Part 2] at 249:3-250:7.  Further, Telcordia's Rule 30(b)(6) designee on the prosecution of the '306 patent, James Falk, admitted that Telcordia was  REDACTED  *See* Exhibit 19 [Apr. 20, 2006 Falk Dep.] at 130:3-132:4.  However, Cisco elected not to present this evidence due to developments during the course of trial.

18

Telcordia was not a party that took any measures to keep costs down. Rather, Telcordia was a party that had no regard for either its own costs or those of its opponent. Indeed, Telcordia used an unusually large number of attorneys in this case:

> Steven M. Anzalone (partner)
> Don O. Burley (partner)
> Donald R. Dunner (partner)
> Houtan K. Esfahani (partner)
> York M. Faulkner (partner)
> Vamsi Kakarla
> Vincent Kovalick (partner)
> James Hammond (partner)
> John L. Marquardt Jr.
> Geoffrey Mason
> Laura P. Masurovsky (partner)
> Ronald E. Myrick (partner)
> Griffith B. Price Jr. (partner)
> Richard L. Rainey (partner)
> Pedro F. Suarez
> Richard H. Smith (partner)
> John M. Williamson
> James T. Wilson

*See* D.I. 13, 30, 46, 89, 97, 141, 324.[10] This lengthy list of 18 attorneys, 12 of which are partners, does not reflect a party trying to minimize costs—certainly not in comparison to the two partners and six associates that Cisco required to defend the case. Likewise, Telcordia's production of large volumes of irrelevant and non-responsive documents and duplicate copies of hundreds of other documents—forcing Cisco to expend significant, unnecessary effort ferreting through Telcordia's production—reflects a lack of consideration for *Cisco's* litigation costs. *See* Exhibit 20 [April 29, 2006 e-mail from S. Mehta to S. Anzalone]. For instance, Telcordia produced 12 copies of an e-mail entitled "To My Diet Ice Tea Lover!" that discusses how much of a "real pain" jet lag is. *See* Exhibit 21 [TELC0148836]; *see also* Exhibit 22 [TELC0010659]

---

[10]     Cisco was unable to identify any record of Vamsi Kakarla, John Marquardt, Jr. or Vincent Kovalick having been admitted *pro hac vice*, although all worked on the case.

19

(one of 50 e-mails pertaining to "Golf in Taiwan?" during an upcoming business trip). Indeed, it appears from Telcordia's production that it indiscriminately produced 12 copies of each of hundreds of emails archived by Mr. Sincoskie over nearly a decade, without reviewing those emails responsiveness or relevance.

However, perhaps nothing exemplifies Telcordia's disinclination to conserve resources more than the profligate action it initiated in the International Trade Commission ("ITC") a full two years after commencing the district court action. This is an action that Telcordia maintains to this day—for which the parties are currently in preparation for the evidentiary hearing—and for which Telcordia has no prospect of significant relief. Indeed, the most Telcordia can logically expect from the ITC is an order prohibiting Cisco from importing and/or selling the MPSM-8-T1E1, which is the lone remaining product accused of infringing the '633 patent.[11] All other products accused of infringing the '633 patent have long since been discontinued. And, even the MPSM-8-T1E1 is actually manufactured entirely within the United States, so an importation prohibition connected to this product is meaningless. Nevertheless, Telcordia has pursued the ITC action with ferocity, utilizing many of the attorneys listed above, while also adding additional attorneys focused strictly on the ITC action.

