IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

TELCORDIA TECHNOLOGIES, INC.,                )
                                             )
        Plaintiff/Counterclaim Defendant,    )
                                             )
                v.                           )        C.A. No. 04-876-GMS
                                             )
CISCO SYSTEMS, INC.,                         )
                                             )
        Defendant/Counterclaim Plaintiff.    )

**CISCO'S REPLY BRIEF IN SUPPORT OF ITS MOTION
FOR A NEW TRIAL ON WILLFUL INFRINGEMENT PURSUANT TO RULE 59(a)**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (I.D. #1014)
Leslie A. Polizoti (I.D. #4299)
1201 North Market Street
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@mnat.com
lpolizoti@mnat.com

*Attorneys for Defendant Cisco Systems, Inc.*

OF COUNSEL:

Matthew D. Powers
Edward R. Reines
Jessica L. Davis
Sonal N. Mehta
Thomas B. King
Derek C. Walter
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA  94065
(650) 802-3000

August 13, 2007

# TABLE OF CONTENTS

Page(s)

I.      INTRODUCTION ..................................................................................... 1

II.     TELCORDIA'S OPPOSITION IS PREMISED ON AN INCORRECT LEGAL
        STANDARD ............................................................................................. 3

III.    CORPORATE SIZE AND ALLEGED LITIGATION MISCONDUCT
        IMPROPERLY INFECTED THE JURY'S WILLFULNESS INQUIRY ....................... 4

        A.      TELCORDIA HAS NO LEGITIMATE EXPLANATION FOR WHY
                CORPORATE SIZE SHOULD BE INCLUDED IN THE JURY'S
                WILLFULNESS INQUIRY ................................................................ 5

                1.      TELCORDIA INTENDED THAT JURY GRASP THE
                        PREJUDICE OF CORPORATE SIZE ....................................... 6

                2.      THE COURT'S OMISSION OF THE TERM "FINANCIAL
                        CONDITION" DOES NOT LESSEN THE PREJUDICIAL
                        IMPACT OF THE INSTRUCTION ........................................... 8

        B.      LITIGATION MISCONDUCT HAS NO CONNECTION TO MENTAL
                STATE ....................................................................................... 10

        C.      TELCORDIA'S AUTHORITY DOES NOT SUPPORT THE USE OF
                THE CHALLENGED READ FACTORS IN THE WILLFULNESS
                INQUIRY .................................................................................... 14

IV.     THE READ FACTORS ARE INORDINATELY SLANTED TOWARDS
        EGREGIOUSNESS ................................................................................... 16

V.      CISCO COMPLIED WITH RULE 51(C) ...................................................... 18

VI.     CONCLUSION ....................................................................................... 20

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Advanced Display System v. Kent State University,*
No. 3-96-CV-1480-BD, 2001 U.S. Dist. LEXIS 17953 (N.D. Tex. Nov. 1, 2001)...........10

*American Life Insurance Co. v. Parra,*
63 F. Supp. 2d 480 (D. Del. 1999)................................................................3, 4

*Applera Corp. v. MJ Research Inc.,*
372 F. Supp. 2d 233 (D. Conn. 2005)....................................................11

*Avocent Huntsville Corp. v. Clearcube Tech., Inc.,*
No. CV-03-S-2875-NE, 2006 U.S. Dist. LEXIS 55307 (N.D. Ala. 2006 July 28,
2006) ..............................................................................................14

*Avocent Huntsville Corp. v. Clearcube Tech., Inc.,*
No. CV-03-S-2875-NE, 2006 U.S. Dist. LEXIS 55308 (N.D. Ala. July 28, 2006) ..........15

*Century Wrecker Corp. v. E.R. Buske Manufacturing Co.,*
913 F. Supp. 1256 (D. Iowa 1996)...............................................14, 16

*Christopher v. Nestlerode,*
Nos. 05-3516, 05-3837, 2007 U.S. App. LEXIS 15375 (3d Cir. June 28, 2007) ...............4

*Commercial Credit Business Loans, Inc. v. Martin,*
590 F. Supp. 328 (E.D. Pa. 1984) ...........................................................6

*Dawson v. New York Life Insurance Co.,*
135 F.3d 1158 (7th Cir. 1998) ................................................................19

*Draper v. Airco, Inc.,*
580 F.2d 91 (3d Cir. 1978).........................................................................7

*Dunn v. HOVIC,*
1 F.3d 1371 (3d Cir. 1993).......................................................................18

*Eagan v. CSX Transport, Inc.,*
271 F. Supp. 2d 993 (E.D. Mich. 2003).......................................................7

*Etna Prods. Co. v. Q Mktg. Group, Ltd.,*
No. 03 Civ. 3805 (SAS), 2004 U.S. Dist. LEXIS 15323 (S.D.N.Y. Aug. 4, 2004) ..........14

*Hill v. Reederei F. Laeisz G.M.B.H.,*
435 F.3d 404 (3d Cir. 2006).............................................................4, 14

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*Honda Motor Co. v. Oberg,*
    512 U.S. 415 (1994)..................................................................................6

*IMX, Inc. v. Lendingtree, LLC,*
    469 F. Supp. 2d 203 (D. Del. 2007)...................................................11

*Kloster Speedsteel AB v. Crucible, Inc.,*
    793 F.2d 1565 (Fed. Cir. 1986)..........................................................17

*Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.,*
    372 F. Supp. 2d 833 (E.D. Va. 2005) .........................................14, 16

*Lifescan, Inc. v. Home Diagnostics, Inc.,*
    103 F. Supp. 2d 345 (D. Del. 2000)......................................................3

*Mars, Inc. v. Coin Acceptors, Inc.,*
    No. 90-49 (JCL), 2005 U.S. Dist. LEXIS 43811 (D.N.J. Sept. 15, 2005)............11, 14, 15

*McQueeney v. Wilmington Trust Co.,*
    779 F.2d 916, 927 (3d Cir. 1985)........................................................4

