## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

TELCORDIA TECHNOLOGIES, INC.,                 )
                                              )
                    Plaintiff/Counterclaim Defendant  )        Civil Action No. 04-876-GMS
                                              )
        v.                                    )        <u>REDACTED</u>
                                              )        <u>PUBLIC VERSION</u>
CISCO SYSTEMS, INC.,                          )
                                              )
                    Defendant/Counterclaim Plaintiff  )
                                              )

**TELCORDIA TECHNOLOGIES, INC.'S REPLY BRIEF IN SUPPORT OF ITS
MOTION FOR (1) AN AWARD OF PREJUDGMENT INTEREST AND (2) AN
ACCOUNTING OF DEFENDANT CISCO SYSTEMS, INC.'S INFRINGING
<u>SALES FROM JANUARY 31, 2007 TO THE DATE OF JUDGMENT</u>**

<div style="float:right">

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware 19899-1150
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Plaintiff/Counterclaim Defendant
Telcordia Technologies, Inc.*

</div>

*Of Counsel:*

Donald R. Dunner
Steven M. Anzalone
Griffith B. Price, Jr.
James T. Wilson
John M. Williamson
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C. 20005
(202) 408-4000

Dated: August 13, 2007

# TABLE OF CONTENTS

I.      Nature and Stage of the Proceeding; Summary of Argument.................................1

II.     Statement Of Facts...........................................................................................2

III.    Telcordia's Motion For An Award Of Prejudgement Interest, Based On The
        Prime Rate Compounded Quarterly, Should Be Granted ...................................2

        A.      Cisco's Argument That The Jury Has Already Awarded Prejudgment
                Interest Is Contradicted By The Facts......................................................2

        B.      Telcordia Did Not Waive Its Request For Prejudgment Interest ................4

                1.      Telcordia Did Not Waive Its Request For Prejudgment Interest By
                        Omitting It From The Pre-Trial Order. ........................................4

                2.      Telcordia Did Not Waive Its Claim For Prejudgment Interest By
                        Not Presenting Evidence On That Issue To The Jury.....................5

        C.      The Evidence Establishes That Telcordia Is Entitled To Prejudgment
                Interest Based On The Prime Rate, Compounded Quarterly .......................6

                1.      An Award Of Prejudgment Interest Ordinarily Follows An Award
                        Of Damages For Infringement, And The Court Has The Discretion
                        To Award Such Interest At The Prime Rate Without Further Proof
                        Of Telcordia's Cost Of Borrowing ..............................................6

                2.      The Cases Cisco Relies On To Support Its Argument That Proof
                        Of A Causal Connection Between Telcordia's Cost Of Borrowing
                        And Its Request For Prejudgment Interest Based On Prime Is A
                        "Prerequisite" For Such An Award Do Not So Hold ....................9

                3.      During The Period After Cisco Acknowledges It Received Notice
                        Of Infringement, Telcordia And SAIC (From Whom Telcordia
                        Received Financial Support As SAIC's Wholly-Owned
                        Subsidiary)             REDACTED              .........................10

        D.      Telcordia Is Entitled To An Accounting Of Cisco's Infringing Sales From
                January 31, 2007 To The Date Of Judgment ..........................................15

                1.      There Is No Basis For Concluding That The Jury Based Its
                        Damage Award On A Lump-Sum, Paid-Up License To Cisco ........15

                2.      Cisco's Argument That Damages For Its Infringing Sales From
                        January 31, 2007 To The Date Of Judgment Cannot Be
                        Determined In An Accounting Is Groundless.............................18

IV.     Conclusion ....................................................................................................19

i

# TABLE OF AUTHORITIES

## FEDERAL CASES

*C.R. Bard, Inc. v. Medtronic,*
    Civil Action No. 96-589-SLR, 1999 U.S. Dist. LEXIS 9875 (D. Del. June 15, 1999),
    *aff'd in part, vacated in part, and remanded,* 2000 U.S. App. LEXIS 15316 (Fed. Cir.
    June 29, 2000)..................................................................................................................8

*Datascope Corp. v. SMEC, Inc.,*
    879 F.2d 820 (Fed. Cir. 1989).......................................................................................10

*Eugene B. Smith & Co. v. Russek,*
    212 F.2d 338 (5th Cir. 1954) ...........................................................................................5

*Fuji Photo Film, Co. v. U.S. Int'l Trade Comm'n,*
    474 F.3d 1281 (Fed. Cir. 2007).....................................................................................15

*Gen. Motors Corp. v. Devex Corp.,*
    461 U.S. 648 (1983)...........................................................................................................7

*Golight, Inc. v. Wal-Mart Stores, Inc.,*
    216 F. Supp. 2d 1175 (D. Colo. 2002)...........................................................................9

*IMX, Inc. v. Lendingtree,*
    469 F. Supp. 2d 203 (D. Del. 2007).................................................................7, 8, 10, 13

*IPPV Enter. v. Echostar Commc'ns Corp.,*
    Civil Action No. 99-577-KAJ, 2003 U.S. Dist. LEXIS 3530 (D. Del. Feb. 27, 2003) ............8

*Joy Techs., Inc. v. Flakt, Inc.,*
    954 F. Supp. 796 (D. Del. 1996).....................................................................................9

*Laitram Corp. v. NEC Corp.,*
    115 F.3d 947 (Fed. Cir. 1997).........................................................................................9

*Loughman v. Consol. Pennsylvania Coal Co.,*
    6 F.3d 88 (3rd Cir. 1993) ...............................................................................................17

*Mars, Inc. v. Conlux USA Corp.,*
    818 F. Supp. 707 (D. Del. 1993), *aff'd,* 16 F.3d 421 (Fed. Cir. 1993).......................8

*Melvin v. UA Local 13 Pension Plan,*
    236 F.R.D. 139 (W.D.N.Y. 2006).....................................................................................5

