IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TELCORDIA TECHNOLOGIES, INC., ) <br> ) <br> Plaintiff/Counterclaim Defendant, ) <br> ) <br> v. ) <br> ) <br> CISCO SYSTEMS, INC., ) <br> ) <br> Defendant/Counterclaim Plaintiff. ) | Civil Action No. 04-876-GMS |

## CISCO'S MOTION FOR STAY OF
## ACCOUNTING AND ONGOING ROYALTY PENDING APPEAL

Apparently disappointed by what it considers too small a verdict, plaintiff Telcordia has now appealed this Court's judgment, including a series of orders relating to damages. Cisco subsequently cross-appealed.

Because the damages amount is directly at issue on appeal, Cisco requests that the accounting and calculation of an ongoing royalty be stayed pending appeal. The issues raised on appeal may meaningfully alter the amount of any accounting and the appropriate amount of an ongoing royalty, and there is a real possibility that whatever proceedings occur now will be mooted altogether or will at least need to be re-done following the appeal. Indeed, Telcordia itself has stated that it will seek reversal of this Court's orders limiting the number of accused products and limiting Telcordia's damages *in limine*—orders that are at the heart of any accounting or ongoing royalty calculation.

Given the potential that these challenges—and Cisco's own appeal—may alter the award to Telcordia, a stay is appropriate to avoid the expenditure of time and effort by the parties in negotiating these complicated and uncertain issues now, and to eliminate the risk that the

Court will need to resolve disputes between the parties that arise during the course of these discussions (only to have to address those or other disputes again after an appeal).

This is particularly true because this efficiency can be achieved without any harm to Telcordia at all. Not only is Cisco unquestionably "good for" any judgment, but Cisco has also agreed to secure a sum sufficient to cover the jury's award plus estimated pre- and post-judgment interest. All that Cisco is seeking is a stay of an accounting for interim sales since the judgment was entered and of calculation of an ongoing royalty. Deferring calculation of these amounts will not pose any prejudice to Telcordia. The dollar amount for an accounting and ongoing royalty will be small, both in absolute terms and relative to the verdict.[1] And, to provide Telcordia additional assurance that the final judgment amount will be easily and quickly paid after determination of the total sum due Telcordia, if any, following appeal, Cisco will even secure an additional $500,000 to cover the potential value of an accounting and ongoing royalty.

Under these circumstances, Cisco respectfully submits that a stay of accounting and calculation of an ongoing royalty pending appeal[2] is in the interests of judicial economy and efficiency for the parties.

---

[1] In contrast to the six years of damages for both patents that resulted in the $6.5 million verdict, the accounting will only cover approximately one year of sales of the '763 patent and approximately two years of sales for the '633 patent. And because the '763 patent expired a year ago, any ongoing royalty will cover only the '633 patent, a patent which covers products that were being phased out even as of the trial in this case.

[2] Cisco intends to secure a sum sufficient to cover the judgment (jury's award plus estimated pre- and post-judgment interest), the approval of which will automatically stay the execution of judgment. See Fed. R. Civ. P. 62 (a), (d). This motion is necessary because Rule 62 does not specifically provide an automatic stay in the particular circumstance of an interim accounting. Id.

I.  **BACKGROUND**

On January 6, 2009, the Court issued an order on post-trial motions in which it declined to overturn the jury's $6.5 million verdict of willful infringement of the '763 and '633 patents and upheld the validity of the patents-in-suit. D.I. 420 [January 6, 2009 Memorandum and Order]. The Court awarded prejudgment interest, ordered the parties to meet and confer regarding an accounting of Cisco's infringing sales between January 31, 2007 and the date of the judgment, and further ordered the parties to confer regarding the terms of a "going forward" reasonable royalty on the '633 patent. *Id.* at 34-35. On January 16, 2009, Telcordia filed a Notice of Appeal, specifying a non-exclusive list of seven of this Court's orders as the basis for its appeal. D.I. 421 [Telcordia's Notice of Appeal]. On January 29, 2009, in response, Cisco filed a cross-appeal. D.I. 423 [Cisco's Notice of Appeal].

