IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TELCORDIA TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff/Counterclaim Defendant, | ) | Civil Action No. 04-876-GMS |
| | ) | |
| v. | ) | |
| | ) | |
| CISCO SYSTEMS, INC., | ) | |
| | ) | |
| Defendant/Counterclaim Plaintiff. | ) | |

**TELCORDIA'S BRIEF IN OPPOSITION
TO CISCO'S MOTION FOR STAY OF ACCOUNTING
AND ONGOING ROYALTY PENDING APPEAL**

                                                  ASHBY & GEDDES
                                                  Steven J. Balick (I.D. #2114)
                                                  John G. Day (I.D. #2403)
                                                  Tiffany Geyer Lydon (I.D. #3950)
                                                  500 Delaware Avenue, 8th Floor
                                                  P.O. Box 1150
                                                  Wilmington, DE 19899
                                                  (302) 654-1888
                                                  sbalick@ashby-geddes.com
                                                  jday@ashby-geddes.com
                                                  tlydon@ashby-geddes.com

                                                  *Attorneys for Plaintiff/Counterclaim Defendant*
                                                  *Telcordia Technologies, Inc.*

*Of Counsel:*

Donald R. Dunner
Steven M. Anzalone
Griffith B. Price, Jr.
James T. Wilson
John M. Williamson
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, L.L.P.
901 New York Ave., N.W.
Washington, D.C. 20001
(202) 408-4000

Dated: March 12, 2009

{00280974;v1}

# TABLE OF CONTENTS

I. INTRODUCTION ..........................................................................................................1

II. CONTRARY TO CISCO'S CONTENTIONS, TELCORDIA WILL BE
PREJUDICED BY A STAY OF THE ACCOUNTING .................................................2

    A. Economic prejudice ............................................................................................3

    B. Evidentiary prejudice ..........................................................................................4

    C. Prejudice in settlement negotiations ...................................................................5

III. CONTRARY TO CISCO'S CONTENTIONS, IT IS NOT AT ALL CLEAR
THAT THE APPEAL WILL "FUNDAMENTALLY ALTER" THE
RESULTS OF THE ACCOUNTING..............................................................................6

IV. THE CASES CISCO CITES DO NOT SUPPORT ITS REQUEST FOR A
STAY OF THE ACCOUNTING IN THIS CASE .........................................................10

V. CONCLUSION..............................................................................................................13

# TABLE OF AUTHORITIES

## FEDERAL CASES

*BASF Catalysts, LLC v. Aristo, Inc.*,
   No. 2:07-cv-222, 2009 WL 523123 (N.D. Ind. March 2, 2009) ............................................ 7, 9

*In re Calmar*,
   854 F.2d 461 (Fed. Cir. 1988) ............................................................................................ 11

*Itron, Inc. v. Benghiat*,
   2003 WL 22037710 (D. Minn. 2003) ............................................................................. 12, 13

*Johns Hopkins University v. CellPro*,
   160 F.R.D. 30 (D. Del. 1995) ......................................................................................... 6 n.3, 7

*Paice LLC v. Toyota Motor Corp., et al.*,
   504 F.3d 1293 (Fed. Cir. 2006) ............................................................................................ 9 n.4

*MGM Well Serv., Inc. v. Mega Lift System, LLC*,
   No. H-05 1634, 2007 WL 2021609 (S.D. Tex. July 10, 2007) ............................................ 10 n.5

*R.E. Serv. Co., Inc., v. Johnson & Johnston Assoc., Inc.*, Number C 92-20672 RPA/PVT,
   1995 WL 138545 (N. D. Cal. March 27, 1995) ..................................................................... 6, 7

*Sealover v. Canada*,
   806 F. Supp. 59 (M.D. Pa. 1992) .................................................................................... 11, 12

*Standard Havens Prods., Inc. v. Gencor Indus., Inc.*,
   897 F.2d 511 (Fed. Cir. 1990) ................................................................................................ 12

## FEDERAL STATUTES AND RULES

28 U.S.C. § 1292(c)(2) ................................................................................................................ 11

28 U.S.C. § 1961 ........................................................................................................................... 3