Cisco's allegedly improper request for the production of OSMINE related documents is a mere blip compared to the added discovery obligations that Telcordia imposed on Cisco during the ITC action. There, Telcordia served an astonishing 206 interrogatories—many of which had more than eight lettered subparts—and served an additional 375 document requests. All of this extra discovery was requested only after Telcordia had full and complete

---

[11]     Since Cisco does not infringe the '306 patent, and because the '763 patent will expire less than a month after the conclusion of the ITC hearing, Telcordia was forced to drop those patents from the ITC investigation entirely.

discovery in this action, which closed without a single dispute that required the Court's attention. Even more troubling, much of Telcordia's ITC discovery requests were directed to a product that Cisco never even sold (i.e., the CS 12 card), products that simply do not perform the accused SRTS functionality (e.g., the BSC cards, NSC cards, MPSM-16-T1E1, and 7500 series routers), and discontinued products that are irrelevant to ITC relief (e.g., PA-A2 modules, NM-1A modules, WAI modules, and the Lightstream 1010).[12]

This conduct is decidedly not frugal litigation. It demonstrates that Telcordia was by no means a pure, innocent party strapped for cash. On the contrary, Telcordia was a party that, with full knowledge of the circumstances, had the audacity to argue before the jury that Cisco was not forthcoming because it failed to present live testimony from a witness who declined to testify due, in part, to recent heart surgery. *See* D.I. 358 at 2259:4-9 (Telcordia asks the jury during Closing Statement to contemplate why Cisco's former worldwide patent counsel, Robert Barr, did not testify live at trial); *see also* Exhibit 23 [February 21, 2007 Declaration of E. Reines from ITC Investigation] ¶ 4 (notifying Telcordia of Mr. Barr's heart condition). Having adopted these sorts of tactics, Telcordia simply cannot complain that they have suffered through the one-sided, unconscionable conduct justifying a fees award.

### B.     Telcordia's Pursuit Of Numerous Inappropriate Legal Theories And Its Numerous Attempts To Use Inadmissible Evidence Show That Telcordia Does Not Deserve Attorneys' Fees

Telcordia alleges that Cisco raised baseless defenses or, alternatively, carried certain defenses too far. However, it is Telcordia that holds the undisputed title when it comes to

---

[12]     The ITC can only provide an exclusion order preventing Cisco from importing infringing products or a cease and desist order prohibiting Cisco from infringing acts connected to infringing imports for which Cisco maintains a commercially significant domestic inventory. The ITC cannot award money damages. Thus, discontinued products are irrelevant to ITC relief.

21

the pursuit of improper legal theories. As set forth below, Telcordia brazenly defied the Court's instructions on a number of occasions and pursued legal theories even *after* the Court unambiguously declared them to be meritless. This brand of misconduct stands in bold contrast to the petty—and wholly unsupported—allegations that Telcordia raises in its fees motion, again demonstrating just how unfit this case is for a fees award.

### 1.    Telcordia Repeatedly Attempted To Submit An Expert Report On The '306 Patent Even After The Court Ordered It Not To Do So

After realizing that it could not win on the '306 patent in light of the Court's claim construction, Telcordia improperly "assumed" it did not have to serve an infringement expert report because it "assumed" that the Court would enter a Rule 54(b) judgment, although it did not consult with the Court or Defendants and had not even moved for such a judgment before it "decided" not to serve an expert report. After hearing both parties on this issue during a July 18, 2006 teleconference, the Court ruled on July 21, 2006 that Telcordia would be precluded from submitting an opening or reply expert report on '306 non-infringement. *See* D.I. 196 [July 21, 2006 Order]. In response to Telcordia's request for clarification, the court made impeccably clear what its ruling was in a July 26, 2006 order, and further ruled that it would "not accept any further filings from the parties as to this issue." D.I. 209 [July 26, 2006 Order].

Astoundingly, Telcordia nevertheless violated the Court's order twice by (1) including eight pages of argument on this issue in its opposition to Cisco's motion for summary judgment of non-infringement of the '306 patent, and (2) including a 177-page infringement expert report, labeled as an "Offer of Proof," along with its opposition. This misconduct, by which the Court stated that it was "amazed" in its May 1, 2007 Summary Judgment Order, prejudiced Cisco substantially. Telcordia plainly sought nothing more than to reopen expert discovery at an extraordinarily late stage in the litigation, when it would have been impossible

22

for Cisco to conduct meaningful depositions regarding Telcordia's belated expert opinions or prepare adequate reply opinions. Cisco was nevertheless forced to expend time and effort responding in its reply brief to both the newly produced expert opinions and Telcordia's argument's regarding the Court's exclusion of its belated expert report.