*Miller v. Cigna Corp.,*
    47 F.3d 586 (3d Cir. 1995)...............................................................18

*Read Corp. v. Portec,*
    970 F.2d 819 (Fed. Cir. 2006)................................................... *passim*

*SRI International v. Advanced Tech. Lab.,*
    127 F.3d at 1462 (Fed. Cir. 1997)................................................16, 18

*Schobert v. Ill. DOT,*
    304 F.3d 725 (7th Cir. 2002) .......................................................19, 20

*TIVO Inc. v. EchoStar Committee Corp.,*
    No. 2:04-CV-1 (DF), 2005 U.S. Dist. LEXIS 42481 (E.D. Tex. Sept. 26, 2005) .............16

*United States v. Rivera,*
    365 F.3d 213 (3d Cir. 2004)..............................................................19

## I.     INTRODUCTION

Telcordia's answering brief offers almost no direct response to the numerous issues raised in Cisco's new trial motion. This is true for even the most basic and fundamental points Cisco raised. For instance, Telcordia's brief completely ignores the authority Cisco cited regarding the appropriate legal standard the Court should use in deciding whether to grant a new trial. Instead, Telcordia, without comment, simply sets forth an incorrect legal standard from older cases that is entirely inappropriate for a new trial motion based on an error of law, as is the case here.

Turning to the merits, Telcordia continues to avoid the issues. With regard to the use of corporate size as a factor in deciding intent, Telcordia's simply ignores the prejudicial, misleading nature of this application of corporate size. In so doing, Telcordia advocates the view that either large or small corporate size can militate either for or against a finding of ill intent. But this view—which is in reality an admission that corporate size is irrelevant to willfulness—is a disingenuous turnabout from what Telcordia argued at trial. There, Telcordia urged that "common-sense" dictated that corporate size provided a "motivation for ignoring other people's intellectual property rights." D.I. 359 [5/8/07 Trial Tr.] at 2052:18-24. Telcordia further argued that:

> [Corporate size] is very important. It is one of the very important factors. ***How else do people make these decisions when they don't really know the parties? Sometimes you look at someone's age. Where they come from.***

D.I. 359 [5/8/07 Trial Tr.] at 2052:18-2053:10.[1] Based on this, it is clear that Telcordia's sole purpose at trial was to exploit stereotypes about corporate size as a proxy for actual knowledge about Cisco's intent and a genuine inquiry into culpability.

---

[1]     Emphasis supplied throughout, unless otherwise noted.

When it comes to litigation misconduct, Telcordia does not even attempt to explain how this issue might pertain to willfulness. Instead, Telcordia suggests that the Court's instruction on this issue was nothing more than an instruction on witness credibility. Telcordia offers no authority for this proposition, and it is totally inconsistent with the balance of the jury instructions, Telcordia's arguments at trial, and its own briefing in this case. Telcordia then presents a bullet-point list of cases that supposedly offers "overwhelming" authority for the proposition that district courts should consider all nine *Read* factors, including size and litigation misconduct, when deciding willfulness. However, Telcordia's superficial presentation of these cases ignores what the courts in those cases actually *did* when evaluating willfulness. Had Telcordia considered this, it would have recognized that *none* of the cases in its bullet-point list provide an example of a court actually explaining why size or litigation misconduct is relevant to state of mind and then using that factor to decide willfulness.

In its final attempt to avoid addressing the issues, Telcordia argues that Cisco failed to preserve certain arguments on procedural grounds. Telcordia does so in the face of the charge conference argument—which consumes *twelve pages* of the transcript—where Cisco (1) objected that the *Read* factors were overall poorly matched to the willfulness inquiry, (2) buttressed this objection with reasoned objections to particular *Read* factors, and (3) proposed an alternative willfulness instruction.

Telcordia's insistence on dancing around the issues is, in effect, an admission that an imbalanced willfulness instruction erroneously guided the jury to consider issues that have no relevance to Cisco's state of mind. And, in light of Telcordia's pervasive argument on such issues before the jury, the great harm is even more undeniable. A new trial is warranted.

2

## II.   TELCORDIA'S OPPOSITION IS PREMISED ON AN INCORRECT LEGAL STANDARD

On several occasions, Telcordia's opposition misstates—severely—the standard that this Court must apply in deciding whether a new trial is warranted.  Telcordia fails to recognize that "[t]he Third Circuit provides for different standards of review for new trial motions depending on whether the motion is based on a prejudicial error of law or a verdict against the weight of the evidence." *American Life Ins. Co. v. Parra*, 63 F. Supp. 2d 480, 504 (D. Del. 1999).  The standard that Telcordia repeats so often in its brief—that a new trial may be granted only if the verdict "shocks the conscience" or "cries out to be overturned"—is appropriate only when the new trial motion is based on the grounds that the verdict was against the great weight of the evidence.  That is not the issue here.[2]  Third Circuit courts have repeatedly explained why a particularly high standard must be used when evaluating new trial motions based on the verdict being against the weight of the evidence:

> [W]here the ground for a new trial is that the jury's verdict was against the great weight of the evidence, the court should proceed cautiously, because such a ruling would necessarily substitute the court's judgment for that of the jury.

*Lifescan, Inc. v. Home Diagnostics, Inc.*, 103 F. Supp. 2d 345, 351 (D. Del. 2000); *see also American Life Ins. Co.*, 63 F. Supp. 2d at 504 ("[The] more stringent standard is necessary to ensure that a district court does not substitute its judgment of the facts and the credibility of the witnesses for that of the jury.") (citations omitted).

On the other hand, when, as here, a new trial motion is based on an error of law, Third Circuit courts have "wide discretion in deciding a motion for a new trial." *American Life Ins.*

---

[2]     Even if Telcordia's standard were correct, a new trial on willfulness would still be warranted because, as Cisco explained in its opposition to Telcordia's motion for enhanced damages, the jury's verdict on willfulness was clearly against the great weight of the evidence. *See* D.I. 391 [Answering Brief re: Enhanced Damages].