*Nickson Indus., Inc. v. Rol Mfg. Co.,* 847 F.2d 795 (Fed. Cir. 1988) ...........................7

ii

*Philips Elec. N. Am. Corp. v. Contec Corp.,*
    Civil Action No. 02-123-KAJ, 2004 U.S. Dist. LEXIS 13455
    (D. Del. Aug. 24, 2004), *aff'd,* 177 Fed. Appx. 981 (Fed. Cir. 2006)..................................7

*Poleto v. Consol. Rail Corp.,*
    826 F.2d 1270 (3d Cir. 1987), *overruled on other grounds by Kaiser Aluminum &*
    *Chem. Corp. v. Bonjorno,* 494 U.S. 827 (1990) ..................................................3

*Rocket Jewelry Box, Inc. v. Quality Int'l Packaging, Ltd.,*
    250 F. Supp. 2d 333 (S.D.N.Y. 2003), *aff'd in part, vacated and remanded on other*
    *grounds,* 90 Fed. Appx. 543 (Fed. Cir. 2004), appeal dismissed, 178 Fed. Appx. 12
    (Fed. Cir. 2006)...........................................................................................4, 6

*Scott Paper Co. v. Moore Bus. Forms, Inc.,*
    594 F.Supp. 1051 (D. Del. 1984).......................................................................7

*Sensonics, Inc. v. Aerosonic Corp.,*
    81 F.3d 1566 (Fed. Cir. 1996)...................................................................6, 7, 19

*Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.,*
    750 F.2d 1552 (Fed. Cir. 1984)......................................................................17

*Uniroyal, Inc. v. Rudkin-Wiley Corp.,*
    939 F.2d 1540 (Fed. Cir. 1991)..................................................................7, 8, 10

*Unisplay, S.A. v. Am. Elec. Sign Co.,*
    69 F.3d 512 (Fed. Cir. 1995)............................................................................5

*United States v. Golden Acres, Inc.,*702 F. Supp. 1097 (D. Del. 1988), *aff'd by U.S. v.*
    *Golden Acres, Inc.,* 879 F.2d 860 (3d Cir. 1989)................................................12

### FEDERAL STATUTES AND RULES

35 U.S.C. §§ 284-85 ...............................................................................................6

35 U.S.C. § 284..................................................................................................3, 5

Fed.R.Civ.P. 15(b) ..................................................................................................5

Fed.R.Civ.P. 54(c) ..................................................................................................5

I.    **Nature and Stage of the Proceeding; Summary of Argument**

Telcordia submits this Reply Brief in support of its motion for (1) prejudgment interest on the jury's award of $6.5 million in reasonable royalty damages for Cisco's infringement, and (2) an accounting of royalties on Cisco's infringing sales from January 31, 2007 to the date of judgment.

Reading the "Summary of Argument" in Cisco's Brief in Opposition dated July 23, 2007 ("Cisco Opp. Br.," D.I. 390), one might think that Telcordia, not Cisco, was the adjudicated wrongdoer in this case. Cisco attempts to portray Telcordia as overreaching in the extreme in its efforts to recover "damages adequate to compensate" for Cisco's infringement. But, in reality, it was Cisco – not Telcordia – that was intransigent and unyielding during more than ten years of contacts between the parties, during which Cisco could have taken a license from Telcordia at royalty rates far less than those upon which the jury apparently based its verdict. Now, having been adjudicated a willful infringer by the jury, Cisco perpetuates that intransigent, unyielding attitude by seeking to avoid any award of prejudgment interest – an award that, under applicable Supreme Court and Federal Circuit precedents, is not the exception, but the rule.

In opposing Telcordia's motion, Cisco argues (1) that the jury's $6.5 million damage award already includes prejudgment interest, (2) that Telcordia "waived" any request for prejudgment interest, and (3) that if prejudgment interest is awarded, Telcordia has not established that it should be calculated at the prime, as opposed to T-bill, interest rate. Cisco also opposes Telcordia's motion for an accounting on the grounds that (1) the jury awarded Cisco a lump-sum, paid-up license, and (2) "Telcordia has failed to properly request an accounting now." (Cisco Opp. Br., D.I. 390, at 12.)

*None* of these arguments is valid or supportable, as this Reply Brief will demonstrate. Moreover, in making these arguments in opposition to Telcordia's motion, Cisco distorts the trial

testimony of its damages expert, mis-cites and misrepresents the holdings of cases that it relies

upon, and seriously misstates the deposition testimony of one of Telcordia's witnesses whom it

deposed for purposes of this motion. On this record, on the facts, and on the law, Telcordia's

motion for prejudgment interest and an accounting should be granted.

II.    **Statement Of Facts**

The relevant facts are set forth and discussed in the Argument sections of this Reply

Brief, as appropriate.

III.   **Telcordia's Motion For An Award Of Prejudgement Interest, Based On The Prime
       Rate Compounded Quarterly, Should Be Granted**

      A.    **Cisco's Argument That The Jury Has Already Awarded Prejudgment
             Interest Is Contradicted By The Facts**

In its Opposition Brief, Cisco argues that, because its damage expert, Mr. Musika,

discounted his calculated damages to account for the value, as of 2001, of $6.2 million in future

payments, "the jury verdict [awarding $6.5 million in reasonable royalty damages to Telcordia]

is best understood" as including prejudgment interest. (Cisco Opp. Br., D.I. 390 at 3-4.) But –

aside from the fact that it would have been inappropriate either for Mr. Musika to present a

prejudgment interest calculation to the jury or for the jury to award such interest, *see* point II.B.2,

below – Mr. Musika did not calculate prejudgment interest, and a proper calculation of

prejudgment interest based on the methodology Cisco says Mr. Musika employed shows that

such prejudgment interest is not included in the jury's award, as the following discussion will

establish.