In parallel, the parties began discussing the Court's instruction that they engage in a negotiation to select assumptions about how the jury calculated the damage award to attempt to determine the amount of the accounting and the appropriate terms for an ongoing royalty on the '633 patent. As part of those discussions, Telcordia requested that Cisco produce updated sales and revenue information for the accused products from January 31, 2007 to the present, including a database of sales orders reflecting 20 different data fields for each order. *See* Exhibit A [January 22, 2009 letter from G. Price, Jr.]. Beyond this information, the parties also discussed that it might be necessary to negotiate an applicable rate and base for the accounting and for an ongoing royalty on future sales. *Id.*

Cisco was aware that the outcome of the parties' appeal might well fundamentally alter the terms of an accounting or ongoing royalty and thus waste what will be very substantial efforts involving discovery, debate, and—given the lack of information as to what the jury did—

dispute to determine all the necessary terms. Accordingly, Cisco proposed that the parties defer the negotiations on an accounting and terms for an ongoing royalty pending appeal. Telcordia rejected Cisco's proposal without good explanation. *See* Exhibit B [February 4 and 10, 2009 emails between D. Dunner and E. Reines]. This motion followed.

II. **THE APPEAL MAY MOOT OR MEANINGFULLY ALTER THE JUDGMENT AMOUNT, INCLUDING THE AMOUNT OF ANY ACCOUNTING AND THE TERMS OF AN ONGOING ROYALTY**

The Court's pretrial orders on a host of complex issues shaped the scope of proof at trial on not only the ultimate liability questions but also the rate and base for the appropriate reasonable royalty damages, if any. Many of these rulings are now on appeal. Absent a stay, should the Federal Circuit vacate or reverse even portions of these orders, the time and effort necessary to resolve the outstanding damages issues now may have been irrevocably and needlessly misspent.

This possibility exists in many cases in which an appeal is taken. But it is an even greater consideration where, as here, the party that "prevailed" has affirmatively appealed the judgment. *See Sealover v. Canada*, 806 F. Supp 59, 62 (M.D. Pa. 1992) (granting automatic stay without supersedeas bond in accord with "the long standing rule of law which precludes a litigant from accepting all or a substantial part of the benefit of a judgment while simultaneously challenging unfavorable aspects of that judgment on appeal") (internal quotations omitted).

Here, Telcordia has itself appealed, among other things:

(1) the Court's oral Order of January 5, 2006 limiting the scope of Telcordia's infringement allegations;

(2) the Court's claim construction order [D.I. 179];

(3) the Court's orders precluding Telcordia from serving infringement and damages expert reports regarding the '306 patent [D.I. 196, 209];

4

(4)   the Court order on the parties' motions *in limine* [D.I. 335];

(5)   the Court's order granting summary judgment of noninfringement of the '306 patent [D.I. 341]; and

(6)   the Court's post-trial order denying enhancement of damages, award of attorneys' fees, and injunctive relief but awarding prejudgment interest, ordering an accounting, and ordering conferral regarding a "going forward" reasonable royalty, as discussed above. [D.I. 420].

*See* D.I. 421 [Telcordia's Notice of Appeal].

It goes without saying that reversal of the summary judgment of non-infringement of Telcordia's '306 patent, enhancement of damages for willfulness, or grant of attorneys fees would fundamentally change the award to Telcordia. But more importantly for this motion, Telcordia's appeal also has the potential to meaningfully alter the amount of any accounting and the terms of an ongoing royalty *even if* the liability findings on each of the three patents-in-suit remain unaltered on appeal. Indeed, Telcordia has expressly stated its intention to seek reversal of the Court's order limiting the number of accused products and its order limiting Telcordia's damages request *in limine*. *See* Exhibit C [Telcordia's Docketing Statement to Federal Circuit] ("Relief sought on appeal: Reversal of claim construction regarding one of three patents-in-suit, summary judgment of noninfringement and related evidentiary rulings, orders limiting accused products, orders limiting damages base, order declining to award attorney fees or increase damages due to willful infringement, and remand."); ("Brief statement of the issues to be raised: Whether the district court erred . . . in issuing discovery and evidentiary rulings precluding Telcordia from pursuing infringement claims against all infringing products and limiting damages base . . . ."). Should Telcordia prevail on any one of these issues on appeal, there is a substantial likelihood that the parties would be back before this Court re-doing the accounting and re-negotiating an ongoing royalty.