Fed. R. Civ. P. 62(a)(2) ........................................................................................................ 10, 11

Fed. R. Civ. P. 62(d) ........................................................................................................ 10 n.5, 11

I.  **INTRODUCTION**

As it did both at trial and in opposing Telcordia's motion for pre-judgment interest and an accounting, Cisco attempts to paint Telcordia as overreaching – this time because it has appealed from certain adverse orders of this Court, while declining to consent to a stay of its hard-won right to an accounting and ongoing royalty for Cisco's continuing infringement.[1]

But it is Cisco, not Telcordia, that is the adjudicated wrongdoer in this action – guilty of willful infringement by the jury's verdict, which the Court has declined to disturb on Cisco's post-trial motion. It is Telcordia, not Cisco, that has for *well over a decade* been deprived of the benefit of moneys that Cisco should have paid for its use of Telcordia's patented inventions. And it is Cisco, not Telcordia, that now argues that even the determination of the full dollar value of judgment on the jury's verdict should be deferred for *at least* another year, perhaps more, instead of proceeding with the Court-ordered accounting now. In fairness, Telcordia should not be required to wait still longer even to learn what the full dollar value of that judgment will be.

On these facts, Cisco has failed to meet its burden of showing that the final accounting of Telcordia's damages for Cisco's infringement of the '763 and '633 patents should now be stayed. Contrary to Cisco's contentions, it is clear that Telcordia would be prejudiced, both economically and in this litigation, by a further long delay in assessing the full value of its

---

[1] D.I. 426, Motion for Stay of Accounting and Ongoing Royalty Pending Appeal dated Feb. 23, 2009 ("Motion"), at pp. 1, 4:

> "Apparently disappointed by what it considers too small a verdict, plaintiff Telcordia has now appealed this Court's judgment…
> \* \* \*
> Cisco proposed that the parties defer [the Court-ordered accounting, but] Telcordia rejected Cisco's proposal without good explanation."

judgment for that infringement. Granting Cisco's motion would *inevitably* delay the date on which Telcordia would first be able to execute on the judgment in Telcordia's favor if it is affirmed in whole or any part, resulting in further financial loss to Telcordia – even if, as Cisco offers, it posts security for the full *estimated* value of that judgment. And to counter this adverse impact upon Telcordia, Cisco makes *no showing*, and does not even suggest, any prejudice that *it* might suffer as a direct consequence of conducting the accounting now.

Likewise contrary to Cisco's contentions, it is by no means certain that the outcome of the appeal is likely to require a "do-over" of an accounting on that judgment. (It is certain, however, that no outcome involving the '306 patent issues that have been appealed will affect the jury's damage verdict in any way.) Indeed, unless Cisco succeeds in convincing the Federal Circuit that both the '633 *and* '763 patents are invalid or not infringed, there is no reason to believe that conducting the accounting now would be completely futile, and the cases Cisco cites do not support its argument that, under these circumstances, the Court-ordered accounting should be stayed.

For all these reasons, Telcordia submits that Cisco's motion for a stay should be denied.

## II. CONTRARY TO CISCO'S CONTENTIONS, TELCORDIA WILL BE PREJUDICED BY A STAY OF THE ACCOUNTING

In its Brief in support of this motion, Cisco asserts that Telcordia will "suffer no harm" if the Court grants its motion for a stay. (Motion at 6.) But in support of that assertion, Cisco states only that it is "good for" any judgment and that it will secure the existing judgment, together with estimated pre- and post-judgment interest and "an additional $500,000 to cover the potential value of an accounting and ongoing royalty." (*Id.*, at pp. 2, 6-7.)

Cisco thus ignores (1) the economic prejudice to Telcordia that will *inevitably* result from further delays in finalizing and executing on any money judgment in this action, (2) the danger

of evidentiary prejudice that may result from additional months if not years of such delays, and (3) the impediment to possible compromise and settlement of this action, and the inherent unfairness to Telcordia, that would result from keeping Telcordia in ignorance of the full value of the judgment in its favor.