###    2.    Telcordia Continues To Pursue A Baseless Damages Theory For The '633 Patent

After losing on the focal '306 patent, Telcordia, in an attempt to make its case worth pursuing, sought to expand the royalty base for '633 patent to include not just the 3,109 SRTS capable cards that Cisco sold, but also about 200,000 multi-purpose, non-infringing Cisco boxes that are merely capable of housing such a card. This approach was nothing more than a last-ditch attempt by Telcordia to expand its damages on the '633 patent from approximately $6 million to a wholly irrational $200 million.

For good reason, the Court ruled *in limine* that Telcordia could not claim damages for Cisco boxes without an SRTS card and precluded Telcordia from pursuing this theory at trial. *See* D.I. 335 [April 24, 2007 *in limine* order] at 2-5. Nevertheless, prior to the Court's ruling, Cisco was still forced to defend against Telcordia's theory, which required Cisco to take additional depositions of numerous Telcordia licensing employees, collect additional documents, and conduct extensive research regarding a potential patent misuse defense. Surprisingly, and as noted above, Telcordia's motion actually asks the Court to award fees in response to Cisco's patent misuse defense, even though the parties now know with certainty, in light of the Court's *in limine* ruling, that a patent misuse defense was highly warranted.

However, the most surprising aspect of this issue is Telcordia's post-trial attempt to revive its damages theory, notwithstanding the Court's *in limine* ruling. Indeed, Telcordia's proposed injunction order asks the Court to prevent Cisco from selling the very Cisco boxes that

the Court has already ruled Telcordia could not collect damages for or to alternatively award royalties on boxes that do not include an SRTS capable card. D.I. 367 [Telcordia's Proposed Injunction Order] at 1-2. Telcordia's proposed order makes no mention whatsoever of the SRTS capable cards that actually provide the accused SRTS functionality, and includes no language acknowledging that relief should be limited to products containing such cards. And, in the ITC, Telcordia has actually gone so far as to move for summary determination with respect to entire *families* of products, declining again to acknowledge the limitations that this Court has placed on the scope of Telcordia's relief. *See* Exhibit 24 [Telcordia's ITC Motion For Summary Determination] at 10-11. Telcordia's late attempt to revive and push its legally untenable damages theory is astonishing.

### 3. Telcordia Haphazardly And Inappropriately Accused Numerous Cisco Products

Telcordia has found a surprising multitude of ways to haphazardly and inappropriately assert its patent claims against sundry Cisco products. First, only four days before the commencement of claim construction proceedings and one day *after* the exchange of proposed claim constructions, Telcordia identified—for the first time—literally dozens of new products that it wished to add to the case. *See* Exhibit 25 [December 12, 2005 e-mail from S. Mehta to D. Burley and J. Williamson]. Ultimately, Cisco was forced to raise this issue with the Court, which ordered Telcordia to go back and drop the majority of these products from its case, triggering additional, but nevertheless avoidable, meet-and-confer as well as a reworking of the Court's scheduling order. *See* Exhibit 26 [January 22, 2006 e-mail from D. Dunner to Defendants].

Second, Telcordia maintained a prolonged pursuit of damages for Cisco products that were never sold or that undisputedly do not infringe.[13] The most notable case in point is the CS12 card, a product that Cisco never put in to production, and that Telcordia had no excuse for pursuing. Indeed, Cisco advised Telcordia as early as June of 2006 that the CS12 was never put into production. *See* Exhibit 27 [June 21, 2006 Acampora Expert Report on '633 non-infringement] at 10. Cisco further explained this to be the case in its December 2006 supplemental response to ITC Interrogatory No. 163. *See* Exhibit 28 [December 12, 2006 ITC Supplemental Rog Responses] at 42-43. Telcordia even had access to Cisco's sales information, which definitively showed that Cisco never sold the CS12. Nevertheless, as part of the ITC investigation, Telcordia propounded 24 interrogatories and 11 requests for production directed to this unsold product. Cisco even had to track down and interview the Cisco engineers that actually worked on this long since aborted product. *See* Exhibit 29 [Cisco's February 20, 2007 Supplemental Responses to Telcordia's Interrogatories] (identifying individuals knowledgeable about the CS12). Shockingly, after all these discovery requests, Telcordia informed Cisco a mere three days before trial—and, even then, only at Cisco's urging—that it would not pursue the CS12 after all. *See* Exhibit 30 [April 27, 2007 e-mail from J. Williamson to S. Mehta].