*Co.*, 63 F. Supp. 2d at 504. This is so because "rulings of law initially rest with the district court judge, so ordering a new trial because a ruling of law may have prejudiced the losing party does not usurp the jury's role as fact finder." *Id.* And, on the issue of what level of prejudice warrants a new trial, the Third Circuit has explained—in a recent and thorough opinion—that a new trial in response to an error of law is appropriate unless the error is harmless, which is only the case if it is "highly probable" that the error "did not affect the outcome of the case." *Hill v. Reederei F. Laeisz G.M.B.H.*, 435 F.3d 404 (3d Cir. 2006) (citations omitted). Notably, the Third Circuit reaffirmed mere weeks ago that this is indeed the appropriate standard. *See Christopher v. Nestlerode*, Nos. 05-3516, 05-3837, 2007 U.S. App. LEXIS 15375, at *13 (3d Cir. June 28, 2007) ("[An] error in a jury instruction will be harmless only if it is 'highly probable' that it did not affect the verdict.") (citing *Hill*, 435 F.3d at 404).

This standard does not remotely approach the "shocks the conscience" standard that Telcordia misquotes in its brief, and for good reason. In *Hill*, the Third Circuit explained that courts should maintain a "relatively tight rein on harmless error determinations," stating that such an approach "preserve[s] a strong incentive for the district courts to minimize their errors, and . . . thereby bolster[s] the integrity of the federal judicial process." *Hill*, 435 F.3d at 411 (quoting *McQueeney v. Wilmington Trust Co.*, 779 F.2d 916, 927 (3d Cir. 1985)). The *Hill* court further noted that in spite of "the crowded dockets in our district courts," "perfection should still be [the Third Circuit's] goal" and that courts should be "mindful of a litigant's right to have full and accurate legal instructions given to the jury." *Id.* at 411.

## III.   CORPORATE SIZE AND ALLEGED LITIGATION MISCONDUCT IMPROPERLY INFECTED THE JURY'S WILLFULNESS INQUIRY

Telcordia devotes over 11 pages of its brief to explaining why its references to Cisco's size and its allegations of litigation misconduct were supposedly not "improper." D.I. 388

4

[Answering Brief] at 15-26. Telcordia's lengthy argument on this issue is besides the point. In fact, even if all of Telcordia's arguments were proper responses to Cisco's trial themes (which they were not), the issue that Cisco's motion presents would nonetheless remain: Is it logically sound and legally proper for the jury, pursuant to the Court's instruction, to consider Cisco's size and Telcordia's allegations of litigation misconduct when evaluating Cisco's intent? Telcordia's opposition repeatedly steers clear of key points pertaining to this issue. In fact, corporate size and alleged litigation misconduct have nothing to do with culpability. Further, and as set forth below, the scope and tenor of Telcordia's arguments reveals that they were not, as Telcordia urges, mere responses to Cisco's case or rational presentations of "the other side of the same coin." Rather, they were part of an improper effort to capitalize on juror biases and inject a set of irrelevant considerations into the jury's willfulness deliberation. Under these circumstances, Telcordia's willfulness instruction, which explicitly called for the consideration of such matter, undoubtedly led to a situation warranting a new trial.

### A. Telcordia Has No Legitimate Explanation For Why Corporate Size Should Be Included In The Jury's Willfulness Inquiry

Telcordia avoids addressing the issue of whether a defendant's corporate size should play a role in a jury's assessment of defendant's mental state in two ways. First, Telcordia disregards the arguments it made at trial, where it advocated a base, prejudicial relevance for corporate size. Telcordia now proposes a fuzzy connotation of corporate size that, if accepted, would illustrate what is logical and obvious: corporate size is irrelevant to culpability. Second, Telcordia urges that "any concerns Cisco may have had" were accommodated because the term "financial condition" was removed from the instruction, leaving the jury to nonetheless focus on an even broader prejudicial term: "size." Both of these arguments fail.

### 1.   Telcordia Intended That Jury Grasp The Prejudice Of Corporate Size

Telcordia's opposing brief presents a stance on the relevance of corporate size that in no way reflects its position at trial and its arguments before the jury. As a threshold matter, Telcordia's brief does not go so far as to suggest that the jury should consider issues that are irrelevant to defendant's state of mind. Instead, Telcordia—in an attempt to downplay the canard that corporate size implies bad intent—states that the "small size" of a company "might weigh in favor of a finding of willfulness or alternatively against a finding of willfulness . . . ," and that "the same is true of a large company." D.I. 388 [Answering Brief] at 10. Thus, according to Telcordia, *either* smallness or largeness could militate against a finding of willful infringement, and vice versa. In short, Telcordia's strained position seems to be that a company's size "might" mean just about anything in the context of willful infringement.[3] What this supposed analysis, if accepted, would therefore tend to show is that a company's size demonstrates absolutely nothing about its state of mind. Unsurprisingly, Telcordia cites to no authority in any context that even remotely approximates the position set forth in its brief. The absence of such authority is particularly noteworthy given all the authority Telcordia cites that supposedly endorses the use of size and financial condition in deciding willfulness.

Of course, the problem is not just that size is irrelevant to the willfulness inquiry, but that the consideration of size as a factor when deciding intent sets off the biases that many people have against large corporations.[4] Indeed, Telcordia's own brief—although largely an effort to

---

[3]    To describe the supposed relevance of a company's size in the context of willful infringement, Telcordia uses the words "might" or "may be" six times in the space of just one paragraph, demonstrating just how meaningless it is to the willfulness inquiry.