First, Cisco attempts to suggest that Mr. Musika in fact calculated the amount of what he

regarded as appropriate prejudgment interest and that the jury included that amount in its damage

verdict of $6.5 million:

        [T]he jury verdict is best understood as compensating Telcordia for
        the time between the 2001 hypothetical negotiation and the 2007

2

damages award by refusing to *discount* Mr. Musika's lump sum payment to account for the time value of money. That the jury would consider lost *interest* is not surprising. ... On these facts, the most reasonable way to understand the verdict is to conclude that the jury considered the age of the infringement in arriving at its $6.5 million award.

(Cisco Opp. Br., D.I. 390 at 4 (emphasis supplied).)

This argument is simply wrong. There is, demonstrably, no basis for Cisco's arguments either that Mr. Musika's calculations effectively included prejudgment interest, or that the jury's award of $6.5 million included such interest as one of its components.[1] In this case, *discounting* future payments to arrive at the past value of a lump sum award, as Mr. Musika did, is not the same thing as calculating *interest* on past payments to arrive at the present value of the jury's damage verdict, because such discounting omits interest that should be included from the date of such future payments to the date of judgment. *See* Reply Declaration of James J. Nawrocki dated August 8, 2007 ("Nawrocki Reply Decl."), para. 5.

Second, a proper calculation of prejudgment interest on the basis of the "risk-free" interest rate that Mr. Musika used to *discount* future payments (see Trial Transcript of May 8, 2007, D.I. 359, at 1908-09) reveals that the jury *could not* have used that methodology or rate to arrive at the sum of $6.5 million as an inclusive-of-interest award. Properly calculated to included interest during the time periods that Mr. Musika's discounting omitted, prejudgment

---

[1] In its Opposition Brief (D.I. 390 at 3 n.2), Cisco cites *Poleto v. Consol. Rail Corp.*, 826 F.2d 1270, 1277 (3d Cir. 1987), *overruled on other grounds by Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827 (1990), to suggest that when a jury is asked to render only a general verdict it "might be presumed to have included prejudgment interest in its calculation of damages." But the *Poleto* court's comment to that effect was *dicta* in a case under the Federal Employer's Liability Act (FELA), which has no provision for prejudgment interest and which the court found had been construed not to permit awards of prejudgment interest. That is entirely unlike the case at bar, in which Section 284 of the Patent Code provides for prejudgment interest to be "fixed by the court." *Poleto* provides no support for any argument that this Court should attempt to construe the jury's general verdict in such a way as to preclude an award of prejudgment interest pursuant to that section.

interest at that rate amounts to approximately $1.9 million, which, when added to Mr. Musika's $5 million discounted lump-sum damage figure, would result in a total damage award of approximately *$6.9 million.* (Nawrocki Reply Decl., para. 3.) That figure is substantially in excess of the $6.5 million the jury awarded, not to speak of the $6.2 million non-discounted total payments figure upon which Mr. Musika based his discounting.

In short, there is no basis for Cisco to assert, as it does in its Brief in Opposition, that "[t]he most reasonable way to understand the verdict is to conclude that the jury [included prejudgment interest in its award]," and the amount of the jury's $6.5 million damage award is inconsistent with Cisco's argument to that effect.

**B.    Telcordia Did Not Waive Its Request For Prejudgment Interest**

Next, without citing a single precedent to support its position, Cisco argues that "Telcordia waived any request for prejudgment interest" by not including such a request in its pretrial submissions and by agreeing, "subject to the Court's approval," to try all issues to the jury. (Cisco Opp. Br., D.I. 390 at 4 and n.5.)

The short answer to the first of Cisco's arguments is that it is wrong on the law and the short answer to the second is that it is wrong on the facts, both as discussed below.

**1.    Telcordia Did Not Waive Its Request For Prejudgment Interest By Omitting It From The Pre-Trial Order.**

Without citing a single case, Cisco asserts that Telcordia's "affirmative[] ... choice" to omit a request for prejudgment interest from the Pretrial Order "precludes it from seeking prejudgment interest ... now." (Cisco Opp. Br., D.I. 390 at 5.) But there is ample case law construing the applicable section of the Federal Rules, which Cisco does not cite, directly to the contrary. *See, e.g., Rocket Jewelry Box, Inc. v. Quality Int'l Packaging, Ltd.,* 250 F. Supp. 2d 333 (S.D.N.Y. 2003), *aff'd in part, vacated and remanded on other grounds,* 90 Fed. Appx. 543 (Fed. Cir. 2004) (non-precedential):

4

> Quality argues that Rocket waived its request for prejudgment interest by not including it in the pretrial order. However, pursuant to Rule 54(c) of the Federal Rules of Civil Procedure, the Court finds that the issue was not waived. "[E]very final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings." Fed.R.Civ.P. 54(c). The issue of prejudgment interest is collateral to a finding of damages ... and the issue is properly before the Court.

250 F. Supp. 2d at 339.[2]

There is thus no basis for Cisco's assertion that Telcordia has "waived" its entitlement to prejudgment interest by not including a request for such relief in the Pretrial Order, or otherwise.[3]

### 2. Telcordia Did Not Waive Its Claim For Prejudgment Interest By Not Presenting Evidence On That Issue To The Jury

By statute, an award of prejudgment interest is determined by the court. "Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, *together with interest and costs as fixed by the court.*" 35 U.S.C. § 284 (emphasis added); *Unisplay, S.A. v. Am. Elec. Sign Co.,* 69 F.3d 512, 517 (Fed. Cir. 1995) ("[A rate of reasonable royalty] determined by the trier of fact must be supported by relevant evidence in the

---

[2] *See also, Melvin v. UA Local 13 Pension Plan,* 236 F.R.D. 139, 144 (W.D.N.Y. 2006) (Rule 54(c) "makes it clear that the relief available to a plaintiff in federal court is not limited to what he may demand in his complaint . . . it is well established that federal courts may award prejudgment interest even when it is not demanded in the complaint"); *Eugene B. Smith & Co. v. Russek,* 212 F.2d 338 (5th Cir. 1954) (affirming award of prejudgment interest although request for interest was not asserted in amended complaint; citing Rule 54(c)).