This possibility is compounded by the fact that Cisco has also appealed. *See* D.I. 423 [Cisco's Notice of Appeal]. In fact, to the extent Cisco pursues an appeal from the Court's denial of judgment as a matter of law regarding validity and infringement of the '763 and '633 patents, the liability finding against Cisco may be eliminated altogether.[3]

Taken together, the questions on the merits encompassed by the parties' appeals counsel in favor of granting Cisco's motion for a stay of accounting and calculation of an ongoing royalty to avoid the inefficient expenditure of resources on issues that may be meaningfully affected by any appellate decision. *See Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 897 F.2d 511, 512, 516 (Fed. Cir. 1990) (citing *Hilton v. Braunskill*, 481 U.S. 770, 776) (granting stay pending appeal); *Itron, Inc. v. Benghiat*, 2003 WL 22037710, at *16 (D. Minn. 2003) (staying an accounting pending appeal "[t]o avoid potentially unnecessary expenditures of time and money in preparing such an accounting").

## III. TELCORDIA WILL NOT BE HARMED BY A STAY

Cisco's motion for a stay pending appeal finds further support in the fact that Telcordia would suffer no harm were the Court to grant Cisco's motion.

At the outset, there is little question that Cisco could easily satisfy any judgment against it. Of course, the Court need not take Cisco's word for this—Telcordia itself repeatedly touted Cisco's secure financial condition during this case, even making it one of Telcordia's central themes at trial. *See, e.g.*, D.I. 358 [May 9, 2007 Trial Tr.] at 2180:15-16 ("[Cisco's] commercial success is unparalleled, three and a half billion dollars worth of sales . . . ."); *id.* at 2170:1-6 ("[S]ales under the '763 patent . . . are almost astronomical, $3.5 billion . . . ."). Under

---

[3] This is not a hypothetical scenario. The Court has already determined that "[t]he issues of infringement and invalidity were extremely close." D.I. 420 [January 6, 2009 Memorandum and Order] at 31.

these circumstances, any suggestion by Telcordia that there is a risk that Cisco would somehow be unable to satisfy the total judgment amount after appeal—including the amount of an accounting and ongoing royalty—is simply not credible.

In any event, to avoid even a dispute on this issue, Cisco has agreed to secure the existing judgment, together with estimated pre- and post-judgment interest, during the pendency of the appeal.[4] And, although the amount of any accounting and ongoing royalty will be very small—both because the period for an accounting is significantly shorter than the damages period that lead to the $6.5 million and because the '763 patent expired a year ago—Cisco has also gone so far as to agree to secure an additional $500,000 to provide Telcordia with even greater security. Should Telcordia prevail, that sum would be applied towards the accounting or ongoing royalty, if any, following appeal.

## IV. CONCLUSION

For the reasons set forth above, Cisco respectfully requests that the Court grant its motion for a stay of accounting and proceedings related to an ongoing reasonable royalty pending appeal.

---

[4] Cisco is in discussions with Telcordia regarding the specific instrument—supersedeas bond or an escrow account—that will be used to secure these funds. Once the parties reach agreement on the form and terms of security, Cisco will move the Court for approval of the bond or escrow, which approval will trigger an automatic stay of execution of judgment. *See* Fed. R. Civ. P. 62(d).

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ Jack Blumenfeld
Jack B. Blumenfeld (#1014)
1201 North Market Street
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com

*Attorneys for Defendant Cisco Systems, Inc.*

*Of Counsel*:

Matthew D. Powers
Edward R. Reines
Jessica L. Davis
Sonal N. Mehta
Thomas B. King
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
(650) 802-3000

February 23, 2009

## **RULE 7.1.1 CERTIFICATE**

I hereby certify that the subject of the foregoing motion has been discussed with counsel for the plaintiff and that we have not been able to reach agreement.

                         _____
                         Jack B. Blumenfeld (#1014)

## CERTIFICATE OF SERVICE

I certify that on February 23, 2009 I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing to:

>Steven J. Balick
>John G. Day
>Tiffany Geyer Lydon
>ASHBY & GEDDES

I further certify that I caused copies of the foregoing document to be served on February 23, 2009 upon the following in the manner indicated:

**BY HAND AND ELECTRONIC MAIL**

Steven J. Balick, Esquire
John G. Day, Esquire
Tiffany Geyer Lydon, Esquire
ASHBY & GEDDES
500 Delaware Avenue, 8th Floor
Wilmington, DE  19801

**BY ELECTRONIC MAIL**

Donald Dunner, Esquire
John M. Williamson, Esquire
York Faulkner, Esquire
FINNEGAN, HENDERSON, FARABOW,
    GARRETT & DUNNER
901 New York Avenue
Washington, DC  20001

/s/ Jack B. Blumenfeld
Jack B. Blumenfeld (#1014)