### A. Economic prejudice

Contrary to Cisco's assertions, it is *inevitable* that Telcordia will suffer economic prejudice if Cisco's motion for a stay is granted and the judgment in Telcordia's favor is thereafter affirmed, either in whole or in part, on the pending appeal. In that event, the accounting will remain to be completed *after remand*, and the resulting delay before Telcordia can execute on its judgment will deprive it still longer of the use and benefit of moneys that it should have received from Cisco long ago. Although the amount of the judgment will bear interest, the difference between the statutory rate of post-judgment interest, 28 U.S.C. § 1961, and Telcordia's interest paid on capital or return on invested capital will be a direct, un-recoverable out-of-pocket loss.

Ignoring this reality, Cisco argues that the accounting can be deferred "without any harm to Telcordia at all" because (1) Cisco "unquestionably" has the ability to satisfy "any" judgment and (2) it has "agreed to secure a sum sufficient to cover the jury's award plus estimated pre- and post-judgment interest." (Motion at 2.) Neither of these arguments is convincing.

First, given the current economic circumstances prevailing in the United States and around the world – resulting in the financial collapse of major companies that seemed invulnerable only a year or two ago – Telcordia should not be required to await determination of the full value of its judgment, and prompt payment of that amount upon resolution of the appeal, based simply on Cisco's word that it is "good for" the amount potentially involved.

of evidentiary prejudice that may result from additional months if not years of such delays, and (3) the impediment to possible compromise and settlement of this action, and the inherent unfairness to Telcordia, that would result from keeping Telcordia in ignorance of the full value of the judgment in its favor.

### A. Economic prejudice

Contrary to Cisco's assertions, it is *inevitable* that Telcordia will suffer economic prejudice if Cisco's motion for a stay is granted and the judgment in Telcordia's favor is thereafter affirmed, either in whole or in part, on the pending appeal. In that event, the accounting will remain to be completed *after remand*, and the resulting delay before Telcordia can execute on its judgment will deprive it still longer of the use and benefit of moneys that it should have received from Cisco long ago. Although the amount of the judgment will bear interest, the difference between the statutory rate of post-judgment interest, 28 U.S.C. § 1961, and Telcordia's interest paid on capital or return on invested capital will be a direct, un-recoverable out-of-pocket loss.

Ignoring this reality, Cisco argues that the accounting can be deferred "without any harm to Telcordia at all" because (1) Cisco "unquestionably" has the ability to satisfy "any" judgment and (2) it has "agreed to secure a sum sufficient to cover the jury's award plus estimated pre- and post-judgment interest." (Motion at 2.) Neither of these arguments is convincing.

First, given the current economic circumstances prevailing in the United States and around the world – resulting in the financial collapse of major companies that seemed invulnerable only a year or two ago – Telcordia should not be required to await determination of the full value of its judgment, and prompt payment of that amount upon resolution of the appeal, based simply on Cisco's word that it is "good for" the amount potentially involved.

Second, although Cisco assures the Court, without any supporting proof, that "[t]he dollar amount [of the] accounting and ongoing royalty will be small, both in absolute terms and relative to the verdict" (Motion at 2), all evidence to corroborate or contradict that assurance is exclusively within Cisco's possession. Telcordia should not be required to take on faith Cisco's assertion that its infringing sales from January 31, 2007 to the date of judgment have been "small," or its suggestion that its products covered by the '633 patent have now been fully "phased out." (Motion at 2, n.2.) Telcordia has no way of knowing whether the amount of security Cisco may offer will be adequate, and as the judgment creditor there is no reason why it should be required to guess.

In short, a stay will result in economic prejudice to Telcordia that neither Cisco's arguments to the contrary nor its offer of "full security" will avoid.

**B.     Evidentiary prejudice**

Likewise, staying the accounting would subject Telcordia to the risk of evidentiary prejudice through the potential loss of records or fading memories relating to Cisco's infringing sales. The period of delay if Cisco's motion for a stay is granted may prove to be well over a year, and there is no reason in fairness and justice why Telcordia should be subject to even the possibility that records needed for the accounting may disappear. In the same way, employees may leave or retire, as was the case with at least one key Cisco witness at trial (Robert Barr, Esq., formerly Vice President of Intellectual Property at Cisco) and another former Cisco employee who had been centrally involved in settlement discussions between the parties but has since departed (Michael J. Ritter, Esq., formerly Senior Counsel, Intellectual Property at Cisco). Memories may also fade, thus threatening the availability of information that may be relevant to negotiation of an ongoing royalty for Cisco's continuing infringement.