Finally, Telcordia needlessly prolonged its pursuit of six different products that simply do not perform the accused SRTS functionality. It was not until three days before trial that Telcordia finally decided not to put on evidence pertaining to Cisco 7500 series routers, *see* Exhibit 30 [April 27, 2007 e-mail from J. Williamson to S. Mehta], and it was not until one week

---

[13]    In light of this, Telcordia is in no position to complain of Cisco's failure to pursue certain defenses through to the completion of trial. *See Stickle*, 716 F.2d at 1565 (noting that the dropping of defenses shortly before trial was not "any more significant than [plaintiff's] assertion of patent claims which were withdrawn unless [defendant] in fact had used sham defenses for vexatious or dilatory tactics.").

25

before trial that Telcordia finally dropped the IP Transfer Point, BSC, MPSM-16-T1E1, and

CESM-T3E3 products from its case, *see* Exhibit 31 [April 23, 2007 e-mail from J. Williamson to

S. Mehta]. Just like the CS12 card, Telcordia propounded extensive discovery requests regarding

each and every one of these products in the ITC, declining to follow up on any of it. There are

only two reasons for Telcordia to have done this: (1) to swell its damages base, and (2) to distract

Cisco in advance of trial. Both reasons are inappropriate, and demonstrate that Telcordia does

not deserve attorneys' fees.

### 4.    Telcordia Prepared Unreasonable Deposition Designations And Insisted Until The Last Minute That It Would Play Inadmissible Testimony

A final, but nevertheless striking, illustration of Telcordia's overall uncooperative

approach to litigation is its handling of the designation of deposition testimony to be presented at

trial. Telcordia's initial designations were hopelessly overbroad, including contiguous blocks of

testimony that were 19, 23, 28, 30 and even 51 pages long. [14] *See* D.I. 318 [Pretrial Order],

Exhibit F1 (Telcordia's Deposition Designations) at 12. When Telcordia provided Cisco with

revised, narrowed designations—only two days before trial—it looked as if Telcordia would

continue its pattern of ignoring the Court's rulings and instructions. Indeed, Telcordia's revised

designations included testimony from a Cisco engineer that was cobbled together to imply that

Cisco failed to adequately seek the advice of counsel. *See* Exhibit 32 [Sastry Transcript

excerpts]. But the Court's *in limine* order specifically precluded Telcordia from making

---

[14]    Similarly, Telcordia designated 309 blocks of testimony between one and two pages in length, 123 blocks between two and three pages in length, and 30 between three and four pages in length. The amount by which Telcordia would have exceeded its allotted trial time had it played all the testimony it designated is incalculable. As yet another example, for the deposition of Cisco engineer Brian Rushka, Telcordia designated a staggering 188 *pages* of testimony in its pre-trial order. At trial, Telcordia played only 30 *lines* of testimony from Mr. Rushka.