[4]    This is a prejudice that Courts have repeatedly recognized. *See, e.g., Honda Motor Co. v. Oberg*, 512 U.S. 415, 432 (1994) ("[T]he presentation of evidence of a defendant's net worth creates the potential that juries will use their verdicts to express biases against big businesses, particularly those without strong local presences."); *Draper v. Airco, Inc.*, 580 F.2d 91, 95 (3d

veil such prejudices—lets slip precisely the type of stereotypical, fallacious thinking that jury instructions should correct, not foster:

> Telcordia can hardly be faulted for responding to Cisco's characterizations by presenting other side of the same coin: that from Telcordia's perspective, ***Cisco was a large, successful company that had no qualms about ignoring Telcordia's valid patent rights*** and stringing along Telcordia for years.

D.I. 388 [Answering Brief] at 18. Thus, Telcordia explicitly ties Cisco's size and success to a willingness to ignore its patents. This is the connotation of corporate size that matches the meaning Telcordia advocated at trial, and almost certainly the prejudicial relevance that the jury grasped as well. Indeed, during the charge conference, Telcordia expressly argued for the inclusion of size based on this prejudice:

| THE COURT: | . . . Why do you contend, Ms. Masurovsky, that size should be a factor that the jury should consider? Regardless of whether they called it out or not. Why is it relevant to the jury's consideration? |
|---|---|
| MS. MASUROVSKY: | From a common-sense standpoint, ***I do think it provides motivation for ignoring other people's intellectual property rights.*** |
| THE COURT: | Big entity beating up on little entity? Is that the idea? |
| MS. MASUROVSKY: | That is one of the factors. It just goes—how do you determine whether someone has done something in kind of a culpable way? You look at what their motivation is. And I think that is a motivating factor, that they can ignore us until it comes time for litigation. |
| | I do think that is very important. It is one of the very important factors. ***How else do people make these decisions when they don't really know the parties?*** |

---

Cir. 1978) ("[J]ustice is not dependent upon the wealth or poverty of the parties and a jury should not be urged to predicate its verdict on a prejudice against bigness or wealth."); *Commercial Credit Business Loans, Inc. v. Martin*, 590 F. Supp. 328, 333 (E.D. Pa. 1984) (stating that an attorney's repeated references "to the size and wealth of CCLB was a transgression that cannot be condoned"); *Eagan v. CSX Transp., Inc.*, 271 F. Supp. 2d 993, 1002 (E.D. Mich. 2003) ("Comments upon a party's size and wealth have been held to be prejudicial and inappropriate.").

> *Sometimes you look at someone's age.  Where they come*
> *from. . . .*

D.I. 359 [5/8/07 Trial Tr.] at 2052:18-2053:10.

At no point during the trial did Telcordia advocate the watery, uncertain relevance of corporate size that it now proposes.  Instead, Telcordia's position was that corporate size is a factor like "someone's age" and "[w]here they come from" that enables jurors to make decisions "when they don't really know the parties."  It is a bedrock principle—requiring no citation to authority—that in the American justice system courts do not endorse the contemplation of loaded attributes such as someone's age or where someone comes from to aid in deciding culpability.  Corporate size, a factor that Telcordia urged at the charge conference is of the same prejudicial ilk, should thus have been excluded from the jury's willfulness deliberations.

### 2.    The Court's Omission Of The Term "Financial Condition" Does Not Lessen The Prejudicial Impact Of The Instruction

Again sidestepping the central issue, Telcordia argues that the Court "accommodate[d] any concerns Cisco may have had" by excluding the term "financial condition" from the jury instruction, leaving only the more general term "size."  D.I. 388 [Answering Brief] at 17.  Cisco respects that the Court's intention was to strike a compromise.  At trial, however, Telcordia played up the relationship between Cisco's size and its financial condition, as reflected in Cisco's sales figures.  Indeed, the terms "size" and "financial condition" are nearly transposable when used to refer to a corporate entity.  And, a company's "size" is almost always directly proportional to its "financial condition."[5]  Under these circumstances, Telcordia's pervasive

---

[5]      Along these lines, the Federal Circuit originally presented the terms "size" and "financial condition" as a single united factor in the enhancement calculus, and courts have since then— without exception—considered them together, reflecting the intrinsic relationship between these two terms.

argument pertaining to *both* Cisco's size and financial condition frustrated entirely the Court's desire to strike a balance on this issue.

For instance, when Telcordia referred to Cisco as the Big Kahuna—which it did *seven* times throughout trial—it consistently did so in combination with a reference to Cisco's sales figures. *See* D.I. 353 [5/1/07 Trial Tr.] at 535:19-536:16 (when asked "how [the companies listed on PTX-5000] compare to the big kahuna in terms of product sales," Telcordia's corporate vice president and deputy general counsel replied that they were not "even close to an order of magnitude to what Cisco had"); *id.* at 537:20-25 (testimony of Joseph Giordano that one would expect revenue from the "big kahuna" to be larger than for a small company).

As another example, Telcordia repeatedly presented evidence regarding Cisco's growth via various multi-billion dollar acquisitions. *See, e.g.*, D.I. 355 [5/4/07 Trial Tr.] at 1298:19-1299:2; *id* at 1318:13-22; *id* at 1312:18-1313:22; D.I. 358 [5/9/07 Trial Tr.] at 2192:6-20. At one point, Telcordia's damages expert bluntly testified that Cisco was "trying to become as big as they can" through these acquisitions while at the same time displaying a poster—only feet from the jury—proclaiming in large letters Cisco's $3.5 billion in sales of accused products. *See* D.I. 355 [5/4/07 Trial Tr.] at 1316:5-24. This was a number that Telcordia hammered throughout trial, mentioning it at least twenty times and even noting for particular emphasis during Opening Statement that it was "three billion, not million, but billion dollars" worth of sales. *See* D.I. 352 [4/30/07 Trial Tr.] at 206:20-25. No reasonable juror would think that this did not somehow reflect upon Cisco's size, certainly not after Telcordia proclaimed during its Closing Argument that Cisco's "commercial success is *unparalleled*," D.I. 358 [5/9/07 Trial Tr.] at 2180:15-16, and that Cisco's "sales under the '763 . . . are almost *astronomical*," *id.* at 2170:1-6.