[3] Cisco's argument that Telcordia "waived" its claim for prejudgment interest also seems strangely inconsistent with its own assertion, in its Brief in Opposition, that its damage expert Mr. Musika gave testimony relating to the calculation of such interest at the trial. (Cisco Opp. Br., D.I. 390 at 3-4.)  "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Rule 15(b), Fed.R.Civ.P.

5

record. Of course, [under 35 U.S.C. §§ 284-85,] the court may also award increased damages, attorney fees, and prejudgment interest when appropriate.") Accordingly, in the ordinary course, a prevailing patent infringement plaintiff may request prejudgment interest *from the court* after the jury returns its verdict, whether or not requested in the pleadings or pretrial order. *See, e.g., Rocket Jewelry Box v. Quality Int'l Packaging, Ltd., supra,* and other cases cited in n.2, above.

In this context, there was no need for Telcordia to discuss with Cisco before the trial whether its potential request for prejudgment interest would be presented to the Court as opposed to being tried to the jury, and Telcordia did not do so. Cisco asserts in passing that the parties agreed to seek the Court's approval that all equitable issues would be presented for binding adjudication by the jury (Cisco Opp. Br., D.I. 390 at 5 n.5), which in fact is true. But neither party ever raised the issue of prejudgment interest – as opposed to Cisco's equitable defenses of laches, equitable estoppel, and the like – in the context of that agreement, and the Court did not direct that evidence on the issue of prejudgment interest should be presented to the jury.

In short, contrary to Cisco's assertions, Telcordia never agreed that its request for an award of prejudgment interest should be determined by the jury as a stipulated, Court-ordered exception to the ordinary, statutory procedure by which prejudgment interest is *"fixed by the court."*

    **C.**    **The Evidence Establishes That Telcordia Is Entitled To Prejudgment Interest Based On The Prime Rate, Compounded Quarterly**

        **1.**    **An Award Of Prejudgment Interest Ordinarily Follows An Award Of Damages For Infringement, And The Court Has The Discretion To Award Such Interest At The Prime Rate Without Further Proof Of Telcordia's Cost Of Borrowing**

As Telcordia pointed out in its opening brief on this motion, awarding prejudgment interest is "the rule, not the exception." *Sensonics, Inc. v. Aerosonic Corp.,* 81 F.3d 1566, 1574

6

(Fed. Cir. 1996) (reversing denial of prejudgment interest).  In *Gen. Motors Corp. v. Devex Corp.*, the Supreme Court elucidated the purpose for awarding prejudgment interest:

> An award of interest . . . merely serves to make the patent owner
> whole, since his damages consist not only of the value of the
> royalty payments but also of the foregone use of the money
> between the time of infringement and the date of the judgment.

461 U.S. 648, 655-56 (1983).  Accordingly, "a court's authority to award interest is not restricted to exceptional circumstances . . . [and] should ordinarily be awarded where necessary to afford the plaintiff full compensation for the infringement." *Id.* at 653-54 (1983).[4]

The Court has wide latitude in the selection of the appropriate rate of interest. *Uniroyal, Inc. v. Rudkin-Wiley Corp.*, 939 F.2d 1540, 1545 (Fed. Cir. 1991) (holding "[a] trial court is afforded wide latitude in the selection of [prejudgment] interest rates, and may award interest at or above the prime rate").  This Court has recognized that "the prime rate best compensate[s] a patentee for lost revenues during the period of infringement". *IMX, Inc. v. Lendingtree*, 469 F.

---

[4]      In its Brief in Opposition, Cisco cites *General Motors v. Devex* for the proposition that there are "circumstances in which it may be appropriate not to award prejudgment interest" (Cisco Opp. Br., D.I. 390 at 2).  This not only tortures the overall thrust of the Supreme Court's opinion in that case, as cited in the text above, but also ignores the many other cases holding that prejudgment interest ordinarily follows a finding of infringement, as cited in Telcordia's Brief in Support dated May 30, 2007, D.I. 363 ("Telcordia Br. in Support, D.I. 363") at 6.  *See e.g., Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1574 (Fed. Cir. 1996) (holding "prejudgment interest is the rule, not the exception." (citing *General Motors*, 461 U.S. at 656-57)); *Nickson Indus., Inc. v. Rol Mfg. Co.*, 847 F.2d 795, 800 (Fed. Cir.. 1988) ("prejudgment interest shall ordinarily be awarded[.]") (quoting *General Motors*)); *Scott Paper Co. v. Moore Bus. Forms, Inc.*, 594 F. Supp. 1051, 1083 (D. Del. 1984) (Latchum, J.) (holding "prejudgment interest . . . should ordinarily be taxed . . . as part of the patentee's damage award[.]" (citing *General Motors*)); *Philips Elec. N. Am. Corp. v. Contec Corp.*, Civil Action No. 02-123-KAJ, 2004 U.S. Dist. LEXIS 13455, at *6 (D. Del. Aug. 24, 2004) (Jordan, J.) ("Prejudgment interest is ordinarily awarded in patent infringement cases[.]" (citing *Gen. Motors*)), *aff'd*, 177 Fed. Appx. 981 (Fed. Cir. 2006).

In its Brief in Opposition, Cisco fails to respond to Telcordia's citation to any of those other cases in any way.

Supp. 2d 203, 227 (D. Del. 2007) (Robinson, J.) (awarding prejudgment interest compounded

quarterly at prime rate because prime rate is the best way to compensate a patentee for lost

interest income during the period of infringement).

> Courts have recognized that the prime rate best serves [the]
> purpose [of a prejudgment interest award] because the prime rate
> represents the cost of borrowing money, which is "a better measure
> of the harm suffered as a result of the loss of the use of money over
> time." *Mars, Inc. v. Conlux USA Corp.*, 818 F. Supp. 707, 720-21
> (D. Del. 1993), aff'd, 16 F.3d 421 (Fed. Cir. 1993).