Evidentiary prejudice, like economic prejudice, to Telcordia strongly militates against granting Cisco's motion for a stay.

### C.  Prejudice in settlement negotiations

Obviously, all records of Cisco's infringing sales from January 31, 2007 to the date of judgment, and all evidence of its projections of continuing infringing sales from the date of judgment to the date of expiration of the '633 patent in 2012, are exclusively in Cisco's possession and control. Telcordia has no access to those records or projections, and it is a fundamental premise of Cisco's motion that none of them should be required to be produced until after the appeal.

But this is not merely a matter of keeping Telcordia in ignorance of facts that are irrelevant to the appeal. Rather, it imposes a clear disadvantage on Telcordia in any mediation or other settlement discussions that may take place. It would be manifestly unfair to require Telcordia to attempt to assess the total value of its judgment without access to the information that will be developed in the accounting.

There is no reason why settlement negotiations should, or even can, be delayed until after the resolution of the appeal. Pursuant to the Appellate Mediation Program Guidelines of the Court of Appeals for the Federal Circuit, that Court's Mediation Officer has contacted counsel for the parties to initiate preparations for mandatory mediation.[2] Without knowing the value of its judgment, however, Telcordia will be at a clear disadvantage in that proceeding. Rather than

---

[2] *See* e-mail message dated February 26, 2009, from James M. Amend, Esq., Chief Circuit Mediator for the Court of Appeals for the Federal Circuit, to counsel for Telcordia and Cisco (attached as Exhibit A).

requiring Telcordia to "shoot in the dark" in settlement negotiations, Cisco's motion for a stay should be denied.[3]

For all these reasons, Telcordia respectfully submits that in view of the prejudice it will likely suffer if Cisco's motion for a stay is granted, that motion should be denied and the accounting should proceed forthwith. *Cf. R.E. Serv. Co., Inc.,v. Johnson & Johnston Assoc., Inc.*, No. C 92-20672 RPA/PVT, 1995 WL 138545 (N. D. Cal. March 27, 1995) (motion to stay damages trial pending appeal denied because there was more than a "fair possibility" that the stay would prejudice the plaintiff and delay its receipt of just compensation from an adjudicated willful infringer).

## III. CONTRARY TO CISCO'S CONTENTIONS, IT IS NOT AT ALL CLEAR THAT THE APPEAL WILL "FUNDAMENTALLY ALTER" THE RESULTS OF THE ACCOUNTING

Cisco makes no showing, and does not even attempt to suggest, that it would suffer prejudice of any kind if its motion for a stay is denied. Moreover, the principal (indeed the only) reason Cisco argues why a stay would be *advantageous* in this case is that it might avoid duplicative or unnecessary proceedings on the accounting.

In support of its "mootness" argument, however, Cisco asserts that its motion should be granted because the outcome of the parties' pending cross-appeals may "fundamentally alter the terms of an accounting or ongoing royalty" and "there is a real possibility that whatever

---

[3] *Cf. Johns Hopkins Univ. v. CellPro*, 160 F.D.R. 30 (D. Del. 1995) (denying motion for bifurcation of liability and damage trials and for a stay of discovery on damages until after liability was determined, and stating in *dicta* that even if separate trial on damages were ordered damages discovery should not be stayed, on the ground among others that "[d]iscovery on damages not only assists the parties in preparing for trial, it also educates each party on the other's view of the damages, which, in turn, assists each party in evaluating essential elements of the matters in issue and in assessing the risks associated with an adverse decision in the action. Consequently, it can facilitate settlement discussions", *id.* at 35).

proceedings occur now will be mooted altogether or will at least need to be re-done following the appeal." (Motion at 1, 3.)