precisely this suggestion. *See* D.I. 335 [April 24, 2007 *in limine* order] at 8-11. Similarly, Telcordia intended to play testimony that was unabashedly designed to inject the concept of a Cisco antitrust violation into the case, *see* Exhibit 33 [Telcordia's April 29, 2007 Deposition Designations] at 1, even though the Court specifically noted to Telcordia that it did not "want the jury to get sidetracked onto antitrust concerns." *See* D.I. 351 [4/27/07 Trial Tr.] at 109:4-6. Also, Telcordia's designations included testimony from another Cisco engineer—otherwise deposed largely on the technical details of the accused products—regarding the preservation of e-mails, whether he searched for any preserved documents, and whether he searched his file cabinet for documents. *See* Exhibit [Jain Transcript excerpts]. Despite repeated requests, Telcordia never explained the relevance of any of this testimony to any issue in the case. Cisco can only conclude that Telcordia aimed to introduce some sort of prurient, underhanded—and wholly unsupported—last minute impressions that Cisco concealed and destroyed evidence.[15]

       Under these circumstances, and after extensive meet-and-confer, Cisco advised Telcordia that it would raise its objections to the above testimony with the Court, at which point Telcordia abruptly chose not play the testimony at all. *See* Exhibit 34 [May 1, 2007 e-mail from V. Kakarla to D. Walter]. The only plausible explanation for Telcordia's unreasonably lengthy opening deposition designations, and its continued submission of inappropriate designations thereafter, is that Telcordia intended to create additional work for Cisco in advance of trial. Having forced Cisco to spend countless hours reviewing, objecting to, and responding to Telcordia's overbroad, improper designations, Telcordia undeniably succeeded. This episode is emblematic of Telcordia's stubborn approach to litigation. Having chosen to play hardball much

---

[15]     And, of course, Cisco engaged in absolutely no destruction or concealment of documents whatsoever.

more so than Cisco did. Telcordia simply cannot show by clear and convincing evidence that a

fees award is necessary to prevent it from suffering a "gross injustice."

## VI.     CONCLUSION

For the foregoing reasons Cisco respectfully requests that Telcordia's motion be

denied.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Leslie A. Polizoti (#4299)*
Jack B. Blumenfeld (#1014)
Leslie A. Polizoti (#4299)
1201 North Market Street
Post Office Box 1347
Wilmington, Delaware  19899-1347
(302) 658-9200
lpolizoti@mnat.com

*Attorneys for Defendant Cisco Systems, Inc.*

OF COUNSEL:

Matthew D. Powers
Edward R. Reines
Jessica L. Davis
Sonal N. Mehta
Thomas B. King
Derek C. Walter
Weil, Gotshal & Manges LLP
201 Redwood Shores Parkway
Redwood Shores, California  94065

July 23, 2007
980748

28

## CERTIFICATE OF SERVICE

I hereby certify that on July 23, 2007 I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing to Steven J. Balick and John G. Day.

I further certify that I caused copies of the foregoing document to be served on July 23, 2007 upon the following in the manner indicated:

**BY HAND**

John G. Day
ASHBY & GEDDES
500 Delaware Avenue, 8th Fl.
Wilmington, DE 19801

**BY ELECTRONIC MAIL**

John Day (jday@ashby-geddes.com)
Steven J. Balick (sbalick@ashby-geddes.com)
John Williamson (john.williamson@finnegan.com)
York Faulkner (york.faulkner@finnegan.com)
Don Burley (don.burley@finnegan.com)

**BY FEDERAL EXPRESS**
**(on July 24, 2007)**

Don O. Burley
FINNEGAN, HENDERSON,
  FARABOW, GARRETT & DUNNER
901 New York Avenue
Washington, DC 20001

*/s/ Leslie A. Polizoti (#4299)*
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
Wilmington, DE 19801
(302) 658-9200
lpolizoti@mnat.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 30, 2007 I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing to Steven J. Balick and John G. Day.

I further certify that I caused copies of the foregoing document to be served on July 30, 2007 upon the following in the manner indicated:

**BY ELECTRONIC MAIL**

John Day (jday@ashby-geddes.com)
Steven J. Balick (sbalick@ashby-geddes.com)
John Williamson (john.williamson@finnegan.com)
York Faulkner (york.faulkner@finnegan.com)
Don Burley (don.burley@finnegan.com)

*/s/ Leslie A. Polizoti*
_____

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
Wilmington, DE 19801
(302) 658-9200
lpolizoti@mnat.com