These extreme statements do not represent, as Telcordia argues, a "limited snapshot" of Cisco's finances. Rather, they were part of an integrated effort to spark biases that the jurors may have had against large corporations. To be clear, the issue is not whether this violated the Court's *in limine* order, nor is it whether this was an appropriate response to Cisco's trial themes—indeed, Cisco acknowledges that size may have had relevance to some issues in the case. Rather, the point is that Telcordia's pervasive references to Cisco's size and financial condition, which Telcordia basically admitted during the charge conference were for the purpose of capitalizing on stereotypes, took on an unduly prejudicial character when the jury was instructed to consider them when evaluating state of mind. Under these circumstances, a new trial is warranted.

**B.    Litigation Misconduct Has No Connection To Mental State**

Unlike its arguments regarding the jury's consideration of Cisco's size and financial condition, Telcordia does not even attempt to explain the relevance of litigation misconduct to the willfulness inquiry. D.I. 388 [Answering Brief] at 11-12. Nor can it, because, as Cisco pointed out in its opening brief, it is obvious that "[e]vidence of unethical *litigation* conduct says nothing about whether the infringement itself was willful." *Advanced Display Sys. v. Kent State Univ.*, No. 3-96-CV-1480-BD, 2001 U.S. Dist. LEXIS 17953, at *25 (N.D. Tex. Nov. 1, 2001) (emphasis in original). Under these circumstances, Telcordia again attempts to avoid the issue altogether by suggesting that this *Read* factor is nothing more than an instruction to consider the "credibility and conduct of the party and its witnesses during trial," and that this may include consideration of whether a witness appeared "responsive, composed, and concerned . . . ." D.I. 388 [Answering Brief] at 12. Telcordia is wrong.

As an initial matter, the instruction asked the jury to consider "behavior as a *party* to the *litigation*." D.I. 343 [5/11/07 Trial Tr.] at 18. Expressly referring to a "party" in "litigation,"

this instruction was decidedly not, as Telcordia urges, a generalized instruction on *witness* credibility, and the jury would not have recognized it as such. Indeed, specific credibility considerations were covered elsewhere in the jury instructions. *See id.* at 5 (instruction 1.7 on "CREDIBILITY OF WITNESSES," asking jurors to consider, among other things, "the witness's manner or demeanor on the witness stand"). Likewise, courts considering this *Read* factor have not treated it as some sort of vague credibility instruction. *See, e.g., IMX, Inc. v. Lendingtree, LLC*, 469 F. Supp. 2d 203, 220 (D. Del. 2007) (considering whether defendant raised meritless defenses and timely disclosed prior art); *Applera Corp. v. MJ Research Inc.*, 372 F. Supp. 2d 233, 240 (D. Conn. 2005) (noting defendant's late assertion of new defenses based on undisclosed prior art and a last minute attempt to stay litigation by filing for bankruptcy). And, most notably, Telcordia's own brief on enhancement of damages asks this Court to consider—under the aegis of "Behavior in This Litigation"—"bad faith litigation tactics," including the assertion of allegedly unsupported defenses, the alleged withholding of documents, and supposedly overzealous discovery demands.[6] *See* D.I. 370 [Opening Brief re: Enhanced Damages] at 8-16. Telcordia points to no authority supporting its incorrect interpretation of this *Read* factor. Accordingly, Telcordia's attempt to place a façade around this *Read* factor should be rejected, and the Court should instead focus on the one true issue: whether Telcordia's unsupported allegations of litigation misconduct, which shed no light on culpability, nevertheless improperly infected the jury's willfulness deliberations by way of the Court's erroneous jury instruction.

---

[6]    Also, Telcordia's answering brief asserts that one district court properly considered not "behavior," but "litigation misconduct" when deciding willfulness, demonstrating that Telcordia understands precisely what this factor refers to. *See* D.I. 388 [Answering Brief] at 7 (citation to *Mars, Inc. v. Coin Acceptors, Inc.*).

As Cisco pointed out in its opening brief, Telcordia's insinuations of litigation misconduct pierced every phase of trial and, in light of the erroneous willfulness instruction Telcordia advocated, were thus certain to have also penetrated the jury's willfulness deliberations. Furthermore, though arguing that the jury was "not privy to the pretrial proceedings" and would thus "naturally" consider only "behavior during the trial," D.I. 388 [Answering Brief] at 11-12 n.4, *Telcordia* in fact constantly infused the case with pre-trial litigation matter through its trumped up—and highly improper—misconduct allegations. For example, Telcordia's detailed discussion—during both its Opening Statement and Closing Argument—of Cisco's former worldwide patent counsel Robert Barr[7] asserting that "I'm not going to answer this out-of-context crap" was, as Telcordia admits, an attempt to show that Cisco "blew [Telcordia] away"—not just at trial or at the deposition—but "*all through this proceeding*." D.I. 352 [4/30/07 Trial Tr.] at 215:6-19 (emphasis added). But given that Mr. Barr made this statement only in an effort to prevent Telcordia from mischaracterizing a document— after he explained *five times* that the document in question contained "nothing about patents," contained "20 pages of business," and was merely a "business proposal," *see* D.I. 353 [5/1/07 Trial Tr.] at 560:3-561:21—it was improper, confusing, and unduly prejudicial for Telcordia to stretch this into evidence of Cisco "blowing Telcordia away *all through the proceeding*."

Likewise, with regard to the pre-trial discovery of foreign sales information, Telcordia was not, as it argues in its opposition, simply trying to present a complete picture of how Cisco produced sales data. Indeed, Telcordia raised the issue at least four times, describing Cisco as having "*deliberately excluded*" foreign sales information from its production. *See* D.I. 355

---

[7]     Cisco inaccurately described Mr. Barr as former General Counsel in a previous brief. In fact, Mr. Barr was Cisco's former worldwide patent counsel. In its reply brief, Telcordia repeated the misstatement on a number of occasions.