*C.R. Bard, Inc. v. Medtronic*, Civil Action No. 96-589-SLR, 1999 U.S. Dist. LEXIS 9875, at

*227 (D. Del. June 15, 1999) (Robinson, J.) (Ordering defendant to pay prejudgment interest

compounded quarterly at prime rate), *aff'd in part, vacated in part, and remanded on other

grounds*, 2000 U.S. App. LEXIS 15316 (Fed. Cir. June 29, 2000). *See also, IPPV Enter. v.

Echostar Commc'ns Corp.*, Civil Action No. 99-577-KAJ, 2003 U.S. Dist. LEXIS 3530, at *11

(D. Del. Feb. 27, 2003) (Jordan, J.) ("This court is satisfied that the appropriate prejudgment

interest rate should be an average of the short term prime lending rates[.]").

Moreover, "it is not necessary that a patentee demonstrate that it borrowed at the prime

rate in order to be entitled to prejudgment interest at that rate." *Uniroyal, Inc. v. Rudkin-Wiley

Corp.*, 939 F.2d 1540, 1545 (Fed Cir. 1991) (citation omitted), *cited and quoted in IMX, Inc. v.

Lendingtree*, 469 F. Supp. 2d at 227.

Despite these precedents, Cisco argues that Telcordia is not entitled to prejudgment

interest based on prime because it has not proved (1) "the requisite causal connection between

any borrowing and the loss of the use of the money awarded as a result of Cisco's infringement",

or (2) that "[Telcordia] would have used the $6.5 million to pay down its alleged debt." (Cisco

Opp. Br., D.I. 390 at 9.)

But the cases Cisco relies upon for this argument do not stand for the proposition Cisco

cites them for, and Telcordia has in fact submitted evidence both as to its cost of borrowing –

which Cisco seriously misquotes – and as to the use it would have made of the money if it had been received during the period of infringement, as discussed below.

> **2.** **The Cases Cisco Relies On To Support Its Argument That Proof Of A Causal Connection Between Telcordia's Cost Of Borrowing And Its Request For Prejudgment Interest Based On Prime Is A "Prerequisite" For Such An Award Do Not So Hold**

In its Brief in Opposition to this motion, Cisco cites four cases to support its argument that Telcordia is not entitled to prejudgment interest based on prime. (Cisco Opp. Br., D.I. 390 at 9-11.) But Cisco seriously mis-cites and mis-describes two of those cases, and neither of the other two held that, absent proof of a "causal connection" or that the successful plaintiff "would have used the [damage award] to pay down debt," an award of interest based on prime would constitute an abuse of the court's discretion.

First, Cisco mis-cites *Laitram Corp. v. NEC Corp.*, 115 F.3d 947 (Fed. Cir. 1997) for the proposition that Telcordia is not entitled to prime unless it proves "the requisite causal connection between any borrowing and the loss of the use of the money awarded as a result of Cisco's infringement." (Cisco Opp. Br., D.I. 390 at 9.) But *Laitram* did not hold that such proof was a *prerequisite* to an award of interest based on prime. Rather, the *Laitram* court held that, in the absence of such proof or any proof that the defendant had borrowed money at a higher rate, it was *not an abuse of discretion* for the district court to award interest at the T-bill rate, and affirmed the district court's decision on the ground that no clear error had been shown.[5]

---

[5] To the same effect are *Golight, Inc. v. Wal-Mart Stores, Inc.*, 216 F. Supp. 2d 1175 (D. Colo. 2002), and *Joy Techs., Inc. v. Flakt, Inc.*, 954 F. Supp. 796 (D. Del. 1996) (cited in Cisco Opp. Br., D.I. 390 at 10-11). In both of those cases, the district courts awarded prejudgment interest at the T-bill rate, but in neither of them did the court hold that, absent proof of a "causal connection" or that the plaintiff would have used the funds to pay down debt, an award based on prime would constitute an abuse of the court's discretion.

Accordingly, nothing in the *Laitram* case establishes that proof of a "causal connection" between Telcordia's borrowing and the loss of use of the $6.5 million award is a "prerequisite" to an award of interest based on prime. And the cases cited at p. 8 above (which Cisco ignores) hold that it is not. In any event, as detailed in Telcordia's opening brief on this motion and in section C.3 of this brief, below, there is abundant evidence here.

<div style="text-align: center;">**REDACTED**</div>

as well as evidence about the uses to which Telcordia would have put those funds if they had been available.

Second, Cisco describes *Datascope Corp. v. SMEC, Inc.*, 879 F.2d 820 (Fed. Cir. 1989), as "upholding award of prejudgment interest Treasury Bill rate [sic] rather than prime rate." (Cisco Opp. Br., D.I. 390 at 10.) This simply misstates the holding of *Datascope*. In that case, the Federal Circuit upheld an award of *post-judgment* interest at the statutory T-bill rate, and an award of *prejudgment* interest at prime. *Datascope*, 879 F.2d at 823, 829. *Datascope* thus does not support Cisco's position in any way, and in fact supports Telcordia's request for prime.

In short, Cisco's cited cases do not support its position, or contradict the cases that Telcordia has cited and relied upon above.

> **3.    During The Period After Cisco Acknowledges It Received Notice Of Infringement, Telcordia And SAIC (From Whom Telcordia Received Financial Support As SAIC's Wholly-Owned Subsidiary)**

<div style="text-align: center;">**REDACTED**</div>

Although not required under the rule of *Uniroyal, Inc. v. Rudkin-Wiley Corp.* and *IMX, Inc. v. Lendingtree, supra*, Telcordia has submitted a declaration from Joseph Giordano dated May 30, 2007, D.I. 364 ("Giordano Decl., D.I. 364") that documents Telcordia's cost of capital by means of **REDACTED** during the period of Cisco's patent infringement. The Giordano Declaration also explains how the $6.5 million would have been used, including

<div style="text-align: center;">**REDACTED**</div>

**REDACTED**

Giordano Decl., D.I. 364, paras. 3-7.