But where, as here, actual and potential prejudice to the non-moving party is shown, courts routinely deny stays of damages discovery and/or trial pending trial or appeal on liability despite the possibility that the outcome on liability may render the damages proceedings moot. *See, e.g., Johns Hopkins Univ. v. CellPro, supra,* 160 F.R.D. at 35 (denying motion for bifurcation of damages trial and stating in dicta that, even if bifurcation were granted, "it does not appear that staying discovery on damages…would be productive", *id.* at 35); *R.E. Service Co., Inc.,v. Johnson & Johnston Assoc., Inc., supra,* 1995 WL 138545 at * 3-5 (denying motion to stay bifurcated damages trial pending appeal); *BASF Catalysts, LLC v. Aristo, Inc.*, No. 2:07-cv-222, 2009 WL 523123 (N.D. Ind. March 2, 2009) (denying motion to bifurcate trial and stay damages discovery even though "damages discovery is wasted effort if no liability is found," *id.* at *4). *A fortiori*, the ultimate possibility of mootness (which Cisco in any event exaggerates) is no reason to grant a stay here, where the damages trial has already been completed and only limited issues remain to be resolved on the accounting.

Moreover, contrary to Cisco's argument, it is by no means certain that the outcome of the appeal is likely to require a "do-over" of an accounting on the current judgment. Indeed (as Cisco itself recognizes (Motion at 3, 6)), unless Cisco succeeds in convincing the Federal Circuit that *both* Telcordia's '633 *and* '763 patents are invalid or not infringed, there is no reason to believe that conducting the accounting now would be completely futile. Short of that, Cisco both mis-states the potential impact of the appeal on issues to be determined in an accounting, and also overstates the complexity and potential contentiousness of the accounting – and this is

wholly aside from the fact that no outcome involving the '306 patent issues that have been appealed will affect the jury's damage verdict in any way.

First, Cisco asserts that "the damages amount is directly at issue on appeal" and that if Telcordia prevails on any of these issues on appeal, there is a "substantial likelihood" that the parties would have to "re-do" the accounting. (Motion at 1, 5.) Here, Cisco simply confuses the possible need for a new trial on damages as well as liability – an obvious potential consequence of any appeal – with what it asserts might be a need for a "do-over" of the accounting. Although it is possible that a new trial on damages may be necessary, none of the proceedings on the accounting should have to be duplicated even in that event; rather, whatever determinations are made now in the accounting – for example with respect to the volume of Cisco's accused sales from January 31, 2007 to the date of judgment – can be used, to the extent relevant, for purposes of that trial.

Second, Cisco argues that a stay should be entered "to avoid the expenditure of time and effort by the parties in negotiating these complicated and uncertain issues now, and to eliminate the risk that the Court will need to resolve disputes between the parties that arise during the course of these discussions ... ." (Motion at 1-2.) Here, Cisco simply overstates the complexity of the issues that need to be resolved in the accounting. Cisco itself argues (without proof) that the amount of damages involved in the accounting will be "very small" (Motion at 7), which, if true, suggests that the time and effort required for the accounting will not be great. Moreover, although Cisco complains that Telcordia has requested production of a database of sales records from January 31, 2007 to the present "reflecting 20 different data fields for each order" (Motion at 3), it fails to mention that these are merely the same fields that were contained in the sales databases Cisco produced prior to the trial, and all it has to do is update them. There should,

accordingly, be no dispute whatever about the production of this information in the form that Telcordia has requested.

Likewise, Cisco foresees "very substantial efforts involving discovery, debate, and – given the lack of information as to what the jury did – dispute to determine all the necessary terms [for an ongoing royalty]." (Motion at 3-4.) But Cisco exaggerates the complexity of these factual issues within the parameters of the parties' damages experts' testimony and the jury's damages award, even in the context of recent case law suggesting that an ongoing royalty may exceed the royalty awarded by the jury at trial.[4] The Court has, moreover, prospectively established a mechanism for resolution of the issue in the event the parties cannot agree. (D.I. 420, Order of January 6, 2009.) That mechanism should by no means require any extensive or protracted proceedings on the issue of a royalty for Cisco's ongoing infringement, as Cisco implicitly suggests. (Motion at 1-2.)