[5/4/07 Trial Tr.] at 1277:8-15. As the Court recognized through a limiting instruction, such strong, intent-implicating descriptions of the issue were by no means neutral descriptions meant to fairly convey certain discovery details and could very well have led the jury to "draw the inference that something improper was done." *Id.* at 1278:11-12. The same is true of Telcordia's statements that Cisco "did not act like a proper citizen," that its actions were "not the kind of conduct that is acceptable," and that "it's more of the same type of conduct that we've seen over the past ten years." D.I. 358 [5/9/07 Trial Tr.] at 2194:7-10; *id.* at 2166:24-2167:7. And, telling the jury that defense lawyers instructed certain witnesses that it would be in their employer's "interest" for them to testify, followed immediately thereafter with the assertion that their testimony "certainly is not reflective of the truth," is essentially an improper accusation that Cisco persuaded the witnesses to lie on Cisco's behalf during a pre-trial deposition.[8] Given the irrelevance of even legitimate allegations of litigation misconduct to intent, the importation of the above contrived innuendo into the willfulness inquiry should be viewed as exceptionally harmful. As such, it is simply cannot be said that it is "highly probable" that the erroneous jury

---

[8]     Another Telcordia attempt to infuse the trial with allegations of pre-trial litigation misconduct was unsuccessful. As Cisco noted in its Answering Brief in Opposition to Telcordia's Motion for Attorneys' Fees, D.I. 393, Telcordia intended to play 70 lines of deposition testimony from a Cisco engineer regarding his alleged failure to search for e-mails, files, or other paper documents relating to the accused products. Telcordia's initial designations omitted testimony showing that Cisco maintains such information in a centralized database and that it would thus be unnecessary for the engineer to conduct his own document search, testimony that Cisco had to counter designate. *See* Exhibit 1 [Jain Transcript]. Telcordia never explained the relevance of the designated testimony to any issue in the case, although it was abundantly clear that Telcordia was improperly intending to suggest to the jury that Cisco had failed to preserve documents or, even worse, destroyed documents. It has now become apparent that this was another component of Telcordia's broad theme of pre-trial litigation misconduct. Telcordia ultimately chose not to play the testimony, but only after Cisco informed Telcordia that it would raise its objections to the testimony before the Court. *See* Exhibit 2 [May 1, 2007 e-mail from V. Kakarla to D. Walter].

instruction "did not affect the outcome of the case." *See Hill*, 435 F.3d at 411. A new trial is warranted.

### C. Telcordia's Authority Does Not Support The Use Of The Challenged *Read* Factors In The Willfulness Inquiry

Telcordia's brief includes a bullet-point list of seven cases that supposedly endorse the use of all nine *Read* factors when deciding willfulness. Cisco cannot deny that many of these cases enumerate all the *Read* factors. However, a closer look at these cases—beyond a superficial glance at Telcordia's favorable "soundbites"—demonstrates that the picture is not as clear as Telcordia portrays it to be. Most significantly, not a single one of the cases in Telcordia's list actually applies the defendant's size as a factor in the willfulness inquiry,[9] demonstrating that many courts have reviewed the *Read* factors in light of *Knorr-Bremse* and, in spite of what Telcordia says is clear guidance from the Federal Circuit, affirmatively determined that corporate size is an inappropriate factor to consider when deciding intent. This is especially clear with regard to the cases Telcordia cites that chose to consider size and financial condition in the *enhancement* inquiry while omitting it from the willfulness discussion. *See Century Wrecker Corp. v. E.R. Buske Mfg. Co.*, 913 F. Supp. 1256, 1283-1291 (D. Iowa 1996); *Etna Prods. Co. v. Q Mktg. Group, Ltd.*, No. 03 Civ. 3805 (SAS), 2004 U.S. Dist. LEXIS 15323, at *40-*44 (S.D.N.Y. Aug. 4, 2004). Interestingly, one of the cases Telcordia cites, *Mars, Inc. v. Coin Acceptors, Inc.*, states that the *Read* factors are appropriate considerations in the willfulness inquiry, but, when enumerating the *Read* factors, actually *omits* size and financial condition from

---

[9]     Telcordia asserts that the court in *Avocent Huntsville Corp. v. Clearcube Tech., Inc.*, No. CV-03-S-2875-NE, 2006 U.S. Dist. LEXIS 55307 (N.D. Ala. 2006 July 28, 2006), applied all *Read* factors when addressing the threshold question of willfulness. This is incorrect. That court declined to apply many of the *Read* factors in deciding defendant's motion for partial summary judgment on plaintiff's claim for willful infringement, including defendant's size and defendant's behavior as a party to the litigation.

the list. *See Mars, Inc. v. Coin Acceptors, Inc.*, No. 90-49 (JCL), 2005 U.S. Dist. LEXIS 43811,

at *3 (D.N.J. Sept. 15, 2005). These facts do not reflect "overwhelming" authority endorsing the

use of size when deciding intent, but rather serious, widespread misgivings about such an

approach, which this Court has expressed as well:

> [I]t tends to inject, I think, into cases potentially an element of unfairness, of
> prejudice, knowing how we feel about things like insurance companies and large
> organizations and corporations. It seems to me to be fundamentally unfair to take
> advantage of that fact just because it's a fact that Cisco is a big organization.

D.I. 359 [5/8/07 Trial Tr.] at 2045:21-2046:2.

With regard to litigation misconduct, the situation is similar. Only one case in

Telcordia's list actually considers this factor at all in deciding willfulness, and the entire

treatment there was only to say that "[Plaintiff] has not pointed to any such conduct, but the

litigation is not over. Work remains to be done with respect to damages and other issues."