In addition, Cisco deposed Mr. Giordano on July 19, 2007, and examined him in detail

about his Declaration before submitting its Brief in Opposition to this motion. In his deposition,

Mr. Giordano confirmed the facts set forth in his Declaration showing that, during the period of

Cisco's infringement, SAIC – of which Telcordia was a wholly-owned subsidiary from 1997 to

2005, and

**REDACTED**                                    In turn, SAIC

charged Telcordia interest                        Deposition of Joseph

Giordano, July 19, 2007 ("Giordano Dep."), attached as Exhibit A, 768:16-769:24.)

Despite this proof, Cisco argues in its Brief in Opposition that Telcordia is not entitled to

prejudgment interest based on prime because (1) Telcordia itself did not borrow money during

the time it was owned by SAIC, (2) after it was sold by SAIC, Telcordia borrowed money in

2005 to finance a leveraged buyout, and (3) there is no proof that Telcordia had to borrow money

because it did not receive the $6.5 million during the period of Cisco's infringement, or that it

would have used those funds to pay down debt if it had received them at that time. (Cisco Opp.

Br., D.I. 390 at 7-10.) These arguments are answered in turn below.

First, although Telcordia itself did not borrow during the time it was owned by SAIC,

**REDACTED**                         (See Declaration of Elisa Davis executed

August 9, 2007 ("Davis Decl."), paras. 2-3.) SAIC and Telcordia were separate corporations –

parent and wholly-owned subsidiary, respectively – but maintained a consolidated balance sheet

which reflected SAIC's borrowings as well as Telcordia's costs of doing business and profits.[6]

---

[6] Cisco offers no support for its cavalier assertion that, if Telcordia's and SAIC's financial
positions were consolidated for purposes of determining the appropriateness of a prejudgment

(continued on next page)

(Davis Decl., para. 2.)  During the period from September, 2001 (by which time Cisco acknowledges that it received notice of infringement from Telcordia) to March 15, 2005 (when Telcordia was divested by SAIC),                                      REDACTED

                        REDACTED                              (Davis Decl., para. 3.)  Moreover,

SAIC (

        Giordano Dep., Exhibit A, 785:16-786:7)
                        REDACTED                              If the $6.5 million awarded by

the jury had been available to Telcordia during the period from September 2001 through March

2005, Telcordia would have been able to generate a higher cost of capital credi'

REDACTED          (Davis Decl., para. 5.)

        Upon these facts — and even if proof that Telcordia had borrowed at prime were a

prerequisite to an award of prime, which it is not — there is no basis for Cisco's argument that

Telcordia is not entitled to prejudgment interest based on prime because Telcordia *itself* did not

borrow money during the period of Cisco's infringement.

        Second, Cisco objects to Telcordia's reliance upon its borrowing in 2005, after it was

divested by SAIC, on the ground that "[t]hat debt was a result of the billion-dollar leveraged

buyout of Telcordia" from SAIC.  (Cisco Opp. Br., D.I. 390 at 9.)  But Cisco offers no reason,

and cites no precedent, for any conclusion that debt incurred to finance that transaction — a

corporate restructuring whose *bona fides* Cisco does not contest in any way — should be

_____

(continued from previous page)
interest award, Telcordia must be deemed "an alter ego of SAIC (with all the regulatory and tax
implications that would have)."  (Cisco Opp. Br., D.I. 390, at 8.)  Determining whether one
corporation is an "alter ego" of another requires consideration of a multi-factor test, of which
consolidation of financial statements *per se* is not one.  *See, e.g., United States v. Golden Acres,
Inc.*, 702 F. Supp. 1097 (D. Del. 1988), *aff'd by U.S. v. Golden Acres, Inc.*, 879 F.2d 860 (3d Cir.
1989).

considered any differently from other business debt for purposes of determining a prejudgment interest award. Cisco's *ipse dixit* is all that it offers on this point, but "[b]are allegations can not suffice to counter to controlling authority stating that prejudgment interest ordinarily should be awarded." *IMX, Inc. v. Lendingtree, supra,* 469 F. Supp. 2d at 227.

Moreover, in making this argument Cisco entirely ignores other debt financings that Telcordia has undertaken since having been divested by SAIC in 2005. In particular, Telcordia

REDACTED

Giordano Decl., D.I. 364, para. 3-4.) In addition, Telcordia has recently issued                    REDACTED

[7] (Giordano Dep., Exhibit A, 727:7-728:8.) These financings are ongoing, current obligations upon which Telcordia pays        REDACTED        (Giordano Decl., D.I. 364, para. 3; Giordano Dep., Exhibit A, 727:18-25.)

Again, upon these facts – and even if proof that Telcordia had borrowed at prime to finance business operations were a prerequisite to an award of prime, which it is not – there is no basis for Cisco's argument that Telcordia is not entitled to prejudgment interest based on prime

---

[7]    In this connection, Cisco asserts that "the Treasury Bill rate ... more closely approximates the actual interest rate Telcordia is paying now [than prime]. As Mr. Giordano testified                    REDACTED

(Cisco Opp. Br., D.I. 390 at 10 n.8 (emphasis in original).)

This seriously misstates Mr. Giordano's testimony. In fact, he testified that the rate of interest for that refinancing is LIBOR (London Interbank Offered Rate) *plus* 3.75%. (Giordano Dep., Exhibit A, at 727, Errata at 792.) In using LIBOR as a base rate, this financing is consistent with all but one of Telcordia's other current borrowings described in Mr. Giordano's Declaration (D.I. 364, para. 3). As LIBOR has ranged above 5% since mid-2006 (*Id.,* Attachment A), the effective rate of interest on this financing is in excess of *8.75%,* not 3.75% as Cisco misleadingly asserts.