In short, there is no good reason not to proceed with the accounting now. It is unlikely that the outcome of the appeal will "fundamentally alter" the premises of the accounting. Even if the accounting should be rendered moot by appellate holdings of invalidity or non-infringement on *both* patents, that is not sufficient reason to grant a stay where doing so would impose prejudice and further delay on Telcordia as the prevailing party after trial. *Cf. BASF Catalysts, LLC. v. Aristo, Inc.*, No. 2:07-cv-222, 2009 WL 523123 (N.D. Ind. March 2, 2009) (denying motion to bifurcate liability and damages trials and to stay discovery on damages issues; "[a]lthough [defendant] is correct that damages discovery is wasted effort if no liability is found,

---

[4] *See, e.g., Paice LLC v. Toyota Motor Corp., et al.*, 504 F.3d 1293, 1317 (Fed. Cir. 2007) ("pre-suit and post-judgment acts of infringement are distinct, and may warrant different royalty rates given the change in the parties' legal relationship and other factors." (Rader, J., concurring)).

this applies equally to all liability-based litigation and is not a convincing argument on a straightforward patent infringement claim such as presented here", *id.* at *4).

## IV. THE CASES CISCO CITES DO NOT SUPPORT ITS REQUEST FOR A STAY OF THE ACCOUNTING IN THIS CASE

In its Brief in support of this motion, Cisco attempts to suggest that a stay of the Court-ordered accounting should be all but "automatic" but that its motion is "necessary because Rule 62 does not *specifically* provide an automatic stay in the particular circumstance of an interim accounting." (Motion at 2, n.2 (emphasis added).)

This is, to say the least, a misleading statement of the law. Quite the contrary, Rule 62(a)(2) specifically provides that an order directing an accounting in an action for patent infringement is *not* stayed even if an appeal is taken.[5]

> Except as stated in this rule, no execution may issue on a judgment, nor may proceedings be taken to enforce it, until 10 days have passed after its entry. But *unless the court orders otherwise, the following are not stayed after being entered, even if an appeal is taken:*

---

[5] Likewise, Cisco's assertion that if it "secure[s] a sum sufficient to cover the judgment (jury's award plus estimated pre- and post-judgment interest), the approval of [such security] will *automatically* stay the execution of the judgment" (Motion at 2 n.2 (emphasis added)) is seriously open to question. Rule 62(d), upon which Cisco relies for that assertion, states that "[i]f an appeal is taken, the appellant may obtain a stay by supersedeas bond, *except in an action described in Rule 62(a)(1) or (2)*." (Emphasis added.) The "action" described in Rule 62(a)(2) is "an action for patent infringement," not a "judgment" in such an action. Accordingly:

> "[an automatic stay upon posting a supersedeas bond] may not be obtained...in patent-infringement cases in which an accounting has been ordered. In [such cases] it is discretionary with the court whether to allow a stay."

Wright & Miller, *Federal Practice and Procedure* § 2905. *But see contra, MGM Well Serv., Inc. v. Mega Lift Sys., LLC,* No. H-05 1634, 2007 WL 2021609 (S.D. Tex. July 10, 2007) (stating that defendant patent infringer "is entitled to obtain a stay of the damages portion of the final judgment by giving a supersedeas bond in accordance with Rule 62(d) of the Federal Rules of Civil Procedure", but denying stay pending appeal where defendant requested waiver of bond requirement, *id.* at *1-2).

> \* \* \*
>
> *(2) a judgment or order that directs an accounting in an action for patent infringement.*

*Id.* (emphasis added).

Rather, that Rule (and 28 U.S.C. § 1292(c)(2), which confers appellate jurisdiction on the Court of Appeals for the Federal Circuit over interlocutory appeals from judgments in patent infringement actions that are final except for an accounting), were adopted to *permit*, but not to *require*, the district courts to stay accountings in such cases. *See, e.g., In re Calmar,* 854 F.2d 461 (Fed. Cir. 1988):

> ...[T]he purpose of the legislation, § 1292(c)(2), allowing interlocutory appeals in patent cases was to permit a stay of a damages trial. Thus there is no conflict between § 1292(c)(2) and Rule 62(a)'s grant of the discretion to stay or to proceed with the damages trial during the appeal. *Indeed, in recognition of the district court's discretion, this court has repeatedly denied, in unpublished opinions, motions to stay damages trials during appeals in patent cases.*

*Id.* at 464 (emphasis added).