*Mars, Inc.*, 2005 U.S. Dist. LEXIS 43811 at *14. As with corporate size, some courts

consciously decided to consider litigation misconduct only in the *enhancement* discussion while

omitting it from the willfulness discussion, implicitly recognizing the irrelevance of litigation

misconduct to state of mind. In fact, a companion opinion to one of the cases Telcordia cites

even held that "discovery disputes in this case are *not* relevant to willfulness" and that "the

probative value of [such] evidence is substantially outweighed by the danger of confusion of the

issues and misleading the jury." *Avocent Huntsville Corp. v. Clearcube Tech., Inc.*, No. CV-03-

S-2875-NE, 2006 U.S. Dist. LEXIS 55308, at *6 n.3 (N.D. Ala. July 28, 2006) (emphasis in

original).

What Telcordia's list of cases does makes clear is the key point that Cisco emphasized in

its opening brief: "[T]he primary focus in a willful infringement inquiry is ultimately on the

infringer's intent and reasonable beliefs concerning non-infringement and patent invalidity."

*Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 372 F. Supp. 2d 833, 845

(E.D. Va. 2005).[10]  And, as is logical, none of the cases in Telcordia's list offers any rationale for

how corporate size and litigation misconduct can be connected to an accused infringer's "intent

and reasonable belief."[11]  This fact, along with the overall unwillingness of district courts to

actually apply size and litigation misconduct in the willfulness inquiry, demonstrates that these

considerations have in fact remained completely marginalized from the willfulness inquiry, even

after the Federal Circuit's vague suggestion in *Knorr* that the analysis "may include" factors

from *Read*.

## IV.    THE *READ* FACTORS ARE INORDINATELY SLANTED TOWARDS EGREGIOUSNESS

Telcordia observes that, in *SRI Int'l v. Advanced Tech. Lab.*, the Federal Circuit stated

that the "principal considerations in enhancement of damages are the same as those of the

willfulness determination."  127 F.3d 1462, 1469 (Fed. Cir. 1997).  However, Telcordia's brief

omits crucial guidance qualifying this point.  Specifically, the Federal Circuit instructed that the

enhancement considerations, when applied to willfulness, must be treated with "greater nuance

---

[10]    *See also TIVO Inc. v. EchoStar Comm. Corp.*, No. 2:04-CV-1 (DF), 2005 U.S. Dist. LEXIS 42481, at *13 (E.D. Tex. Sept. 26, 2005) ("Because willfulness is a question of the infringer's state of mind, the primary focus of the inquiry is on the reasonableness of the infringer's beliefs and actions."); *Century Wrecker*, 913 F. Supp. at 1271 ("Willfulness is a question of fact and involves a determination as to an infringer's state of mind.").

[11]    Along these lines, commentary on the Federal Circuit's suggestion that some *Read* factors "may" be included in the willfulness inquiry recognizes the irrelevance of both size and litigation misconduct to state of mind.  *See* Stephanie Pall, *Note: Willful Patent Infringement: Theoretically Sound? A Proposal to Restore Willful Infringement to Its Proper Place Within Patent Law*, 2006 U. Ill. L. Rev. 659, 670 n.87 (2006) (noting that "defendant's financial size" and "litigation misconduct" "do not inquire into the defendant's state of mind"); William L. LaFuze, *et al.*, *Exculpatory Patent Opinions and Special Problems Regarding Waiver of Privilege*, 6 J. Marshall Rev. Intell. Prop. L. 313, 321 (2007) ("[T]he Read factor regarding the size and financial condition of the accused infringer should not have any connection with the 'intent' or willfulness of the accused infringer.").

as may affect the degree of enhancement" and that "[a]ll aspects relevant to a particular case

should be given the *weight appropriate to their substance.*" *Id.*

Nowhere is this clearer than with regard to the four factors pertaining to egregiousness

that were included in the willfulness instruction Telcordia advocated (*i.e.*, *Read* factors 6, 7, 8

and 9). As Cisco noted in its opening brief, a jury should not be asked to make a threshold

determination of ill intent on the basis of factors that, given their intended use in the

enhancement inquiry, already assume "misconduct," "harm," or the need for "remedial action."

Telcordia urges that the jury had adequate guidance in this regard because the Court instructed

the jury to decide willfulness only after first finding infringement, which Telcordia argues should

be viewed as "misconduct" in and of itself. But this misconstrues the Court's instructions.

Indeed, infringement can be entirely innocent. *See, e.g., Kloster Speedsteel AB v. Crucible, Inc.,*

793 F.2d 1565, 1580 (Fed. Cir. 1986) (noting that infringement can be "accidental or innocent").

Had the jury believed, as Telcordia argues it should have, that infringement alone constitutes

"misconduct," then there can be no doubt that the jury's willfulness deliberations were nothing

more than premature enhancement deliberations. In fact, given the Court's proper instruction to

decide willfulness only after finding infringement, along with the willfulness instruction that was

slanted towards egregiousness and that repeatedly referred to "misconduct," it is in fact highly

likely that the jury prematurely confused mere infringement with the type of culpable conduct it

was tasked with finding when deciding willfulness.

Furthermore, given that almost half of the factors submitted to the jury were directed to

egregiousness—using language that presupposes misconduct—it is clear that Telcordia's

instruction gave egregiousness unwarranted weight inappropriate to its substance in the

willfulness inquiry. Indeed, the Federal Circuit has noted that egregiousness is the "paramount"

consideration when deciding enhancement, *see Read Corp. v. Portec*, 970 F.2d 819, 826 (Fed.

Cir. 2006), and that "egregiousness . . . may receive greater emphasis" in the enhancement

inquiry than in the willfulness inquiry, *SRI Int'l.*, 127 F.3d at 1469.  It is hard to imagine a set of

factors pertaining to *enhancement* that could give any greater weight to egregiousness than those

that were submitted to the jury on *willfulness*, demonstrating just how poorly matched the *Read*

factors are to the willfulness inquiry.