13

because Telcordia borrowed money                    **REDACTED**

Third, the short answer to Cisco's argument that there is no proof that Telcordia had to

borrow money because it did not receive the $6.5 million during the period of Cisco's

infringement, or that it would have used those funds to pay down debt if it had received them at

that time, is that there is such proof.  Mr. Giordano's and Ms. Davis's Declarations show that

           **REDACTED**                              during the period of

Cisco's infringement.

            **REDACTED**                         (Giordano

Decl., D.I. 364, para. 6; Davis Decl., para. 3.)  And Mr. Giordano's and Ms. Davis's Declarations

detail the uses to which Telcordia would have put those funds,            **REDACTED**

(Giordano Decl., D.I. 364, para. 7; Davis Decl., para. 4.)

Cisco's argument on this ground simply ignores these facts.  And again, upon these facts

– and even if proof that Telcordia had to borrow because it had not received the $6.5 million

from Cisco, or of how it would have used those funds, were a prerequisite to an award of prime,

which it is not – there is no basis for Cisco's argument that Telcordia is not entitled to

prejudgment interest based on prime because Telcordia has failed to offer such proofs.

In summary, Telcordia is entitled to an award of prejudgment interest calculated at prime,

compounded quarterly, as set forth in Mr. Nawrocki's Declaration executed May 29, 2007.

Nothing in Cisco's opposition establishes that Telcordia's request for that award should be

denied.

**D.     Telcordia Is Entitled To An Accounting Of Cisco's Infringing Sales From January 31, 2007 To The Date Of Judgment**

      **1.     There Is No Basis For Concluding That The Jury Based Its Damage Award On A Lump-Sum, Paid-Up License To Cisco**

In its opposition to Telcordia's motion for an accounting, Cisco asserts that the jury's $6.5 million damage award necessarily represents a lump-sum royalty because its damage expert, Terry Musika, testified that the parties would (in his opinion) have agreed on a paid-up license through the remaining term of the '633 and '763 patents at the time of the hypothetical negotiation.  (D.I. 390 at 3-4, 11.)  On that basis, Mr. Musika calculated Telcordia's lost royalties as $5.0 million for both patents ($4.6 million for the '763 patent and $400,000 for the '633), adjusting future payments to present value.  *Id.*  Therefore, Cisco asserts that the jury's $6.5 million award "is best understood to have granted Cisco a fully-paid up license" [sic] because its award is so close to Mr. Musika's $5.0 million calculation (D.I. 390 at 11; Trial Testimony May 8, 2007, D.I. 359, at 1908:16-1909:13), and argues that Telcordia is not entitled to an accounting.[8]

But that was not the only evidence on damages offered by Mr. Musika, and it was not what Cisco argued in its closing.  Indeed, Mr. Musika also gave testimony on an alternative theory based on running royalties, not a paid-up license, that is even closer to the jury's award.  Specifically, Mr. Musika gave testimony on what the appropriate damages would be using a running royalty through the last date in 2007 for which Cisco's sales data was available, using a rate and base that Mr. Musika opined was correct.  (Trial Testimony, May 8, 2007, D.I. 359 at

---

[8] Even if Cisco were correct that the jury awarded it a lump-sum, paid-up license as of the date Cisco acknowledges it received notice of infringement – which, for the reasons set forth above, it is not – it could not claim the benefit of that license until it has paid the judgment amount, which it has not done.  *Fuji Photo Film, Co. v. U.S. Int'l Trade Comm'n*, 474 F.3d 1281, 1294 (Fed. Cir. 2007).

1910:16 - 1914:8.) He calculated Telcordia's damages using Telcordia's expert's methodology (i.e., a running royalty, not a paid-up license) but using his own royalty base and rate instead of Telcordia's. *(Id.)* On that basis, Mr. Musika's calculation resulted in a damage figure of $5.25 million for the '763 patent alone (Trial Testimony, May 8, 2007, D.I. 359, at 1913:8-1914:4), which is closer to the jury's $6.5 million award than his $5.0 million lump sum figure for both patents.

For this alternative, running royalty analysis, Mr. Musika began with the $70.0 million damages assessment (rounded) for the '763 patent offered by Telcordia's expert, Mr. Nawrocki, which was based on a running royalty only through 2007 (Trial Testimony, May 8, 2007, D.I. 359, at 1910:10-16) and reduced that figure by $28.0 million to account for time period differences, and by $21 million to account for excluding foreign sales, and by an additional $15.7 million to account for the difference between Telcordia's expert's proposed 2% royalty rate and his own 0.5% rate for the '763 patent. The result of Mr. Musika's calculations was a damages amount of $5.25 million for the '763 patent. *(Id.* at 1913:23-1914:4.)

Mr. Musika thus reduced Mr. Nawrocki's $70 million (rounded) damage figure for the '763 patent to $5.25 million, i.e., multiplying it by 0.075 based on his reductions for his different base and rate. If Mr. Nawrocki's $4.7 million (rounded) damage figure for the '633 patent is reduced on the same basis, i.e., by multiplying it by 0.075, the resulting running royalty for the '633 patent is $352,500. If the resulting $352,000 is added to Mr. Musika's $5.25 million for the '763 patent, the total comes to $5,602,500, or more than six hundred thousand dollars closer to the actual jury award than his own calculation of $5 million in total damages on the basis that Cisco says represents a paid-up license.

Alternatively, if the jury applied Mr. Musika's approach to Mr. Nawrocki's $4.7 million (rounded) damage figure for Cisco's infringement of the '633 patent, the total of the two patents

16

is effectively the amount the jury awarded. Mr. Nawrocki arrived at $4.7 million based on a running royalty at 2% and included foreign sales. If that amount is reduced using Mr. Musika's royalty rate of 1%, the reduction brings it to $2.35 million. If it is further reduced to exclude foreign sales as Mr. Musika suggested it should be, it is further reduced to $1,175,000. The sum total of $1,175,000 for the '633 patent and $5.25 million for the '763 patent is $6.42 million, which when rounded is the amount of the jury award.