In short, the grant or denial of Cisco's motion for a stay rests in the exercise of the Court's sound discretion, and Cisco's implicit suggestion that it should follow "automatically" but for the fact that Rule 62(d) does not "specifically" provide for it is incorrect.

Likewise, the cases Cisco relies upon in support of its motion are – to the extent they are not irrelevant – simply inapposite on the facts. *Sealover v. Canada,* 806 F. Supp. 59 (M.D. Pa. 1992), for example, which Cisco cites for the proposition that it need not file a supersedeas bond because Telcordia has filed its own notice of appeal (Motion at 4), is simply irrelevant. Here, Cisco has offered to file a supersedeas bond, and (notwithstanding the language of Rule 62(d) and other authority to the contrary) Telcordia has not contested Cisco's ability to stay *execution*

on its judgment by doing so. *Sealover*, therefore, provides no support for granting Cisco's motion for a stay of the *accounting*.

Nor does either *Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 897 F.2d 511 (Fed. Cir. 1990), or *Itron, Inc. v. Benghiat*, 2003 WL 22037710, at *16 (D. Minn. 2003), the only other cases Cisco cites (Motion at 6), provide support for granting Cisco's motion.

Like *Sealover, Standard Havens* involved the defendant's motion for stay of execution of judgment, not for a stay of an accounting. Moreover, the court granted a stay of execution because the defendant had made a "substantial" showing of likelihood of success on appeal and because it found that while any prejudice to plaintiff from not granting the stay was "speculative," the defendant was likely to suffer "catastrophic and irreparable" harm and might well cease to exist if the motion for a stay were denied. *Standard Havens,* 897 F.2d at 516.

No such circumstances are present here. Rather, in this case, a stay of the accounting *would* prejudice Telcordia, and there is no suggestion that denying Cisco's motion would impair its overall financial condition, much less its ability to continue as a going concern,[6] or prejudice it in any other way. On the facts of this case, *Standard Havens* does not support Cisco's motion for a stay.

Similarly, *Itron* is unpersuasive precedent with respect to Cisco's motion. In that case, the district court denied the defendant's request for a stay of an injunction pending appeal and granted the plaintiff's motion for an accounting of damages on infringing sales that the court determined had not been considered by the jury. The court stayed the accounting pending appeal, however, apparently *sua sponte* and without the benefit of briefing by the parties. Except to state that it wished to avoid potentially unnecessary expenditures of time and effort, the court

---

[6] Indeed, Cisco argues exactly the opposite as its principal basis for asserting that Telcordia will not be prejudiced by a stay. (Motion at 2, 6.)

did not discuss its reasoning in any way and did not consider any potential prejudice to the plaintiff resulting from the delay. *Itron,* 2003 WL 22037710, at *16.

*None* of the cases Cisco cites involved potential prejudice to the non-moving party – economic, evidentiary, and settlement-related – such as Telcordia is likely to suffer here. Accordingly, none of them is authority for granting Cisco's motion, which should be denied.

## V. CONCLUSION

Given the prejudice that Telcordia would suffer if the stay is granted, the absence of any prejudice to Cisco if it is denied, and the probable absence of any direct impact on an accounting following the appeal, Cisco's motion for a stay should be denied. Even acknowledging that the accounting might be mooted if *both* the '763 and '633 patents are held invalid or not infringed on appeal, it would be unfair to stay the accounting now because of the prejudice to Telcordia's ability to participate in mandatory mediation and possible settlement negotiations that will proceed in the interim.

For these reasons, Telcordia submits that Cisco has failed to meet its burden of showing that the accounting of Telcordia's full damages should now be stayed. Cisco's motion should therefore be denied.

ASHBY & GEDDES

*/s/ John G. Day*
_____
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Plaintiff/Counterclaim Defendant Telcordia Technologies, Inc.*

*Of Counsel:*

Donald R. Dunner
Steven M. Anzalone
Griffith B. Price, Jr.
James T. Wilson
John M. Williamson
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, L.L.P.
901 New York Ave., N.W.
Washington, D.C. 20001
(202) 408-4000

Dated: March 12, 2009