## V.      CISCO COMPLIED WITH RULE 51(c)

All of Cisco's arguments for a new trial stem from the fact that the nine *Read* factors,

taken as a whole, are poorly matched to the willfulness inquiry.  Telcordia acknowledges that

Cisco made precisely this objection.  D.I. 388 [Answering Brief] at 26-27.  But Telcordia's now

portrays this objection as unduly "narrow" and argues that Cisco, by failing to set forth every

little detail supporting the objection, failed to preserve arguments under Rule 51(c).  However,

when this objection is coupled with the numerous other objections and arguments Cisco

presented at the charge conference, there can be no doubt that all of Cisco's arguments and

objections have been preserved.

The underlying purpose of Rule 51 is to "give the trial judge an opportunity to correct the

erroneous charge." *Miller v. Cigna Corp.*, 47 F.3d 586, 591 n.5 (3d Cir. 1995) (citing *Dunn v.*

*HOVIC*, 1 F.3d 1371, 1379 (3d Cir. 1993)).  Cisco undoubtedly gave the Court this opportunity.

During the course of the brief charge conference—at which 13 different jury instructions were

debated—the Court, Cisco, and Telcordia engaged in argument regarding the totality of the

willfulness instruction that carried on for *twelve pages* of the conference transcript.  D.I. 359

[5/8/07 Trial Tr.] at 2044-56.  During the course of this argument, Cisco not only objected to the

totality of the proposed instruction, but also proposed an alternative willfulness instruction.  *Id.*

at 2053:15-2054:13.  Cisco also raised specific objections to *Read* factors 3, 4, 7, 8 and 9, a point

that Telcordia does not dispute. Significantly, Cisco's objections to *Read* factors 7 and 8 clearly alerted the Court to the fact that Telcordia's willfulness instruction was too heavily slanted towards egregiousness. *Id.* at 2047:25-2048:3 (objecting to one of the *Read* factors on the grounds that it is directed to egregiousness); *id.* at 2048:10-12 (same). Additionally, Cisco's alternative willfulness instruction included a reduced set of factors directed towards egregiousness, thereby addressing the same concern a second time. *See* Exhibit 3 [Federal Circuit Bar Association Model Jury Instructions] at § 3.8. Under these circumstances, Telcordia's arguments that Cisco failed to preserve its objections regarding egregiousness, which form the thrust of Telcordia's briefing on this issue, should be rejected.

The lengthy discussion of the willfulness instruction concluded with Cisco stating that "[j]ust for the record, we are preserving on our rights," to which the Court responded "[t]hat is understood." D.I. 359 [5/8/07 Trial Tr.] at 2055:23-25. This alone demonstrates that Cisco's objections were adequately preserved under Rule 51. *See Dawson v. New York Life Ins. Co.*, 135 F.3d 1158, 1165 (7th Cir. 1998) ("[I]f the district court judge assured the parties that the record adequately contains their objections, the parties should not be penalized for relying on such assurances."). And, although the record set forth above makes clear that Cisco presented thorough and complete objections, the Court subsequently instructed that lengthy, detailed argument on an issue was not required to comply with Rule 51. *See id.* at 2061:1 (in response to a Telcordia question about preserving objections, the Court instructs that "[b]y simply raising it, you have preserved it"). This directive was entirely correct, as the absurd level of detail Telcordia now demands from Cisco is simply not necessary to preserve objections under Rule 51. *See, e.g.*, *United States v. Rivera*, 365 F.3d 213, 214 (3d Cir. 2004) ("Compliance with Rule 51 does not require 'surgical precision.'"); *Schobert v. Ill. DOT*, 304 F.3d 725, 730 (7th Cir.

2002) (objection sufficient when it was "enough to alert the district court to the pertinent areas of disagreement"). Thus, by proposing whole alternative instructions for the Court, raising specific objections to certain of the *Read* factors, and discussing in detail the overall inappropriateness of the *Read* factors to the willfulness inquiry, Cisco gave the Court—and Telcordia—more than sufficient notice of its objections to fulfill both the spirit and the letter of Rule 51(c).

## VI.    CONCLUSION

For the foregoing reasons, and those presented in Cisco's opening brief, Cisco respectfully requests that its motion for a new trial on the issue of willful infringement be granted.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jack B. Blumenfeld*
Jack B. Blumenfeld (I.D. #1014)
Leslie A. Polizoti (I.D. #4299)
1201 North Market Street
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@mnat.com
lpolizoti@mnat.com

*Attorneys for Defendant Cisco Systems, Inc.*

OF COUNSEL:

Matthew D. Powers
Edward R. Reines
Jessica L. Davis
Sonal N. Mehta
Thomas B. King
Derek C. Walter
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA  94065
(650) 802-3000

August 13, 2007
1210381

## CERTIFICATE OF SERVICE

I hereby certify that on August 13, 2007 I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing to Steven J. Balick and John G. Day.

I further certify that I caused copies of the foregoing document to be served on August 13, 2007 upon the following in the manner indicated:

**BY HAND**

John G. Day
ASHBY & GEDDES
500 Delaware Avenue, 8th Floor
Wilmington, DE  19801

**BY FEDERAL EXPRESS
(on August 14, 2007)**

Don O. Burley
FINNEGAN, HENDERSON,
  FARABOW, GARRETT & DUNNER
901 New York Avenue
Washington, DC  20001

**BY ELECTRONIC MAIL**

John Day (jday@ashby-geddes.com)
Steven J. Balick (sbalick@ashby-geddes.com)
John Williamson (john.williamson@finnegan.com)
York Faulkner (york.faulkner@finnegan.com)
Don Burley (don.burley@finnegan.com)

/s/ Jack B. Blumenfeld

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
Wilmington, DE 19801
(302) 658-9200
jblumenfeld@mnat.com