In short, Mr. Musika - Cisco's own expert - himself demonstrated at the trial that it is impossible to tell whether the jury award represents a lump-sum, paid-up license (as Cisco argues, although his calculation of that lump sum is more than a million dollars short of the amount of the jury award), or instead reflects the jury's acceptance of Mr. Nawrocki's and Telcordia's running royalty analysis applied to Mr. Musika's royalty base and rate, or some compromise or variation of the two. Mr. Musika's own alternative analysis, moreover, is more consistent with the latter running royalty approach than with a paid-up license, and in no way supports Cisco's present assertion that the jury verdict is "best understood to have granted Cisco a fully-paid up license" [sic] (D.I 390 at 11.)

Indeed, that was not even what Cisco's counsel argued in his closing (Trial Tr. May 9, 2007, at 2256, l. 16- 2267, l. 5), and, in the absence of an express jury interrogatory stating that the $6.5 million represented a paid-up license fee for Cisco's use during the life of the patents, the jury's general verdict is consistent with the evidence of a running royalty and the general rule in patent cases that "damages are awarded as compensation for *past* infringement." *See, e.g., Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc,* 750 F.2d 1552, 1565 (Fed. Cir. 1984) (emphasis added); *see generally,* 9 Moore's Federal Practice, § 49.20(6)(b) at 49-58 (3rd ed. 2007) (courts must make every effort to harmonize verdict and interrogatory answers); *Loughman v. Consol. Pennsylvania Coal Co.,* 6 F.3d 88, 104 (3d Cir. 1993) (district court should

render a judgment that harmonizes verdict with evidence). *See also,* Telcordia's Reply Brief in support of its motion for entry of an injunction at section II.A, citing cases holding that, where the jury returns a general verdict on damages, the Court has no way to interpret the jury's underlying intent, and distinguishing cases cited by Cisco in opposition to entry of an injunction. Telcordia respectfully incorporates the discussion at that section of its Reply Brief in support of its motion for entry of an injunction as though fully set forth herein.

There is thus no basis for Cisco's argument that the jury has awarded it a paid-up license, and an accounting of royalties on its infringing sales from January 31, 2007 to the date of judgment should therefore be awarded.[9]

### 2. Cisco's Argument That Damages For Its Infringing Sales From January 31, 2007 To The Date Of Judgment Cannot Be Determined In An Accounting Is Groundless

Cisco's only other ground for opposing Telcordia's request for an accounting is that

> Telcordia's opening brief is completely silent as to what 'infringing sales' should be included within that accounting and what royalty rate should apply ... Those questions are threshold questions that must be meaningful for a request for an accounting to be meaningful, particularly because the jury was presented with extremely divergent views as to the appropriate royalty base ... and as to the appropriate royalty rate. Telcordia's silence on these issues renders its request for an accounting meaningless.

(Cisco Opp. Br., D.I. 390 at 12.)[10]

---

[9] In any event, if Cisco were correct that the jury awarded it a lump-sum, paid-up license as of the date Cisco acknowledges it received notice of infringement, prejudgment interest would have to be calculated from that date in its entirety, rather than based on royalty payments over time. The appropriate prejudgment interest award would accordingly be higher (*see* Nawrocki Reply Decl., para. 6) and, if the Court should determine that the jury has awarded Cisco a paid-up license, Telcordia requests prejudgment interest in that amount.

[10] Cisco's professed puzzlement, in the passage quoted above, at the royalty base and rate the jury applied appears oddly inconsistent with its confident assertion, in the context of its claim that the jury has already awarded prejudgment interest, that it is "indisputable" that the jury adopted Mr. Musika's damage theory in this case. (Cisco Opp. Br., D.I. 390 at 3.)

Cisco's "meaningful questions" simply beg the question, because those are among the issues to be resolved by the accounting. Cisco recognizes as much at p. 12, n. 10 of its Brief in Opposition, by suggesting that the parties may submit their respective proposals for the applicable royalty base and rate for an accounting. But that these questions must be resolved is no reason for Cisco to assert that an accounting should not be held.

## IV.    Conclusion

Cisco has failed to show any reason why Telcordia's motion for prejudgment interest – which is "the rule not the exception," *Sensonics, Inc. v. Aerosonic Corp., supra* – should not be granted. There is no basis for concluding that the jury award already includes prejudgment interest, and the amount of that award is inconsistent with Cisco's argument to that effect. As a matter of law, Telcordia has not "waived" its entitlement to prejudgment interest, and Telcordia never agreed that its request for such relief should be determined by the jury. And the evidence shows that (even though such a showing is not required to support an award of prejudgment interest based on prime) Telcordia's cost of borrowing, both for itself and on its consolidated balance sheet with SAIC, was consistent with an award of interest based on prime rather than the T-bill rate.

Telcordia's motion for prejudgment interest based on prime, compounded quarterly, therefore should be granted.

Likewise, Cisco has shown no reason why royalties should not be calculated and awarded to Telcordia for Cisco's infringing sales from January 31, 2007 to the date of judgment. There is no basis to conclude, as Cisco argues, that the jury awarded a lump-sum, paid-up license, and the amount of the jury's award is inconsistent with that conclusion. Nor do Cisco's protestations that the parties may have to present evidence in support of an accounting provide any reason not

19

to hold Cisco responsible for its infringement. Telcordia's motion for an accounting therefore should also be granted.

ASHBY & GEDDES

/s/ Tiffany Geyer Lydon

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware  19899-1150
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Of Counsel:*

Donald R. Dunner
Steven M. Anzalone
Griffith B. Price, Jr.
James T. Wilson
John M. Williamson
FINNEGAN, HENDERSON, FARABOW,
   GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C.  20005
(202) 408-4000

*Attorneys for Plaintiff/Counterclaim Defendant
Telcordia Technologies, Inc.*

Dated:  August 13, 2007

183140.1

20

# EXHIBIT A

# REDACTED